James D. LaRue  ISB #1780
Loren C. Ipsen  ISB #1767
ELAM & BURKE, P.A.
251 East Front Street, Suite 300
P.O. Box 1539
Boise, Idaho 83701
Telephone:  (208) 343-5454
Facsimile:  (208) 384-5844
jdl@elamburke.com
lci@elamburke.com

Attorneys for Defendants, Hawley Troxell Ennis & Hawley, LLP,
Gary D. Babbitt, Richard A. Riley, and D. John Ashby

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DONNA J. TAYLOR and DALE MIESEN, as shareholders who are bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.,<br><br>     Plaintiffs,<br><br>v.<br><br>HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY BABBITT, an individual; RICHARD A. RILEY, an individual; D. JOHN ASHBY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R JOHN TAYLOR, an individual; KENT PETERSEN, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; HUDSON INSURANCE GROUP; a Delaware corporation; and GROWERS NATIONAL COOPERATIVE INSURANCE AGENCY, an Idaho corporation,<br><br>     Defendants. | Case No. 1:10-cv-00404-LMB<br><br>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR STAY OF ACTION |

## INTRODUCTION

The present lawsuit is the latest volley in a barrage of litigation unleashed by Reed J. Taylor

and those acting in concert with him[1] to seize control of AIA Insurance, Inc., an Idaho corporation,

---

[1]    Plaintiff Donna J. Taylor is the former spouse of Reed J. Taylor and the sole owner of Series A Preferred Stock issued by AIA Services Corporation.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS - 1

and to punish any who oppose his efforts to wrest corporate control from current management.  The Hawley Troxell defendants[2] have moved to dismiss the complaint as to plaintiff Dale Miesen on the ground that it fails to state a cause of action, and have further moved on the basis of application of the federal abstention doctrine for dismissal of the complaint without prejudice as to plaintiff Donna J. Taylor, or in the alternative, for a stay pending the resolution of parallel cases that are pending in state court.

STATEMENT OF FACTS AND CONTENTIONS

_____Reed J. Taylor[3] was the founder and, prior to August 1995, the majority shareholder of AIA Services Corporation ("AIA Services"), an Idaho corporation headquartered in Lewiston, Idaho. AIA Services is and was the parent company of AIA Insurance, Inc. ("AIA Insurance"), an insurance agency which sells health, life and other insurance policies to farmers and members of various agricultural growers associations.  In 1995 Mr. Taylor owned the majority of the outstanding shares of AIA Services' common stock and was its Chief Executive Officer and the Chairman of its Board of Directors.  (Riley Affidavit, ¶ 4.)

As became apparent in 1995, the AIA companies were in financial trouble and faced daunting business challenges.  Reed Taylor fashioned an exit plan.  Effective July 22, 1995, he entered into a written agreement with AIA Services (the "1995 Stock Redemption Agreement") pursuant to which the corporation agreed to redeem all 613,494 of his shares of the common stock of AIA Services.  Under the terms of the 1995 Stock Redemption Agreement, he received, among other

---

[2]    Gary D. Babbitt, Richard A. Riley and D. John Ashby are attorneys currently employed by Hawley Troxell Ennis & Hawley LLP.

[3]  After Reed J. Taylor sold his stock in AIA, his brother R. John Taylor succeeded him as president of the corporation.  The relationship between the brothers deteriorated, and Reed J. Taylor sued R. John Taylor among other parties.  In order to avoid confusion, all references in this brief to "Mr. Taylor" refer to Reed J. Taylor.

things, (a) $1,500,000 cash down payment at closing (converted into a promissory note payable October 20, 1995 (the "Down Payment Note") by the Addendum to the 1995 Stock Redemption Agreement); (b) a promissory note in the original principal amount of $6,000,000 plus interest (the "$6M Note"); (c) elimination of $568,000 of indebtedness he owed to AIA; and (d) title to certain airplanes and other tangible personal property.  (Riley Affidavit, Exhibit A.)

AIA Services was unable to pay the $1.5 million Down Payment Note to Reed Taylor when it became due October 20, 1995, which led to further negotiations over the redemption of Mr. Taylor's stock, resulting in restructuring the transaction in 1996.  The 1995 Stock Redemption Agreement was superseded by a Stock Redemption Restructure Agreement dated July 1, 1996 (the "1996 Restructure Agreement"), which called for the $1.5 million down payment note to be paid in full on October 31, 1996, and the $6M Note to be paid in installments of interest only for ten years, with payment in full to be on July 1, 2005; provided, however, that payment of principal of the $6M Note was expressly subordinated to complete redemption of the Series A Preferred Stock of AIA Services issued to Donna Taylor in connection with her divorce from Reed Taylor in 1989.  (*Id.*, ¶¶ 5-7.)

