Robert A. Faucher (ISB # 4745)
B. Newal Squyres (ISB # 1621)
A. Dean Bennett (ISB # 7735)
HOLLAND & HART LLP
101 South Capitol Blvd., Suite 1400
P.O. Box 2527
Boise, Idaho  83701-2527
Telephone:   (208) 342-5000
Facsimile:   (208) 343-8869
E-mail:   rfaucher@hollandhart.com
             nsquyres@hollandhart.com
             adbennett@hollandhart.com

Attorneys for Defendants Hudson Insurance Company and Kent Petersen

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DONNA J. TAYLOR and DALE MIESEN, as shareholders who are bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc., <br><br>        Plaintiffs, <br><br> v. <br><br> HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; RICHARD A. RILEY, an individual; D. JOHN ASHBY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; KENT PETERSEN, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; HUDSON INSURANCE GROUP; a Delaware corporation; and GROWERS NATIONAL COOPERATIVE INSURANCE AGENCY, an Idaho corporation, <br><br>        Defendants. | Case No. 10-cv-00404-LMB <br><br> **MEMORANDUM IN SUPPORT OF THE HUDSON DEFENDANTS' MOTION TO DISMISS** |

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  SUMMARY OF FACTS AND PROCEDURAL HISTORY ..................................2

III. SUMMARY OF ARGUMENT .............................................................................3

   A.   Donna's Written Demand is Insufficient Under Idaho Law. ........................3

   B.   Donna Lacks Standing Because She Cannot Fairly Represent AIA Services..................4

   C.   Miesen's Allegation of Demand Futility is Insufficient Under Idaho Law......................4

   D.   Plaintiffs Fail to State Non-RICO Claims Upon Which Relief can be Granted. .............4

   E.   Plaintiffs Fail to State RICO Claims Upon Which Relief can be Granted.......................4

IV.  STANDARD ON RULE 12(B)(6) MOTION TO DISMISS ..................................5

V.   ARGUMENT .......................................................................................................5

   A.   State Substantive Law Controls Who Can Assert a Shareholder Derivative
        Action. ..................................................................................................5

        1.   Donna's Demand is Plainly Insufficient Because it Does not Name the
             Hudson Defendants or Describe the Factual Basis of any Alleged
             Wrongdoing by the Hudson Defendants. ...................................................5

             a.   Idaho's Derivative Action Demand Requirements. ...........................5

             b.   Donna's Written Demand Fails Under Idaho Law. ...........................6

        2.   Donna Lacks Standing to Assert this Derivative Action Because she Cannot
             Fairly and Adequately Represent the Interests of the Corporation. ..........9

        3.   Miesen Cannot Rely on Donna's Demand and his Assertion of Demand
             Futility is Properly Rejected.....................................................................9

             a.   Miesen Cannot Rely on Donna's Demand.........................................9

             b.   Miesen's Allegation of Demand Futility is Properly Rejected. ........10

        4.   The Failure to Make a Demand Requires Dismissal with Prejudice of All of
             Plaintiffs' Claims Against the Hudson Defendants.................................11

   B.   Plaintiffs' Non-RICO Claims Must be Dismissed Because Plaintiffs Fail to
        Plead Allegations Upon Which Relief Can be Granted. ................................12

        1.   Fifth Cause of Action – Tortious Interference With Contractual
             Relationships/Business Expectancies.......................................................13

             a.   Plaintiffs Fail to Plead Tortious Interference With Contract. ...........13

b.  Plaintiffs Fail to Plead Intentional Interference With a Prospective Economic Advantage. ......................................................................13

2.  Eighth Cause of Action–Fraud/Fraudulent Concealment/Constructive Fraud..................................................................................................14

3.  Ninth Cause of Action – Aiding and Abetting Fraud...............................15

C.  Plaintiffs' RICO Claims  Must be Dismissed Because Plaintiffs Fail to Plead Allegations Upon Which Relief Under RICO Can Be Granted. .....................15

1.  Plaintiffs' Allegations Lack the Required Specificity...............................16

2.  Plaintiffs' Alleged "RICO Enterprise" is Also a Corporate Defendant. ..................17

3.  Plaintiffs Fail to Allege a Pattern of Racketeering Activity......................17

4.  Plaintiffs Fail to Allege Continuity. ........................................................18

D.  Plaintiffs' Non-RICO and RICO Claims Should be Dismissed With Prejudice.............19

VI.  CONCLUSION.................................................................................................20

## <u>TABLE OF CASES</u>

## FEDERAL CASES

*Aikens v. U.S. Transformer, Inc.*, No. CV-07-138-E-EJL-LMB, 2008 WL 695021
(D. Idaho Mar. 11, 2008) ........................................................................18

*Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388 (9th Cir. 1989)...........................................16

*Allison on Behalf of Gen. Motors Corp. v. Gen. Motors Corp.*, 604 F. Supp. 1106
(D.C. Del. 1985)........................................................................................6

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ................................................................5, 12

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ......................................................5, 12

*Bennett v. U.S. Trust Co. of N.Y.*, 770 F.2d 308 (2d Cir. 1985)........................................17

*Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612 (S.D.N.Y. 2006)........................................15

*Foman v. Davis*, 371 U.S. 178 (1962) ........................................................................19

*Galef v. Alexander*, 615 F.2d 51 (2d Cir. 1980) ...........................................................11

*Grossman v. Johnson*, 89 F.R.D. 656 (D. Mass. 1981) ......................................................11

*Guenther v. Pac. Telecom, Inc.*, 123 F.R.D. 341 (D. Ore. 1987) ..........................................9

*H.J. Inc. v. Nw. Bell Telegraph Co.*, 492 U.S. 229 (1989) ................................................18

*Halprin v. Babbitt*, 303 F.2d 138 (1st Cir. 1962).......................................................7, 8

*Holder v. Holder*, 305 F.3d 854 (9th Cir. 2002) .........................................................1

*Howard v. Am. Online Inc.*, 208 F.3d 741 (9th Cir. 2000) ..........................................17, 18

*In re Sapient Corp. Derivative Litig.*, 555 F. Supp. 2d 259 (D. Mass. 2008)..............................11

*In Re: Section 16(b) Litig.*, 602 F. Supp. 2d 1202 (W.D. Wash. 2009)....................................8, 10

*In re Silicon Graphics Inc. Secs. Litig.*, 183 F.3d 970 (9th Cir. 1999)..........................................11

*J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815 (7th Cir. 1991)....................................20

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991)....................................................5

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ................................................14

*Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397 (9th Cir. 1991) ...............16

*Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531 (9th Cir. 1989)............................................14

*Noll v. Peterson*, No. Civ. 01-02-N-EJL, 2001 WL 721733 (D. Idaho May 14, 2001) ...............15

*Potter v. Hughes*, 546 F.3d 1051 (9th Cir. 2008) ...............................................................6, 8, 9, 10

*Renfro v. F.D.I.C.*, 773 F.2d 657 (5th Cir. 1985) .........................................................................8

*Rouser v. White*, 630 F. Supp. 2d 1165 (E.D. Cal. 2009) ..............................................................1

*Saine v. A.I.A., Inc.*, 582 F. Supp. 1299 (D. Colo. 1984)..................................................16, 18, 20

*Schreiber Distrib. Co. v. Serv-Well Furn. Co., Inc.*, 806 F.2d 1393 (9th Cir. 1986)....................18

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529 (9th Cir. 1992) ..........................................................17

*Shlensky v. Dorsey*, 574 F.2d 131 (3rd Cir. 1978).........................................................7, 8, 11, 12

*Smachlo v. Birkelo*, 576 F. Supp. 1439 (D.C. Del. 1983).............................................................11

*Sorosky v. Burroughs Corp.*, 826 F.2d 794 (9th Cir. 1987)..........................................................19

*Sun Savings and Loan Ass'n v. Dierdorff*, 825 F.2d 187 (9th Cir. 1987).....................................15

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ...............................................................3, 14

*Telesaurus VPC, LLC v. Power*, ___ F.3d ___, 2010 WL 3928945 (9th Cir. 2010)..............19, 20

*United Energy Owners Comm., Inc. v. U.S. Energy Mgmt. Sys., Inc.*, 837 F.2d 356 (9th
   Cir. 1988)....................................................................................................................17

*Weisbuch v. County of Los Angeles*, 119 F.3d 778 (9th Cir. 1997).........................................5, 17

## FEDERAL RULES

Federal Rule of Civil Procedure 23.1 ...............................................................................5, 6, 10, 11

Federal Rule of Civil Procedure 8 ...............................................................................................4

Federal Rule of Civil Procedure 9(b)....................................................................................4, 14, 15, 16

## STATE CASES

*Ass'n of Commonwealth Claimants v. Hake*, 2 Neb. App. 123, 507 N.W.2d 665
(Ct. App. 1993) ..................................................................................................6

*Cantwell v. City of Boise*, 146 Idaho 127, 191 P.3d 205 (2008)...................................14

*Johnston v. Box*, 903 N.E.2d 1115 (Mass. 2009)...........................................................11

*Mannos v. Moss*, 143 Idaho 927, 155 P.3d 1166 (2007) ...............................................10

*McCann v. McCann*, 138 Idaho 228, 61 P.3d 585 (2002) .............................6, 7, 8, 9, 10

*New Crawford Valley, Ltd. v. Benedict*, 847 P.2d 642 (Colo. App. 1993) ......................9

*Orrock v. Appleton*, 147 Idaho 613, 213 P.3d 398 (2009) ..............................................6

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ..............................................................11

*Taylor v. McNichols*, ___ Idaho ___, 2010 WL 3448851 (Sept. 3, 2010)...................2, 9

*Wesco Autobody Supply, Inc. v. Ernest*, ___ Idaho ___, 2010 WL 2927078
(July 28, 2010) ..........................................................................................13, 14

*Witt v. Jones*, 111 Idaho 165, 722 P.2d 474 (1986).....................................................15

## STATE STATUTES

Idaho Code § 30-1-741 ..................................................................................................5, 9

Idaho Code § 30-1-742 .....................................................................................................5

## SECONDARY SOURCES

19 Am. Jur. 2d Corporations § 2277 (1986) ...................................................................5, 6

3B Moore's Federal Practice pp. 23.1-81 to 23.1-82 (2d ed. 1977) ..................................7

13 William M. Fletcher et al., Cyclopedia of the Law of Private Corporations § 5968
(rev. perm. ed. 1991)...................................................................................................6

7C Wright Miller and Kane, Federal Practice and Procedure § 1831 (3d ed. 2007) .......5

Defendants Hudson Insurance Company ("Hudson")[1] and Kent Petersen ("Petersen," or together "the Hudson Defendants"), through their attorneys, Holland & Hart LLP, respectfully submit this memorandum in support of their motion to dismiss.

## I.    INTRODUCTION

The Hudson Defendants are innocent bystanders in a legal grudge match that Reed Taylor and his ex-wife Donna have launched against Reed's brother John Taylor; John's ex-wife Connie; John's business associates; companies of which John has some measure of control; and the companies' attorneys.  This is the *seventh* lawsuit filed by Reed or Donna in the last four years arising out of the same basic fact pattern.  Having failed so far to obtain their pound of flesh in the Idaho state court system against the other nine defendants, Plaintiffs now attempt to drag the Hudson Defendants and Growers National Cooperative Insurance Agency into this morass through this action styled as a shareholder derivative lawsuit with jurisdiction based on a frivolous RICO claim.

The Hudson Defendants anticipate that the other defendants will ask the Court to dismiss or abstain from taking up this litigation because of the pending state court actions.[2]  The Hudson Defendants, however, respectfully request this Court dismiss the claims against them with prejudice because Plaintiffs failed to make an adequate demand as required under Idaho law.  The Hudson Defendants also seek dismissal with prejudice because Plaintiffs assert no discernable legal claim against them and leave to amend the Complaint to "fix" the deficiencies would be futile.  The facts underlying the Complaint have now been pled in seven cases.  And the complaints in many of the cases have been amended numerous times.  Plaintiffs have had

---

[1] Hudson is misnamed in the Complaint as "Hudson Insurance Group."

