LEE H. ROUSSO, ISB No. 8353
LAW OFFICES OF LEE H. ROUSSO PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA  98104
Tel: (206) 623-3818
Fax: (206) 705-1240
lee@leerousso.com

Attorneys for Plaintiff Donna Taylor

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| DONNA J. TAYLOR, a shareholder who is bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc., | Case No.: 10-cv-00404-LMB |
| Plaintiff, | FIRST AMENDED COMPLAINT |
| v. | |
| HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; RICHARD A. RILEY, an individual; D. JOHN ASHBY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; and AIA INSURANCE, INC., an Idaho corporation. | |
| Defendants. | |

FIRST AMENDED COMPLAINT - 1

Plaintiff Donna J. Taylor, by and through her attorney of record, alleges as follows:

## I.  STATEMENT OF JURISDICTION

**1.1**    This Court has jurisdiction over the subject matter of this lawsuit under 28 U.S.C. § 1332(a)(1) as the amount in controversy exceeds $75,000.00 and the action is between citizens of different States.

**1.2**    This Court also has jurisdiction over the subject matter of this lawsuit under 18 U.S.C. § 1964(c), which grants federal jurisdiction to actions brought under § 1962 of the federal Racketeering and Corruption Influenced Organizations ("RICO") statute, 18 U.S.C. § 1961 *et seq.*

**1.3**    This Court has supplemental jurisdiction, 28 U.S.C. § 1367(a), over the state claims asserted herein as the state claims arise from the same common nucleus of operative facts as the federal claims.

## II.    STATEMENT OF VENUE

**2.1**    Venue is proper in the District of Idaho under 28 U.S.C. § 1391(a)(2) as a substantial part of the errors and omissions giving rise to these claims occurred in this district.

**2.2**    Venue is also proper in the District of Idaho under 18 U.S.C. § 1965(a), as this action involves a civil RICO claim under 18 U.S.C. § 1964, and certain RICO defendants reside in the District of Idaho.

## III.    PARTIES

**3.1**    Plaintiff Donna J. Taylor is a resident of Clarkston, Washington.  Donna Taylor is bringing this derivative action on behalf of the preferred and common shareholders of

AIA Services Corporation ("**AIA Services**").  In addition, Donna Taylor also brings a double derivative on behalf of AIA Insurance, Inc. ("**AIA Insurance**"), which is a wholly owned subsidiary of AIA Services.  AIA Services and AIA Insurance are collectively referred to as "**AIA**."  AIA Services and AIA Insurance are nominal defendants because they are controlled by the Controlling Defendants (Taylor, Beck and Cashman) in this action and are therefore antagonistic to the shareholders' interest.

**3.2**     Defendant Hawley Troxell Ennis & Hawley LLP ("**Hawley Troxell**") is an Idaho limited liability partnership in the business of practicing law, with its principle place of business in Boise, Idaho.  Hawley Troxell has no office in the state of Washington. None of the individual members of Hawley Troxell are residents of Washington.  Hawley Troxell has purportedly acted as counsel for AIA Services, AIA Insurance and CropUSA Insurance Agency, Inc. ("**CropUSA**").   Hawley Troxell is named herein as it is liable for the acts and/or omissions of defendants Gary D. Babbitt, Richard Riley, and D. John Ashby.

**3.3**     Defendant Gary D. Babbitt ("**Babbitt**") is an individual residing in the state of Idaho and is an attorney practicing law in the state of Idaho with and for Hawley Troxell.

**3.4**     Defendant Richard A. Riley ("**Riley**") is an individual residing in the state of Idaho and is an attorney in the state of Idaho with and for Hawley Troxell.

**3.5**     Defendant D. John Ashby ("**Ashby**") is an individual residing in the state of Idaho and is an attorney in the state of Idaho with and for Hawley Troxell.

**3.6**     Defendant R. John Taylor ("**Taylor**") is an individual residing in the state of Idaho. At all times relevant to this lawsuit, Taylor served on the Board of Directors for AIA Services, AIA Insurance, and CropUSA and continues to serve on those boards.

FIRST AMENDED COMPLAINT - 3

Taylor also served as an officer of each of these corporations during all times relevant to this lawsuit.  Taylor is licensed to practice law in the state of Idaho. Taylor is a common shareholder in AIA Services and asserts that he is a shareholder in CropUSA.  Taylor also owns shares in other entities that have engaged in inappropriate transactions with AIA.

**3.7**    Defendant James Beck ("**Beck**") is an individual residing in the state of Minnesota. Beck currently serves on the Board of Directors for AIA Services and AIA Insurance and has served on those boards during certain periods relevant to this lawsuit. Beck asserts that he is a shareholder in AIA Services and CropUSA.

**3.8**    Defendant Michael Cashman, Sr. ("**Cashman**") is an individual residing in the state of Minnesota.  Cashman has served on the Board of Directors for AIA Services during certain times relevant to this lawsuit.  Cashman asserts that he is a shareholder in AIA Services and CropUSA. Taylor, Beck and Cashman are collectively referred to herein as the "**Controlling Defendants**."

**3.9**    Defendant AIA Services is an Idaho corporation with its principal place of business at 111 Main Street, Lewiston, Idaho, 83501.  At all time relevant to this lawsuit, AIA Services is or has been the parent corporation of AIA Insurance.

**3.10**    Defendant AIA Insurance is an Idaho corporation with its principle place of business at 111 Main Street, Lewiston, Idaho, 83501.  AIA Insurance is a wholly owned subsidiary of AIA Services.

**3.11**    Defendant CropUSA is an Idaho corporation with its principle place of business at 111 Main Street, Lewiston, Idaho, 83501.

## IV.    <u>FACTS</u>

**4.1**    AIA Services is a closely held Idaho corporation that was formed as a holding

FIRST AMENDED COMPLAINT - 4

company for AIA Insurance and other subsidiaries.  AIA's business model was to work with growers' associations to form trusts and/or related cooperatives through various growers and farmers associations, with the members of those associates also becoming members of the trusts and/or cooperatives. For example, AIA created the Grain Growers Membership & Insurance Trust, the National Contract Poultry Grower's Membership & Insurance Trust, and other, similar trusts.  By way of its relationships with these various organizations, AIA was able to market health insurance (*e.g.*, Group Universal Health Policies) to the members of the various associations.  Reed Taylor, a non-party to this suit, and his former wife, plaintiff Donna Taylor, were issued Series A Preferred and common shares in AIA Services.  Pursuant to the dissolution of the Reed Taylor/Donna Taylor marriage, Donna Taylor was issued 200,000 shares of Series A Preferred shares on or about February 12, 1988, and has held those shares ever since, less those shares which have been redeemed over the years.  Donna Taylor is also the beneficial owner of one half of the common shares of AIA Services held by the estate of her deceased daughter, Sara Taylor, who had owned the shares since at least 1995.

**4.2**      In 1995 the Controlling Defendants and Richard Campanaro (a non-party) sought to gain operational control of AIA Services and did in fact obtain operational control by having AIA Services enter into an agreement wherein AIA Services redeemed the common shares in AIA Services owned by Reed Taylor.  Campanaro purchased his shares with funds provided by Beck and Cashman and later transferred those shares back to Beck and Cashman.  The Controlling Defendants have maintained operational control of AIA from 1995 through the date of this complaint.

