FILED

2008 FEB 1 PM 12 57

PATTY O. WEEKS
CLERK OF THE DIST. COURT
DIANE ASH
DEPUTY

COPY

RODERICK C. BOND
NED A. CANNON, ISB #2331
SMITH, CANNON & BOND PLLC
508 8th Street
Lewiston, Idaho 83501
Telephone: (208) 743-9428
Fax: (208) 746-8421
Attorneys for Plaintiff Reed J. Taylor

IN THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF NEZ PERCE

| | |
|---|---|
| REED J. TAYLOR, a single person,<br><br>Plaintiff,<br><br>v.<br><br>AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; R. JOHN TAYLOR and CONNIE TAYLOR, individually and the community property comprised thereof; BRYAN FREEMAN, a single person; JOLEE DUCLOS, a single person; CROP USA INSURANCE AGENCY, INC., an Idaho Corporation; and JAMES BECK and CORRINE BECK, individually and the community property comprised thereof;<br><br>Defendants. | Case No.: CV-07-00208<br><br>FIFTH AMENDED COMPLAINT |

Plaintiff Reed J. Taylor submits this Fifth Amended Complaint against the Defendants alleging as follows:

FIFTH AMENDED COMPLAINT – 1

Exhibit - A

## I. PARTIES, JURISDICTION AND VENUE

1.1    Plaintiff Reed J. Taylor ("**Reed**") is a single person and a resident of Lewiston, Nez Perce County, Idaho.

1.2    Defendant AIA Services Corporation ("**AIA Services**") is an Idaho corporation with its principal place of business located in Lewiston, Nez Perce County, Idaho.

1.3    Defendant AIA Insurance, Inc. ("**AIA Insurance**") is an Idaho corporation with its principal place of business is located in Lewiston, Nez Perce County, Idaho. AIA Insurance is a wholly owned subsidiary of AIA Services.

1.4    Defendant Connie Taylor ("**Connie**") is a single person residing in Lewiston, Nez Perce County, Idaho.

1.5    Defendants R. John Taylor and Connie Taylor, were husband and wife until on or about December 16, 2005 (collectively "**John**"), and at all relevant times were residents of Lewiston, Nez Perce County, Idaho. All references to "**John**" are for acts, omissions, claims, causes of action, damages, and/or liabilities that accrued on or before December 16, 2005, are for John individually, and were also performed on behalf of R. John Taylor and Connie Taylor's marital community (which benefited from R. John Taylor's acts and/or omissions) as to divided and undivided community property. All references to "**John**" for acts, omission, claims, causes of action, damages, and/or liabilities that accrued after December 16, 2005, are for John individually and pertain to Connie as to their divided and undivided community property, including, without limitation, community property in which Reed is requesting to be awarded.

1.6    Defendant JoLee Duclos ("**Duclos**") is a single person residing in Clarkston, Washington.

///

FIFTH AMENDED COMPLAINT – 2

Exhibit - A

1.7     Defendant Bryan Freeman ("**Freeman**") is a single person residing in Lewiston, Nez Perce County, Idaho.

1.8     Defendant Crop USA Insurance Agency, Inc. ("**Crop USA**") is an Idaho corporation, with its principal place of business located in Lewiston, Nez Perce County, Idaho.

1.9     Defendant James Beck and Corrine Beck (individually and collectively "**Beck**") are residents of the state of Minnesota. All references to "Beck" are for acts, omissions, claims, causes of action, damages, and/or liabilities that accrued are for James Beck individually, and were also performed on behalf of James Beck and Corrine Beck's marital community (which benefited from James Beck's acts and/or omissions) and pertain to Corrine Beck as to damages, acts and/or omissions on behalf of their community and as to all community property, including, without limitation, community property Reed is seeking to be awarded.

1.10    The District Court has jurisdiction over this matter under I.C. § 1-705.

1.11    Venue is proper in the District Court of the Second Judicial District, Nez Perce County pursuant to I.C. § 5-404.

## II. <u>FACTUAL BACKGROUND</u>

2.1     John, was at all relevant times, an officer and director of AIA Services, AIA Insurance, and Crop USA.  During the certain relevant times in which John was a director and officer of AIA Insurance, AIA Services and Crop USA, he owed fiduciary duties to Reed as the single largest creditor of AIA Insurance and AIA Services.   John and Connie are the majority shareholders in AIA Services and own approximately 40% of the outstanding shares of Crop USA, specifically 4,645,000 shares as of July 31, 2006.

2.2     R. John Taylor and Connie were divorced through an Interlocutory Decree filed on December 16, 2005, under which only a portion of their community assets were divided and

FIFTH AMENDED COMPLAINT – 3

Exhibit - A

other property remained undivided. This action includes, but is not limited to, acts, omissions, transactions, debts, claims, and/or causes of action which accrued prior to R. John Taylor and Connie's dissolution. All references to "**John**" in this Complaint are for, but not limited to, claims, causes of action, breaches of duties, fraud, acts, omissions and liabilities incurred by R. John Taylor on behalf of the marital community of R. John Taylor and Connie, together with their community property, whether divided or not through the effective date of their dissolution decree entered on or about December 16, 2005. Reed is requesting and entitled to be awarded shares of stock and property jointly owned by R. John Taylor and Connie.

2.3    After the effective date of R. John Taylor and Connie Taylor's decree of dissolution, all references to "**John**" in this Complaint are for claims, breaches of duties, acts, omissions and/or liabilities incurred by John individually. One of the reasons Connie is named as a party in this action for her liabilities and/or derivative liability by virtue of her marriage to John and her interest in the community property of the marriage (including all divided and undivided community property of their marriage for which Reed is requesting to be awarded through a constructive trust) all of which is subject to liability for the allegations in this Complaint of the acts, breaches of duties, claims, omissions, and conduct of John on and prior to December 16, 2005.

2.4    During the certain relevant times that Connie was a director of AIA Insurance and AIA Services, she owed fiduciary duties to Reed as the single largest creditor of AIA Services. Connie is also individually liable for all claims, breaches of duties, acts, omissions and/or liabilities during certain relevant times in which she was a member of the board of directors of AIA Services and AIA Insurance.

///

FIFTH AMENDED COMPLAINT – 4

Exhibit - A

2.5    Duclos is, and was at certain relevant times, an officer and director of AIA Services, AIA Insurance, and Crop USA. Duclos is a shareholder in AIA Services and Crop USA. During the certain relevant times that Duclos was a director and officer of AIA Insurance and AIA Services, she owed fiduciary duties to Reed as the single largest creditor of AIA Services.

2.6    Freeman is, and was at certain relevant times, a director and/or officer of AIA Services, AIA Insurance, and Crop USA. Freeman is a shareholder in AIA Services and Crop USA. During the certain relevant times that Freeman was a director of AIA Insurance and AIA Services, he owed fiduciary duties to Reed as the single largest creditor of AIA Services.

2.7    Crop USA was formed and operated using AIA Services and AIA Insurance's assets, funds, employees, office space, trade secrets, business relationships, equipment, good will, reputation, financial wherewithal (including loan guarantees), and other assets. But for AIA Insurance's assets, trade secrets, reputation and relationships, Crop USA would never have been formed and operated. Since Crop USA's formation, funds were inappropriately loaned and/or transferred back and forth from AIA Services and/or AIA Insurance to and from Crop USA and other entities partially owned by John and/or Connie.

2.8    John and Connie own approximately 40% of Crop USA, which also remained undivided community property at the time Reed filed his original Complaint.

2.9    Beck is a shareholder in AIA Services and Crop USA and acquired Crop USA shares from the inappropriate and/or unlawful conversation of their Preferred C Shares of AIA Services to shares of Crop USA. During the certain relevant times that Beck was a member of the board of directors boards of AIA Insurance, AIA Services and/or Crop USA, he owed fiduciary duties to Reed as the single largest creditor of the corporations. During certain relevant

FIFTH AMENDED COMPLAINT – 5

Exhibit - A

times, Beck was a member of the boards for Crop USA, AIA Insurance, and/or AIA Services and directed, consented, approved and/or acquiesced in inappropriate and/or unlawful corporate activities at AIA Insurance, AIA Services and/or Crop USA.

2.10    Reed was the founder and majority shareholder of AIA Services.  In 1995, John desired to redeem Reed's 613,494 shares of common stock in AIA Services through a stock redemption agreement. Upon the closing of the transaction of AIA Services' redemption of Reed's shares, John became the majority shareholder in AIA Services.

2.11    AIA Insurance, a subsidiary of AIA Services, is wholly owned by AIA Services and where virtually all of AIA Services' revenues are derived and was the basis for security interests provided to Reed.  AIA Insurance is lessee of the office building located at 111 Main Street, Lewiston, Idaho.

