Gary D. Babbitt ISB No. 1486
D. John Ashby ISB No. 7228
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: (208) 344-6000
Facsimile: (208) 342-3829
Email: gdb@hteh.com
         jash@hteh.com

Attorneys for Defendants/Counterclaimants AIA
Services Corporation, and AIA Insurance, Inc.

# IN THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT

## OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF NEZ PERCE

| | |
|---|---|
| REED J. TAYLOR, a single person,<br><br>         Plaintiff,<br><br>vs.<br><br>AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; R. JOHN TAYLOR and CONNIE TAYLOR, individually and the community property comprised thereof; BRYAN FREEMAN, a single person; JOLEE DUCLOS, a single person; CROP USA INSURANCE AGENCY, INC., an Idaho Corporation; and JAMES BECK and CORRINE BECK, individually and the community property comprised thereof,<br><br>         Defendants | Case No. CV-07-00208<br><br>AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL |

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 1

Exhibit B

AIA SERVICES CORPORATION, an Idaho )
corporation; and AIA INSURANCE, INC., an )
Idaho corporation, )
                                         )
           Counterclaimants, )
vs. )
                                         )
REED J. TAYLOR, a single person, )
                                         )
           Counterdefendant. )
                                         )

Defendants AIA Services Corporation and AIA Insurance Inc. (collectively, "AIA" or "these Defendants"), by and through their counsel of record, Hawley Troxell Ennis & Hawley LLP, submit this First Amended Answer to Plaintiff's Fifth Amended Complaint, Counterclaim, and Demand for Jury Trial. This amended pleading is submitted as a matter of right pursuant to I.R.C.P. 15(a) because Reed J. Taylor has not yet served a responsive pleading. These Defendants respond to Plaintiff's Fifth Amended Complaint (the "Complaint") as follows:

### FIRST DEFENSE

Plaintiff's Fifth Amended Complaint, and each and every claim and allegation thereof, fails to state a claim against these Defendants upon which relief can be granted.

### SECOND DEFENSE

Defendants deny each and every allegation contained in Plaintiff's Complaint unless expressly and specifically admitted herein.

### PARTIES, JURISDICTION, AND VENUE

1. These Defendants admit the allegations in paragraph 1.1 of the Complaint.

2. These Defendants admit the allegations in paragraph 1.2 of the Complaint.

3. These Defendants admit the allegations in paragraph 1.3 of the Complaint.

4. These Defendants admit the allegations in paragraph 1.4 of the Complaint.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 2

 Exhibit "B"

5. Answering paragraph 1 5 of the Complaint, these Defendants admit that R. John Taylor ("John Taylor") and Connie Taylor were husband and wife until on or about December 16, 2005, and at all relevant times were residents of Lewiston, Nez Perce County, Idaho. These Defendants deny all other allegations in paragraph 1.5 of the Complaint not otherwise specifically admitted herein.

6. These Defendants admit the allegations in paragraph 1.6 of the Complaint.

7. These Defendants admit the allegations in paragraph 1.7 of the Complaint.

8. These Defendants admit the allegations in paragraph 1 8 of the Complaint.

9. Answering paragraph 1 9 of the Complaint, these Defendants admit that James Beck and Corrine Beck are residents of the State of Minnesota and deny all other allegations in paragraph 1.9 of the Complaint not otherwise specifically admitted herein

10. Paragraph 1 10 of the Complaint states a legal conclusion to which no response is required.

11. Paragraph 1.11 of the Complaint states a legal conclusion to which no response is required.

### FACTUAL BACKGROUND

12. Answering paragraph 2.1 of the Complaint, these Defendants admit that John Taylor was, at all relevant times, an officer and director of AIA Services, AIA Insurance, and Crop USA, and that he owns approximately 40% of the outstanding shares of Crop USA. These Defendants deny all other allegations in paragraph 2.1 of the Complaint not otherwise specifically admitted herein

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 3


Exhibit B
00546706 166 3

13. Answering paragraph 2.2 of the Complaint, these Defendants admit that John Taylor and Connie Taylor were divorced through an interlocutory decree on or around December 16, 2005, but these Defendants deny all other allegations in paragraph 2.2 of the Complaint

14. Paragraph 2.3 of the Complaint does not state any allegations as against these Defendants to which a response is required. To the extent a response is required, these Defendants deny the allegations in paragraph 2.3 of the Complaint.

15. These Defendants deny the allegations in paragraph 2.4 of the Complaint.

16. Answering paragraph 2.5 of the Complaint, these Defendants admit that JoLee Duclos ("Duclos") is an officer of AIA Services, AIA Insurance, and Crop USA, and that she is a shareholder in Crop USA. These Defendants deny all other allegations in paragraph 2.5 of the Complaint not otherwise specifically admitted herein.

17. Answering paragraph 2.6 of the Complaint, these Defendants admit that Bryan Freeman ("Freeman") was a director of AIA Services, AIA Insurance, and Crop USA, and that Bryan Freeman is a shareholder in Crop USA. These Defendants deny all other allegations in paragraph 2.6 of the Complaint not otherwise specifically admitted herein.

18. These Defendants admits that CropUSA cooperated with AIA pursuant to certain agreements, and deny all deny all other allegations in paragraph 2.7 of the Complaint not otherwise specifically admitted herein.

19. These Defendants admit the allegations in paragraph 2.8 of the Complaint.

20. Answering paragraph 2.9 of the Complaint, these Defendants admit that James Beck is a shareholder of AIA Services and Crop USA and that, during certain times, James Beck

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 4

Exhibit B

was a member of the boards of directors for AIA Insurance and AIA Services. These Defendants deny all other allegations in paragraph 2.9 of the Complaint not otherwise specifically admitted herein.

21. Answering paragraph 2.10 of the Complaint, these Defendants admit the first and third sentences, allege that in 1995 Reed Taylor desired to retire and have AIA Services redeem his stock, and deny each and every other allegation in paragraph 2.10 not otherwise admitted herein.

