

FILED

2009 JUN 17 PM 3 51

PATTY WEEKS
CLERK OF THE DIST. COURT

DEPUTY

## IN THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF NEZ PERCE

| | |
|---|---|
| REED J. TAYLOR, a single person, <br><br> Plaintiff, <br><br> v. <br><br> AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; R. JOHN TAYLOR and CONNIE TAYLOR, individually and the community property comprised thereof; BRIAN FREEMAN, a single person; JOLEE DUCLOS, a single person; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; and JAMES BECK and CORRINE BECK, individually and the community property comprised thereof, <br><br> Defendants. | CASE NO. CV07-00208 <br><br> OPINION AND ORDER ON PLAINTIFF'S MOTION FOR RULE 56(f) CONTINUANCE; PLAINTIFF'S AND DEFENDANTS' MOTIONS TO STRIKE EXPERT AFFIDAVITS; DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT; INTERVENOR'S MOTION FOR RECONSIDERATION |
| CONNIE W. TAYLOR and JAMES BECK, <br><br> Counterclaimants, <br><br> v. <br><br> REED J. TAYLOR, a single person, <br><br> Counterdefendant. | |

*Taylor v. AIA, et al.*
Opinion & Order on Plaintiff's Rule 56(f) Motion

1

Exhibit - E

This matter is before the Court on: (1) Plaintiff's Motion for Rule 56(f) Continuance; (2) Defendants' Motion for Partial Summary Judgment filed by Connie Taylor, James Beck and Corrine Beck; (3) Motion for Reconsideration filed by Intervenor 401(k) Plan; and (4) various Motions to Strike Expert Witness Affidavits. Defendants AIA Corporations, John Taylor and Intervenor 401(k) Plan filed joinder in the Motion for Partial Summary Judgment. A hearing on Defendants' Motion for Partial Summary Judgment was held on April 23, 2009 and a hearing on Plaintiff's Motion for Rule 56(f) Continuance was held on May 14, 2009. Plaintiff Reed Taylor was represented by attorneys Michael S. Bissell and Roderick C. Bond. Defendants AIA Services Corporation and AIA Insurance, Inc. were represented by attorney Gary D. Babbitt. Defendant R. John Taylor was represented by attorney Michael E. McNichols. Defendants Connie Taylor, James Beck and Corrine Beck were represented by attorney David R. Risley. Defendants Jolee Duclos and Bryan Freeman were represented by attorney David A. Gittens. Intervenor 401(k) Profit Sharing Plan was represented by attorney Charles A. Brown. The Court, having read the motions, briefs, and affidavits submitted by the parties, having considered only those affidavits or portions thereof that are relevant and admissible, having heard oral arguments of counsel and being fully advised in the matter, hereby renders its Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

The above-entitled matter was filed January 29, 2007. Since its inception, this case has regularly been before the Court on numerous motions filed by the parties. As a result, the underlying facts of the case have been articulated by the Court in several written Opinions over the course of the proceedings. Therefore, rather than repeat facts already articulated in prior opinions, the Court will note only those facts specifically relevant to the motions to be decided.

*Taylor v. AIA, et al.*
Opinion & Order on Plaintiff's Rule 56(f) Motion

2

Exhibit - E

In March 1995, Resolutions 2.1 and 2.2, adopting and approving the purchase of AIA shares owned by Reed Taylor were passed by a majority of AIA shareholders.[1] The payment terms included a $1.5 million promissory note payable in July 1996 and a $6 million promissory note payable in 2005.[2] By July 1995, negotiations reached final agreement and on July 18, 1995, a majority vote approved the purchase of Reed Taylor's 613,494 shares and Agreement documents were executed July 22, 1995.[3] However, by April 1996, AIA was in default on several terms relative to the stock redemption agreement.[4] After some negotiations, the payment terms were restructured and, on July 1, 1996, a Stock Redemption Restructuring Agreement was executed.

It is the non-payment of the $6 million Promissory Note, along with other terms in the 1995 agreement and 1996 restructured payment terms, that resulted in the filing of the above-entitled lawsuit. Defendants now assert the redemption of Reed Taylor's AIA shares in 1995 was an illegal and unenforceable agreement.

