FILED

2008 DEC 23 PM 2 51

CLERK OF THE DIST. COURT

IN THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT OF THE
STATE OF IDAHO, IN AND FOR THE COUNTY OF NEZ PERCE

| | |
|---|---|
| REED J. TAYLOR, an individual, ) | |
| ) | CASE NO. CV08-01765 |
| Plaintiff, ) | |
| ) | OPINION AND ORDER ON |
| v. ) | DEFENDANTS' MOTION |
| ) | TO DISMISS AND PLAINTIFF'S |
| GARY D. BABBITT, an individual; D. JOHN ) | MOTION TO AMEND |
| ASHBY, an individual; PATRICK V. ) | COMPLAINT |
| COLLINS, an individual; RICHARD A ) | |
| RILEY, an individual; HAWLEY TROXELL ) | |
| ENNIS & HAWLEY, LLP an Idaho limited ) | |
| liability partnership; JANE DOES I-X, ) | |
| unknown individuals; ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the Court on Defendants' Motion to Dismiss and Plaintiff's Motion to Amend Complaint. A hearing on the Motion to Dismiss was held on October 16, 2008 and a hearing on Plaintiff's Motion to Amend Complaint was held on December 4, 2008. Plaintiff Reed Taylor was represented by attorney Michael S. Bissell. Defendants Babbitt, Ashby, Collins, Riley and the law firm of Hawley Troxell Ennis & Hawley were represented by attorney James D. LaRue. The Court, having read the motion and briefs of the parties, having considered

*Taylor v. Babbitt, et al.*
Opinion & Order on Motion to Dismiss

1

468

Exhibit - M

the record in the matter, having heard oral arguments of counsel and being fully advised in the matter, hereby renders its decision.

## FACTUAL AND PROCEDURAL BACKGROUND

The above-entitled matter is rooted in the underlying case of *Taylor v. AIA et al.*, Nez Perce County Case No. CV07-00208. The issues in the underlying case are complex and its procedural history lengthy, though the matter has yet to go to trial or be fully adjudicated. Reed Taylor's complaint in the underlying case, amended five times, asserts eleven claims including one for default of a $6 million promissory note issued to Reed Taylor by the corporate defendants as part of a buy-out or retirement package. In order to understand the claims being asserted in the instant matter, certain events in the underlying case must be reviewed.

On January 29, 2007, Reed Taylor filed suit against AIA Services Corporation, AIA Insurance, Inc., John Taylor, Connie Taylor, Bryan Freeman and JoLee Duclos. AIA Insurance, Inc. is a business entity under the umbrella of AIA Services Corporation. At the time of the filing of the lawsuit, John Taylor was the CEO of the corporations and a board member along with Bryan Freeman and JoLee Duclos.[1] Connie Taylor, the former wife of John Taylor, held a community property interest in the corporations. Following the filing of the lawsuit, attorney Michael McNichols was retained to represent AIA Services, AIA Insurance and John Taylor; attorney David Gittens was retained to represent Bryan Freeman and JoLee Duclos; attorney Jon ·Hally was retained to represent Connie Taylor.

On February 27, 2007, upon motion by the Defendants, the Court granted a temporary restraining order against Reed Taylor after he attempted to exercise management authority over

---

[1] Bryan Freeman and JoLee Duclos resigned as board members shortly after the lawsuit was filed and two new board members were appointed to replace them.

*Taylor v. Babbitt, et al.*
Opinion & Order on Motion to Dismiss

2

469

Exhibit - M

the corporate Defendants. A hearing date was then set on the Defendants' accompanying motion for a preliminary injunction. On March 8, 2007, as a result of actions taken by Reed Taylor before and immediately following the filing of his lawsuit, the Court entered a preliminary injunction prohibiting Reed Taylor from acting or attempting to act as manager and/or a board member of AIA Insurance Inc and/or from harassing and/or interfering with the management of AIA Insurance, Inc. and AIA Services Corporation.[2] The Court's Order remains in effect.

