RECEIVED

MAY 1 3 2010

*Campbell, Bissell & Kirby*

NO._____ FILED
A.M._____ P.M._____

MAY 1 0 2010

J. DAVID NAVARRO, Clerk
By K. JOHNSON
DEPUTY

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF

THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

REED J. TAYLOR, an individual;

    Plaintiff,

vs.

RICHARD A. RILEY, an individual;
HAWLEY TROXELL ENNIS &
HAWLEY LLP, an Idaho limited liability
partnership; ROBERT M. TURNBOW,
an individual; and EBERLE, BERLIN,
KADING, TURNBOW & McKLVEEN,
CHARTERED, an Idaho corporation,

    Defendants.

Case No. CV-OC-2009-18868

MEMORANDUM DECISION AND
ORDER RE: DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

## BACKGROUND

Except as noted otherwise, the material facts are not in dispute in so far as this motion is concerned. The history between some of the parties is extensive, going back to 1995. The following is but a brief summary for the purpose of outlining the basis of this decision.

Reed J. Taylor ("Taylor") sued Richard A. Riley ("Riley"); Hawley Troxell, Ennis & Hawley LLP ("Hawley Troxell"); Robert M. Turnbow ("Turnbow"); and Eberle, Berlin, Kading, Turnbow & McKlveen, Chartered ("Eberle Berlin"). Taylor is the former majority stock holder of AIA Services Corporation. Riley is an attorney. He is currently a partner in the Hawley Troxell firm. Before joining Hawley Troxell, Riley was a member in the Eberle Berlin firm.

**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – PAGE 1**

Exhibit - O

Robert Turnbow is an attorney and member of Eberle Berlin. In 1995, when Riley was still a member of Eberle Berlin, Riley and Turnbow authored an opinion letter that gave rise to the current litigation.

Taylor alleges that in 1995, he was solicited by other share holders of AIA to have his stock redeemed so they could take the company public. Negotiations ensued in which AIA was represented by Eberle Berlin and Taylor was represented by separate counsel. The parties ultimately reached an agreement for retiring Taylor's stock. The transaction was reduced to writing in a Stock Redemption Agreement and related documents. Under the terms of the agreement Taylor surrendered all his stock in AIA in exchange for cash, a $6,000,000 promissory note ("the Note"), debt forgiveness, and title to certain airplanes. Included in the documentation was an opinion letter from Eberle Berlin, over the signatures of Riley and Turnbow, addressed to Taylor. The letter opines, in essence, that the transaction was legal and the documents constituted a valid, binding obligation of AIA. The transaction closed in August 1995.

AIA defaulted almost immediately. Taylor and AIA entered into negotiations which resulted in a Stock Redemption Restructure Agreement dated July 1, 1996. By its terms the restructure agreement superseded the Stock Redemption Agreement. Under the restructure agreement the $6,000,000 note continued in force. The Note matured on August 1, 2005. When the Note was not paid, Taylor filed suit in Nez Perce County in January 2007 against AIA, its subsidiary AIA Insurance, and several officers, directors, and employees of AIA, together with their spouses. This litigation is referred to in this opinion as the "AIA lawsuit."

Meanwhile, Riley left Eberle Berlin and joined Hawley Troxell in 1999. Hawley Troxell defended the AIA entities in the AIA lawsuit. Michael McNichols and his firm, Clements Brown

**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – PAGE 2**

Exhibit - O

& McNichols represented the other defendants. Taylor objected strenuously to Hawley Troxell's representation of the AIA defendants. In 2008 Taylor filed separate actions in Nez Perce County against Hawley Troxell, Clements Brown and McNichols, and the attorneys with those firms that participated in the AIA litigation. Riley was one of the named defendants in the suit against Hawley Troxell. These suits made claims against the lawyers for actions they took in the AIA lawsuit.

Ultimately, all three Nez Perce County suits were dismissed. Taylor appealed the dismissal of his cases against AIA and Hawley Troxell. Those appeals are currently pending before the Idaho Supreme Court. The status of the Clements Brown and McNichols suit is not clear from the record.

