Douglas J. Siddoway, ISB # 2388
RANDALL | DANSKIN, P.S.
601 West Riverside Avenue, Suite 1500
Spokane, WA 99201
Phone:        509.747.2052
Facsimile:    509.624.2528

IN THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT OF THE
STATE OF IDAHO, IN AND FOR THE COUNTY OF NEZ PERCE

| | |
|---|---|
| AIA SERVICES CORPORATION, an Idaho corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PAUL D. DURANT; KAY HANCHETT; LEE ANN HOSTETLER; JERRY A. LEGG; DALE L. MIESEN; HEATHER MIESEN LIVING TRUST, DALE L. MIESEN, TRUSTEE; JENNIFER MAY MIESEN LIVING TRUST, DALE L. MIESEN, TRUSTEE; ROBERT L. MIESEN LIVING TRUST, DALE L. MIESEN, TRUSTEE; DALE L. MIESEN AND JONATHON EKBERG BROWN, JR., JOINT TENANTS; CARMEN S. TAYLOR; DONNA J. TAYLOR; JUD R. TAYLOR; REED J. TAYLOR; AND BOBETTE N. RUDDELL,<br><br>Defendants. | No. CV-12-01483<br><br>AMENDED COMPLAINT FOR DECLARATORY JUDGMENT |

AMENDED COMPLAINT FOR
DECLARATORY JUDGMENT - 1

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

Exhibit - T

Plaintiff AIA Services Corporation, by its attorneys, Randall | Danskin, P.S., for their complaint against the defendants, and each of them, state as follows:

## I.    PARTIES, JURISDICTION AND VENUE

1.01    Plaintiff is a corporation organized and existing under the laws of the State of Idaho, having its principal place of business in Lewiston, Idaho.

1.02    Defendant Paul D. Durant is a resident of Lewiston, Idaho.

1.03    Defendant Kay Hanchett is a resident of Lewiston, Idaho.

1.04    Defendant Lee Ann Hostetler is a resident of Asotin, Washington.

1.05    Defendant Jerry A. Legg is a resident of Tonkawa, Oklahoma.

1.06    Defendant Dale L. Miesen is a resident of Grapevine, Texas.

1.07    Defendant Heather Miesen Living Trust is a trust whose sole trustee, Dale L. Miesen is a resident of Grapevine, Texas.

1.08    Defendant Jennifer May Miesen Living Trust is a trust whose sole trustee, Dale L. Miesen, is a resident of Grapevine, Texas.

1.09    Defendant Robert L. Miesen Living Trust is a trust whose sole trustee, Dale L. Miesen, is a resident of Grapevine, Texas.

1.10    Defendant Dale L. Miesen and Jonathon Ekberg Brown, Jr., Joint Tenants is a joint tenancy having its principal place of business in Grapevine, Texas.

1.11    Defendant Carmen S. Taylor is a resident of Long Beach, Washington.

1.12    Defendant Donna J. Taylor is a resident of Clarkston, Washington.

1.13    Defendant Jud R. Taylor is a resident of Lewiston, Idaho.

1.14    Defendant Reed J. Taylor is a resident of Lewiston, Idaho.

AMENDED COMPLAINT FOR
DECLARATORY JUDGMENT - 2

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

Exhibit - T

1.15    Defendant Bobette N. Ruddell is a resident of Lewiston, Idaho.

1.16    This is a declaratory judgment action to determine the validity of corporate actions undertaken and proposed to be undertaken by plaintiff in respect to the issued and outstanding shares of common stock and Series C preferred stock of plaintiff severally owned beneficially or of record by defendants.

1.17    The Court has jurisdiction over defendants pursuant to Idaho Code § 5-514(a), since the cause of action arises out of defendants' transaction of business within the state. The Court also has jurisdiction over defendants pursuant to Idaho Code § 30-1-1330(4), since the cause of action also arises out of prospective demands for payment under Idaho Code § 30-1-1326.

1.18    Venue is proper pursuant to Idaho Code § 5-404 and Idaho Code§ 30-1-1330(2).

## II.    RELEVANT FACTS

2.01    Plaintiff's equity capitalization comprises 11,700,000 shares of capital stock, of which 11,000,000 shares having a par value of $0.01 per share are designated common stock (the "Common Stock"), 200,000 shares without par value are designated Series A Preferred Stock (the "Series A Stock") and 500,000 shares having a par value of $1.00 per share are designated Series C Preferred Stock (the "Series C Stock").

2.02    Immediately prior to the effective time of the Reverse Stock Split Transaction defined in paragraph 2.04 of this complaint, defendants (with the possible exclusions of Carmen S. Taylor, Donna J. Taylor and Reed J. Taylor, none of whom are holders of shares of Common Stock according to plaintiff's records) severally owned or

AMENDED COMPLAINT FOR
DECLARATORY JUDGMENT - 3

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

Exhibit - T

purported to own 99,797.78 shares of Common Stock beneficially or of record, comprising only 6.06 percent of the then issued and outstanding shares of Common Stock.

2.03  Defendants Lee Ann Hostetler, Carmen S. Taylor, Jud R. Taylor and Reed J. Taylor also severally own or purport to own 24,588.296 shares of Series C Stock beneficially through the plaintiff's profit sharing plan, comprising 26.58 of the shares of Series C Stock held by the plan and only 13.29 percent of the issued and outstanding Series C Stock.

2.04  At the annual meeting of shareholders of plaintiff duly called and held on July 16, 2012 (the "2012 Annual Meeting"), the holders of Common Stock approved an amendment to the articles of incorporation of plaintiff, as theretofore amended and restated, pursuant to which (a) each issued and outstanding share of Common Stock, including any outstanding shares of Common Stock held by plaintiff as treasury stock, was converted into $1/53,000^{th}$ of a share of Common Stock (the equivalent of one share of Common Stock for every 53,000 outstanding shares of Common Stock); and (b) each holder of fewer than 53,000 shares of Common Stock would receive, in lieu of a fractional share, an amount determined by multiplying the number of shares of Common Stock owned beneficially by such holder immediately prior to the effective time of the amendment (being July 17, 2012, when the amendment to the articles of incorporation were filed with the Idaho Secretary of State) by $0.10 (the "Reverse Stock Split Transaction").

AMENDED COMPLAINT FOR
DECLARATORY JUDGMENT - 4

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

Exhibit - T

2.05    The Reverse Stock Split Transaction was approved by the holders of 1,379,693.5 shares of Common Stock, comprising 89.79% of the shares of Common Stock represented at the 212 Annual Meeting in person or by proxy. The holders of 99,797.78 shares of Common Stock, comprising 6.75% of the shares of Common Stock represented at the 2012 Annual Meeting in person or by proxy, voted against the Reverse Stock Split Transaction. No shareholders abstained.

2.06    At the 2012 Annual Meeting, the holders of Common Stock also elected R. John Taylor, Connie Taylor Henderson and James W. Beck to serve as directors of plaintiff for the ensuing year and until their successors are elected and qualified.

2.07    True and correct copies of the notice of annual meeting, proxy statement and proxy that were mailed to the holders of Common Stock in conjunction with the 2012 Annual Meeting are annexed to this complaint as Exhibit A. Consistent with the requirements of the Idaho Business Corporation Act, the proxy statement disclosed to such holders that·the Reverse Stock Split Transaction invoked the dissenters' appraisal rights provisions of the act and instructed them how to exercise and perfect such rights, should they choose to do so.

2.08    Defendants, by and through their counsel, Roderick C. Bond, delivered written notices of their intention to exercise their dissenters' appraisal rights to plaintiff at the 2012 Annual Meeting. True and correct copies of these notices are annexed to this complaint as Exhibit B.

2.09    The notices purport to satisfy defendants' notification obligations pursuant to Idaho Code § 30-1-1331. In addition, the notices also assert that, in defendants' view,

AMENDED COMPLAINT FOR
DECLARATORY JUDGMENT - 5

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

Exhibit - T

the fair value of the Common Stock cannot be determined until claims pending in a federal court action brought by Donna J. Taylor (who is not a holder of Common Stock) are resolved, and that the actions taken at the June 16, 2012 annual meeting of shareholders – these being the approval of the Reverse Stock Split Transaction and the election of three directors to plaintiff's board of directors – are unlawful because:  (a) the Reverse Stock Split violates subsection 4.3.3 of the plaintiff's articles of incorporation; (b) the Reverse Stock Split violates subsections 4.14 and 5.2 of the plaintiff's bylaws; (c) the shares of Common Stock owned beneficially and of record by R. John Taylor and Connie Taylor Henderson are disqualified from voting and certain of their shares were improperly issued; (d) plaintiff's directors violated their fiduciary duties to defendants by approving and recommending shareholder approval of the Reverse Stock Split Transaction; (e) the Reverse Stock Split Transaction and past and present operations of plaintiff constitute the unlawful oppression and squeezing out of defendants by plaintiff's directors and others; and (f) the Reverse Stock Split otherwise violates unspecified portions of Idaho law as it pertains to the duties of plaintiff's directors and officers.

2.10    Defendants, again acting by and through their attorney, Mr. Bond, supplemented their views concerning the lawfulness of the corporate actions taken at the 2012 Annual Meeting by delivering identical written "shareholder demands to plaintiff subsequent to the meeting.  A true and correct representative copy of these demands is annexed to this complaint as Exhibit C.

2.11    Defendants' views were further articulated by Mr. Bond in a series of emails he sent to plaintiff's counsel immediately after the 2012 Annual Meeting had

AMENDED COMPLAINT FOR
DECLARATORY JUDGMENT - 6

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

Exhibit - T

concluded, in which he makes various demands for information and records. True and correct copies of these emails are annexed to this complaint as Exhibit D.

2.12   Plaintiff reasonably believes the notices, shareholder demands and emails described in the preceding paragraphs evidence Mr. Bond's intention to initiate yet another vexatious, costly and time-consuming lawsuit against plaintiff and its directors and officers over circumstances and events that have previously been litigated or are the subject of prolonged litigation in this and other forums.

2.13   In view of these threats, plaintiff seeks judicial approval of the corporate actions approved at 2012 Annual Meeting before implementing them.

2.14   On or about September 26, 2012, plaintiff sent written notice to Donna Taylor and to her attorney, Mr. Bond, that plaintiff would redeem and make final payment for 7,590 remaining issued and outstanding shares of Series A Preferred Stock owned by Mrs. Taylor on October 30, 2012, and that the amount of that final payment, determined in accordance with the plaintiff's amended and restated articles of incorporation, would be $82,435.10.

2.15   On or about October 3, 2012, Mr. Bond sent plaintiff's counsel an email stating that Donna Taylor was owed at least $414,247.22 in redemption of her Series A Preferred Stock and that, in any event (and apparently notwithstanding the redemption provisions of plaintiff's amended and restated articles of incorporation) she would not accept any payments from AIA in redemption of her preferred stock "until all outstanding issues are resolved and until payment is approved by a Court order." A true and correct copy of Mr. Bond's October 3rd email is annexed to this complaint as Exhibit E.

AMENDED COMPLAINT FOR
DECLARATORY JUDGMENT - 7

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

Exhibit - T

2.16 In view of Mr. Bond's statements, presumably made on behalf of Donna Taylor, plaintiff seeks judicial approval of the final redemption payment before making it.

### III. CLAIM FOR RELIEF

### DECLARATORY JUDGMENT

3.01 Plaintiff incorporates the allegations of paragraphs 1.01 through 2.16 as if fully set forth herein.

3.02 There is an actual and existing controversy between plaintiff and defendants concerning both the corporate actions that were approved by plaintiff's shareholders at the July 16, 2012 annual meeting and the final amount payable to Donna Taylor in redemption of her Series A Preferred Stock.

3.03 Plaintiff and defendants have genuine and opposing interests in the controversies.

3.04 Plaintiff and defendants have direct and substantial interests in the controversies.

3.05 Judicial determination of the controversies will be final and conclusive.

WHEREFORE, plaintiffs pray as follows:

1. for a declaration that, insofar as they are conditional and assert claims relating or pertaining to the lawfulness of the Reverse Stock Split Transaction, the notices described in paragraphs 2.09 and 2.10 of this complaint do not satisfy defendants' notification obligations pursuant to Idaho Code § 30-1-1331 and that defendants have

AMENDED COMPLAINT FOR
DECLARATORY JUDGMENT - 8

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

Exhibit - T

waived their right to seek and obtain an appraisal of the fair value of their Common Stock;

2.    if defendants have not waived their right to seek and obtain an appraisal, for a declaration that the fair value of their Common Stock can be determined prior to the resolution of claims brought by Donna J. Taylor in the pending federal court action;

3.    for a declaration that the Reverse Stock Split Transaction does not violate subsection 4.3.3 of plaintiff's articles of incorporation because plaintiff's funds will not be used to pay defendants or other holders of Common Stock for their shares, and because it is a foregone conclusion, given the ownership of plaintiff's Common Stock and its Series C Stock, that any amendment of subsection 4.3.3 to permit such payments would readily be approved;

4.    for a declaration that the Reverse Stock Split Transaction does not violate subsection 4.14 or subsection 5.2 of the plaintiff's bylaws;

5.    for a declaration that the shares of Common Stock owned beneficially and of record by R. John Taylor and Connie Taylor Henderson are and were qualified to vote at the annual meeting;

6.    for a declaration that all of the shares of Common Stock issued to R. John Taylor and Connie Taylor Henderson were validly issued;

7.    for a declaration that plaintiff's directors did not violate their fiduciary duties to defendants in approving and recommending shareholder approval of the Reverse Stock Split Transaction;

AMENDED COMPLAINT FOR
DECLARATORY JUDGMENT - 9

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

Exhibit - T

8.    for a declaration that the Reverse Stock Split Transaction does not constitute the unlawful oppression and squeezing out of defendants by plaintiff's directors and others;

9.    for a declaration that the Reverse Stock Split does not otherwise violate Idaho law as it pertains to the duties of plaintiff's directors and officers;

10.    in light of other pending litigation brought by Mr. Bond on behalf of his clients and his threat of yet another suit against plaintiff and its directors and officers, for a declaration that his email requests to plaintiff's counsel demanding information do not comply with the requirements of Idaho Code §30-1-1602 (3) (b) and (c), and that plaintiff is not required to respond to them;

11.    for a declaration that AIA has heretofore paid Donna Taylor the redemption price on all but 7,590 shares of Series A Preferred Stock, and that the remaining redemption amount payable by AIA to Donna Taylor in respect of those shares is currently $82,435.10;

12.    for an award of plaintiff's reasonable attorneys' fees and costs, pursuant to Idaho Code §§ 12-121 and 10-1210; and

13.    for such other and further relief as the Court deems appropriate.

DATED this 16th day of November, 2012.

RANDALL | DANSKIN, P.S.

By: _____
Douglas J. Siddoway, ISB # 2388
Attorneys for Plaintiffs

AMENDED COMPLAINT FOR
DECLARATORY JUDGMENT - 10

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

Exhibit - T

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of November, 2012, I caused a true and correct copy of the foregoing to be served on the parties to this action or their counsel at the address and in the manner set forth below:

Roderick C. Bond
Roderick Bond Law Office, PLLC
800 Bellevue Way NE, Suite 400
Bellevue, WA 98004
*Attorney for Defendants*

☒ Via First Class Mail
☐ By Hand Delivery
☐ Via Facsimile – (425) 321-0343
☒ By E-mail – rod@roderickbond.com
☐ By Overnight Delivery

_____

F:\users\40468\Reverse Stock Split\Amended Complaint

AMENDED COMPLAINT FOR
DECLARATORY JUDGMENT - 11

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

Exhibit - T

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of November, 2012, I caused a true and correct copy of the foregoing to be served on the parties to this action or their counsel at the address and in the manner set forth below:

Roderick C. Bond
Roderick Bond Law Office, PLLC
800 Bellevue Way NE, Suite 400
Bellevue, WA 98004
*Attorney for Defendants*

☐ Via First Class Mail
☐ By Hand Delivery
☐ Via Facsimile – (425) 321-0343
☐ By E-mail – rod@roderickbond.com
☐ By Overnight Delivery

_____

F:\users\40468\Reverse Stock Split\Amended Complaint

AMENDED COMPLAINT FOR
DECLARATORY JUDGMENT - 11

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

Exhibit - T

Exhibit A

Exhibit - T

## AIA SERVICES CORPORATION

### NOTICE OF ANNUAL MEETING OF SHAREHOLDERS
### TO BE HELD ON JULY 16, 2012

TO: THE SHAREHOLDERS OF AIA SERVICES CORPORATION:

The annual meeting (the "Annual Meeting") of shareholders of AIA SERVICES CORPORATION (the "Company"), an Idaho corporation, will be held in the second floor conference room of the Company's executive offices, located at 111 Main Street, Lewiston, Idaho 83501, at 10:00 a.m., local time, on Monday, July 16, 2012 for the following purposes:

- to elect three directors of the Company to serve until their successors are elected and qualified; and

- to consider and approve an amendment to the articles of incorporation of the Company, pursuant to which, if it is approved: (a) each issued and outstanding share of common stock of the Company, including any outstanding shares of common stock held by the Company as treasury stock, would be converted into $1/53,000^{th}$ of a share of common stock (the equivalent of one share of common stock for every 53,000 outstanding shares of common stock); and (b) each holder of fewer than 53,000 shares immediately prior to the time of the amendment, being the date articles of amendment to the articles of incorporation of the Company are filed with the Secretary of State of the State of Idaho (the "Effective Time"), would receive, in lieu of a fractional share, an amount determined by multiplying the number of shares of common stock owned beneficially and of record by such holder immediately prior to the Effective Time by ten cents ($0.10).

Shareholders of record at the close of business on June 30, 2012 are entitled to vote at the Annual Meeting and any adjournment(s) or postponement(s) thereof.

Whether or not you plan to attend the Annual Meeting in person, please sign, date, and return the enclosed proxy in the reply envelope provided for your convenience. The prompt return of your proxy will assist us in preparing for the meeting.

BY ORDER OF THE BOARD OF DIRECTORS


JoLee K. Duclos, Secretary


F:\users\40468\Reverse Stock Split\Annual Meeting Notice (Marked 06.30.12)

Exhibit - T

## AIA SERVICES CORPORATION

### PROXY STATEMENT
### FOR
### ANNUAL MEETING OF SHAREHOLDERS

### JULY 16, 2012

This proxy statement is furnished in connection with the solicitation of proxies by the board of directors of AIA SERVICES CORPORATION, an Idaho corporation (the "Company"), for the annual meeting of shareholders of the Company to be held at 10:00 a.m., local time, on Monday, July 16, 2012, and any adjournment thereof (the "Annual Meeting").

The Annual Meeting will be held in the second floor conference room of the Company's executive offices, located at 111 Main Street in Lewiston, Idaho 83501.

### PURPOSES OF THE ANNUAL MEETING

The Annual Meeting is being called for the following purposes:

- to elect three directors of the Company to serve until their successors are elected and qualified; and

- to consider and approve an amendment to the articles of incorporation of the Company, pursuant to which, if it is approved: (a) each issued and outstanding share of common stock of the Company, including any outstanding shares of common stock held by the Company as treasury stock, would be converted into $1/53,000^{th}$ of a share of common stock (the equivalent of one share of common stock for every 53,000 outstanding shares of common stock); and (b) each holder of fewer than 53,000 shares immediately prior to the time of the amendment, being the date articles of amendment to the articles of incorporation of the Company are filed with the Secretary of State of the State of Idaho (the "Effective Time"), would receive, in lieu of a fractional share, an amount determined by multiplying the number of shares of common stock owned beneficially by such holder immediately prior to the Effective Time by ten cents ($0.10).

Shareholders of record at the close of business on June 30, 2012 are entitled to vote at the Annual Meeting

### VOTING RIGHTS AND SOLICITATIONS

The Company's common stock is the only types of security entitled to vote at the Annual Meeting. If you were a shareholder of record of common stock of the Company at the close of business on June 30, 2012 (the "record date"), you may vote at the Annual Meeting. On all matters requiring a shareholder vote at the Annual Meeting, each shareholder is entitled to one vote, in person or by proxy, for each share of common stock of the Company recorded in his or her name.

1

Exhibit - T

On the record date, 1,732,088 shares of common stock were outstanding. All of such shares are eligible to be voted at the Annual Meeting.