Reed  Taylor filed suit on January 29, 2007, in state court against AIA Services, AIA Insurance and several officers, directors and employees of AIA Services and their spouses (Babbitt Affidavit, ¶3),[4] alleging, among other things, that AIA Services failed to pay the balance of the $6M Note when it matured, that AIA Services was in default for failing to appoint him to its board of directors or file a bond, that AIA Services loaned money to affiliates in violation of a Stock

---

[4]  The lawsuit, which will be referred to as the "Underlying Case," was filed as Case No. CV 07-00208 in the District Court of the Second Judicial District of the State of Idaho, Nez Perce County.  Included among the defendants were Reed J. Taylor's brother, R. John Taylor, along with Connie Taylor, Brian Freeman, Jolee Duclos, James Beck and Corrine Beck.  (Babbitt Affidavit, Exhibit B.)

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS - 3

Redemption Restructure Agreement, and that AIA Services was insolvent.  (*Id.*, ¶ 5.)  Shortly after filing suit, Mr. Taylor attempted unsuccessfully to exercise to self-help to take over AIA Insurance but was thwarted by law enforcement.[5]   Michael E. McNichols of Clements, Brown & McNichols initially appeared in the lawsuit in behalf of AIA Services, AIA Insurance and R. John Taylor.  Mr. McNichols withdrew from representation of AIA Service and AIA Insurance, and Hawley Troxell substituted in as defense counsel in the Underlying Case for those two companies.   Mr. McNichols continued as defense counsel for R. John Taylor in the Underlying Case.[6]

As one of their defenses in the Underlying Case, the defendants raised the issue that AIA Services did not have sufficient earned surplus to redeem Mr. Taylor's common stock in AIA Services as required by Idaho statute.     The defendants argued that the redemption of Reed J. Taylor's stock violated Idaho Code § 30-1-6, as in effect prior to 1997, which restricted a corporation from purchasing its own stock when it lacked sufficient earned surplus.   It was contended the transaction was therefore illegal and the $6M Note was unenforceable.  (*Id.*, ¶¶ 6-8.)

In a June 17,  2009, Opinion and Order the state court granted partial summary judgment in favor of the defendants, holding that the redemption of Mr. Taylor's stock was illegal and unenforceable because the company did not have sufficient earned surplus to redeem his shares. (*Id.*, ¶ 9.)[7]   Having found the Stock Redemption Agreement to be illegal and unenforceable, the state court concluded that it must "leave the parties where [the Court] finds them."  This conclusion precluded Reed J. Taylor from being able to collect the remaining amount he claimed due on the

---

[5]  Reed Taylor and accomplices were discovered by Lewiston police at 3:00 o'clock a.m. trying to break into the offices of AIA.   (Babbitt Affidavit, Exhibit A.)

[6]  Babbitt Affidavit, ¶ 3.

[7]   Mr. Taylor conceded that the corporation lacked sufficient earned surplus to fund the redemption. (Babbitt Affidavit, Exhibit F.)

AIA Services note, but it also denied AIA Services the ability to recover the substantial amounts already paid him pursuant to the illegal contract.  Mr. Taylor moved for reconsideration, which motion was denied.  (*Id.*, ¶ 10.)  The trial court certified its decision as final for purposes of Rule 54(b), and Mr. Taylor filed an appeal to the Idaho Supreme Court, which is pending.[8]  (*Id.*, ¶ 11.)

While the Underlying Case was pending, Reed Taylor and his former wife Donna Taylor, represented by the same attorneys, sent a shareholder derivative demand letter dated July 21, 2008, to the boards of directors of AIA Services and AIA Insurance, demanding that the corporations initiate legal action against current and former members of their boards, AIA Services and AIA Insurance's litigation counsel, Hawley Troxell, and Mr. McNichols' law firm.  (*Id.*, ¶ 13.)  AIA Services and AIA Insurance responded by moving the court in the Underlying Case to appoint an independent panel under Idaho Code § 30-1-742 to investigate the derivative demand. (*Id.*)  Reed Taylor filed a concurrence with the demand to appoint an independent panel, although he objected to the panel members nominated by AIA Services and AIA Insurance.  (*Id.*)   However, before the motion could be decided, Reed Taylor moved to disqualify Hawley Troxell as counsel for AIA Services and AIA Insurance in the Underlying Case, thus leading the trial court to enter a stay of further proceedings until the disqualification motion was resolved.  (*Id.*, ¶ 12.) Ultimately, the court denied the motion to disqualify.  (*Id.*, ¶ 12.)  In the meantime, Reed Taylor initiated lawsuits in state court in Nez Perce County, Idaho,[9] against Mr. McNichols and the Clements Brown law firm and against Hawley Troxell and four of its attorneys.[10]  (*Id.*, ¶¶ 14-15.) Those suits alleged conversion,

---

[8]   Taylor v. AIA Services Corporation *et al.*, Docket No. 36916-2009, Idaho Supreme Court.

[9]   Reed J. Taylor v. Michael E. McNichols, et al., Case No. 08-07163, in the District Court of the Second Judicial District of the State of Idaho, Nez Perce County (hereinafter the "McNichols Lawsuit.")

[10]   Reed J. Taylor v. Hawley Troxell, *et al*,  Case No. CV 08-01765, in the District Court of the Second Judicial District of the State of Idaho, Nez Perce County (hereinafter "Hawley Troxell I").

breach of fiduciary duties, tortious interference with contract, malpractice, violations of the Idaho

Consumer Protection Act, and aiding, abetting and conspiring with others in the commission of

tortious acts.  (*Id.*, ¶ 16, Exhibits S and Q .)