[2] "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Dunn v. Castro*, --- F.3d ----, 2010 WL 3547637, at *8 n.6 (9th Cir. 2010).  And "[a] court may take judicial notice of orders and filings in another court."  *Rouser v. White*, 630 F. Supp. 2d 1165, 1171 n.1 (E.D. Cal. 2009) (citing *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002)).  To the extent the Court does not dismiss the Hudson Defendants based on the arguments herein, the Hudson Defendants join the abstention arguments raised by the other defendants.

more than ten bites at the apple.  They are not entitled to another.  The Hudson Defendants have no business being the subject of Reed's and Donna's personal vendetta.

## II.   SUMMARY OF FACTS AND PROCEDURAL HISTORY

Given this Court's strict briefing page limit, the Hudson Defendants will not attempt to summarize the epic legal battle waged by Reed and Donna against Reed's brother John.  The Hudson Defendants believe that the other defendants will provide much of this background to the Court as part of their pre-answer motions.  Also, some of the background is available in *Taylor v. McNichols*, ___ Idaho ___, 2010 WL 3448851 (Sept. 3, 2010) (the "Reported Decision").  The Hudson Defendants will focus on those particular factual matters relevant to their motion.

This lawsuit is ostensibly a derivative action brought by Plaintiffs Donna Taylor and Dale Miesen on behalf of AIA Services Corporation ("AIA Services") and its wholly-owned subsidiary AIA Insurance, Inc. ("AIA Insurance," and, together with AIA Services, the "Companies").  One of the Complaint's key allegations is that John Taylor and his allies improperly seized the Companies' corporate opportunity when John founded Defendant Crop USA Insurance Agency, Inc. ("Crop USA") to participate in the crop insurance business.  Plaintiffs allege that the Hudson Defendants participated in the principal defendants' wrongdoing when Hudson purchased Crop USA's assets in 2008.  As they must, the Hudson Defendants will assume for the purposes of their motion that the Complaint's factual allegations are true.

Plaintiffs' Complaint asserts the following claims against the Hudson Defendants:

| **Hudson Defendant** | **Cause of Action** |
|---|---|
| Hudson Insurance Company | 1—RICO |
| | 3—Aiding and Abetting Breaches of Fiduciary Duty |
| | 5—Tortious Interference with Contractual Relationship/ Business Expectancies |
| Kent Petersen | 1—RICO |
| | 2—Breach of Fiduciary Duty |
| | 3—Aiding and Abetting Breaches of Fiduciary Duty |
| | 5—Tortious Interference with Contractual Relationship/ Business Expectancies |
| | 7—Breach of Contract |
| | 8—Fraud/Fraudulent Concealment/Constructive Fraud |

Reed Taylor, in his personal capacity, previously filed four lawsuits in the Idaho state court system against John Taylor or related defendants, while Reed's ex-wife Donna Taylor, in her personal capacity, previously filed two such lawsuits.  Among Donna's pending lawsuits is *Donna Taylor v. AIA Services Corp*., Case No. CV 09-2470, Second Judicial District Court, County of Nez Perce.  That lawsuit is hereinafter referred to as "Donna Taylor II" and the First Amended Complaint in that lawsuit is attached hereto as Exhibit A.  In Donna Taylor II, Donna sued AIA Services seeking, among other things, a judgment awarding her damages of at least $430,000.  Donna Taylor II is stayed pending the outcome of other state court litigation regularly referred to by the parties as the "Underlying Case."  (The Idaho Supreme Court, in the Reported Decision, also refers to that litigation as the Underlying Case.)

Recognizing that a derivative claim must rely on a preceding demand upon the corporate board, Plaintiffs rely on a July 21, 2008 demand letter (the "Demand") from Donna and her ex-husband Reed to the Companies' boards (the "Boards").  The Complaint states that the Demand is attached as an exhibit, but it is not.  The Demand is attached hereto as Exhibit B and is properly considered in ruling on the Hudson Defendants' motion.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("court may consider a writing referenced in a complaint but not explicitly incorporated therein").

Like this lawsuit, the Demand is substantially based upon the supposed diversion of the Companies' corporate opportunity in the crop insurance business to Crop USA.  However, while the Demand articulates 27 factual instances of purported wrongdoing and identifies eight potential defendants, the Demand does not mention the Hudson Defendants at all.  Nor does it contain a single word regarding the transaction between the Hudson Defendants and Crop USA. And the Complaint admits that co-plaintiff Dale Miesen made no demand upon the Companies.

### III.    SUMMARY OF ARGUMENT

**A.    DONNA'S WRITTEN DEMAND IS INSUFFICIENT UNDER IDAHO LAW.**

The Complaint references the Demand that Reed and Donna delivered to the Boards on July 21, 2008.  Dkt. 1, ¶ 5.1.  This is the only written demand on the Boards.  The Demand is

facially deficient and cannot support a derivative action against the Hudson Defendants because it fails to identify any of the Hudson Defendants as potential targets of a claim, and the allegations against the Hudson Defendants in the Complaint do not appear at all, in any form, in the Demand. *Infra* at 5-8.

**B.     DONNA LACKS STANDING BECAUSE SHE CANNOT FAIRLY REPRESENT AIA SERVICES.**

Where a shareholder files suit on her own behalf seeking to recover damages from the corporation for her own benefit, she does not have standing to bring a derivative action. Donna filed Donna Taylor II, still pending in Nez Perce County, against AIA Services seeking on her own behalf, among other relief, corporate money and assets in an amount not less than $430,000. She therefore lacks standing to pursue derivative claims in this case. *Infra* at 8-9.

**C.     MIESEN'S ALLEGATION OF DEMAND FUTILITY IS INSUFFICIENT UNDER IDAHO LAW.**

Plaintiff Dale Miesen pleads demand futility as a justification for his failure to make a written demand. But Idaho courts do not recognize the doctrine of demand futility. And Miesen cannot argue demand futility because Donna, his co-plaintiff, made a demand. *Infra* at 9-12.

**D.     PLAINTIFFS FAIL TO STATE NON-RICO CLAIMS UPON WHICH RELIEF CAN BE GRANTED.**

Plaintiffs assert a number of claims that require pleading with particularity under Rule 9(b). But Plaintiffs fail to plead those claims with particularity. Moreover, Plaintiffs' recitation of the elements of a claim, supported only by mere conclusory statements, do not suffice to meet the pleading standard of Rule 8 as set forth by the United States Supreme Court. Ignoring legal conclusions couched as factual allegations, Plaintiffs are left with no allegations to suggest any entitlement to relief against the Hudson Defendants. *Infra* at 12-15.

**E.     PLAINTIFFS FAIL TO STATE RICO CLAIMS UPON WHICH RELIEF CAN BE GRANTED.**

The legal standards applicable to determining whether civil RICO claims are sufficiently pled is distinct from those applicable to other civil claims. The necessary analysis is set forth below, and reveals, unsuprisingly, that the Complaint's RICO allegations fall far short of legal requisites. Plaintiffs' RICO claims must also be dismissed. *Infra* at 15-19.

## IV.    STANDARD ON RULE 12(b)(6) MOTION TO DISMISS

The Court is well aware of the applicable Rule 12(b) standards.  A court may dismiss under Rule 12(b)(6) in two circumstances.  First, a court may dismiss a complaint where its factual allegations establish a bar to the relief the plaintiff seeks.  *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997).  Second, the more familiar situation warranting dismissal occurs where "the factual allegations in [the] complaint" do not "plausibly suggest an entitlement to relief."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 561 (2007) .  The Hudson Defendants' motion is properly granted under both standards.

## V.    ARGUMENT

### A.    STATE SUBSTANTIVE LAW CONTROLS WHO CAN ASSERT A SHAREHOLDER DERIVATIVE ACTION.

Since the United States Supreme Court's decision in *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90 (1991), "it has been clear that state law controls what constitutes a sufficient demand or excuse and federal Rule 23.1 speaks solely to whether plaintiff has set forth adequate allegations to meet that requirement."  *See* 7C Wright Miller and Kane, Federal Practice and Procedure § 1831 (3d ed. 2007).  Idaho Code § 30-1-741 describes who can bring a shareholder derivative action, and Idaho Code § 30-1-742 provides that a qualifying shareholder must make a written demand before bringing a derivative action.  Neither Donna nor Dale Miesen satisfies Idaho's substantive legal requirements as applied to the Hudson Defendants. All claims against the Hudson Defendants must be dismissed.

### 1.    Donna's Demand is Plainly Insufficient Because it Does not Name the Hudson Defendants or Describe the Factual Basis of any Alleged Wrongdoing by the Hudson Defendants.

#### a.    Idaho's Derivative Action Demand Requirements.

Idaho Code § 30-1-742 states that "[n]o shareholder may commence a derivative proceeding until . . . [a] written demand has been made upon the corporation to take suitable action."  The Idaho Supreme Court has set forth the requirements of a written demand:

> Statements should be presented to the directors showing the wrong complained of, accompanied by sufficient responsible data which

> will enable the directors to determine whether litigation could be engaged in with some hope of success.  The shareholder must state facts, not mere general charges and conclusions.
>
> The demand should give the directors a fair opportunity to initiate the action which the shareholder wants to undertake, and name the potential defendants, as well as the shareholder making the demand.

*McCann v. McCann*, 138 Idaho 228, 234-35, 61 P.3d 585, 591-92 (2002) (quoting 19 Am. Jur. 2d Corporations § 2277, 172-73, (1986)); *see also Orrock v. Appleton*, 147 Idaho 613, 620, 213 P.3d 398, 405 (2009).

Other jurisdictions with similar demand statutes have articulated the same requirements. *See, e.g.*, *Ass'n of Commonwealth Claimants v. Hake*, 2 Neb. App. 123, 130, 507 N.W.2d 665, 669-70 (Ct. App. 1993) ("The demand notice and request should set forth the persons to be sued, and should describe all the claims which it is intended to assert.") (quoting 13 William M. Fletcher et al., Cyclopedia of the Law of Private Corporations § 5968 at 178 (rev. perm. ed. 1991)); *Allison on Behalf of Gen. Motors Corp. v. Gen. Motors Corp.*, 604 F. Supp. 1106, 1117 (D.C. Del. 1985).

The demand requirement "is not merely a technical or unimportant requirement."  *Potter v. Hughes*, 546 F.3d 1051, 1057 (9th Cir. 2008).  "[T]he general rule of American law is that the board of directors controls a corporation."  *Id.*  Therefore, "strict compliance with Rule 23.1 and the applicable substantive law is necessary before a derivative suit can wrest control of an issue from the board of directors."  *Id.*

### b.     Donna's Written Demand Fails Under Idaho Law.

In July 2008, Donna made her Demand on the Boards.  *See* Exhibit B attached hereto.  In the Demand she asserts 27 "claims and/or causes of action" for "violating Rules of Professional Conduct, malpractice, breach of fiduciary duties, and aiding and abetting."  Donna demanded the Boards initiate legal action against the law firms of Hawley Troxell; Clements, Brown & McNichols; Quarles & Brady; individuals R. John Taylor, Michael Cashman, James Beck, Connie Taylor, and the corporation Crop USA.  The Demand fails under Idaho law as to the Hudson Defendants because the Demand *does not even mention* Hudson or Petersen.  And none

of the "claims or causes of action" asserted in the Demand identify the factual allegations underlying the claims pled against Hudson or Petersen in Plaintiffs' Complaint.