**4.3**      Since acquiring operational control of AIA Services in 1995, the Controlling

FIRST AMENDED COMPLAINT - 5

Defendants have engaged in repeated acts of faithless self-dealing, transactions detrimental to AIA, and have committed intentional torts, have conspired to commit intentional torts, and have aided and abetted in the commission of intentional torts, to the detriment of AIA and its innocent shareholders, including but not limited to: (1) controlling the Board of Directors and/or the decisions made by the Board and refusing to act in the best interests of AIA; (2) violating AIA's bylaws, including but not limited to failing to hold shareholder meetings; (3) violating AIA's articles of incorporation; (4) diverting corporate opportunities belonging to AIA; (5) conveying, encumbering, utilizing, and/or pledging corporate assets to themselves or other entities; (6) inappropriately redeeming, acquiring and/or issuing shares of stock and/or making payments on put options, including but not limited to, issuing shares to the Controlling Defendants; (7) inappropriately paying dividends; (8) intentionally failing to comply with conflict of interest provisions in AIA bylaws; (9) guaranteeing loans for CropUSA and failing to guarantee loans for AIA; (10) paying excessive compensation to officers and directors, including but not limited to, paying Taylor $250,000.00 per year to purportedly act as CEO and President of AIA Services after his contractual entitlement to such salary had expired and Taylor had represented that he would not take salary in certain years; (11) wasting corporate assets; (12) divulging and/or utilizing AIA's trade secrets for the benefit of themselves and other entities; (13) soliciting and transferring AIA employees to work for CropUSA; (14) engaging in acts and/or decisions without making full disclosure and without obtaining the required approval of shareholders; (15) engaging in millions of dollars of transactions wherein AIA conveyed benefits without the receipt of consideration; (16) forming and operating entities in direct competition with AIA in the

FIRST AMENDED COMPLAINT - 6

insurance marketplace, including without limitation, CropUSA and Pacific Empire Holdings Corp.; (17) making false representations, including, without limitation, regarding share values, omitting material facts in AIA's financial statements, falsely certifying AIA's financial statements, and that AIA was being operated for the benefit of the corporation; (18) concealing and failing to disclose material facts to AIA pertaining to loans, transfers, and utilization of assets, including without limitation; concealing or omitting material facts, including the facts related to virtually each and every transaction described herein; (19) making false representations to AIA, including without limitation, making and certifying false and misleading financial statements to AIA; (20) inappropriately loaning corporate funds to themselves and to other entities under their control; (21) failing to obtain security, failing to charge interest, and failing to collect on loans of at least $307,000.00 made to Taylor; (22) paying attorneys' fees and costs in various legal proceedings on behalf of past and present directors when it was clear that the individual past and present directors had intentionally failed to act in good faith and by failing to obtain security for repayment of said funds; (23) acquiring a parking lot with AIA funds and charging AIA, and making AIA pay, excessive rent for use of the parking lot even though AIA did not actually use the parking lot; (24) failing to seat the full and required board of directors; (25) improperly transferring shares held by AIA to themselves, including without limitation shares in Pacific Empire Radio Corp., and Pacific Empire Holding Corp., with damages occurring and set on the date of transfer; (26) failing to honor AIA contracts; (27) failing to take appropriate legal action in the interests of AIA; (28) removing a tenant from an AIA owned building to another building owned personally by Taylor; (29) failing to properly allocate expenses to CropUSA;  (30)

FIRST AMENDED COMPLAINT - 7

selling assets and or/contracts belonging to AIA to others; and (31) assisting one another and others (including Hawley Troxell, Babbitt, Riley and Ashby) in committing the intentional torts described herein and concealing acts and omissions that constituted intentional torts against AIA.

4.4     From 1995 to the filing of this suit, each of the Controlling Defendants has served at various times on the board of directors for AIA Services, AIA Insurance and/or CropUSA.  The Controlling Defendants have also served from time to time on purported "advisory boards" that make decisions on behalf of AIA and CropUSA.  Beck receives $5,000.00 per quarter to sit on the board of AIA and also receives shares for his "service."  Beck has stated that he serves on this board to protect his own interests and those of his friends.

4.5     By 1998, AIA's ability to sell health insurance had been impaired by undercapitalization in its underwriting subsidiary the Universal Life.  Accordingly, the company considered proposals to sell other forms of insurance, and in particular crop insurance, to be underwritten by other insurance companies. In 1999, AIA Services, then under the control of Controlling Defendants, began selling crop insurance through a wholly owned subsidiary of AIA Services formed under the name "AIA Crop Insurance, Inc."  The first purported meeting of shareholders of AIA Crop Insurance, Inc. was held on January 11, 2000. (See *Minutes of the First Meeting of Shareholders, January 11, 2000*, which is attached as **Exhibit A**[1] to this First Amended Complaint and incorporated by reference herein.)  The first purported meeting of the AIA Crop Insurance, Inc., board of directors was held on the same day.  (See *Minutes of the First Meeting of Directors,*

---

[1] The documents attached to this First Amended Complaint as exhibits have never been provided to the disinterested shareholders and were otherwise concealed from AIA.

FIRST AMENDED COMPLAINT - 8

*January 11, 2000*, which is attached as **Exhibit B** to this First Amended Complaint and incorporated by reference herein.**)** The purported minutes of the shareholder's meeting indicate that Taylor claimed to be the sole shareholder of AIA Crop Insurance at the time of incorporation.  Upon information and belief, at the time of its formation, Riley and/or Hawley Troxell were providing legal services to AIA Crop Insurance, Inc.  At a special meeting of the shareholders of AIA Crop Insurance, Inc., held on November 13, 2000, AIA Crop Insurance, Inc., was renamed CropUSA in an apparent attempt to conceal its corporate lineage and origins.  The minutes of the November 13, 2000, special meeting of the shareholders also show that Taylor continued to claim that he was the sole shareholder of CropUSA, while he was simultaneously representing in business plans provided to others that CropUSA was a subsidiary of AIA. At the time CropUSA was formed, Taylor was employed by AIA Services under an Executive Officer's Agreement, dated August 1, 1995, which contained express covenants not to compete.  Upon information and belief, Taylor's Executive Officer's Agreement and AIA Service's Amended and Restated Articles of Incorporation and Bylaws were drafted by defendant Riley.[2]

**4.6**     CropUSA held its purported annual shareholder's meeting on January 10, 2001. By this time, the illegal "spin off" of CropUSA had been accomplished by having AIA's Preferred C shareholders (primarily the Controlling Defendants) exchange their Preferred C shares for common shares in CropUSA.[3]   (If CropUSA were in fact an independent entity, these maneuvers would have been completely unnecessary.)  The minutes for this

---

[2] As noted elsewhere in this First Amended Complaint, Hawley Troxell later wrote an improper opinion letter approving a line of $15,000,000.00 credit that was barred by the Amended and Restated Articles of Incorporation.
[3] These shares were later "repurchased" for over $1.5 million in an egregious act of corporate looting.

FIRST AMENDED COMPLAINT - 9

meeting reveal that CropUSA had retained defendant Hawley Troxell as its advisor and SEC counsel and, upon information and belief, Hawley Troxell has served continuously as counsel ever since.  (See *Minutes of the Board of Directors, January 10, 2001,* which is attached as **Exhibit C** to this First Amended Complaint and incorporated by reference herein.) According to the minutes, negotiations between AIA Services and CropUSA had resulted in an agreement whereby AIA Services would no longer operate CropUSA as a subsidiary.  However, the negotiations referred to in minutes did not in fact occur.  There was no decision, nor has there ever been a decision, on the part of AIA Services to discontinue the subsidiary status of CropUSA.   None of the preferred or common shareholders of AIA Services (other than those present at the January 10, 2001, meeting) were given notice of or the opportunity to approve this corporate action.  In spite the fact that Taylor asserted on January 10, 2001 that CropUSA would no longer be a subsidiary of AIA, Taylor wrote in a February 27, 2001, letter to Donna Taylor that "AIA is developing a new crop insurance program through a new company called CropUSA." (See *February 27, 2001, Letter to Donna Taylor*, which is attached as **Exhibit D** to this First Amended Complaint and is incorporated by reference herein.)  The letter went on to state that "[t]he costs of putting the CropUSA program together have been paid.  *AIA* now needs to launch five new territories next Month." (emphasis added)  This letter constituted an unambiguous representation by Taylor that CropUSA was a subsidiary of AIA and was being operated for the benefit of AIA.  This representation was false, Taylor knew it was false, and also knew that Donna Taylor was likely to rely on this representation.  She did in fact justifiably rely on this representation and was severely damaged thereby.