2.12    On or about July 22, 1995, AIA Services and Reed entered into a Stock Redemption Agreement, Stock Pledge Agreement, and Security Agreement.  Under the terms of the Stock Redemption Agreement and related agreements, AIA Services agreed to execute promissory note to timely pay Reed $1,500,000 Million in 90 days ("**Down Payment Note**") and $6,000,000, plus accrued interest due and payable monthly at the rate of 8¼% per annum ("**Promissory Note**").

2.13    The Promissory Note was executed by John on behalf of AIA Services on or about August 1, 1995. Under the terms of the Promissory Note, AIA Services was required to timely pay all accrued interest monthly to Reed and the principal amount of $6,000,000, plus all accrued but unpaid interest was due and payable on August 1, 2005.  Donna Taylor, the holder of the Series A Preferred Shares in AIA Services, subordinated all of her rights to payment of the redemption of her shares in favor of Reed.  Through the date of Reed's Complaint, AIA Services

FIFTH AMENDED COMPLAINT – 6

Exhibit - A

had not timely and properly paid all sums owed to Donna Taylor.

2.14    Under the terms of the Stock Redemption Agreement, AIA Services and AIA Insurance also agreed to contemporaneously execute a Security Agreement and Stock Pledge Agreement, among other agreements and documents.  The Stock Redemption Agreement, Stock Pledge Agreement, and Security Agreement were all either authorized by the Board of Directors of AIA Services and/or AIA Insurance and/or approved by a shareholder vote.

2.15    When AIA Services was unable to comply with the Stock Redemption Agreement, Stock Pledge Agreement, and Security Agreement, John, on behalf of AIA Services and AIA Insurance, entered into negotiations with Reed regarding restructuring the obligations. In 1996, AIA Services, AIA Insurance and Reed agreed to modify the Stock Redemption Agreement and executed the Stock Redemption Restructure Agreement ("**Restructure Agreement**"). Contemporaneously with the execution of the Restructure Agreement, the parties executed the Amended and Restated Stock Pledge Agreement ("**Amended Stock Pledge Agreement**") and Amended and Restated Security Agreement ("**Amended Security Agreement**").

2.16    Under the terms of the Restructure Agreement, the terms of the Promissory Note remained unchanged and were not modified (including the $6,000,000 principal amount, due date, and required monthly interest payments).  Under the terms of the Amended Security Agreement, Reed received a security interest in all of AIA Services and AIA Insurance's commissions and related services (and all proceeds thereof), and AIA Services and AIA Insurance were required to have a Lock Box for all commissions for the protection and benefit of Reed.

///

FIFTH AMENDED COMPLAINT – 7

# Exhibit - A

2.17    Under the terms of the Amended Stock Pledge Agreement, AIA Services pledged all of the outstanding shares in AIA Insurance to Reed as partial security for AIA Services' indebtedness to Reed under the Promissory Note, Restructure Agreement, and Amended Security Agreement. Under the terms of the Amended Stock Pledge Agreement, AIA Services' failure to timely pay Reed interest or principal under the Promissory Note or the Down Payment Note constituted an Event of Default. In an Event of Default for failure to timely pay interest or principal under the Promissory Note, AIA Services' insolvency, or AIA Services' failure to maintain the required Lock Box (among other Events of Default), AIA Services' right to vote the pledged shares of AIA Insurance ceased and terminated and vested exclusively in Reed.

2.18    Under the terms of the Amended Stock Pledge Agreement, AIA Services and/or AIA Insurance owed Reed continuing contractual obligations, including, without limitation, the obligation that Reed was required to be a member of the board of directors of AIA Services until Reed was paid in full or sufficient security was posted to ensure the payment of the Promissory Note. AIA Services never posted bonds or other security for the payment of the Promissory Note. AIA Services, John, Duclos, Freeman, Connie, and/or Beck have intentionally refused to appoint Reed to the Board of AIA Services as required and/or unilaterally created new conditions upon which Reed's appointment would be based. A new right to be a member of the board of AIA Services is created every year as directors are required to be elected yearly under the Bylaws of AIA Services. Despite Reed's demands and AIA Services' continuing contractual obligations to keep Reed on the board of directors, AIA Services, John, Duclos, Freeman, Connie, and/or Beck have refused to appoint Reed to the Board of Directors of AIA Services as required. Because Reed has not been on the Board of AIA Services as required, all actions taken by AIA Services' board were not properly authorized and, therefore, not ratified by AIA

FIFTH AMENDED COMPLAINT – 8

Exhibit - A

Services; and such acts are the personal actions of John, Duclos, Freeman, Connie, and/or Beck during their tenure on the board of AIA Services.

2.19    Under the Amended Stock Pledge Agreement, AIA Services had continuing contractual obligations to not loan money to any affiliate other than a wholly owned subsidiary. AIA Services has loaned money on countless occasions to and/or lent other services, office space or benefits to affiliates and other parties in violation of the Amended Stock Pledge Agreement, and such loans or benefits were made during times in which John, Duclos, Freeman, Connie, and/or Beck were board members of AIA Services and/or AIA Insurance.  In addition, the Amended Articles of Incorporation of AIA Services prevents it or any of its subsidiaries (including, without limitation, AIA Insurance), from guaranteeing the loans of any other entity that is not a wholly owned subsidiary of AIA Services.

2.20    The Promissory Note required monthly interest payments with an acceleration clause if payments were not timely or properly made to Reed.  The acceleration clause requires written notice from Reed to AIA Services of default and AIA Services would be entitled to a five day opportunity to cure before Reed could exercise his rights under the Amended Stock Pledge Agreement or Amended Security Agreement.  The obligations owed to Reed under the Promissory Note are independent of any other obligations owed by the Defendants and secured by the Restructure Agreement, Amended Stock Pledge Agreement and Amended Security Agreement.

2.21    During relevant times, the fair-market value of AIA Services and AIA Insurance was less than the aggregate amount of their total debts, which constitutes AIA Services and AIA Insurance's insolvency. During relevant times, AIA Services and/or AIA Insurance were unable to pay their debts as they became due (including, without limitation, debts to Reed and Donna

FIFTH AMENDED COMPLAINT – 9

Exhibit - A

Taylor), which also constitutes AIA Services insolvency and AIA Insurance's insolvency.

2.22    During all relevant times, Reed was the largest and most significant creditor of AIA Services. Because AIA Services has failed to timely and properly pay creditors as required during certain relevant times and/or was insolvent, John, Duclos, Freeman, Connie, and/or Beck owed fiduciary duties to creditors, specifically Reed because of his status as AIA Services' largest and most significant creditor.

2.23    The value of AIA Services and AIA Insurance's assets (including, without limitation, if both corporations are sold and/or their assets independently sold) at the time Reed filed his original Complaint was insufficient to pay Reed the $6,000,000, plus prejudgment interest in excess of $2,000,000 owed to him. The value of AIA Services and AIA Insurance's assets (including if both corporations are sold) for at least 7 years of time preceding the time Reed filed his original Complaint was insufficient to pay Reed the $6,000,000 principal, plus prejudgment interest owed to him.

2.24    During certain relevant times, AIA Services and/or AIA Insurance were in default of various provisions of the agreements with Reed, insolvent and/or unable to timely pay its debts to Reed and/or other creditors, including Donna Taylor. During certain relevant times, AIA Services has failed to comply with the terms of the Promissory Note.

2.25    Instead of paying Reed as required, AIA Services, AIA Insurance, Crop USA, John, Duclos, Connie, Beck, and/or Freeman utilized funds that Reed had a security interest in to make investments in, transfer assets to, or loan money to, or provide services on behalf of Crop USA, John and/or entities operated and/or partially owned by John, Connie, Beck, Freeman, Duclos, and/or one or more of the other Defendants.

///

FIFTH AMENDED COMPLAINT – 10

Exhibit - A

2.26    On or about December 12, 2006, Reed provided AIA Services written notice of default under various provisions of the Restructure Agreement, Amended Stock Pledge Agreement, and Amended Security Agreement, including, without limitation, AIA Services' failure to pay principal and interest due under the Promissory Note, failure to maintain the Lock Box, loaning money to non-wholly owned subsidiaries (including guaranteeing the $15 Million revolving line-of-credit for Crop USA), failure to provide all required financial information, and other defaults as set forth in the notice. AIA Services and AIA Insurance have failed to timely cure the defaults and all applicable cure periods have expired. As of the date of this Complaint, the principal owed to Reed under the Promissory Note of $6,000,000, plus accrued interest of over $2,000,000 had not been paid in full as required.