22. Answering paragraph 2.11 of the Complaint, these Defendants admit that AIA Insurance is a wholly owned subsidiary of AIA Services and that AIA Insurance is a lessee of the office building located at 111 Main Street, Lewiston, Idaho. These Defendants deny all other allegations in paragraph 2.11 of the Complaint not otherwise specifically admitted herein.

23. Answering paragraph 2.12 of the Complaint, these Defendants state that the agreements speak for themselves.

24. Answering paragraph 2.13 of the Complaint, these Defendants state that the documents speak for themselves, and deny all other allegations in paragraph 2.13 of the Complaint not otherwise specifically admitted herein.

25. Answering paragraph 2.14 of the Complaint, these Defendants admit that the Stock Redemption Agreement, Stock Pledge Agreement, and Security Agreement were authorized by the Board of Directors of AIA Services. These Defendants state that the agreements speak for themselves, and deny all other allegations in paragraph 2.13 of the Complaint not otherwise specifically admitted herein.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 5

Exhibit B

26. Answering paragraph 2.15 of the Complaint, these Defendants admit that in 1996 AIA Services and Plaintiff agreed to modify the Stock Redemption Agreement and executed the Stock Redemption Restructure Agreement, an Amended and Restated Stock Pledge Agreement, and an Amended and Restated Security Agreement. Those documents speak for themselves, and these Defendants deny all other allegations in paragraph 2.15 of the Complaint not otherwise specifically admitted herein.

27 Answering paragraph 2.16 of the Complaint, these Defendants state that the agreements speak for themselves, the agreements were amended at a later time, and these Defendants deny all other allegations in paragraph 2.16 of the Complaint not otherwise specifically admitted herein.

28. Answering paragraph 2.17 of the Complaint, these Defendants state that the Amended Stock Pledge Agreement speaks for itself, and these Defendants deny each and every allegation in paragraph 2.17 of the Complaint not otherwise specifically admitted herein.

29. Answering paragraph 2.18 of the Complaint, these Defendants state that the Amended Stock Pledge Agreement speaks for itself. These Defendants admit that AIA Services did not post bonds or other security for the payment of the Promissory Note and deny all other allegations in paragraph 2.18 of the Complaint not specifically admitted herein.

30. Answering paragraph 2.19 of the Complaint, these Defendants state that the Amended Stock Pledge Agreement speaks for itself and deny all other allegations in paragraph 2.19 of the Complaint not otherwise specifically admitted herein.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 6

Exhibit B

31.    Answering paragraph 2.20 of the Complaint, these Defendants state that the Amended Stock Pledge Agreement speaks for itself and deny all other allegations in paragraph 2.20 of the Complaint not otherwise specifically admitted herein.

32.    These Defendants deny the allegations in paragraph 2.21 of the Complaint.

33.    Answering paragraph 2.22 of the Complaint, these Defendants admit that Plaintiff was, during certain relevant times, the largest creditor of AIA Services, and deny all other allegations in paragraph 2.22 of the Complaint not otherwise specifically admitted herein.

34.    These Defendants deny the allegations in paragraph 2.23 of the Complaint.

35.    These Defendants deny the allegations in paragraph 2.24 of the Complaint.

36.    These Defendants deny the allegations in paragraph 2.25 of the Complaint.

37.    Answering paragraph 2.26 of the Complaint, these Defendants admit that Plaintiff claimed that AIA Services was in default, and these Defendants deny all other allegations in paragraph 2.26 of the Complaint not otherwise specifically admitted herein.

38.    Answering paragraph 2.27 of the Complaint, these Defendants admit that Plaintiff had never attempted to accelerate any of the indebtedness due under the Promissory Note prior to December 12, 2006, admit that AIA Services continued to make interest payments in an agreed upon amount before and after the date of Plaintiff's original complaint, and deny all other allegations in paragraph 2.27 of the Complaint not otherwise specifically admitted herein

39.    Answering paragraph 2.28 of the Complaint, these Defendants state that the Amended Stock Pledge Agreement speaks for itself, and these Defendants deny each and every other allegation in paragraph 2.28 of the Complaint.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 7

Exhibit B

40.     Answering paragraph 2.29 of the Complaint, these Defendants admit that Plaintiff attempted to schedule a special shareholder meeting for December 26, 2006, admit that no special shareholder meeting was held on that date, and deny each and every other allegation in paragraph 2.29 of the Complaint.

41.     Answering paragraph 2.30 of the Complaint, these Defendants admit that the quoted words are part of one of the sentences of a letter from R. John Taylor to Plaintiff's legal counsel, and deny each and every allegation in paragraph 2.30 of the Complaint

42.     Answering paragraph 2.31 of the Complaint, these Defendants admit that Reed Taylor demanded a special shareholder meeting for February 5, 2007, admit that no special shareholder meeting was held on that date, deny that Reed Taylor had a right to call a meeting to vote AIA Insurance Shares, and deny each and every allegation in paragraph 2.31 of the Complaint not otherwise specifically admitted herein

43.     These Defendants deny the allegations in paragraph 2.32 of the Complaint.

44.     Answering paragraph 2.33 of the Complaint, these Defendants admit that Reed Taylor executed a Consent in Lieu of Special Shareholder Meeting of AIA Insurance, and these Defendants deny each and every allegation in paragraph 2.33 of the Complaint not otherwise specifically admitted herein.

45.     Answering paragraph 2.34 of the Complaint, these Defendants admit that AIA Insurance paid $1,510,693.00 to purchase Series C Preferred Shares in AIA Services from Crop USA. These Defendants admit that AIA Services' 401(k) Plan held Preferred C shares. These Defendants deny all other allegations in paragraph 2.34 of the Complaint not otherwise specifically admitted herein

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 8

Exhibit B

46. Answering paragraph 2.35 of the Complaint, these Defendants admit that John Taylor purchased a parking lot and deny each and every allegation in paragraph 2.35 of the Complaint not otherwise specifically admitted herein.