## (A)   PLAINTIFF'S RULE 57(f) MOTION

The decision to grant or deny a motion for continuance is within the sound discretion of the court and will not be disturbed absent the showing of an abuse of discretion. *Gunter v. Murphy's Lounge, LLC.*, 141 Idaho 16, 105 P.3d 676 (2005). Plaintiff seeks a continuance pursuant to I.R.C.P. 56(f), which reads:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a

---

[1] See Exhibit A to the Affidavit of JoLee Duclos filed December 29, 2008 [Bates stamp AIA0025233 and AIA0025241 – AIA0025242].

[2] Numerous other terms were included in the agreement but are not relevant to this analysis.

[3] See Exhibit B to the Affidavit of JoLee Duclos filed December 29, 2008 [Bates stamp AIA0025507 and AIA0025516 – AIA0025517].

[4] See Exhibit I to the Affidavit of JoLee Duclos filed December 29, 2008.

Exhibit - E

continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Defendants' pending motion asserts the 1995 agreement between Plaintiff Reed Taylor and AIA was unlawful as it violated then existing statutory law. Plaintiff contends that before he can sufficiently defend against Defendants' assertion, he needs to conduct additional discovery. Since the inception of this case more than two years ago, Plaintiff has aggressively conducted discovery and, by his own admission, has obtained boxes and boxes of documents relative to the issues raised in his Complaint, although still not all the discovery requested. The Court recognizes Defendants' motion brings into question the financial status of AIA as it existed in 1995. However, Defendants' motion was filed in April 2008, more than one year ago, during which time discovery has been ongoing.[5] Plaintiff has failed to direct the Court to any particular information or document relevant to the 1995 financial status of AIA that has been denied to him through the discovery process. Plaintiff merely contends in general, without any specificity, that the Defendants are likely hiding information even though the record indicates Defendant AIA has provided Plaintiff with reasonable opportunity to inspect all 1995 and 1996 financial information still within the possession of AIA.[6]

Plaintiff has failed to meet his burden as required by Rule 56(f). His request for a continuance in order to conduct additional discovery is based on mere speculation and on presumptions unsupported by fact or law, despite Plaintiff's voluminous filings. Discovery in the instant matter has been actively and aggressively conducted by the Plaintiff since the filing of the Complaint over two years ago and during the year since Defendants filed their motion for partial summary judgment. Plaintiff has provided the Court with no reasonable basis to believe

---

[5] In January 2009, the Court entered an order limiting discovery to the Summary Judgment issues pending hearing and decision on the motion.
[6] Exhibit 1 to the Affidavit of Rod Bond in Support of Plaintiff's Motion for Rule 56(f) Continuance, filed April 22, 2009.

*Taylor v. AIA, et al.*    4
Opinion & Order on Plaintiff's Rule 56(f) Motion

Exhibit - E

additional discovery will produce new or relevant information not previously disclosed and such discovery would only come at substantial additional cost to all parties with attendant delay in pending proceedings. Therefore, the Court denies Plaintiff's motion for continuance pursuant to Rule 56(f).

(B)  MOTIONS TO STRIKE EXPERT AFFIDAVITS

Plaintiff's Motion to Strike seeks to strike in its entirety the Expert Witness Affidavit of Drew Voth filed by Intervenor AIA 401(K) Plan and the Expert Witness Affidavit of Kenneth Hooper filed by Defendants/Counterclaimants Connie Taylor and James Beck. Intervenor 401(K) Plan filed a Motion to Strike portions of the Expert Witness Affidavit of Paul Pederson filed by Plaintiff. The Court finds there are inadmissible statements in each of the Affidavits filed in support of and in opposition to the respective motions for Partial Summary Judgment. The Court will, therefore, disregard those portions of the Affidavits it finds inadmissible and will consider only those portions it finds admissible.

(C)  DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

> Under I.R.C.P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment faces the burden of proving the absence of material facts *Tingley v. Harrison*, 125 Idaho 86, 89, 867 P.2d 960, 963 (1994), but if "a party moves for summary judgment on the basis that no genuine issue of material fact exists with regard to an element of the non-moving party's case, the non-moving party must establish the existence of an issue of fact regarding that element." *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 273, 869 P.2d 1365, 1368 (1994). In other words, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial." *Id.* (internal quotations omitted).
>
> Moreover, the non-moving party cannot withstand summary judgment when there is only a "slight doubt as to the facts," as "there must be sufficient evidence upon which a jury could reasonably return a verdict resisting the motion."