On March 28, 2007, attorney McNichols filed a motion to withdraw as counsel for AIA Services and AIA Insurance. Reed Taylor did not object and, at hearing on April 12, 2007, the Court granted the motion to withdraw. On May 7, 2007, a notice of appearance on behalf of AIA Services and AIA Insurance was filed by attorneys Gary Babbitt and John Ashby of the law firm Hawley, Troxell Ennis & Hawley, LLP. The firm continues to represent the corporations.

Several months into the underlying litigation, Reed Taylor amended his complaint to name as additional defendants CropUSA Insurance Agency, Inc. and others. CropUSA, a corporation started by John Taylor who serves as its CEO and on its board or directors, is represented by attorney Babbitt and by attorney James J. Gatziolis with the law firm of Quarles & Brady LLP located in Chicago, Illinois. Attorney Gatziolis has obtained limited admission in Idaho in order to represent CropUSA and has associated for that purpose with the law firm of Hawley Troxell Ennis & Hawley.

The last matter in the underlying case that is of relevance to the instant case is a ruling by the Court on motion for partial summary judgment filed by Reed Taylor. After significant briefing and oral arguments on the motion, the Court found the corporate Defendants were in default on a $6 million promissory note issued to Reed Taylor by the corporations. However, the

---

[2] March 8, 2008 Opinion and Order on Defendants'.Motion for Preliminary Injunction at page 6.

Exhibit - M

stated. *Rohr v. Rohr*, 128 Idaho 137, 141, 911 P.2d 133, 137 (1996). In the instant matter, the arguments made by the parties incorporated events and actions that have occurred in the underlying case of *Taylor v. AIA*, et al. Therefore, in making its analysis in the instant matter and pursuant to I.R.E. 201, the Court will take judicial notice of the underlying case *in toto*.

<u>ANALYSIS</u>

(A)  <u>DEFENDANTS' MOTION TO DISMISS</u>

The issues raised in the instant matter are less daunting and complex than the lengthy briefs and pleadings would make them appear at first blush.[3]  As stated by Reed Taylor in his opposition brief, the gravamen of his Complaint is that Defendants aided and abetted John Taylor and others in committing torts against Reed Taylor and acted to deprive Reed Taylor of money and property to which he is entitled.[4]

Plaintiff's core contention is that Defendants are acting in violation of Idaho's Professional Rules of Conduct by representing all of the corporate defendants in the underlying case and by entering into a joint defense agreement with the other named defendants. Plaintiff argues that by their actions, Defendants have aided and abetted John Taylor and others in the commission of tortious acts that have resulted in significant financial damage to Reed Taylor.

The Defendants in the instant case were retained to represent AIA Insurance, AIA Services and CropUSA after previous counsel for the AIA corporations had obtained a preliminary injunction from the Court that ordered the operations of the corporations to remain unchanged until the claims asserted by Reed Taylor have been adjudicated. The injunction was

---

[3] Plaintiff's Complaint is twenty-three pages in length. Defendants' brief in support of the motion to dismiss is thirty-six pages in length. Plaintiff's brief in opposition is fifty-seven pages in length.
[4] Plaintiff's Response to Defendants' Motion to Dismiss, at page 18.

*Taylor v. Babbitt, et al.*
Opinion & Order on Motion to Dismiss

5

472

Exhibit - M

sought after Reed Taylor self-declared the promissory note in default, self-declared himself the sole shareholder of the corporations and then attempted to take over physical and operational control of the corporations, all without the benefit of a judicial finding on the issues.

The Court has reviewed *in camera* (a) written correspondence to the defendants in the underlying matter from the law firm of Hawley Troxell Ennis and Hawley, (b) the written representation agreements entered into by the codefendants who are represented by the law firm, and (c) the written joint defense agreements entered into by the defendants in the underlying case. After reviewing the documents and the applicable Idaho Rules of Professional Conduct, the Court is persuaded the Defendant attorneys and law firm are well versed in the rules and have met the criteria necessary to represent clients with potential conflicts of interest. The various documents are well-drafted, effectively address the concerns and requirements of the professional rules of conduct and protect and preserve any potential claims that may arise between the clients.