The AIA suit was dismissed by Judge Brudie in the Nez Perce County case on the grounds that the 1995 Stock Redemption Agreement was illegal under Idaho law as the same pertained to corporations in 1995. Specifically, it appeared from the record that the corporation had no retained earnings constituting earned surplus from which a redemption could be made. Having found the transaction illegal, Judge Brudie held that neither party was entitled to enforce the agreement and the court would simply leave the parties where it found them. The issue of the legality of the stock redemption was first raised by the defendants in the AIA litigation in April 2008. Judge Brudie actually ruled the agreements were illegal on June 17, 2009.

Other facts, to the extent they are undisputed and necessary for this opinion are contained in the body of the opinion below.

MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT – PAGE 3

Exhibit - O

ISSUES

By their motions for summary judgment, the defendants raised a number of issues. Some of the issues pertained to all defendants, other issues to only some defendants. After a somewhat lengthy and rambling recitation of the facts as he sees them, Taylor's complaint sets forth five legal claims labeled as "causes of action." They are: (1) negligent misrepresentation; (2) malpractice; (3) violations of the Idaho Consumer Protection Act; (4) breach of fiduciary duties; and (5) fraud/constructive fraud. This Court dismissed the negligent misrepresentation claims and the Consumer Protection Act claims in a bench ruling following oral argument. The remaining claims will now be discussed. Defendants have raised affirmative defenses of collateral estoppel, statute of limitations, and, essentially, failure to state a legal claim.

DISCUSSION

1. Malpractice

a. Hawley Troxell.    The gist of Taylor's malpractice claim, albeit somewhat over-simplified, is that Riley and Turnbow were negligent in performing legal work related to the stock redemption transaction. His complaints relate specifically to the opinion letter, but also include references to other legal work performed. He alleges this negligence harmed both AIA and him. Hawley Troxell had no involvement in the 1995 and 1996 transactions. Taylor does not clearly articulate his rationale for claiming Hawley Troxell committed malpractice other than the broad statement early in his complaint that "Hawley Troxell is vicariously liable for certain acts and/or omissions of Defendant Riley." To the extent Taylor seeks to hold Hawley Troxell liable for Riley's conduct in participation in the 1995 and 1996 transactions, there is no legal

MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT – PAGE 4

Exhibit - O

basis to do so. Riley's status as a partner in Hawley Troxell does not render Hawley Troxell liable for conduct occurring before he joined the firm.

b. *Res Judicata*        At oral argument Taylor disavowed making claims against Hawley Troxell that were made in the earlier Hawley Troxell litigation. However, many paragraphs in the Complaint allege facts surrounding the AIA litigation and Taylor's claim that the conduct gives rise to liability. The operative facts giving rise to the claims made in the Nez Perce County suit against Hawley Troxell and Riley concerned Hawley Troxell's representation of AIA in the AIA litigation. There is certainly an overlap in the parties and some of the same events figure in both suits. As best as this Court can determine, Taylor is claiming that Riley, and therefore Hawley Troxell, breached a duty to him by defending AIA in the AIA lawsuit and particularly in supporting the position that the redemption agreement was illegal. Riley and Hawley Troxell maintain these claims are barred by *res judicata*.

The term *res judicata* includes two components. These are claim preclusion and issue preclusion. Issue preclusion is more properly analyzed under the doctrine of collateral estoppel. Claim preclusion, sometimes referred to as "true" *res judicata*, prevents a party from litigating any issue previously litigated and any issue that could have been raised in the prior litigation. *Hindmarsh v. Mock*, 138 Idaho 92, 57 P.3d 803 (2002). *See also, Rodriguez v. Dept. of Correction*, 136 Idaho 90, 29 P.3d 401 (2001).

In his earlier complaint against Hawley Troxell, Taylor alleged in part "defendants were responsible for issuing opinion letters relating to the transaction, which include various applicable representations and warranties. Defendants are now asserting arguments contrary to the representations made in the opinion letter drafted by defendants by and through defendant

**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – PAGE 5**

Exhibit - O

Richard A. Riley." (Complaint, *Taylor v. Babbit*, Nez Perce County Case No. CV08-01765.) In his motion to amend the complaint in that action Taylor alleged "Defendant Riley owes Reed Taylor special duties by and through an opinion letter." Riley breached his duties when he asserted that the transaction was illegal." (¶ 99, Proposed First Amended Complaint in *Taylor v. Babbit*, Nez Perce County Case No. CV08-01765.