Pursuant to the Idaho Business Corporation Act and the Company's articles of incorporation, the affirmative vote of the holders of a majority of the shares present at the Annual Meeting in person or by proxy is required to elect directors (Item 1) and to approve the amendment to the Company's articles of incorporation (Item 2). Abstentions and broker non-votes will be treated as present for purposes of obtaining a quorum with respect to all matters to be considered at the Annual Meeting, but will not be counted for or against any of the proposals to be voted upon at the meeting.

If you are unable to attend the Annual Meeting, you may vote by proxy. The enclosed proxy card is solicited by the board of directors of the Company and when returned, properly completed, will be voted as you direct. If the proxy card is returned with no instructions on how the shares are to be voted, shares represented by such proxies will be voted **FOR** the election of each of the nominees to the board of directors and **FOR** approval of the amendment to the Company's articles of incorporation.

You may revoke or change your proxy at any time before it is exercised at the Annual Meeting. To do this, you must send a written notice of revocation or another signed proxy bearing a later date to the secretary of the Company at its principal executive office. You may also revoke your proxy by giving notice and voting in person at the Annual Meeting.

## COSTS OF SOLICITATION

The cost of soliciting proxies will be borne by the Company. Proxies may also be solicited personally or by telephone by certain of the Company's directors, executive officers and regular employees, who will not receive additional compensation therefore. The total cost of proxy solicitation, including legal fees and expenses incurred in connection with the preparation of this Proxy Statement, is estimated to be $3,500.

[The balance of this page has been left blank intentionally.]

2

Exhibit - T

## SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT

The following table sets forth information as of the record date concerning the names and addresses of, and number of shares of common stock of the Company beneficially owned by persons known to the Company to own more than five percent (5%) of each such class of stock; the names of, and number of shares beneficially owned by each director and executive officer of the Company; and the number of shares beneficially owned by, of all directors and executive officers as a group.

| Name and Address of Beneficial Owner, and Title or Position Held (if a director of executive officer) | Amount and Nature of Beneficial Ownership (all direct unless otherwise noted) | Percent of Class |
|---|---|---|
| R. John Taylor<br>111 Main Street<br>Lewiston, ID 83501<br>President and a Director of the Company | 1,378,493.5 | 83.66% |
| Connie Taylor Henderson [t]<br>900 Washington, Suite 1020<br>Vancouver, WA 98660<br>Director of the Company | - | 0.00% |
| James W. Beck<br>5152 Belmont Avenue South<br>Minneapolis, MN 55419<br>Director of the Company | - | 0.00% |
| Bryan Freeman – Vice President<br>111 Main Street<br>Lewiston, ID 83501<br>Vice President of the Company | - | 0.00% |
| JoLee Duclos<br>111 Main Street<br>Lewiston, ID 83501<br>Secretary of the Company | - | 0.00% |
| Aimee Gordon<br>111 Main Street<br>Lewiston, ID 83501<br>Treasurer of the Company | - | 0.00% |
| All directors and executive officers as a group (6 persons) | 1,378,493.5 | 83.66% |

[Table continued on following page]

3

Exhibit - T

| Name and Address of Beneficial Owner, and Title or Position Held (if a director of executive officer) | Amount and Nature of Beneficial Ownership (all direct unless otherwise noted) | Percent of Class |
|---|---|---|
| Raymond R. Heilman [2] 213 Yellow Rose Trail Road Georgetown, TX 78633 | 89,740.5 | 5.45% |

(1)    Excludes any community property interest of Mrs. Henderson in the shares held by R. John Taylor.

(2)    Includes 36,035 shares held by the Raymond R. Heilman Self Employment Retirement Plan.

## ITEM NO. 1 — ELECTION OF DIRECTORS

Three directors are to be elected at the Annual Meeting. Unless authority to vote is withheld on a proxy, proxies in the form enclosed will be voted for the director-nominees identified below. If any nominee is not available for election (a contingency which the Company does not now foresee), it is the intention of the board of directors to recommend the election of a substitute nominee, and proxies in the form enclosed will be voted for the election of such substitute nominee unless authority to vote such proxies in the election of directors has been withheld.

*Identity and Background of Nominees to the Board of Directors.* The nominees to the board of directors are R. John Taylor, James W. Beck and Connie W. Henderson.

R. John Taylor of Lewiston, Idaho, is the President and Chief Executive Officer of both the Company AIA Insurance, Inc. He has held those positions for over five years. Mr. Taylor is also Chairman of the Board and Chief Executive Officer of CropUSA Insurance Agency, Inc. and affiliated companies. He also serves on the boards of directors of Pacific Empire Radio Corporation, Avista Corporation, and the Idaho Endowment Fund Investment Board. Mr. Taylor is a licensed attorney in the state of Idaho and a member of the Idaho State Bar.

Connie Taylor Henderson is a practicing attorney in Vancouver, Washington and the former spouse of R. John Taylor. Her practice focuses on personal injury and medical negligence. Mrs. Henderson graduated from the University of Idaho College of Law in 1993, and for approximately the next seventeen years was a member of the Clark & Feeney law firm in Lewiston, Idaho. In 2010, she established her practice in Vancouver. Ms. Henderson has been a member of the boards of the Idaho Trial Lawyers Association, The Spence Trial Lawyers College Alumni Association, Lewis & Clark State College Foundation, Northwest Children's Home, and the Lewiston Foundation for Education. She also is an instructor at the Spence Trial Lawyers College and teaches trial advocacy in the University of Idaho College of Law's clinical law program.

4

Exhibit - T

James W. Beck is currently a co-owner of EMCllc, based in Minneapolis, Minnesota, which is engaged in the engineering, design and implementation of energy efficient lighting systems for industrial and commercial applications throughout the United States and Puerto Rico. Prior to becoming affiliated with EMCllc, Mr. Beck was involved in various sales and management capacities in the insurance industry. Mr. Beck holds a Bachelor of Science Degree from the University of Minnesota's Carlson School of Business.

*Requisite Approval.* The affirmative vote of the holders of a majority of the shares present at the annual meeting in person or by proxy is required to elect directors. Shareholders are not entitled to cumulate their votes in voting for directors.

### THE BOARD OF DIRECTORS RECOMMENDS A VOTE FOR THE FOREGOING NOMINEES TO THE BOARD OF DIRECTORS.

---

### APPROVAL OF THE AMENDMENT TO THE COMPANY'S ARTICLES OF INCORPORATION

---

The shareholders of the Company will be asked to consider and approve an amendment to the articles of incorporation of the Company, pursuant to which, if it is approved: (a) each issued and outstanding share of common stock of the Company, including any outstanding shares of common stock held by the Company as treasury stock, would be converted into 1/53,000th of a share of common stock (the equivalent of one share of common stock for every 53,000 outstanding shares of common stock); and (b) each holder of fewer than 53,000 shares immediately prior to the time of the amendment, being the date articles of amendment to the articles of incorporation of the Company are filed with the Secretary of State of the State of Idaho (the "Effective Time"), would receive, in lieu of a fractional share, an amount determined by multiplying the number of shares of common stock owned beneficially by such holder immediately prior to the Effective Time by ten cents ($0.10).

*Purpose of the Amendment.* The amendment is one component of the Company's overall plan to simplify its capital structure, the other being the eventual elimination of all of the outstanding Series A preferred stock. The amendment accomplishes this purpose by reducing the number of outstanding shares of common stock through a reverse stock split, and by then redeeming, for cash, the outstanding shares held by those shareholders who would otherwise hold fractional shares. The Company believes a simplified capital structure will better enable it to attract financing on favorable terms so that it can successfully compete in the changing and challenging farm insurance markets.

*Board of Directors' Recommendation.* The board of directors of the Company has adopted the amendment to the Company's articles of incorporation and recommends its approval by the shareholders at the Annual Meeting. The board of directors considered a number of factors in reaching these decisions, not the least of which were the dramatic changes in the insurance markets in which the Company does business or proposes to do business, its possible need for significant financing in order to pursue profitable business opportunities in these markets, the difficulties and expenses associated with the Company's complicated capital structure, and the advantages of simplifying its capital structure and possibly reorganizing itself as a partnership.

Exhibit - T

The board of directors also considered a number of factors in determining the price per share ($0.10) the Company would pay to those holders of outstanding shares of common stock who would otherwise become minority holders if the amendment is approved, among them: the current book value of the common stock (being a *negative* $0.10 per share); the prices that was paid for the common stock in a privately negotiated transaction earlier this year (being $0.10 per share); the prospective future value of net operating tax loss carryforwards; the prospective additional value that might be obtained if pending lawsuits to which the Company or its affiliates are parties are resolved favorably; and the prospective value that might be obtained if the Company is successful in obtaining title to the Lewis and Clark Plaza office building in Lewiston through its pending foreclosure proceeding.

*Dissenter's Appraisal Rights.* The Company's shareholders have statutory rights of appraisal under the Idaho Business Corporation Act in connection with the proposed amendment, meaning that if they vote against the amendment and take other steps to perfect their rights, summarized below, they will be entitled to receive the fair value of their common stock in cash. The procedures for exercising and perfecting these appraisal rights are complicated, and for this reason the Company's shareholders are urged to read the relevant provisions of the Idaho Business Corporation Act that are included in this Proxy Statement as Exhibit B. The following is only a summary of these procedures and is not intended to be inclusive.

A shareholder wishing to exercise these rights must vote against approving the amendment to the articles of incorporation, and prior to the taking of such vote at the Annual Meeting, must also deliver written notice to the Company that he or she intends to demand written payment for his shares if the amendment is approved. If the amendment is approved, the Company must, within ten days, send written notice to the shareholder, accompanied by a form for demanding payment and related information. The shareholder must thereafter return the form to the Company, accompanied by the shareholder's stock certificate(s), within the time prescribed by the form, which may not be less than 40 nor more than 60 days.

Upon receipt of the form and the shareholder's stock certificate(s), the Company will pay the shareholder the fair value of his shares, accompanied by financial information and a statement of how the fair value was determined. Should the shareholder disagree with the Company's fair value determination, he must reject the payment, following which either the Company or the shareholder may initiate a court proceeding in Idaho to adjudicate such value. The costs of any such proceeding, including the costs of any appraisers or other experts, shall be borne by the Company, but at the court's discretion may also be assessed against the shareholder.

*Financial Statements of the Company.* The balance sheets of the Company as at December 31, 2011 and 2010, and the related statements of operation, statements of cash flows and statements of changes in shareholders' equity for the twelve-month periods then ended appear elsewhere in this Proxy Statement. Shareholders should note that these financial statements have been prepared by management of the Company and are unaudited.

6

Exhibit - T

## CONCLUSION

**It is important that proxies be returned promptly. Shareholders are requested to vote, sign, date and promptly return the proxy in the enclosed self-addressed envelope.**

The board of directors knows of no other matters which may be presented for shareholder action at the Annual Meeting. If other matters do properly come before the meeting, it is intended that the persons named in the proxies will vote on such proposals according to their best judgment.

BY ORDER OF THE BOARD OF DIRECTORS

JoLee K. Duclos, Secretary

7

Exhibit - T

Exhibit A to Proxy Statement
(Proposed Form of Amendment to Articles of Incorporation)

### ARTICLES OF AMENDMENT
### TO THE ARTICLES OF INCORPORATION
### OF
### AIA SERVICES CORPORATION

Pursuant to the provisions of Sections 30-1-58, 30-1-59 and 30-1-61 of the Idaho Business Corporation Act, the undersigned corporation adopts the following Articles of Amendment to its Articles of Incorporation as filed on December 20, 1983, and previously amended on October 14, 1986; December 29, 1987; April 11, 1995; August 3, 1995; and March 8, 1996.

1.    The name of the corporation is AIA Services Corporation.

2.    The Articles of Amendment provide for an exchange, reclassification, or cancellation of issued shares.

3.    The existing Articles of Incorporation are revised pursuant to the following amendment:

Article 4.4 of the Articles of Incorporation is hereby amended by reference to the existing provisions as (a) and adding the following paragraph as (b):

(b) Without regard to any other provision of these Articles of Incorporation, each 53,000 shares of common stock, either issued and outstanding or held by the Corporation as treasury stock, immediately prior to the time this amendment becomes effective, shall be and is hereby automatically reclassified and changed (without any further act) to one fully paid and non-assessable share of common stock with a par value of $0.01 per share, without increasing or decreasing the amount of stated capital or paid-in surplus of the Corporation, provided that no fractional shares of common stock shall be issued to any holder of fewer than 53,000 shares of common stock immediately prior to the time this amendment becomes effective. Instead of issuing such fractional shares, the Corporation shall pay, in cash at the time this amendment becomes effective, Ten Cents ($0.10) for each share held by any holder of fewer than 53,000 shares of common stock immediately before the time when this amendment becomes effective.

4.    These Articles of Amendment were duly approved at an annual meeting of shareholders held on July 16, 2012. The Articles of Amendment were approved by the shareholders as follows:

a.    On the day of adoption, there were 1,732,088 shares outstanding. On such date, there were _____ shares (_____ %) represented at the meeting and entitled to vote on the Articles of Amendment.

b.    Of the _____ total common shares represented at the meeting, _____ shares (_____ %) were voted in favor of the Articles of Amendment, _____ shares (_____ %) were voted against the Articles of Amendment, and _____ shares (_____ %) abstained.

8

Exhibit - T

c.    The number of shares cast in favor of the Articles of Amendment was sufficient for approval.

5.    The terms and provisions of these Articles of Amendment shall become effective at ____ a.m/p.m. on July ____, 2012.

By:    _____
           R. John Taylor,
           President and Chief Executive Officer

9

Exhibit - T

∴

## TITLE 30
## CORPORATIONS
## CHAPTER 1
## GENERAL BUSINESS CORPORATIONS
## PART 13.
## APPRAISAL RIGHTS

**30-1-1301. DEFINITIONS.** In this part:

(1)    "Affiliate" means a person that directly or indirectly through one (1) or more intermediaries controls, is controlled by, or is under common control with another person or is a senior executive thereof. For purposes of section 30-1-1302(2)(d), Idaho Code, a person is deemed to be an affiliate of its senior executives.

(2)    "Beneficial shareholder" means a person who is the beneficial owner of shares held in a voting trust or by a nominee on the beneficial owner's behalf.

(3)    "Corporation" means the issuer of the shares held by a shareholder demanding appraisal and, for matters covered in sections 30-1-1322 through 30-1-1331, Idaho Code, includes the surviving entity in a merger.

(4)    "Fair value" means the value of the corporation's shares determined:

(a)    Immediately before the effectuation of the corporate action to which the shareholder objects;

(b)    Using customary and current valuation concepts and techniques generally employed for similar businesses in the context of the transaction requiring appraisal; and

(c)    Without discounting for lack of marketability or minority status except, if appropriate, for amendments to the articles pursuant to section 30-1-1302(1)(e), Idaho Code.

(5)    "Interest" means interest from the effective date of the corporate action until the date of payment, at the rate of interest on judgments in this state on the effective date of the corporate action.

(6)    "Preferred shares" means a class or series of shares whose holders have preference over any other class or series with respect to distributions.

(7)    "Record shareholder" means the person in whose name shares are registered in the records of the corporation or the beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with the corporation.

(8)    "Senior executive" means the chief executive officer, chief operating officer, chief financial officer, and anyone in charge of a principal business unit or function.

(9)    "Shareholder" means both a record shareholder and a beneficial shareholder.

**30-1-1302. RIGHT TO APPRAISAL.** (1) A shareholder is entitled to appraisal rights, and to obtain payment of the fair value of that shareholder's shares, in the event of, any of the following corporate actions:

(a)    Consummation of a merger to which the corporation is a party:

(i)    If shareholder approval is required for the merger by section 30-1-1104, Idaho Code, and the shareholder is entitled to vote on the merger, except that appraisal rights shall not be available to any shareholder of the corporation with respect to shares of any class or series that remain outstanding after consummation of the merger; or

10

Exhibit - T

(ii)    If the corporation is a subsidiary and the merger is governed by section 30-1-1105, Idaho Code;

(b)    Consummation of a share exchange to which the corporation is a party as the corporation whose shares will be acquired, if the shareholder is entitled to vote on the exchange, except that appraisal rights shall not be available to any shareholder of the corporation with respect to any class or series of shares of the corporation that is not exchanged;

(c)    Consummation of a disposition of assets pursuant to section 30-1-1202, Idaho Code, if the shareholder is entitled to vote on the disposition;

(d)    An amendment of the articles of incorporation with respect to a class or series of shares that reduces the number of shares of a class or series owned by the shareholder to a fraction of a share if the corporation has the obligation or right to repurchase the fractional share so created; or

(e)    Any other amendment to the articles of incorporation, merger, share exchange or disposition of assets to the extent provided by the articles of incorporation, bylaws or a resolution of the board of directors.

(2)    Notwithstanding subsection (1) of this section, the availability of appraisal rights under subsections (1)(a), (b), (c) and (d) shall be limited in accordance with the following provisions:

(a)    Appraisal rights shall not be available for the holders of shares of any class or series of shares which are:

(i)    Listed on the New York stock exchange or the American stock exchange or designated as a national market system security on an interdealer quotation system by the national association of securities dealers, inc.; or

(ii)    Not so listed or designated, but have at least two thousand (2,000) shareholders and the outstanding shares of such class or series have a market value of at least twenty million dollars ($20,000,000), exclusive of the value of such shares held by its subsidiaries, senior executives, directors and beneficial shareholders owning more than ten percent (10%) of such shares.

(b)    The applicability of subsection (2)(a) of this section shall be determined as of:

(i)    The record date fixed to determine the shareholders entitled to receive notice of, and vote at, the meeting of shareholders to act upon the corporate action requiring appraisal rights; or

(ii)    The day before the effective date of such corporate action if there is no meeting of shareholders.

(c)    Subsection (2)(a) of this section shall not be applicable and appraisal rights shall be available pursuant to subsection (1) of this section for the holders of any class or series of shares who are required by the terms of the corporate action requiring appraisal rights to accept for such shares anything other than cash or shares of any class or any series of shares of any corporation, or any other proprietary interest of any other entity, that satisfies the standards set forth in subsection (2)(a) of this section at the time the corporate action becomes effective.

(d)    Subsection (2)(a) of this section shall not be applicable and appraisal rights shall be available pursuant to subsection (1) of this section for the holders of any class or series of shares where:

(i)    Any of the shares or assets of the corporation are being acquired or converted, whether by merger, share exchange or otherwise, pursuant to the corporate action by a person, or by an affiliate of a person, who:

(A)    Is, or at any time in the one (1) year period immediately preceding approval by the board of directors of the corporate action requiring appraisal rights was, the beneficial owner of twenty percent

11

Exhibit - T

(20%) or more of the voting power of the corporation, excluding any shares acquired pursuant to an offer for all shares having voting power if such offer was made within one (1) year prior to the corporate action requiring appraisal rights for consideration of the same kind and of a value equal to or less than that paid in connection with the corporate action; or

(B)    Directly or indirectly has, or at any time in the one (1) year period immediately preceding approval by the board of directors of the corporation of the corporate action requiring appraisal rights had, the power, contractually or otherwise, to cause the appointment or election of twenty-five percent (25%) or more of the directors to the board of directors of the corporation; or

(ii)    Any of the shares or assets of the corporation are being acquired or converted, whether by merger, share exchange or otherwise, pursuant to such corporate action by a person, or by an affiliate of a person, who is, or at any time in the one (1) year period immediately preceding approval by the board of directors of the corporate action requiring appraisal rights was, a senior executive or director of the corporation or a senior executive of any affiliate thereof, and that senior executive or director will receive, as a result of the corporate action, a financial benefit not generally available to other shareholders as such, other than:

(A)    Employment, consulting, retirement or similar benefits established separately and not as part of or in contemplation of the corporate action; or

(B)    Employment, consulting, retirement or similar benefits established in contemplation of, or as part of, the corporate action that are not more favorable than those existing before the corporate action or, if more favorable, that have been approved on behalf of the corporation in the same manner as is provided in section 30-1-862, Idaho Code; or

(C)    In the case of a director of the corporation who will, in the corporate action, become a director of the acquiring entity in the corporate action or one (1) of its affiliates, rights and benefits as a director that are provided on the same basis as those afforded by the acquiring entity generally to other directors of such entity or such affiliate.