In response to Rule 12(b)(6) motions filed by the defendants, the state trial court in Nez Perce

County held that Mr. Taylor's complaints against defense counsel failed to state a cause of action

and dismissed with prejudice both the McNichols Lawsuit and Hawley Troxell I.  (*Id.*, ¶ 18.)   Mr.

Taylor moved to amend his complaint to bring claims of fraud against Mr. Riley and others, and that

motion was denied by the trial court.  (*Id.*, ¶¶ 17-18.)  The trial court awarded attorneys fees against

Reed Taylor pursuant to Idaho Code § 12-121 because his claims were brought and pursued

frivolously, unreasonably and without foundation.  (*Id.*, ¶¶ 19-22.)   Mr. Taylor appealed the two

cases to the Idaho Supreme Court.[11]  (*Id.*, ¶ 23.)  The consolidated appeal was recently decided in

favor of the defendants, including affirming the award of attorney's fees by the trial court and

awarding attorney's fees to the defendants at the appellate level.[12]  *Taylor v. McNichols*, 2010 WL

3448851 (Idaho 2010) (hereinafter referred to as the "Reported Case").   A Remittitur has been

entered and the decision on appeal is final.  (Babbitt Affidavit, ¶ 23.)

Seeking yet another bite of the apple  while the appeal of Hawley Troxell I was pending, Mr.

Taylor filed a second state court action against Hawley Troxell, Mr. Riley and Eberle Berlin (Mr.

Riley's former law firm)  in Ada County, Idaho.[13]  (Riley Affidavit, ¶ 9.)   Defendants were granted

---

[11]   Reed J. Taylor v. Michael E. McNichols *et al.* and Reed J. Taylor v. Gary D. Babbitt *et al.*,
Consolidated Docket Nos. 36130-2009 and 36131-2009, Idaho Supreme Court.

[12]   The Idaho Supreme Court held that an award of attorney's fees against Reed Taylor was justified
because "this appeal was brought spuriously and without foundation, for harassment purposes only."   Reported
Case, 2010 WL 3448851*24.

[13]   Reed J. Taylor v. Richard A. Riley, et al., Case No. CV-OC-0918868, in the District Court of the
Fourth Judicial District of the State of Idaho, Ada County (hereinafter "Hawley Troxell II").

partial summary judgment in that case, primarily upon the ground of *res judicata*, because the issues were the same as were raised or could have been raised in Hawley Troxell I. Some issues remain to be decided in Hawley Troxell II. (*Id.*, ¶ 10.) Donna Taylor, through the same attorneys who represented Reed Taylor in the Underlying Case and Hawley Troxell I and II, opened another front in the Taylors' litigation warfare by filing a suit against R. John Taylor and his ex-wife[14] and a separate suit against AIA Services[15] in state court. (Babbitt Affidavit, ¶ 24.) Thus, the present lawsuit is the sixth to be filed arising out of the same operative nucleus of facts and involving the same or related parties. The various remaining state court actions have been stayed due to the need to resolve the AIA appeal to provide the trial courts with further guidance. (*Id.*, ¶ 25; Riley Affidavit, ¶ 11.)

### THE DEMAND REQUIREMENT APPLICABLE TO SHAREHOLDER DERIVATIVE ACTIONS IS GOVERNED BY STATE LAW

Plaintiffs have framed their complaint as a shareholder derivative action. They assert that, as a shareholder and a secured creditor of AIA Services, they should be allowed to advance claims on behalf of the corporation.

> The derivative form of action permits an individual shareholder to bring "suit to enforce a *corporate* cause of action against officers, directors and third parties." Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholders a means to protect the interests of the corporation from the misfeasance and malfeasance of "faithless directors and managers." To prevent abuse of this remedy, however, equity courts established as a precondition "for the suit" that the shareholder demonstrate "that the corporation itself has refused to proceed after suitable demand, unless excused by extraordinary conditions."

---

[14]   Donna J. Taylor v. R. John Taylor and Connie Taylor, Case No. CV 08-01150, in the District Court of the Second Judicial District of the State of Idaho, Nez Perce County (hereinafter "Donna Taylor I").

[15]   Donna J. Taylor v. AIA Services Corp., Case No. CV 09-02470, in the District Court of the Second Judicial District of the State of Idaho, Nez Perce County (hereinafter "Donna Taylor II").

*Kamen v. Kemper Fin. Services, Inc.*, 500 U.S. 90, 95-96, 111 S.Ct. 1711, 1716,114 L.Ed 2d 152 (1991) (emphasis in original and citations omitted).

*Kamen* holds that a federal court entertaining a derivative action must look to the law of the state where the corporation is incorporated to determine the extent of any demand requirement applicable to bringing a shareholder derivative suit, and whether such requirement has been complied with.  As noted in *Kamen*, Federal Rule of Civil Procedure 23.1 does not excuse the requirement of complying with state law.