### (1) Donna Taylor's Demand Fails to Identify any of the Hudson Defendants.

The Idaho Supreme Court expressly adopted the requirement that potential defendants must be named in the demand. *See McCann*, 138 Idaho at 234-35, 61 P.3d at 591-92 ("The demand should give the directors a fair opportunity to initiate the action which the shareholder wants to undertake, *and name the potential defendants*, as well as the shareholder making the demand.") (emphasis added). Idaho courts have not examined a demand that fails to name the potential defendants. But other courts have. Where the complaint names a defendant not named in the demand, the complaint is properly dismissed as to that defendant. *See, e.g.*, *Shlensky v. Dorsey*, 574 F.2d 131, 142 (3rd Cir. 1978).

In *Shlensky*, the plaintiff/shareholder failed to name the defendant in the demand letters sent by the plaintiffs' attorneys to the board of directors. *Id.* at 141. And "there was nothing in the letter suggesting that [the defendant] . . . was intended to be included among the individuals referred to in the letter as responsible for damages incurred by the corporation." *Id.* The plaintiffs argued the defendant did not need to be named because "that the letters informed the directors of the basis of the claim they wished enforced by the corporation and that this was sufficient notice." *Id.* The court disagreed. "[T]here can be no claim for damages against an unknown and unspecified party." *Id.* The court continued in stating that the demand was "completely lacking in the specificity which would give the directors a fair opportunity to initiate the action, which the shareholders subsequently undertook, which it is the purpose of the demand requirement of the rule to provide." *Id.* (citing *Halprin v. Babbitt*, 303 F.2d 138, 141 (1st Cir. 1962); 3B Moore's Federal Practice pp. 23.1-81 to 23.1-82 (2d ed. 1977)).

The Hudson Defendants are not named as potential defendants or even mentioned in the Demand. Nor could they be because the asset acquisition complained of did not occur until after the date of the Demand. *Compare* Exhibit B attached hereto (date of Demand July 21, 2008) *with* Dkt. 1, ¶ 4.39 (date of acquisition August 29, 2008). The Boards did not have a fair

opportunity to initiate an action against the Hudson Defendants as required by Idaho law. Plaintiffs' claims against the Hudson Defendants must be dismissed for failure to make a demand. *McCann*, 138 Idaho at 234-35, 61 P.3d at 591-92; *Shlensky*, 574 F.2d at 142.

### (2)   Donna's Demand Fails to Assert the Alleged Wrongdoing.

The Demand further fails to identify the supposed wrongdoing of the Hudson Defendants Plaintiffs allege in their Complaint. Donna gave no indication in the Demand of the "wrong complained of" or the "action which the shareholder wants to undertake" against the Hudson Defendants. *See McCann*, 138 Idaho at 234-35, 61 P.3d at 591-92; *see also Potter*, 546 F.3d at 1057 (stating that a board is not "required to piece together by inference the disparate events that, if taken together, might have been sufficient to require corporate action"); *Halprin*, 303 F.2d at 141 (noting that directors must be "given full knowledge of the basis for the claim").[3]

A district court within the Ninth Circuit recently addressed this issue. *See In Re: Section 16(b) Litig.*, 602 F. Supp. 2d 1202 (W.D. Wash. 2009). The court dismissed the plaintiff's complaint because the demand letters "failed to sufficiently identify the factual basis of the wrongful acts." *Id.* at 1212. Specifically, the court concluded that the "demand letters do not describe the same alleged wrongdoing that she later describes in her complaints." *Id.* The Fifth Circuit reached the same conclusion. *See Renfro v. F.D.I.C.*, 773 F.2d 657, 660 (5th Cir. 1985). The court affirmed the district court's grant of the defendant's motion to dismiss stating that the demand "included no information about the allegedly wrongful actions of the [defendants]." *Id.*

The allegations against the Hudson Defendants set forth in Plaintiffs' Complaint are not contained or even suggested in Donna's Demand. For this reason Plaintiffs' claims against the Hudson Defendants must be dismissed.

---

[3] The timing of Donna's (and Reed's) Demand is telling. They made the Demand before the asset acquisition complained of, and they made the Demand shortly before Reed filed his second lawsuit in Idaho state court. (This suit is referred to by other defendants as "Hawley Troxell I"). The Demand was clearly prepared for that litigation and the Hudson Defendants were not and are not part of that litigation. The Demand simply does not contemplate a suit against the Hudson Defendants, and certainly did not give the Boards an opportunity to evaluate the merits of a lawsuit against the Hudson Defendants.

### 2.   Donna Lacks Standing to Assert this Derivative Action Because she Cannot Fairly and Adequately Represent the Interests of the Corporation.

Idaho Code § 30-1-741 provides that "[a] shareholder may not commence or maintain a derivative proceeding unless the shareholder . . . [f]airly and adequately represents the interests of the corporation in enforcing the right of the corporation."  Where a plaintiff previously filed suit seeking to recover corporate money or assets for her own benefit, she cannot fairly and adequately represent the interests of the corporation.  *Taylor*, 2010 WL 3448851, at *25 n.6 (citing *New Crawford Valley, Ltd. v. Benedict*, 847 P.2d 642, 647 (Colo. App. 1993) (noting where a "plaintiff seeks to have the [corporation's] assets applied to the satisfaction of a personal claim, rather than transferred to the corporation, represents a serious conflict of interest"); *Guenther v. Pac. Telecom, Inc.*, 123 F.R.D. 341, 345 (D. Ore. 1987) (same)).

In November 2009, Donna filed Donna Taylor II as an individual against AIA Services. In that suit, currently stayed pending the outcome of the Underlying Case, Donna seeks a ruling that AIA Services breached a contract to her, and that she is entitled to more than $430,000.  *See* Exhibit A attached hereto, ¶¶ 48-50.  That action, seeking to recover corporate money and assets of AIA Services for her own benefit, prevents Donna from "fairly and adequately representing the interests of the corporation."  *Taylor*, 2010 WL 3448851, at *25 n.6.  Her derivative claims against the Hudson Defendants therefore must be dismissed.

### 3.   Miesen Cannot Rely on Donna's Demand and his Assertion of Demand Futility is Properly Rejected.

Dale Miesen, co-plaintiff to Donna Taylor in this action, did not make a written demand on the Boards.  Miesen asserts that he is not required to make a demand on the Boards because Donna made a demand.  Dkt. 1, ¶ 5.9.  In the alternative, Miesen asserts that he is excused from submitting a separate demand under the doctrine of demand futility.  *Id.*, ¶ 5.10.  Controlling case law specifically rejects both of Miesen's arguments.

#### a.   Miesen Cannot Rely on Donna's Demand.

Aside from the fact that Donna's written Demand is insufficient under Idaho law as applied to the Hudson Defendants, Miesen cannot rely on her Demand as the predicate for his Complaint.  *McCann*, 138 Idaho at 234-35, 61 P.3d at 591-92 ("The demand should . . . name the

. . . shareholder making the demand."); *see also Potter*, 546 F.3d at 1057 (holding that the identification of one plaintiff in a demand letter does not relieve a co-plaintiff of the obligation to make a demand specifically identifying himself as the demander).  In *Potter*, the Ninth Circuit reasoned, "[t]he identity of the complaining shareholder may shed light on the veracity or significance of the facts alleged in the demand letter, and the Boards might properly take a different course of action depending on the shareholder's identity."  *Id.*

Miesen did not make his own demand on the Boards as required under Idaho law.  His failure to make a demand identifying himself as the shareholder requires dismissal of his claims.  *See Potter*, 546 F.3d at 1057.

### b.    Miesen's Allegation of Demand Futility is Properly Rejected.

Miesen asserts that he is excused from submitting a derivative demand letter under the doctrine of futility.  Dkt. 1, ¶ 5.10.  But that assertion is properly rejected for two independent reasons: (1) Idaho does not recognize the doctrine of demand futility; and (2) Donna's July 21, 2008 Demand precludes co-plaintiff Miesen from asserting futility.

### (1)    Idaho Courts do not Recognize the Doctrine of Futility, and the "Federal Exception" That Miesen Seeks Does not Exist.

Miesen properly concedes that Idaho courts do not recognize the doctrine of demand futility.  Dkt. 1, ¶ 5.10.[4]  Miesen erroneously asserts, however, that "the doctrine of futility still applies to federal claims, including RICO claims, and thus the federal [futility] exception would apply."  *Id.*, ¶ 5.11.

Miesen is wrong.  There is no such thing as a federal futility exception.  Federal Rule of Civil Procedure 23.1 is merely the "procedural manifestation of the state law of corporate governance regarding the right of a shareholder to bring a derivative suit on behalf of a corporation."  *In Re: Section 16(b) Litig.*, 602 F. Supp. 2d at 1211 (looking to state substantive law to determine if Plaintiff could pursue her derivative suit claiming a violation of § 16(b) of

---

[4] The Idaho Supreme Court held that "the legislative intent in enacting Idaho Code § 30-1-742 was to no longer recognize 'futility' as an exception to the requirement of demand as a condition preceding the institution of a shareholder's derivative action."  *Mannos v. Moss*, 143 Idaho 927, 934, 155 P.3d 1166, 1173 (2007).

the Securities and Exchange Act of 1934). "Rule 23.1 . . . does not establish the circumstances under which a demand would be futile . . . [f]or these standards, we turn to the law of the state of incorporation." *In re Silicon Graphics Inc. Secs. Litig*, 183 F.3d 970, 989-90 (9th Cir. 1999). Miesen's argument that the a "federal exception" applies is properly rejected.

### (2)    Donna's Demand Precludes Miesen from Arguing Futility.

Even if an allegation of futility were proper under Idaho law, which it is not, Donna's Demand precludes co-plaintiff Miesen from asserting futility. *Johnston v. Box*, 903 N.E.2d 1115, 1121 (Mass. 2009) ("[W]hen one plaintiff, who is a party to a suit, makes a demand on the board, both the plaintiff and any coplaintiffs are precluded from arguing demand futility"). By making her July 2008 Demand on the Boards, Donna conceded the independence and disinterestedness of a majority of the board. *See Rales v. Blasband*, 634 A.2d 927, 935 n.12 (Del. 1993). Miesen, as her co-plaintiff, is therefore precluded from arguing that a demand on the Boards would have been futile.

### 4.    The Failure to Make a Demand Requires Dismissal with Prejudice of All of Plaintiffs' Claims Against the Hudson Defendants.

Plaintiffs' claims against the Hudson Defendants must be dismissed with prejudice. *See, e.g., Smachlo v. Birkelo*, 576 F. Supp. 1439, 1445 (D. Del. 1983) (dismissing complaint with prejudice because the plaintiffs failed to make a proper demand on the board). And dismissal with prejudice is supported by sound reasoning. "Rule 23.1 specifically calls upon the complaint to show that demand was made or was properly excused; there is no provision for *thereafter* remedying an omission in the same suit, especially after the defendants have moved to dismiss because of the absence of a demand." *In re Sapient Corp. Derivative Litig.*, 555 F. Supp. 2d 259, 262 (D. Mass. 2008) (emphasis in original); *Galef v. Alexander*, 615 F.2d 51, 59 (2d Cir. 1980) ("Rule 23.1 . . . is essentially a requirement that a stockholder exhaust his intracorporate remedies before bringing a derivative action"). To hold that a derivative demand "may be made on the directors *after* a derivative suit has been initiated would be to reduce the demand requirement of the rule to a meaningless formality." *Shlensky*, 574 F.2d 131 at 142 (emphasis added). "Indeed, such an approach would effectively cripple the spirit and intent of the rule,

which is to give corporate authorities an opportunity to deal with shareholder grievances prior to a derivative action being brought." *Grossman v. Johnson*, 89 F.R.D. 656, 661 (D. Mass. 1981). "[A] shareholder demand must be made of appropriate corporate authorities *before* bringing suit. A post-suit demand simply does not meet the Rule's procedural prerequisite." *Id.* at 660-61 (emphasis added).