FIRST AMENDED COMPLAINT - 10

**4.7**     Notwithstanding the fact that Taylor was operating under an employment agreement that required that he not compete with AIA Services, and notwithstanding the fact that he owed fiduciary duties to the shareholders of AIA Services, Taylor set forth his plans to exploit the assets of AIA Services for the benefit of CropUSA (and himself as the majority purported shareholder) in the purported minutes of the purported January 10, 2001, meeting.  For example, the meeting minutes reveal that CropUSA authorized its officers to execute a Master Marketing Agreement with AIA Insurance that would allow CropUSA access to all of AIA's customers and customer lists, as well as all of AIA's trade secrets.  AIA received no consideration for conveying this access.  CropUSA's officers (including Taylor) were also purportedly authorized to enter into a Management Agreement with AIA Insurance wherein AIA Insurance purportedly agreed to provide management and administrative support to CropUSA without charge.   However, Taylor has since testified under oath that AIA's board never authorized this agreement. The innocent shareholders of AIA (nor AIA itself) were never given notice of these proposed agreements, nor were they given the opportunity to approve or reject these agreements. Each of these agreements, if executed, would constitute a violation of Taylor's Executive Officer's Agreement, which contains a strict non-compete clause.   Each of these agreements, if executed, would also constitute a direct breach of fiduciary duty or aiding and abetting same on behalf of each of the Controlling Defendants.

**4.8**     Upon information and belief, Hawley Troxell was providing legal services to CropUSA and/or its board of directors as of January 10, 2001, and such provision of services has continued through the date of this complaint.  Upon information and belief, from January 10, 2001, and continuing through the period relevant to this lawsuit,

FIRST AMENDED COMPLAINT - 11

Hawley Troxell and Riley (and later Babbitt and Ashby) had knowledge of Taylor's Executive Officer's Agreement with AIA Services, had knowledge of the conflict of interest provision in AIA's bylaws, and had knowledge of provisions in AIA's articles of incorporation, but intentionally refused to comply with them.   Hawley Troxell and Riley knew or should have known that the purported Master Marketing Agreement and Management Agreement constituted breaches of Taylor's Executive Officer's Agreement, violations of AIA's articles of incorporation, violations of AIA bylaws,  and consequently breaches of his fiduciary duties to AIA Services.  Upon information and belief, Hawley Troxell and Riley also representing CropUSA from January 10, 2001, to the present, and by way of that representation Hawley Troxell, Babbitt, Riley and/or Ashby breached their fiduciary duties to AIA (including their undivided duty of loyalty owed to AIA) and took steps that materially assisted Taylor and the Controlling Defendants in the commission of the various torts described in this complaint and assisted in the concealment of those torts.

**4.9**     Beginning in 1999 and continuing through the date of this Complaint, CropUSA has been funded and operated with assets improperly transferred from AIA, including, but not limited to, operating capital, customer lists and other trade secrets, agents and staff, and goodwill.  CropUSA paid nothing for these assets.

**4.10**     The Controlling Defendants were all shareholders of AIA at the time CropUSA was formed and later purportedly became shareholders of CropUSA.  The Controlling Defendants all served on a purported "advisory board" of CropUSA and/or AIA, and this advisory board exercised actual control over these corporations.  By exercising control over these entities and committing acts that benefitted CropUSA at the expense of AIA,

FIRST AMENDED COMPLAINT - 12

these defendants engaged in a conspiracy to defraud AIA, which have right and title to the property of CropUSA.  Due to the fact that the Controlling Defendants have complete control over AIA and would never assert claims against themselves on behalf of AIA, the adverse dominion doctrine applies to all claims asserted herein, thereby barring any defense based on a statute of limitations.  *Freeland v. Enosis Corp.,* 540 F.3d 721 (7th Cir. 2008).

4.11     On January 10, 2002, CropUSA purportedly entered into a Memorandum of Understanding with the Controlling Defendants.  Under the terms of this memorandum, Beck and Cashman were obligated to guarantee loans on behalf of CropUSA.  However, Beck and Cashman were also obligated to guarantee loans on behalf of AIA. Notwithstanding this obligation, the Controlling Defendants subsequently arranged for AIA to guarantee CropUSA's lines of credit even though the guarantees were barred by AIA's articles of incorporation and bylaws.

4.12     In 2004, the Controlling Defendants attempted to raise capital for CropUSA by selling shares in CropUSA to private investors by way of a $10,000,000.00 private placement. Upon information and belief, Hawley Troxell drafted the July 15, 2004, Private Placement Memorandum, despite its obligations to AIA.

4.13     When CropUSA began distributing the Private Placement Memorandum in 2004, the company was experiencing financial difficulties that made it difficult, if not impossible, to attract investors to the private placement.   In addition, the company's financial difficulties threatened its ability to participate in the Federal Crop Insurance program.

4.14     In order to boost CropUSA's balance sheet for the purpose of operating the

FIRST AMENDED COMPLAINT - 13

company, attracting investors and maintaining access to the Federal Crop Insurance program, the Controlling Defendants devised a scheme to illegally transfer a large sum of money from AIA Insurance to CropUSA.  The Controlling Defendants conspired with each other in the formation and execution of this scheme. Upon information and belief, Hawley Troxell provided counsel to CropUSA with respect to the unlawful transfer of funds and/or has at a minimum assisted in covering up the facts of this illegal transfer.

**4.15**    In August, 2004, AIA Insurance received a payment of $1,510,693 from Trustmark.

**4.16**    Rather than deposit the payment of $1,510,693 into the account of AIA Insurance, where it would have benefited AIA and its innocent shareholders, Taylor deposited the funds into a new account entitled "AIA Insurance Inc. CropUSA."  The address for this account coincided with the address for Taylor's personal residence at 2020 Broadview Drive in Lewiston, Idaho.

**4.17**    Shortly after diverting the $1,510,693 into the "AIA Insurance Inc. CropUSA" account, AIA Insurance illegally transferred the funds to CropUSA.  The Controlling Defendants attempted to disguise this conversion of funds by characterizing the transaction as a purchase of Preferred C Shares in AIA Services.  However, as the Controlling Defendants acknowledged at the time, there was no market for these shares. At the time these funds were converted by CropUSA, there was no authorization of any kind for the transaction.  In order to create a plausible explanation for the transfer of funds, CropUSA eventually produced a document designated as a Consent in Lieu of Meeting dated August 26, 2004.  (See *Consent in Lieu of Meeting, August 26, 2004*, attached as **Exhibit E** to this First Amended Complaint and incorporated by reference

FIRST AMENDED COMPLAINT - 14

herein.)  However, this document itself is completely fraudulent, as it was retroactively created months later than the purported date in order to deceive auditors who questioned the validity of this transaction.  Furthermore, this transaction violated the terms of AIA Services' Amended and Restated Articles of Incorporation, which required that all Preferred C shares be redeemed equally and simultaneously.