2.27    Prior to Reed's Notice of Default dated December 12, 2006, Reed had never accelerated any of the indebtedness due under the Promissory Note. Even though AIA Services and AIA Insurance failed to cure the defaults specifically set forth in Reed's Notice of Default dated December 12, 2006, AIA Services continued to make partial and inconsistent interest payments (including the payment of certain employees and other services on behalf of Reed) before and after the date of Reed's original Complaint. All amounts due under the Promissory Note are secured by the remedies available under the Promissory Note, Restructure Agreement, Amended Stock Pledge Agreement and Amended Security Agreement.

2.28    Despite Reed's demands, AIA Services, AIA Insurance, John, Freeman, Duclos, Connie, and/or Beck have failed to comply and/or as officers and/or directors to ensure that AIA Services and AIA Insurance complies with the obligations owed to Reed under the terms of the Promissory Note, Restructure Agreement, Amended Stock Pledge Agreement, and Amended Security Agreement. Under the Amended Stock Pledge Agreement, the right to vote all of AIA

FIFTH AMENDED COMPLAINT – 11

Exhibit - A

Insurance's shares ceased and terminated for AIA Services and became vested in Reed when AIA Services failed to timely pay the required monthly interest payments due under the Promissory Note and its subsequent failure to pay the $6,000,000 principal due under the Promissory Note on August 1, 2005 (and other breaches set forth in this Complaint). AIA Services was in default and had failed to cure such defaults before Reed demanded to exercise his right to hold a special shareholder meeting to vote the shares to appoint a new board of directors for AIA Insurance.

2.29    On December 12, 2006, Reed timely provided notice of his demand for a special shareholder meeting of AIA Insurance for the purpose of removing and appointing new board members on December 26, 2006. AIA Services, AIA Insurance, John, Duclos, and/or Freeman (and the other Defendants if applicable) refused to comply with Reed's demand for a special shareholder meeting by representing that AIA Insurance's offices were closed on December 26, 2006.

2.30    Through a letter dated January 3, 2007, John acknowledged Reed's right to call a shareholder meeting under the Amended Stock Pledge Agreement when he stated "I fully recognize that [Reed] Taylor may take actions he deems appropriate, including calling a special shareholders meeting."

2.31    On or about January 25, 2007, Reed hand delivered another demand for a special shareholder meeting for the removal and appointment of the board of directors for February 5, 2007, pursuant to his rights under the Amended Stock Pledge Agreement.  Through a letter from Duclos, AIA Insurance refused Reed's request and denied that he had the right to call a meeting to vote the AIA shares.  Despite Reed's demands, AIA Insurance refused to hold a special shareholder meeting.

FIFTH AMENDED COMPLAINT – 12

Exhibit - A

2.32    Despite Reed's demands, AIA Services and AIA Insurance failed to cure the numerous Defaults under the terms of the Promissory Note, Restructure Agreement, Amended Stock Pledge Agreement and Amended Security Agreement, among other obligations (as described above).    Through the date of this Complaint, AIA Services and AIA Insurance's Defaults were not timely cured and they remained in default of the foregoing Agreements.

2.33    On February 22, 2007, Reed exercised his right to vote the pledged shares by executing a Consent in Lieu of Special Shareholder Meeting of AIA Insurance removing John, Duclos and Freeman from the Board of Directors and appointed himself the sole Board Member, pursuant to his right to vote the pledged shares under the Amended Stock Pledge Agreement. Because AIA Services' right to vote the pledged shares had ceased and terminated when it became in Default and failed to timely cure such Defaults, the right to vote the pledged shares in AIA Insurance vested exclusively in Reed and he exercised his right to vote the pledged shares pursuant to the Amended Stock Pledge Agreement and the Articles of Incorporation of AIA Insurance.    Because the shares pledged to Reed account for all the outstanding shares of AIA Insurance, Reed had the authority to waive the notice requirement, notice period, and the formality of holding a shareholder meeting as he was the only party authorized to vote any shares of AIA Insurance.    Because Reed appointed himself as the sole director of AIA Insurance, he had the exclusive authority to appoint himself as the officers of AIA Insurance through a Consent in Lieu of a Board Meeting.

2.34    In the weeks leading up to the filing of this action, Reed discovered that more than one transfer of assets occurred during the time in which AIA Services had failed to service its debt to Reed.  In 2004, AIA Insurance paid $1,510,693 to purchase Series C Preferred Shares in AIA Services from Crop USA.    This transaction inappropriately, unlawfully, and/or

FIFTH AMENDED COMPLAINT – 13

# Exhibit - A

fraudulently transferred $1,510,693 of AIA Insurance's funds to Crop USA when such funds should have been tendered to Reed or been retained to benefit AIA Insurance. This $1,510,693 transfer occurred at a time in which AIA Services was insolvent. This $1,510,693 transfer also occurred at the same time that AIA Services' 401(k) Plan (the "Plan") held over $750,000 in Preferred C Shares in AIA Services. No shares were purchased or redeemed from the Plan, even though John and Duclos were the Co-Trustees of the Plan at the time of the transfer. This transaction constitutes the fraudulent transfer of funds from AIA Insurance to Crop USA.

2.35    Reed also discovered that John and Connie had purchased a parking lot for $8,000 and later entered into a lease agreement with AIA Services and/or AIA Insurance to lease the parking lot from John and Connie for $1,250 per month. This transaction was also the fraudulent transfer of funds to John and Connie, when such funds should have been paid to Reed during a time in which AIA Services was unable to service its debt to Reed and was otherwise insolvent. John and Connie also inappropriately paid lump sums for rent before such inappropriate rent was due. The parking lot is not utilized by AIA Insurance or AIA Services. Such acts and/or transfers have occurred during John, Freeman, Duclos, Connie, and/or Beck's tenure as members of the boards of AIA Insurance and/or AIA Services.

2.36    Based upon the above-referenced acts, transfers and transactions, together with transactions referenced in the notes to AIA Services and/or AIA Insurance's financial statements, there are other unauthorized and inappropriate transfers, loans, payments, advances and other actions which occurred during times AIA Services defaults and inability to timely pay Reed and at times in which AIA Services was insolvent. Forensic accounting and further scrutiny of AIA Insurance and/or AIA Services' books and records will reveal additional improper, unlawful and/or fraudulent transfers, transactions and the like that directly and/or indirectly benefited the

FIFTH AMENDED COMPLAINT – 14

Exhibit - A

payments.    Because all of AIA Services' revenues are derived from AIA Insurance's commissions and related services that Reed has a valid security interest in, such payments also constitute an illegal and/or unauthorized dividend from AIA Insurance to AIA Services, conversion, fraud and fraudulent conveyances.

2.43    Prior to the filing of Reed's original Complaint and without Reed's knowledge or consent, John paid a debt he owed to AIA Services in the amount of $307,271 by transferring said indebtedness to Reed's Promissory Note.    Such payment constitutes fraud (as set forth below) and John later moved the debt back to Reed's Promissory Note.

2.44    Pacific Empire Holdings Corporation d/b/a Sound Insurance has been operating through AIA Services and/or AIA Insurance and with funds, assets, rent, and/or services provided by AIA Services and/or AIA Insurance for free or at rates below fair-market-value during certain relevant times that John, Freeman, Duclos, Connie, and/or Beck owed fiduciary duties to Reed.    Since the filing of Reed's Original Complaint, Crop USA purchased Sound Insurance from John and/or other unknown parties.    The Defendants' operation of Sound Insurance and subsequent sale constitutes breaches of fiduciary duties, conversion, fraud and/or a fraudulent conveyance.

2.45    Global Travel was a tenant in AIA Insurance's office building located in Lewiston, Idaho.    Since the filing of Reed's original Complaint, Global Travel has relocated as a tenant in an office building owned by John.    Such actions are a breach of John Duclos, Freeman, Connie, and Beck's fiduciary duties owed to Reed, fraud and/or a fraudulent conveyance.

2.46    Through a letter dated February 27, 2001, John represented to Reed (individually and on behalf of the corporations) that AIA Services and/or AIA Insurance was developing a new crop insurance program through a new company called Crop USA.    Reed relied on AIA

FIFTH AMENDED COMPLAINT – 17

Exhibit - A

Services, AIA Insurance and John's representations that AIA Services and/or AIA Insurance were the owners of Crop USA and developing Crop USA, when AIA Services, AIA Insurance and John's representations were false in that Crop USA was never owned by AIA Insurance or AIA Services, but instead owned by John, Connie, Duclos, Beck, Freeman, and others. By John's own admission, Crop USA should have been a subsidiary of AIA Services or AIA Insurance but for certain liabilities.

2.47    John made representations to Reed and Donna Taylor that he would not be taking a salary in certain year(s). Reed relied on John's false representation when he did not accelerate payments due to him or place AIA Services in default, and in late 2006 or early 2007 learned that John had in fact taken a salary during the respective times to Reed's detriment.