47. These Defendants deny the allegations in paragraph 2.36 of the Complaint.

48. These Defendants deny the allegations in paragraph 2.37 of the Complaint.

49. Answering paragraph 2.38 of the Complaint, these Defendants admit that Reed Taylor executed a Consent in Lieu of Board Meeting on or around February 22, 2007 and that Defendants refused to recognize the Consent as binding on them. These Defendants deny all other allegations in paragraph 2.38 of the Complaint not otherwise specifically admitted herein.

50. These Defendants deny the allegations in paragraph 2.39 of the Complaint.

51. Answering paragraph 2.40 of the Complaint, these Defendants admit that Freeman and Duclos resigned as members of the Board of Directors of AIA Insurance and AIA Services, admit that John Taylor, as Chairman of the Board of Directors, appointed Connie Taylor and James Beck as directors, and deny all other allegations in paragraph 2.40 of the Complaint not otherwise specifically admitted herein

52. These Defendants deny the allegation in paragraph 2.41 of the Complaint

53. Answering paragraph 2.42 of the Complaint, these Defendants admit that Plaintiff has an interest as provided for in the Amended and Restated Security Agreement, which agreement speaks for itself, admit that Plaintiff has demanded that no funds in which he has a security interest should be used to pay the legal fees of any Defendant, but deny all other allegations in paragraph 2.42 of the Complaint not otherwise specifically admitted herein.

54. These Defendants deny the allegations in paragraph 2.43 of the Complaint.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 9

Exhibit B

55. Answering paragraph 2.44, these Defendants admit that Crop USA purchased Sound Insurance and deny all other allegations in paragraph 2.44 of the Complaint not otherwise specifically admitted herein.

56. Answering paragraph 2.45 of the Complaint, these Defendants admit that Global Travel was a tenant in AIA Insurance's office building and that Global Travel has relocated to a different office building, but these Defendants deny all other allegations in paragraph 2.45 of the Complaint not otherwise specifically admitted herein.

57. These Defendants deny the allegations in paragraph 2.46 of the Complaint.

58 These Defendants deny the allegations in paragraph 2.47 of the Complaint.

59. Answering paragraph 2.48 of the Complaint, these Defendants allege that AIA Service and AIA Insurance are and were being operated for the benefit of AIA Services and AIA Insurance and deny all other allegations in paragraph 2.48 of the Complaint not otherwise specifically admitted herein.

60. These Defendants deny the allegations in paragraph 2.49 of the Complaint.

61. These Defendants deny the allegations in paragraph 2.50 of the Complaint.

62. These Defendants deny the allegations in paragraph 2.51 of the Complaint.

63. These Defendants deny the allegations in paragraph 2.52 of the Complaint.

64. These Defendants deny the allegations in paragraph 2.53 of the Complaint.

65. These Defendants deny the allegations in paragraph 2.54 of the Complaint

66. Answering paragraph 2.55 of the Complaint, these Defendants state that the Executive Officer's Agreement speaks for itself, and these Defendants deny all other allegations in paragraph 2.55 of the Complaint not otherwise specifically admitted herein.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 10

Exhibit B

67.    These Defendants deny the allegations in paragraph 2.56 of the Complaint.

68.    These Defendants deny the allegations in paragraph 2.57 of the Complaint.

69.    These Defendants deny the allegations in paragraph 2.58 of the Complaint.

70.    Paragraph 2.59 does not state any allegations against these Defendants to which a response is required. To the extent a response is required, these Defendants deny the allegations in paragraph 2.59 of the Complaint.

## FIRST CAUSE OF ACTION
### Breaches of Contract

71.    These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs.

72.    Answering paragraphs 3.2 through 3.4 of the Complaint, these defendants state that the Promissory Note, Amended Stock Pledge Agreement, Amended Security Agreement, and Restructure Agreement speak for themselves, and these defendants deny all other allegations in paragraphs 3.3 through 3.4 of the Complaint not otherwise specifically admitted herein.

## SECOND CAUSE OF ACTION
### Fraudulent Transfers

73.    These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs of this Answer

74.    These Defendants deny all allegations in paragraphs 4.2 through 4.4 of the Complaint.

## THIRD CAUSE OF ACTION
### Misrepresentations/Fraud

75.    These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs of this Answer.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 11

Exhibit B

76.   These Defendants deny all allegations in paragraphs 5 2 through 5.4 of the Complaint.

## FOURTH CAUSE OF ACTION
### Conversion

77.   These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs of this Answer.

78   These Defendants deny all allegations in paragraphs 6 2 through 6 3 of the Complaint.

## FIFTH CAUSE OF ACTION
### Alter Ego/Piercing Corporate Veil [sic]

79.   These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs of this Answer.

80.   These Defendants deny all allegations in paragraphs 7.2 through 7.5 of the Complaint.

## SIXTH CAUSE OF ACTION
### Constructive Trust

81.   These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs of this Answer.

82.   These Defendants deny all allegations in paragraphs 8.2 through 8.4 of the Complaint.

## SEVENTH CAUSE OF ACTION
### Director Liability

83   These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs of this Answer.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 12

Exhibit B

84. These Defendants deny all allegations in paragraphs 9.2 through 9.4 of the Complaint.

## EIGHTH CAUSE OF ACTION
### Specific Performance

85. These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs of this Answer

86. These Defendants deny all allegations in paragraphs 10.2 through 10.4 of the Complaint.

## NINTH CAUSE OF ACTION
### Breach of Fiduciary Duties

87. These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs of this Answer.

88. These Defendants deny all allegations in paragraphs 11.2 through 11.4 of the Complaint.

## TENTH CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing

89. These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs of this Answer.

90. These Defendants deny all allegations in paragraphs 12.2 through 12.3 of the Complaint

## ELEVENTH CAUSE OF ACTION
### Civil Conspiracy

91. These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs of this Answer

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 13

Exhibit B

92. These Defendants deny all allegations in paragraphs 13.2 through 13.3 of the Complaint.

## PRAYER FOR RELIEF

93. Answering paragraphs 14.1 through 14.41, these Defendants deny that Plaintiff is entitled to any of the relief prayed for in his Complaint.