Exhibit - E

> *Harpole v. State*, 131 Idaho 437, 439, 958 P.2d 594, 596 (1998). Finally, "[a]ll
> disputed facts are to be construed liberally in favor of the non-moving party, and
> all reasonable inferences that can be drawn from the record are to be drawn in
> favor of the non-moving party." *Bear Island Water Association, Inc. v. Brown*,
> 125 Idaho 717, 721, 874 P.2d 528, 532 (1994).

*BMC West Corporation v. Horkley*, 144 Idaho 890, 893, 174 P.3d 399 (2007).

In April 2008, Defendants Connie Taylor, James Beck and Corrine Beck filed a Motion for Partial Summary Judgment, asserting the 1995 stock redemption agreement and 1996 stock redemption restructure agreement between Reed Taylor and AIA were unlawful as the agreement violated I.C. § 30-1-6 as it existed in 1995 and 1996[7]. However, due to the extremely contentious nature of this case, the motion remained pending while a number of other motions were addressed by the Court, including a motion to intervene filed by the AIA 401(k) Profit Sharing Plan (" 401(k) Plan"). The Court granted the 401(k) Plan's motion to intervene and, thereafter, Defendants AIA, John Taylor, and the 401(k) Plan filed Joinder in the Motion for Partial Summary Judgment. Extensive briefing and affidavits were filed by the parties and, approximately one year after filing, the Defendants' motion was heard by the Court.

In 1995, I.C. § 30-1-6 read in relevant part:

> A corporation shall have the right to purchase, take, receive or otherwise acquire, hold, own, pledge, transfer or otherwise dispose of its own shares, but purchases of its own shares, whether direct or indirect, shall be made only to the extent of unreserved and unrestricted earned surplus available therefore, and, if the articles of incorporation so permit or with the affirmative vote of the holders of a majority of all shares entitled to vote thereon, to the extent of unreserved and unrestricted capital surplus available therefore.
>
> . . .
>
> No purchase of or payment for its own shares shall be made at a time when the corporation is insolvent or when such purchase or payment would make it insolvent.

Idaho Code § 30-1-6 (1995).

---

[7] Idaho Code § 30-1-6 was repealed in 1997.

*Taylor v. AIA, et al.*                          6
Opinion & Order on Plaintiff's Rule 56(f) Motion

Exhibit - E

The Defendants' motion, along with Plaintiff's opposition, place but two questions before the Court: (1) In 1995 and 1996, did AIA have earned surplus to the extent of the stock purchase agreement between Reed Taylor and AIA and, (2) if there was insufficient earned surplus, was there an affirmative vote of the majority shareholders to use capital surplus for the stock purchase to the extent that capital surplus was available. If the answer to both questions is no, then the 1995 stock purchase agreement and the 1996 restructured agreement entered into between Reed Taylor and AIA violated I.C. § 30-1-6 as it then existed.[8]

> The illegality of a contract [ ] can be raised at any stage in litigation. The Court has the duty to raise the issue of illegality *sua sponte*. *Morrison v. Young*, 136 Idaho 316, 318, 32 P.3d 1116, 1118 (2001); *Quiring v. Quiring*, 130 Idaho 560, 566, 944 P.2d 695, 701 (1997). Whether a contract is illegal is a question of law for the court to determine from all the facts and circumstances of each case. *Morrison*, 136 Idaho at 318, 32 P.3d at 1118; *Quiring*, 130 Idaho at 566, 944 P.2d at 701 (citing *Stearns v. Williams*, 72 Idaho 276, 283, 240 P.2d 833, 840 (1952)). An illegal contract is one that rests on illegal consideration consisting of any act or forbearance which is contrary to law or public policy. *Quiring*, 130 Idaho at 566, 944 P.2d at 701 (citations omitted). The general rule is that a contract prohibited by law is illegal and unenforceable. *Id.*; *Williams v. Cont'l Life & Acc. Co.*, 100 Idaho 71, 73, 593 P.2d 708, 710 (1979); *Whitney v. Cont'l Life and Acc. Co.*, 89 Idaho 96, 105, 403 P.2d 573, 579 (1965). A contract "which is made for the purpose of furthering any matter or thing prohibited by statute ... is void." *Kunz v. Lobo Lodge, Inc.*, 133 Idaho 608, 611, 990 P.2d 1219, 1222 (Ct.App.1999) (quoting *Porter v. Canyon County Farmers' Mut. Fire Ins. Co.*, 45 Idaho 522, 525, 263 P. 632, 633 (1928)). This rule applies on the ground of public policy to every contract which is founded on a transaction prohibited by statute. Id. (citing *Porter*, 45 Idaho at 525, 263 P. 632, 633 (1928) (citations omitted)). The Idaho Court of Appeals has suggested that "where a statute intends to prohibit an act, it must be held that its violation is illegal, without regard to the reason of the inhibition ... or to the ignorance of the parties as to the prohibiting statute." *Id.* (quoting 17A Am.Jur.2d *Contracts* § 251 (1991)).