Of particular concern to the Plaintiff is the joint defense agreement between the defendants in the underlying case. The purpose behind joint defense agreements is to allow defendants in the same litigation to communicate and share documents without the communications and/or documents becoming subject to discovery where those communications and/or documents are otherwise non-discoverable or fall within the attorney-client privilege. In the underlying case, many of Reed Taylor's claims challenge interests that the corporations and the individual board members have in common and, therefore, require a common defense. It is only reasonable that a degree of cooperation must take place between counsel for the corporations and counsel for the individual board members, as the corporation is incapable of communicating with its counsel except through those individuals who run the corporations.

Exhibit - M

Contrary to the position asserted by Plaintiff, entering into a joint defense agreement does not prohibit the codefendants from asserting claims against each other if such claims are warranted. Rather, it provides the parties certain protections in regard to their communications with each other on those areas of common defense and common interest. The joint defense privilege, or common interest rule, is merely an extension of the attorney-client privilege in that it protects communications between the parties when they are part of an on-going and joint effort to set up a common defense strategy in connection with actual or prospective litigation. *Intex Recreation Corp. v. Team Worldwide Corp.*, 471 F.Supp.2d 11 (D.D.C.2007). The joint defense privilege applies not only to communications but also to documents protected by the work product doctrine. *Id.* The circumstances in the instant matter require a degree of cooperation between the defendants in the underlying case and, therefore, the Court finds the joint defense agreements reasonable and within the standards allowed by Idaho's Professional Rules of Conduct.

Having put to rest the questions of joint representation and joint defense agreements, the Court's analysis moves to the Defendants assertion that Plaintiff's claims in the instant matter should be dismissed as a matter of law based on the theory of litigation privilege, a doctrine that has yet to be addressed by Idaho's appellate courts. Nevertheless, numerous other jurisdictions have addressed the doctrine at length, providing the Court with direction as to the applicability of the privilege.

The courts in West Virginia have addressed the litigation privilege on a number of occasions. In *Clark v. Druckman*, 624 S.E.2d 864, 218 W.Va. 427 (W.Va.2005), the plaintiff, a physician and former defendant in a medical malpractice suit, asserted claims in negligence against counsel for the plaintiff in the malpractice lawsuit. The *Clark* Court, looking first at the

*Taylor v. Babbitt, et al.*
Opinion & Order on Motion to Dismiss

474

Exhibit - M

duties of an attorney, found an inflexible requirement that attorneys diligently, faithfully and legitimately perform every act necessary to protect, conserve and advance the interests of their clients. *Clark v. Druckman*, 624 S.E.2d at 868. The Court then noted that its research revealed no case law that would support Clark's assertion that an attorney owes a duty to an opposing party, such that breach of the duty would subject an attorney to liability. *Id.* at 869. The Court stated, "This Court can find no justification for imposing a duty of care in favor of an opposing party upon counsel. Imposition of such a duty can only work to the detriment of counsel's own client and would adversely impact counsel's duty of zealous advocacy for his or her own client and would create an impossible and unjustified conflict of interest." *Id.*

Court's that have had the opportunity to address the litigation privilege recognize the adversarial system would be turned on its head if parties to a lawsuit are allowed to bring claims in tort and/or legal malpractice against opposing counsel for conduct done within the scope of litigation. While attorneys must not knowingly counsel or assist a client in committing a crime or fraud[5], Idaho's Rules of Professional Conduct require an attorney to pursue matters on behalf of a client despite opposition, obstruction or personal inconvenience to the attorney and require an attorney to take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. I.R.P.C., Rule 1.3[1]

The doctrine of litigation privilege appears intended to create a safety zone for attorneys so that they may zealously advocate for their client without fear of retribution. The Supreme Court of Appeals of West Virginia aptly described the scope and purpose of the litigation privilege in *Clark v. Druckman*, 624 S.E.2d 864, 218 W.Va. 427 (2005).