> In the present case Taylor alleges, among other things,

> Defendants Riley and Hawley Troxell owed duties (including duties of loyalty) to Reed Taylor not to argue against or contradict the terms of the Opinion Letter. Defendant Riley's duties owed to Reed Taylor are also acknowledged by him after the opinion letter was issued and delivered to Reed Taylor. Defendant Riley owed a duty to Reed Taylor to either force Hawley Troxell to withdraw from representing AIA Services or he should have left the firm of Hawley Troxell. Defendant Riley chose neither and instead undertook the unconscionable, malicious, wanton, vexatious and intentional conduct described in this complaint and participated in the litigation by submitting an affidavit and by reviewing and monitoring the litigation. In addition Defendant Riley has profited from Defendant Hawley Troxell's purported representation in the litigation by and through him being a partner at Hawley Troxell, and their receipt of hundreds of thousands of dollars in attorney fees and costs litigating the validity and legality of the redemption agreement and related documents, which such conduct is again unconscionable, malicious, wanton, and vexatious.

> (Complaint ¶ 28.)

Judge Brudie dismissed the original complaint for failure to state a claim upon which relief could be granted. He also declined to allow the proposed amended complaint on the same grounds. That decision is now on appeal. A comparison of the Complaint in this case and the claims made, or that could have been made in the earlier litigation, show remarkable similarity as to the claimed breach of duty by Riley and Hawley Troxell. The present action, so far as it concerns Hawley Troxell, is no more than an effort to have this Court second guess Judge Brudie. The Court declines to do so. To the extent Plaintiff seeks to make a claim against

MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – PAGE 6

Exhibit - O

Hawley Troxell for malpractice based on the allegations in the complaint, the same is barred by *res judicata.*

Taylor has appealed Judge Brudie's dismissal of his earlier action against Hawley Troxell. He asserts this prevents it from having preclusive effect. Although this issue has not been directly decided in Idaho, the Idaho Court of Appeals in *Gilbert v. State*, 119 Idaho 684, 809 P.2d 1163 (Ct. App. 1991) stated in *dicta* that the RESTATEMENT (SECOND) of Judgments should control the issue. The RESTATEMENT at § 13 takes the position that dependency of an appeal does not deprive a judgment of *res judicata* affect.

This comports with common sense. Ordinarily the determination of the timing of the adjudication for *res judicata* purposes is the time at which the judgment is rendered, not the time when the case is filed. If these claims against Hawley Troxell are allowed to go forward in this action and the claims are upheld on appeal. There are two possible resolutions. Allowing this case to go forward after the appeal would render any decision of our appellate courts ineffective between these parties or it would result in these claims being dismissed at a later time as barred by *res judicata* based upon affirmance of the appeal. Conversely, a reversal on appeal of Judge Brudie's decision would result in two cases pending at the same time over the same issues leading to the possibility of inconsistent outcomes. None of these outcomes is preferred.

On the other hand, if the present claim is barred and Judge Brudie is reversed on appeal, Taylor will be able to pursue these claims in that case. If Judge Brudie is affirmed, the matter is concluded. The fact that Taylor has appealed Judge Brudie's dismissal of his earlier action against Hawley Troxell does not prevent it from having preclusive effect.

**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – PAGE 7**

Exhibit - O

c. Malpractice As To Remaining Defendants.    As stated above, the gist of Taylor's malpractice claim is that Riley and Turnbow were negligent in performing legal work related to the stock redemption transaction. The opinion letter authored by Riley and Turnbow as part of that work was addressed to Taylor, specifically provided that it was for Taylor's benefit, and acknowledged he would rely on it. It is on this basis he claims an attorney client relationship with Riley and Turnbow. Eberle Berlin is named as being vicariously liable for the conduct of its members. Riley and Turnbow argue strenuously that there was no attorney client relationship and therefore no duty was owed to Taylor. Defendants are partly right. There is no attorney client relationship. That does not necessarily mean there was no duty.