(e)    For the purposes of subsection (2)(d) of this section only, the term "beneficial owner" means any person who, directly or indirectly, through any contract, arrangement, or understanding, other than a revocable proxy, has or shares the power to vote, or to direct the voting of, shares, provided that a member of a national securities exchange shall not be deemed to be a beneficial owner of securities held directly or indirectly by it on behalf of another person solely because such member is the record holder of such securities if the member is precluded by the rules of such exchange from voting without instruction on contested matters or matters that may affect substantially the rights or privileges of the holders of the securities to be voted. When two (2) or more persons agree to act together for the purpose of voting their shares of the corporation, each member of the group formed thereby shall be deemed to have acquired beneficial ownership, as of the date of such agreement, of all voting shares of the corporation beneficially owned by any member of the group.

(3)    Notwithstanding any other provision of this section, the articles of incorporation as originally filed or any amendment thereto may limit or eliminate appraisal rights for any class or series of preferred shares, but any such limitation or elimination contained in an amendment to

12

Exhibit - T

the articles of incorporation that limits or eliminates appraisal rights for any of such shares that are outstanding immediately prior to the effective date of such amendment or that the corporation is or may be required to issue or sell thereafter pursuant to any conversion, exchange or other right existing immediately before the effective date of such amendment shall not apply to any corporate action that becomes effective within one (1) year of that date if such action would otherwise afford appraisal rights.

      (4)    A shareholder entitled to appraisal rights under this part may not challenge a completed corporate action for which appraisal rights are available unless such corporate action:

      (a)    Was not effectuated in accordance with the applicable provisions of part 10, 11 or 12 of this chapter or the corporation's articles of incorporation, bylaws or board of directors' resolution authorizing the corporate action; or

      (b)    Was procured as a result of fraud or material misrepresentation.

**30-1-1303. ASSERTION OF RIGHTS BY NOMINEES AND BENEFICIAL OWNERS. (1)** A record shareholder may assert appraisal rights as to fewer than all the shares registered in the record shareholder's name but owned by a beneficial shareholder only if the record shareholder objects with respect to all shares of the class or series owned by the beneficial shareholder and notifies the corporation in writing of the name and address of each beneficial shareholder on whose behalf appraisal rights are being asserted. The rights of a record shareholder who asserts appraisal rights for only part of the shares held of record in the record shareholder's name under this subsection shall be determined as if the shares as to which the record shareholder objects and the record shareholder's other shares were registered in the names of different record shareholders.

      (2)    A beneficial shareholder may assert appraisal rights as to shares held on behalf of the shareholder only if such shareholder:

      (a)    Submits to the corporation the record shareholder's written consent to the assertion of such rights no later than the date referred to in section 30-1-1322(2)(b)(ii), Idaho Code; and

      (b)    Does so with respect to all shares of the class or series that are beneficially owned by the beneficial shareholder.

**30-1-1320. NOTICE OF APPRAISAL RIGHTS. (1)** If proposed corporate action described in section 30-1-1302(1), Idaho Code, is to be submitted to a vote at a shareholders' meeting, the meeting notice must state that the corporation has concluded that shareholders are, are not or may be entitled to assert appraisal rights under this part. If the corporation concludes that appraisal rights are or may be available, a copy of this part must accompany the meeting notice sent to those record shareholders entitled to exercise appraisal rights.

      (2)    In a merger pursuant to section 30-1-1105, Idaho Code, the parent corporation must notify in writing all record shareholders of the subsidiary who are entitled to assert appraisal rights that the corporate action became effective. Such notice must be sent within ten (10) days after the corporate action became effective and include the materials described in section 30-1-1322, Idaho Code.

**30-1-1321. NOTICE OF INTENT TO DEMAND PAYMENT. (1)** If proposed corporate action requiring appraisal rights under section 30-1-1302, Idaho Code, is submitted to a vote at a shareholders' meeting, a shareholder who wishes to assert appraisal rights with respect to any class or series of shares:

      (a)    Must deliver to the corporation before the vote is taken written notice of the shareholder's intent to demand payment if the proposed action is effectuated; and

      (b)    Must not vote, or cause or permit to be voted, any shares of such class or series in favor of the proposed action.

13

Exhibit - T

(2)     A shareholder who does not satisfy the requirements of subsection (1) of this section is not entitled to payment under this part.

**30-1-1322. APPRAISAL NOTICE AND FORM.** (1) If proposed corporate action requiring appraisal rights under section 30-1-1302, Idaho Code, becomes effective, the corporation must deliver a written appraisal notice and form required by subsection (2)(a) of this section to all shareholders who satisfied the requirements of section 30-1-1321, Idaho Code. In the case of a merger under section 30-1-1105, Idaho Code, the parent must deliver a written appraisal notice and form to all record shareholders who may be entitled to assert appraisal rights.

(2)     The appraisal notice must be sent no earlier than the date the corporate action became effective and no later than ten (10) days after such date and must:

(a)     Supply a form that specifies the date of the first announcement to shareholders of the principal terms of the proposed corporate action and requires the shareholder asserting appraisal rights to certify:

(i)     Whether or not beneficial ownership of those shares for which appraisal rights are asserted was acquired before that date; and

(ii)     That the shareholder did not vote for the transaction;

(b)     State:

(i)     Where the form must be sent and where certificates for certificated shares must be deposited and the date by which those certificates must be deposited, which date may not be earlier than the date for receiving the required form under subsection (2)(b)(ii) of this section;

(ii)     A date by which the corporation must receive the form, which date may not be fewer than forty (40) nor more than sixty (60) days after the date the appraisal notice and form in subsection (1) of this section are sent, and state that the shareholder shall have waived the right to demand appraisal with respect to the shares unless the form is received by the corporation by such specified date;

(iii)     The corporation's estimate of the fair value of the shares;

(iv)     That, if requested in writing, the corporation will provide, to the shareholders so requesting, within ten (10) days after the date specified in subsection (2)(b)(ii) of this section the number of shareholders who return the forms by the specified date and the total number of shares owned by them; and

(v)     The date by which the notice to withdraw under section 30-1-1323, Idaho Code, must be received, which date must be within twenty (20) days after the date specified in subsection (2)(b)(ii) of this section; and

(c)     Be accompanied by a copy of this part.

**30-1-1323. PERFECTION OF RIGHTS -- RIGHT TO WITHDRAW.** (1) A shareholder who receives notice pursuant to section 30-1-1322, Idaho Code, and who wishes to exercise appraisal rights must certify on the form sent by the corporation whether the beneficial owner of such shares acquired beneficial ownership of the shares before the date required to be set forth in the notice pursuant to section 30-1-1322(2)(a), Idaho Code. If a shareholder fails to make this certification, the corporation may elect to treat the shareholder's shares as after-acquired shares under section 30-1-1325, Idaho Code. In addition, a shareholder who wishes to exercise appraisal rights must execute and return the form and, in the case of certificated shares, deposit the shareholder's certificates in accordance with the terms of the notice by the date referred to in the notice pursuant to section 30-1-1322(2)(b)(ii), Idaho Code. Once a shareholder deposits that shareholder's certificates or, in the case of uncertificated shares, returns the executed forms, that shareholder loses all rights as a shareholder, unless the shareholder withdraws pursuant to subsection (2) of this section.

14

Exhibit - T

(2)    A shareholder who has complied with subsection (1) of this section may nevertheless decline to exercise appraisal rights and withdraw from the appraisal process by so notifying the corporation in writing by the date set forth in the appraisal notice pursuant to section 30-1-1322(2)(b)(v), Idaho Code. A shareholder who fails to so withdraw from the appraisal process may not thereafter withdraw without the corporation's written consent.

(3)    A shareholder who does not execute and return the form and, in the case of certificated shares, deposit that shareholder's share certificates where required, each by the date set forth in the notice described in section 30-1-1322(2), Idaho Code, shall not be entitled to payment under this part.

**30-1-1324. PAYMENT.** (1) Except as provided in section 30-1-1325, Idaho Code, within thirty (30) days after the form required by section 30-1-1322(2)(b)(ii), Idaho Code, is due, the corporation shall pay in cash to those shareholders who complied with section 30-1-1323(1), Idaho Code, the amount the corporation estimates to be the fair value of their shares, plus interest.

(2)    The payment to each shareholder pursuant to subsection (1) of this section must be accompanied by:

(a)    Financial statements of the corporation that issued the shares to be appraised, consisting of a balance sheet as of the end of a fiscal year ending not more than sixteen (16) months before the date of payment, an income statement for that year, a statement of changes in shareholders' equity for that year, and the latest available interim financial statements, if any;

(b)    A statement of the corporation's estimate of the fair value of the shares, which estimate must equal or exceed the corporation's estimate given pursuant to section 30-1-1322(2)(b)(iii), Idaho Code; and

(c)    A statement that shareholders described in subsection (1) of this section have the right to demand further payment under section 30-1-1326, Idaho Code, and that if any shareholder does not do so within the time period specified therein, such shareholder shall be deemed to have accepted such payment in full satisfaction of the corporation's obligations under this part.

**30-1-1325. AFTER-ACQUIRED SHARES.** (1) A corporation may elect to withhold payment required by section 30-1-1324, Idaho Code, from any shareholder who did not certify that beneficial ownership of all of the shareholder's shares for which appraisal rights are asserted was acquired before the date set forth in the appraisal notice sent pursuant to section 30-1-1322(2)(a), Idaho Code.

(2)    If the corporation elected to withhold payment under subsection (1) of this section, it must, within thirty (30) days after the form required by section 30-1-1322(2)(b)(ii), Idaho Code, is due, notify all shareholders who are described in subsection (1) of this section:

(a)    Of the information required by section 30-1-1324(2)(a), Idaho Code;

(b)    Of the corporation's estimate of fair value pursuant to section 39-1-1324(2)(b) [30-1-1324(2)(b)], Idaho Code;

(c)    That they may accept the corporation's estimate of fair value, plus interest, in full satisfaction of their demands or demand appraisal under section 30-1-1326, Idaho Code;

(d)    That those shareholders who wish to accept such offer must so notify the corporation of their acceptance of the corporation's offer within thirty (30) days after receiving the offer; and

(e)    That those shareholders who do not satisfy the requirements for demanding appraisal under section 30-1-1326, Idaho Code, shall be deemed to have accepted the corporation's offer.

(3)    Within ten (10) days after receiving the shareholder's acceptance pursuant to subsection (2) of this section, the corporation must pay in cash the amount it offered under

15

Exhibit - T

subsection (2)(b) of this section to each shareholder who agreed to accept the corporation's offer in full satisfaction of the shareholder's demand.

(4)     Within forty (40) days after sending the notice described in subsection (2) of this section, the corporation must pay in cash the amount it offered to pay under subsection (2)(b) of this section to each shareholder described in subsection (2)(e) of this section.

**30-1-1326. PROCEDURE IF SHAREHOLDER DISSATISFIED WITH PAYMENT OR OFFER.** (1) A shareholder paid pursuant to section 30-1-1324, Idaho Code, who is dissatisfied with the amount of the payment must notify the corporation in writing of that shareholder's estimate of the fair value of the shares and demand payment of that estimate plus interest, less any payment under section 30-1-1324, Idaho Code. A shareholder offered payment under section 30-1-1325, Idaho Code, who is dissatisfied with that offer must reject the offer and demand payment of the shareholder's stated estimate of the fair value of the shares plus interest.

(2)     A shareholder who fails to notify the corporation in writing of that shareholder's demand to be paid the shareholder's stated estimate of the fair value plus interest under subsection (1) of this section within thirty (30) days after receiving the corporation's payment or offer of payment under section 30-1-1324 or 30-1-1325, Idaho Code, respectively, waives the right to demand payment under this section and shall be entitled only to the payment made or offered pursuant to those respective sections.

**30-1-1330. COURT ACTION.** (1) If a shareholder makes demand for payment under section 30-1-1326, Idaho Code, which remains unsettled, the corporation shall commence a proceeding within sixty (60) days after receiving the payment demand and petition the court to determine the fair value of the shares and accrued interest. If the corporation does not commence the proceeding within the sixty-day period, it shall pay in cash to each shareholder the amount demanded pursuant to section 30-1-1326, Idaho Code, plus interest.

(2)     The corporation shall commence the proceeding in the appropriate court of the county where the corporation's principal office is located, or, if none in this state, Ada county. If the corporation is a foreign corporation, it shall commence the proceeding in the county in this state where the principal office of the domestic corporation merged with the foreign corporation was located or, if the domestic corporation did not have its principal office in this state at the time of the transaction, in Ada county.

(3)     The corporation shall make all shareholders, whether or not residents of this state, whose demands remain unsettled parties to the proceeding, as in an action against their shares, and all parties must be served with a copy of the petition. Nonresidents may be served by registered or certified mail or by publication as provided by law.

(4)     The jurisdiction of the court in which the proceeding is commenced under subsection (2) of this section is plenary and exclusive. The court may appoint one (1) or more persons as appraisers to receive evidence and recommend a decision on the question of fair value. The appraisers shall have the powers described in the order appointing them, or in any amendment to it. The shareholders demanding appraisal rights are entitled to the same discovery rights as parties in other civil proceedings. There shall be no right to a jury trial.

(5)     Each shareholder made a party to the proceeding is entitled to judgment:

(a)     For the amount, if any, by which the court finds the fair value of the shareholder's shares, plus interest, exceeds the amount paid by the corporation to the shareholder for such shares; or

(b)     For the fair value, plus interest, of the shareholder's shares for which the corporation elected to withhold payment under section 30-1-1325, Idaho Code.

16

Exhibit - T

**30-1-1331. COURT COSTS AND COUNSEL FEES.** (1) The court in an appraisal proceeding commenced under section 30-1-1330, Idaho Code, shall determine all costs of the proceeding, including the reasonable compensation and expenses of appraisers appointed by the court. The court shall assess the costs against the corporation, except that the court may assess costs against all or some of the shareholders demanding appraisal, in amounts the court finds equitable, to the extent the court finds such shareholders acted arbitrarily, vexatiously, or not in good faith with respect to the rights provided by this part.

(2)     The court in an appraisal proceeding may also assess the fees and expenses of counsel and experts for the respective parties, in amounts the court finds equitable:

(a)     Against the corporation and in favor of any or all shareholders demanding appraisal if the court finds the corporation did not substantially comply with the requirements of section 30-1-1320, 30-1-1322, 30-1-1324 or 30-1-1325, Idaho Code; or

(b)     Against either the corporation or a shareholder demanding appraisal, in favor of any other party, if the court finds that the party against whom the fees and expenses are assessed acted arbitrarily, vexatiously, or not in good faith with respect to the rights provided by this part.

(3)     If the court in an appraisal proceeding finds that the services of counsel for any shareholder were of substantial benefit to other shareholders similarly situated, and that the fees for those services should not be assessed against the corporation, the court may award to such counsel reasonable fees to be paid out of the amounts awarded to shareholders who were benefited.

(4)     To the extent the corporation fails to make a required payment pursuant to section 30-1-1324, 30-1-1325 or 30-1-1326, Idaho Code, the shareholder may sue directly for the amount owed and, to the extent successful, shall be entitled to recover from the corporation all costs and expenses of the suit, including counsel fees.

Exhibit - T

## PROXY

### ANNUAL MEETING OF SHAREHOLDERS OF
### AIA SERVICES CORPORATION
### JULY 16, 2012

The undersigned hereby constitutes and appoints R. John Taylor and JoLee K. Duclos, and each of them, the undersigned's attorney-in-fact and proxy to vote all of the shares of common stock of AIA Services Corporation (the "Company") owned of record by the undersigned on June 30, 2012 at the annual meeting of shareholders of the Company to be held on July 16, 2012 or any adjournment(s) or postponement(s) thereof.

**UNLESS OTHERWISE INDICATED, THE SHARES OF COMMON STOCK OWNED BY THE UNDERSIGNED WILL BE VOTED IN FAVOR OF ITEMS 1 AND 2.**

ITEM 1.    **ELECTION OF DIRECTORS**

[ ] FOR        [ ] AGAINST        [ ] ABSTAIN

With respect to the election of the following director-nominees:
    R. John Taylor            James W. Beck        Connie W. Henderson

NOTE:  To withhold authority to vote for a particular director-nominee(s), strike a line through such director-nominee(s) name.

ITEM 2.    **APPROVAL OF AMENDMENT TO ARTICLES OF INCORPORATION TO CHANGE THE PAR VALUE OF THE COMMON STOCK**

[ ] FOR        [ ] AGAINST        [ ] ABSTAIN

approval of an amendment to the Company's articles of incorporation of the Company, pursuant to which: (a) each issued and outstanding share of common stock of the Company, including any outstanding shares of common stock held by the Company as treasury stock, would be converted into 1/53,000th of a share of common stock (the equivalent of one share of common stock for every 53,000 outstanding shares of common stock); and (b) each holder of fewer than 53,000 shares immediately prior to the time of the amendment, being the date articles of amendment to the articles of incorporation of the Company are filed with the Secretary of State of the State of Idaho (the "Effective Time"), would receive, in lieu of a fractional share, an amount determined by multiplying the number of shares of common stock owned beneficially and of record by such holder immediately prior to the Effective Time by ten cents ($0.10).

DATED: _____, 2012

_____          _____
Signature of Shareholder                          Additional Signature, if Jointly Owned


_____          _____
Print Name                                               Print Name
f:\users\40468\Reverse Stock Split\Annual Meeting Proxy (Marked 06.30.12)

Exhibit - T

Exhibit B

Exhibit - T

## NOTICE OF INTENT TO DEMAND PAYMENT (I.C. § 30-1-1321)

1.      Pursuant to I.C. § 30-1-1321 and I.C. § 30-1-1301 *et seq.*, if the proposed reverse stock split is effectuated, the undersigned shareholder(s) hereby demands full and fair payment and hereby asserts appraisal rights as to all common shares owned and/or beneficially held by the undersigned shareholder(s) in AIA Services Corporation ("Company"). This demand, if executed and/or delivered by facsimile or pdf attachment, shall constitute an original document.

2.      The undersigned shareholder(s) asserts that no fair valuation of any common shares may be determined until the claims pending in *Donna J. Taylor v. Hawley Troxell, R. John Taylor, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case") have been resolved and the amount of damages recovered and considered in any fair valuation. Until the Federal Court Case is resolved and all improper payments, distributions and transfers have been recovered, it is impossible and prejudicially unfair to attempt making a determination or appraisal of the fair value of the common shares held or beneficially owned by the undersigned shareholder(s).

3.      By making the demands in Paragraphs 1-2 above, the undersigned shareholder(s) does not waive any legal rights or remedies pertaining to the legality of the reverse stock split, the determination of fair value or any other acts and/or omissions, including, without limitation: (a) the reverse split violates the Company's Articles of Amendment to the Articles of Incorporation filed on May 8, 1996 (*See* Articles 4.2.9(f), 4.3.3 and 11); (b) the reverse stock split violates the Company's Restated Bylaws (*See* Sections 4.14 and 5.2); (c) R. John Taylor and Connie Taylor Henderson's shares are disqualified from voting on the reverse split and other matters and 818,659 of their shares were unlawfully issued; (d) the reverse stock split violates the fiduciary duties owed by John Taylor, Connie Taylor Henderson and James Beck to the minority shareholders (notwithstanding the fact that they have never been properly elected and are disqualified from serving based upon their acts of malfeasance and aiding and abetting the commission and covering up of torts against the Company and its minority shareholders); (e) the reverse stock split and the past and present operation of the Company constitutes the unlawful squeezing out and oppression of minority shareholders by R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman and others purporting to act as officers of the Company (including JoLee Duclos); and (f) the reverse stock split violates Idaho law (including as it pertains to the duties and obligations of directors and officers to the Company).

4.      The undersigned shareholder(s) does not consent to or ratify any prior or future purported service of R. John Taylor, Connie Taylor Henderson or James Beck on the Company's Board of Directors and asserts that they have not been properly elected and are not properly qualified to serve based upon their conflicts of interest, acts and/or omissions. Any resolutions or decision of the alleged Board of Directors purportedly approving the reverse stock split and other resolutions are illegal and void.