> But although Rule 23.1 clearly *contemplates* both the demand requirement and the possibility that demand may be excused, it does not *create* a demand requirement of any particular dimension.  On its face, Rule 23.1 speaks only to the adequacy of the shareholder representative's pleadings.  Indeed, as a rule of procedure issued pursuant to the Rules Enabling Act, Rule 23.1 cannot be understood to "abridge, enlarge or modify any substantive right."  28 U.S.C. § 2072(b).  The purpose of the demand requirement is to "affor[d] the directors an opportunity to exercise their reasonable business judgment and 'waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right.'"  *Daily Income Fund, Inc. v. Fox*, 464 U.S., at 533, 104 S.Ct. at 836-837, quoting *Corbus v. Alaska Treadwell Gold Mining Co.*, 187 U.S. 455, 463, 23 S.Ct. 157, 160, 47 L.Ed. 256 (1903).  Ordinarily it is only when demand is excused that the shareholder enjoys the right to initiate "suit on behalf of his corporation in disregard of the directors' wishes."  R. Clark, Corporation Law § 15.2, p. 640 (1986).  In our view, the function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporation litigation clearly is a matter of "substance," not "procedure."

*Id*. at 96-97,  111 S.Ct. 1711 at 1716.

<u>IDAHO LAW REQUIRES A WRITTEN DEMAND AS A CONDITION PRECEDENT TO INSTITUTING A SHAREHOLDER DERIVATIVE ACTION</u>

Idaho Code §30-1-742 provides:

**30-1-742.  Demand. –** No shareholder may commence a derivative proceeding until:

(1)     A written demand has been made upon the corporation to take suitable action; and

(2)     Ninety days have expired from the date the demand was made unless the
shareholder has earlier been notified that the demand has been rejected by the
corporation or unless irreparable injury to the corporation would result by
waiting for the expiration of the ninety (90) day period.

The requirement for written demand is mandatory, and failure to comply with such
requirement is generally fatal to the plaintiff's derivative action. *Mannos v. Moss*, 143 Idaho 927,
933-34, 155 P.3d 1166, 1172-73 (2007).   Idaho no longer recognizes "futility" as an exception to
the requirement of demand as a condition preceding the institution of a shareholder derivative action.
*McCann v. McCann*, 138 Idaho 228, 236, 61 P.3d 585, 593 (2002).

Failure to comply with the demand requirement is sufficient to dispose of the complaint
under FRCP 12(b)(6) with respect to one of the plaintiffs, Dale Miesen, who concededly made no
written demand.   Mr. Miesen is not entitled to piggyback on the demand letter delivered by the
Taylors; as a common shareholder his interest and claims are entirely different that those asserted
by Reed Taylor as a secured creditor of the corporation or by Donna Taylor as the sole holder of
Series A Preferred Stock.[16] *See Smachlo v. Birkelo*, 576 F.Supp. 1439, 1444 (D.Del. 1983), applying
Delaware law, and *Potter v. Hughes*, 546 F.3d 1051, 1057-58 ( 9th Cir. 2008), applying California
law, both holding that a shareholder who fails to make written demand on the corporation in his own
name may not bring a shareholder derivative action based upon a demand made by another
shareholder, even though they may represented by the same counsel or may ultimately intend to
assert the same or similar legal theories.   Because the directors, not the shareholders, control a
corporation (*see* I.C. § 30-1-801), the requirement of making a written demand on the board prior

---

[16]     Even if Mr. Miessen were entitled to piggyback on the derivative demand of Reed and Donna Taylor,
the corporation's right to evaluate the demand is governed by state law.  See discussion of Idaho Code §30-1-744, *infra*.

to filing a shareholder derivative action is not a mere technicality or unimportant requirement.  As

stated by the Court in *Potter, Id.* at 1057-58:

> The identity of the shareholder is also an important practical element of a demand.  The identity of the complaining shareholder may shed light on the veracity or significance of the facts alleged in the demand letter, and the Board might properly take a different course of action depending on the shareholder's identity.  Before a demand letter can properly invoke a duty of a corporate board to take action to correct alleged wrongdoing, the board is entitled to know with specificity the identity of the person making the demand.  *See generally* 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.1.08  ("The demand requirement permits the board to correct the alleged wrong, encourages intra-corporate dispute resolution, and allows the board to use its expertise and resources to control litigation.").

Even if Mr. Miesen were permitted to piggyback on the Taylors' demand letter, he is bound

by the same requirements as are applicable to them once a demand has been made.  The making of

a shareholder demand is the beginning, not the end, of the process.  The following section of this

memorandum discusses the procedures that are triggered by the making of a shareholder demand.