Plaintiffs failed to abide by the statutory requirement of a demand on the board *before* asserting this derivative suit. Dismissal of Plaintiffs' claims without prejudice would reduce the demand requirement of the rule to a meaningless formality. *Shlensky*, 574 F.2d 131 at 142. All of their claims against the Hudson Defendants must be dismissed with prejudice.

**B.** **PLAINTIFFS' NON-RICO CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO PLEAD ALLEGATIONS UPON WHICH RELIEF CAN BE GRANTED.**

The Supreme Court has recently considered the principles relevant to a motion to dismiss in *Iqbal*, 129 S. Ct. 1937, and *Twombly*, 550 U.S. 544. The Supreme Court directed federal courts to apply a more demanding standard to complaints in order to prevent "anemic cases" from going forward. *Twombly*, 550 U.S. at 559. In *Iqbal*, the Court reiterated that "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.'" 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). A claim will survive a motion to dismiss only if it "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Supreme Court drew an important distinction between the weight to be given the factual allegations in a complaint on one hand, and legal conclusions on the other. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Courts must first identify "the allegations in the complaint that are not entitled to the assumption of truth" and then

to "consider the factual allegations in . . . [the] complaint to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 129 S. Ct. at 1951.

Plaintiffs assert two non-RICO claims against Hudson, and five non-RICO claims against Petersen. Each claim against Hudson must be dismissed for failure to make proper factual allegations. And three of the five claims against Petersen—tortious interference with contractual relationships/business expectancies, fraud/fraudulent concealment/constructive fraud, and aiding and abetting fraud—must be dismissed for the same reason.

**1. Fifth Cause of Action – Tortious Interference With Contractual Relationships/Business Expectancies.**

Plaintiffs assert their fifth cause of action against both Hudson Defendants. But it is unclear what claim Plaintiffs intend to assert by their fifth cause of action for "tortious interference with contractual relationships/business expectancies." *See* Dkt. 1, ¶¶ 6.37-6.40. While Idaho recognizes claims for "tortious interference with contract" and for "intentional interference with a prospective economic advantage," Plaintiffs' Complaint fails to allege factual allegations to support either claim against either of the Hudson Defendants.

**a. Plaintiffs Fail to Plead Tortious Interference With Contract.**

Tortious interference with contract requires: "(1) the existence of a contract; (2) knowledge of the contract on the part of the defendant; (3) intentional interference causing a breach of the contract; and (4) injury to the plaintiff resulting from the breach." *Wesco Autobody Supply, Inc. v. Ernest*, ___ Idaho ___, 2010 WL 2927078, at *12 (July 28, 2010). Plaintiffs do not even allege the threshold requirement—existence of a contract. As must follow, Plaintiffs do not assert factual allegations to support the other three elements of the claim. This claim must be dismissed.

**b. Plaintiffs Fail to Plead Intentional Interference With a Prospective Economic Advantage.**

Intentional interference with a prospective economic advantage has five elements: "(1) the existence of a valid economic expectancy, (2) knowledge of the expectancy on the part of the interferer, (3) intentional interference inducing termination of the expectancy, (4) the

interference was wrongful by some measure beyond the fact of the interference itself, and
(5) resulting damage to the plaintiff whose expectancy has been disrupted." *Wesco Autobody*,
2010 WL 2927078, at *10.

As an initial matter, the only business expectancy Plaintiffs allege is between AIA and
Growers National. *See* Dkt. 1, ¶ 6.38 ("AIA has business expectancies with Growers National").
Because Plaintiffs bring their lawsuit "on behalf of and/or in the right of AIA Services
Corporation and its wholly owned subsidiary AIA Insurance" (*see* Dkt. 1 at p. 1), the alleged
business expectancy is nothing more than an expectancy between a plaintiff and a defendant,
which is insufficient as a matter of law. *See Cantwell v. City of Boise*, 146 Idaho 127, 138, 191
P.3d 205, 216 (2008). On this basis alone, this claim fails as to both of the Hudson Defendants.

And the specific allegations pled against each of the Hudson Defendants further
demonstrates that dismissal is appropriate. Plaintiffs' only allegation against Hudson provides:
"By purchasing these assets with full knowledge that Crop USA could not lawfully sell the asset,
Hudson Insurance Group also interfered with the business expectancies of AIA and is jointly and
severally liable to AIA for damages arising from the business tort." *See* Dkt. 1, ¶ 6.40. This
single conclusory allegation fails the *Iqbal/Twombly* standard, requiring dismissal of this claim
against Hudson. Plaintiffs list Petersen as a defendant against whom they assert their fifth cause
of action. *See* Dkt. 1 at p. 40. But Plaintiffs make no factual allegations as to Petersen relative to
this claim. This claim against Petersen therefore also must be dismissed.

## 2. Eighth Cause of Action–Fraud/Fraudulent Concealment/Constructive Fraud.

Plaintiffs assert their eighth cause of action against Petersen and three other defendants
who are not Hudson Defendants. Federal Rule of Civil Procedure 9(b) imposes a requirement
that "a party must state with particularity the circumstances constituting fraud or mistake." A
fraud claim must describe the alleged fraud in enough detail, so that a defendant can prepare a
sufficient answer. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

When a fraud claim involves multiple defendants as in this case, "Rule 9(b) does not
allow a complaint to merely lump multiple defendants together but requires plaintiffs to

differentiate their allegations . . . [to] inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 765. "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged" in order to satisfy Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

Plaintiffs failed to comply with the particularity requirements of Rule 9(b). Their allegations of "concealment" against Petersen are vague and non-specific. *See* Dkt. 1, ¶¶ 6.58 & 6.61. The allegations merely lump together John Taylor, James Beck, Michael Cashman and Kent Petersen. Plaintiffs do allege any specifics about the fraud and fail to assert any allegations as to the nine required elements of a fraud claim. *See Witt v. Jones*, 111 Idaho 165, 168, 722 P.2d 474, 477 (1986) (setting forth the nine elements of a fraud claim in Idaho). Plaintiffs offer only bare, conclusory statements. This is completely inadequate to state any claim, let alone a fraud claim.

### 3.     Ninth Cause of Action – Aiding and Abetting Fraud

Plaintiffs made allegations as to this cause of action against Petersen but do not attribute this cause of action to Petersen. *See* Dkt. 1 at p. 45 (naming Taylor, Beck, Cashman, Babbitt, Riley, Ashby, Hawley Troxell). To the extent Plaintiffs allege this claim against Defendant Petersen, the claim must be dismissed for the same reasons Plaintiffs' fraud/ fraudulent concealment/constructive fraud claim must be dismissed.

### C.     PLAINTIFFS' RICO CLAIMS  MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO PLEAD ALLEGATIONS UPON WHICH RELIEF UNDER RICO CAN BE GRANTED.

Plaintiffs' RICO claim is a hollow attempt to manufacture federal jurisdiction and a right to treble damages and attorneys' fees. To state a RICO claim, Plaintiffs must allege injury due to: "(1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sun Savings and Loan Ass'n v. Dierdorff,* 825 F.2d 187, 191 (9th Cir. 1987); *see also Noll v. Peterson*, No. Civ. 01-02-N-EJL, 2001 WL 721733, at *4 (D. Idaho May 14, 2001) (dismissing a RICO claim that failed to plead "the *prima facie* elements of a civil RICO violation"). "In considering civil RICO claims, a court must be mindful of the devastating effect such claims may have on defendants. Civil RICO should not be used to transform a 'garden variety fraud or

breach of contract case . . . into a vehicle for treble damages.'" *Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612, 622 (S.D.N.Y. 2006).

Plaintiffs' RICO claim must be dismissed because it: (1) lacks the required specificity; (2) fails to allege an "enterprise" separate from the corporate defendants; (3) fails to allege a "pattern of racketeering activity;" and (4) fails to allege a threat of "continuity" of the enterprise. Plaintiffs instead allege ordinary tort, breach, and fraud claims (which also fail under Rule 12).

### 1. Plaintiffs' Allegations Lack the Required Specificity.

The Ninth Circuit "has repeatedly insisted" that Rule 9(b) controls "RICO actions alleging the predicate act of mail fraud." *Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). Failure to allege specifics of time, place or nature of alleged communications forming predicate acts is a "fatal defect." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1989). As one court has observed regarding specificity:

> Because it is a complicated statute that covers conduct ranging from sports bribery to white slave traffic, a defendant needs a substantial amount of information to prepare a response. *A RICO defendant also needs to be protected from unscrupulous claimants lured by the prospect of treble damages, and it should be the policy of the law, within the procedural constraints of our system, to provide this protection.* A charge of racketeering, with its implications of links to organized crime, should not be easier to make than accusations of fraud. *RICO should not be construed to give a pleader license to bully and intimidate nor to fire salvos from a loose cannon.*

*Saine v. A.I.A., Inc.*, 582 F. Supp. 1299, 1306 n.5 (D. Colo. 1984) (emphasis added).

Plaintiffs' allegations fall woefully short of the specificity requirement. First, Plaintiffs essentially concede lack of specificity, noting that their RICO allegations "are submitted for notice pleading purposes only." Dkt. 1, ¶ 6.9. Second, Plaintiffs do not identify a single piece of mail, email, fax or wire transfer involving the Hudson Defendants. Plaintiffs identify Petersen only three times in connection with the RICO claim (*see id*., ¶¶ 6.5, 6.12), and identify Hudson only two times in connection with the RICO claim (*see id*., ¶¶ 6.10, 6.12). None of these allegations identifies a time, place or nature of alleged communications forming predicate acts. And Plaintiffs' allegations that lump Hudson and Petersen together with "all defendants named

under this cause of action" likewise fail to identify a time, place or nature of alleged communications forming predicate acts. *See id.* ¶¶ 6.3, 6.10, 6.13.

Plaintiffs' general and vague allegations "based on mail and wire fraud" are a "fatal defect" to Plaintiffs' RICO claim. *See Albright,* 862 F.2d at 1392. On this basis alone, Plaintiffs' RICO claim must be dismissed.

### 2.    Plaintiffs' Alleged "RICO Enterprise" is Also a Corporate Defendant.

The Ninth Circuit has stated that a "RICO defendant and the RICO enterprise cannot be the same entity under RICO section 1962(c)." *United Energy Owners Comm., Inc. v. U.S. Energy Mgmt. Sys., Inc.,* 837 F.2d 356, 358 (9th Cir. 1988). "Under RICO, an 'enterprise' is a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1533-1534 (9th Cir. 1992). "[A] corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity." *Bennett v. U.S. Trust Co. of N.Y.*, 770 F.2d 308, 315 (2d Cir. 1985). A complaint that places a corporation in both roles is properly dismissed. *Id.*

Plaintiffs name Crop USA as a defendant in the lawsuit (Dkt. 1, ¶ 3.13), *and* allege that Crop USA "was operated thereafter as a scheme or artifice to defraud AIA . . . i.e., as a 'racketeering enterprise' under 18 U.S.C. § 1961(4)" (*id.*, ¶ 6.3). By naming Crop USA as both a defendant and the RICO enterprise, Plaintiffs have pled factual allegations that establish a bar to the relief they seek. *See Weisbuch*, 119 F.3d at 783 n.1. Plaintiffs' RICO claim must therefore be dismissed.