**4.18**    CropUSA was carrying these shares on its books with a value of $21,693, which means that CropUSA realized a gain of $1,489,000 on this purported sale of shares. (See *CropUSA Financial Statement,* relevant pages of which attached as **Exhibit F** to this First Amended Complaint and incorporated by reference herein.)   "Corporate Theft" is an accurate description of this transaction.

**4.19**    Taylor was CEO and director of AIA Services, AIA Insurance and CropUSA at the time of the fraudulent transaction described in paragraphs 4.15 through 4.18 and other fraudulent transactions identified in this First Amended Complaint, and unlawfully benefited from those transactions.

**4.20**    The Controlling Defendants were all purported shareholders of CropUSA and benefited from the fraudulent transaction described in paragraphs 4.15 through 4.18 of this First Amended Complaint and the other unlawful transactions described herein.

**4.21**    The innocent shareholders of AIA Services were given no notice of the 2004 stock transaction, nor were any proper board meetings held to approve the transaction. However, as with the fraudulent document prepared on behalf of CropUSA, a fraudulent Consent if Lieu of Meeting, dated August 26, 2004, was prepared on behalf of AIA.  (See *Consent in Lieu of Meeting, AIA, August 26, 2004*, attached as **Exhibit G** to this First Amended Complaint and incorporated by reference herein).  This document was actually

FIRST AMENDED COMPLAINT - 15

produced several months after the transaction and was created to deceive auditors.

**4.22**     Upon information and believe, Hawley Troxell provided legal services to both AIA and CropUSA at the time of the 2004 transaction.  Hawley Troxell, Babbitt, Ashby and/or Riley at various times, as purported counsel for AIA, failed to disclose to AIA that the acts of the Controlling Defendants constituted a breach of their fiduciary duties owed to AIA.  Hawley Troxell failed to disclose to AIA, or to anyone else, that this transaction was unlawful on many levels, including but not limited to the fact that it did not comply with articles of incorporation and bylaws, caused a breach of AIA's other contracts, and could not be justified by the balance sheet of either AIA Insurance or CropUSA.  Upon information and belief, Hawley Troxell had knowledge of the back-dated Consent in Lieu of Meeting documents.

**4.23**     After robbing AIA Insurance of over $1,500,000.00 in 2004, the Controlling Defendants continued to operate CropUSA with assets both tangible and intangible that rightly belonged to AIA and continued to conceal their actions from the plaintiff and other shareholders.

**4.24**     Under the management and direction of the Controlling Defendants, AIA regularly failed to allocate costs to CropUSA and other entities and failed to charge markup, interest or profit on costs paid for other entities.  For example, Taylor's own salary of $250,000.00 was allocated entirely to AIA Services even though Taylor's contractual right to salary from AIA Services had expired in 1998 and had never been renewed by an authorized board. (And, further, Taylor performed no actual work for AIA during the time in question.)  Hawley Troxell failed to take appropriate action or to advise AIA or duly authorized disinterested constituents of AIA that the failure to

FIRST AMENDED COMPLAINT - 16

allocate costs to CropUSA constituted fraud, conversion, and breach of fiduciaries and/or aiding and abetting the breach of fiduciary duties on the part of the Controlling Defendants.   Taylor, with the knowledge and complicity of the other Controlling Defendants also performed work for other entities while on AIA's payroll, *i.e.*, Pacific Empire Radio Corp., Pacific Empire Communications Corp., Pacific Empire Holdings Corp., Radio Leasing I LLC and Radio Leasing II LLC.   Taylor also had other AIA employees work for these entities without compensation to AIA.

**4.25**    Between its founding in 1999 and the filing of this lawsuit, CropUSA and other entities generated tens of millions of dollars of revenue (including premiums) and other benefits that would have flowed to AIA  but for the unlawful and unauthorized acts of the Controlling Defendants.

**4.26**    As of 2006, Taylor owed AIA at least $307,000.00 for personal loans he had taken from the company without shareholder knowledge or approval.  For several years, Taylor concealed these loans be engaging in false accounting whereby loans to him were treated as payments of principle on AIA's indebtedness to Reed Taylor.  In 2006, Taylor "corrected" an accounting "error" by increasing the balance due on Reed Taylor's note to $6 million.  Taylor has still not repaid his unauthorized personal loans.  Taylor also had AIA pay his personal maid, his personal credit card bills, donations, cash advances, family cell phone bills, and other personal expenses.  Taylor also had AIA purchase several vehicles from him, and Taylor continued to drive these vehicles after the sales. Taylor also had AIA employees perform work on his personal residence and on other real property not owned by AIA.  These acts were all committed with the knowledge and complicity of the Controlling Defendants.

FIRST AMENDED COMPLAINT - 17

**4.27**    As the purported attorneys for AIA, two entities, Hawley Troxell, Babbitt, Ashby and/or Riley owed duties of loyalty, care, and good faith to AIA and these defendants breached these duties by engaging in the simultaneous representation of the Controlling Defendants, CropUSA, and other parties with interests adverse to AIA. In addition, and/or in the alternative, these attorney defendants have exceeded the scope of their representation and all acts taken beyond the scope of representation constitute acts of aiding and abetting exposing the lawyer defendants to liability as joint tortfeasors.

**4.28**    In August, 2007, AIA settled litigation with the state of Idaho whereby AIA received a promissory worth approximately $1.5 million. Although AIA Insurance paid the costs of this litigation, the Controlling Defendants, with the assistance of Riley and Hawley Troxell, improperly titled the note in the name of AIA Services only, and then pledged the note to CropUSA so that the Controlling Defendants could borrow money to pay their attorneys' fees to Hawley Troxell. As with the 2004 transactions (4.15-4.18), the transaction is indistinguishable from theft. Upon information and belief, the pledge agreement was drafted by Hawley Troxell and/or Riley, although they later asserted that they were only "scriveners" for the transaction.

**4.29**    On October 26, 2007, Hawley Troxell and/or Riley drafted and delivered an opinion letter falsely representing that AIA Insurance was authorized to guarantee a $15,000,000.00 line of credit on behalf of CropUSA.  (See *Hawley Troxell Opinion Letter, October 26, 2007*, which is attached as **Exhibit G** to this First Amended Complaint and is incorporated by reference herein.) This letter was delivered in violation of the Amended and Restated Articles of Incorporation of AIA Services, the bylaws of AIA Services and the restated bylaws of AIA Insurance, and in violation of the duty of

FIRST AMENDED COMPLAINT - 18

loyalty owed by Hawley Troxell to AIA. This letter was distributed in furtherance of the scheme to enrich CropUSA at the expense of AIA and to further the RICO enterprise operated by the Controlling Defendants. Additionally, Lancelot, the lender on this $15,000,000.00 line of credit was subsequently exposed as a Ponzi scheme, and its founder, Gregory Bell, pleaded guilty to criminal charges in federal court. Mr. Bell was the signee for Lancelot on the $15,000,000.00 line of credit. These facts, along with others, were never disclosed to AIA or duly authorized and disinterested constituents of AIA by Hawley Troxell or the attorney defendants.

## V.    CERTIFICATE OF COMPLIANCE WITH I.C. § 30-1-742, FED. R. CIV. P. 23.1, AND I.R.C.P.  23(1)(A) and OTHER FACTS

**5.1**    As a prerequisite to filing this lawsuit under Idaho Code § 30-1-742, Federal Rule of Civil Procedure 23.1, and Idaho Rule of Civil Procedure 23(1)(a), Donna Taylor served a derivative demand letter on the purported boards of directors of AIA Services and AIA Insurance on July 21, 2008.  (See *Derivative Demand Letter, July 21, 2008*, attached as **Demand Letter**  and incorporated by reference herein.)  RICO actions may be brought derivatively.  *Diduck v. Kaszycki & Sons, Contractors, Inc.,* 737 F. Supp. 792 (S.D.N.Y. 1990).