2.48    John, Beck, Duclos, and/or Freeman made representations and/or omitted material facts to Reed through letters and financial statements that AIA Services and AIA Insurance were being operated for the benefit of AIA Services and AIA Insurance. AIA Services and AIA Insurance made representations and/or omitted material facts to Reed through correspondence and their financial statements that they were being operated for the benefit of AIA Insurance and AIA Services. Reed relied on John, Beck, Duclos and/or Freeman's false representations and/or omissions of material facts when in fact AIA Services and AIA Insurance were not being operated for the benefit of the corporations, but instead were being operated for the benefit of John, Freeman, Duclos, Crop USA, Sound Insurance, Beck, and other entities controlled or partially owned by John and/or Connie. As directors, Freeman, John, Duclos, and/or Beck also made the false representations and/or omitted material facts by and through the corporations' financial statements.

///

FIFTH AMENDED COMPLAINT – 18

Exhibit - A

2.49    John, Freeman, Duclos, and/or Beck breached their fiduciary duties owed to Reed when AIA Insurance inappropriately and/or fraudulently guaranteed a $15,000,000 loan for Crop USA. This guarantee is also a violation of AIA Services' Amended Articles of Incorporation, AIA Services and AIA Insurance's Bylaws, and the terms of the Amended Stock Pledge Agreement. AIA Insurance received no benefit from this loan and received no consideration.

2.50    After the inappropriate and fraudulent transfer of $1,510,693 to Crop USA described above, the wrongful transfer was misrepresented on the financial statements of AIA Insurance as an investment with a value of approximately $1,500,000, when the "investment" was worthless. John, Duclos, Beck and/or Freeman were aware, or should have been aware, of this false fact as AIA Services was insolvent.

2.51    Reed believes that there are other acts, fraud, breaches of fiduciary duties, wrongful transfers and/or fraudulent transactions that he will itemize and detail through future amended complaints upon completion of discovery and/or at trial. By and through this paragraph, the Defendants should be placed on notice that Reed intends to recover every dollar of funds, assets, services, loans, barters and the like that were taken, utilized and/or transferred from AIA Services and/or AIA Insurance through fraud, constructive fraud, breaches of fiduciary duties, fraudulent conveyances, and any other causes of action set forth below.

2.52    The unity and commonality of the ownership, officers and/or directors of AIA Services, AIA Insurance and/or Crop USA is such that the separate personalities of the corporations and the individuals no longer exist. Equity should prevent the acts and omissions from being solely those of AIA Services, AIA Insurance and/or Crop USA. As a result of the commonality of ownership and governance, unlawful acts, conduct, omissions, fraud, failure to observe corporate governance, and breaches of fiduciary duties as set forth in this Complaint,

FIFTH AMENDED COMPLAINT – 19

Exhibit - A

AIA Insurance, AIA Services and/or Crop USA are the alter-egos of John, Duclos, Freeman, Connie, and/or Beck and such corporate veils should be pierced thereby imposing personal liability on John, Duclos, Freeman, Connie and/or Beck.

2.53    AIA Services, AIA Insurance, John, Duclos, Freeman, Connie, and/or Beck unlawfully provided Crop USA, Sound Insurance, and/or other entities with free or reduced rent, labor, funds, services, resources, and/or other assets without any and/or fair compensation to the detriment of AIA Services, AIA Insurance and Reed. John, Duclos, Freeman, Connie, and/or Beck entered into or approved transactions that were not fair for AIA Services or AIA Insurance, transactions that were not entered into in good faith, transactions that involved self-dealing, and transactions that involved any one or more of the interested individual Defendants in violation of applicable conflicts of interest procedures and/or proper corporate governance.

2.54    During certain relevant times, John utilized AIA Services, AIA Insurance and/or Crop USA as a means to pay personal bills, obtain loans, and obtain reimbursements for "alleged" expenses he incurred on behalf of AIA Services, AIA Insurance and/or Crop USA. However, many of the expenses for food, lodging and travel were inappropriately charged to AIA Services and/or AIA Insurance. This is further evidenced by the fact that John failed to remit and/or fully complete forms required by AIA Services and AIA Insurance for employees to be reimbursed.

2.55    From August 1, 1995, through the present time, John owed obligations and duties to AIA Services and Reed (including, without limitation, obligation to not compete and confidentiality) through the Executive Officer's Agreement between John and AIA Services dated August 1, 1995. John has breached the forgoing obligations, which such breaches also constitute breaches of John, Duclos, Freeman, Connie, and/or Beck's fiduciary duties owed to

FIFTH AMENDED COMPLAINT – 20

Exhibit - A

Reed. AIA Insurance and Reed are also third party beneficiaries of John's Executive Officer's Agreement and entitled to damages from the Defendants for such breached obligations.

2.56    AIA Insurance and AIA Services could have been operated with a substantially lower number of employees than presently employed and with reduced overhead and costs. The Defendants have represented that Crop USA (and other parties) have been reimbursing AIA Services and/or AIA Insurance for all employee labor, expenses, costs, assets, and services utilized for Crop USA's benefit, when such representations are false. The Defendants have failed to disclose material facts that AIA Services and AIA Insurance employees, expenses, costs, assets, and services have also been utilized for the benefit of John, Connie, and entities partially owned by John and/or Connie without them paying AIA Services or AIA Insurance.

2.57    The Defendants have represented through board resolutions, private placement memorandum, correspondence, agreements, and/or other transactions that AIA Services and/or AIA Insurance have benefited from transactions with Crop USA (including, without limitation, Crop USA's $15 Million line of credit and the repurchase of the Series C Preferred Shares of AIA Services), which the Defendants knew that such transactions were not beneficial to AIA Services and/or AIA Insurance. In fact, AIA Services and/or AIA Insurance did not benefit from such false representations and Reed's collateral was also impaired.

2.58    The Defendants have engaged in the improper and/or unlawful activities of utilizing AIA Services and AIA Insurance for their benefit and/or for the benefit of themselves and/or entities partially owned by one or more of the individual Defendants to the detriment of Reed.

2.59    Should any part or one or more of the following causes of action or relief be denied at or before trial, such allegations and requested relief are incorporated by reference here

FIFTH AMENDED COMPLAINT – 21

Exhibit - A

to support other causes of action and/or requested relief.

### III. FIRST CAUSE OF ACTION—BREACHES OF CONTRACT

3.1    Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim and/or the relief sought under this cause of action.

3.2    The Defendants owed Reed obligations and/or continuing contractual obligations to timely pay him and comply with specific terms, conditions, covenants, warranties and the like required by the Promissory Note, Amended Stock Pledge Agreement, Amended Security Agreement, and Restructure Agreement.

3.3    AIA Services, AIA Insurance, Crop USA, John, Freeman, Duclos, Beck, and/or Connie's acts, omissions and failure to pay Reed the amounts owed and comply with continuing contractual obligations under the Promissory Note, Amended Stock Pledge Agreement, Amended Security Agreement and Restructure Agreement constitute a breach of their contractual obligations owed to Reed (whether or not any of the foregoing agreements were orally modified as alleged by the Defendants or not).

3.4    As a result of AIA Services, AIA Insurance, Crop USA, John, Freeman, Duclos, Beck, and/or Connie's acts and/or omissions which constitute breaches of their contractual obligations, Reed has suffered and is entitled to damages of $6,000,000, plus accrued interest in an amount to be determined at trial, jointly and severally or to be allocated between the defendants as the evidence and claims show at trial.    As set forth in this Complaint, the Defendants are jointly and severally liable for all claims and damages flowing from the various breaches by and through the legal theories set forth in this Complaint.    In addition, Reed is entitled to an award of attorneys' fees and costs as under the Promissory Note, Amended Stock

FIFTH AMENDED COMPLAINT – 22

Exhibit - A

Pledge Agreement, I.C. § 12-120 and/or I.C. § 12-121.

## IV.  SECOND CAUSE OF ACTION—FRAUDULENT TRANSFERS/CONVEYANCES

4.1    Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim and/or the relief sought under this cause of action.

4.2    The Defendants' actions constitute fraudulent transfers and/or conveyances under I.C. § 55-901, *et seq.* and/or the common law doctrine of Fraudulent Transfers/Conveyances.

4.3    As a result of John, Duclos, Freeman, Connie, and/or Beck's participation, consent, approval and/or acquiescence of the fraudulent transfers and/or as direct recipients and/or indirect recipients (also by and through their ownership of shares in the recipient corporations) of the fraudulent transfers, John, Duclos, Freeman, Connie, and/or Beck are personally liable for all fraudulent transfers, plus accrued interest, in an amount to be proved at trial. All fraudulent transfers should be avoided and/or rescinded to the extent possible and/or all assets placed in a constructive trust for the benefit of Reed and such assets awarded to Reed.