## THIRD DEFENSE

On July 1, 1996, Plaintiff, AIA Services, and Donna J. Taylor entered into a Series A preferred Shareholder Agreement, which provides that no principal payments may be made by AIA Services to Plaintiff until the entire Series A Preferred Stock redemption price due Donna Taylor is paid in full. The redemption price due Donna Taylor has not been paid in full. Therefore, no principal payments are due to Plaintiff.

## FOURTH DEFENSE

At different times since the written agreements were executed, Plaintiff and these Defendants have orally modified the written agreements. The modifications include, without limitation, an agreement that the interest payable to Plaintiff from AIA Services would be paid in installments of $15,000 per month (together with the assumption of responsibility for other expenses). AIA Services has paid Plaintiff the sum of $15,000 per month and has assumed responsibility for the other agreed expenses in accordance with the modified agreements since they were entered into, and Plaintiff has accepted those payments. These Defendants are not in default of the modified agreements.

## FIFTH DEFENSE

Plaintiff's claims are barred by the applicable statute of limitations, including Idaho Code §§ 5-216, 5-218, 5-224, 5-237 and 55-918.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 14

Exhibit B

## SIXTH DEFENSE

Plaintiff is estopped from asserting his claims against these Defendants

## SEVENTH DEFENSE

Plaintiff has waived his right to assert claims against these Defendants

## EIGHTH DEFENSE

Plaintiff's claims against these Defendants are barred by the equitable doctrine of unclean

hands.

## NINTH DEFENSE

Plaintiff's claim in his THIRD CAUSE OF ACTION violates Idaho Rule of Civil

Procedure 9(b).

## TENTH DEFENSE

Plaintiff's claims are barred by the doctrine of laches.

## ELEVENTH DEFENSE

To the extent Plaintiff is attempting to state a claim against AIA Insurance, Inc. for a

shareholder's derivative action, Plaintiff's claims are barred for failure to give the required notice

pursuant to Idaho Code § 30-1-742.

## TWELFTH DEFENSE

Plaintiff's alleged damages are subject to the right of setoff.

## THIRTEENTH DEFENSE

On July 1, 1996, AIA Services Corporation ("Services") and Reed J. Taylor executed a

Stock Redemption Restructure Agreement, Amended and Restated Stock Pledge Agreement, and

related documents restating the 1995 agreements with Reed J. Taylor whereby Services acquired

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 15

Exhibit B

all his outstanding common shares (613,494) in exchange for $7.5 million and (i) three aircraft, (ii) elimination of $570,000 owed to the Company, and (iii) miscellaneous furniture and fixtures.

Revenues of Services and its subsidiaries declined sharply between 1994 and 1996: $36,200,324, $10,996,753 and $9,758,226, respectively.

The basis for the 1996 Stock Redemption Restructure Agreement and related Agreements was that Services and its subsidiaries depended on its ability to sell health and life insurance. Reed J. Taylor sold his controlling interest while Services was losing money and then continued on the Board of Directors and participated in decisions promoting the Company's decline. Neither party, in 1996, could foresee the precipitous decline of Services through government regulation and market change.

With the consent and knowledge of Reed J. Taylor as a member of the Board of Directors of Services:

(a)     The Universe Life Insurance Company ("Universe") entered into a Stipulation and Order of Rehabilitation with the Idaho Department of Insurance in the District Court of the Fourth Judicial District of the State of Idaho ("District Court") on March 5, 1996.

(b)     An Amended Plan of Rehabilitation was approved by the District Court on October 7, 1997. Effective December 1, 1997, through the Amended Plan of Rehabilitation, all of Universe's group health insurance certificate holders were transferred to Trustmark Insurance Company ("Trustmark").

(c)     On December 4, 1998, the District Court issued an Order of Liquidation and placed Universe into liquidation, with assets and liabilities estimated to be $16.1 million and

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 16

Exhibit B

$14.3 million, respectively   A liquidator was appointed to wind down business and pay certificate holders, creditors, and shareholders.

Reed J. Taylor knew and understood that the health insurance business of Services depended upon retention of the policies in Universe and Centennial that were transferred to Trustmark, as well the continued ability to write new health insurance business.

By November 2001, Trustmark determined that it would no longer underwrite individual health insurance and disallowed all new sales.

Reed J. Taylor, based on his intimate involvement with Services, knew and understood that changes in legislative and regulatory framework affecting health insurance laws had substantially and permanently damaged Services' health insurance business

While Reed J. Taylor was sales manager AIA Insurance's commissions declined every year.

Reed J. Taylor has been paid several million dollars in interest and other payments from a company that has suffered unforeseen market consequences and the loss of the consideration for the sale of his stock.  Given the unforeseeable supervening consequences, the actions of Reed J. Taylor in the business and/or the substantial sums paid to him, it would be unconscionable to continue to enforce the contracts with Reed J. Taylor.  Neither party could have foreseen the changes in regulation and attendant shrinking market of Services and loss of Universe and Centennial.  In the alternative, Services is entitled to a setoff equal to the value of Universe at the time of signing the contract with Reed J Taylor.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 17

Exhibit B

## FOURTEENTH DEFENSE

Reed J. Taylor voluntarily relinquished and waived events of default under the Amended Security Agreement and Amended Pledge Agreement, including but not limited to, default or breaches arising from or relating to financial statements, board memberships, or insolvencies or bankruptcies.

## FIFTEENTH DEFENSE

Reed J Taylor voluntarily relinquished the payment provision of this 1996 Promissory and accepted a modified monthly interest payment of $25,000 and future payment of principal upon placement of $60,000,000 in new business evidenced by his conduct, words and acquiesces

## SIXTEENTH DEFENSE

Reed J. Taylor is estopped from claiming a default or breach of the Amended Pledge Agreement or the Amended Security Agreement, including but not limited to alleged defaults related to or arising from financial statements, board membership, or insolvency or bankruptcy, as it would be unconscionable to allow Reed J. Taylor to assert such rights to default based on his prior positions and conduct.