*Trees v. Kersey*, 138 Idaho 3, 6-7, 56 P.3d 765 (2002).

---

[8] AIA's 1996 financial status was discussed in briefing and in discovery requests. During oral arguments, however, counsel for the parties treated the 1995 financial status of AIA as key to whether the stock redemption violated I.C. § 30-1-6. The Court agrees that it is the 1995 financial figures that are critical to the analysis, as the 1996 restructuring of the agreement did not involve the redemption of any additional shares, but rather was merely a restructuring of payment terms for the redemption that had already occurred in 1995.

*Taylor v. AIA, et al.*                                                    7
Opinion & Order on Plaintiff's Rule 56(f) Motion

# Exhibit - E

Defendants and Plaintiff employed the assistance of experts to review audited financial statements and address the earned surplus question raised by Defendants' motion. Plaintiff filed the affidavit of accountant Paul Pederson. Defendants Connie Taylor, James Beck and Corrine Beck filed the affidavit of accountant Kenneth Hooper. The 401(k) Plan filed the affidavit of accountant Drew Voth. Without exception, each of the accountants, including Plaintiff's expert, found AIA had no earned surplus in the years 1995 and 1996, but instead had an earned deficit. During oral arguments, counsel for Plaintiff conceded that the earned surplus numbers for AIA in 1995 and 1996 were in the negative and that no amount of accounting adjustment of numbers would turn the earned deficit into an earned surplus sufficient to cover the $7.5 million debt incurred to Reed Taylor. Nevertheless, Plaintiff's counsel argued that the language of the statute requires the Court to look not only at earned surplus in 1995 but also at the 1995 capital surplus.

The portion of I.C. § 30-1-6 that limits a corporation's redemption of its own shares based on its earned surplus or capital surplus is an issue of first impression in Idaho.[9] It is Plaintiff's position that when the majority of shareholders voted in favor of purchasing Reed Taylor's AIA shares pursuant to the negotiated agreement, that vote constituted an affirmative vote to draw on capital surplus in addition to earned surplus for the purchase. The Court finds Plaintiff's reading of the statute overly broad and inconsistent with statutory construction. The relevant portions of the statute read:

> A corporation shall have the right to purchase . . . its own shares . . . to the extent of . . . earned surplus available . . . and, with the affirmative vote of the holders of a majority of all shares entitled to vote, . . . to the extent of . . . capital surplus available

---

[9] Idaho's Supreme Court has previously addressed the impact of I.C. § 30-1-6 where a corporation was insolvent at the time it redeemed its own shares, but the limitation based on earned surplus or capital surplus has not been previously addressed by Idaho's Appellate Courts.

Exhibit - E

If, under the statute, a mere affirmative vote to purchase shares also meant the shares could be purchased to the extent of earned surplus and capital surplus, the statute would not have distinguished the two sources, but would have merely stated that a corporation may purchase its own shares to the extent of earned and capital surplus. However, it is not so worded. Under the language of I.C. § 30-1-6, the Court finds that, in order for a corporation to draw upon its capital surplus to purchase its own shares, a majority of shares entitled to vote must affirmatively vote not only to purchase the shares, but must specifically authorize the use of capital surplus for the purchase. Plaintiff, despite being the majority shareholder at the time, has provided no evidence that such a vote was taken and, as a result, has produced no evidence that there was an affirmative vote to draw on capital surplus for the redemption of Reed Taylor's shares. Neither the approved resolutions nor the agreements themselves identified earned surplus or capital surplus as the source of funds for the redemption of the shares.