> In her concurring opinion in *Barefield v. DPIC Companies, Inc.*, 215 W.Va. 544, 600 S.E.2d 256 (2004), Justice Davis discussed the policies underlying the

---

[5] I.R.P.C., Rule 1.2[10]

*Taylor v. Babbitt, et al.*
Opinion & Order on Motion to Dismiss    8
475

Exhibit - M

litigation privilege. Therein she stated:

> [t]he public policies associated with the litigation privilege include: (1) promoting the candid, objective and undistorted disclosure of evidence; (2) placing the burden of testing the evidence upon the litigants during trial; (3) avoiding the chilling effect resulting from the threat of subsequent litigation; (4) reinforcing the finality of judgments; (5) limiting collateral attacks upon judgments; (6) promoting zealous advocacy; (7) discouraging abusive litigation practices; and (8) encouraging settlement. *Matsuura v. E.I. du Pont de Nemours & Co.*, 102 Hawai'i 149, 73 P.3d 687, 693 (2003).

*Barefield,* 215 W.Va. at 560, 600 S.E.2d at 272 (Davis, J., concurring). In light of these policies, we see no reason to distinguish between *communications* made during the litigation process and *conduct* occurring during the litigation process. As recognized by the Florida Supreme Court:

> absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding. The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding. Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.

*Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., v. United States Fire Insurance Company,* 639 So.2d 606, 608 (Fla.1994). *See also Jackson v. BellSouth Telecommunications,* 372 F.3d 1250, 1274 (11th Cir.2004) (quoting *Levin* ).

In *Collins,* we recognized that absolute privileges, such as the litigation privilege, should only be permitted in limited circumstances. *Collins,* 211 W.Va. at 461, 566 S.E.2d at 598. Thus, we do not believe that a litigation privilege should apply to bar liability of an attorney in *all* circumstances. In *Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver, N.A.,* 892 P.2d. 230, 235 (Colo.1995), the Colorado Supreme court noted that "an attorney is not liable to a non-client absent a finding of fraud or malicious conduct by the attorney." *See also Baglini v. Lauletta,* 338 N.J.Super. 282, 768 A.2d 825, 833-34 (2001) ("The one tort excepted from the reach of the litigation privilege is malicious prosecution, or malicious use of process."). We believe such exceptions to an absolute litigation privilege arising from conduct occurring during the litigation process are reasonable accommodations which preserve an attorney's duty of zealous advocacy while providing a deterrent to intentional conduct which is unrelated to

Exhibit - M

legitimate litigation tactics and which harms an opposing party. As recently noted by a California court:

> [a] fraud claim against a lawyer is no different from a fraud claim against anyone else. If an attorney commits actual fraud in his dealings with a third party, the fact he did so in the capacity of attorney for a client does not relieve him of liability. While an attorney's professional duty of care extends only to his own client and intended beneficiaries of his legal work, the limitations on liability for negligence do not apply to liability for fraud.

*Vega v. Jones, Day, Reavis & Pogue,* 121 Cal.App.4th 282, 291, 17 Cal.Rptr.3d 26, 31-2 (Cal.Ct.App.2004)(internal citations and quotations omitted).

In order "[t]o maintain an action for malicious prosecution it is essential to prove: (1) That the prosecution was malicious; (2) that it was without reasonable or probable cause; and (3) that it terminated favorably to plaintiff." Syl. Pt. 1, *Lyons v. Davy-Pocahontas Coal Co.,* 75 W.Va. 739, 84 S.E. 744 (1915). The term malicious is defined as "[s]ubstantially certain to cause injury" and "without just cause or excuse." Black's Law Dictionary 977 (8th Ed.2004). This definition implies an improper or evil intent or motive or the intent to do harm. Where an attorney files suit without reasonable or probable cause with the intent to harm a defendant, we do not believe the litigation privilege should insulate him or her from liability for malicious prosecution.