A lawyer is generally not liable in negligence to a person who is not the lawyer's client. *Taylor vs. Maile*, 142 Idaho 253, 127 P.3d 156 (2005). There are, however, exceptions to this rule. *See Harrigfeld v. Hancock*, 140 Idaho 134, 90 P.3d 884 (2004) (holding that where, as a result of the attorney's negligence, and the estate is not distributed in accordance with the testator's intent, the intended beneficiaries may maintain an action against the attorney). Another narrow, but widely recognized, exception to this general rule is the case of opinion letters drafted and delivered to a non-client with the expectation that the non-client will rely on it. *See, e.g. Prudential Ins. Co. of America v. Dewey, Ballantine, Bushby, Palmer and Wood*, 80 N.Y. 2d 377, 605 N.E. 2d 318 (1992). Although this precise issue has not been addressed by the Idaho courts, the holding of cases such as *Prudential, supra*, are consistent with the reasoning of our Supreme Court in *Harrigfeld*.

Riley and Turnbow had a duty to Taylor, a non-client, to draft the opinion letter in a no-negligent fashion. That is, to exercise the ordinary care, skill and prudence of a lawyer under the circumstances. The Court is making no finding that the lawyers were in fact negligent. That is a matter of fact which cannot be resolved on this record.

MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – PAGE 8

Exhibit - O

d. <u>Derivative Claims</u>.        Taylor asserts his malpractice claims as both personal claims and as derivative claims of the corporation he makes on his own behalf.  He seeks to hold the attorneys liable for not just the opinion letter, but the alleged errors they committed in drafting the documents and advising the corporation in the course of the redemption transaction.  Plaintiff further claims that he was the only shareholder suffering damages as a result of this malpractice and he should, therefore, be entitled to maintain the action directly.

A derivative claim (or suit), is an action brought by a shareholder against a third party to vindicate a wrong done to the corporation where the persons in control of the corporation fail or refuse to have the corporation bring the action.  If successful, the derivative action inures to the benefit of the corporation, not the shareholder.  Before filing a derivative action in Idaho, a shareholder must first make demand on the corporation to take the proper action as required by I.C. § 30-1-742.  Failure to make demand is fatal to a derivative action.  *Mannos v. Moss*, 143 Idaho 927, 155 P.3d 1166 (2007); *McCann v. McCann*, 138 Idaho 228, 61 P.3d 585 (2002).  It is undisputed that Taylor made no written demand on the corporation more than 90 days before commencing this suit.

Plaintiff attempts to distinguish his derivative claims here by asserting the claims are corporate claims he may pursue on his own behalf for malpractice committed by the corporate attorneys in representing the corporation.  For this proposition he cites *Steelman v. Mallory*, 110 Idaho 510, 513, 716 P.2d 1282, 1285 (1986).  Plaintiff misconstrues the holding in *Steelman*.  That case involved an action by a shareholder against the other shareholder/directors of a closely

**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – PAGE 9**

Exhibit - O

held corporation for breaching their fiduciary duties to him as a minority shareholder. It was specifically not a derivative claim:

> Since Mallory and Jensen, as directors in this small closely held corporation, had a fiduciary duty to Steelman, as a minority shareholder, we cannot agree with appellants' contention that this case should have been dismissed because it is a "direct action" rather than a shareholder's derivative suit.

*Steelman,* 110 Idaho at 513, 716 P.2d at 1285.

The allegations here are not that the directors of the company breached their duties to minority shareholders, but that the corporate attorneys committed malpractice in their work on behalf of the corporation. Assume, for argument, that the attorneys in fact committed malpractice causing injury to the corporation. The damages recoverable inure to the corporation and, indirectly, to all its shareholders, not just the majority shareholder. The claims made here are traditional derivative claims. The derivative claims fail for failure to make proper demand 90 days before suit was filed.

     e. Malpractice Statute of Limitations.     All of the defendants in this case argue the statute of limitation for malpractice bars Taylor's claims. The rule of law regarding commencement of the statute of limitations is well settled. For professional malpractice claims, the statute is two years from the negligent act; unless fraudulent concealment is involved in which case the claimant has the later of two years or one year from the discovery of the fraud. I.C. § 5-218 (4). Notwithstanding this statute, a cause of action does not arise until the occurrence of "some damage" resulting from the negligent act. This requirement of "some damage" is not the same as a discovery rule. Numerous cases have so held. See, e.g. *Elliott v. Parsons,* 128 Idaho 723, 918 P.2d 592 (1996); *Chicoine v. Bignall,* 122 Idaho 482, 835 P.2d 1293 (1992); *Bonz v. Sudweeks,* 119 Idaho 539, 808 P.2d 876 (1991).

MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT – PAGE 10

Exhibit - O

In the present controversy, application of this rule is not so clear cut. Defendants argue strongly that the damage here occurred upon the issuance of the opinion letter in 1995. Conversely, plaintiff argues no damage occurred until Judge Brudie ruled in June 2009 that the contract was illegal. The Court has determined upon review of Idaho cases, that yet a different date is appropriate. See, e.g. *Elliott v. Parsons*, supra, and *Streib v. Veigel*, 109 Idaho 174, 706 P.2d 63 (1985)

In *Streib v. Veigel*, an accountant had negligently prepared income tax returns for taxpayers, claiming certain deductions that were not allowable. The taxpayers filed an action against the accountant more than two years after the last return was prepared. The accountant moved for summary judgment on the basis of I.C. § 5-219(4). The Court held that the action for professional malpractice accrued when the Internal Revenue Service assessed the taxpayers for penalties and interest. The assessment by the IRS was considered by the Court to be the date when damage to the taxpayers occurred. The taxpayers were allowed two years after that date to file their action against the accountant.

In *Elliott v. Parsons*, supra, the Court revisited *Streib*. An attorney negligently structured and drafted a transaction for the sale of the Elliott's business that resulted in the failure of the transaction to qualify for installment sales treatment, which in turn, resulted in increased liability and interest payment to the I.R.S. The Court distinguished Elliott's case from *Streib*, holding that some damage occurred when the Elliotts hired new tax lawyers in 1986 after receiving a 30 day letter from the I.R.S. The hiring of the lawyer to deal with the IRS constituted "some damage." There are numerous other cases discussing the "same damage" rule in various contexts. Many of the cases are collected in *Anderson v. Glenn*, 139 Idaho 799, 87 P.3d 286 (2003).

**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – PAGE 11**

Exhibit - O

The lesson to be learned from these cases is that "some damage" means damage for which a suit could be filed and money awarded. It is not hypothetical damage. It is not creating the circumstance from which damage may or may not occur. It means actual, measurable damage. In this case, the alleged negligent acts took place in 1995. The damage occurred in April 2008 when one of the Defendants in the AIA lawsuit raised the issue of the legality of the redemption agreement. Taylor was required to incur attorney fees to counter the attack on his right to recover under the note. At that point, he had suffered damage that could be proven in court and for which a court may enter judgment. Before that date, he had no right to file suit as he could prove no damages arising from the opinion letter. Before April 2008, any loss arising from the alleged negligence was merely hypothetical.

It should be noted that the default on the Note in 1996 does not constitute damage flowing from the opinion letter, as contended by Riley and Turnbow. Taylor was not entitled sued Riley and Turnbow in 1996 for AIA's failure to pay the note. The erroneous opinion letter did not cause the default. It was not until the AIA litigation was underway that any loss occurred to Taylor that can be attributed to the erroneous opinion letter. Since April 2008 is less than two years before the filing of this action, the claim for malpractice is not barred by the statute of limitations.

**2. Breach of Fiduciary Duties.**

The allegation pertaining to breach of fiduciary duty, as best this Court can determine from the complaint, has two components. First, the allegation is that Riley, Turnbow, and Eberle Berlin breached their fiduciary duties in the drafting of the opinion letter and generally in the drafting of corporate resolutions and other services rendered to AIA in the stock redemption

MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT – PAGE 12

Exhibit - O

transaction. Hawley Troxell is alleged to be liable because Riley's fiduciary duties to Reed Taylor are imputed to his current firm. The second component directed at Riley and Hawley Troxell specifically, is breach of fiduciary duty for taking a position in later litigation contrary to the statements made in the opinion letter.

As to Hawley Troxell, this claim is dismissed. As discussed above, there is no authority for the proposition that Hawley Troxell is vicariously liable for the conduct of one of its members before that member joined the firm.

As to the remainder of the allegations to the extent they apply to Hawley Troxell, they are barred by *res judicata*. They are barred for the same reasons set forth above regarding the malpractice.