5.      The undersigned shareholder(s) reserves all legal rights, claims and remedies, including, without limitation, the right to seek damages, injunctive relief or rescission of: the reverse stock split should it be effectuated; any appointment of R. John Taylor, Connie Taylor Henderson and/or James Beck to the Company's Board of Directors, and/or the appointment of any officer of the Company by any of the foregoing parties, including, without limitation, the appointment of R. John Taylor, Connie Taylor Henderson, James Beck, JoLee Duclos or Aimee Gordon to serve as officers of the Company.

Dated this _17_ day of July, 2012.

_____
Paul D. Durant

Exhibit - T

## ·NOTICE OF INTENT TO DEMAND PAYMENT (I.C. § 30-1-1321)

1.      Pursuant to I.C. § 30-1-1321 and I.C. § 30-1-1301 *et seq.*, if the proposed reverse stock · split is effectuated, the undersigned shareholder(s) hereby demands full and fair payment and hereby asserts appraisal rights as to all common shares owned and/or beneficially held by the undersigned shareholder(s) in AIA Services Corporation ("Company"). This demand, if executed and/or delivered by. facsimile or pdf attachment, shall constitute an original document.

2.      The undersigned shareholder(s) asserts that no fair valuation of any common shares may be determined until the claims pending in *Donna J. Taylor v. Hawley Troxell, R. John Taylor, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case") have been resolved and the amount of damages recovered and considered in any fair valuation. Until the Federal Court Case is resolved and all improper payments, distributions and transfers have been recovered, it is impossible and prejudicially unfair to attempt making a determination or appraisal of the fair value of the common shares held or beneficially owned by the undersigned shareholder(s).

3.      By making the demands in Paragraphs 1-2 above, the undersigned shareholder(s) does not waive any legal rights or remedies pertaining to the legality of the reverse stock split, the determination of fair value or any other acts and/or omissions, including, without limitation: (a) the reverse split violates the Company's Articles of Amendment to the Articles of Incorporation filed on May 8, 1996 (*See* Articles 4.2.9(f), 4.3.3 and 11); (b) the reverse stock split violates the Company's Restated Bylaws (*See* Sections 4.14 and 5.2); (c) R. John Taylor and Connie Taylor Henderson's shares are disqualified from voting on the reverse split and other matters and 818,659 of their shares were unlawfully issued; (d) the reverse stock split violates the fiduciary duties owed by John Taylor, Connie Taylor Henderson and James Beck to the minority shareholders (notwithstanding the fact that they have never been properly elected and are disqualified from serving based upon their acts of malfeasance and aiding and abetting the commission and covering up of torts against the Company and its minority · shareholders); (e) the reverse stock split and the past and present operation of the Company constitutes the unlawful squeezing out and oppression of minority shareholders by R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman and others purporting to act as officers of the Company (including JoLee Duclos); and (f) the reverse stock split violates Idaho law (including as it pertains to the duties and obligations of directors and officers to the Company).

4.      The undersigned shareholder(s) does not consent to or ratify any prior or future purported service of R. John Taylor, Connie Taylor Henderson or James Beck on the Company's Board of Directors and asserts that they have not been properly elected and are not properly qualified to serve based upon their conflicts of interest, acts and/or omissions. Any resolutions or decision of the alleged Board of Directors purportedly approving the reverse stock split and other resolutions are illegal and void.

5.      The undersigned shareholder(s) reserves all legal rights, claims and remedies, including, without limitation, the right to seek damages, injunctive relief or rescission of: the reverse stock split should it be effectuated; any appointment of R. John Taylor, Connie Taylor Henderson and/or James Beck to the Company's Board of Directors, and/or the appointment of any officer of the Company by any of the foregoing parties, including, without limitation, the appointment of R. John Taylor, Connie Taylor Henderson, James Beck, JoLee Duclos or Aimee Gordon to serve as officers of the Company.

:    Dated this __13__ day of July, 2012.

Kay Blanchett

Exhibit - T

## NOTICE OF INTENT TO DEMAND PAYMENT (I.C. § 30-1-1321)

1.      Pursuant to I.C. § 30-1-1321 and I.C. § 30-1-1301 *et seq.*, if the proposed reverse stock split is effectuated, the undersigned shareholder(s) hereby demands full and fair payment and hereby asserts appraisal rights as to all common shares owned and/or beneficially held by the undersigned shareholder(s) in AIA Services Corporation ("Company"). This demand, if executed and/or delivered by facsimile or pdf attachment, shall constitute an original document.

2.      The undersigned shareholder(s) asserts that no fair valuation of any common shares may be determined until the claims pending in *Donna J. Taylor v. Hawley Troxell, R. John Taylor, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case") have been resolved and the amount of damages recovered and considered in any fair valuation. Until the Federal Court Case is resolved and all improper payments, distributions and transfers have been recovered, it is impossible and prejudicially unfair to attempt making a determination or appraisal of the fair value of the common shares held or beneficially owned by the undersigned shareholder(s).

3.      By making the demands in Paragraphs 1-2 above, the undersigned shareholder(s) does not waive any legal rights or remedies pertaining to the legality of the reverse stock split, the determination of fair value or any other acts and/or omissions, including, without limitation: (a) the reverse split violates the Company's Articles of Amendment to the Articles of Incorporation filed on May 8, 1996 (*See* Articles 4.2.9(f), 4.3.3 and 11); (b) the reverse stock split violates the Company's Restated Bylaws (*See* Sections 4.14 and 5.2); (c) R. John Taylor and Connie Taylor Henderson's shares are disqualified from voting on the reverse split and other matters and 818,659 of their shares were unlawfully issued; (d) the reverse stock split violates the fiduciary duties owed by John Taylor, Connie Taylor Henderson and James Beck to the minority shareholders (notwithstanding the fact that they have never been properly elected and are disqualified from serving based upon their acts of malfeasance and aiding and abetting the commission and covering up of torts against the Company and its minority shareholders); (e) the reverse stock split and the past and present operation of the Company constitutes the unlawful squeezing out and oppression of minority shareholders by R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman and others purporting to act as officers of the Company (including JoLee Duclos); and (f) the reverse stock split violates Idaho law (including as it pertains to the duties and obligations of directors and officers to the Company).

4.      The undersigned shareholder(s) does not consent to or ratify any prior or future purported service of R. John Taylor, Connie Taylor Henderson or James Beck on the Company's Board of Directors and asserts that they have not been properly elected and are not properly qualified to serve based upon their conflicts of interest, acts and/or omissions. Any resolutions or decision of the alleged Board of Directors purportedly approving the reverse stock split and other resolutions are illegal and void.

5.      The undersigned shareholder(s) reserves all legal rights, claims and remedies, including, without limitation, the right to seek damages, injunctive relief or rescission of: the reverse stock split should it be effectuated; any appointment of R. John Taylor, Connie Taylor Henderson and/or James Beck to the Company's Board of Directors, and/or the appointment of any officer of the Company by any of the foregoing parties, including, without limitation, the appointment of R. John Taylor, Connie Taylor Henderson, James Beck, JoLee Duclos or Aimee Gordon to serve as officers of the Company.

Dated this 13 day of July, 2012.

Lee Ann Hostetler

Exhibit - T

## NOTICE OF INTENT TO DEMAND PAYMENT (I.C. § 30-1-1321)

1.      Pursuant to I.C. § 30-1-1321 and I.C. § 30-1-1301 *et seq.*, if the proposed reverse stock split is effectuated, the undersigned shareholder(s) hereby demands full and fair payment and hereby asserts appraisal rights as to all common shares owned and/or beneficially held by the undersigned shareholder(s) in AIA Services Corporation ("Company"). This demand, if executed and/or delivered by facsimile or pdf attachment, shall constitute an original document.

2.      The undersigned shareholder(s) asserts that no fair valuation of any common shares may be determined until the claims pending in *Donna J. Taylor v. Hawley Troxell, R. John Taylor, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case") have been resolved and the amount of damages recovered and considered in any fair valuation. Until the Federal Court Case is resolved and all improper payments, distributions and transfers have been recovered, it is impossible and prejudicially unfair to attempt making a determination or appraisal of the fair value of the common shares held or beneficially owned by the undersigned shareholder(s).

3.      By making the demands in Paragraphs 1-2 above, the undersigned shareholder(s) does not waive any legal rights or remedies pertaining to the legality of the reverse stock split, the determination of fair value or any other acts and/or omissions, including, without limitation: (a) the reverse split violates the Company's Articles of Amendment to the Articles of Incorporation filed on May 8, 1996 (*See* Articles 4.2.9(f), 4.3.3 and 11); (b) the reverse stock split violates the Company's Restated Bylaws (*See* Sections 4.14 and 5.2); (c) R. John Taylor and Connie Taylor Henderson's shares are disqualified from voting on the reverse split and other matters and 818,659 of their shares were unlawfully issued; (d) the reverse stock split violates the fiduciary duties owed by John Taylor, Connie Taylor Henderson and James Beck to the minority shareholders (notwithstanding the fact that they have never been properly elected and are disqualified from serving based upon their acts of malfeasance and aiding and abetting the commission and covering up of torts against the Company and its minority shareholders); (e) the reverse stock split and the past and present operation of the Company constitutes the unlawful squeezing out and oppression of minority shareholders by R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman and others purporting to act as officers of the Company (including JoLee Duclos); and (f) the reverse stock split violates Idaho law (including as it pertains to the duties and obligations of directors and officers to the Company).

4.      The undersigned shareholder(s) does not consent to or ratify any prior or future purported service of R. John Taylor, Connie Taylor Henderson or James Beck on the Company's Board of Directors and asserts that they have not been properly elected and are not properly qualified to serve based upon their conflicts of interest, acts and/or omissions. Any resolutions or decision of the alleged Board of Directors purportedly approving the reverse stock split and other resolutions are illegal and void.

5.      The undersigned shareholder(s) reserves all legal rights, claims and remedies, including, without limitation, the right to seek damages, injunctive relief or rescission of: the reverse stock split should it be effectuated; any appointment of R. John Taylor, Connie Taylor Henderson and/or James Beck to the Company's Board of Directors, and/or the appointment of any officer of the Company by any of the foregoing parties, including, without limitation, the appointment of R. John Taylor, Connie Taylor Henderson, James Beck, JoLee Duclos or Aimee Gordon to serve as officers of the Company.

Dated this __11__ day of July, 2012.

_____
Jerry A. Legg



## Exhibit - T

## NOTICE OF INTENT TO DEMAND PAYMENT (I.C. § 30-1-1321)

1.      Pursuant to I.C. § 30-1-1321 and I.C. § 30-1-1301 *et seq.*, if the proposed reverse stock split is effectuated, the undersigned shareholder(s) hereby demands full and fair payment and hereby asserts appraisal rights as to all common shares owned and/or beneficially held by the undersigned shareholder(s) in AIA Services Corporation ("Company"). This demand, if executed and/or delivered by facsimile or pdf attachment, shall constitute an original document.

2.      The undersigned shareholder(s) asserts that no fair valuation of any common shares may be determined until the claims pending in *Donna J. Taylor v. Hawley Troxell, R. John Taylor, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case") have been resolved and the amount of damages recovered and considered in any fair valuation. Until the Federal Court Case is resolved and all improper payments, distributions and transfers have been recovered, it is impossible and prejudicially unfair to attempt making a determination or appraisal of the fair value of the common shares held or beneficially owned by the undersigned shareholder(s).

3.      By making the demands in Paragraphs 1-2 above, the undersigned shareholder(s) does not waive any legal rights or remedies pertaining to the legality of the reverse stock split, the determination of fair value or any other acts and/or omissions, including, without limitation: (a) the reverse split violates the Company's Articles of Amendment to the Articles of Incorporation filed on May 8, 1996 (*See* Articles 4.2.9(f), 4.3.3 and 11); (b) the reverse stock split violates the Company's Restated Bylaws (*See* Sections 4.14 and 5.2); (c) R. John Taylor and Connie Taylor Henderson's shares are disqualified from voting on the reverse split and other matters and 818,659 of their shares were unlawfully issued; (d) the reverse stock split violates the fiduciary duties owed by John Taylor, Connie Taylor Henderson and James Beck to the minority shareholders (notwithstanding the fact that they have never been properly elected and are disqualified from serving based upon their acts of malfeasance and aiding and abetting the commission and covering up of torts against the Company and its minority shareholders); (e) the reverse stock split and the past and present operation of the Company constitutes the unlawful squeezing out and oppression of minority shareholders by R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman and others purporting to act as officers of the Company (including JoLee Duclos); and (f) the reverse stock split violates Idaho law (including as it pertains to the duties and obligations of directors and officers to the Company).

4.      The undersigned shareholder(s) does not consent to or ratify any prior or future purported service of R. John Taylor, Connie Taylor Henderson or James Beck on the Company's Board of Directors and asserts that they have not been properly elected and are not properly qualified to serve based upon their conflicts of interest, acts and/or omissions. Any resolutions or decision of the alleged Board of Directors purportedly approving the reverse stock split and other resolutions are illegal and void.

5.      The undersigned shareholder(s) reserves all legal rights, claims and remedies, including, without limitation, the right to seek damages, injunctive relief or rescission of: the reverse stock split should it be effectuated; any appointment of R. John Taylor, Connie Taylor Henderson and/or James Beck to the Company's Board of Directors, and/or the appointment of any officer of the Company by any of the foregoing parties, including, without limitation, the appointment of R. John Taylor, Connie Taylor Henderson, James Beck, JoLee Duclos or Aimee Gordon to serve as officers of the Company.

Dated this __11__ day of July, 2012.

Dale Miesen

Exhibit - T

## NOTICE OF INTENT TO DEMAND PAYMENT (I.C. § 30-1-1321)

1.      Pursuant to I.C. § 30-1-1321 and I.C, § 30-1-1301 *et seq.*, if the proposed reverse stock split is effectuated, the undersigned shareholder(s) hereby demands full and fair payment and hereby asserts appraisal rights as to all common shares owned and/or beneficially held by the undersigned shareholder(s) in AIA Services Corporation ("Company"). This demand, if executed and/or delivered by facsimile or pdf attachment, shall constitute an original document.

2.      The undersigned shareholder(s) asserts that no fair valuation of any common shares may be determined until the claims pending in *Donna J. Taylor v. Hawley Troxell, R. John Taylor, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case") have been resolved and the amount of damages recovered and considered in any fair valuation. Until the Federal Court Case is resolved and all improper payments, distributions and transfers have been recovered, it is impossible and prejudicially unfair to attempt making a determination or appraisal of the fair value of the common shares held or beneficially owned by the undersigned shareholder(s).

3.      By making the demands in Paragraphs 1-2 above, the undersigned shareholder(s) does not waive any legal rights or remedies pertaining to the legality of the reverse stock split, the determination of fair value or any other acts and/or omissions, including, without limitation: (a) the reverse split violates the Company's Articles of Amendment to the Articles of Incorporation filed on May 8, 1996 (*See* Articles 4.2.9(f), 4.3.3 and 11); (b) the reverse stock split violates the Company's Restated Bylaws (*See* Sections 4.14 and 5.2); (c) R. John Taylor and Connie Taylor Henderson's shares are disqualified from voting on the reverse split and other matters and 818,659 of their shares were unlawfully issued; (d) the reverse stock split violates the fiduciary duties owed by John Taylor, Connie Taylor Henderson and James Beck to the minority shareholders (notwithstanding the fact that they have never been properly elected and are disqualified from serving based upon their acts of malfeasance and aiding and abetting the commission and covering up of torts against the Company and its minority shareholders); (e) the reverse stock split and the past and present operation of the Company constitutes the unlawful squeezing out and oppression of minority shareholders by R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman and others purporting to act as officers of the Company (including JoLee Duclos); and (f) the reverse stock split violates Idaho law (including as it pertains to the duties and obligations of directors and officers to the Company).

4.      The undersigned shareholder(s) does not consent to or ratify any prior or future purported service of R. John Taylor, Connie Taylor Henderson or James Beck on the Company's Board of Directors and asserts that they have not been properly elected and are not properly qualified to serve based upon their conflicts of interest, acts and/or omissions. Any resolutions or decision of the alleged Board of Directors purportedly approving the reverse stock split and other resolutions are illegal and void.

5.      The undersigned shareholder(s) reserves all legal rights, claims and remedies, including, without limitation, the right to seek damages, injunctive relief or rescission of: the reverse stock split should it be effectuated; any appointment of R. John Taylor, Connie Taylor Henderson and/or James Beck to the Company's Board of Directors, and/or the appointment of any officer of the Company by any of the foregoing parties, including, without limitation, the appointment of R. John Taylor, Connie Taylor Henderson, James Beck, JoLee Duclos or Aimee Gordon to serve as officers of the Company.

Dated this **12** day of July, 2012.

_Heather Miesen_

Heather Miesen
Heather Miesen Living Trust

Exhibit - T

## NOTICE OF INTENT TO DEMAND PAYMENT (I.C. § 30-1-1321)

1. Pursuant to I.C. § 30-1-1321 and I.C. § 30-1-1301 *et seq.*, if the proposed reverse stock split is effectuated, the undersigned shareholder(s) hereby demands full and fair payment and hereby asserts appraisal rights as to all common shares owned and/or beneficially held by the undersigned shareholder(s) in AIA Services Corporation ("Company"). This demand, if executed and/or delivered by facsimile or pdf attachment, shall constitute an original document.

2. The undersigned shareholder(s) asserts that no fair valuation of any common shares may be determined until the claims pending in *Donna J. Taylor v. Hawley Troxell, R. John Taylor, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case") have been resolved and the amount of damages recovered and considered in any fair valuation. Until the Federal Court Case is resolved and all improper payments, distributions and transfers have been recovered, it is impossible and prejudicially unfair to attempt making a determination or appraisal of the fair value of the common shares held or beneficially owned by the undersigned shareholder(s).

3. By making the demands in Paragraphs 1-2 above, the undersigned shareholder(s) does not waive any legal rights or remedies pertaining to the legality of the reverse stock split, the determination of fair value or any other acts and/or omissions, including, without limitation: (a) the reverse split violates the Company's Articles of Amendment to the Articles of Incorporation filed on May 8, 1996 (*See* Articles 4.2.9(f), 4.3.3 and 11); (b) the reverse stock split violates the Company's Restated Bylaws (*See* Sections 4.14 and 5.2); (c) R. John Taylor and Connie Taylor Henderson's shares are disqualified from voting on the reverse split and other matters and 818,659 of their shares were unlawfully issued; (d) the reverse stock split violates the fiduciary duties owed by John Taylor, Connie Taylor Henderson and James Beck to the minority shareholders (notwithstanding the fact that they have never been properly elected and are disqualified from serving based upon their acts of malfeasance and aiding and abetting the commission and covering up of torts against the Company and its minority shareholders); (e) the reverse stock split and the past and present operation of the Company constitutes the unlawful squeezing out and oppression of minority shareholders by R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman and others purporting to act as officers of the Company (including JoLee Duclos); and (f) the reverse stock split violates Idaho law (including as it pertains to the duties and obligations of directors and officers to the Company).

4. The undersigned shareholder(s) does not consent to or ratify any prior or future purported service of R. John Taylor, Connie Taylor Henderson or James Beck on the Company's Board of Directors and asserts that they have not been properly elected and are not properly qualified to serve based upon their conflicts of interest, acts and/or omissions. Any resolutions or decision of the alleged Board of Directors purportedly approving the reverse stock split and other resolutions are illegal and void.

5. . The undersigned shareholder(s) reserves all legal rights, claims and remedies, including, without limitation, the right to seek damages, injunctive relief or rescission of: the reverse stock split should it be effectuated; any appointment of R. John Taylor, Connie Taylor Henderson and/or James Beck to the Company's Board of Directors, and/or the appointment of any officer of the Company by any of the foregoing parties, including, without limitation, the appointment of R. John Taylor, Connie Taylor Henderson, James Beck, JoLee Duclos or Aimee Gordon to serve as officers of the Company.

Dated this ___ day of July, 2012.

Jennifer Miesen
Jennifer Miesen Living Trust

Exhibit - T

## NOTICE OF INTENT TO DEMAND PAYMENT (I.C. § 30-1-1321)

1.       Pursuant to I.C. § 30-1-1321 and I.C. § 30-1-1301 *et seq.*, If the proposed reverse stock split is effectuated, the undersigned shareholder(s) hereby demands full and fair payment and hereby asserts appraisal rights as to all common shares owned and/or beneficially held by the undersigned shareholder(s) in AIA Services Corporation ("Company"). This demand, if executed and/or delivered by facsimile or pdf attachment, shall constitute an original document.