### IT IS INCUMBENT UPON THE BOARDS OF DIRECTORS OF AIA SERVICES AND AIA INSURANCE  OR AN INDEPENDENT PANEL APPOINTED BY A COURT TO ACCEPT OR REJECT THE DEMAND MADE BY REED AND DONNA TAYLOR

The range of possibilities activated by a shareholder demand letter is also a matter of state

law.  If the board decides to assume the litigation, that is the end of the matter as far as the

demanding shareholder is concerned.  *Kamen v. Kemper Fin. Services, Inc.*, supra, at 102-03.  On

the other hand, the board may determine that it is necessary or advisable to appoint a special

litigation subcommittee of disinterested board members to review the demand and make a

recommendation to the board or, if no disinterested board members exist, an independent panel of

examiners may be appointed by a court to make a determination whether proceeding with the

litigation would be in the best interest of the corporation.  Idaho Code § 30-1-744 provides the

procedure to be followed:

**30-1-744.  Dismissal.** – (1) A derivative proceeding shall be dismissed by the court on motion by the corporation if one (1) of the groups specified in subsection (2) or (6) of this section has determined in good faith after conducting a reasonable inquiry upon which its conclusions are based that the maintenance of the derivative proceeding is not in the best interests of the corporation.

(2)     Unless a panel is appointed pursuant to subsection (6) of this section, the determination in subsection (1) of this section shall be made by:

(a)     A majority vote of independent directors present at a meeting of the board of directors if the independent directors constitute a quorum;

(b)     A majority vote of a committee consisting of two (3) or more independent directors appointed by majority vote of independent directors present at a meeting of the board of directors, whether or not such independent directors constituted a quorum.

(3)     None of the following shall by itself cause a director to be considered not independent for purposes of this section:

(a)     The nomination or election of the director by persons who are defendants in the derivative proceeding or against whom action is demanded;

(b)     The naming of the director as a defendant in the derivative proceeding or as a person against whom action is demanded; or

(c)     The approval by the director of the act being challenged in the derivative proceeding or demand if the act resulted in no personal benefit to the director.

(4)     If a derivative proceeding is commenced after a determination has been made rejecting a demand by a shareholder, the complaint shall allege with particularity facts establishing either (a) that a majority of the board of directors did not consist of independent directors at the time the determination was made, or (b) that the requirements of subsection (1) of this section have not been met.

(5)     If a majority of the board of directors does not consist of independent directors at the time the determination is made, the corporation shall have the burden of proving that the requirements of subsection (1) of this section have been met.  If a majority of the board of directors consists of independent directors at the time the determination is made, the plaintiff shall have the burden of proving that the requirements of subsection (1) have not been met.

(6)     The court may appoint a panel of one (1) or more independent persons upon motion by the corporation to make a determination whether the maintenance of the derivative proceeding is in the best interests of the corporation.  In such case, the plaintiff shall have the burden of proving that the requirements of subsection (1) of this section have been met.

Reed and Donna Taylor triggered the procedure specified by the statute cited above when they made written demand on the boards of directors of AIA Services and AIA Insurance.  The corporations responded by petitioning the Idaho state court to appoint an independent panel to determine whether pursuing the litigation was in the best interest of the corporations. That petition is still pending and has not been abandoned as alleged by the plaintiffs in this case.   Rather, the matter is stayed because of additional claims brought by Reed J. Taylor, namely Reed Taylor's motion to disqualify defense counsel in the Underlying Case, by his appeal of partial summary judgment in the Underlying Case, and by his choice to pursue two separate lawsuits against the attorneys for AIA Services.   The motion to disqualify was denied; and Hawley Troxell I has been finally decided adversely to Mr. Taylor.  Following entry of partial summary judgment in favor of defendants in Hawley Troxell II, certain claims remain pending in that case.   While all of this illustrates the Taylors have a tendency to get ahead of themselves and create procedural issues by filing repetitive lawsuits, the point is that the state court has jurisdiction over the corporation's response to the shareholder demand and Reed Taylor's concurrence in the corporation's motion to appoint an independent panel pursuant to the Idaho Business Corporation Act, Idaho Code § 30-1-704.  This Court should abstain from exercising jurisdiction over a matter which is already before the state court.   It would be duplicative and wasteful of judicial resources to have two separate courts appointing two separate independent panels to assess the merits of the Taylor derivative demand; this Court should abstain from acting while the state court works through the statutory process.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS - 12

## THE COLORADO RIVER DOCTRINE
## SHOULD BE APPLIED IN THE PRESENT ACTION

The key question at this point in the litigation is whether the Court should accept the plaintiffs' invitation to join the fray by assuming jurisdiction over a case which is being contemporaneously litigated in state forums.  The potential not only for dissipating judicial resources as well as ending up with different and conflicting adjudications is obvious.  Dismissal, or alternatively a stay, of this action is warranted by the *Colorado River* doctrine, which recognizes that federal courts can refrain from exercising their jurisdiction in the interests of judicial administration when parallel proceedings are filed and under the proper circumstances.

While it is generally recognized that the federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colorado River Water Conservation District v. United States,* 414 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1952), under certain circumstances a dismissal or stay of a federal action may be warranted based on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed.2d 200 (1952).   This doctrine, known as the Colorado River doctrine,[17] allows federal courts to refrain from exercising jurisdiction where "exceptional circumstances" exist.  *Colorado River*, 424 U.S. at 818.[18]

---

[17]   Although commonly referred to as an abstention doctrine, the U.S. Supreme Court has made it clear that the Colorado River doctrine is not technically a matter of federal-state comity but of "[w]ise judicial administration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10, 103 S.Ct. 927, 934, 74 L.Ed. 2d 765 (1983); See 17A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4247, at 150-51 (2d Ed. 1988). Nonetheless, the courts generally speak of the Colorado River doctrine as a species of abstention.