### 3.    Plaintiffs Fail to Allege a Pattern of Racketeering Activity.

Even if Plaintiffs dismiss Crop USA as a defendant and continue to characterize Crop USA as the RICO enterprise, the result still must be dismissal. Plaintiffs have not and cannot allege a pattern of racketeering activity. RICO defines a "pattern of racketeering activity" as "at least two acts of racketeering activity" within 10 years of each other. *Howard v. Am. Online Inc.*, 208 F.3d 741, 746 (9th Cir. 2000). To show a "pattern," a plaintiff must prove a sufficient

number of "indictable" predicate acts and a threat of continued criminal activity. *Id*. at 748; *see also Aikens v. U.S. Transformer, Inc.*, No. CV-07-138-E-EJL-LMB, 2008 WL 695021, at *17 (D. Idaho Mar. 11, 2008). Plaintiffs look to the usual suspect predicates, mail and wire fraud. Dkt. 1, ¶ 6.1. These criminal statutes require more than sending letters and emails; they require "indictable" conduct, namely that: (1) defendants formed a scheme or artifice to defraud; (2) with the specific intent; and (3) used either the U.S. mail or wires to do so. *Schreiber Dist. Co. v. Serv-Well Furn. Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

Plaintiffs fail to allege any specific acts of fraudulent use of mails or wires by either Hudson or Petersen, individually or together. Nor do Plaintiffs identify which specific predicate acts occurred within 10 years of one another. *Howard*, 208 F.3d at 746. Rather, Plaintiffs "fire salvos from a loose cannon," *Saine,* 582 F. Supp. at 1306 n. 5, by making generalized, ill-defined allegations such as: "the defendants utilized the United States mail and/or interstate wires, e.g., email, in further of their activities" (Dkt. 1, ¶ 6.10); and "all defendants named under this [RICO] cause of action had knowledge of CropUSA's pattern of racketeering activity . . . and took overt acts to advance the interests of CropUSA" (*id.* ¶, 6.13). These allegations fail to assert a pattern of racketeering activity. For this reason Plaintiffs' RICO claim must be dismissed.

### 4.      Plaintiffs Fail to Allege Continuity.

"To satisfy the continuity requirement, Plaintiffs must prove either a series of related predicates extending over a substantial period of time, . . . or past conduct that by its nature projects into the future with a threat of repetition." *Howard,* 208 F.3d at 750. The predicate acts must be both related and pose a threat of continued criminal activity. *Aikens*, 2008 WL 695021, at *18 (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

With respect to Petersen, the Complaint appears to allege only three specific acts of "wrongful" conduct: (1) executing an "Officer's Agreement" with AIA on January 1, 2003 (Dkt. 1, ¶ 4.14); (2) executing an "Officer's Agreement" with Crop USA on November 15, 2004 (*id.*, ¶ 4.28); and (3) violating a non-compete clause on August 29, 2008 (*id.*, ¶ 4.43). But none of these acts constitute wire fraud or mail fraud. And there is no allegation of a relationship

between these alleged predicate acts to demonstrate a threat of continuing activity.  *Howard,* 208 F.3d at 750.

"Continuity" is even more difficult to discern with regard to Hudson, a corporate entity. Plaintiffs allege that Hudson: (1) "acquired business assets from CropUSA (assets rightfully belonging to AIA)" on August 29, 2008 (*id.*, ¶ 4.39); (2) "in exchange CropUSA agreed to write off $7.52 million in debt owed by CropUSA" (no date specified) (*id.*); (3) wrongfully employed Petersen (no date specified) (*id.*, ¶ 6.28); (4) "aided and abetted breaches of fiduciary duty" by Petersen (no date specified) (*id.*, ¶ 6.29); and (5) "interfered with the business expectancies of AIA" (no date specified) (*id.*, ¶ 6.40).  Again, these acts have no connection to wire or mail fraud, and cannot constitute a "pattern" of anything.

Petersen and Hudson are alleged to have engaged in very few *unrelated* acts of inherently *lawful* activity such as entering into agreements and acquiring assets. Plaintiff have not pled that Petersen or Hudson engaged in predicate acts that pose a threat of continued criminal activity.  Plaintiffs' RICO claims must also be dismissed for this reason.

### D.      PLAINTIFFS' NON-RICO AND RICO CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

A court may dismiss claims with prejudice where a "plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies."  *Telesaurus VPC, LLC v. Power*, ___ F.3d ___, 2010 WL 3928945, at * 3 (9th Cir. 2010) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  A court may also dismiss claims with prejudice where the "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Id.*;  *see also Sorosky v. Burroughs Corp.*, 826 F.2d 794, 804-805 (9th Cir. 1987) (leave to amend "may be denied for reasons such as . . . futility of amendment, or prejudice to the opposing party").

The factual allegations underlying Plaintiffs' Complaint have now been pled in seven cases.  And the complaints in those cases have been amended many times.  Plaintiffs (or Reed Taylor) have taken more than ten opportunities to plead and replead the factual allegations of their complaints.  In this latest iteration, they plead a tortious interference with contract claim without alleging the existence of a contract.  They plead a fraud claim without addressing the

nine specific elements that Idaho requires pled with particularity. They have had more than 10 bites at the apple and are not entitled to another bite.

As to the RICO claim, there is simply no way for Plaintiffs to assert a cognizable RICO claim by alleging additional facts consistent with what they have already pled. *See Telesaurus*, 2010 WL 3928945, at * 3. Plaintiffs identify one of the main defendants as the enterprise. And the wrongdoing they plead is inherently lawful conduct that cannot be the basis of a pattern of racketeering activity or of a threat of continued criminal actively. There is no way to "fix" the defective claim and any effort to do so is futile. "Adding more warts to the hog still does not make it a dragon." *See J.D. Marshall Int'l, Inc. v. Redstart, Inc*., 935 F.2d 815, 821 (7th Cir. 1991) (noting that further efforts to "repackage its allegations cannot transform this contract fraud suit into a proper civil RICO suit").

Allowing Plaintiffs to amend their RICO claim will also further prejudice Hudson and Petersen. "A RICO defendant [] needs to be protected from unscrupulous claimants lured by the prospect of treble damages, and it should be the policy of the law, within the procedural constraints of our system, to provide this protection." *Saine*, 582 F. Supp. at 1306 n.5. Leave to replead this claim is to allow Plaintiffs to further "fire salvos from a loose cannon," in hopes of hitting something. *Id*. The Court should not arm Plaintiffs with that cannon.

## VI.   CONCLUSION

Neither Donna Taylor nor Dale Miesen made a proper demand on the Boards. Each specific claim against Hudson and four of the six claims pled against Petersen are fatally flawed. The Hudson Defendants therefore respectfully request dismissal with prejudice of all claims asserted against them. Leave to amend is properly denied because amendment is futile. Plaintiffs have had numerous bites at the apple through six other lawsuits. This should be the end of the line for Plaintiffs' claims against the Hudson Defendants.

DATED this 25th day of October, 2010.

HOLLAND & HART LLP

By: _____*s/s Robert A. Faucher*_____
Robert A. Faucher, of the firm
Attorneys for Defendants Hudson Insurance
Company and Kent Petersen

# CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of October, 2010, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

- **Lee H. Rousso**
  lee@leerousso.com

- **David R. Risley**
  david@risleylawoffice.com

- **Theodore O Creason**
  tcreason@cmd-law.com

I further certify that on this same day, I served the following via U.S. Mail, postage prepaid:

Matthew J. Salzman
Misty Cooper Watt
STINSON MORRISON HECKER LLP
1201 Walnut #2900
Kansas City,  MO  64106-2150

_____*/s/ Robert A. Faucher*_____
for Holland & Hart LLP

4927019_10.DOC

MEMORANDUM IN SUPPORT OF THE HUDSON DEFENDANTS' MOTION TO DISMISS - 21

# EXHIBIT A

RODERICK C. BOND, ISB No. 8082
MICHAEL S. BISSELL, ISB No. 5762
CAMPBELL, BISSELL & KIRBY, PLLC
7 South Howard Street, Suite 416
Spokane, WA 99201
Tel: (509) 455-7100
Fax: (509) 455-7111

Attorneys for Plaintiff-Petitioner Donna J. Taylor

IN THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT OF THE STATE OF
IDAHO, IN AND FOR THE COUNTY OF NEZ PERCE

| | |
|---|---|
| DONNA J. TAYLOR, an individual; <br><br> Plaintiff-Petitioner, <br><br> v. <br><br> AIA SERVICES CORPORATION, an Idaho corporation; <br><br> Defendant-Respondent. | Case No.: CV 09-02470 <br><br> FIRST AMENDED VERIFIED COMPLAINT/PETITION FOR DAMAGES, FOR DECLARATORY RELIEF, AND FOR APPOINTMENT OF A RECIEVER FOR AIA SERVICES CORPORATION |

Plaintiff-Petitioner Donna J. Taylor ("Donna Taylor"), by and through her attorneys of record, Campbell, Bissell & Kirby, PLLC, submits this Verified First Amended Complaint/Petition requesting the following relief:

## I.   FACTUAL BACKGROUND

1.     Plaintiff-Petitioner Donna J. Taylor is a resident of Clarkston, Asotin County, Washington.

2.     Defendant-Respondent AIA Services Corporation ("AIA Services"), a closely held Idaho corporation, with its principal place of business located in Lewiston, Nez Perce County, Idaho. AIA Insurance, Inc. ("AIA Insurance") is a wholly owned subsidiary of AIA Services, with its principal place of business being located in Lewiston, Nez Perce County,

FIRST AMENDED COMPLAINT - 1

Idaho.

3.      Jurisdiction and venue are appropriate in the Second Judicial District of Nez Perce County District Court in Nez Perce County, Idaho as AIA Services is an Idaho corporation with its principal place of business located in Lewiston, Nez Perce County, Idaho.

4.      Donna Taylor is the sole Series A Preferred Shareholder in AIA Services. Donna Taylor is also the beneficial owner of one-half of the 18,593 common shares in AIA Services owned by the estate of Sara Taylor.[1]

5.      Under the terms of AIA Services' Amended Articles of Incorporation, the Amended Articles may not be further amended or modified without the express written consent of the majority holders of the Series A Preferred Shares in AIA Services; and Donna Taylor, the sole Series A Preferred Shareholder, has never provided such consent.

6.      Under the terms of AIA Services' Amended Articles of Incorporation, Donna Taylor is required to be a member of the board of directors of AIA Services until all of her shares are redeemed. Despite demands by Donna Taylor's law firm, she has not been appointed to the board of AIA Services for years.

7.      Under the terms of certain letter agreements and the later executed Series A Preferred Shareholder Agreement, Donna Taylor was required to have all of her preferred shares in AIA Services redeemed no later than 2004. Donna Taylor is presently owed over $430,000 for the Series A Preferred Shares held by her in AIA Services, which such amount should have been paid in full and was required to be paid in full in or before 2004. AIA Services ceases all payments to Donna Taylor in 2008.

8.      From 1995 to the present, R. John Taylor ("John Taylor"), James Beck, Michael Cashman, Connie Taylor, JoLee Duclos, Bryan Freemen and/or other individuals (collectively

---

[1] Reed Taylor is the beneficial owner of the other one-half of the common shares.

FIRST AMENDED COMPLAINT - 2

"Responsible Individuals") have engaged in unlawful acts utilizing the assets, trade secrets, business opportunities, funds, employees and other assets of AIA Services and AIA Insurance for the benefit of themselves and entities in which they hold substantial ownership interests.

9.      Under the terms of AIA Services' Amended Articles of Incorporation, AIA Services and its subsidiaries may not make or guarantee any loans to any entities not controlled by them. By and through John Taylor and the Responsible Parties, AIA Insurance guaranteed a $15,000,000 line-of-credit for CropUSA Insurance Agency, Inc. ("CropUSA") without receiving any compensation or benefit and in violation of AIA Services' Amended Articles of Incorporation. John Taylor and the Responsible Individuals are the majority shareholders in CropUSA.

10.     Under the terms of AIA Services and AIA Insurance's Amended Bylaws, the corporations' boards of directors are required to hold annual shareholder meetings to elect board members. AIA Services and AIA Insurance have not held annual shareholder meetings to elect directors for over five years.