**5.2**    On July 23, 2008, Hawley Troxell, Babbitt, Ashby and Riley, filed a Motion for Stay of Proceedings in *Taylor v. AIA Services*, and asserted that the stay was necessary so that AIA Services and AIA Insurance could conduct an inquiry into the demands made by Donna Taylor in her letter of July 21, 2008.

**5.3**    On July 31, 2008, attorney James LaRue, representing Hawley Troxell and the attorney defendants, responded to those portions of the demand letter that asked the purported board of directors to terminate Hawley Troxell.  In this letter, LaRue

FIRST AMENDED COMPLAINT - 19

disingenuously demanded that Donna Taylor provide the complete factual basis for each and every one of her claim when he knew that his clients and the Controlling Defendants had full knowledge of Donna Taylor's claims and unfettered access to and control of all documents relevant to claims asserted in Donna Taylor's demand letter.

5.4     On August 14, 2008, Hawley Troxell and the attorney defendants disingenuously filed a petition for a court appointed independent inquiry on behalf of AIA when they had no intention of following through with the inquiry.

5.5     On September 4, 2008, Reed Taylor responded to the petition for a court appointed independent inquiry.  Notably, Reed Taylor did not oppose the appointment of independent investigators.  Instead, he objected to the investigators proposed by Hawley Troxell, Judges Schilling and Reinhardt, as both of these judges had previous professional relationships with the defendants and their attorneys.

5.6     Although the parties had filed briefing with respect to the appointment of independent investigators, Hawley Troxell and the attorney defendants never noted the motion for a hearing and the court never ruled on the request, and they intentionally abandoned the appointment of an independent inquiry.

5.7     Upon information and belief, the defendants have never conducted a further investigation of the demands made in Donna Taylor's letter of July 21, 2008.

5.8     The defendants have not taken any of the actions demanded by Donna Taylor in her demand letter.  All of the claims made in this lawsuit were reasonably contemplated by the derivative demand letter, as it demanded that the board take all actions against all parties.

5.9      As owner of Preferred A Shares in AIA Services, and as beneficial owner

FIRST AMENDED COMPLAINT - 20

common shares in AIA Services, Donna Taylor fairly represents the interests of shareholders not named in this suit. Taylor is not pursuing this matter in a collusive manner in order to obtain jurisdiction where it does not otherwise exist but to only pursue *bona fide* claims.

## VI.   CAUSES OF ACTION

The facts alleged in paragraphs 4.1 through 4.29 and paragraphs 5.1 through 5.9 are re-alleged and restated herein to the extent necessary to maintain each cause of action herein.  Where necessary, each of the causes of action pled herein shall be construed as having been pled in the alternative.

### FIRST CAUSE OF ACTION—RICO, 18 U.S.C. § 1961 *et seq.*
### (Controlling Defendants, CropUSA,  Hawley Troxell, Riley, Babbitt and Ashby)

**6.1**     Under 18 U.S. C. § 1961(1), "racketeering activity" includes a violation of certain federal statutes, including 18 U.S.C.  § 1341, which makes it a crime to "devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses representations or promises…" with a further requirement that the fraud include the use of the mails or interstate carriers.  Racketeering activity also includes fraud committed through the use of interstate wires.  18 U.S.C. § 1343.  A "pattern or racketeering activity" includes at least two acts of racketeering occurring after the enactment of the statute, with the last act occurring within ten years of the prior act. 18 U.S.C. § 1961(5).

**6.2**     18 U.S.C. 1962(a) makes it illegal for anyone who has received income from a pattern of racketeering activity to invest any of the income received in any enterprise which is engaged in or effects interstate or international commerce.  18 U.S.C. 1962(b) makes it illegal for a person to obtain interest in or control over any enterprise engaged in

FIRST AMENDED COMPLAINT - 21

or effecting interstate or international commerce by engaging in a pattern of racketeering activity.  18 U.S.C. 1962(c) makes it illegal for employees or associates of enterprises engaged in or effecting interstate or international commerce to participate in or conduct the enterprise's affairs through a pattern of racketeering activity.  18 U.S.C. § 1962(d) makes it illegal for any person to conspire with another to violate subsections (a),(b) or (c) of the statute.  A person damaged by any violation of 18 U.S.C. § 1962 has a cause of action for treble damages under 18 U.S.C. § 1964(c).

**6.3**     CropUSA was formed by the Controlling Defendants in 2000, and was operated thereafter as a scheme or artifice to defraud AIA or to obtain money or property from AIA by means of false or fraudulent pretenses, representations, or promises, *i.e.*, as a "racketeering enterprise" under 18 U.S.C. § 1961(4).  The RICO Defendants utilized the United States mail and/or interstate wire communications in furtherance of this scheme or artifice, and their actions had an effect on interstate commerce.

**6.4**     The actions taken by CropUSA and the Controlling Defendants with respect to the purported January 10, 2001, shareholders' meeting advanced the scheme to obtain money or property by means of false or fraudulent pretenses, representations, or promises. These defendants falsely represented that negotiations had taken place and that AIA Services had authorized CropUSA to operate as an independent company, rather than as a wholly-owned subsidiary.  These defendants further acted to deprive AIA of money and property by agreeing to transfer AIA corporate assets, including trade secrets, to CropUSA, without compensation to AIA.  This scheme to deprive AIA of money and property was advanced by concealing the contents of the purported January 10, 2001 board of directors meeting from the innocent shareholders of AIA.

FIRST AMENDED COMPLAINT - 22

**6.5**    From 2000 and continuing through the filing of this lawsuit, CropUSA and the Controlling Defendants further acted to fraudulently deprive AIA of money and property by arranging for AIA to pay CropUSA's expenses, including but not limited to the salaries of Taylor and Petersen, and employee benefits, as well as arranging for AIA to provide corporate infrastructure to CropUSA without compensation to AIA.

**6.6**     The Controlling Defendants and CropUSA further acted to deprive AIA of money and property in 2004, when CropUSA converted over $1.5 million belonging to AIA Insurance for its own use.

**6.7**    All defendants named under this cause of action further acted to deprive AIA of money and property in 2007, when the deed of trust received from the state of Idaho in settlement of a lawsuit was titled to AIA Services and subsequently pledged to CropUSA so that CropUSA could borrow money to pay the attorney's fees of Hawley Troxell, Babbitt, Ashby and Riley for providing legal services beyond their respective scopes of representation.

**6.8**    A pattern of racketeering activity is established by, *inter alia*,  the following acts:

a.    The unlawful transfer of AIA assets to CropUSA without shareholder approval and in contradiction of express representations that CropUSA would be operated for the benefit of AIA;

b.    The daily operation of CropUSA with assets unlawfully converted from AIA;

c.    The unlawful transfer of $1.5 million from AIA to CropUSA in 2004, wherein AIA received consideration worth approximately $20,000;

d.    The 2007 transfer of the deed of trust belonging to AIA to CropUSA, with AIA receiving no consideration for this transaction;

FIRST AMENDED COMPLAINT - 23

e.      The use of the deed of trust acquired by AIA in 2007 to pay the personal legal

fees of the Controlling Defendants.

Each of these acts is the direct and proximate cause of the damages claimed by

the plaintiff in this case.