4.4    John, Duclos, Freeman, Connie, Beck, and/or Crop USA and other entities controlled or partially owned by John or the Defendants are and/or were the recipients of various fraudulent transfers from AIA Services and/or AIA Insurance, and should be required to return all funds to Reed, rescind all transactions; and John, Connie, Freeman, Duclos, and/or Beck's ownership interests in Crop USA and such other entities should be placed in a constructive trust for the benefit of Reed and such shares and/or ownership awarded to him.

///

///

///

FIFTH AMENDED COMPLAINT – 23

Exhibit - A

## V. THIRD CAUSE OF ACTION—MISREPRESENTATIONS/FRAUD
### (Fraud, Constructive Fraud, and/or Shareholder, Officer Director Fraud)

5.1     Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim and/or remedy sought under this cause of action.

5.2     AIA Services, AIA Insurance, Crop USA, Beck, Freeman, Connie, Duclos, and/or John made, ratified, acquiesced, and/or consented to statements of fact and/or omitted material statements of fact, including, without limitation, those facts and/or omissions of fact set forth in Paragraphs 2.23, 2.36, 2.44-2.49 and 2.51 above; such statements of fact were false or omitted material facts; such false statements or omitted facts were material; AIA Services, AIA Insurance, Crop USA, Beck, Freeman, Duclos, Connie and/or John knew or should have known the falsity of such statements; AIA Services, AIA Insurance Crop USA, Beck, Freeman, Duclos, and/or John intended to induce reliance; Reed was ignorant to the falsity of such statements and/or omissions; and Reed relied on such statements and/or omissions; Reed had a right to rely on such false statements and/or omissions.

5.3     By and through the Defendants' fraudulent acts and/or omissions, including, without limitation, the allegations set forth in this Complaint and as specifically alleged in Paragraphs 2.22, 2.25, 2.34, 2.35, 2.37, 2.40, 2.43-2.49, 2.53, 2.54, 2.57 and 2.58 above, AIA Services, AIA Insurance, Crop USA, John, Freeman, Duclos, Connie, and/or Beck's acts and/or omissions constitute fraud, constructive fraud (e.g., the Defendants owed Reed fiduciary duties, duties to maintain AIA Insurance's assets to protect Reed, and other duties contemplated by the parties and/or referenced in this Complaint, and the Defendants breached such duties), and/or shareholder/officer/director fraud (e.g., the siphoning off of corporate assets to the individual

FIFTH AMENDED COMPLAINT – 24

Exhibit - A

Defendants' gain and to the detriment of Reed), including, without limitation, the less stringent means of proving fraud as set forth in *Smith v. Great Basin Grain Co.*, 98 Idaho 266, 561 P.2d 1299 (1977) (and other law relating to shareholder, officer and/or director fraud), and Reed is entitled to recover all damages attributable to such fraud. Under the theory discussed in *Smith v. Great Basin Grain Co.* (and other cases), AIA Services, AIA Insurance, Crop USA, John, Freeman, Duclos, Connie, and/or Beck are liable for all funds, assets, and services that were unlawfully and/or inappropriately transferred and/or utilized directly and/or indirectly to their benefit during their tenure as officers, directors, and/or shareholders in AIA Services, AIA Insurance, and/or Crop USA.

5.4     As a consequential and/or proximate result of AIA Services, AIA Insurance, Crop USA, John, Duclos, Freeman, Connie, and/or Beck's fraud (including, without limitation, any one or more of the types of fraud listed above), Reed has suffered and is entitled to recover all damages from the Defendants, jointly and severally.

## VI.  FOURTH CAUSE OF ACTION—CONVERSION

6.1     Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim and/or remedy sought under this cause of action.

6.2     AIA Services, AIA Insurance, Crop USA, John, Duclos, Connie, Freeman, and/or Beck's (including, without limitation, as officers and/or members of the boards) conduct and/or consent to such conduct constitutes the willful interference with Reed's property and money which should have been paid to him or been held for his benefit (including, without limitation, money in which Reed had a valid and perfected security interest, e.g., whether through UCC filings and/or through security interests and/or rights in the Amended Stock Pledge Agreement),

FIFTH AMENDED COMPLAINT – 25

Exhibit - A

without lawful justification, which deprived Reed of the possession of such money and/or property. Crop USA, John, Duclos, Freeman, Connie, Beck and/or entities controlled or partially owned by John were recipients of the converted assets, funds, labor, and/or services (including for any attorneys' fees and costs paid by AIA Services and/or AIA Insurance for any of the individual Defendants).

6.3    As a result of the AIA Services, AIA Insurance, Crop USA, John, Duclos, Freeman, Connie, and/or Beck's unlawful acts, conduct, and interference with Reed's valid and perfected security interests and other rights, Reed has been damaged and is entitled to damages proven at trial.

## VII. FIFTH CAUSE OF ACTION—ALTER EGO/PIERCING CORPORATE VAIL
### (A Cause of Action and/or Remedy)

7.1    Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim under this cause of action and/or requested relief.

7.2    Reed also specifically re-alleges and incorporates Paragraph 2.52 above.

7.3    AIA Insurance, AIA Services, and Crop USA have been operated, organized and controlled, and their affairs are so conducted that they are the instrumentality, agency, and/or conduit of one another and for John, Beck, Duclos, Freeman and/or Connie to their benefit and Reed's detriment.

7.4    Because of the lack of proper corporate governance; common officers, directors, and shareholders; lack of capitalization; fraud; overreaching; breaches of good faith and fair dealing; and the other unlawful and/or inappropriate acts and/or omissions of AIA Insurance, AIA Services, Crop USA, John, Duclos, Freeman, Beck, and Connie, the corporate veils of AIA

FIFTH AMENDED COMPLAINT – 26

Exhibit - A

Services, AIA Insurance and Crop USA should be pierced thereby holding AIA Services, AIA Insurance, Crop USA, John, Duclos, Freeman, Connie, and/or Beck jointly and severally liable for all of Reed's damages that lie in tort or contract (including, without limitation, the sums due under the Promissory Note) as equity requires such action.

7.5    In addition and/or in the alternative, because of the common ownership, common governance, fraud, conversion, breached duties, unlawful acts, improper acts and/or omissions of John, Duclos, Freeman, Connie, and/or Beck, the corporations AIA Services and Crop USA should be liable for all of Reed's damages under the theory of reverse piercing of the corporate veil.

## VIII. SIXTH CAUSE OF ACTION—CONSTRUCTIVE TRUST
### (A Cause of Action and/or as Remedies)

8.1    Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim and/or remedy sought under this cause of action.

8.2    Reed has a valid security interest in AIA Services and/or AIA Insurance's commissions and all of the outstanding shares of AIA Insurance, among other security interests. The boards of AIA Services and AIA Insurance owed Reed fiduciary duties to Reed.  AIA Services, AIA Insurance, Crop USA, John, Duclos, Freeman, Connie, and/or Beck fraudulently, wrongfully and/or improperly used funds, transferred assets and/or provided services (which should have been paid to Reed or benefited AIA Services and/or AIA Insurance) for investments, personal use, inappropriate transactions, loans, advances, self-dealing, and/or other wrongful, fraudulent and/or inappropriate purposes (including, without limitation, approving, consenting, and/or acquiescing in such activities and the failure to take appropriate action).

FIFTH AMENDED COMPLAINT – 27

Exhibit - A

8.3     AIA Services, AIA Insurance, Crop USA John, Duclos, Freeman, Connie, and/or Beck's acts and/or omissions resulted in Crop USA, John, Duclos, Freeman, Connie and/or Beck's acquisition of money, securities and/or services which should have been paid to Reed or retain by AIA Insurance but for their fraud, deepening insolvency, civil conspiracy, misrepresentation(s), bad faith, self-dealing, fraudulent conveyances, breached fiduciary duties, and/or overreaching activities; and AIA Services, Crop USA, John, Duclos, Freeman, Beck and/or other entities' retention of the money, investments, securities and property would be unjust.

8.4     Reed requests the imposition of a constructive trust for his benefit to recover the proceeds of all from the Defendants' fraud, fraudulent conveyances, breaches of fiduciary duties, overreaching, conspiracy, deepening insolvency (as a remedy only), improper, self-dealing, wrongful and/or inappropriate transfers, acts and/or omissions.

## IX.  SEVENTH CAUSE OF ACTION—DIRECTOR LIABILITY
### (A Cause of Action and/or a Remedy)

9.1     Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim and/or remedy sought under this cause of action.

9.2     John, Duclos, Freeman, Connie, and/or Beck are personally liable for all relevant breached fiduciary duties, deepening insolvency, wrongful acts, improper acts, omissions, overreaching transactions, fraud, civil conspiracy, faithless fiduciary activities, loans, advances, improper loan guarantees and/or fraudulent conveyances which occurred during their tenure as a member of the board of directors of AIA Service, Crop USA and/or AIA Insurance.