## SEVENTEENTH DEFENSE

Reed J. Taylor represented to AIA Services by his conduct and course of action and silence that he was excusing and waiving any breach of contract by accepting payments of $25,000 a month since 2003; AIA Services relied upon Reed J. Taylor's representation and materially changed its position to its detriment.

## EIGHTEENTH DEFENSE

Plaintiff has failed to join an indispensable party, Donna Taylor.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 18

Exhibit B

## RULE 11 STATEMENT

Defendants have considered and believe that they may have additional defenses but do not have information at this time to assert such additional defenses under Rule 11 of the Idaho Rules of Civil Procedure. Defendants do not intend to waive any such defenses and specifically assert their intention to amend this Answer if, pending research and after discovery, facts come to light giving rise to such additional defenses.

## FIRST COUNTERCLAIM
## BREACH OF FIDUCIARY DUTY

Defendants/Counterclaimants AIA Insurance, Inc. and AIA Services Corporation, by way of counterclaim against Plaintiff/Counterdefendant Reed Taylor, allege and complain as follows:

1.    In 1995, Plaintiff was the majority shareholder of AIA Services. AIA Services was the sole shareholder of AIA Insurance.

2.    In 1995, AIA Services redeemed Plaintiff's interest in AIA Services through a corporate redemption of the Plaintiff's stock.

3.    After the purchase of Plaintiff's stock, Plaintiff intentionally, as a major creditor of AIA Services, a Director of both entities, and Sales Manager of AIA Insurance, Inc., undertook a course of action which injured AIA Insurance and devalued the businesses of AIA Services. Plaintiff's intentional course of action included intimidating and interfering with the management and inducing AIA Insurance employees and agents to terminate their employment and contracts with AIA Insurance and to accept employment and contracts with Plaintiff and/or organizations controlled by him. Plaintiff, with the former employees and former agents of AIA Insurance, engaged in business competitive with AIA Insurance which

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 19

Exhibit B

seriously damaged the business and value of AIA Insurance and the value of the businesses of AIA Services.

4. Because of Plaintiff's interference with AIA Services' business relationships, AIA Services was unable to pay Plaintiff all of the amounts of money due at times due, prior to the amendment of the agreements. Before the agreements were amended in 2003, Plaintiff threatened to sue AIA Services and to foreclose and take over AIA Insurance and threatened and coerced Defendants into employing friends and relatives of Plaintiff and paying Plaintiff's friends and relatives salaries and compensation substantially in excess of the value of their services. Plaintiff also told those friends and relatives that they were not obligated to report to or take direction from AIA's management.

5. Plaintiff has intentionally breached his fiduciary duty as a Director of AIA Services and as an Officer of AIA Insurance, Inc., damaging Defendants in amounts to be proved at trial.

6. Based on the conduct of Reed J. Taylor alleged in this First Counterclaim, Defendants will seek amendment of its prayer for relief and are entitled to punitive damages pursuant to I.C. 6-1604.

## SECOND COUNTERCLAIM
### BAD FAITH BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

1 There is implied in every contract a covenant of good faith and fair dealing.

2. On July 1, 1996, AIA Services Corporation, Reed Taylor and Donna J. Taylor executed a Stock Redemption Restructure Agreement.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 20

Exhibit B

(a)    The recitals of this Agreement provided "the Series A Preferred Shareholder would have her stock in company redeemed in accordance with a specified payment plan, and that certain payments to creditor under the original document would be subordinated to the company's obligation to pay Series A Preferred Shareholder   Concurrent with this Agreement, creditor, company and Series A Preferred Shareholder have entered into an agreement ("Series A Preferred Shareholder Agreement") which supersedes and replaces the Series A Preferred Shareholder Letter Agreements."

(b)    According to Section 1.8 of the Agreement, a subordination agreement with the Series A Shareholder would be executed concurrently with the Agreement whereby Reed agreed to subordinate AIA Services' $6,000,000 Promissory Note for the redemption of Reed's stock of Services to the full payment of the Series A Preferred Stockholder, Donna J. Taylor.

(c)    The Parties executed the Series A Preferred Shareholder Agreement (Exhibit G) on July 1, 1996.

3.    Payments to the Series A Preferred Shareholder by AIA Services are continuing on a monthly basis.

4    The Series A Preferred Shareholder has not declared a default in the payments to her under the 1996 Series A Preferred Shareholder Agreement.

5.    Reed J. Taylor knew and understood in 1996 that the payment of principal to him on the $6 million Note would be subordinated in full to the company's obligation to first redeem the Series A Preferred Stock in full.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC 'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 21

Exhibit B

6.    In December 2006, Reed J. Taylor, without the consent or knowledge of AIA Services, persuaded Donna J. Taylor to execute a Subordination Agreement, whereby AIA Services' obligation owing to Donna Taylor for the redemption of the Series A Preferred Shares would be subordinated to the debt owed by AIA Services to Reed J Taylor for the redemption of his common stock.

7.    On February 22, Reed J. Taylor executed a Consent in Lieu of Special Shareholder Meeting of AIA Services and allegedly removed John Taylor, JoLee Duclos and Bryan Freeman from the Board of Directors and appointed himself as sole Board member.

8    Reed J. Taylor then broke into the offices of AIA Services in the early morning of Sunday, February 25, 2007, and attempted to take over the offices and books and records of AIA Services.

9.    Reed J. Taylor acted in bad faith and used the 2006 Subordination Agreement with Donna Taylor in order to manufacture an alleged default of non-payment of principal under the Stock Redemption Restructure Agreement, Amended Pledge Agreement, and Amended Security Agreement of 1996 to take over AIA Services

10.    Based on the conduct of Reed Taylor alleged in this Second Counterclaim, Defendants will seek amendment of its prayer for relief and are entitled to an award of punitive damages pursuant to IC § 6-1604.