The Court can reach but one result — the 1995 stock redemption agreement entered into between Reed Taylor and AIA violated I.C. § 30-1-6 as it existed in 1995 and, therefore, the contract between the parties is illegal and unenforceable. Plaintiff, however, contends that, even if the Court finds the 1995 contract illegal, it should find it enforceable.

Plaintiff first asserts that all of the Defendants, as well as the Intervenor 401(k) Plan, lack standing to assert an illegality defense. It is generally accepted that "stock repurchase statutes are designed to protect creditors and minority stockholders from corporate mismanagement of assets."[10] *Minnelusa Company v. A.G. Andrikopoulos*, 929 P.2d 1321, 1323 (Colo.1996). Because neither the 401(k) Plan nor any of the Defendants were a creditor of AIA when the agreement was entered into, standing to challenge the legality of the contract is

---

[10] On page 9 of the Intervenor 401(k) Plan's Supplemental Brief in Support of Motion to Intervene filed December 29, 2008, the Plan noted its understanding that stock repurchase statutes are designed to protect creditors and minority stockholders.

*Taylor v. AIA, et al.*                    9
Opinion & Order on Plaintiff's Rule 56(f) Motion

Exhibit - E

contingent upon being a shareholder when the contract was entered into. The 401(k) Plan, by its own admission, was not a stockholder until March 1996 when AIA exchanged $565,000.00 of 401(k) Plan funds for AIA Preferred C Stock.[11] The Plan, therefore, is without standing to assert an illegality defense to an agreement entered into before the Plan was a shareholder.[12] Defendants James and Corrine Beck are also without standing to assert the defense as there is no evidence in the record that the Becks were shareholders at the time of the agreement.[13] Under the law in Idaho, AIA is also without standing to assert the defense. "A corporation itself cannot have a stock repurchase declared illegal . . . ." *La Voy Supply Company v. Young*, 84 Idaho 120, 127, 369 P.2d 45 (1962). Lastly, Connie Taylor and John Taylor are without standing. At the time the stock redemption agreement was entered into, Connie Taylor and John Taylor were husband and wife and owned shares as community property. John Taylor, as a board member of AIA in 1995, was intimately involved in the negotiations to redeem Reed Taylor's shares and voted, for the community, in the affirmative on the question of whether AIA should enter into the 1995 stock redemption agreement.[14] Shareholders who consent and approve of a corporation's redemption of shares cannot be heard to complain of the purchase. *La Voy Supply Company v. Young*, 84 Idaho 120, 127, 369 P.2d 45 (1962).

The Court, having found those asserting the illegality defense to be without standing to assert the defense, must now determine the impact, if any, that I.C. § 30-1-6 has on the above-entitled matter. In 2002, quoting from its earlier opinion in *Quiring v. Quiring*, 130 Idaho 560,

---

[11] Page 11 of Intervenor's Supplemental Brief in Support of Motion to Intervene filed December 29, 2008 and Exhibit J to the Affidavit of Jolee K. Duclos in Support of Supplemental Brief re: Motion to Intervene filed December 29, 2008.

[12] The Court is not persuaded by the 401(k) Plan's argument that it has standing because it was a shareholder in 1996 when the payment terms of the 1995 agreement were restructured.

[13] The parties agree that the Becks' conditioned their purchase of AIA shares on the redemption of Reed Taylor's shares occurring first.

[14] There is no dispute that Connie Taylor and John Taylor were husband and wife in 1995, held AIA shares as community property and that John Taylor voted the community shares in the affirmative to redeem Reed Taylor's shares.

*Taylor v. AIA, et al.*                          10
Opinion & Order on Plaintiff's Rule 56(f) Motion

# Exhibit - E

944 P.2d 695 (1997), Idaho's Supreme Court unambiguously stated that a court in Idaho has a duty to raise the issue of illegality at any stage of the litigation regardless of whether it is pled. *Hyta v. Finley*, 137 Idaho 755, 757-758, 53 P.3d 338 (2002). This Court cannot simply ignore the knowledge it now possesses. In 1995, when AIA redeemed the shares owned by Reed Taylor it did so in violation of I.C. § 30-1-6. "A contract prohibited by law is illegal and hence unenforceable." *Quiring*, 130 Idaho at 566, citing *Miller*, 129 Idaho at 351. Of the exceptions to the illegality doctrine recognized by Idaho's appellate courts, only one is relevant to the instant matter.