As noted above, we can find no reasonable justification for distinguishing conduct from communications for the purposes of the litigation privilege. However, we also recognize the need for limited exceptions from application of the absolute litigation privilege for certain intentional actions. Accordingly, we now hold that the litigation privilege is generally applicable to bar a civil litigant's claim for civil damages against an opposing party's attorney if the alleged act of the attorney occurs in the course of the attorney's representation of an opposing party and is conduct related to the civil action.

*Clark v. Druckman,* 624 S.E.2d at 870-871.

In the instant matter, the conduct and actions of the Defendants that form the basis of Plaintiff's claims are all conduct and actions within the scope of the underlying litigation. While Plaintiff correctly notes that there are potential conflicts of interest that exist between the clients of the Defendants, the Court is sufficiently persuaded, based on its review of the *in camera* documents, that the Defendants' clients have knowingly waived any conflicts and are fully informed that, as the litigation progresses, the common interests and defenses of the underlying

*Taylor v. Babbitt, et al.*
Opinion & Order on Motion to Dismiss

407

Exhibit - M

defendants may diverge and the parties may find themselves adversaries. While the underlying case is complex in that it involves numerous claims asserted against multiple defendants and involves inter-corporate transactions approved by directors that cross over from corporation to corporation, the circumstances are not so unique that the Court is unable to look to the general analysis of courts with similar, albeit distinguishable, facts.

A case with many similarities to the instant case is helpful to the analysis the Court must make. In *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398 (Tex.App.-Houston [1st Dist.] 2005), Robert Alpert filed suit against the law firm of Crain, Caton & James after the firm had represented Mark Riley, an attorney who found himself being sued by Alpert after their attorney-client relationship had soured. Alpert's suit against Crain Caton law firm asserted the firm had conspired with Riley to defraud Alpert, had aided and abetted Riley to defraud Alpert, and had tortiously interfered with Riley's fiduciary duty to Alpert. The law firm moved to dismiss the lawsuit based on Alpert's failure to state a recognizable claim. The lower court granted the motion and Alpert appealed. The trial court's dismissal of the lawsuit was affirmed by the Texas Court of Appeals. In reaching its decision, the Texas Court made the following statements:

> Perhaps as an offshoot of its privity jurisprudence, Texas case law has discouraged lawsuits against an opposing counsel if the lawsuit is based on the fact that counsel represented an opposing party in a judicial proceeding. *Bradt v. Sebek*, 14 S.W.3d 756, 766 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). An attorney has a duty to zealously represent his clients within the bounds of the law. *Bradt v. West*, 892 S.W.2d 56, 71-72 (Tex.App.-Houston [1st Dist.] 1994, writ denied). In fulfilling this duty, an attorney has the right to interpose defenses and pursue legal rights that he deems necessary and proper, without being subject to liability or damages. *Id.* If an attorney could be held liable to an opposing party for statements made or actions taken in the course of representing his client, he would be forced constantly to balance his own potential exposure against his client's best interest. *See id.* Such a conflict hampers the resolution of disputes through the court system and the attainment of justice. Thus, to promote zealous representation, courts have held that an attorney is "qualifiedly immune" from civil liability, with respect to non-clients, for actions taken in connection with

representing a client in litigation. *See, e.g., Butler v. Lilly,* 533 S.W.2d 130, 131-34 (Tex.App.-Houston [1st Dist.] 1976, writ dism'd).

This qualified immunity generally applies even if conduct is wrongful in the context of the underlying lawsuit. *Renfroe v. Jones & Assocs.,* 947 S.W.2d 285, 288 (Tex.App.-Fort Worth 1997, writ denied) ("Under Texas law, attorneys cannot be held liable for wrongful litigation conduct."). For example, a third party has no independent right of recovery against an attorney for filing motions in a lawsuit, even if frivolous or without merit, although such conduct is sanctionable or contemptible as enforced by the statutory or inherent powers of the court. *West,* 892 S.W.2d at 72. Courts have refused to acknowledge an independent cause of action in such instances "because making motions is conduct an attorney engages in as part of the discharge of his duties in representing a party in a lawsuit." *Id.* (holding no cause of action existed for making motion for contempt because attorneys do not owe duty to be correct in legal arguments-"even if the ... motion for contempt had been meritless, their conduct in so moving, coming as it did in the discharge of their duties in representing a party in a lawsuit, would still not be actionable."). Thus, an attorney's conduct, even if frivolous or without merit, is not independently actionable if the conduct is part of the discharge of the lawyer's duties in representing his or her client. *Id.* at 74; *Chapman Children's Trust v. Porter & Hedges, L.L.P.,* 32 S.W.3d 429, 441 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). The immunity focuses on the type of conduct, not on whether the conduct was meritorious in the context of the underlying lawsuit. *Renfroe,* 947 S.W.2d at 288.