As to the other defendants, the breach of fiduciary claims must also be dismissed. Riley and Turnbow did not represent Taylor in the stock redemption transaction. There was no attorney client relationship. Nor was there any other relationship giving rise to fiduciary duties. The only possible source of fiduciary duties owed by Riley and Turnbow to Taylor is the opinion letter. The rendering of the opinion letter does not create a fiduciary relationship between the author and the recipient in this circumstance. As pointed out above, the third party opinion letter circumstance is one of the rare exceptions to the rule that bars negligence suits against on attorney by anyone, other than by the client, for negligent legal work. In other words, the mere fact that the law allows a negligence action to be maintained against the attorney, does not mean the relationship is expanded to a fiduciary transaction in every instance. The attorney owes the recipient of the letter the same duty to act without negligence that the attorney would owe to the

MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT -- PAGE 13

Exhibit - O

client. The rendering of the opinion, in this context, does not create an on going relationship nor implicate any duties beyond negligence.

The policy underlying the rule that only a client may sue an attorney for negligence is founded on the concern that, to do otherwise would divide the loyalty of the attorney. The attorney would be faced with choosing between the best interest of the attorney's client and the best interest of third parties, something which the law does not allow. To require a duty of care owed by Riley and Turnbow to Taylor beyond the non-negligent rendering of the opinion, would place the attorneys in just such a quandary. Whether or not they properly advised AIA concerning stock holder meetings, drafting of documents, etc. may shed some light on whether or not they were negligent in drafting the opinion letter, but it does not give rise to any additional liability to Taylor.

### 3. Fraud/Constructive Fraud.

a. Hawley Troxell.        As to Hawley Troxell, there is no evidence, nor allegation, of a false statement by anyone other than Riley upon which Taylor relied. The statements by Riley were made before he became a member of the Hawley Troxell firm. As pointed out above, Hawley Troxell is not liable for his acts before he joined the firm. The fraud claim, to the extent one is made, against Hawley Troxell is dismissed. Vague allegations of a "fraudulent scheme" do not state facts with sufficient particularity to maintain the claim.

b. Other Defendants.        Taylor's complaint claiming fraud is based on statements made by Turnbow and Riley in the opinion letter. In order to sustain an action for fraud in Idaho, a plaintiff must prove a clear and convincing evidence the following nine elements:  (1) a statement of fact; (2) its falsity; (3) its materiality; (4) the speakers knowledge of

**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – PAGE 14**

Exhibit - O

its falsity; (5) the speakers intent to induce reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) the hearer's right to rely; and (9) consequent proximate injury. *Lettunich v. Key Bank Nat'l Ass'n*, 141 Idaho 362, 109 P.3d 1104 (2005). The person claiming the fraud must plead the factual circumstances with particularity.

In this case, the allegations of fraud have to do with statements made in the opinion letter offered by Turnbow and Riley. This Court concludes that certain of the statements made in the opinion letter are statements of fact. For example, whether or not all necessary actions required by the directors and shareholders to be taken had been taken is a representation of an existing fact. Some of these statements in the opinion letter are mixed statements of law and fact. For example, the statement that no consent by any person that was required to authorize the execution, etc. of the redemption agreement was needed, except those that had been obtained prior to closing, is just such a mixed statement. It requires legal analysis of whose consent is required, but it is a statement of fact as to whose consents had been obtained prior to closing.

There is evidence in the record of all nine elements sufficient to create a disputed issue of material fact. The possible exception is element No. 4, the speaker's knowledge of falsity. Because this Court has stayed discovery in this action, the fraud claim will not be dismissed for lack of proof on that element at this stage.

c. <u>Collateral Estoppel and Riley.</u>     As to the remaining defendants, the defense of collateral estoppel is unique to Riley. Riley claims the benefit of collateral estoppel through Judge Brudie's dismissal of the fraud claims in the main AIA litigation. Riley was not a defendant in that case, but was a member of the firm defending AIA against nearly identical

**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – PAGE 15**

Exhibit - O

claims of fraud arising from the opinion letter. As a member of the defense firm, he claims privity with the firm's client in the AIA lawsuit.