2.       The undersigned shareholder(s) asserts that no fair valuation of any common shares may be determined until the claims pending in *Donna J. Taylor v. Hawley Troxell, R. John Taylor, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case") have been resolved and the amount of damages recovered and considered in any fair valuation. Until the Federal Court Case is resolved and all improper payments, distributions and transfers have been recovered, it is impossible and prejudicially unfair to attempt making a determination or appraisal of the fair value of the common shares held or beneficially owned by the undersigned shareholder(s).

3.       By making the demands in Paragraphs 1-2 above, the undersigned shareholder(s) does not waive any legal rights or remedies pertaining to the legality of the reverse stock split, the determination of fair value or any other acts and/or omissions, including, without limitation: (a) the reverse split violates the Company's Articles of Amendment to the Articles of Incorporation filed on May 8, 1996 (*See* Articles 4.2.9(f), 4.3.3 and 11); (b) the reverse stock split violates the Company's Restated Bylaws (*See* Sections 4.14 and 5.2); (c) R. John Taylor and Connie Taylor Henderson's shares are disqualified from voting on the reverse split and other matters and 818,659 of their shares were unlawfully issued; (d) the reverse stock split violates the fiduciary duties owed by John Taylor, Connie Taylor Henderson and James Beck to the minority shareholders (notwithstanding the fact that they have never been properly elected and are disqualified from serving based upon their acts of malfeasance and aiding and abetting the commission and covering up of torts against the Company and its minority shareholders); (e) the reverse stock split and the past and present operation of the Company constitutes the unlawful squeezing out and oppression of minority shareholders by R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman and others purporting to act as officers of the Company (including JoLee Duclos); and (f) the reverse stock split violates Idaho law (including as it pertains to the duties and obligations of directors and officers to the Company).

4.       The undersigned shareholder(s) does not consent to or ratify any prior or future purported service of R. John Taylor, Connie Taylor Henderson or James Beck on the Company's Board of Directors and asserts that they have not been properly elected and are not properly qualified to serve based upon their conflicts of interest, acts and/or omissions. Any resolutions or decision of the alleged Board of Directors purportedly approving the reverse stock split and other resolutions are illegal and void.

5.       The undersigned shareholder(s) reserves all legal rights, claims and remedies, including, without limitation, the right to seek damages, injunctive relief or rescission of: the reverse stock split should it be effectuated; any appointment of R. John Taylor, Connie Taylor Henderson and/or James Beck to the Company's Board of Directors, and/or the appointment of any officer of the Company by any of the foregoing parties, including, without limitation, the appointment of R. John Taylor, Connie Taylor Henderson, James Beck, JoLee Duclos or Aimee Gordon to serve as officers of the Company.

Dated this 12 day of July, 2012.

Robert L. Miesen
Robert L. Miesen Living Trust

Exhibit - T

## NOTICE OF INTENT TO DEMAND PAYMENT (I.C. § 30-1-1321)

1.      Pursuant to I.C. § 30-1-1321 and I.C. § 30-1-1301 *et seq.*, if the proposed reverse stock split is effectuated, the undersigned shareholder(s) hereby demands full and fair payment and hereby asserts appraisal rights as to all common shares owned and/or beneficially held by the undersigned shareholder(s) in AIA Services Corporation ("Company"). This demand, if executed and/or delivered by facsimile or pdf attachment, shall constitute an original document.

2.      The undersigned shareholder(s) asserts that no fair valuation of any common shares may be determined until the claims pending in *Donna J. Taylor v. Hawley Troxell, R. John Taylor, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case") have been resolved and the amount of damages recovered and considered in any fair valuation. Until the Federal Court Case is resolved and all improper payments, distributions and transfers have been recovered, it is impossible and prejudicially unfair to attempt making a determination or appraisal of the fair value of the common shares held or beneficially owned by the undersigned shareholder(s).

3.      By making the demands in Paragraphs 1-2 above, the undersigned shareholder(s) does not waive any legal rights or remedies pertaining to the legality of the reverse stock split, the determination of fair value or any other acts and/or omissions, including, without limitation: (a) the reverse split violates the Company's Articles of Amendment to the Articles of Incorporation filed on May 8, 1996 (*See* Articles 4.2.9(f), 4.3.3 and 11); (b) the reverse stock split violates the Company's Restated Bylaws (*See* Sections 4.14 and 5.2); (c) R. John Taylor and Connie Taylor Henderson's shares are disqualified from voting on the reverse split and other matters and 818,659 of their shares were unlawfully issued; (d) the reverse stock split violates the fiduciary duties owed by John Taylor, Connie Taylor Henderson and James Beck to the minority shareholders (notwithstanding the fact that they have never been properly elected and are disqualified from serving based upon their acts of malfeasance and aiding and abetting the commission and covering up of torts against the Company and its minority shareholders); (e) the reverse stock split and the past and present operation of the Company constitutes the unlawful squeezing out and oppression of minority shareholders by R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman and others purporting to act as officers of the Company (including JoLee Duclos); and (f) the reverse stock split violates Idaho law (including as it pertains to the duties and obligations of directors and officers to the Company).

4.      The undersigned shareholder(s) does not consent to or ratify any prior or future purported service of R. John Taylor, Connie Taylor Henderson or James Beck on the Company's Board of Directors and asserts that they have not been properly elected and are not properly qualified to serve based upon their conflicts of interest, acts and/or omissions. Any resolutions or decision of the alleged Board of Directors purportedly approving the reverse stock split and other resolutions are illegal and void.

5.      The undersigned shareholder(s) reserves all legal rights, claims and remedies, including, without limitation, the right to seek damages, injunctive relief or rescission of: the reverse stock split should it be effectuated; any appointment of R. John Taylor, Connie Taylor Henderson and/or James Beck to the Company's Board of Directors, and/or the appointment of any officer of the Company by any of the foregoing parties, including, without limitation, the appointment of R. John Taylor, Connie Taylor Henderson, James Beck, JoLee Duclos or Aimee Gordon to serve as officers of the Company.

Dated this __11__ day of July, 2012.

_____
Dale L. Miesen

_____
Jonathan Eckburg Brown Jr.

_____
Jonathan Ekberg *corrected*

Exhibit - T

## NOTICE OF INTENT TO DEMAND PAYMENT (I.C. § 30-1-1321)

1.  Pursuant to I.C. § 30-1-1321 and I.C. § 30-1-1301 *et seq.*, If the proposed reverse stock split is effectuated, the undersigned shareholder(s) hereby demands full and fair payment and hereby asserts appraisal rights as to all common shares owned and/or beneficially held by the undersigned shareholder(s) in AIA Services Corporation ("Company"). This demand, if executed and/or delivered by facsimile or pdf attachment, shall constitute an original document.

2.  The undersigned shareholder(s) asserts that no fair valuation of any common shares may be determined until the claims pending in *Donna J. Taylor v. Hawley Troxell, R. John Taylor, et al.,* United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case") have been resolved and the amount of damages recovered and considered in any fair valuation. Until the Federal Court Case is resolved and all improper payments, distributions and transfers have been recovered, it is impossible and prejudicially unfair to attempt making a determination or appraisal of the fair value of the common shares held or beneficially owned by the undersigned shareholder(s).

3.  By making the demands in Paragraphs 1-2 above, the undersigned shareholder(s) does not waive any legal rights or remedies pertaining to the legality of the reverse stock split, the determination of fair value or any other acts and/or omissions, including, without limitation: (a) the reverse split violates the Company's Articles of Amendment to the Articles of Incorporation filed on May 8, 1996 (*See* Articles 4.2.9(f), 4.3.3 and 11); (b) the reverse stock split violates the Company's Restated Bylaws (*See* Sections 4.14 and 5.2); (c) R. John Taylor and Connie Taylor Henderson's shares are disqualified from voting on the reverse split and other matters and 818,659 of their shares were unlawfully issued; (d) the reverse stock split violates the fiduciary duties owed by John Taylor, Connie Taylor Henderson and James Beck to the minority shareholders (notwithstanding the fact that they have never been properly elected and are disqualified from serving based upon their acts of malfeasance and aiding and abetting the commission and covering up of torts against the Company and its minority shareholders); (e) the reverse stock split and the past and present operation of the Company constitutes the unlawful squeezing out and oppression of minority shareholders by R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman and others purporting to act as officers of the Company (including JoLee Duclos); and (f) the reverse stock split violates Idaho law (including as it pertains to the duties and obligations of directors and officers to the Company).

4.  The undersigned shareholder(s) does not consent to or ratify any prior or future purported service of R. John Taylor, Connie Taylor Henderson or James Beck on the Company's Board of Directors and asserts that they have not been properly elected and are not properly qualified to serve based upon their conflicts of interest, acts and/or omissions. Any resolutions or decision of the alleged Board of Directors purportedly approving the reverse stock split and other resolutions are illegal and void.

5.  The undersigned shareholder(s) reserves all legal rights, claims and remedies, including, without limitation, the right to seek damages, injunctive relief or rescission of: the reverse stock split should it be effectuated; any appointment of R. John Taylor, Connie Taylor Henderson and/or James Beck to the Company's Board of Directors, and/or the appointment of any officer of the Company by any of the foregoing parties, including, without limitation, the appointment of R. John Taylor, Connie Taylor Henderson, James Beck, JoLee Duclos or Aimee Gordon to serve as officers of the Company.

Dated this ___11___ day of July, 2012.

_Carmen S. Taylor_

Carmen S. Taylor (for the shares held in the name of Jay R. Taylor)

# Exhibit - T

## NOTICE OF INTENT TO DEMAND PAYMENT (I.C. § 30-1-1321)

1.       Pursuant to I.C. § 30-1-1321 and I.C. § 30-1-1301 *et seq.*, if the proposed reverse stock split is effectuated, each of the undersigned shareholder(s) hereby demands full and fair payment and hereby asserts appraisal rights as to each of their one-half of the common shares owned in the name of Sara Taylor (all 18,593 common shares are included in this demand for payment) and beneficially held/own by the undersigned shareholder(s) in AIA Services Corporation ("Company"). This demand, if executed and/or delivered by facsimile or pdf attachment, shall constitute an original document.

2.       The undersigned shareholder(s) asserts that no fair valuation of any common shares may be determined until the claims pending in *Donna J. Taylor v. Hawley Troxell, R. John Taylor, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case") have been resolved and the amount of damages recovered and considered in any fair valuation. Until the Federal Court Case is resolved and all improper payments, distributions and transfers have been recovered, it is impossible and prejudicially unfair to attempt making a determination or appraisal of the fair value of the common shares held or beneficially owned by the undersigned shareholder(s).

3.       By making the demands in Paragraphs 1-2 above, the undersigned shareholder(s) does not waive any legal rights or remedies pertaining to the legality of the reverse stock split, the determination of fair value or any other acts and/or omissions, including, without limitation: (a) the reverse split violates the Company's Articles of Amendment to the Articles of Incorporation filed on May 8, 1996 (*See* Articles 4.2.9(f), 4.3.3 and 11); (b) the reverse stock split violates the Company's Restated Bylaws (*See* Sections 4.14 and 5.2); (c) R. John Taylor and Connie Taylor Henderson's shares are disqualified from voting on the reverse split and other matters and 818,659 of their shares were unlawfully issued; (d) the reverse stock split violates the fiduciary duties owed by John Taylor, Connie Taylor Henderson and James Beck to the minority shareholders (notwithstanding the fact that they have never been properly elected and are disqualified from serving based upon their acts of malfeasance and aiding and abetting the commission and covering up of torts against the Company and its minority shareholders); (e) the reverse stock split and the past and present operation of the Company constitutes the unlawful squeezing out and oppression of minority shareholders by R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman and others purporting to act as officers of the Company (including JoLee Duclos); and (f) the reverse stock split violates Idaho law (including as it pertains to the duties and obligations of directors and officers to the Company).

4.       The undersigned shareholder(s) does not consent to or ratify any prior or future purported service of R. John Taylor, Connie Taylor Henderson or James Beck on the Company's Board of Directors and asserts that they have not been properly elected and are not properly qualified to serve based upon their conflicts of interest, acts and/or omissions. Any resolutions or decision of the alleged Board of Directors purportedly approving the reverse stock split and other resolutions are illegal and void.

5.       The undersigned shareholder(s) reserves all legal rights, claims and remedies, including, without limitation, the right to seek damages, injunctive relief or rescission of: the reverse stock split should it be effectuated; any appointment of R. John Taylor, Connie Taylor Henderson and/or James Beck to the Company's Board of Directors, and/or the appointment of any officer of the Company by any of the foregoing parties, including, without limitation, the appointment of R. John Taylor, Connie Taylor Henderson, James Beck, JoLee Duclos or Aimee Gordon to serve as officers of the Company.

Dated this __15__ day of July, 2012.          Dated this __15__ day of July, 2012.

_____          _____
Reed J. Taylor                                              Donna J. Taylor

Exhibit - T

## NOTICE OF INTENT TO DEMAND PAYMENT (I.C. § 30-1-1321)

1.      Pursuant to I.C. § 30-1-1321 end I.C. § 30-1-1301 *et seq.*, If the proposed reverse stock split is effectuated, the undersigned shareholder(s) hereby demands full and fair payment and hereby asserts appraisal rights as to all common shares owned and/or beneficially held by the undersigned shareholder(s) In AIA Services Corporation ("Company"). This demand, if executed and/or delivered by facslmile or pdf attachment, shall constitute an original document.

2.      The undersigned shareholder(s) asserts that no fair valuation of any common shares may be determined until the claims pending in *Donna J. Taylor v. Hawley Troxell, R. John Taylor, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case") have been resolved and the amount of damages recovered and considered in any fair valuation. Until the Federal Court Case is resolved and all improper payments, distributions and transfers have been recovered, it is impossible and prejudicially unfair to attempt making a determination or appraisal of the fair value of the common shares held or beneficially owned by the undersigned shareholder(s).

3.      By making the demands In Paragraphs 1-2 above, the undersigned shareholder(s) does not waive any legal rights or remedies pertaining to the legality of the reverse stock split, the determination of fair value or any other acts and/or omissions, Including, without limitation: (a) the reverse split violates the Company's Articles of Amendment to the Articles of Incorporation filed on May 8, 1996 (*See* Articles 4.2.9(f), 4.3.3 and 11); (b) the reverse stock split violates the Company's Restated Bylaws (*See* Sections 4.14 and 5.2); (c) R. John Taylor and Connle Taylor Henderson's shares are disqualified from voting on the reverse split and other matters and 818,659 of their shares were unlawfully issued; (d) the reverse stock split violates the fiduciary duties owed by John Taylor, Connle Taylor Henderson and James Beck to the minority shareholders (notwithstanding the fact that they have never been properly elected and are disqualified from serving based upon their acts of malfeasance and aiding and abetting the commission and covering up of torts against the Company and its minority shareholders); (e) the reverse stock split and the past and present operation of the Company constitutes the unlawful squeezing out and oppression of minority shareholders by R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman and others purporting to act as officers of the Company (including JoLee Duclos); and (f) the reverse stock split violates Idaho law (including as it pertains to the duties and obligations of directors and officers to the Company).

4.      The undersigned shareholder(s) does not consent to or ratify any prior or future purported service of R. John Taylor, Connie Taylor Henderson or James Beck on the Company's Board of Directors and asserts that they have not been properly elected and are not properly qualified to serve based upon their conflicts of interest, acts and/or omissions. Any resolutions or decision of the alleged Board of Directors purportedly approving the reverse stock split and other resolutions are illegal and void.

5.      The undersigned shareholder(s) reserves all legal rights, claims and remedies, Including, without limitation, the right to seek damages, injunctive relief or rescission of: the reverse stock split should It be effectuated; any appointment of R. John Taylor, Connie Taylor Henderson and/or James Beck to the Company's Board of Directors, and/or the appointment of any officer of the Company by any of the foregoing parties, including, without limitation, the appointment of R. John Taylor, Connie Taylor Henderson, James Beck, JoLee Duclos or Aimee Gordon to serve as officers of the Company.

Dated this /3 day of July, 2012.

R. Taylor

Exhibit - T

## NOTICE OF INTENT TO DEMAND PAYMENT (I.C. § 30-1-1321)

1.      Pursuant to I.C. § 30-1-1321 and I.C. § 30-1-1301 *et seq.*, if the proposed reverse stock split is effectuated, the undersigned shareholder(s) hereby demands full and fair payment and hereby asserts appraisal rights as to all common shares owned and/or beneficially held by the undersigned shareholder(s) in AIA Services Corporation ("Company"). This demand, if executed and/or delivered by facsimile or pdf attachment, shall constitute an original document.

2.      The undersigned shareholder(s) asserts that no fair valuation of any common shares may be determined until the claims pending in *Donna J. Taylor v. Hawley Troxell, R. John Taylor, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case") have been resolved and the amount of damages recovered and considered in any fair valuation. Until the Federal Court Case is resolved and all improper payments, distributions and transfers have been recovered, it is impossible and prejudicially unfair to attempt making a determination or appraisal of the fair value of the common shares held or beneficially owned by the undersigned shareholder(s).

3.      By making the demands in Paragraphs 1-2 above, the undersigned shareholder(s) does not waive any legal rights or remedies pertaining to the legality of the reverse stock split, the determination of fair value or any other acts and/or omissions, including, without limitation: (a) the reverse split violates the Company's Articles of Amendment to the Articles of Incorporation filed on May 8, 1996 (*See* Articles 4.2.9(f), 4.3.3 and 11); (b) the reverse stock split violates the Company's Restated Bylaws (*See* Sections 4.14 and 5.2); (c) R. John Taylor and Connie Taylor Henderson's shares are disqualified from voting on the reverse split and other matters and 818,659 of their shares were unlawfully issued; (d) the reverse stock split violates the fiduciary duties owed by John Taylor, Connie Taylor Henderson and James Beck to the minority shareholders (notwithstanding the fact that they have never been properly elected and are disqualified from serving based upon their acts of malfeasance and aiding and abetting the commission and covering up of torts against the Company and its minority shareholders); (e) the reverse stock split and the past and present operation of the Company constitutes the unlawful squeezing out and oppression of minority shareholders by R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman and others purporting to act as officers of the Company (including JoLee Duclos); and (f) the reverse stock split violates Idaho law (including as it pertains to the duties and obligations of directors and officers to the Company).

4.      The undersigned shareholder(s) does not consent to or ratify any prior or future purported service of R. John Taylor, Connie Taylor Henderson or James Beck on the Company's Board of Directors and asserts that they have not been properly elected and are not properly qualified to serve based upon their conflicts of interest, acts and/or omissions. Any resolutions or decision of the alleged Board of Directors purportedly approving the reverse stock split and other resolutions are illegal and void.

5.      The undersigned shareholder(s) reserves all legal rights, claims and remedies, including, without limitation, the right to seek damages, injunctive relief or rescission of: the reverse stock split should it be effectuated; any appointment of R. John Taylor, Connie Taylor Henderson and/or James Beck to the Company's Board of Directors, and/or the appointment of any officer of the Company by any of the foregoing parties, including, without limitation, the appointment of R. John Taylor, Connie Taylor Henderson, James Beck, JoLee Duclos or Aimee Gordon to serve as officers of the Company.

Dated this __11th__ day of July, 2012.

_____
Bobette N. Ruddell

Exhibit - T

Exhibit C

Exhibit - T

## SHAREHOLDER DEMAND

The undersigned shareholder(s), as an owner(s) of record or beneficial holder(s) of preferred and/or common shares in AIA Services Corporation, hereby makes the following Shareholder Demand upon AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc. (collectively "Company") and the Company's Boards of Directors (this Demand also constitutes a derivative demand and double derivative demand) (collectively "Demand"):

1.     That R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, JoLee Duclos and Aimee Gordon be barred from serving as directors or officers of the Company based upon the ongoing malfeasance, conflicts of interest, failure to act in good faith, breaches of fiduciary duties (including the duties of loyalty, care and good faith) and other acts and/or omissions committed under their direction, participation and/or acquiescence, including, without limitation, those acts and/or omissions identified in the First Amended Complaint in *Donna J. Taylor* v. *Hawley Troxell Ennis & Hawley, R. John Taylor, Michael Cashman, James Beck, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case"), which said First Amended Complaint is incorporated by reference herein, and that legal action be taken against them.