[18]   The *Colorado River* doctrine is only one of a number of doctrines the federal courts can utilize to refrain from exercising jurisdiction.  Other recognized abstention doctrines are: (A) *Younger* abstention, which is appropriate where (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) the state proceeding offers an adequate opportunity to raise constitutional issues; and (4) the federal

Under the *Colorado River* doctrine, the Court must first determine whether parallel proceedings exist in state and federal court. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 28, 103 S.Ct. 927, 74 L.Ed.2d 705 (1983). "Parallel proceedings" exist when substantially similar parties are contemporaneously litigating similar issues in both state and federal courts. *Nakash v. Marciano*, 882 F.2d 1411, 2416 (9th Cir. 1989). The parties do not have to be identical in both suits. Nor do the issues have to be precisely the same. "[T]he mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel." *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700-701 (7th Cir. 1992).[19] For example, in *Enfission v. Leaver*, 408 F.Supp.2d 1093 (W.D.Wash. 2005), a stockholder and former president of a corporation filed a shareholder derivative action in state court alleging the impropriety of his removal from corporate office and subsequent "freezing out" from management. While the suit was pending, the corporation filed an action in federal court alleging the former president was interfering with the business of the corporation by exerting control over its email systems and website, entering into contracts with vendors and salesmen, ordering goods and services on behalf of the corporation and otherwise seeking to exert corporate control. It was evident

---

court action would enjoin the state court proceeding or have the practical effect of doing so;  (B) *Pullman* abstention, which is proper where (1) the complaint touches a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to their adjudication is open; (2) such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy; and (3) the possibly determinative issue of state law is doubtful; (C) *Burford* abstention, applicable where  federal adjudication would interfere with proceedings of state administrative agencies (1) when the state has concentrated suits involving local issues in a particular court; (2) there are difficult questions of state law whose importance transcends the result in the case at bar; and (3) federal review would disrupt state efforts to establish a coherent policy with respect to a matter of substantial policy concern, *See Caudill v. Eubanks Farms, Inc.*, 301 F.2d 658 (6th Circuit 2002); and (D) *Brillhart* abstention, which applies only to declaratory judgment actions or where appended claims for equitable relief are merely illusory.   This is not intended to be an exhaustive recitation of all circumstances in which a federal court may abstain from exercising jurisdiction.

[19]   Exact parallelism is not required.  "It is enough if the two proceedings are substantially similar." *Nakash v. Marciano*, 882 F.2d 1141, 1146 (9th Cir. 1989), citing with approval *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988); *Lumen Const. Inc. v. Brant Const. Co.*, 780 F.2d 691, 695 (7th Cir. 1985); *Telecso v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362 (2d Cir. 1985).

to the Court that, although the claims and counterclaims were not precisely the same in each case, substantially similar issues and interests were being litigated in both the state and federal actions. Therefore, the Court found the federal action was a parallel proceeding to the state action.

In *Beck v. Dombrowski*, 449 F.2d 680 (7th Cir. 1009), a shareholder in a real estate investment trust (REIT) brought a derivative action in federal court against the REIT's directors alleging the making false statements in a shareholder proxy solicitation in violation of federal securities laws and breach of their fiduciary duties under state law. Other shareholders had previously filed suits in state court identical to the plaintiff's state-law claim, which suits were then on appeal. The decision of the federal court to dismiss the state law claims under the *Colorado River* doctrine was upheld on appeal, even though the parties in the suits were not identical. Writing for the Court, Judge Posner held it was not critical that the plaintiff in the federal case was not a party to the state court proceedings:

> For if it were, different members of what should be a single class could file identical suits in federal and state courts to increase their chances of a favorable settlement. The state-law issues that our plaintiff has presented to the federal courts will be definitively resolved by the courts of the state whose law governs those issues, and our court would be required to defer to that resolution because state courts are the authoritative expositors of the own state's laws.

559 F.3d at 686. Accordingly, it was held the federal court acted well within its discretion in declining to exercise jurisdiction over the plaintiff's state-law claim.

The same considerations apply to the case at bar. While not a party to the present suit, Reed Taylor should not be allowed to file suit in state court and then again in federal court using his ex-wife as the nominal plaintiff in order to increase his chances of a favorable result or settlement[20].

---

[20]   The identity of interest of Reed Taylor and Donna Taylor are demonstrated by their representation by the same attorneys on each of the state court actions, the July 21, 2008, derivative demand letter delivered on their joint behalf by their joint counsel (Babbitt Affidavit, Ex. N), and Donna's subordination of her priority rights as

It is clear the Taylors are merely attempting to maximize their leverage by asserting the same claims in both state and federal court litigation.

_____In order to meet the test of parallelism, the "two suits need not be identical."  *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 1988).  Instead, one suit will be deemed parallel to another to the extent that "substantially the same parties are contemporaneously litigating the same issues in another forum."  *Id.*   The *Clark* court observed:

> To be sufficiently similar it is not necessary that there be formal symmetry between the two actions.  Rather, there should be a substantial likelihood that the state litigation will dispose of all claims presented in the federal case.