11.     For over five years, the purported board of directors and officers of AIA Services has failed to provide any financial information to AIA Services' shareholders.

12.     John Taylor, Connie Taylor, and James Beck are the purported board members of AIA Services and AIA Insurance and have been the purported board members since 2007. John Taylor has been a purported board member of AIA Services for many years (including, without limitation, from 1995 to the present time). Any references to actions taken by them as board members does not constitute Donna Taylor's waiver that they have never been properly elected as board members of AIA Services or AIA Insurance.

13.     John Taylor has been a member of the board of Avista Corporation since 1985.

FIRST AMENDED COMPLAINT - 3

John Taylor obtained this position by and through his employment with AIA Services. John Taylor is also an attorney licensed to practice law in the state of Idaho and he has been licensed as an attorney in the state of Idaho for over 20 years. John Taylor also has an accounting degree and briefly worked as an accountant. As a result, John Taylor is well versed with the law and the fiduciary duties owed to a corporation and its shareholders. John Taylor has intentionally breached his fiduciary duties to AIA Services, AIA Insurance and their shareholders. In his Avista Corporation bio on the corporation's website, John Taylor admits that he formed CropUSA and that he is Chairman of the Board of Pacific Empire Radio Corporation.

14.     Connie Taylor is also an attorney licensed to practice law in the state of Idaho and she has been licensed in Idaho for over fifteen years. As a result, like John Taylor, Connie Taylor is well versed with the law and fiduciary duties owed to corporations and their shareholders. Connie Taylor, like John Taylor, has intentionally breached her fiduciary duties owed to AIA Services, AIA Insurance and their shareholders.

15.     By the admission of John Taylor and other Responsible Individuals, AIA Services has not held annual shareholder meetings for over five years.

16.     From 1995 to the present time, John Taylor and the Responsible Individuals have engaged in many acts that have violated the conflict of interest provisions set forth in AIA Services' Amended Articles of Incorporation and Amended Bylaws.

17.     From 1995 to the present time, AIA Services and/or AIA Insurance have invested and lent hundreds of thousands of dollars to Pacific Empire Radio and Pacific Empire Communications, entities partially owned by John Taylor and Connie Taylor. All such loans were in violation of AIA Services' Amended Articles of Incorporation. AIA Services and/or AIA Insurance also invested hundreds of thousands of dollars in Pacific Empire Radio and

FIRST AMENDED COMPLAINT - 4

Pacific Empire Communications and all such shares have been transferred to John Taylor and Connie Taylor. Even if the shares had not been transferred to John Taylor and Connie Taylor, the investments and loans were not in the best interests of AIA Services and AIA Insurance.

18.    In 1995, John Taylor entered into an Executive Officer's Agreement with AIA Services after redeeming Reed Taylor's shares. Under the terms of the Executive Officer's Agreement, John Taylor was prohibited from operating any businesses that competed with AIA Services (selling insurance products) and from soliciting any employees from AIA Services and AIA Insurance, among other obligations. John Taylor has intentionally breached the terms of the Executive Officer's Agreement to the detriment of AIA Services and AIA Insurance.

19.    From 1995 to the present time, John Taylor has paid himself and Connie Taylor millions of dollars in funds, assets, benefits and compensation from AIA Services and AIA Insurance, including, without limitation, during times in which John Taylor was intentionally breaching his Executive Officer's Agreement and fiduciary duties owed to AIA Services and AIA Insurance, among other obligations and the commission of torts.

20.    From 1995 to the present time, John Taylor and Responsible Individuals have redeemed over $650,000 in common shares when Donna Taylor's Preferred A Shares had priority over such shares and when such funds should have been paid to redeem Donna Taylor's Preferred A Shares or otherwise be used for the benefit of AIA Services.

21.    From 1995 through 1997, John Taylor and Responsible Individuals paid over $650,000 in dividends to Series C Preferred Shares when Donna Taylor's Preferred A Shares had priority over such shares and when paying such dividends were not in the best interests of AIA Services.

22.    In 1999, John Taylor formed CropUSA. At that time, CropUSA was called "AIA

FIRST AMENDED COMPLAINT - 5

Crop Insurance, Inc." However, AIA Crop Insurance's name was later changed to CropUSA. CropUSA executed a board resolution stating that AIA Services has declined to continue operating CropUSA as a subsidiary, even though there are no such resolutions in the board meeting minutes or resolutions for AIA Services or AIA Insurance.

23.     John Taylor advised Donna Taylor and others that CropUSA was a subsidiary of AIA Services and/or AIA Insurance. Despite being formed and operated using AIA Services and AIA Insurance's funds, assets, trade secrets, employees and other assets, CropUSA is majority owned by John Taylor and the Responsible Individuals. AIA Services and AIA Insurance have never owned any shares in CropUSA according to the corporation's stock register and John Taylor's testimony. Forming, operating and making the ownership of CropUSA in the name of John Taylor, the Responsible Individuals and other persons was not in the best interest of AIA Services and AIA Insurance and also violated AIA Services Amended Articles of Incorporation, AIA Services' Amended Bylaws, John Taylor's Executive Officer's Agreement, the corporate opportunity doctrine, and the law.  John Taylor represented to certain individuals (including Donna Taylor) that CropUSA was owned by AIA, despite the evidence that AIA never owned any shares or part of CropUSA.

24.     AIA Services and/or AIA Insurance formed and operated Growers National at significant expense to AIA Services and/or AIA Insurance for the purpose of selling crop insurance. Through AIA Services and AIA Insurance's efforts, Growers National obtained the right from the U.S. government to offer dividends to members for the sale of crop insurance. Growers National was formed and operated using AIA Insurance's funds and significant contractual relations with various growers associations and co-ops. Despite these facts, the contract with Growers National was with CropUSA and not AIA Services or AIA Insurance.

FIRST AMENDED COMPLAINT - 6

25.     In 2004, John Taylor and the Responsible Individuals inappropriately transferred $1,510,693 to CropUSA, which such transaction was called a "stock redemption" by John Taylor (and which John Taylor advised AIA's CFO the shares should be canceled), although he later referred to the transaction as an "investment." Even today, AIA Insurance represents the value of its alleged investment in AIA Services (its parent corporation) as being worth $1,510,693 against the recommendation of AIA Insurance's auditors. The true worthless value of the Preferred C Shares held by AIA Insurance after the purported "investment" is demonstrated by the fact that the full value of the $1,510,693 alleged investment is eliminated on AIA Services' consolidated financial statements.

26.     In 2001, John Taylor and the Responsible Individuals issued hundreds of thousands of common shares in AIA Services to certain Responsible Individuals and others when they had not complied with their contractual obligations to guarantee a $1,000,000 loan for AIA Services (which was the consideration to be awarded the right to acquire the shares in the first place). In addition, John Taylor and the Responsible Individuals engaged in inappropriate acts of converting certain Responsible Individuals and other parties' Series C Preferred Shares in AIA Services into commons shares of CropUSA without shareholder approval or consent. John Taylor, through written letters, referred to this transaction as an "exit strategy" for certain Responsible Individuals and other investors in AIA Services who received preferential treatment to the detriment of AIA Services, its shareholders and its creditors.

27.     In 2001, John Taylor and Connie Taylor purchased a parking lot that was located near AIA Insurance's offices using AIA Insurance's line-of-credit. Shortly after purchasing the parking lot, John Taylor substantially increased the rent paid for the parking lot to $15,000 per year when such rent was not in the best interests of the corporations and a violation of AIA

FIRST AMENDED COMPLAINT - 7

Services' Bylaws and fiduciary obligations owed by John Taylor and Connie Taylor to AIA Services and AIA Insurance. The yearly rent of $15,000 exceeded the purchase price paid for the parking lot. The parking lot should have been purchased by AIA Services or AIA Insurance and no rent paid. Instead, John Taylor and/or Connie Taylor have received over $60,000 in rent for a parking lot that should be owned by AIA Services or AIA Insurance and when such funds should have been used to pay creditors and preferred shareholders.

28.    In 2005, John Taylor and certain Responsible Individuals issued John Taylor 450,000 shares of common stock in AIA Services pursuant to John Taylor's Executive Officer's Agreement, which was the same agreement that John Taylor had not complied with his contractual obligations owed to AIA Services, including, without limitation, John Taylor's obligation to not compete with AIA or to solicit any of its employees.

29.    John Taylor and certain Responsible Individuals also issued hundreds of thousands of dollars in Series C Preferred Shares in AIA Services to its 401(k) plan. John Taylor and the Responsible Individuals transferred $1,510,693 to CropUSA to redeem/purchase Series C Preferred Shares when they were obligated under AIA Services' Amended Articles of Incorporation to equally purchase/redeem from all shareholders holding Series C Preferred Shares in AIA Services. John Taylor admitted that the $1,510,693 was transferred to CropUSA because the corporation badly needed capital, even though he also testified that AIA Services and AIA Insurance had never owned any shares in CropUSA.

30.    In 2008, CropUSA sold assets for $10,000,000. AIA Services and AIA Insurance did not receive a single dollar from this asset sale. Instead and in addition, John Taylor received $10,000 per month for a purported consulting agreement/non-compete agreement with Hudson Insurance (the buyer of the $10,000,000 in assets from CropUSA), which such funds should have

FIRST AMENDED COMPLAINT - 8

been paid by John Taylor to AIA Services and/or AIA Insurance for the benefit of the corporations and their creditors and shareholders.

31.    On November 16, 2009, the Lewiston Tribune published a list of parties who had failed to pay property taxes for the year 2006. Included in the list were multiple entries of unpaid taxes owed by AIA Insurance totaling over $55,000. Under the terms of AIA Insurance's lease of the premises known as the Lewis-Clark Plaza, AIA Insurance is contractually obligated to timely and fully pay all property taxes on the Lewis-Clark Plaza. The mortgage on the Lewis-Clark Plaza was obtained by AIA Services from litigation funded by AIA Insurance involving AIA Services' former subsidiary The Universe. The failure to pay property taxes impacts the value of the Lewis-Clark Mortgage and results in a default in AIA Insurance's lease with Washington Bank Properties for premises located at the Lewis-Clark Plaza. AIA Services and AIA Insurance have not paid property taxes from 2006 to the present time in an amount believed to exceed $150,000.

32.    From its incorporation in 2000, through the present time, CropUSA was funded and operated using AIA Services and/or AIA Insurance's funds, employees, trade secrets, contractual relationships with various growers associations and co-ops, office space, equipment and other assets; and AIA Services and AIA Insurance have never been paid a profit or interest for all such loans and the use of such assets and millions of dollars of funds and unallocated expenses borne by AIA Services/AIA Insurance have not been paid back to the corporations. AIA Services and AIA Insurance have paid, and not been reimbursed for, hundreds of thousands of dollars, if not millions of dollars, in unallocated expenses paid for CropUSA for which AIA Services and AIA Insurance have not been reimbursed and will likely never be reimbursed

FIRST AMENDED COMPLAINT - 9

because significant amounts of such expenses were never allocated and charged to CropUSA.[2]

33.    In 2008, John Taylor sold Pacific Empire Holdings to CropUSA for $240,000.
Pacific Empire Holdings[3] was formed and operated using AIA Services and/or AIA Insurance's
funds, employees, office space, trade secrets and other assets to sell general insurance policies.
Like other corporations formed by John Taylor such as CropUSA, John Taylor was prohibited
from operating businesses that sold insurance products under his Executive Officer's Agreement.
However, such obligations did not stop John Taylor and when Pacific Empire Holdings was sold,
no funds or benefit was given to AIA Services or AIA Insurance, despite the corporation being
derived from AIA.