**6.9**     With respect to the illegal acts described in paragraphs 6.3 through 6.7, the

defendants utilized the United States mail and/or interstate wires, *e.g.,* email, in

furtherance of their activities, thereby establishing a predicate offense to RICO under 18

U.S. C. § 1341 and/or 18 U.S.C. § 1343.  18 U.S.C. § 1961(1).

a.      The February 27, 2001, letter to Donna Taylor, **Exhibit D,** constituted mail fraud

and advanced the scheme of the racketeering enterprise.

b.      The funds obtained by AIA in 2004 (the Trustmark settlement) were fraudulently

converted by CropUSA by way of a wire transfer from "AIA Insurance CropUSA" (a

fictional entity) to CropUSA on or about August 26, 2004.

c.      Upon information and belief, the fraudulent documents entitled "Consent in Lieu

of Meeting," which were created months later than the dates represented, were created to

deceive auditors and were in fact mailed to auditors.

d.      Upon information and belief, the unlawful 2007 pledge of the mortgage belonging

to AIA was accomplished through  the use of the United States mail.

**6.10**    The Controlling Defendants all used funds and/or assets received through a

pattern of racketeering activity to invest in or obtain control of an enterprise  engaged in a

pattern of racketeering activity and are liable to AIA for treble damages and attorney's

fees under 18 U.S.C. § 1962(a).  Specifically, each of these defendants used money and

assets obtained in 2004 and on an ongoing basis thereafter to further the continued

FIRST AMENDED COMPLAINT - 24

existence and operation of the racketeering enterprise, CropUSA.

**6.11**     Defendants Beck, Cashman and Petersen were all employees or associates (as purported board members) of CropUSA during the period of racketeering activities and participated in or controlled its affairs.  Beck and Cashman were members of CropUSA's purported "advisory board," were involved in all important financial decisions, and otherwise participated in the activities of CropUSA in furtherance of racketeering activity.   These defendants are liable to AIA under 18 U.S.C. § 1962(c) for treble damages and attorney's fees for the damages caused by their conduct.

**6.12**     All defendants named under this cause of action had knowledge of CropUSA's pattern of racketeering activity, agreed with the objectives of the racketeering activity, and took overt acts to advance the interests of CropUSA, thereby rendering each of these defendants liable to the innocent shareholders of AIA under 18 U.S.C. § 1962(d) for triple damages and attorney's fees for damages caused by their conduct.  With respect to Hawley Troxell, Babbitt, Ashby and/or Riley, a cause of action against corporate counsel of the RICO enterprise exists where the law firm communicates or disseminates the misrepresentations of the RICO enterprise or breaches fiduciary duties to clients in the course of providing representation to the RICO enterprise, which describes the conduct of these defendants in this case. See, e.g., *Design Pallets, Inc., v. GrayRobinson P.A.*, 515 F.Supp.2d 1246 (M.D. Fla. 2007).   RICO liability can also arise from nondisclosure of material facts where there is a duty to disclose, which once again describes the conduct of these defendants in this case.   *Design Pallets*, 515 F.Supp.2d at 1255.  By taking these actions to the detriment of shareholders, Hawley Troxell should be found to have undertaken the representation of the various entities in bad faith.

FIRST AMENDED COMPLAINT - 25

**SECOND CAUSE OF ACTION—BREACH OF FIDUCIARY DUTY**
**(Taylor, Beck, Cashman, Babbitt, Riley, Ashby, Hawley Troxell)**

**6.13**    As members, or purported members of the board of directors for AIA Services and/or AIA Insurance, the Controlling Defendants owed fiduciary duties to the corporations.  As a corporate officer, and as an attorney, Taylor owed an elevated level of fiduciary duties to the corporations.  As AIA's retained corporate counsel, Hawley Troxell, if authorized, owed fiduciary duties to the corporations.  This duty extended to defendants Babbitt, Riley and Ashby.  If not authorized to act as counsel, Hawley Troxell acted with apparent authority as agent and owes fiduciary duties as a result of that agency relationship.  All of these defendants have breached their fiduciary duties to AIA and those breaches are the proximate cause of the damages claimed herein.

**6.14**    By using AIA corporate assets to fund, form and operate CropUSA, a competing entity, the defendants breached their fiduciary duties to the corporation.

**6.15**    Hawley Troxell represented or was retained by AIA at the time CropUSA was formed.  By failing to advise that shareholder approval of any such transaction would be necessary, and by failing to advise that the transaction constituted a breach of fiduciary duty, individually and collectively, on the part of the board members, and by failing to advise that the transaction constituted a violation of the non-compete clause in Taylor's employment contract, Hawley Troxell breached the fiduciary duties it owed to AIA and its representation was taken in bad faith.  A shareholder's allegations of a law firm's conflict of interest in representing two corporations is sufficient to state a claim for breach of fiduciary duty.  *Reis v. Barley, Snyder, Senft & Cohen LLC,* 484 F.Supp.2d 337 (E.D. Pa. 2007)

**6.16**    The defendants further breached their fiduciary duties to the corporation when

they orchestrated the transfer of over $1.5 million to CropUSA in 2004. These defendants unlawfully funneled funds from AIA Insurance to CropUSA to enrich themselves and to artificially enhance CropUSA's balance sheet.

**6.17**    The defendants on AIA's board of directors further breached their fiduciary duties to the corporation by allowing CropUSA to utilize AIA Services' corporate assets, including agents, customer lists and trade secrets.

**6.18**    All defendants named under this cause of action breached their fiduciary duties to AIA when they caused the deed of trust received through the settlement of litigation with the state of Idaho to be titled with AIA Services and subsequently pledged to CropUSA so that CropUSA could borrow money to pay the attorney's fees of Hawley Troxell.

**6.19**    All defendants named under this cause of action further breached their fiduciary duties to AIA when they caused AIA Insurance to guarantee a $15 million line of credit on behalf of and for the sole benefit of CropUSA, and thereafter concealed this transaction from AIA.  Hawley Troxell and/or Riley violated its fiduciary duties to AIA by writing an opinion letter stating that AIA had authority to make this loan when this loan guarantee was in fact barred by the articles of incorporation and bylaws of AIA.

**6.20**    The defendants named in this cause of action further breached their fiduciary duties to the corporation by failing to act on Donna Taylor's July 21, 2008 demand letter.

**6.21**    Hawley Troxell and the individual lawyers have acted continuously as purported counsel for AIA and CropUSA during the period from 2001, at the latest, and  through the filing of this lawsuit.  As counsel, Hawley Troxell, has committed numerous acts and/or omissions that were detrimental to the interests of AIA, and, upon information and belief, was providing legal advice when the Controlling Defendants, without notice or

FIRST AMENDED COMPLAINT - 27

authority, converted CropUSA from a wholly owned subsidiary of AIA Services into a separate corporate entity of which Taylor was purportedly the sole shareholder.  These defendants provided legal advice with respect to CropUSA's Private Offering Memorandum, while at the same time representing AIA. This was akin to simultaneously representing both the thief and the victim.

**6.22**    Each of these defendants is a "faithless fiduciary" as defined by law and is therefore required to disgorge all compensation and consideration received from AIA and/or CropUSA.  The disgorgement is in addition to liability caused by the breaches of fiduciary duty.  In the case of Hawley Troxell, the disgorgement goes to all fees received from any of the defendants.  In the case of the faithless board members, the disgorgement goes to all salary, bonuses, warrants, stock options, or stock received from AIA.

**6.23**    The defendants named under this cause of action are jointly and severally liable to AIA for all damages arising from their breaches of fiduciary duty.