///

FIFTH AMENDED COMPLAINT – 28

Exhibit - A

9.3     Because John, Duclos and Freeman were both directors and officers during certain relevant times, they owed Reed even more elevated fiduciary duties.  John, Duclos, and Freeman breached their elevated fiduciary duties owed to Reed.

9.4     During the relevant times that John, Connie, Beck, Freeman and/or Duclos were members of boards of AIA Insurance, AIA Services, and/or Crop USA, they each should be held personally liable for all Reed's damages in contract and tort.

## X. EIGHTH CAUSE OF ACTION—SPECIFIC PERFORMANCE
### (A Cause of Action and/or as Remedies)

10.1    Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim and/or remedy sought under this cause of action.

10.2    Under the Amended Stock Pledge Agreement, Amended Security Agreement, and Restructure Agreement, Reed is entitled to vote the pledged shares of AIA Insurance (and all ancillary rights, including, without limitation, to vote the shares to remove the board and take all actions related in any way to his right to vote the pledged shares), sell the shares of AIA Insurance at public or private sale, judicially sell the pledged shares in AIA Insurance, entitled to timely receive audited financial statements and financial information, and/or seize all of the AIA Insurance and AIA Services' commissions in the required Lock Box.  When AIA Services became in Default, it lost its right to vote the pledged shares of AIA Insurance and the right vested exclusively in Reed.

10.3    Despite Reed's demands for the Defendants to comply with the provisions in the Promissory Note, Amended Stock Pledge Agreement, Amended Security Agreement and Restructure Agreement, AIA Services, AIA Insurance, the Defendants have refused to comply.

FIFTH AMENDED COMPLAINT – 29

Exhibit - A

Reed is entitled to the relief afforded to him or reasonably contemplated under the foregoing agreements and such other rights, remedies and/or relief as may be available under Idaho Code, including, without limitation, any action, relief and/or order authorized under I.C. § 30-1-701 *et seq.* and/or I.C. § 28-9-101 *et seq.* (including the sale of the pledged shares, protection of security interest, seizure of security, and any other available remedy).

10.4    As a direct or proximate result of the Defendants' acts and/or omissions, Reed has suffered and is entitled to an award of attorneys' fees and costs incurred, at or before trial, in enforcing any provision of the Promissory Note, Amended Stock Pledge Agreement, Amended Security Agreement, and/or Restructure Agreement for relief sought before or at trial.

## XI. NINTH CAUSE OF ACTION—BREACH OF FIDUCIARY DUTIES

11.1    Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim and/or remedy sought under this cause of action.

11.2    During certain relevant times, John, Connie, Beck, Duclos,, and/or Freeman owes and/or owed Reed fiduciary duties, including, without limitation, because of his status as the largest creditor of AIA Services, AIA Insurance and/or Crop USA; and because AIA Services and/or AIA Insurance were insolvent as described in this Complaint. The individual Defendants' fiduciary duties include, without limitation, the duties of care and loyalty to Reed. During the relevant times that John, Freeman and Duclos acted as both a director and an officer of AIA Insurance, AIA Services and/or Crop USA, they owed even more elevated fiduciary duties to Reed as the single largest creditor of AIA Services and/or AIA Insurance.

11.3    John, Connie, Beck, Duclos, and/or Freeman breached their fiduciary duties owed to Reed, including, without limitation, when they failed to operate AIA Services and AIA

FIFTH AMENDED COMPLAINT – 30

Exhibit - A

Insurance for the benefit of Reed. John, Connie, Beck, Duclos, and/or Freeman breached their fiduciary duties when they failed to take legal action against past and/or present officers and/or directors of AIA Services and AIA Insurance, and when they prevented Reed from taking any action he deemed appropriate under the Amended Stock Pledge Agreement, Amended Security Agreement and/or Restructure Agreement.

11.4    As a result of John, Connie, Beck, Duclos, and/or Freeman's breaches of their fiduciary duties owed to Reed, they are individually liable to Reed for all damages he suffered and/or deemed the product of their breached fiduciary duties, including without limitation, all damages attributable to inappropriate transfers of assets and/or services, inappropriate use of assets and/or services, inappropriate payment of salaries, the failure to pursue claims against other past and/or present officers and directors, inappropriate guarantee of loans, all claims in this Complaint, and such other wrongful acts and/or omissions that Reed may demonstrate at trial.

## XII. TENTH CAUSE OF ACTION—BREACH OF IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING

12.1    Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim and/or remedy sought under this cause of action.

12.2    There is an implied obligation of good faith and fair dealing between the parties in the performance and enforcement of the terms and conditions of the Promissory Note, Amended Stock Pledge Agreement, Amended Security Agreement and Restructure Agreement. This duty embraces, among other things, an implied obligation that AIA Services, AIA Insurance, and their directors and officers, specifically, Defendants Duclos, Freeman, John, Connie, and/or Beck

FIFTH AMENDED COMPLAINT – 31

Exhibit - A

shall not do anything to injure or destroy Reed's rights to receive the benefits of the Promissory Note, Amended Stock Pledge Agreement, Amended Security Agreement and/or Restructure Agreement. The Defendants have breached their obligations of good faith and fair dealing owed to Reed when they, among other things, intentionally injured and/or destroyed Reed rights.

12.3    As a result of the Defendants' acts and/or omissions, Reed has suffered and is entitled to damages in the amount to be proven at trial, including, without limitation, all damages incurred since the Defendants have refused to abide by the terms and conditions of the Promissory Note, Restructure Agreement, Amended Stock Pledge Agreement and/or Amended Security Agreement. In addition, Reed is entitled to recover all damages incurred after his vote of the pledged shares under because of the individual Defendants' interference with Reed's contractual rights.

## XIII.  ELEVENTH CAUSE OF ACTION—CIVIL CONSPIRACY
### (A Cause of Action and/or Remedy)

13.1    Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim and/or remedy sought under this cause of action.

13.2    AlA Services, AIA Insurance, Crop USA, John, Connie, Duclos, Freeman, and/or Beck engaged in a pattern of behavior and/or agreement to accomplish an unlawful objective and/or to accomplish a lawful objective in an unlawful manner. AIA Services, AIA Insurance, Crop USA, John, Connie, Duclos, Freeman, and/or Beck's acts, omissions, and/or acquiescence constitute civil conspiracy.

13.3    As a result of AIA Services, AIA Insurance, Crop USA, John, Connie, Duclos, Freeman, and/or Beck's wrongful and unlawful acts and/or acquiescence, they should all be held

FIFTH AMENDED COMPLAINT – 32

Exhibit - A

jointly and severally liable for all of Reed's damages in this action.

## XIV. PRAYER FOR RELIEF

Without waiving any claims, rights and/or remedies under any of the above-referenced agreements and/or Idaho Code as a secured party, Reed respectfully requests the following relief:

14.1    For a judgment against AIA Services for the principal of $6,000,000, plus accrued pre-judgment interest, in the total amount to be proven at or before trial.

14.2    Reed requests a preliminary and permanent injunction against the Defendants as follows (any one or more of the following at or before trial):

(a) Enjoining any of the Defendants from interfering with the actions taken pursuant to the February 22, 2007, Consent in Lieu of Special Meeting of Shareholders of AIA Insurance and the actions taken pursuant to the February 22, 2007, Consent in Lieu of Meeting of Board of Directors of AIA Insurance.

(b) Enjoining any of the Defendants from preventing Reed from exercising his right under the Amended Stock Pledge Agreement to vote the pledged shares in AIA Insurance and taking any ancillary actions which relate in any way to voting the pledged shares, including, without limitation, removing the board of directors of AIA Insurance and appointing a revised board and such other actions he deems appropriate in his sole discretion as the exclusive person entitled to vote all the outstanding shares of AIA Insurance.

(c) Requiring the Defendants to timely and promptly provide Reed with all financial information required under the Amended Stock Pledge Agreement.

(d) Enjoining John and any of the other individual Defendants from entering the offices of AIA Insurance, if necessary

FIFTH AMENDED COMPLAINT – 33

Exhibit - A

(e) Enjoining the Defendants and any entity owned, partially owned or operated by any one or more of them from interfering with, disturbing, and transferring any of AIA Services, AIA insurance and Crop USA's customers, trade secrets, contracts, agreements and business.

(f) Enjoining the Defendants from utilizing, transferring or disposing of any funds, assets, property, labor, facilities or services of AIA Insurance, AIA Services and/or Crop USA for any other person, entity or business, unless such transactions are arms-length and payment is received by AIA Insurance, AIA Services and/or Crop USA prior to providing such funds, assets, labor, facilities or services (e.g., no free use or credit arrangements for such activities).