## THIRD COUNTERCLAIM
## BREACH OF CONTRACT

1.    Defendants/Counterclaimants reallege and incorporate by reference paragraphs 1-9 verbatim of the Second Counterclaim as if set forth in full herein

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 22

Exhibit B

2.   As part of the consideration for the Stock Redemption Restructure Agreement of 1996, Reed Taylor agreed to subordinate the payment of principal on the $6,000,000 Promissory Note to Reed until the Series A Preferred Shareholder is paid in full.

3.   Reed Taylor has breached the Stock Redemption Restructure Agreement and has damaged AIA Services.

4.   AIA alleges that the 2006 subordination agreement should be voided and adjudged invalid, restoring the subordination provisions of the 1996 Series A Preferred Stockholder Agreement as written.

## FOURTH COUNTERCLAIM
## INJUNCTIVE RELIEF

1.   On Sunday morning, February 25, 2007, without notice to any Defendants, Plaintiff and several other individuals entered the offices of AIA Insurance and AIA Services at 111 Main Street, Lewiston, Idaho.

2.   Accompanying Plaintiff and conspirators was a locksmith whom Plaintiff directed to begin to change the locks on the offices of AIA Services and AIA Insurance for the purpose of preventing access to those offices by their current management and employees.

3.   The action and conduct of Plaintiff and his associates constitute a trespass upon the property of AIA Services and AIA Insurance, which, if it had been successful, would have caused irreparable injury to both AIA Services and AIA Insurance.

4.   Plaintiff should be enjoined from harassing and/or interfering with the management of AIA Insurance and AIA Services  Plaintiff should be enjoined from entering upon the premises of AIA Insurance and AIA Services without the express permission of these Defendants. Plaintiff should be enjoined from acting or attempting to act as a Director or officer

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 23

Exhibit B

of AIA Insurance. Plaintiff should be enjoined from harassing or annoying, directly or indirectly, any employee of AIA Services or AIA Insurance in person, by telephone, or by written communications

## FIFTH COUNTERCLAIM
## RESCISSION OF 1996 STOCK REDEMPTION RESTRUCTURE AGREEMENT AND 1995 STOCK REDEMPTION AGREEMENT

1.    On July 22, 1995, AIA Services and Reed J. Taylor executed a Stock Redemption Agreement which provided for the redemption of 613,494 shares of common stock of AIA Services Corporation ("AIA Services"), payable in the form of a short term $1,500,000 down payment note and a long term note payable to Reed in the amount of $6,000,000, subordinated however to the redemption of the Series A Preferred Stock to the preferred stockholder, Donna J. Taylor  Concurrent with the execution of the Stock Redemption Agreement, thereto AIA Services and Reed Taylor executed a Promissory Note payable to Reed Taylor in the principal amount of $6 million dated August 1, 1995. This Promissory Note states:

> The Note is subordinate to the payment of the redemption obligations owed by Company to Donna Taylor pursuant to that certain Letter Agreement dated January 11, 1995, signed by Company, Payee Donna Taylor and Cumer Green

The January 11, 1995 Letter Agreement was executed by AIA Services, Reed J. Taylor and Donna J Taylor. The January 11, 1995 Letter Agreement provided:

> Further, AIA Services Corporation's Note or any note payable to Reed J. Taylor for the $6 million purchase price for his common shares will be subordinated to the redemption rights of your client so that Reed J. Taylor will receive no principal payments on said Note until Donna Taylor's stock has been properly redeemed. Reed J. Taylor will receive no interest payments on the Note payable to him if payments to Donna Taylor are in default.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 24

Exhibit  B

The 1995 Letter Agreement was integral to and legally permitted Reed Taylor's redemption of his common stock in the 1995 Stock Redemption Agreement.

2. On July 1, 1996, AIA Services, Reed Taylor and Donna J. Taylor executed a Stock Redemption Restructure Agreement which provided for:

(a) Adjusting the principal amount of the down payment note, extending its maturity date and providing for interest to accrue on the principal balance of the down payment note, requiring payments of principal and interest under the down payment note, and providing for security for payment of the down payment note;

(b) Terminating the 1995 Consulting Agreement, revising the 1995 Noncompetition Agreement, and terminating the Company's obligation to pay Reed Taylor a monthly salary;

(c) Amending the terms of the 1995 Security Agreement and 1995 Stock Pledge Agreement;

(d) Revising certain representations and warranties and covenants in the 1995 Stock Redemption Agreement; and

(e) Simplifying and consolidating various default provisions.

In exchange for restructuring the Company's obligations to Reed Taylor, Reed agreed to waive and to forbear from exercising any remedies he may have for any existing defaults under the original 1995 documents. Also the parties executed a Series A Preferred Shareholder Agreement replacing the Series A Shareholder Letter Agreements.

3. (a) The recitals of this 1996 Restructure Agreement provided "the Series A Preferred Shareholder would have her stock in company redeemed in accordance with a

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 25

Exhibit B

specified payment plan, and that certain payments to creditor under the original document would be subordinated to AIA Services' obligation to pay Series A Preferred Shareholder  Concurrent with this Agreement, creditor, company and Series A Preferred Shareholder have entered into an agreement ("Series A Preferred Shareholder Agreement") which supersedes and replaces the Series A Preferred Shareholder Letter Agreements."

(b)    According to Section 1.8 of the 1996 Restructure Agreement, a subordination agreement with the Series A Shareholder would be executed concurrently with the Agreement.

(c)    The Parties contemporaneously executed the Series A Preferred Shareholder Agreement (Exhibit G) on July 1, 1996 subordinating the principal payments to Reed J. Taylor on the $6,000,000 Promissory Note.  Reed J Taylor agreed to complete subordination of principal payments until the Series A redemption was completed.

4.    Payments to the Series A Preferred Shareholder by AIA Services are continuing on a monthly basis

5.    The Series A Preferred Shareholder has not declared a default in the payments to her under the 1996 Series A Preferred Shareholder Agreement.