> Courts on occasion, however, apply an exception to the illegality doctrine where both parties concur in the illegal act, but the parties are not equally at fault by reason of that fact that one party commits fraud, or there is duress, oppression, or undue influence over the other. *See, e.g., Nat'l Bank & Loan Co. v. Petrie*, 189 U.S. 423, 23 S.Ct. 512, 47 L.Ed. 879 (1903) (agreement induced by fraud); *In re Resorts Int'l, Inc.*, 181 F.3d 505, 512 (3rd Cir.1999); *Singleton v. Foreman*, 435 F.2d 962, 969 (5th Cir.1970); *Gorringe v. Reed*, 23 Utah 120, 63 P. 902, 905-06 (1901). In such a situation the courts have allowed the less guilty party to recover. Some courts that have adopted this exception focus on the existence or nonexistence of confidential relations between the parties. *See Novak v. Nowak*, 216 Ind. 673, 25 N.E.2d 993 (1940); *Rogers v. Samples*, 207 Ky. 150, 268 S.W. 799 (1925).

*Trees v. Kersey*, 138 Idaho 3, 9, 56P.3d 765 (2002).

In the instant matter, while Plaintiff has asserted claims for fraud in the management of AIA over the thirteen plus years since his shares were redeemed, he has not asserted any fraud, duress, oppression or undue influence relative to the negotiations or events that resulted in Plaintiff and AIA entering into the stock redemption agreement or the subsequent restructuring. Plaintiff was the founder of AIA, was intimately familiar with the company, knew or should have known its financial status, and was represented by counsel during the negotiations that resulted in the stock redemption agreement. It cannot be said that Plaintiff was less sophisticated than others involved in the negotiations or was at any disadvantage that would rise to the level of

*Taylor v. AIA, et al.*                                 11
Opinion & Order on Plaintiff's Rule 56(f) Motion

# Exhibit - E

fraud on the part of the other parties to the agreement.[15] Therefore, under the current law in Idaho, the Court is unable to find any exception to the illegality doctrine that can be applied to the case at hand. If the fraud exception is to be expanded, or if additional exceptions are to be carved out, that must be done by a higher court, not by this one.

Next, Plaintiff asserts any claim based on the illegality doctrine is barred by the statute of limitations. The Court is not persuaded. A contract that is illegal is unenforceable and a court must leave the parties where it finds them. *Id.* The Court recognizes the inherent inequity that results when parties wait over thirteen years to challenge the legality of an agreement, remaining silent as long as a benefit is flowing to them and becoming 'righteous' only when it comes time to pay the consideration promised, and after a court has round the promissory note portion of the agreement in default. Nevertheless, the passage of time alone does not alter the character of a contract that is illegal and unenforceable into one that is enforceable.

Finally, Plaintiff contends the Court should apply rules of equity to enforce the agreement. "If a contract is illegal and void, the court will leave the parties as it finds them and refuse to enforce the contract. The contract cannot be treated as valid by invoking waiver or estoppel." *Wernecke v. St. Maries Joint School District*, 2009 WL 982690 (April 14, 2009). Equity is reserved to those who have clean hands. *Kirkman v. Stoker*, 134 Idaho 541, 6 P.3d 397 (2000). Given the pre and post litigation conduct of the most heavily invested parties, it is difficult to identify any party with totally clean hands. Plaintiff has not, however, shown any party acted with unclean hands in the negotiations and agreement that resulted in the redemption

---

[15] Plaintiff relies heavily on an August 15, 1995 opinion letter from Richard Riley, an attorney then with the Boise law firm of Eberle, Berlin, Kading, Turnbow and McKlveen, Chartered, who acted as general counsel for AIA in connection with the stock redemption agreement between AIA and Reed Taylor. In his letter, attorney Riley offered the opinion that the stock redemption agreement "did not conflict with or violate . . . law, rule or regulation" without making specific reference to or discussing I.C. § 30-1-6. See Exhibit 6 to the Affidavit of Roderick C. Bond filed April 22, 2009. By this ruling today, the Court finds the attorney opinion incorrect.