As the Texas Supreme Court observed in *McCamish,* a lawyer's protection from liability arising out of his representation of a client is not without limits. *See McCamish,* 991 S.W.2d at 793-94; *see also Toles v. Toles,* 113 S.W.3d 899, 912-13 (Tex.App.-Dallas 2003, no pet.). For example, a cause of action could exist against an attorney who knowingly commits a fraudulent act outside the scope of his legal representation of the client. *See Likover v. Sunflower Terrace II, Ltd.,* 696 S.W.2d 468, 472 (Tex.App.-Houston [1st Dist.] 1985, no writ). If a lawyer participates in independently fraudulent activities, his action is "foreign to the duties of an attorney." *Id.* (quoting *Poole v. Houston & T.C. Ry. Co.,* 58 Tex. 134, 137 (1882)). A lawyer thus cannot shield his own willful and premeditated fraudulent actions from liability simply on the ground that he is an agent of his client. *See id.*

*Alpert v. Crain, Caton & James, P.C.,* 178 S.W.3d at 405-406.

In the instant case, Reed Taylor's claims against the Defendants are all based on conduct and actions engaged in by the Defendants within the scope of the underlying litigation. Nevertheless, under the theory asserted by Plaintiff, a defendant's attorney may become liable to

479

Exhibit - M

a plaintiff if the plaintiff disagrees with or is offended by the litigation tactics of defense counsel or disagrees with or is offended by the decision of an opposing party to waive conflicts of interest in order for common interests to be defended in the most efficient and/or effective manner. It is this very morass that the litigation privilege seeks to prevent.

Each of Plaintiff's claims against the Defendants contends that by defending the corporations in the underlying action, by accepting payment for their representation, by arguing positions to the Court in favor of their clients and against the claims of Reed Taylor, and that by failing to agree with Reed Taylor's positions in regards to his claims, the Defendants have aided and abetted and conspired with the corporations and individual directors to interfere with the contractual rights of Reed Taylor. Yet, Plaintiff is unable to direct the Court to any conduct or action on the part of the Defendants that falls outside the scope of the Defendants' representation of their clients.

The Court appreciates the Plaintiff's right to zealously prosecute his claims in the underlying action and respects his belief that his claims are sound, that he will prevail on those claims and that the underlying defendants are simply delaying the inevitable. However, the Court also appreciates the defendants' right in the underlying action to disagree with Reed Taylor's position and to defend against his asserted claims. The Court is persuaded that the litigation privilege is a sound judicial concept that should be recognized in Idaho as it is consistent with the Idaho Rules of Professional Conduct and the firmly held established standard in Idaho that an attorney is obligated to provide his clients with zealous representation. In the instant matter, the conduct and actions of the Defendants, as alleged by Plaintiff, all fall within the scope of the Defendants' representation of their clients and, therefore, fall within the protection of the litigation privilege.