Judge Brudie, in the course of ruling on a motion for reconsideration of his finding the transaction illegal, declined to accept an argument that the agreement was enforceable in spite of its illegality because one of the parties had been subject to constructive fraud. In that context, Taylor apparently argued that he should be entitled to enforce the agreement because the opinion letter stated that the agreement was legally enforceable. He pointed to that as a statement of fact upon which he relied. Consequently, AIA, through its then attorneys, had committed constructive fraud in the making of the agreement. Therefore, so the argument went, Taylor was not subject to the rule that says a court will not enforce an illegal agreement. Judge Brudie stated that this conclusion contained in the opinion letter was a mere opinion of law, "albeit an incorrect one." It could not form the basis of a fraud claim. Consequently Taylor was not entitled to enforce the illegal agreement.

This statement from Judge Brudie is not a sufficient specific factual finding upon which collateral estoppel can be based. The ruling was not directed specifically at the claims made against Riley. Nor was it a finding of a specific fact. It was a legal ruling based upon one statement in the opinion letter. The Court declines to dismiss the fraud claims against Riley on the basis of collateral estoppel. Genuine issues of material fact otherwise exist with respect to the claim.

d. <u>Fraud Statute of Limitations.</u>   All Defendants also raise the statute of limitations as a complete defense to Taylor's fraud claims. The fraud alleged here, at least so far as the Court is not dismissing these claims, occurred in 1995 with the issuance of the opinion

**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – PAGE 16**

Exhibit - O

letter by Riley and Turnbow. The statute of limitations for fraud is 3 years from the commission of the fraudulent act or the discovery, by the aggrieved party, of the facts constituting the fraud or mistake. I.C. § 5-218.

The determination of the discovery of the fraud is a question of fact. "Our cases have consistently held that where discovery of a cause of action commences the statute of limitations the date of discovery is a fact question for the jury unless there is no evidence creating a question of fact." *McCoy v. Lyons*, 120 Idaho 765, 773, 820 P.2d 360, 368 (1991). While we also recognized in *Nancy Lee Mines* that "actual knowledge of the fraud" can be inferred if the aggrieved party could have discovered the fraud by reasonable diligence, we have since noted in our cases that the courts of this state should hesitate to infer knowledge of fraud. *Id.* at 773, at 368.

This Court, at Defendants' request, stayed discovery pending the decision on the summary judgment motions. The Court is not going to infer knowledge on the part of Mr. Taylor sufficient to commence the statute of limitations running before April 2008 when the issue of legality was first raised in the AIA lawsuit. There are genuine issues of material fact regarding the running of the statute of limitation on the remaining fraud claims.

## CONCLUSION

In conclusion:

1) The Court grants summary judgment on Taylor's claims against Hawley Troxell;

MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT – PAGE 17

Exhibit - O

2) The Court will deny summary judgment, in part, on the claim for malpractice against Riley, Turnbow, and Eberle Berlin so far as the claims arise from the issuance of the opinion letter. The so-called derivative claims are dismissed;

3) The Court concludes that the Statute of Limitations on the malpractice cause of action began to run when Taylor incurred attorney fees to defend against allegation that the Stock Repurchase agreement was illegal;

4) The Court denies summary judgment on the claim of fraud against Riley, Turnbow, and Eberle Berlin, both on the merits and on the statute of limitations on the basis of factual disputes;

5) The Court grants summary judgment to all defendants as dismissing claims of breach of fiduciary duty.

IT IS SO ORDERED.

Dated this ____7____ day of May 2010.

Richard D. Greenwood
District Judge

**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – PAGE 18**

Exhibit - O

## CERTIFICATE OF MAILING

I, J. David Navarro, the undersigned authority, do hereby certify that I have mailed, by United States Mail, a true and correct copy of the within instrument as notice pursuant to Rule 77(d) I.R.C.P. to each of the attorneys of record in this cause in envelopes addressed as follows:

RODERICK C BOND
CAMPBELL BISSELL & KIRBY PLLC
7 SOUTH HOWARD STREET SUITE 416
SPOKANE WA  99201

JAMES D. LARUE
ELAM & BURKE, PA
251 E FRONT ST, STE 300
PO BOX 1539
BOISE, ID 83701-1539

JACK S. GJORDING
GJORDING & FOUSER, PLLC
509 W HAYS ST
PO BOX 2837
BOISE, ID 83701-2837

J. DAVID NAVARRO
Clerk of the District Court
Ada County, Idaho

Date: May 10, 2010          By   K. JOHNSON
                                      Deputy Clerk

**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – PAGE 19**

Exhibit - O