2.     That Paul D. Durant be appointed as a director of AIA Services Corporation as requested and duly authorized and appointed by the sole Series A Preferred Shareholder of the Company, Donna J. Taylor.

3.     That Paul D. Durant be appointed as the President of AIA Services Corporation and AIA Insurance, Inc., to be duly compensated, and to operate those entities in the best interests of the corporations and their shareholders (with an emphasis on recovering damages and sums from majority shareholder R. John Taylor and Connie Taylor Henderson and others for the benefit of the corporations and their innocent shareholders) and to retain and/or terminate such employee(s) and/or officer(s) as he deems appropriate to properly operate the corporations and pursue any claims set forth in the First Amended Complaint in the Federal Court Case and similar or other claims against named and unnamed parties. Mr. Durant should also be authorized to appoint other parties to the Board of Directors to serve until the next annual meeting as provided under the Restated Bylaws.

4.     That the Company (regardless of Mr. Durant's appointment as an officer or director of the Company), and Paul D. Durant if appointed as an director and/or officer, be authorized to pursue the claims and causes of action identified in the First Amended Complaint filed in the Federal court Case through the date of this Demand and for all related acts after the date of this Demand, including, without limitation, requesting and praying for punitive damages against the parties named in the Federal Court Case and any other responsible parties named in this Demand. A copy of said First Amended Complaint is incorporated by reference herein and is already in the possession of the Company and its purported officers and purported directors (a copy can also be obtained from PACER (the online filing system for the United States District Court for the District of Idaho)).

5.     That the Company refrain from pursuing e reverse stock split (which violates Articles 4.2.9(f), 4.3.3 and 11 of the Company's amended articles of incorporation and the Company's Restated Bylaws) or any other corporate action which is not in the best interests of the Company's preferred shareholders and minority shareholders or otherwise violates the Company's articles of incorporation, restated bylaws and/or Idaho law (including oppressive conduct and breaches of fiduciary duties). That any and all shares held by R. John Taylor and/or Connie Taylor Henderson be barred and disqualified from voting on the reverse stock split since that transaction is preferential to them and is being pursued without full disclosure.

1

Exhibit - T

6.    That the Company demand repayment of, and refrain from paying or advancing, any sums or assets for the payment of all attorneys' fees, expert witness fees, costs and expenses paid, advanced or lent by the Company for JoLee Duclos, R. John Taylor, Connie Taylor Henderson, James Beck, Corrine Beck, Michael Cashman, Jane Doe Cashman, and CropUSA Insurance Agency, Inc.

7.    That Paul D. Durant be authorized to appoint persons to committee(s) of the Board of Directors of the Company, with each committee comprised of at least two (2) of the minority shareholders of the Company to be determined in Mr. Durant's sole discretion and at least one (1) outside and independent person (or more should Mr. Durant desire). Said committee(s) should be used by Mr. Durant, in his discretion, to govern the Company and to maximize the value of the Company's shareholders and to wind up the affairs of the Company should no new viable businesses be obtained and the assets and funds used to pay creditors, preferred shareholders and distributed to common shareholders. Mr. Durant should be authorized to obtain approval for any acts from the Judge in the Federal Court Case or other court of competent jurisdiction to the extent required (including ultimately filing an action or taking action to dissolve the Company once all assets and funds have been identified and recovered or upon court or shareholder approval).

8.    That the Company rescind and/or revoke 818,659 of the common shares held by R. John Taylor and Connie Taylor Henderson as those shares were unlawfully issued by the Company when R. John Taylor violated his Executive Officer's Agreement with Company and they have acted as faithless fiduciaries of the Company (500,000 were granted as an option of the Executive Officers Agreement breached by R. John Taylor) and the other 318,659 shares obtained by R. John Taylor and/or Connie Taylor Henderson from Michael W. Cashman and Corrine M. Beck and/or James Beck were unlawfully issued to them and other former Series C Preferred Shareholders of the Company and are therefore not properly issued shares and those certificates and any subsequent certificates representing those common shares are illegal and void. The foregoing shares, along with the common shares unlawfully issued to Distribution Services, Inc., Bruce E. Knutson, Charles B. Rapp, Daryl R. Verdoorn and any other commons shares unlawfully issued to the former Series C Preferred Shareholders were illegally issued and void. The proper rescission and/or revocation of the foregoing shares increases the minority shareholder's ownership interest in the Company, instead of improperly diluting their ownership interest and increasing R. John Taylor and Connie Taylor Henderson's majority interest.

9.    That the Company terminate JoLee Duclos as the trustee of the Company's 401(k) Plan ("Plan") and appoint a disinterested party or person as the trustee of said Plan and that said person be provided full disclosure of all transactions, loans, malfeasance, redemptions, transfers and all other acts and/or omissions of R. John Taylor and JoLee Duclos as the former co-trustees of the Plan.

10.    That the Company rescind and cancel the prior payments for the recent termination of the Employee Stock Ownership Plan of the Company ("ESOP") because the value of said shares cannot be fairly ascertained until the Federal Court Case has been concluded or resolved and other matters and claims resolved by the Company. The participants in the ESOP, like the other common shareholders, should receive the benefit of a fair valuation and/or distribution at the appropriate time.

11.    That Paul D. Durant be authorized to conduct such investigations and retain such services as he deems appropriate and/or necessary pertaining to any and all past transactions, loans, encumbrances, asset sales, share sales or transfers, share redemptions, salaries, payments, exchange offers and/or any other act or omission pertaining to the operations of AIA Services Corporation and AIA Insurance, Inc. and that the Company report said findings to the appropriate authorities and/or State Bar Associations and/or to take such other actions as Mr. Durant deems appropriate and in the best interest of the corporations.

2

Exhibit - T

12.     That the common shares of R. John Taylor, Connie Taylor Henderson and the other persons and entities identified in Paragraph 8 be barred from voting on any matters relative to the appointment of themselves to the Board of Directors and any other matters in which their shares have a conflict of interest by way of their participation in the malfeasance and/or covering up of the malfeasance against the Company and its other shareholders.

13.     That R. John Taylor, Connie Taylor Henderson, JoLee Duclos, James Beck and Michael Cashman be required to disgorge all compensation, directors fees, indemnification payments or cost advances, benefits, salaries, bonuses, reimbursements, and shares obtained through or from the Company (until the Federal Court Case is resolved) based of them being faithless fiduciaries of the Company.

14.     All actions and demands that are demanded to be taken by Paul Durant are also hereby demanded to be taken by the Company and/or its authorized Board of Directors to the extent persons named in this Demand or others seek to thwart any action by Paul Durant.

15.     That the Company fully disclose all transactions, obligations, loans and footnotes in the recent financial statements provided to shareholders and fully disclose how R. John Taylor, Connie Taylor Henderson and other persons identified in this Demand acquired their respective ownership interests in the entities identified in the footnotes, how the Company's ownership interests were eliminated, transferred or otherwise extinguished and how the transactions, obligations, loans, and share transfers, redemptions and issuances were authorized by the Company, the Company's amended articles of incorporation and restated bylaws.

16.     By making this Demand, the undersigned shareholder(s) does not waive any legal rights or remedies and hereby maintains and asserts that the Company is being irreparably injured and reserves the right to take legal action, without a derivative demand, based upon such irreparable injury.

17.     This Demand may be executed by counterparts and by facsimile and/or pdf attachment, which together shall constitute an original. The undersigned shareholder(s) authorize Dale Miesen or Paul Durant to deliver this Demand to the Company at the time of the shareholder meeting scheduled for July 16, 2012 or anytime before or thereafter.

18.     To the extent that any of the above-referenced demands pertain to me taking action or accepting the appointment as a director or officer of the Company, I am joining in those demands upon the request of the other shareholders who have made the same demands.

Dated this ____ day of July, 2012.

Paul D. Durant

3

Exhibit - T

Exhibit D

Exhibit - T

## Doug Siddoway - AIA Services Corporation

**From:** "Roderick Bond" <rod@roderickbond.com>
**To:** <doug@randalldanskin.com>
**Date:** 7/16/2012 11:44 AM
**Subject:** AIA Services Corporation

HI Mr. Siddoway:

I represent a number of shareholders in AIA Services Corporation and attended a shareholder meeting this morning. At that meeting, R. John Taylor advised us that you represented AIA Services Corporation. Can you please confirm whether that is true or not? Thank you.

**By: Roderick C. Bond**
**Roderick Bond Law Office, PLLC**
800 Bellevue Way NE, Suite 400
Bellevue, WA 98004
Tel: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Website: www.roderickbond.com

This email and any attachments may be attorney-client privileged, protected as attorney work product, and/or subject to any other applicable privileges. The unauthorized viewing or dissemination of any email or attachment is prohibited. If you have recieved this email in error or it was not intended to be delivered to you, please immediately delete this email and all attachments and contact the sender at the address indicated above. Thank you.

**Doug Siddoway - AIA Services Corporation**

| | |
|---|---|
| **From:** | "Roderick Bond" <rod@roderickbond.com> |
| **To:** | <doug@randalldanskin.com> |
| **Date:** | 7/16/2012 6:02 PM |
| **Subject:** | AIA Services Corporation |
| **Attachments:** | A - Signed Demands for Payment_0002.pdf; A - Signed Proxies_0002.pdf; A - Signed Shareholder Demands_0002.pdf; A - Signed Shareholder Resolutions_0002.pdf |

Dear Mr. Siddoway:

I emailed you earlier regarding your representation of AIA Services Corporation for a reverse stock split, but have not heard back from you. In light of today's events, I am emailing you again. As I mentioned, I represent a number of common shareholders in AIA Services Corporation (some of whom also own Preferred Shares). At the shareholding meeting today, John Taylor provided your name as the attorney who represented AIA Services Corporation regarding the reverse stock split. John Taylor voted his shares in favor of that transaction.

Attached for your review are the proxies voting against the reverse stock split and the appointment of John Taylor, Connie Taylor Henderson and James Beck to the Board of AIA Services Corporation and the Notices of Intent for Demand also executed by the same shareholders. The originals of these documents were delivered to AIA Services Corporation prior to today's shareholder meeting. Although we assert that the reverse stock split, coupled with the significant malfeasance and failure to provide full disclosure, is not authorized nor is John Taylor's shares eligible to vote on the reverse split based upon the foregoing and the irreconcilable conflicts of interest and minority shareholder oppression. Moreover, as I am sure you were aware, under AIA Services Corporation's Amended Articles of Incorporation, no shares may be purchased by the Company (which includes fractional shares) when dividends have not been paid or the funds set aside on the Series C Preferred Shares. As John Taylor admits for the first time on financial statements, over $1 Million dollars in dividends are due and owing on those Series C Preferred Shares and said dividends have not been paid nor have the funds been set aside for those dividends as required under Article 4.3.3 of the Company's Amended Articles of Incorporation. Therefore, notwithstanding all of the reasons (including those stated above) why the reverse stock split must not be effectuated, the reverse split and subsequent shares purchases violates Article 4.3.3 of the Amended Articles of Incorporation and is barred by those provisions. Moreover, no dividends may be declared or paid on Series C Preferred Shares when payments are in arrears to the Series A Preferred Shareholder (which is the case) as provided under Articles 4.2.9(f)-(g)

& (i), 4.3.3, 4.3.4 and 4.4 of the Company's Amended Articles of Incorporation. I am happy to email you a copy of those Amended Articles for your review. In sum, the reverse stock split is nothing short of illegal and oppressive.

Lastly, my clients have all made shareholder demands, some of which pertain directly to the reverse stock split and other transactions and issues which impact the value of my clients' common and preferred shares and constitute the illegal dilution of my clients' common shares. Attached for your review are the shareholder demands delivered to AIA Services Corporation today at the shareholder meeting, along with a copy of the First Amended Complaint in the Federal Court Case and the exhibits to that Complaint (see case number in the attached documents). I have also attached the resolutions passed by the proxy vote of the minority shareholders, which was presented for vote by Dale Miesen today at the meeting. Please let me know if the Company intends on honoring any of the attached shareholder resolutions for which my clients assert that John Taylor and Connie Taylor Henderson's shares are not qualified to vote on. Of note, John Taylor refused to answer questions regarding AIA Services Corporation's financial statements by responding in some cases "no comment" or refused to answer altogether. The meeting was a complete sham.

Please advise me if you are going to continue representing AIA Services Corporation with respect to the reverse stock split and related matters. There are a lot of facts that you obviously have not been told by John Taylor. I am happy to fill you in and provide significant documentation. Nothing in this email should be construed as a waiver of any of my clients' rights or remedies.

Thank you for your time. I look forward to hearing from you.


**By: Roderick C. Bond**
**Roderick Bond Law Office, PLLC**
800 Bellevue Way NE, Suite 400
Bellevue, WA 98004
Tel: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Website: www.roderickbond.com

This email and any attachments may be attorney-client privileged, protected as attorney work product, and/or subject to any other applicable privileges. The unauthorized viewing or dissemination of any email or attachment is prohibited. If you have recieved this email in error or it was not intended to be delivered to you, please immediately delete this email and all attachments and contact the sender at the address indicated above. Thank you.

**Doug Siddoway**

| | |
|---|---|
| **From:** | "Roderick Bond" <rod@roderickbond.com> |
| **To:** | <doug@randalldanskin.com> |
| **Date:** | 7/17/2012 8:22 AM |
| **Attachments:** | First Amended Complaint.pdf |

Mr. Siddoway:

I inadvertently forgot to attach the First Amended Complaint for the derivative action in Federal Court. Attached is a copy without the exhibits. Please let me know if you would like the exhibits. Please note that I, along with Mike Gaffney of Idaho Falls, are the attorneys of record in the attached case for Donna Taylor. Thanks and I look forward to hearing from you.

**By: Roderick C. Bond**
**Roderick Bond Law Office, PLLC**
800 Bellevue Way NE, Suite 400
Bellevue, WA 98004
Tel: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Website: www.roderickbond.com

This email and any attachments may be attorney-client privileged, protected as attorney work product, and/or subject to any other applicable privileges. The unauthorized viewing or dissemination of any email or attachment is prohibited. If you have recieved this email in error or it was not intended to be delivered to you, please immediately delete this email and all attachments and contact the sender at the address indicated above. Thank you.

Exhibit 1 - T

**Doug Siddoway - AIA Services**

From:      "Roderick Bond" <rod@roderickbond.com>
To:        <doug@randalldanskin.com>
Date:      7/18/2012 4:26 PM
Subject:   AIA Services

Mr. Siddoway:

Please be advised that I now also represent Carmen Taylor. All further communications to her should be directed to me. Please also ensure that John Taylor and AIA is aware of this. Thank you.

As you are aware, there are also many omissions of material fact and misrepresentations of material fact in the proxy statements, financial statements and related materials sent to shareholders. John Taylor would not even respond to any questions at the shareholder meeting regarding some of the omissions, including how he acquired his shares in CropUSA. Therefore, the reverse stock split is illegal and improper based upon the flawed and fraudulent proxy statements as well.

Also, could you please forward me copies of the purchase and sale agreements between John Taylor and Beck, Cashman and the other shareholders who allegedly sold their shares to John Taylor for 10 cents per share, along with any valuation for those shares? Don't bother sending me anything on the purchase price originally paid by the selling shareholders, as I already know that they didn't pay anything for those shares. Please be advised that those shares were not legally issues to begin with and you can follow those same shareholders as illegal owners of CropUSA stock. That alleged share exchange is referenced in the Federal Court First Amended Complaint. If you are not going to respond to any of my questions or requests for documents made on behalf of my clients, please just tell me so. Thank you.

By: Roderick C. Bond
Roderick Bond Law Office, PLLC
800 Bellevue Way NE, Suite 400
Bellevue, WA  98004
Tel: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Website: www.roderickbond.com

This email and any attachments may be attorney-client privileged, protected as attorney work product, and/or subject to any other applicable privileges. The unauthorized viewing or dissemination of any email or attachment is prohibited. If you have recieved this email in error or it was not intended to be delivered to you, please immediately delete this email and all attachments and contact the sender at the address indicated above. Thank you.

**Doug Siddoway**

From: "Roderick Bond" <rod@roderickbond.com>
To: <doug@randalldanskin.com>
Date: 7/19/2012 7:38 AM

Mr. Siddoway:

My clients also request a copy of the purported resolution from board of directors and/or meeting minutes that purportedly authorized the reverse stock split. Please note that the proxies all stated that it was by order of the board of directors. Please also note that those directors were never elected prior to purported approving the reverse stock split. It is pretty pathetic to cram down a reverse stock split at the first annual shareholder meeting held many years. I would have thought you would have wanted to have directors validly elected prior to attempting to effectuate the reverse stock split, assuming that it was legal in the first place. My client also want financial statements covering the 5 year periods prior to the recent ones provided and separate financial statements for the same period time for AIA Insurance and the other entities referenced in the financial statements.

If you will not be providing copies of the documents requested in this email and my prior emails, then this is a formal demand under Idaho law to inspect the records to copy the documents requested in this email and my prior emails. Thank you.

**By: Roderick C. Bond**
**Roderick Bond Law Office, PLLC**
800 Bellevue Way NE. Suite 400
Bellevue, WA 98004
Tel: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Website: www.roderickbond.com

This email and any attachments may be attorney-client privileged, protected as attorney work product, and/or subject to any other applicable privileges. The unauthorized viewing or dissemination of any email or attachment is prohibited. If you have recieved this email in error or it was not intended to be delivered to you, please immediately delete this email and all attachments and contact the sender at the address indicated above. Thank you.

Exhibit

**Doug Siddoway**

From:   "Roderick Bond" <rod@roderickbond.com>
To:     <doug@randalldanskin.com>
Date:   7/19/2012 9:55 AM

Mr. Siddoway:

My clients also request copies of the present valuation of the Series C Preferred Shares and any appraisals on the shares. In particular, my client Lee Ann Hostetler has not received statements for the value of the Series C Preferred Shares held in her 401(k) plan with AIA Services, her calls to AIA and the administrator requesting documentation have gone unanswered, and she is requesting information as to the number and present alleged value of Series C Preferred Shares held by her. Therefore, my clients also demand to inspect documents and records pertaining to the foregoing, as provided under Idaho law.

My clients specifically and expressly object to any reverse split or other scheme to illegally purchase shares prior to the time that the Series C Preferred Shares have been paid in full, along with all accrued dividends. As you know, the dividends have not been paid on those shares since 1996 or 1997. Those dividends must be paid before any reverse stock split could occur because AIA Services is barred from purchasing any shares until that is done, which includes any fractional shares. As you also know, no dividends may be paid on the Series C shares when AIA Services is in arrears in payment to the Series A Preferred Shareholder, Donna Taylor. She expressly objects to any payments, regardless of the scheme, on any shares with priority lower than her Preferred A Shares. Again, the proxy statements, reverse split and any subsequent appraisal or purchase of those common shares are not authorized and are all illegal.

I apologize for the numerous emails, but my clients want their objections noted and their request for information honored.

By: Roderick C. Bond
Roderick Bond Law Office, PLLC
800 Bellevue Way NE, Suite 400
Bellevue, WA 98004
Tel: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Website: www.roderickbond.com

This email and any attachments may be attorney-client privileged, protected as attorney work product, and/or subject to any other applicable privileges. The unauthorized viewing or dissemination of any email or attachment is prohibited. If you have recieved this email in error or it was not intended to be delivered to you, please immediately delete this email and all attachments and contact the sender at the address indicated above. Thank you.

Exhibit - T

Exhibit E

Exhibit - T

**Doug Siddoway**

---

| | |
|---|---|
| **From:** | "Roderick Bond" <rod@roderickbond.com> |
| **To:** | "'Doug Siddoway'" <djs@randalldanskin.com> |
| **Date:** | 10/3/2012 11:48 AM |
| **CC:** | <jtaylor@AIAinsurance.com>, "'John Taylor'" <jtaylor@cropusainsurance.com> |
| **Attachments:** | Donna Taylor Payments.pdf; July 08 Letter from John to Donna.pdf; Series A Shareholder Notices_01.pdf |

---

Mr. Siddoway:

I know that you are representing AIA Services in connection with the recent documents sent to me and her regarding AIA Services' attempt to redeem her Series A Preferred Shares for $82,435.10. As you know, Donna Taylor's shares were authorized to be redeemed under AIA Services' Amended Articles of Incorporation. On June 24, 2008, John Taylor wrote a letter to Donna Taylor advising that AIA Services would no longer make any payments to her. A copy of that letter is attached. According to AIA Services' internal documents, the amount owed as of that date was $414,247.22. Assuming that amount was correct, the proper amount owed to Donna Taylor is $414,247.22, plus accrued interest, plus attorneys' fees and costs incurred enforcing her rights. As you also know, you have not permitted her board appointee Paul Durant to attend any board meetings.