*Id.* (internal quotation marks and citations omitted)

_____In determining that a federal shareholder derivative suit was parallel to a state shareholder derivative suit, *Clark* noted that both lawsuits involved the same parties in interest, the same or substantially the same factual predicate and effectively the same claims.[21]  *Id.* at 686-687.   Those indicators are present in the case at bar.  Reed J. Taylor and his ex-spouse both seek to bring shareholder derivative actions against the same corporations, officers, directors and lawyers (with minor variations) based upon the same factual predicate and involving the same theories.[22]

_____

Series A Preferred Stockholder to Reed's claims against AIA Services pursuant to the 2006 Subordination Agreement (Riley Affidavit, Ex. C).  *See also* Babbitt Affidavit Ex. FF note 4 at p. 15 (in which counsel for both Reed and Donna alludes to derivative claims to be brought by Donna Taylor through other counsel).

[21]   The Colorado River analysis is applicable when federal and state proceedings involve substantially the same parties and substantially the same issues.  *See, e.g.,United States v. City of Las Cruces*, 280 F.3d 1170, 1182 (10th Cir. 2002) ("[S]tate and federal proceedings are sufficiently parallel if substantially the same parties litigate substantially the same issues." (quotation marks and citation omitted)); *AAR Int'l. Inc. v. Nimelia Enter. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) ("Suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in the two fora."  (quotation marks and citation omitted)); *Romine v. Copuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998) ("Exact parallelism is not required; it is enough if the two proceedings are substantially similar.").

[22]   The only difference being that Donna Taylor has attempted to plead a claim for civil RICO, but as will be discussed *infra*, this claim can also be brought in state court.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS - 16

_____The next issue is whether "exceptional circumstances" exist to warrant *Colorado River* abstention.[23]  The Courts have listed the factors to be considered variously; among them are the following:

> (1) whether a state or federal court has assumed jurisdiction over a *res*; (2) the inconvenience of a federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law controls the decision on the merits; and (6) whether state law can adequately protect the rights of the parties. 460 U.S. at 24, 103 S.Ct. 927.  Another factor mentioned, but not applied by the Court in *Cone*, was the vexatious or reactive nature of the federal suit. *Id.* at 17 n. 20, 103 S.Ct. 927.  Consequently, federal courts have also used that factor in their analysis for purposes of the *Colorado River* doctrine analysis.  *See, e.g., Villa Marina Yacht Sales, Inc. V. Hatteras Yachts*, 947 F.2d 529, 534 (1st Cir. 1991) (holding that a district court did not abuse its discretion when considering the reactive nature of the federal claim); *see also Medema v. Medema Builders, Inc.*, 854 F.2d 210, 213 (7th Cir. 1988) (recognizing that the *Colorado River* doctrine is necessary to "ensure judicial economy and deter abusive 'reactive' litigation").  The Ninth Circuit has also added that another factor to consider is forum-shopping.  *American Int'l Underwriters v. Continental Ins. Co.*, 843 F.2d 1253, 1259 (9th Cir. 1988); *Holder v. Holder*, 305 F.3d 854, 870 (9th Cir. 2002).

Other factors mentioned by some courts are the (9) relative progress of the state and federal proceedings and (10) the presence or absence of concurrent jurisdiction. *Oakland County Employee's Retirement System v. Massaro*, 702 F.Supp.2d 1012 (N.D. Ill. 2010).   "The decision whether to abstain does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case."   *Board of Education of Valley View Community Unit. School Dist. No. 365U v. Bosworth*, 713 F.2d 1316 1321 (7th Cir. 1983).

---

[23]  The doctrine of abstention is an "extraordinary and narrow exception to the duty of a court to adjudicate a controversy before it."  *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 3 L.Ed. 2d 1163 (1959).  However, "because a federal court's duty to exercise jurisdiction is *not absolute*, federal courts have the power to refrain from hearing specific cases, including, inter alia, certain cases 'which are duplicative of pending state court proceeding.'" *Shallal v. Elson*, 1999 WL 33957906*2 (S.D. Fla. 1999).  (Emphasis in original)

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS - 17

The first factor mentioned above is not applicable, as there is no *res* involved in this case. The second factor, the inconvenience of a federal forum, weighs in favor to the defendants as there is no doubt that it is inconvenient to litigate in a federal forum issues which are already being litigated in state court. The third factor, the desirability to avoid piecemeal litigation, weighs heavily in favor of the defendants for the same reason. It is undoubtedly wasteful of resources to litigate the same or similar issues in six different cases. Jurisdiction was obviously obtained first by the state courts; therefore, the fourth factor weighs in favor of the defendants. With respect to the fifth factor, state law is the law of decision with only one partial exception. Plaintiffs have added a new wrinkle to the present case by attempting to plead a federal civil RICO claim. But even there, the RICO claims can be litigated in state court.[24]   The sixth factor also militates strongly in favor of abstention. State law can protect the rights of the parties. Indeed, it is entirely sensible and logical that the corporate governance of an Idaho corporation should be determined under the laws of Idaho. The weight to be given the seventh factor, the reactive or vexatious nature of the suit, should be obvious. This is now the sixth related lawsuit the Taylor plaintiffs have engineered against the same or similar defendants. At some point there should be an end to the multiplicity of suits. The same considerations apply to the eighth factor, forum shopping. It should be clear the Taylors are taking their campaign to as may different forums as possible in the hope they will obtain more favorable results than in the past.[25]   The ninth factor, the relative progress of the state and federal litigation, weighs strongly in defendants' favor. There is nothing to be gained by re-litigating in federal court

---

[24]   *Tafflin v. Levitt*, 493 U.S. 455, 110  S.Ct. 792, 107 L.ED2d 887 (1990).