34.    On July 21, 2008, Donna Taylor served a derivative demand upon the purported
boards of AIA Services and AIA Insurance demanding for the corporations to take action.
Despite her derivative demand letter, John Taylor and the Responsible Individuals have failed to
take any action and have instead taken specific action in protecting their own individual interests
instead of protecting the interests of the AIA corporations, their creditors and their shareholders.

35.    AIA Services and AIA Insurance's only substantial businesses are comprised of
running off commissions and servicing insurance policies issued and/or sold over 10 years ago,
and John Taylor admitted that AIA's ability to sell proprietary insurance products had ended
many years ago.    Thus, instead of rightfully using the corporate opportunity to sell crop
insurance through AIA Services and AIA Insurance as represented to Donna Taylor and others
and in business plans, the corporate opportunity to sell crop insurance was inappropriately given

---

[2] In all of the millions of dollars of funds and expenses paid for CropUSA by AIA Services and/or AIA Insurance
which was purportedly repaid by CropUSA, John Taylor and the Responsible Individuals never charged any interest,
profit or overhead to benefit AIA Services and/or AIA Insurance for such loans and advanced funds/services.
[3] To clarify, Pacific Empire Holdings was a different corporation from Pacific Empire Radio and Pacific Empire
Communications (which are also discussed in this Complaint), with the latter two corporations owning radio station
assets (some of which were derived from AIA such as KATW FM in Lewiston).

FIRST AMENDED COMPLAINT - 10

to CropUSA, an entity not partially or wholly owned by AIA Services or AIA Insurance, to the detriment of the AIA corporations, their creditors and their shareholders.

36.    John Taylor has borrowed over $307,000 from AIA Services and/or AIA Insurance for his and Connie Taylor's benefit and such indebtedness has not been paid to AIA Services and/or AIA Insurance. John Taylor and Connie Taylor have done nothing to secure this obligation or take action to the benefit of AIA Services for this $307,000+ debt, let alone make any interest payments or even permit interest to accrue on such debt.

37.    During relevant times, John Taylor has been paid over $2,500,000 in compensation for doing little, if anything at all, for the benefit of AIA Services and AIA Insurance, while he transferred and misappropriated millions of dollars of AIA Services and AIA Insurance's assets, funds, trade secrets, business opportunities, loan guarantees, employees and other assets to his benefit and to the determinant of AIA Services and AIA Insurance's shareholders and creditors. John Taylor has been a faithless fiduciary.

38.    Since John Taylor and the Responsible Individuals have been and are in control of AIA Services and AIA Insurance, they have failed to take legal action against John Taylor for the sums owed by him, for John Taylor's breaches of his Executive Officer's Agreement with AIA Services, and for the torts that John Taylor and the Responsible Individuals have committed against AIA Services, AIA Insurance and their shareholders.

39.    Over the course of the past 8 years, John Taylor has utilized funds from AIA Services and/or AIA Insurance to purchase vehicles from him for his benefit and to the determinant of AIA Services, AIA Insurance, their shareholders and their creditors.

40.    From 2007 to the present time, John Taylor and the Responsible Individuals have permitted AIA Services and AIA Insurance to pay directors $20,000 per year to serve on the

FIRST AMENDED COMPLAINT - 11

boards of AIA Services and AIA Insurance when such directors have not complied with the corporations' Articles of Incorporation, Bylaws, conflict of interest laws, fiduciary duties and the law (including, without limitation, failing to hold annual shareholder meetings for the common shareholders to elect directors and failing to appoint Donna Taylor or her representative to the board of AIA Services as required under the Amended Articles of Incorporation). These directors are being paid $20,000 per year to look after their own interests and to ignore their fiduciary obligations owed to AIA Services, AIA Insurance, their creditors and their shareholders.

41.     From 1995 to the present, John Taylor has utilized AIA Services and/or AIA Insurance's employees, without compensation or payment to AIA Services/AIA Insurance, to perform services for his and Connie Taylor's residences and properties and other entities owned by John Taylor and the Responsible Individuals (including CropUSA, Pacific Empire Radio, Pacific Empire Communications, and Radio Leasing).

42.     From 1995 to the present time, John Taylor and/or JoLee Duclos have been the trustees of AIA Services' 401(k) plan to the detriment of the plan participants who hold shares in AIA Services in the plan. John Taylor and JoLee Duclos have failed in their duties to the 401(k) plan.

43.     From 1995 to the present, John Taylor and the Responsible Individuals have misappropriated millions of dollars of funds and assets belonging to AIA Services and AIA Insurance. AIA Services and AIA Insurance have not and are not paying their debts as they become due. AIA Services is insolvent by way of the acts of John Taylor and the Responsible Individuals or in imminent danger of insolvency. AIA Insurance is also insolvent by way of the acts of John Taylor and the Responsible Individuals or in imminent danger of insolvency.

FIRST AMENDED COMPLAINT - 12

44.     From 1995 to the present time, John Taylor and the Responsible Individuals have entered into millions of dollars of loans, transactions, advancing of funds, payment of expenses for non-AIA persons and entities, and other transactions or business arrangements which were not arms-length transactions, not in the best interests of AIA Services or AIA Insurance, and which did not provide any benefit or profit for AIA Services or AIA Insurance.

45.     All of the acts referenced above are not the sole acts subjecting John Taylor and the Responsible Individuals to liability or which supports the appointment of a receiver for AIA Services. All of the acts referenced above were not in the best interest of AIA Services and/or its wholly owned subsidiary AIA Insurance and were not in the best interests of the preferred and common shareholders of AIA Services and its creditors. All of the acts referenced above have been taken to benefit John Taylor and/or the Responsible Individuals, to the detriment of, and not in the best interests of AIA Services, AIA Insurance, their shareholders and their creditors. John Taylor and the Responsible Individuals have not operated AIA Services and AIA Insurance as corporate entities, but instead as their alter-egos and for their own personal benefit and gain. All of the above-referenced acts and/or omissions constitute John Taylor and the Responsible Individuals' intentional breaches of fiduciary duties, fraud, conversion, and breach of obligations owed to AIA Services and/or AIA Insurance and/or the commission of torts against AIA Services, AIA Insurance, their creditors and their shareholders.

46.     As a result of the above-referenced acts and/or omissions, it appears unlikely that Donna Taylor or any other preferred shareholders and creditors of AIA Services would receive the funds owed to them unless a receiver is appointed to safeguard the corporation's assets and appropriate and warranted legal action is successfully prosecuted against John Taylor, the Responsible Individuals and other persons and entities.

FIRST AMENDED COMPLAINT - 13

47.     As a result of the above-referenced acts and/or omissions, a receiver should be appointed to safeguard AIA Services' assets, businesses and revenues, while ensuring that the interests of creditors and shareholders are also safeguarded and any distributions are only made to the appropriate parties as contractually or legally required and/or after obtaining any required consent and/or court order.

## II.  FIRST CAUSE OF ACTION—BREACHES OF CONTRACT

48.     Donna Taylor re-alleges all facts asserting in the preceding paragraphs necessary to support this cause of action and/or her requested relief.

49.     AIA Services owed Donna Taylor contractual obligations under the Series A Preferred Shareholder Agreement, the previously executed letter agreements between the parties in 1995 (alternative cause of action), and/or AIA Services' Amended Articles of Incorporation to redeem Donna Taylor Series A Preferred Shares in AIA Services and make certain payments to her and other obligations. AIA Services has breached its contractual obligations owed to Donna Taylor, including, without limitation, the obligations to timely pay her and/or redeem her shares and appoint a person of her choice to the Board of AIA Services.

50.     As a direct and/or proximate result of foregoing breaches, Donna Taylor has been damaged and is presently owed in excess of $430,000, and, is therefore entitled to judgment and/or relief on this claim in an amount to be proven at trial. Donna Taylor also requests specific performance of AIA Services' obligations owed to Donna Taylor. To the extent no money judgment may be granted because of AIA Services' financial condition, for such other relief as may be requested by Donna Taylor to protect future payments should be ordered, including, without limitation, the appointment of a receiver as requested below.

///

FIRST AMENDED COMPLAINT - 14

## III.  SECOND CAUSE OF ACTION—APPOINTMENT OF A RECIEVER

51.     Donna Taylor re-alleges all facts asserting in the preceding paragraphs necessary to support this cause of action and/or her requested relief.

52.     As a result of AIA Services' insolvency and/or imminent danger of insolvency and the acts of corporate fraud, malfeasance and other unlawful acts set forth above (together with the significant funds owed to Donna Taylor) the appointment of a receiver for AIA Services is necessary and warranted.

53.     As direct and/or proximate cause of all the acts set forth above and the over $430,000 owed to Donna Taylor, the Court should appoint a receiver for AIA Services in this action to manage its affairs and those of its wholly owned subsidiary AIA Insurance.

54.     AIA Services is expected to assert that it is unable to pay Donna Taylor and therefore she may not obtain judgment for the sums owed to her. Under this rationale, the appointment of a receiver is even more appropriate and warranted in this action, and, consequently will be requested regardless of whether a money judgment is obtained. To permit the present management to not pay Donna Taylor and continue siphoning away and/or unlawfully transfer or utilize the few remaining funds and assets of AIA Services and AIA Insurance for their benefit would defeat the purpose for appointing a receiver.

## IV.  THIRD CAUSE OF ACTION—DECLARATORY JUDGMENT/ SPECIFIC PERFORMANCE

55.     Donna Taylor re-alleges all facts asserting in the preceding paragraphs necessary to support this cause of action and/or her requested relief.

56.     Donna Taylor requests a declaratory judgment and/or specific performance, to the extent necessary, to grant her the relief requested in this Complaint (including, without limitation, a declaratory judgment ordering AIA Services comply with its Bylaws, Amended

FIRST AMENDED COMPLAINT - 15

Articles of Incorporation, and contractual obligations) and/or such relief as may be requested at or before trial.

## V. **PRAYER FOR RELIEF**

WHEREFORE, Donna Taylor prays for the following relief:

1.     For a judgment in the amount to be proven at or before trial and/or a judgment in the amount permissible under the law;

2.     For a declaratory judgment, specific performance, preliminary injunction and/or permanent injunction ordering AIA Services and any of its actual or purported officers and directors to comply with all provisions of the corporation's Bylaws and Amended Articles of Incorporation.  To the extent any part of such relief includes redeeming Donna Taylor's shares or making payment on such shares and there are insufficient funds available for those payments, then she requests that AIA Services and/or the receiver appointed to operate it be ordered to pay those funds when they become available and when approved by the Court and to safeguard the corporation and its assets in the interim.

3.     For an order and/or declaratory judgment finding that AIA Services is insolvent or in imminent danger of insolvency pursuant to I.C. § 8-601(5), Idaho law, and/or common law;

4.     For an order and/or declaratory judgment finding (in addition or in the alternative) the appointment of a receiver for AIA Services is warranted, based upon all of the acts of malfeasance, breaches of fiduciary duties, torts and other conflicted and/or inappropriate acts set forth above, pursuant to common law, Idaho law, and/or I.C. § 8-601(6);

5.     For an order and/or declaratory judgment appointing a receiver for AIA Services pursuant to I.C. § 8-601, *et seq.*, Idaho law, and/or under the common law;

///

FIRST AMENDED COMPLAINT - 16

6.     For declaratory judgment and/or specific performance ordering AIA Services to appoint to its board of directors the person that Donna Taylor appoints to the board through the written vote of her shares, regardless of whether such vote occurs at any shareholder meetings or by Donna Taylor delivering her written vote to the management of AIA Services, and that AIA Services has no right to determine who she appoints to the board as there are no limiting factors in AIA Services' Amended Articles of Incorporation.