### THIRD CAUSE OF ACTION—AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY
### (Taylor, Beck, Cashman, Hawley Troxell, Babbitt, Riley, Ashby)

**6.24**    One who counsels, advises, abets or assists in the commission of an actionable wrong is responsible to the injured person for the entire loss or damage.  86 C.J.S. Torts § 105; RESTATEMENT (FIRST) OF TORTS § 876 (1939).   Aiding and abetting in the commission of an actionable wrong may be inferred from the fact that one aided and abetted efforts to conceal the wrong. 86 C.J.S. Torts § 105. Liability for aiding and abetting the commission of a tort may be established by showing the person was present at the time of the actionable wrong and did not disapprove or oppose the action.  Plaintiffs alleging aiding and abetting need not prove that the aiding and abetting was

FIRST AMENDED COMPLAINT - 28

necessary for the commission of the tort, only that the aiding and abetting made it easier for the tort to occur.  *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 38 P.3d 12 (2002).

**6.25**    During certain relevant times, each of the defendants named under this cause of action had knowledge of the other defendants' act and omissions, knew that the acts or omissions constituted a breach of fiduciary duty, did not disapprove of the acts or omissions, took no steps to prevent the commission of the torts, and assisted in the concealment of the acts and omissions described herein, thereby damaging AIA.

**6.26**    Beck and Cashman aided and abetted the breaches of fiduciary duty committed by Taylor by assisting in and concealing the actions described in this complaint. Beck and Cashman aided and abetted the purported "spin off" of CropUSA from AIA Services, aided and abetted Taylor's scheme to divert $1.5 million from AIA Insurance in 2004, aided and abetted Taylor's failed effort to achieve a private placement for CropUSA (the "exit strategy"), aided and abetted the  2007 scheme to pledge the mortgage owned by AIA Services to CropUSA, aided and abetted the action of Taylor in having AIA Services guarantee CropUSA's line of credit when Beck and Cashman should have guaranteed the line of credit.

**6.27**    Hawley Troxell and each of the named attorney defendants aided and abetted in the commission of torts committed by The Controlling Defendants by assisting in and covering up the tortious acts described herein.  Hawley Troxell and the named attorneys were present at the commission of the torts and did not disapprove or oppose the acts.  To the contrary, Hawley Troxell and the named attorneys provided legal advice and/or opinion letters that facilitated the breaches of fiduciary duty by the other defendants.

FIRST AMENDED COMPLAINT - 29

Hawley Troxell was present as counsel when Taylor purportedly spun off CropUSA and failed to counsel that the conduct was improper and, in fact, concealed the impropriety from AIA.   Hawley Troxell assisted in 2004 when The Controlling Defendants engineered the illicit transfer of funds from AIA Insurance in order to prop up the proposed private placement, which Hawley Troxell also handled.  Hawley Troxell was present as counsel and issued an improper opinion letter when The Controlling Defendants arranged for AIA Services to guarantee the line of credit of CropUSA. Hawley Troxell, Babbitt, Ashby and Riley assisted when Taylor, Beck and Cashman pledged a $1.2 million mortgage belonging to CropUSA so that CropUSA could borrow money to pay Hawley Troxell's attorney's fees, and failed to counsel that the transaction was improper.

**6.28**    Each of these defendants, by aiding and abetting the acts described herein, is jointly and severally liable for all damages resulting from these breaches of fiduciary duty.

**FOURTH CAUSE OF ACTION—BREACH OF CONTRACT**
**(John Taylor)**

**6.29**    On August 1, 1995, Taylor and AIA Services entered into an Executive Officer's Agreement.

**6.30**    Section 9 of the Executive Officer's Agreement sets for express covenants not to compete.  Subsection A of the covenants prohibits Taylor from soliciting AIA customers or otherwise diverting the business of AIA Services customers.  Subsection B prohibits Taylor from participating in any insurance business that underwrites, markets or administers insurance products for commodity associations.   Subsection C prohibits Taylor from soliciting AIA Services employees for other employment.  Subsection D of

FIRST AMENDED COMPLAINT - 30

the covenants bars Taylor from divulging or exploiting trade secrets belonging to AIA.

**6.31**    By forming CropUSA as anything other than a wholly-owned subsidiary of AIA, Taylor breached all four subsections of Section 9 of the Executive Officer's Agreement.

**6.32**    By continuing to operate CropUSA with assets belonging to AIA, including AIA employees, Taylor has committed an ongoing breach of all four subsections of Section 9 of the Executive Officer's Agreement.   Taylor has further breached Section 9 by operating Pacific Empire Holdings.

**6.33**    Taylor's breaches of the Executive Officer's Agreement have damaged AIA in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION—LEGAL MALPRACTICE**
**(Hawley Troxell, Babbitt, Riley, Ashby)**

**6.34**    A law firm is liable for malpractice where (1) there exists and attorney client relationship; (2) where the lawyers owe duties pursuant to the relationship; (3) where the lawyers breach their duties or negligently perform them; and (4) such breaches proximately cause damage to the plaintiffs.   *Harrigfeld v. Hancock,* 140 Idaho 134, 90 P.3d 884 (2004).   A legal malpractice claim may be brought in a derivative action. *Schulman v. Wolf & Samson, PC,* 951 A.2d 1051 (N.J. 2008).   Upon information and belief, Hawley Troxell has provided ongoing legal services to AIA from 1999 through the filing of this complaint.   An attorney-client relationship exists between AIA and Hawley Troxell as well as between AIA and the individually named attorney defendants.

**6.35**    Pursuant to the attorney-client relationship, Hawley Troxell and its lawyers owe AIA an undivided duty of loyalty.   Hawley Troxell and its lawyers, including those named in this complaint, are required at all times to provide legal advice and take action that is in the best interests of AIA.   Hawley Troxell violated this duty of loyalty by

FIRST AMENDED COMPLAINT - 31

simultaneously representing AIA and CropUSA, and by taking funds from AIA for the defense of CropUSA and the Controlling Defendants.

**6.36**   Hawley Troxell and the named attorney defendants also committed legal malpractice when they breached fiduciary duties to AIA as described herein.

**6.37**   AIA suffered damages as a direct, foreseeable and proximate result of the breaches of duty and the acts of malpractice described herein.

## SIXTH CAUSE OF ACTION—FRAUD/FRAUDULENT CONCEALMENT/CONSTRUCTIVE FRAUD
### (Controlling Defendants)

**6.38**   These defendants are liable to AIA for fraud because each of them (1) made representations of fact as asserted throughout this complaint, including but not limited to representations that CropUSA was being operated for the benefit of AIA; (2) which were false; (3) which were material; (4) which they knew to be false; (5) intended that there be reliance; (6) where other party was ignorant of the falsity of the statement; (7) and the other party did rely; (8) and the reliance was justified; and (9) injury resulted.  *Mannos v. Moss,* 143 Idaho 927, 155 P.3d 1166 (2007)(holding that misrepresentations in financial statements precluded summary judgment).   Constructive fraud is identical to fraud, except that the plaintiff need not prove speaker's knowledge of the fraud and the speaker's intent that the other party rely on the representations.  37 Am. Jur. 2d Fraud and Deceit § 9.

**6.39**   In addition to making false representations, these defendants also concealed information from AIA with knowledge that the concealed information was material and that the concealment would cause AIA to suffer otherwise avoidable damages.  Failure to disclose a fact where one has a duty to disclose is the legal equivalent of representing the

non-existence of the fact.  Where facts are fraudulently concealed, plaintiffs need not show reliance as there is nothing other than silence upon which to rely.