(g) Enjoining the Defendants from disposing of, using, transferring or utilizing any of the funds, assets (including, without limitation, mortgages) and/or property received from AIA Services, AIA Insurance, and/or Crop USA from the lawsuit entitled In re: Universe Liquidator Grain Growers Trust, et al. v. Idaho Department of Insurance a/k/a GGMIT suit, all other lawsuits, litigation and disputes in which AIA Services, AIA Insurance and/or Crop USA obtains any financial gain. All funds, assets and/or property from the foregoing should be held in trust until further notice from the Court.

(h) Enjoining the Defendants from negotiating or entering into any loans, credit arrangements, credit facilities, or borrowing any funds under any loan, line-of-credit, credit facility, open account and the like for which AIA Insurance or AIA Services is a guarantor or a signatory, unless utilized for the exclusive

FIFTH AMENDED COMPLAINT – 34

Exhibit - A

benefit of AIA Insurance to provide funding for AIA Insurance and approved by Reed or such other party appointed by Reed or the Court.

(i) Enjoining the Defendants from destroying, altering, deleting, purging, and/or removing any documents (including drafts, proposals, electronic files, email, back-up media and the like), property, computers and the like from AIA Insurance, AIA Services and Crop USA's offices.

(j) Enjoining the Defendants from advancing or lending any funds, assets or services to John, Duclos, Freeman, Connie, Beck, or AIA Services without first obtaining written consent from Reed or permission from the Court.

(k) Enjoining the Defendants from entering into or negotiating any substantive contracts or agreements without first obtaining approval from Reed or permission from the Court.

(l) Enjoining the Defendants from holding, calling or participating in any shareholder meetings, board meeting, and/or executing any Consents in Lieu of the foregoing without permitting Reed to vote the pledged shares or take such other action permitted to him as the holder of the right to vote all outstanding shares of AIA Insurance.

(m)Enjoining the Defendants from using or transferring any funds, assets, or services of AIA Insurance for the purpose of providing any retainers or payments for the legal services for John, Freeman, Duclos, Connie, and/or Beck.

(n) Enjoining John from being paid compensation for work not performed for AIA Insurance and/or AIA Services.  John's time expended for Crop USA

FIFTH AMENDED COMPLAINT – 35

Exhibit - A

and any other entities partially or wholly owned by him shall be paid by the appropriate entity and not AIA Insurance, AIA Services, but by the entity for which John performed the work.

(o) Enjoining the Defendants from paying any of the members of the board of directors of AIA Services or AIA Insurance unreasonable compensation for serving on the board of directors of AIA Services or AIA Insurance.

(p) Enjoining the Defendants requiring AIA Insurance, AIA Services and Crop USA to accurately and properly itemize every employee's daily time sheet to reflect the number of hours of work performed for AIA Services, AIA Insurance, Crop USA and any other entities or persons.

(q) Enjoining the Defendants from such other actions as may be reasonably contemplated from this Complaint, the Amended Stock Pledge Agreement, the Amended Security Agreement, the Restructure Agreement and/or which would otherwise protect Reed's interests and to prevent further deepening of the insolvency at AIA Services.

(r) Enjoining John, Beck, Freeman, Duclos, and/or Connie from appointing any directors for Crop USA, AIA Services and AIA Insurance.

(s) Invalidating the appointment of Connie and Beck from the Boards of AIA Services and AIA Insurance.

14.3    Enjoining the Defendants from transferring, encumbering or otherwise disposing of any improperly and/or fraudulently obtained and/or transferred assets under I.C. § 55-916, *et seq.* and/or other applicable legal authority.

///

FIFTH AMENDED COMPLAINT – 36

Exhibit - A

14.4    For the imposition of a constructive trust for the benefit of Reed and awarding to Reed all shares of common and/or preferred shares in Crop USA owned and/or held by John, Connie, Freeman, Duclos, and Beck and for all ancillary actions necessary to transfer said shares to Reed.

14.5    For the imposition of a constructive trust for the benefit of Reed and awarding to Reed that certain real property located in Nez Perce County and owed by John and Connie that was purchased from the Camas Praire RailNet, Inc., recorded under instrument number 672508 in Nez Perce County and all rental proceeds paid from AIA Services and/or AIA Insurance to John and Connie.

14.6    For a prejudgment writ of attachment against certain assets, funds and/or property of AIA Services, AIA Insurance, Crop USA and any other assets, funds and/or property of any of the other Defendants shown to be the proceeds or result of any or all of the Defendants' wrongful, unlawful, fraudulent and/or inappropriate acts and/or omissions.

14.7    For an order and/or judgment permitting Reed to sell the pledged shares of AIA Insurance at public or private sale or, in the alternative, judicially.  In the event the pledged shares of AIA Insurance are sold (whether or not Reed is the high bidder), for a deficiency judgment against the Defendants for all amounts exceeding the amount received and/or credited from the sale, including, without limitation, all damages, attorneys' fees and costs incurred by Reed in this action.  In the event Reed elects to purchase or otherwise obtain the shares of AIA Insurance, he hereby requests that only relief necessary for him to carry out his rights as owner of the shares of AIA Insurance.

14.8    For a judgment against the Defendants and/or the $200,000 bond posted for the preliminary injunction against Reed for all damages, attorneys' fees, costs and expenses incurred

FIFTH AMENDED COMPLAINT – 37

Exhibit - A

by Reed from being wrongfully enjoined, plus judgment against the Defendants for all amounts exceeding the $200,000 bond.

14.9    For judgment against the Defendants, jointly and severally, for all damages incurred by Reed as a result of the Defendants' breaches of implied duties of good faith and fair dealing, conversion, deepening insolvency, breaches of fiduciary duties and other claims, including, without limitation, pre and post filing damages that include, but are not limited to: all pay to present directors and officers, damages for the compensation and benefits paid to all employees paid by AIA Services or AIA Insurance that would not have been needed, lost tenants, misuse of assets and labor, and all other items detailed at trial.

14.10    For an order compelling an audit of AIA Services, AIA Insurance and Crop USA.

14.11    For a declaratory judgment or order requiring specific performance of AIA Services and/or AIA Insurance's obligations, covenants, warranties and/or other rights granted to Reed under the Amended Stock Pledge Agreement, Amended Security Agreement, Promissory Note and/or Restructure Agreement.

14.12    For judgment that AIA Insurance, AIA Services and Crop USA have been operated as the alter-egos of John, Duclos, Freeman, Connie and/or Beck, and their corporate veils should be pierced thereby imposing personal liability on all of the individual and corporate Defendants, jointly and severally, for all of Reed's damages and sums owed to him under the Promissory Note in an amount to be proven at trial.

14.13    For judgment that Crop USA is the alter-ego of AIA Insurance and AIA Services and all the foregoing corporations for all of Reed's damages and sums owed to him in both contract and tort in an amount to be proven at trial.

14.14    For a declaratory judgment and/or order enforcing the February 22, 2007, Consent

FIFTH AMENDED COMPLAINT – 38

Exhibit - A

in Lieu of Special Meeting of Shareholders of AIA Insurance and the actions taken pursuant to the February 22, 2007, Consent in Lieu of Meeting of Board of Directors of AIA Insurance.

14.15  For a judgment for damages and attorneys' fees incurred by Reed as a result of being wrongfully enjoined by the Defendants.

14.16  For such other relief that Reed may request before or at trial to enforce his rights under the Amended Stock Pledge Agreement, Amended Security Agreement, and/or Restructure Agreement, including, without limitation, any action or order authorized under I.C. § 30-1-701 *et seq.* and/or I.C. § 28-9-101 *et seq.*

14.17  For judgment, order and/or declaratory relief as may be necessary for Reed to effectuate any and all rights and remedies under I.C. § 28-9-101 *et seq.*, including, without limitation, the sale of the pledged shares, protection of security interest, seizure of security, return of funds protected by his security interest (e.g., attorneys fees paid for individual directors, etc.) and any other available remedy.

14.18  For the avoidance/rescission of the improper and/or fraudulent transactions, transfers of funds, assets and/or services from AIA Services and/or AIA Insurance to John, Beck, Freeman, Connie, Duclos, Crop USA, and any entity partially owned by John, and/or any other party who received such transfers under I.C. § 55-916, *et seq.* and/or other applicable legal authority.

14.19  For judgment against John and Connie for $307,271, plus accrued interest, for the money he owed AIA Services which was improperly paid by inappropriately transferring his indebtedness to Reed's Promissory Note and then backing out the transaction in 2006 or 2007, and awarding this account receivable from AIA Services to Reed.

///

FIFTH AMENDED COMPLAINT – 39

Exhibit - A

14.20  For judgment against Connie to the fullest extent of her liability by virtue of her marriage to John and/or his acts during their marriage, and her interest in the community property in an amount to be proven at the time of trial, plus prejudgment interest.