6    Reed J. Taylor knew and understood that the 1995 Stock Redemption subordinated both principal and interest payments and the 1996 Stock Redemption Restructure Agreement principal of the $6 Million Promissory Note and 1996 that the payment would be subordinated in full to the company's obligation to redeem the Series A Preferred Stock first.

7.    On December 1, 2006, Reed J. Taylor, without the consent or knowledge of AIA Services, persuaded Donna J. Taylor to execute a two party Subordination Agreement,

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 26

Exhibit B

whereby the debt owing to Donna Taylor from redemption of the Series A Preferred Shares to AIA Services would be subordinated to all the debt owed by AIA Services to Reed J Taylor.

(a)     The Subordination Agreement executed on December 1, 2006, expressly rescinded the subordination provisions of the 1996 Series A Preferred A Shareholder Agreement, the 1996 Stock Redemption Restructure Agreement, the 1995 Stock Redemption Agreement, and the January 11, 1995 Letter Agreement incorporated into AIA Services' $6,000,000 Promissory Note payable to Reed:

> "The effect of this Agreement shall be to permit Reed to collect, litigate, obtain judgment, and/or enforce any and all rights and remedies which relate in any way to the $6 million Promissory Note, plus all accrued interest, costs, expenses and attorneys fees owed to Reed through the various agreements set forth in Section 2 below. This Agreement may result in Reed obtaining payment, assets, and/or judgments which represent some of all of the amounts owed by him, while Donna's rights <u>will be junior inferior to Reed</u> … (emphasis supplied)

(b)     Reed J. Taylor in the December 1, 2006 Subordination Agreement expressly abrogated all of Donna Taylor's rights to priority of payment of the Series A Preferred Stock Redemption price including all prior agreements relating back to the 1996 Stock Redemption Restructure Agreement, the 1995 Stock Redemption Agreement and the January 11, 1995 Letter Agreement and expressly rescinded the Series A Preferred Shareholder Agreement of 1996:

> Donna expressly subordinates all amounts, rights, obligations and remedies owed to her in favor of (and junior to) Reed J. Taylor under the following agreements (including all claims, remedies, rights, under such agreements):
>
> (a) $6 million Promissory Note between Reed and AIA Services Corporation ("AIA Services") dated August 1, 1995; (b) Stock Redemption Restructure Agreement between Reed, Donna and

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 27

Exhibit B

AIA Services dated July 1, 1996; (c) Amended and Restated Stock Pledge Agreement between AIA Services and Reed dated July 1, 1996; (d) Amended and Restated Security Agreement between AIA Services, AIA Insurance, Inc., and Reed dated July 1, 1996; (e) Letter between Reed, R. John Taylor and Donna dated February 27, 2001; (f) Series A. Preferred Shareholder Agreement between AIA Services, and Reed dated July 1, 1996; and (g) Any other agreement, contract or promise of any kind or nature  (emphasis supplied).

8. On February 22, Reed J. Taylor executed a Consent in Lieu of Special Shareholder Meeting of AIA Services and allegedly removed John Taylor, JoLee Duclos and Bryan Freeman from the Board of Directors and appointed himself as sole Board member.

9. Reed J. Taylor then broke into the offices of AIA Services in the early morning of Sunday, February 25, 2007, and attempted to take over the offices and books and records of AIA Services.

10 Reed J. Taylor in bad faith used the December 1, 2006 Subordination Agreement with Donna Taylor in order to manufacture an alleged default against AIA Services of non-payment of principal under the Stock Redemption Restructure Agreement, Amended Pledge Agreement, and Amended Security Agreement of 1996 to take over AIA Insurance based on a secret nullification and rescission of the Series A Shareholder Agreement of 1996 and the January 11, 1995 Shareholder Letter Agreement

11. Plaintiff asserts that the December 1, 2006 Subordination Agreement between Reed J. Taylor and Donna Taylor is effective and enforceable as against Defendants, notwithstanding that the Agreement was obtained without the knowledge or consent of AIA Services.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 28

Exhibit B

12.    The Series A Preferred Shareholder Agreement dated July 1, 1996 is an integral part of the Stock Redemption Restructure Agreement of 1996 and was material consideration for AIA Services executing the Stock Redemption Restructure Agreement of 1996   Section 8(g) of the Series A Preferred Shareholder Agreement provides in part:

> Each provision of this Agreement is interdependent with and inseparable from every other provision hereof; and each covenant is given in consideration of every other covenant herein.  If any provision of this Agreement is invalid, illegal, unenforceable or inapplicable to any person or circumstance to which it is intended to be applicable, in whole or in part this entire Agreement shall be void.

Because of the actions and conduct of Reed J. Taylor and as a result of the December 1, 2006 Agreement, an essential and inseparable provisions of the Series A Preferred Shareholder Agreement have been rescinded resulting in a failure of consideration; and by its terms the Series A Preferred Shareholder Agreement of 1996 is void.  Voiding the Series A Preferred Shareholder Agreement of 1996 by Reed J Taylor also effectively rescinds the 1995 Stock Redemption Agreement for failure of material consideration on which the Redemption Agreement was based.

13.    The January 11, 1995 Shareholder Letter Agreement was material consideration for AIA Services executing the 1995 Shareholder Redemption Agreement and was integral to the execution of the 1995 Shareholder Redemption Agreement and the delivery of the $6 million Promissory Note (Promissory Note) to Reed J. Taylor.  The Promissory Note expressly refers to and incorporates the January 11, 1995 Shareholder Letter Agreement subordination set forth in the January 11, 1995 Shareholder Letter Agreement.  Reed J Taylor agreed to the complete subordination of principal and interest payments on Services' $6,000,000 Promissory Note payable to Reed until the Series A Preferred shares were redeemed completely.  Because of the

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 29

Exhibit B

actions and conduct of Reed J. Taylor, the January 11, 1995 Shareholder Letter Agreement has been nullified and rescinded by the express terms of the Subordination Agreement of December 1, 2006. The rescission of the January 11, 1995 Shareholder Letter by Reed J. Taylor effectively rescinds the 1995 Stockholder Redemption Agreement for failure of material consideration on which the Redemption Agreement was based.