*Taylor v. AIA, et al.*                    12
Opinion & Order on Plaintiff's Rule 56(f) Motion

Exhibit - E

of Plaintiff's AIA shares. The agreement was reached only after extensive negotiations involving a number of attorneys, including counsel representing Plaintiff, and there has been no showing that Plaintiff sold his shares other than voluntarily. There is no question that all parties, including Plaintiff, either ignored or failed to consider I.C. § 30-1-6. There is also no reason to doubt that all parties, including the Plaintiff, sought to benefit from the business agreement. That is simply the free market system at work and is not, without more, evidence of unclean hands.

The Court has considered all the arguments put forth by Plaintiff in his briefing and oral arguments. However, except for those arguments discussed above, the Court will not address any additional arguments as the Court finds they are irrelevant to the issue or have become moot given the above analysis.

## (D)  INTERVENOR'S MOTION TO RECONSIDER PRIOR RULING

The illegality doctrine requires a court to leave the parties where a court finds them. For that reason, Intervenor's Motion for Reconsideration of the Court's ruling on the promissory note is denied and the Court's previous analysis stands. The ruling therefore remains, for what it may be worth, even if only as an issue on appeal.

## CONCLUSION

The Defendants and Intervenor are without standing to assert the illegality doctrine relative to the 1995 stock redemption agreement between Plaintiff Reed Taylor and AIA. However, it is the duty of the Court to address the illegality of the agreement once the Court has knowledge that such illegality may exist. In 1995, Idaho Code prohibited a corporation from purchasing its own shares unless the corporation had earned surplus to the extent of the purchase or, upon the affirmative vote of a majority of shareholders, the corporation had capital surplus or

*Taylor v. AIA, et al.*                     13
Opinion & Order on Plaintiff's Rule 56(f) Motion

Exhibit - E

a combination of earned surplus and capital surplus to the extent of the purchase. In 1995, the earned surplus of AIA was in the negative and there has been no evidence presented to the Court that there was an affirmative vote of the majority of shareholders that capital surplus could be looked to for the redemption of Reed Taylor's shares. Therefore, the 1995 stock redemption agreement was entered in violation of Idaho code, making the agreement illegal and unenforceable. Following the law in Idaho, the Court must apply the illegality doctrine, denying enforcement of the contract and leaving the parties where the Court finds them.

Being acutely aware of the complexities of this case and the significant impact of this ruling on Plaintiff's claims, the Court would entertain a request for Rule 54 certification.

## ORDER

The Motion for Rule 56(f) Continuance filed by Plaintiff is hereby DENIED.

Motions to Strike Expert Affidavits are hereby DENIED in part and GRANTED in part.

The Motion for Partial Summary Judgment filed by Defendants Connie Taylor, James Beck and Corrine Beck is hereby GRANTED.

The Motion for Reconsideration of the Court's prior ruling on the promissory note, filed by Intervenor 401(k) Plan, is hereby DENIED.

Dated this ___17___ day of June 2009.

_____
JEFF M. BRUDIE, District Judge

*Taylor v. AIA, et al.*                    14
Opinion & Order on Plaintiff's Rule 56(f) Motion

Exhibit - E

CERTIFICATE OF MAILING

I hereby certify that a true copy of the foregoing ORDER was:

___✓___ hand delivered via court basket, or faxed

_____ mailed, postage prepaid, by the undersigned at Lewiston, Idaho, this 17th day of June, 2009, to:

Roderick Bond
Smith, Cannon & Bond
508 Eighth St
Lewiston, ID 83501

Michael S. Bissell
7 S Howard St
Spokane, WA 99201

Michael E. McNichols
Clements, Brown & McNichols
PO Box 1510
Lewiston, ID 83501

David A. Gittins
PO Box 191
Clarkston, WA 99403

Gary D. Babbitt
D John Ashby
Hawley, Troxell Ennis & Hawley LLP
PO Box 1617
Boise, ID 83701-1617

David R. Risley
Randall, Blake & Cox
PO Box 446
Lewiston, ID 83501

James Gatziolis
Charles E. Harper
Quarles and Brady LLP
300 North LaSalle St., Ste 4000
Chicago IL 60654

Charles Brown
PO Box 1225
Lewiston, ID 83501

PATTY O. WEEKS, CLERK

By_____
                Deputy

Taylor v. AIA, et al.
Opinion & Order on Plaintiff's Rule 56(f) Motion                    15

Exhibit - E