*Taylor v. Babbitt, et al.*
Opinion & Order on Motion to Dismiss                                13

Exhibit - M

The Court is further persuaded, based on its review of the various documents provided to the Court for *in camera* review, that the Defendants took all steps necessary to insure compliance with the rules of professional conduct in their representation of clients with potential conflicts of interest and in the use of a joint defense agreement. Therefore, there has been no conduct of aiding and abetting or conspiracy on the part of the Defendants in their representation of the underlying corporate defendants. Neither has there been any conversion of assets by the Defendants. Prior to the Defendants being retained in the underlying case, the Court entered a preliminary injunction ordering operational authority of AIA to remain status quo. Thus, the directors of the corporation, including John Taylor, had authority to retain the Defendants to represent the corporations. Furthermore, representations made by the Defendants to the Court in furtherance of their of their clients' defense do not constitute violations of Idaho's consumer protection laws when those representations are made within the scope of litigation. Finally, Plaintiff's claim for legal malpractice fails as a matter of law. The existence of an attorney-client relationship is a necessary element to a legal malpractice claim and Plaintiff, who specifically raises the fact that he has not been allowed to choose counsel for the underlying defendants, has no attorney-client relationship with the Defendants.[6]

(B)  PLAINTIFF'S MOTION TO AMEND COMPLAINT

"The decision whether to allow a party to amend its pleadings is left to the sound discretion of the trial court . . . ." *Wells v. United States Insurance Co.*, 119 Idaho 160, 166, 804 P.2d 333 (Ct.App.1991). It is not an abuse of discretion to deny a motion to amend where the

---

[6] This issue was addressed fully in the Opinion & Order on Defendants Motion to Dismiss in the companion case of *Taylor v. McNichols*, et al., Nez Perce County Case No. CV08-01763. See also *Harrigfeld v. Hancock*, 140 Idaho 134, 90 P.3d 884 (2004) and again in *Estate of Becker v. Callahan*, 140 Idaho 522, 96 P.3d 623 (2004).

*Taylor v. Babbitt, et al.*
Opinion & Order on Motion to Dismiss

14
481

Exhibit - M

record contains no allegation that, if proven, would entitle a plaintiff to the relief claimed. *Id.* at 167.

The Court, after hearing oral arguments of counsel and after reviewing Plaintiff's proposed amended complaint, finds it would be a futile act to grant Plaintiff's motion to amend as the proposed amended complaint would not withstand a motion to dismiss. In his proposed amended complaint, Plaintiff asserts the same claims as set forth in his original Complaint and seeks to add derivative claims. Plaintiff's amended direct claims fail as a matter of law for the same reasons as addressed by the Court above, despite Plaintiff's bare allegation that the conduct and actions of the Defendants exceeded the scope of their representation.

Plaintiff's attempt to bring derivative claims on behalf of AIA Insurance and AIA Services fail as a matter of law. Idaho Code § 30-1-741 clearly and unambiguously provides standing to bring derivative proceedings only to those who are shareholders at the time of the act or omission complained of and only to those shareholders who fairly and adequately represent the interests of the corporation. As noted by the ABA Official Comment at the end of I.C. § 30-1-741, while some state's have eliminated the "contemporaneous" ownership rule, Idaho's legislature chose to retain the requirement, as is evidenced by the language in the statute. Plaintiff contends that, because other states have allowed creditors and stock pledges to bring derivative claims, standing should not be limited to shareholders. The Court is not persuaded. Idaho Code § 30-1-741 is clear and unambiguous, making it clear Idaho's legislature has chosen to limit derivative claims to shareholders only.

Exhibit - M

## ORDER

Plaintiff's Motion to Amend Complaint is hereby DENIED.

Defendants' Motion to Dismiss is hereby GRANTED.

Dated this __23__ day of December 2008.

JEFF M. BRUDIE, District Judge

*Taylor v. Babbitt, et al.*
Opinion & Order on Motion to Dismiss

483

Exhibit - M

## CERTIFICATE OF MAILING

I hereby certify that a true copy of the foregoing OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION TO AMEND COMPLAINT was

__✓__ FAXED

_____ mailed, postage prepaid, by the undersigned at Lewiston, Idaho, this _73_ day of December 2008, to:

Michael Bissell
7 So Howard St., Ste. 416
Spokane WA 99201

James LaRue
PO Box 1539
Boise ID 83701-1539

PATTY O. WEEKS, CLERK

By: _____
         Deputy

OPINION AND ORDER- 16

484

Exhibit - M