To be clear, Donna Taylor will not accept payment of $82,435.10 for her remaining outstanding Series A Preferred Shares.

In addition, based upon all of the malfeasance that has occurred because of your client John Taylor and the other parties you are fully aware of, Donna Taylor will also not accept any payments from AIA Services until all outstanding issues are resolved and until any payment is approved by a Court order. Please let me know if I need to take any further action or contact AIA Services directly. Since you are acting as counsel for AIA Services with respect to the recent solicitation to attempt to redeem Donna Taylor's Series A Preferred Shares, I will not respond further. However, I am carbon copying John Taylor on this email just to make sure.

Please let me know if you have any questions. Also, please let me know if you would like to discuss any of the malfeasance so we can work together to make AIA Services and its innocent shareholders whole. I look forward to hearing from you in this regard.

By: Roderick C. Bond
Roderick Bond Law Office, PLLC

Exhibit T

800 Bellevue Way NE, Suite 400
Bellevue, WA  98004
Tel: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Website: www.roderickbond.com

This email and any attachments may be attorney-client privileged, protected as attorney work product, and/or subject to any other applicable privileges. The unauthorized viewing or dissemination of any email or attachment is prohibited. If you have recieved this email in error or it was not intended to be delivered to you, please immediately delete this email and all attachments and contact the sender at the address indicated above. Thank you.

Exhibit - T

RODERICK C. BOND, ISB No. 8082
RODERICK BOND LAW OFFICE, PLLC
800 Bellevue Way NE, Suite 400
Bellevue, WA  98004
Tel: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com

Attorney for Defendants

IN THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT OF THE STATE OF
IDAHO, IN AND FOR THE COUNTY OF NEZ PERCE

| | |
|---|---|
| AIA SERVICES CORPORATION, an Idaho corporation, | Case No.: CV-12-01483 |
| Plaintiff, | DEFENDANTS' MOTION TO DISMISS PURSUANT TO IRCP 12(b)(6) AND MOTION FOR A MORE DEFINATE STATEMENT |
| vs. | |
| PAUL D. DURANT; KAY HANCHETT; LEE ANN HOSTETLER; JERRY A. LEGG; DALE L. MIESEN; HEATHER MIESEN LIVING TRUST, DALE L. MIESEN, TRUSTEE; JENNIFER MAY MIESEN LIVING TRUST, DALE L. MIESEN, TRUSTEE; ROBERT L. MIESEN LIVING TRUST, DALE L. MIESEN, TRUSTEE; DALE L. MIESEN AND JONATHON EKBERG BROWN, JR., JOINT TENANTS; CARMEN S. TAYLOR; DONNA J. TAYLOR; JUD R. TAYLOR; REED J. TAYLOR; AND BOBETTE N. RUDDELL, | |
| Defendants. | |

The above-referenced defendants (collectively "Defendants") move the Court as follows:

MOTION TO DISMISS AND MOTION
FOR A MORE DEFINATE STATEMENT - 1

Exhibit - U

## I. INTRODUCTION

This lawsuit was filed based upon nothing more than greed.[1] Before the ink had even dried on the Idaho Supreme Court's decision in *Taylor v. AIA Services Corp.*, 151 Idaho 552, 261 P.3d 829 (2011) (wherein Reed Taylor's majority interest in AIA Services was eliminated), John Taylor, together with James Beck, Michael Cashman and Connie Taylor (John Taylor's "henchmen") implemented the next phase of their plan to eliminate the remaining minority shareholders of AIA Services to illegally gain complete ownership of the company.

First, they needed to get rid of the employees who worked tirelessly for AIA Services in exchange for ownership in the Employee Stock Ownership Plan ("ESOP"). Thus, John Taylor and his henchmen illegally terminated AIA Services' Employee Stock Ownership Plan and illegally paid those participants three cents per share for their shares. The next step was to eliminate the remaining common shareholders—including shareholders like Dale Miesen—who contributed over $500,000 worth of insurance business to AIA Services in exchange for common shares. To accomplish this last act of greed, John Taylor and his henchmen implemented a plan to effectuate an illegal reverse stock split—in an effort to eliminate the Defendants as shareholders in exchange for the illegal payment of ten cents per share. In other words, Dale Miesen would receive a whopping $5,000 for the over $500,000 that he paid for his shares.

However, John Taylor and his henchmen hit an unexpected speed bump—the fourteen shareholders named as defendants in this action. When they challenged the illegal reverse stock split and asserted appraisal rights, John Taylor and his henchmen, by and through AIA Services, filed this lawsuit. Since the relief sought in AIA Services' Complaint is all traced directly to and

---

[1] Since AIA Services is in arrears in over $400,000 in payments to the Series A Preferred Shareholder Donna Taylor and has failed to pay over $1,200,000 in accrued and unpaid dividends of to the Series C Preferred Shares held in AIA Services' 401(k) Plan, it is incomprehensible how the company's purported board of directors—John Taylor, Connie Taylor and James Beck—could expend company resources litigating over this lawsuit. (9/17/12 Bond Aff., ¶16 & Ex. D, p. 10 n. 6.)

MOTION TO DISMISS AND MOTION
FOR A MORE DEFINATE STATEMENT - 2

Exhibit - U

pertain exclusively to that illegal reverse stock split, AIA Services' claims and relief in its Complaint fail to state a claim and, therefore, fail as a matter of law. 19 CJS Corporations § 674 ("An illegal act of a corporation is one expressly prohibited by statute…").

Alternatively, under I.C. § 30-1-1330, a corporation may file a petition with the court to determine the "fair value" of shares held by shareholdings asserting appraisal rights to any corporate action. There is nothing under I.C. § 30-1-1301, *et seq.* that authorizes a corporation to not follow the provisions of that Code and to violate other Code Sections to carry out a so-called "appraisal action." Simply put, AIA Services' Complaint should provide a definite statement that this action is an "appraisal proceeding" and that it is proceeding in accordance with I.C. § 30-1-1301, *et seq.* and Idaho law. For example, AIA Services admits in its Complaint that it cannot effectuate the reverse stock split by alleging that "plaintiff's funds will not be used to pay defendants or other holders of Common Stock for their shares…" (Complaint, p. 8, ¶3.) It is impossible for the Defendants to properly respond to the Complaint unless and until they know exactly what they are responding to and exactly how AIA Services proposes to legally effectuate the reverse stock split. Thus, an order requiring AIA Services to provide a more definite statement is appropriate and warranted.

## II.  FACTS

The Defendants submit the following Statement of Facts ("Facts"):

A.    On September 7, 2011, the Idaho Supreme Court affirmed the illegality of the redemption of Reed Taylor's common shares because that redemption explicitly violated I.C. § 30-1-6. *Taylor v. AIA Services Corp.*, 151 Idaho 552, 261 P.3d 829 (2011). December 31, 2011, John Taylor, without obtaining shareholder approval, terminated AIA Services' Employee Stock Ownership Plan and paid those shareholders three cents per share. (9/17/12 Bond Aff., Ex. C.)

MOTION TO DISMISS AND MOTION
FOR A MORE DEFINATE STATEMENT - 3

# Exhibit - U

According to the 2007 stock ledger, this action eliminated another 88,225 common shares in AIA Services. (*Id.*, Ex. I, p. 1.)

**B.**    On July 3, 2012, after years of ignored requests for financial information and demands for annual shareholder meetings, John Taylor sent a letter, notice of shareholder meeting, proxy statement, proxy and Consolidated Financial Statements to AIA Services' shareholders regarding having the first annual shareholder meeting in over eight years. (Complaint, Ex. A; 9/17/12 Bond Aff., Ex. D-E, Ex. M, ¶6, Ex. K, ¶4, Ex. L, ¶4.) The notice of the meeting, sent over the 4th of July holiday week, stated that AIA Services intended to effectuate a 53,000 to 1 reverse stock split, by order of the purported board of directors (who did not disclose any conflicts of interest under I.C. § 30-1-1003(2)). (Complaint, Ex. A.) Notably, John Taylor, Connie Taylor and James Beck assert that ten cents per share was a fair price, when John Taylor had valued his shares at almost $1.5 Million in 2005 and Connie Taylor had stated her community interest in the share was $900,000 in 2007—both of which occurred before the debt of over $8.5 Million owed to Reed Taylor was eliminated, before AIA received the $1.3 Million Lewis Clark Mortgage and before AIA received $800,000 (both of the foregoing were litigation settlements). (9/17/12 Bond Aff., Ex. B, p. 139-40; Ex. F & H.) Thus, after AIA's balance sheet improved by over $10.6 Million, a reverse stock split is warranted and the value of the minority shareholders' stock is ten cents per share. (*Id.*) John and Connie Taylor's valuations, when AIA Services was still indebted to Reed Taylor, were many times greater than the ten cents per share they are offering the minority shareholders. (*Id.*) Fourteen shareholders (holding over 132,000 shares) voted against the reverse stock split, made demands for appraisal and made derivative demands, while John Taylor and one other shareholder holding less than 2,000 shares voted in favor, over objections. (*Id.*, ¶¶10-12; Ex. J, Ex. K, ¶4-7; Complaint, Ex. B.) Notably, the share purchase purportedly

MOTION TO DISMISS AND MOTION
FOR A MORE DEFINATE STATEMENT - 4

# Exhibit - U

valuing the shares at ten cents per share was based upon John Taylor's purported purchase of the common shares that were illegally issued at no cost to CropUSA shareholders. (9/17/12 Bond Aff., Ex. I; Complaint, Ex. A, p. 6.) In addition, the recent financial statements contain notes which were either never previously provided or were materially different than the last financial statements with notes. (*Compare* 9/17/12 Bond Aff., ¶5, Ex. D-E & H.) While the recent financial statements provide the first disclosure of the defendants' ownership in competing companies, they do not explain how the ownership was acquired nor do they disclose the malfeasance involving the defendants. (*Id.*)

C.    Prior to the shareholder meeting on July 16, 2012, Dale Miesen, who had traded a book of renewal business worth over $500,000 for his 45,000 shares in AIA Services, personally delivered the original proxies and demands for payment. (9/17/12 Bond Aff., ¶10, Ex. J & K, ¶¶2-5.) Mr. Miesen and counsel for thirteen other shareholders attended the meeting and objected to the appointment of John Taylor, Connie Taylor and James Beck to the board of AIA Services and objected to the reverse stock split. (*Id.*, ¶¶10-12, Ex. K, ¶¶5-8, Ex. J; Complaint, Ex. B.) When Mr. Miesen questioned John Taylor as to how he acquired his ownership interest in CropUSA and why AIA had lent over $800,000 to Pacific Empire Radio, John Taylor replied "no comment." (9/17/12 Bond Aff., ¶¶10-12, Ex. E, p. 2, Ex. K, ¶¶4-8.) When Mr. Miesen asked John Taylor to name one reason for the reverse stock split, he replied: "we obviously want to turn this company into an LLC."[2] (*Id.*, Ex. K, ¶6.) After the shareholder meeting, counsel for thirteen of the shareholders sent numerous emails to counsel for AIA Services, Doug Siddoway, requesting information and making various shareholder demands that were ignored. (Complaint,

---

[2] The allegation that John Taylor and his henchmen wanted to turn AIA Services into a limited liability company makes absolutely no business sense. It also flies directly in the face of their arguments to Judge Brudie and the Idaho Supreme Court that the redemption of Reed Taylor's shares should be illegal to protect the minority shareholders and to insure that they share equally in AIA Services' assets. Ten cents per share is hardly sharing equally in AIA Services' assets.

MOTION TO DISMISS AND MOTION
FOR A MORE DEFINATE STATEMENT - 5

Exhibit - U

Ex. D.) Despite the demands and objections over the refusal to comply with the Articles of Incorporation, AIA Services filed an Amended Articles of Incorporation and proceeded to file a lawsuit against all fourteen shareholders. (9/17/12 Bond Aff., Ex. G; Complaint.)

**D.** Fourteen shareholders, representing over 132,000 common shares, objected to and voted against the reverse stock split, *inter alias*, since no payments may be made to common shareholders because: (1) no dividends could be declared or paid in the Series C Preferred Shares if payments were in arrears on the Preferred A Shares; and (2) no common shares could be purchased by AIA Services, whether whole or fractional, if dividends had not been paid on the Series C Preferred Shares. (Complaint, Ex. C; 9/17/12 Bond Aff., Ex. A, p. 8, §4.2.9(f), p. 10, §4.2.12, p. 12, §4.3.3.) Donna Taylor presently holds over $400,000 in Series A Preferred Shares and AIA Services is in arrears on those payments under the Amended Articles of Incorporation and the Series A Preferred Shareholder Agreement. (*Id.*, ¶16, Ex D, p. 3 & p. 10 n. 5.) Although John Taylor and his henchmen will dispute the amount owed to Donna Taylor, there is no dispute that her Series A Preferred Shares have not been redeemed and payments are in arrears to her. (*Id.*, & Ex. B, p. 152-53.) As of December 31, 2011, the face value of $925,000, plus over $1,202,500 in accrued and unpaid dividends, was owed on the 401(k) Plan's Series C Preferred shares. (*Id.*, Ex. D, p. 10 n. 6.) According to Lee Ann Hostetler, she never receives statements for the over $200,000 Preferred C Shares held in her name in the 401(k) Plan and she has been unable to withdraw any funds. (9/17/12 Bond Aff., Ex. D, p. 10 n. 6, Ex. M, ¶¶4-5.)

**E.** The reason AIA Services' Complaint alleges that the "payments" would <u>not</u> be made with AIA Services' funds to redeem the fractional shares created by the reverse stock split is simple—it is barred from making such payments under its Amended Articles of Incorporation unless and until all Series A Shares are redeemed:

MOTION TO DISMISS AND MOTION
FOR A MORE DEFINATE STATEMENT - 6

# Exhibit - U

> The corporation will not, and will not permit any of its Subsidiaries to, acquire by purchase or otherwise...the stock or other evidence of beneficial ownership, of any Person unless, immediately prior to and after giving effect to such transaction, no violation of any of the covenants or other provisions contained in this Article Forth shall have occurred....

(9/17/12 Bond Aff., Ex. A, p. 8, §4.2.9(f); *see also* §4.2.9.) However, even if the Series A Shares had been redeemed or the payments were not in arrears, any payments to effectuate a reverse stock split are also barred under the Series C Share provisions in AIA Services' Amended Articles of Incorporation:

> No dividend shall be declared or paid upon Common Stock nor shall any Common Stock be purchased or otherwise acquired by the corporation for value...unless all dividends on the Series C Preferred Stock for all past periods shall have been paid or shall be been declared and a sum sufficient for the payment thereof set apart for payment.

(*Id.*, Ex. A, p. 12, §4.3.3.) Notably, AIA Services has admitted that it has not redeemed all of Donna Taylor's Series A Preferred Shares. (*Id.*, Ex. D, p. 10, n. 5.)

> No dividends shall be declared or paid on the Series C Preferred Stock if the redemption payments due to the holders of the Series A Preferred Stock under Section 4.2 of this Article Fourth are in arrears.

(*Id.*, Ex. A, p. 12, §4.3.3.) Thus, AIA Services may not pay the over $1,200,000 in accrued dividends owed on the Series C Preferred Shares until it has paid Donna Taylor's Series A Preferred Shares. (*Id.*) Since Donna Taylor's Series A Shares have not been redeemed and the over $1,200,000 in accrued dividends have not been paid on the Series C Preferred Shares, AIA Services is barred from, directly or indirectly, purchasing any common shares—whether such purchases are through a reverse stock split or some other means like the termination of the ESOP. Significantly, AIA Services' Complaint concedes that it can't make the payments:

> the Reverse Stock Split Transaction does not violate subsection 4.3.3 of plaintiff's articles of incorporation <u>because plaintiff's funds will not be used to pay the defendants or other holders of Common Stock for their shares</u>...

MOTION TO DISMISS AND MOTION
FOR A MORE DEFINATE STATEMENT - 7

Exhibit - U

(Complaint, p. 8, ¶3 (emphasis added).) Although AIA Services illegally moved forward with the illegal reverse split by filing Amended Articles of Incorporation on July 17, 2012, it did not obtain the consent of Donna Taylor as required: "[t]he rights and preferences hereby conferred on the Series A Preferred Stock shall not be changed, altered or revoked without the consent of the holders of the majority of the Series A Preferred Stock outstanding at the time." (9/17/12 Bond Aff., Ex. A, p. 11, §4.2.12.) Thus, AIA Services' Amended Articles of Incorporation bar any payments to redeem shares, whether made directly or indirectly, to any common shareholder or Series C Preferred shareholder until AIA Services has paid the over $400,000 owed to her. (*Id.*, Ex. A, p. 8, §4.2.9(f) & p. 12, §4.3.3.)However, even if AIA Services paid Donna Taylor, it would still be barred from redeeming any common shares until it has paid the over $1,200,000 in accrued and unpaid dividends owed on the Series C Shares.

## III.  ARGUMENTS

### A.  AIA Services' Complaint should be dismissed for failure to state a claim.

On a motion to dismiss for failure to state a claim, the Court looks only at the pleadings, and all inferences are viewed in favor of the non-moving party. *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157 (2002). When considering a motion to dismiss a complaint, all facts alleged are to be considered true, and it is plaintiff's alleged right to relief that is thereby challenged. *Argonaut Ins. Co. v. White*, 86 Idaho 374, 376, 386 P.2d 964, 964 (1963). If a Court considers matters outside of the pleadings, then the Motion must be disposed of in accordance with Rule 56. IRCP 12(b).

Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." IRCP 56(c).

MOTION TO DISMISS AND MOTION
FOR A MORE DEFINATE STATEMENT - 8

Exhibit - U

Once the moving party has provided sufficient evidence to support the motion, the party against whom a motion for summary judgment is sought may not merely rest on allegations contained in the pleadings, but must come forward and produce evidence by way of deposition or affidavit to contradict the assertions of the moving party and establish a genuine issue of material fact.

*Post v. Idaho Farmway, Inc.*, 135 Idaho 475, 478, 20 P.3d 11, 14 (2001) (citing I.R.C.P. 56(e);

*McCoy v. Lyons*, 120 Idaho 765, 770, 820 P.2d 360, 365 (1991)). "Such evidence must consist

of specific facts, and cannot be conclusory or based on hearsay." *Id.* (emphasis added).

The moving party is entitled to judgment when the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial.

*Thomas v. Medical Center Physicians, P.A.*, 138 Idaho 200, 205, 61 P.3d 557, 562 (2002) (citing

*Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 254, 91 L.Ed.2d 265 (1986)).

"The Court has the duty to raise the issue of illegality *sua sponte*." *Taylor v. AIA Services*

*Corp.*, 151 Idaho 552, 564, 261 P.3d 829, 841 (2011) (citation omitted).

### 1. AIA Services fails to state a claim because the reverse stock split is barred by its Amended Articles of Incorporation and violates Idaho law.

"The articles of incorporation may set forth...[p]rovisions not inconsistent with law

regarding...defining, limiting and regulating the powers of the corporation, its board of directors,

and shareholders..." I.C. § 30-1-202. "Unless its articles of incorporation provide otherwise,

every corporation...has the same powers...to carry out its business and affairs..." I.C. § 30-1-

302. "A corporation may amend its articles of incorporation at any time to...add or change a

provision that...is permitted in the articles in incorporation..." I.C. § 30-1-1001. "Unless the

articles of incorporation provide otherwise, a corporation's board of directors may adopt

amendments to the corporation's articles of incorporation without shareholder approval..." I.C. §

30-1-1005. "A shareholder entitled to appraisal rights" may "challenge a completed corporate

action" if the corporate action "[w]as not effectuated in accordance with...the corporation's

MOTION TO DISMISS AND MOTION
FOR A MORE DEFINATE STATEMENT - 9

Exhibit - U

articles of incorporation…" I.C. § 30-1-1302(4).