[25]   The plaintiff's attempt to forum shop or to avoid adverse rulings by the state court is a factor which weighs strongly in favor of abstention.   "We have no interest in encouraging this practice [forum shopping]." *Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989).   Donna Taylor's subordination of her claim to Reed Taylor's claim merely serves to emphasize that she is acting as the stalking horse for him.  (Riley Aff., ¶ 8.)

issues which have been litigated in state court and which have, at least in the instance of Hawley Troxell I, been reviewed by the highest court of the state.  Finally, the tenth factor, the presence or absence of concurrent jurisdiction, also weighs strongly in favor of defendants.  No new legal vistas are opened to the plaintiffs by pursuing their case in federal, as opposed to state, court.  Even with respect to civil RICO, it has been definitively established that state and federal courts have concurrent jurisdiction over civil actions brought under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C §§ 1961-1968.  *Tafflin v. Levitt*, 493 U.S. 455, 110 S.Ct. 792, 107 L.ED2d 887 (1990).   Indeed, in *Tafflin* it was held that dismissal was appropriate under the federal abstention doctrine because the state courts have concurrent jurisdiction over civil RICO claims and the plaintiffs could raise their RICO claims in an action pending in state court.  The same result should be reached here.   The Taylors should not be permitted to litigate their claims over and over again in six separate lawsuits.

<u>THE COURT HAS DISCRETION TO DISMISS THE ACTION WITHOUT PREJUDICE OR ENTER A STAY PENDING RESOLUTION OF THE STATE COURT LITIGATION</u>

If it finds that the Colorado River doctrine is applicable, the Court has discretion to either dismiss this action without prejudice or stay the action pending the resolution of parallel state proceedings.[26]   As recognized in *Comm. Casualty Ins. Co. v. Swarts, Manning & Assocs., Inc.*, 616 F.Supp.2d 1027, 1037 (D.Nev. 2007),   "the choice of a stay rather than a dismissal will have no practical effect if all the parties' issues are resolved by the state proceeding."  That Court noted:

> In a case where a district court invokes *Colorado River*, it generally makes little difference to the state proceeding whether the federal action is stayed or dismissed. Staying this case should be equivalent to dismissal because the court has concluded that parallel state court litigation will be an "adequate vehicle for the complete and

---

[26]   "In a case where a district court invokes *Colorado River*, it makes no difference to the state proceeding whether the federal court action is stayed or dismissed."   *Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241, 243 (9th Cir. 1989).

prompt resolution of the issues between the parties." Thus, the court's decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case.

*Id*. at 1037 (citations omitted).

While some courts have elected to dismiss the federal case without prejudice, *Fireman's Fund Ins. Co. v. Quackenbush*, 87 F.3d 290 ( 9th Cir. 1996); *Trent v. Dial Medical of Florida, Inc.,* 33 F.3d 217 (3d Cir. 1994); *Ins. Co. of the State of Pennsylvania v. Syntex Corp*., 964 F.2d 829 (8th Cir. 1992), other courts have preferred to order a stay pending resolution of the parallel state proceedings, *Jimenez v. Rodriguez-Pagan,* 597 F. 3d. 18 (1st Cir. 2010); *Moorer v. Demopolis Waterworks and Sewer Bd.*, 374 F.3d 994 (11th Cir. 2004); *40234 Washington Street Corp. v. Lusardi*, 976 F.2d 587 (9th Cir. 1992); *Nakash v. Marciano*, 882 F.2d 1141 (9th Cir. 1989).   "This holding [entry of a stay] ensures that the federal forum will remain open if 'for some reason the state forum does turn out to be inadequate.'" *Attwood v. Mendocino Coast Dist. Hosp*., 886 F. 2d 241, 243 (9th Cir. 1989).

<u>CONCLUSION</u>

The present case is the sixth parallel lawsuit regarding the squabble over control of AIA Insurance.  Because the matter is properly before the state courts, where the same issues are being litigated, the federal courts should abstain from exercising jurisdiction.   For these reasons, the case should be dismissed without prejudice or stayed pending resolution of the parallel state litigation.

DATED this 25th day of October, 2010.

ELAM & BURKE, P.A.

By:   /s/ James D. LaRue
          James D. LaRue, Of the Firm
          Attorneys for Defendants, Hawley Troxell Ennis &
          Hawley, LLP, Gary D. Babbitt, Richard A. Riley,
          and D. John Ashby

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS - 20