7.     For an order and/or declaratory judgment granting the receiver appointed for AIA Services the power and authority to do the following, including, without limitation: (1) control and operate AIA Services and its subsidiaries (including AIA Insurance), (2) to collect sums owed to AIA Services and AIA Insurance, (3) to administer and service AIA Insurance's few remaining insurance policies, (4) to pay AIA Services and AIA Insurance's bona-fide debts, (5) to marshal AIA Services and AIA Insurance's assets, (6) to pursue new business interests for AIA Insurance and AIA Services, (7) to protect, negotiate and extend AIA Insurance's contracts with growers associations, co-ops and insurance companies (including Trustmark), (8) to pursue causes of action against the appropriate persons and entities[4] and/or (9) be granted all other powers authorized under I.C. § 8-601, *et seq.*, Idaho law, and/or the common law or as may be reasonably necessary for the receiver to properly and efficiently carry out his duties;

8.     For specific performance, a declaratory judgment, preliminary injunction and/or permanent injunction ordering AIA Services and its subsidiary AIA Insurance (collectively "them" below) (including, without limitation, pending the appointment of a receiver): (1) barring them from transferring, selling or encumbering any assets without Court approval (including,

---

[4] Donna Taylor, through other counsel, will be pursing derivative claims against many persons and entities, including, John Taylor and the Responsible Individuals. In her Complaint, she will request that all funds and assets recovered, less attorneys' fees and costs, be paid to the receiver appointed for AIA Services. None of the claims in this Complaint are being asserted derivatively and all claims are being asserted solely against AIA Services.

FIRST AMENDED COMPLAINT - 17

without limitation, the Lewis-Clark Hotel or the mortgage on such property; (2) barring them from loaning any money to John Taylor, the Responsible Individuals, CropUSA, Pacific Empire Radio and/or any other person or entity, including any entities partially or wholly owned by the Responsible Individuals without Court approval; (3) barring them from paying Connie Taylor, James Beck or any other person $20,000 or any other compensation (except for reasonable expenses attending properly noted board meetings) for purportedly serving on the board of AIA Services or its subsidiary AIA Insurance and instead order the corporation to obtain director's liability insurance with said funds; (4) ordering them to comply with all applicable Bylaws, Articles of Incorporation, and laws (including, without limitation, all provisions and laws dealing with conflicts of interest; (5) ordering them to provide financial information and specific details of all claims and lawsuits to all shareholders as required under the law to keep them reasonably information to be provided at least quarterly or when necessary; and (6) ordering them to stop providing funds, services, assets, labor and trade secrets to CropUSA; (7) ordering a full accounting of all funds, services, assets, labor and trades secrets utilized by, lent to, or provided to CropUSA and any other entity or person since 1995; and (8) such other action as is requested by Donna Taylor or required from time to time as deemed in the best interest of AIA Services and AIA Insurance.

9.     For an award of Donna Taylor's attorneys' fees and costs incurred in this action, as provided under Idaho law, including, without limitation, I.C. § 12-120 and/or I.C. § 12-121.

///

///

///

FIRST AMENDED COMPLAINT - 18

10.     For such other declaratory relief, injunctive relief and/or general or specific relief

and/or judgments as may be sought at or before trial by Donna Taylor and/or such other relief

that the Court deems just and equitable.

DATED this 5th day of February, 2010.

CAMPBELL, BISSELL & KIRBY, PLLC

By:_____
        Roderick C. Bond
        Michael S. Bissell
        Attorneys for Donna Taylor


VERIFICATION

STATE OF WASHINGTON     )
                        ) ss.
COUNTY OF ASOTIN        )

I, Donna J. Taylor, being first duly sworn on oath, deposes and says:

I am the Plaintiff-Petitioner in the above-entitled action. I have read the contents of this
Complaint/Petition, know the contents of this Complaint/Petition, and believe that the facts in set
forth in this Complaint/Petition are true and accurate to the best of my knowledge and belief.

_____
Donna J. Taylor


SUBSCRIBED AND SWORN to before me this 5th day of February, 2010.

_____
Notary Public for Washington
Residing at: _Clarkston, WA_
My commission expires: _____


FIRST AMENDED COMPLAINT - 19

## CERTIFICATE OF SERVICE

I, Roderick Bond, declare that, on the date indicated below, I served a true and correct copy of the foregoing on the following party(ies) via the method(s) indicated below:

Gary D. Babbitt                           **Via:**
D. John Ashby                             ( ) U.S. Mail, Postage Prepaid
Hawley Troxell Ennis & Hawley LLP         ( ) Hand Delivered
877 Main Street, Suite 1000               ( ) Overnight Mail
P.O. Box 1617                             ( ) Facsimile
Boise, Idaho 83701-1617                   (**X**) Email (pdf attachment)


Signed this 5th day of February, 2010, at Clarkston, Washington.

_____
Roderick C. Bond

# EXHIBIT B

# *Campbell, Bissell & Kirby, PLLC*

#### Attorneys & Counselors at Law

---

Michael S. Bissell • Licensed in WA, ID & AK
Richard D. Campbell • Licensed in WA, ID & MT
Patrick J. Kirby • Licensed in WA & ID

July 21, 2008

<u>**Via Certified Mail and**</u>
<u>**Regular Mail**</u>

Board of Directors
AIA Services Corporation, Inc. and AIA Insurance, Inc.
111 Main Street
Lewiston, ID 83501

**Re:**   **Demand of Donna Taylor and Reed Taylor Pursuant to Idaho Code 30-1-742**

Dear Board Members of AIA Services Corporation and AIA Insurance Inc.:

As you know, this firm represents Donna J. Taylor ("Donna"), the Series A Preferred Shareholder in AIA Services Corporation ("AIA Services"), and Reed Taylor ("Reed"), the pledgee of AIA Insurance, Inc. ("AIA Insurance") and creditor of AIA Services who is owed over $8.5 Million.

Donna and Reed hereby make demand upon the Board of Directors of AIA Services and AIA Insurance pursuant to Idaho Code 30-1-742 to take the action described herein. Specifically, demand is made that said entities immediately take action against the law firms of Hawley Troxell Ennis & Hawley; Clements, Brown & McNichols; Quarles & Brady; together with the responsible attorneys of said firms (and any other firms which have wrongfully represented the entities) for violating applicable Rules of Professional Conduct, malpractice, breach of fiduciary duties, and aiding and abetting, including, without limitation, all acts related to or involving the following claims and/or causes of action:

1.  Wrongfully simultaneously representing Crop USA Insurance Agency, Inc. ("Crop USA") and AIA Services and AIA Insurance, while knowing these entities had divergent interests;

2.  Taking action against the best interests of AIA Services and/or AIA Insurance;

3.  Assisting in the commission of fraud and/or illegal activities;

4.  Wrongfully allowing interested directors and other interested parties to direct litigation in light of substantial claims against them;

5.  Issuing inappropriate opinion letters to lenders and auditors;

6.  Failing to recover moneys and/or stock in Crop USA;

Board of Directors
AIA Services Corporation, Inc. and AIA Insurance, Inc.
July 21, 2008
Page - 2

7. Preventing claims from being made against present and past directors, including, without limitation, R. John Taylor, Michael Cashman, James Beck and Connie Taylor;

8. Failing to take action against Crop USA to recover funds owed;

9. Failing to take action against responsible present and past directors for violating the corporate opportunity doctrine by permitting Crop USA to become a separate company from AIA;

10. Failing to take action against interested directors and parties who took part in fraud, conspiracy and other illegal activities, including, without limitation, R. John Taylor, James Beck, Michael Cashman and Connie Taylor;

11. Breaching fiduciary duties (including the duty of loyalty) owed to AIA Services and AIA Insurance;

12. Aiding and abetting R. John Taylor, James Beck, Michael Cashman, Connie Taylor, Crop USA, and other interested parties who participated in the misappropriation of assets, opportunities, and funds of AIA Services and AIA Insurance (including the $1.5 Million wrongfully transferred from AIA Insurance to Crop USA);

13. Not ensuring that separate counsel was retained for AIA Services;

14. Not ensuring that separate counsel was retained for AIA Insurance knowing that it was pledged to Reed;

15. Assisting in illegal loan guarantees by AIA Services and/or AIA Insurance;

16. Wrongfully entering into a Joint Defense Agreement knowing that such an agreement was inappropriate in light of the significant claims AIA Services and AIA Insurance have against interested individuals and Crop USA;

17. Wrongfully obtaining shareholder consent to pay the attorneys' fees of past and present directors of AIA Services and AIA Insurance without full disclosure or obtaining votes only from disinterested shareholders;

18. Permitting Michael McNichols and Clements, Brown & McNichols to remain as counsel for R. John Taylor in violation of their duty of loyalty to AIA Services and AIA Insurance;

Board of Directors
AIA Services Corporation, Inc. and AIA Insurance, Inc.
July 21, 2008
Page - 3

19. Assisting in pledging the assets of AIA Services and AIA Insurance to Crop USA for the payment of attorneys' fees and costs of interested parties and others;

20. Permitting the business and employees of AIA Insurance and AIA Services to be detrimentally effected by the actions of interested parties (e.g., transferring AIA Insurance's employees to Crop USA);

21. Failing to take action against R. John Taylor and Connie Taylor for the significant breaches of R. John Taylor's employment agreement with AIA Services;

22. Failing to comply with contractual obligations owed to Reed and Donna;

23. Failing to recover inappropriate salaries, advances, loans, benefits, and compensation paid to R. John Taylor, Connie Taylor, James Beck and others;

24. Assisting in, and failing to take action pertaining to, the improper allocation expenses, labor, rent and other expenditures inappropriately utilized for the benefit of Crop USA.

25. Accepting payments of attorneys' fees in violation of the Rules of Professional Conduct;

26. Representing AIA Services and/or AIA Insurance in making inappropriate arguments (including alleged illegality of the debt to Reed) knowing that such arguments were counter to AIA Services' obligations to Reed and Donna and knowing that Richard Riley was a witness who provided a legal opinion counter to such arguments; and

27. Accepting payment of attorneys' fees and costs which should have been allocated to other parties, including, without limitation, fees and costs that should have been paid by Crop USA, R. John Taylor, James Beck, Michael Cashman and Connie Taylor.

Based upon the above wrongful acts (and others reasonably contemplated from the above acts and other acts known only to insiders at AIA Services and/or AIA Insurance), demand is made upon you to initiate legal action against the above-referenced law firms and lawyers to recover all applicable damages and to require a disgorgement of all attorneys' fees and costs paid to them, including, without limitation, for all inappropriate transactions and the litigation involving Reed and/or Donna. Based upon the foregoing demand is also made for action against R. John Taylor, Michael Cashman, James Beck, Connie Taylor, Crop USA and all other responsible parties for the recovery of damages and the disgorgement of all compensation and attorneys' fees and costs paid to or on their behalf.

Board of Directors
AIA Services Corporation, Inc. and AIA Insurance, Inc.
July 21, 2008
Page - 4


Please note that I have sent a copy of this notice to present counsel for AIA Services and AIA Insurance, and trust that they will ensure copies of this Notice are provided to all board members and shareholders. I would appreciate it if you would let me know as soon as possible whether AIA Services and/or AIA Insurance will be taking any of the requested action. The failure to respond or to immediately take action shall be construed as a rejection of the demands made by this letter.

Nothing herein should be considered or relied upon as a waiver of Donna and Reed's right to take immediate action on behalf of AIA Services and/or AIA Insurance due to exigent circumstances.

Very truly yours,

CAMPBELL, BISSELL & KIRBY, PLLC

MICHAEL S. BISSELL

MSB:mah
cc:  Gary Babbitt (via email)
     D. John Ashby (via email)
     James Gatziolis (via email)
     Charles Harper (via email)
     Michael McNichols (via email)
     David Gittins (via email)
     Jon Hally (via email)
     Roderick Bond (via email)
     Reed Taylor (via email)
     Donna Taylor (via regular mail)
Data\1312\notice.072108.doc