**6.40**    The Controlling Defendants represented to AIA Services that CropUSA was a wholly owned subsidiary of AIA Services.  Simultaneously, the Controlling Defendants adopted the position, not disclosed to AIA or its shareholders, that CropUSA was an independent entity with Taylor as its sole shareholder.  These representations were false, the defendants knew of their falsity, these defendants intended that there be reliance, there was justifiable reliance and AIA was damaged as a result.

**6.41**    By operating CropUSA as an independent entity, and by using CropUSA as a vehicle for misappropriating and converting corporate assets, the named defendants committed ongoing fraud that has persisted through the date of this complaint.

**6.42**    The Controlling Defendants also made misrepresentations to AIA in the form of false, misleading and fraudulent financial statements, upon which AIA reasonably relied, with that reliance being the proximate cause of AIA's damages.

**6.43**    When the Controlling Defendants transferred more than $1.5 million to CropUSA in 2004, they concealed the fact of this transaction from AIA and AIA was damaged by this concealment.

**6.44**    When the Controlling Defendants transferred AIA corporate assets, including employees, goodwill and trade secrets, to CropUSA, they concealed the fact of this transfer from AIA and AIA was damaged by this concealment.

**6.45**    When the Controlling Defendants had AIA pay CropUSA's corporate expenses, including the salaries of Taylor and Petersen, they concealed this fact from AIA and its innocent shareholders.  AIA suffered damages as a result of this concealment.

FIRST AMENDED COMPLAINT - 33

**6.46**    When the Controlling Defendants pledged the mortgage obtained by AIA from the state of Idaho to CropUSA so that CropUSA could borrow money to pay the attorney's fees of Hawley Troxell, they concealed this fact from AIA and its innocent shareholders.  AIA suffered damages as a result of this concealment.

**6.47**    When the Controlling Defendants had AIA Insurance guarantee CropUSA's $15 million line of credit, they concealed the fact of this guarantee from AIA.

**6.48**    These defendants are jointly and severally liable to AIA for all damages arising from the fraud described herein and, further, are the ongoing fraud bars these defendants from asserting a statute of limitations defense.

### SEVENTH CAUSE OF ACTION—AIDING AND ABETTING FRAUD
### (Controlling Defendants, Babbitt, Riley, Ashby, Hawley Troxell)

**6.49**    As discussed under the Third Cause of Action, one who aids and abets in the commission of a tort is liable with the primary tortfeasor(s) for all damages resulting from the tort.  Aiding and abetting is established where one has knowledge of the tort, does not disapprove, and takes no action to prevent the commission of the tort.  Hawley Troxell and one or more of the named lawyer defendants were providing legal representation to AIA at the time of each of the fraudulent acts alleged in this complaint. The individual non-lawyer defendants, in addition to committing individual acts of fraud, aided and abetted each other's actions.

**6.50**    Hawley Troxell and/or the individual lawyers named herein knew or should have known that the acts of the Controlling Defendants constituted fraud.  Hawley Troxell and the individual lawyers knew or should have known that these acts were detrimental to of AIA.  Hawley Troxell's silence, failure to act and intentional acts to cover up fraud upon AIA constituted aiding and abetting the fraud upon AIA.

FIRST AMENDED COMPLAINT - 34

**6.51**   Hawley Troxell and the individual lawyers knew or should have known that the transfer of AIA assets to CropUSA constituted a fraud against AIA.

**6.52**   Hawley Troxell and the individual lawyers knew or should have known that the transfer of approximately $1,500,000.00 to CropUSA in 2004 constituted a fraud on AIA.

**6.53**   Hawley Troxell and the individual lawyers knew or should have known that the practice of allocating CropUSA expenses to AIA, and otherwise failing to maintain arms' length transactions between CropUSA and AIA, constituted a fraud on AIA.

**6.54**   By knowingly providing legal cover for the fraudulent acts described herein, Hawley Troxell and the individual lawyers have aided and abetted the fraud committed by the Controlling Defendants and Petersen.

**6.56**   As aiders and abettors, Hawley Troxell and the individual lawyers are liable to the innocent shareholders of AIA Services to the same extent as the primary tortfeasors. RESTATEMENT (FIRST) OF TORTS § 876 (1939).  Likewise, Taylor, Beck, Cashman and Petersen are all liable for aiding and abetting each other in the commission of fraud.

### EIGHTH CAUSE OF ACTION—EXCESSIVE COMPENSATION/CORPORATE WASTE
### (Taylor and Beck)

**6.57**   To support a claim for excessive compensation, plaintiff need only show that the board lacked independence and/or lacked good faith.  *In Re: Tyson Foods, Inc.,* 919 A.2d 563 (Del. 2000).  The Controlling Defendants have controlled AIA's boards from 1995 to the present.  They lack independence and have not acted in good faith.

**6.58**   The Controlling Defendants paid excessive compensation and have wasted corporate assets during the course of managing the corporations.

**6.59**   These defendants are liable to AIA for damages caused by paying excessive

compensation and otherwise wasting corporate assets.

## NINTH CAUSE OF ACTION—ACCOUNT STATED
### (John Taylor)

**6.60**    John Taylor established an account by borrowing $307,000.00 from AIA for his

personal use.

**6.61**    Taylor subsequently confirmed the amount of the debt by "correcting" an

accounting "error" so that AIA's book show that AIA is creditor and Taylor is debtor for

$307,000.00.

**6.62**    Taylor has not paid any portion of this debt and the entire balance remains due

and payable to AIA.

**6.63**    Taylor is liable to AIA for $307,000.00 on the account stated, plus prejudgment

interest according to statute.

## VII.    <u>JURY DEMAND</u>

**7.1**    Plaintiffs hereby demand a trial by jury on all causes of action for which a jury

trial is allowed by law.

## VIII.   <u>PRAYER FOR RELIEF</u>

Wherefore Plaintiffs pray for the following relief:

1.    For a judgment jointly and severally against all defendants for damages in

an amount to be proven at trial;

2.    For judgments against individual defendants in an amount to be proven at

trial, where appropriate, for damages for which joint and several liability does not apply

to all defendants;

3.    For a judgment of treble damages against all RICO defendants as

authorized by statute;

FIRST AMENDED COMPLAINT - 36

4.      For an order requiring the Hawley Troxell to disgorge all attorneys fees paid to it by AIA Services, AIA Insurance, CropUSA and any of the named defendants and judgment in favor of AIA for that amount;

5.      For an order requiring the Controlling Defendants to disgorge all compensation received from AIA or CropUSA since 1999, including stock, cash and other assets, including, without limitation, as faithless fiduciaries.

6.      For an award to plaintiffs of attorneys' fees and cost incurred in this action as allowed by statute, contract, or recognized grounds of equity;

7.      For an order requiring that all funds recovered as a result of this litigation, minus fees, costs  and bona fide debts, be deposited with the Court registry and distributed only after court order, and that no funds from this litigation be paid to faithless fiduciaries Taylor, Beck and Cashman.

8.      For judgments against Taylor, Beck and Cashman, jointly and severally, as the alter-ego of CropUSA, for all damages incurred by AIA and attributable in whole or in part to CropUSA.

9.      For any such further relief or remedy, including injunctive relief, as Plaintiffs may demand prior to or at trial or as this Court may find just and equitable.

DATED this the 18th day of November, 2010 in Seattle, Washington.

LAW OFFICE OF LEE H. ROUSSO


By: /s/ Lee H. Rousso
Lee H. Rousso, ISB # 8353
800 Fifth Avenue, Suite 4100
Seattle, Washington 98104
 (206) 623-3818
 lee@leerousso.com
 Attorneys for Donna J. Taylor

FIRST AMENDED COMPLAINT - 37