14.21  For judgment against Connie individually for an amount to be proven at trial, plus pre-judgment interest.

14.22  For a judgment against John (both individually and through his marriage to Connie) in an amount to be proven at trial, plus prejudgment interest.

14.23  For judgment against John, Connie, Duclos, Freeman, and Beck, jointly and severally, for all funds, assets, services, property and/or any other benefit fraudulently transferred, converted and/or fraudulently conveyed, and which such transferred thing of value may not be avoided, rescinded and/or paid to Reed.

14.24  For judgment against Crop USA for all sums and the fair market value of all services, labor, funds, and assets wrongfully, fraudulently, and/or inappropriately transferred, converted and/or conveyed, directly or indirectly, from AIA Insurance and/or AIA Services.

14.25  For judgment against John, Duclos, Connie, Freeman, and Beck, jointly and severally, for amounts owed to Reed in an amount to be proven at the time of trial because AIA Services and AIA Insurance are alter egos of John, Duclos, Freeman, and Beck.

14.26  For judgment against John, Connie, Duclos, Freeman, and Beck disgorging all salaries, compensation (including payments of fees for being board members and/or advisory board members), benefits, assets, stock (including, without limitation, shares held directly or indirectly in Crop USA) and other ill-gotten gains as a result of the breaches of their fiduciary duties, fraudulent transfers, unlawful acts, fraud and/or other causes of action.

///

FIFTH AMENDED COMPLAINT – 40

Exhibit - A

14.27  For the imposition of a constructive trust for the benefit of Reed and awarding to Reed all funds, investments, loans, advances, securities, property, transactions, services and/or self-dealing which were converted or fraudulently, wrongfully, unlawfully and/or improperly made for the benefit of Duclos, Freeman, John, Beck, Connie and/or other parties or entities controlled and/or partially owned by any of them as may be requested at trial.

14.28  For the imposition of a constructive trust for the benefit of Reed and awarding to Reed all securities, stock, options and the like transferred, together with all proceeds thereof, converted, sold or awarded or acquired by John and/or Connie from AIA Services, AIA Insurance and/or Crop USA, including, without limitation, shares (and proceeds thereof) and/or funds, and/or distributions received in or from Pacific Empire Holdings Corporation, Pacific Empire Radio Corporation, and Pacific Empire Communications Corporation.

14.29  For the imposition of a constructive trust for the benefit of Reed and awarding to Reed all shares and options of AIA Services and Crop USA acquired by the Defendants during their employment and/or when they were officers and/or members of the boards of AIA Insurance, AIA Services, and/or Crop USA.

14.30  For the disgorgement of all salary, bonuses, compensation (including all compensation and benefits received as directors), stock options, benefits, reimbursements (all proper, improper and/or undocumented reimbursements for travel, meals, lodging, etc.) and any other payments and/or assets received by John, Connie, Beck, Duclos, and Freeman and award all such funds and assets to Reed.

14.31  For a judgment against John, Freeman, Duclos, Connie and Beck, jointly and severally, for all damages resulting from the breaches of their fiduciary duties owed to Reed during the periods of time of their relevant tenures as directors of AIA Insurance and AIA

FIFTH AMENDED COMPLAINT – 41

Exhibit - A

Services, in an amount to be proven at trial.

14.32 For a declaratory judgment imposing personal liability on the individual Defendants and Crop USA for all loans guaranteed by AIA Services or AIA Insurance.

14.33 For an award of Reed's attorneys' fees and costs from all of the Defendants, jointly and severally, under the Promissory Note, Amended Stock Pledge Agreement, I.C. § 12-120, I.C. § 12-121 and/or as may be available under equity and law.

14.34 For judgment against the Defendants, jointly and severally, for all damages in tort and contract proven by Reed at trial based upon one or more of the following: civil conspiracy, fraud (any type, including misrepresentations), fraudulent conveyances, conversion, breaches of contract, alter-ego, breaches of fiduciary duties, deepening insolvency, breaches of implied duties of good faith and fair dealing, specific performance of any of Reed's rights under contract or law.

14.35 John, Connie, Beck, Duclos, and Freeman's wrongful, self-serving, fraudulent, deepening insolvency, conspiracy, inappropriate and unlawful acts and/or omissions as described in this Complaint constitute that of "faithless fiduciaries." Accordingly, all salary, compensation (including all compensation and benefits received as directors), stock options, benefits, reimbursements (all proper, improper and/or undocumented reimbursements for travel, meals, lodging, etc.) and any other payments and/or assets received by John, Connie, Beck, Duclos, and/or Freeman should be disgorged and awarded to Reed.

14.36 AIA Services and AIA Insurance have alleged that Reed agreed to orally modify the terms of the Promissory Note, Amended Stock Pledge Agreement, Amended Security Agreement and Restructure Agreement, which such allegations Reed expressly denies. If the Defendants are able to prove that such an oral modification exists at or before trial, AIA

FIFTH AMENDED COMPLAINT – 42

Exhibit - A

Services, AIA Insurance and Crop USA are in breach of such orally modified agreements and Reed is entitled to the damages and relief set forth in this Complaint.

14.37 Reed incorporates by reference into this Section all allegations and requested relief set forth in the above causes of action and/or remedies. Should any of the causes of action fail at or before trial, all of such allegations are incorporated by reference into this Section as requested relief and/or as support for Reed's requested relief.

14.38 Reed expressly reserves the right to amend this Complaint upon the completion of discovery and/or present causes of action and remedies which conform to the evidence at the time of trial.

14.39 For judgment against the Defendants and/or such relief for all claims and causes of action which conform to the evidence obtained through discovery and/or forensic accounting.

14.40 For such other relief as Reed may request before or at the time of trial and/or that the Court may find just, equitable, or warranted before or at the time of trial.

14.41 The Defendants are placed on notice that future amendments to this Complaint will be likely and Reed reserves the right to do so, particularly based upon the Defendants' intentional refusal to respond to Reed's discovery requests.

///

///

///

///

///

///

FIFTH AMENDED COMPLAINT – 43

Exhibit - A

14.42  The Defendants are placed on notice that Reed may likely move the Court in the future to permit him to request an award of punitive damages against the Defendants at trial.

DATED this 1st day of February, 2008.

SMITH, CANNON & BOND PLLC

By: _____
Roderick C. Bond
Ned A. Cannon
Attorneys for Plaintiff Reed J. Taylor

FIFTH AMENDED COMPLAINT – 44

Exhibit - A

## CERTIFICATE OF SERVICE

I, Roderick C. Bond, declare that, on the date indicated below, I served a true and correct copy of Plaintiff Reed Taylor's Fifth Amended Complaint on the following parties via the methods indicated below:

David A. Gittins
Law Office of David A. Gittins
P.O. Box 191
Clarkston, WA 99403
Attorney for Defendants JoLee Duclos and
Bryan Freeman

**Via:**
( ) U.S. Mail, Postage Prepaid
(X) Hand Delivered
( ) Overnight Mail
( ) Facsimile
(X) Email (pdf attachment)

Michael E. McNichols
Clements Brown & McNichols
321 13th Street
Lewiston, ID 83501
Attorney for R. John Taylor

**Via:**
( ) U.S. Mail, Postage Prepaid
(X) Hand Delivered
( ) Overnight Mail
( ) Facsimile
(X) Email (pdf attachment)

Jonathan D. Hally
Clark & Feeney
P.O. Box 285
Lewiston, ID 83501
Attorney for Connie Taylor, James Beck and
Corrine Beck

**Via:**
( ) U.S. Mail, Postage Prepaid
(X) Hand Delivered
( ) Overnight Mail
( ) Facsimile
(X) Email (pdf attachment)

Gary D. Babbitt
D. John Ashby
Hawley Troxell Ennis & Hawley LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, Idaho 83701-1617
Attorneys for AIA Services, AIA Insurance, and
Crop USA Insurance Agency

**Via:**
(X) U.S. Mail, Postage Prepaid
( ) Hand Delivered
( ) Overnight Mail
( ) Facsimile
(X) Email (pdf attachment)

FIFTH AMENDED COMPLAINT – 45

Exhibit - A

James J. Gatziolis
Charles E. Harper
Quarles & Brady LLP
Citigroup Center, 500 West Madison Street
Suite 3700
Chicago, IL  60661-2511
Attorneys for Crop USA Insurance Agency

**Via:**
(**X**)  U.S. Mail, Postage Prepaid
( )  Hand Delivered
( )  Overnight Mail
( )  Facsimile
(**X**) Email (pdf attachment)

Signed this 1ˢᵗ day of February, 2008, at Lewiston, Idaho.

_____
Roderick C. Bond

FIFTH AMENDED COMPLAINT – 46

# Exhibit - A