14.    Defendant/Counterclaimants allege and claim that the Stock Redemption Restructure Agreement in 1996, the Stock Redemption Agreement of 1995, the January 11, 1995 Letter Agreement and the $6M Note have been rescinded through the deceitful course of conduct and action by Reed J Taylor.

15.    AIA Services hereby tenders to Reed J Taylor the equivalent of 613,494 shares of AIA Services Corporation common stock conditioned upon (and AIA Services hereby demands) repayment by Reed of all amounts paid to Reed or on his behalf pursuant to the rescinded agreements.

## SIXTH COUNTERCLAIM
## TRESPASS

1.    In the early morning hours of Sunday, February 25, 2007, Plaintiff and several of his associates entered the offices of AIA Services and AIA Insurance without notice and without permission, which constitutes an intentional trespass on the property of AIA Services and AIA Insurance, which causes those corporations damages in amounts which will be proved at trial

2.    Based on the conduct described in the preceding counterclaim Plaintiffs are entitled to an award of punitive damages and will seek permission to amend its property for relief pursuant to I.C 6-1604.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 30

Exhibit B

## ATTORNEYS' FEES

These Defendants have been required to retain the services of Hawley Troxell Ennis & Hawley LLP and are entitled to an award of attorneys' fees pursuant to Idaho Code §§ 12-120, 12-121, and/or other applicable law.

## NOTICE OF INTENT TO AMEND

These Defendants hereby give notice of their intent to amend this Answer and Counterclaim to add additional claims, defenses and counterclaims, including a claim for punitive damages, as discovery is conducted

## PRAYER FOR RELIEF

WHEREFORE, these Defendants request the Court:

1. To dismiss the Fifth Amended Complaint with prejudice;

2. To award these Defendants damages on their Counterclaims in the amounts to be proven at trial for trespass and breach of contract;

3. To enter a judgment voiding the 2006 subordination agreement;

4. To enter an injunctive relief as set forth in these Defendants' Fourth Counterclaim;

5. To enjoin this Plaintiff from harassing and/or interfering with the management of AIA Insurance and AIA Services, and to enjoin the Plaintiff from entering upon the premises of AIA Insurance and AIA Services without the express permission of these Defendants, and to enjoin the Plaintiff from acting or attempting to act as a Director or officer of AIA Insurance, and to enjoin the Plaintiff from harassing or annoying, directly or indirectly, any employee of AIA Services or AIA Insurance in person, by telephone, or by written communications.

6. To enter an order:

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 31

Exhibit B

(a)    That Reed J Taylor by executing the December 1, 2006 Subordination Agreement rescinded and nullified the 1996 Preferred Series A Shareholder Agreement, and that the 1996 Stock Redemption Restructure Agreement is void for failure of material consideration upon which the redemption was based;

(b)    That Reed Taylor by executing the December 1, 2006 Subordination Agreement rescinded the January 11, 1995 Shareholder Letter Agreement and that the 1995 Stock Redemption Agreement is void for failure of material consideration upon which the redemption was based;

(c)    That Reed J. Taylor repay to AIA Services all sums plus interest paid to him including the value of personal property transferred to him relating or incident to the 1996 Stock Redemption Restructure Agreement and the 1995 Stock Redemption Agreement; and

(d)    Upon repayment of sums in paragraph (c), the AIA Services restore all common stock formerly held by Reed J. Taylor taking into consideration stock increases or decreases.

7.    For punitive damages as may be allowed.

8    For all costs and attorney fees as provided by contract or statute, including Idaho Code § 12-120 and § 12-121 or other applicable law

9.    For such other and further relief as the Court may find just and proper in the circumstances.

## DEMAND FOR JURY TRIAL

AIA Services Corporation and AIA Insurance, Inc. hereby demand a trial by a jury of twelve (12).

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 32

Exhibit "B"

DATED THIS _07_ day of March, 2008.

HAWLEY TROXELL ENNIS & HAWLEY LLP

By_____ _D. Babbitt_
Gary D. Babbitt ISB No. 1486
Attorneys for Defendants AIA Services
Corporation, AIA Insurance, Inc.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 33

Exhibit B

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this *07* day of March, 2008, I caused to be served a true copy of the foregoing AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL by the method indicated below, and addressed to each of the following:

Roderick C. Bond
Ned A. Cannon
Smith, Cannon & Bond PLLC
508 Eighth Street
Lewiston, ID 83501
[Attorneys for Plaintiff]

_____ U.S. Mail, Postage Prepaid
_____ Hand Delivered
_____ Overnight Mail
_____ Telecopy
__✓__ Email

David A. Gittins
Law Office of David A. Gittins
P.O. Box 191
Clarkston, WA 99403
[Attorney for Defendants Duclos and Freeman]

_____ U.S. Mail, Postage Prepaid
_____ Hand Delivered
_____ Overnight Mail
_____ Telecopy
__✓__ Email

Michael E. McNichols
Clements Brown & McNichols
321 13th Street
Lewiston, ID 83501
[Attorneys for Defendant R. John Taylor]

_____ U.S. Mail, Postage Prepaid
_____ Hand Delivered
_____ Overnight Mail
_____ Telecopy
__✓__ Email

Jonathan D. Hally
Clark & Feeney
P.O. Box 285
Lewiston, ID 83501
[Attorneys for Defendants Connie Taylor, James Beck and Corrine Beck]

_____ U.S. Mail, Postage Prepaid
_____ Hand Delivered
_____ Overnight Mail
_____ Telecopy
__✓__ Email

James J. Gatziolis
Charles E. Harper
QUARLES & BRADY LLP
500 West Madison Street, Suite 3700
Chicago, Illinois 60661-2511
[Attorneys for Crop USA Insurance]

_____ U.S. Mail, Postage Prepaid
_____ Hand Delivered
_____ Overnight Mail
_____ Telecopy
__✓__ Email

_____
Gary D. Babbitt

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 34

Exhibit B