Here, John Taylor and his henchmen, by and through AIA Services, attempted to effectuate a 53,000 to 1 reverse stock split, which would result in making all of the Defendants in this action holding a fractional share that would be purchased by AIA Services. (Complaint, Ex. A.) Under the terms of that reverse stock split, the fractional shareholders would be paid ten cents per share for their common shares:

> Without regard to any other provision of these Articles of Incorporation, each 53,000 shares of common stock, either issues and outstanding or held by the Corporation as treasury stock, immediately prior to the time this amendment becomes effective, shall be and is hereby automatically reclassified and changed (without any further act) to one fully paid and non-assessable share of common stock…provided that no fractional shares of common stock shall be issued to any holder of fewer than 53,000 shares of common stock immediately prior to the time this amendment becomes effective. Instead of issuing such fractional shares, the Corporation shall pay, in case at the time this amendment becomes effective, Ten Cents ($0.10) for each share held by any holder of fewer than 53,000 shares of common stock immediately before the time when this amendment becomes effective.

(Complaint, Ex. A, p. 8; 9/17/12 Bond Aff., Ex. G, p. 1.) However, John Taylor and his henchmen overlooked, ignored or intentionally violated two separate provisions of AIA Services' Amended Articles of Incorporation that bar the payment of any sums, let alone ten cents per share, to any common shareholders until the Series A Preferred Shares have been redeemed and the over $1,200,000 in accrued and unpaid dividends on the Series C Preferred Shares have been paid:

> The corporation will not, and will not permit any of its Subsidiaries to, acquire by purchase or otherwise…the stock or other evidence of beneficial ownership, of any Person unless, immediately prior to and after giving effect to such transaction, no violation of any of the covenants or other provisions contained in this Article Forth shall have occurred….

(9/17/12 Bond Aff., Ex. A, p. 8, §4.2.9(f); *see also* §4.2.9.) Moreover, "[t]he rights and preferences hereby conferred on the Series A Preferred Stock shall not be changed, altered or

MOTION TO DISMISS AND MOTION
FOR A MORE DEFINATE STATEMENT - 10

Exhibit - U

revoked without the consent of the holders of the majority of the Series A Preferred Stock outstanding at the time." (*Id.*, Ex. A, p. 11, §4.2.12.) Substantially similar provisions are included for the Series C Preferred Shares under AIA Services' Amended Articles of Incorporation.

> No dividend shall be declared or paid upon Common Stock nor shall any Common Stock be purchased or otherwise acquired by the corporation for value...unless all dividends on the Series C Preferred Stock for all past periods shall have been paid or shall be been declared and a sum sufficient for the payment thereof set apart for payment.

(*Id.*, Ex. A, p. 12, §4.3.3.)

Consequently, the reverse stock split and the termination of the ESOP violate numerous provisions of AIA Services' Amended Articles of Incorporation, which results in the violation of numerous provisions of Idaho Code when it "[w]as not effectuated in accordance with...the corporation's articles of incorporation..." I.C. § 30-1-1302(4); I.C. § 30-1-202; I.C. § 30-1-302; I.C. § 30-1-1001; I.C. § 30-1-1005. The Amended Articles of Incorporation filed in July 17, 2012 and the termination of the ESOP are both void. (Facts, §§D-E; 9/17/12 Bond Aff., Ex. G.)

### 2. AIA Services fails to state a claim because it is barred from making any payments to any common shareholders.

"A board of directors may authorize and the corporation may make distributions to its shareholders **subject to restriction by the articles of incorporation**..." I.C. § 30-1-640(1) (emphasis added). For purposes of I.C. § 30-1-640, **a "distribution' means a direct or indirect transfer of money** or other property...[and] may be **in the form of...a purchase, redemption, or other acquisition of shares**...["][3] I.C. § 30-1-140 (emphasis added).

---

[3] Under the official ABA Comment for "Distribution" under I.C. § 30-1-140, it states that "Section 140(6) in turn defines 'distribution' to include all transfers of money or other property made by a corporation to any shareholder in respect of the corporation's shares, except mere changes in the unit of interest such as share dividends and share splits. Thus, a 'distribution' includes the declaration or payment of a dividend, a purchase by a corporation of its own shares...The term 'indirect' in the definition of 'distribution' is intended to include transactions like the repurchase of parent company shares by a subsidiary whose actions are controlled by the parent. It also is intended to include any other transaction in which the substance is clearly the same as a typical dividend or shares repurchase, no matter how structured or labeled."

MOTION TO DISMISS AND MOTION
FOR A MORE DEFINATE STATEMENT - 11

# Exhibit - U

Here, AIA Services may not directly or indirectly purchase the Defendants' common shares. Indeed, AIA Services' Complaint concedes that making any payments to shareholders is barred by its Amended Articles of Incorporation:

> the Reverse Stock Split Transaction does not violate subsection 4.3.3 of plaintiff's articles of incorporation **because plaintiff's funds will not be used to pay the defendants or other holders of Common Stock for their shares**...

(Complaint, p. 8, ¶3 (emphasis added); *see also* 9/17/12 Bond Aff., Ex. A, p. 12, §4.3.3.) Moreover, AIA Services does not address the additional violation of Section 4.2.9(f) of AIA Services' Amended Articles of Incorporation, which separately bars payments to common shareholders. (9/17/12 Bond Aff., Ex. A, p. 8, §4.2.9(f).) Apparently, the defendants believe that they can side-step their way around Idaho Code and AIA Services' Amended Articles of Incorporation by using funds from another source, presumably from John Taylor and/or his henchmen. This argument is fatally flawed, however, because reverse stock splits are redemptions through the corporation, not individual shareholders—even if the money comes from another source, it still must pass through AIA Services because the corporation, and it alone, is who purchases the fractional shares created from the reverse stock split. (9/17/12 Bond Aff., Ex. G; Complaint, Ex. A, p. 8; Facts, §§D-E.) The fact that John Taylor and his henchmen intend to pay the minority shareholders with someone else's funds simply proves that it is an illegal scheme—because any available corporate funds must first be paid first to the Series A and Series C Preferred Shareholders.[4] Therefore, since the payments under the reverse stock split violate two separate provisions of the Amended Articles of Incorporation, the reverse stock split and the termination of the ESOP violate I.C. § 30-1-640(1) and are both illegal distributions.

---

[4] It was not pure coincidence that John Taylor and Connie Taylor Henderson acquired the common shares illegal issue to and held by their henchmen to effectuate the reverse stock split. (Complaint, Ex. A, p. 6; 9/17/2012 Bond Aff., Ex. D, p. 8.) This entire reverse stock split, like the plundering and theft that has gone on at AIA Services, was undoubtedly planned and executed between John Taylor and his henchmen.

MOTION TO DISMISS AND MOTION
FOR A MORE DEFINATE STATEMENT - 12

# Exhibit - U

**3. The reverse stock split and the termination of the ESOP are both illegal transactions and, consequently, the Amended Articles of Incorporation filed on July 17, 2012 is void and unenforceable.**

When a corporation redeems stock in violation of a statute, the redemption is illegal. *Taylor v. AIA Services Corp.*, 151 Idaho 552, 261 P.3d 829 (2011); 19 CJS Corporations § 674 ("An illegal act of a corporation is one expressly prohibited by statute...As a general rule, corporate transactions and contracts which are illegal...are void and cannot support an action nor become enforceable by performance, ratification, or estoppel.").

As set forth above, the reverse stock split and the termination of the ESOP both violated numerous provisions in AIA Services' Amended Articles of Incorporation and Idaho Code. (Facts, §§A-E.) Therefore, both transactions are illegal and void, which results in the Amended Articles of Incorporation filed in July 17, 2012 being void and the termination of the ESOP being void. (9/17/12 Bond Aff., Ex. C, G & I.) The Court should make a specific finding that both are void and the common shares should be returned to the ESOP. That way, the Court will provide appropriate notice to the Idaho Secretary of State so that it can undo the illegal filing of the Amended Articles of Incorporation.

**4. The Defendants are entitled to their attorneys' fees and costs.**

"The court in an appraisal proceeding may also assess the fees and expenses of counsel..." I.C. § 30-1-1331(2). Since AIA Services failed to comply with I.C. § 1322 (failure to provide an appraisal notice and form) and acted arbitrarily and in bad faith, the Court should award attorneys' fees and costs for the Defendants for all aspects of this lawsuit and the reverse stock split, including the travel time and expenses incurred by Dale Miesen. I.C. § 30-1-1331(2)(a) & (3). However, the issue of fees and costs is best left to be determined when this action is dismissed in full and a final judgment has been entered.

MOTION TO DISMISS AND MOTION
FOR A MORE DEFINATE STATEMENT - 13

Exhibit - U

**B. If the Court does not dismiss AIA Services' Complaint, it should be ordered to provide a more definitive statement.**

"If a pleading to which a responsive pleadings is permitted...is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for...a more definitive statement before interposing the responsive pleading." IRCP 12(e).

**1. AIA Services' Complaint does not comply with I.C. § 30-1-1301, *et seq.***

"If a shareholder makes demand for payment under section 30-1-1326, Idaho Code, which remains unsettled, the corporation shall commence a proceeding...and **petition** the court to determine the fair value of the shares and accrued interest." I.C. § 30-1-1330(1) (emphasis added). "The corporation shall make all shareholders...whose demands remain unsettled parties to the proceeding, as in an action against their shares, and all parties must be served with a copy of the **petition**." I.C. § 30-1-1330(3) (emphasis added).

AIA Services' Complaint does not comply with the requirements of an appraisal proceeding. (Complaint.) AIA Services should be ordered to file a Petition, not a Complaint, that complies with I.C. § 30-1-1301, *et seq.* AIA Services should also be ordered to allege facts that it complied with all applicable Code Sections, including, without limitation, that it provided the Defendants a payment offer and complied with I.C. §§ 30-1-1322 and 30-1-1325. If AIA Services intends to proceed with an appraisal action, it is incumbent upon it to plead facts in a Petition that it satisfied all of the requirements and prerequisites of I.C. § 30-1-1301, *et seq.*

**2. AIA Services' prayer for declaratory relief within an appraisal action is not appropriate.**

"The jurisdiction of the court in which the proceeding is commenced...is plenary and exclusive." I.C. § 30-1-1330(4). "The shareholders demanding appraisal rights are entitled to the same discovery rights as parties in other civil proceedings. There shall be no right to a jury trial."

MOTION TO DISMISS AND MOTION
FOR A MORE DEFINATE STATEMENT - 14

# Exhibit - U

*Id.* "Nonresidents may be served by registered or certified mail..." I.C. § 30-1-1330(3).

In AIA Services' Complaint, it asserts that jurisdiction and venue are proper in this action pursuant to I.C. §§ 30-1-1330(4) and 30-1-1326. (Complaint, p. 3, ¶1.17.) It also asserts ten items of declaratory relief, but fails to specifically request that a fair value be determined for the Defendants' shares as the primary purpose of this action. (Complaint, p. 7-9.) Indeed, Paragraphs 5-9 are requesting declaratory relief for persons who are not even parties to this action, i.e., John Taylor and his henchmen. AIA Services is not authorized to mix declaratory judgment relief in with an appraisal petition under I.C. § 30-1-1301, *et seq.* In fact, there is no right to a jury trial under a petition for an appraisal proceeding, while the rule is exactly the opposite for a party in a declaratory judgment action. I.C. § 10-1209; IRCP 57(a).

Moreover, the fact that AIA Services mixes declaratory relief with an appraisal action simply confirms that this really isn't an appraisal action. In fact, much of the declaratory relief is not being pursued by the proper parties and any judgment would be ineffectual against those parties. For example, if the Court made a finding that John Taylor, Connie Taylor Henderson and James Beck breached their fiduciary duties, they would not be bound by that judgment since they are not parties to this action. In reality, this lawsuit appears to be an ill-conceived effort to illegally eliminate shareholders and threaten complaining shareholders by filing baseless litigation.

As such, it is impossible for the Defendants to frame an Answer until and unless they know what they are responding to and whether this is in fact an appraisal action. Either this is an appraisal action or not. If AIA Services intends to pursue other claims, then it should specifically allege that the relief is different from the appraisal proceeding so that the Defendants may properly request a jury trial for those claims. If this action is solely an appraisal action, AIA

MOTION TO DISMISS AND MOTION
FOR A MORE DEFINATE STATEMENT - 15

Exhibit - U

Services should be ordered to file the proper Petition so that the Defendants may respond. If the Court will permit various claims from both sides to be blended into an appraisal action, then direction from the Court would be helpful prior to the Defendants serving their Answers.

**3. Since the reverse stock split violates AIA Services' Articles of Incorporation, a more definite statement is required.**

"The articles of incorporation may set forth...[p]rovisions not inconsistent with law regarding...defining, limiting and regulating the powers of the corporation, its board of directors, and shareholders..." I.C. § 30-1-202. "Unless its articles of incorporation provide otherwise, every corporation...has the same powers...to carry out its business and affairs..." I.C. § 30-1-302. "A corporation may amend its articles of incorporation at any time to...add or change a provision that...is permitted in the articles in incorporation..." I.C. § 30-1-1001. "Unless the articles of incorporation provide otherwise, a corporation's board of directors may adopt amendments to the corporation's articles of incorporation without shareholder approval..." I.C. § 30-1-1005. "A shareholder entitled to appraisal rights" may "challenge a completed corporate action" if the corporate action "[w]as not effectuated in accordance with...the corporation's articles of incorporation..." I.C. § 30-1-1302(4).

Since it has been conclusively established above that the reverse stock split violates at least two separate provisions of AIA Services' Amended Articles of Incorporation, AIA Services should be required to plead facts that demonstrate the requested relief is legally available to it, i.e., that it can legally complete the reverse stock split. (Facts, §§A-E.) In other words, AIA Services must plead facts that the reverse stock split was legal when the Amended Articles of Incorporation were filed on July 17, 2012 and that it is authorized under the law to make the required payments to shareholders, not that so-called third parties will be illegally making those payments. (9/17/12 Bond Aff., Ex. G.) Otherwise, AIA Services should voluntarily dismiss its

MOTION TO DISMISS AND MOTION
FOR A MORE DEFINATE STATEMENT - 16

Exhibit - U

Complaint now and limit the amount of fees and costs that it should be required to pay.[5] Simply put, John Taylor and his henchmen should not be permitted to utilize AIA Services as a vehicle to carry out their illegal acts and transactions. AIA Services must independently plead facts that it is able to legally carry out the reverse stock split.[6]

**4. A more definite statement is required to demonstrate how someone other than AIA Services is able to pay the money for the redemption of the shares.**

"A board of directors may authorize and the corporation may make distributions to its shareholders subject to restriction by the articles of incorporation..." I.C. § 30-1-640(1). For purposes of I.C. § 30-1-640, a "distribution' means a direct or indirect transfer of money or other property...[and] may be in the form of...a purchase, redemption, or other acquisition of shares..."[7] I.C. § 30-1-140.

AIA Services' Complaint concedes that the reverse stock split was illegal:

the Reverse Stock Split Transaction does not violate subsection 4.3.3 of plaintiff's articles of incorporation **because plaintiff's funds will not be used to pay the defendants or other holders of Common Stock for their shares**...

(Complaint, p. 8, ¶3 (emphasis added).) The reasons the Complaint asserted that the "payments" would <u>not</u> be made with AIA Services' funds is because it making such payments are expressly barred under AIA Services' articles of incorporation. Specifically, the financial statements admit that AIA Services owes the Series C Preferred Shareholders over $1,200,000 in accrued and

---

[5] The Defendants will ask that John Taylor and his henchmen be ordered to personally pay all of the attorneys' fees and costs incurred by both sides.

[6] However, the reverse stock split was either legal or illegal when it occurred. An illegal transaction may not be made legal at a later date. 19 CJS Corporations § 674.

[7] Under the official ABA Comment for "Distribution" under I.C. § 30-1-140, it states that "Section 140(6) in turn defines 'distribution' to include all transfers of money or other property made by a corporation to any shareholder in respect of the corporation's shares, except mere changes in the unit of interest such as share dividends and share splits. Thus, a 'distribution' includes the declaration or payment of a dividend, a purchase by a corporation of its own shares...The term 'indirect' in the definition of 'distribution' is intended to include transactions like the repurchase of parent company shares by a subsidiary whose actions are controlled by the parent. It also is intended to include any other transaction in which the substance is clearly the same as a typical dividend or shares repurchase, no matter how structured or labeled."

MOTION TO DISMISS AND MOTION
FOR A MORE DEFINATE STATEMENT - 17

Exhibit - U

unpaid dividends as of December 31, 2011. (9/17/12 Bond Aff., Ex. D, p. 10 n. 6.) AIA Services'

articles of incorporation bar any payments to common shareholders at this time:

> No dividend shall be declared or paid upon Common Stock nor shall any Common Stock be purchased or otherwise acquired by the corporation for value...unless all dividends on the Series C Preferred Stock for all past periods shall have been paid or shall be been declared and a sum sufficient for the payment thereof set apart for payment.

(*Id.*, Ex. A, p. 12, §4.3.3.) Moreover, a similar provision protects the Series A Preferred Shares:

> The corporation will not, and will not permit any of its Subsidiaries to, acquire by purchase or otherwise...the stock or other evidence of beneficial ownership, of any Person unless, immediately prior to and after giving effect to such transaction, no violation of any of the covenants or other provisions contained in this Article Forth shall have occurred....

(*Id.*, at p. 8, §4.2.9(f); *see also* §4.2.9.) AIA Services has conceded that it has not redeemed all of

Donna Taylor's Series A Preferred Shares. (*Id.*, Ex. D, p. 10, n. 5.) Since Donna Taylor's Series

A Shares have not been redeemed and the over $1,200,000 in accrued dividends have not been

paid on the Series C Preferred Shares, AIA Services is barred from purchasing any common

shares—whether such purchases are through a reverse stock split or some other transaction.

Indeed, as set forth above, the defendants' scheme to effectuate a reverse stock split and

payments to the affected common shareholders violates the provisions in AIA Services' articles

of incorporation and Idaho law. *See* I.C. § 30-1-1302(4)(a)-(b); I.C. § 30-1-830(1); I.C. § 30-1-

631(1); I.C. § 30-1-640(1); I.C. § 30-1-1005; I.C. § 30-1-302; I.C. § 30-1-304. Consequently, the

reverse stock split is an illegal transaction since it violates Idaho Code. *See Taylor v. AIA*

*Services Corp.*, 151 Idaho 552, 261 P.3d 829 (2011) (a redemption that violates a statute is

illegal and unenforceable). AIA Services must be required to state how the reverse stock split

and the termination of the ESOP were both legal and that payments made to those shareholders

were legal or would be legal at the time of the transactions.

MOTION TO DISMISS AND MOTION
FOR A MORE DEFINATE STATEMENT - 18

# Exhibit - U

## IV.  CONCLUSION

For the reasons articulated above, the Court should void the Amended Articles of Incorporation filed in July 17, 2012 and order the common shares returned to the ESOP, since both transactions violated I.C. §§ 30-1-1302(4), 30-1-202, 30-1-302, 30-1-640(1), 30-1-1001 and 30-1-1005 and are, therefore, illegal transactions. Since all of the AIA Services' requested relief can be traced directly to the legality of the reverse stock split, its entire Complaint should be dismissed. In the alternative, the Court should order AIA Services to provide a more definite statement through a properly drafted and filed pleading.

DATED this 17th day of September, 2012.

RODERICK BOND LAW OFFICE, PLLC

By:_____
Roderick C. Bond, ISB No. 8082
Attorney for Defendants

### CERTIFICATE OF SERVICE

I, Roderick Bond, declare that, on the date indicated below, I served a true and correct copy of the foregoing on the following party(ies) via the method(s) indicated below:

Douglas Siddoway
Randall & Danskin
1500 Bank of America Financial Center
601 West Riverside Ave., Suite 1500
Spokane, WA  99201-0626

**Via:**
( ) U.S. Mail, Postage Prepaid
( ) Hand Delivered
( ) Overnight Mail
( ) Facsimile - (509) 624-2528
(X) Email (pdf attachment) (by Agreement)

Signed this 17th day of September, 2012.

_____
Roderick C. Bond

MOTION TO DISMISS AND MOTION
FOR A MORE DEFINATE STATEMENT - 19

Exhibit - U