Loren C. Ipsen, ISB #1767
ELAM & BURKE, P.A.
251 East Front Street, Suite 300
P.O. Box 1539
Boise, Idaho 83701
Telephone:  (208) 343-5454
Facsimile:  (208) 384-5844
lci@elamburke.com

Attorneys for Defendants Hawley Troxell, Babbitt, Ashby and Riley

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual; DONNA J. TAYLOR, an individual and the Personal Representative of the Estate of Sarah Taylor; WHO ARE SHAREHOLDERS BRINGING THIS ACTION ON BEHALF OF AND/OR IN THE RIGHT OF AIA SERVICES CORPORATION AND ITS WHOLLY OWNED SUBSIDIARY AIA INSURANCE, INC.;<br><br>     Plaintiffs,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN, SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICE CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation,<br><br>     Defendants. | Case No. 1:10-cv-00404-CWD<br><br>REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1) |

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1)  - 1

Defendants Hawley Troxell Ennis & Hawley, LLP ("Hawley Troxell), Gary D. Babbitt ("Babbitt"), D. John Ashby ("Ashby"), and Richard A. Riley ("Riley"), by and through their attorneys of record, Elam & Burke, P.A., hereby submit this reply in support of their motion to dismiss the plaintiff's Second Amended Complaint for lack of subject matter jurisdiction.

## INTRODUCTION

"When a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell International Corp. v. U.S.,* 549 U.S. 457, 473-74, 127 S.Ct. 1397, 1409, 167 L.Ed.2d 190 (2007). In the case at bar, the plaintiffs voluntarily amended their complaint to add both non-diverse plaintiffs and defendants, thus destroying diversity jurisdiction. The issue is whether they can amend yet again in order to fix the jurisdictional defect they themselves created. Because the remaining defendants would be prejudiced by plaintiffs' proposed amendment and a party would be dropped who claims an interest in the subject matter of the action, the motion to amend should be denied and the case dismissed without prejudice.

## ARGUMENT

**A.      Plaintiffs Have Already Amended their Complaint to Destroy Diversity.**

The diversity-spoiling Idaho plaintiff and Washington defendants were made parties to this cause pursuant to plaintiffs' Second Amended Complaint (the "SAC"). With near unanimity, the courts have held that an amendment of the complaint under F.R.Civ.Pro. 15 to add a non-diverse party destroys diversity jurisdiction. *See Curry v. U.S. Bulk Transfer, Inc*., 462 F.3d 536, 6th Cir. 2006); *Wiltz v. Advance America*, 2011 WL 5119080 (E.D.La. Oct. 26, 2011); *Sharp v. Kmart Corp*., 991 F.Supp. 519 (M.D.La. 1998); *F & M Distributors, Inc. v. Am. Hardware Supply Co*., 120 F.R.D. 494 (W.D. Pa. 1990).

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1)  - 2

Usually, the jurisdictional issue arises in the context of a motion to amend or join one or more additional parties filed by a plaintiff or defendant who seeks to destroy jurisdiction. In such cases, the federal district court has two options: (1) it can deny the motion for joinder and retain the case, or (2) it can grant the motion and remand the case. For example, *Abraham Natural Foods Corp. v. Mount Vernon Fire Ins. Cos.*, 576 F. Supp. 421 (E.D.N.Y. 2008), involved a case originally filed in state court and then removed to federal district court on the basis of diversity. The plaintiff moved to amend its complaint to join new, non-diverse defendants to the action. The Court found that the plaintiff's permissive joinder of non-diverse parties after removal was allowable under F.R.Civ.Pro. 20 and held that upon such joinder, the only action available to the federal court was remand to state court.

The same result has been reached in a number of cases. Thus, in *Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP*, 362 F.3d 136, 141-42 (1st Cir. 2004), it was held that where the plaintiff amended its complaint to add a non-diverse defendant "complete diversity is destroyed just as surely as if [the plaintiff] had the sued [the non-diverse defendant] in the first instance." The Court noted that voluntary amendment to join a non-diverse party has resulted in dismissal in other cases:

> At least two other courts have taken a similar stance where, as here, a plaintiff has introduced a non-diverse defendant to an action by amending his or her complaint under Rule 15(a). *See* [*Estate of Alvarez v. Donaldson Co.,* 213 F.3d 993, 995–96 (7th Cir.2000)] (holding that the introduction of new parties destroyed the federal court's subject matter jurisdiction); [*Ingram v. CSX Transp., Inc.,* 146 F.3d 858, 861-62] (11th Cir.1998) (similar); *cf.* 13B Charles A. Wright et al., Federal Practice and Procedure § 3608, at 454 (2d ed. 1984 & Supp.2003) (explaining that parties joined under Rules 19 and 20 must independently satisfy applicable jurisdictional requirements).

*Am. Fiber,* 362 F.3d 136, 140–41 (1st Cir. 2004). *See also New Cannon Clocks v. Unites States Fidelity & Guaranty*, 904 F.Supp. 621, 622 (E.D. Mich. 1995) (holding that, although

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1) - 3

there was complete diversity of citizenship when the suit was removed from state court, the subsequent joinder of non-diverse defendants after removal destroyed complete diversity, <u>requiring</u> remand).[1]

## B.    The Remaining Defendants Would Be Prejudiced by the Dismissal of Necessary and Indispensable Parties.

Plaintiffs argue that defendants Henderson and Duclos are joint tortfeasors who may be dismissed in order to preserve diversity.   Insofar as the Hawley Troxell defendants are concerned, this argument misconceives the nature of the relationship of the parties.   Counts VII and X of the plaintiffs' complaint allege that the Hawley Troxell defendants aided and abetted the "Controlling AIA Defendants" in breaching fiduciary duties and committing fraud.  (SAC Section IVD, ¶¶ 59-71 and Count II) The Controlling Defendants are defined as officers and directors of the AIA corporations, including Henderson and Duclos. (SAC ¶ 16)

There is no such tort as aiding and abetting.  The term only has meaning only in reference to the commission of an underlying tort by another person.   For example, "[t]he first element of aiding and abetting fraud is the existence of an underlying fraud." *Rosner v. Bank of China*, 2008 WL 5416380 at \*5 (S.D.N.Y, Dec. 18, 2008).  Henderson and Duclos are necessary parties to any adjudication of whether they committed breaches of fiduciary duty and fraud.    Whether the Hawley Troxell defendants aided and abetted such acts cannot be determined in their absence.

The courts apply F.R.Civ.Pro.19 to determine whether parties sought to be dismissed are indispensable parties in whose absence the case cannot be adequately adjudicated.

---

[1]  28 USC § 1447(e) provides, "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  Since this case was not removed from state court but was originally filed in federal district court, a slightly different issue is implicated.

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1)  - 4

> The Ninth Circuit interprets Rule 19 as requiring "three successive inquiries." "First, the court must determine whether a nonparty should be joined under Rule 19(a)." "If the absentee is a necessary party under Rule 19(a), the second stage is for the court to determine whether it is feasible to order that the absentee be joined." "Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed."

> The first inquiry is "concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action." The Ninth Circuit says that, in determining whether a nonparty should be joined under Rule 19(a), the court uses "the term 'necessary' to describe those 'persons to be joined if feasible.' "

> Regarding the second inquiry, the Ninth Circuit says that "Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction."

> With respect to the last inquiry of whether the case should proceed without the absentee or whether the absentee is an indispensable party such that the action must be dismissed, the Ninth Circuit states, "Rule 19 uses the word 'indispensable' only in a conclusory sense, that is, a person is 'regarded as indispensable' when he cannot be made a party and, upon consideration of the factors in Rule 19(b), it is determined that in his absence it would be preferable to dismiss the action, rather than to retain it."

*Walter v. Drayson*, 496 F. Supp. 2d 1162, 1173 (D. Haw. 2007), *aff'd,* 538 F.3d 1244 (9th Cir. 2008) (citations omitted).

*Soberay Machine & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759 (6th Cir. 1999) held that the agent for an undisclosed buyer is a necessary and indispensable party inasmuch as complete relief could not be afforded to those already parties. The Court reasoned that the undisclosed principal would be prejudiced if forced to proceed in the absence of the agent. The present case is similar. The Hawley Troxell defendants will be prejudiced if forced to proceed in the absence of parties whose allegedly tortious conduct they supposedly aided and abetted.

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1)  - 5

**C.    Defendant Connie Taylor Henderson's Interest in AIA Stock Cannot Be Litigated in Her Absence.**

The relief requested by plaintiffs in both the SAC and their proposed Third Amended Complaint ("TAC") includes, *inter alia*, that the Controlling Defendants, including John Taylor, be required to "disgorge all compensation received from AIA or CropUSA since 1999, including *stock,* cash, benefits, and other assets." (SAC, p. 52) (emphasis added)  The SAC alleges at ¶ 14, p. 3 that, "Connie jointly owns with John the common shares of AIA Services held in John's name.  Connie has actively asserted community ownership of those shares and specifically did so before the district court and on appeal in *Taylor v. AIA Services Corp., et al*."   In other words, plaintiffs now propose to litigate the ownership interest of John and Connie Taylor (Henderson) in their AIA stock in an action to which Connie will not be a party.

Connie owns or claims an interest in AIA stock which cannot be adjudicated in her absence.  She must remain a party in order to protect that interest.  Rule19(a) provides that a person should be joined, if feasible, if (s)he claims an interest in the subject matter of an action and "is so situated that the disposition of the action will as a practical matter impair or impede [her] ability to protect that interest."   The conclusion is inescapable that Connie's ability to protect her interest in AIA stock will be impaired or impeded if she is not a party to this action.

Rule 19(b) provides that the Court must then determine whether in equity and good conscience the action should proceed in the absence of the party claiming an interest in the subject matter of the suit.  If the answer is in the negative, the absent party is "thus regarded as indispensable." F.R.Civ.Pro. 19(b)  Connie is an indispensable party because it is not feasible to adjudicate her interest in the stock of AIA if she is not joined as a party to protect her interest.  Any attempt to do so would be a complete waste of judicial resources.

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1)  - 6

**D.    The Court Should Dismiss and Require Plaintiffs to Litigate their Action against all Defendants in One Forum**

Plaintiffs' counsel has frankly admitted his plans to file yet another amended complaint in this action to join a lender, Gem Cap Lending I, LLC ("Gem Cap"), and 13 additional lawyers and law firms.[2]   It is clear that the plaintiffs' ultimate goal is to bring derivative claims not only against the present defendants, but against a plethora of corporate officers, directors, employees and agents, including practically every lawyer and law firm that has represented the AIA corporations in connection with various matters in the past two decades.   The claims are necessarily interrelated and interdependent; it makes no sense to litigate them in different forums, thus giving the plaintiffs multiple opportunities to press their claims and exposing the defendants to multiple and possibly inconsistent adjudications.   The proposed TAC is merely a preliminary step toward the plaintiffs' impermissible objective of litigating the same issues against multiple parties in multiple forums.[3]

**E.    Plaintiffs Lack Standing to Maintain a Derivative Action.**

Mr. Bond has submitted a copy of the settlement agreement between the AIA entities and others, which discloses that AIA Services and AIA Insurance are irremediably insolvent.   As a consequence, it is now plain that the plaintiffs lack standing to bring or maintain a shareholder derivative action on behalf of the AIA entities.    A derivative action is brought on behalf of the

---

[2]   Plaintiffs' most recent derivative demand dated June 13, 2016, demands that AIA Services and AIA Insurance "pursue all possible claims" against the following additional attorneys and law firms:  John Munding, Crumb & Munding, Gordon & Rees, David Risley, Risley Law Office PLLC, Randall Blake and Cox, Clark and Feeney, Quarles and Brady, Doug Siddoway, Randall Danskin, David Gittins, Connie Taylor Henderson, and Henderson Law Firm, and "any other law firm."  The target lawyers and law firms are citizens of Idaho, Washington, Illinois and California.

[3] Plaintiffs' attorney has signaled his clients' intent to file a separate lawsuit against Connie Taylor Henderson and JoLee Duclos.  See Declaration of Roderick C. Bond dated June 15, 2016 (Dkt. 129-3), p. 3: "One or more of my clients will take action against GemCap Lending I, LLC once the ninety days has elapsed and it would be just as easy to name Connie Taylor Henderson and JoLee Duclos to that lawsuit as they were intimately involved in the unlawful $10,000.0000 guarantee by AIA Services and AIA Insurance, which is conduct and torts not subject to the

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1)  - 7

corporation and so the recovery, if any, must go to the corporation. *Gamrex v. Schultz*, 2010 WL 3943910 at *3 (D.Haw. Sep. 9, 2010). In a derivative suit, any recovery flows to the corporation and benefits the derivative plaintiff shareholders only indirectly to the extent of their claim on the corporation's assets. In the case of an insolvent corporation, the parties who stand to benefit are the creditors, not the shareholders.

Under Idaho law, standing is jurisdictional. *Martin v. Camas County*, 150 Idaho 508, 512, 248 P.3d 1243, 1247 (2011); *Koch v. Canyon County*, 145 Idaho 158, 162, 177 P.3d 372, 376 (2009). The federal rule is the same; standing is jurisdictional under Article III. *Dillard v. Chilton County Comm'n*, 495 F.3d 1324, 1330 (11th Cir. 2005). Jurisdictional issues may be raised at any time. *Henderson ex rel Henderson v. Shinseki*, 562 U.S. 428, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011); *Hansen v. Dept. of Treasury,* 528 F.3d 587 (9th Cir. 2007); *Giles v. NYLCare Plans, Inc.*, 172 F.3d 332 (5th Cir. 1999); *Moodie v. Federal Reserve Bank of New York*, 861 F.Supp. 10 (S.D.N.Y. 1994). Where a corporation is insolvent, only its creditors (or bankruptcy trustee) have standing to bring a derivative action on behalf of the corporation. As the Delaware Supreme Court explained in the leading case of *North American Catholic Educational Programming Foundation, Inc. v. Gheewalla,* 930 A.2d 92, 101-02 (Del. 2007):

> When a corporation is solvent, [fiduciary] duties may be enforced by its shareholders, who have standing to bring derivative actions on behalf of the corporation because they are the ultimate beneficiaries of the corporation's growth and increased value. When a corporation is insolvent, however, its creditors take the place of the shareholders as the residual beneficiaries of any increase in value. Consequently, the creditors of an insolvent corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties. . . . Individual creditors of an insolvent corporation have the same incentive to pursue valid derivative claims on its behalf that shareholders have when the corporation is solvent.

---

Second Amended Complaint.

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1)  - 8

*See also Trenwick Am. Litigation Trust v Ernst & Young, LLP*, 906 A.2d 168, 204, n. 96 (Del.Ch. 2006), *aff'd,* 931 A.2d 438 (Del. 2007) ("If the firm is insolvent, its residual claimants are the creditors and it is for their benefit that the directors must now manage the firm."); *Production Resources Group, LLC v. NCT Group, Inc., 863 A.2d 772, 794, n. 67 (Del.Ch. 2004)* ("Creditors also generally have no expectation that they will be able to recover against the directors or stockholders of firms with whom they contract.  Indeed, that is one reason creditors are accorded derivative standing.  Because the creditors need to look to the firm for recovery, they are the correct constituency to be granted derivative standing when the firm is insolvent, as they are the constituency with a claim on the corporation's assets, assets which could be increased by a recovery against the directors.").  The Court in *Production Resources*, *id*. at 791, stated:

> [T]he fact of insolvency does necessarily affect the constituency on whose behalf the directors are pursuing [the task of maximizing economic value]. By definition, the fact of insolvency places the creditors in the shoes normally occupied by the shareholders – that of residual risk-bearers.  Where the assets of the company are insufficient to pay its debts, and the remaining equity is underwater, whatever remains of the company's assets will be used to pay creditors, usually either by seniority of debt or on a pro rata basis among debtors of equal priority.

A corporation is insolvent under Idaho law when its liabilities exceed the reasonable market value of its assets, or when it is unable to pay its debts as they become due in the usual course of business.  Idaho Code § 55-911(1) defines insolvency, for purposes of the Uniform Fraudulent Transfer Act, as being present when the sum of a debtor's debts are greater than the sum of the debtor's assets, at a fair valuation.   Idaho Code § 55-911(2) provides that "[a] debtor who is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute is presumed to be insolvent."   The presumption imposes upon the debtor the burden of proving that it was solvent at the time of the transaction at issue. One ramification of

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1)  - 9

insolvency under Idaho law is that an insolvent corporation is prohibited from making distributions to its shareholders. *See* Idaho Code § 30-29-640(3), providing that a corporation may not make distributions to its shareholders if "the corporation would not be able to pay its debts as they become due in the usual course of business; or the corporation's total assets would be less than the sum of its total liabilities," etc.; *cf. LaVoy Supply Co. v. Young*, 94 Idaho 129, 369 P.2d 45 (1962); *Taylor v. AIA Services Corp.*, 151 Idaho 552, 261 P.2d 829 (2011) for similar restrictions under prior law. The plaintiffs have not pled nor proved that the AIA corporations are solvent. To the contrary, the declaration of Mr. Bond dated April 26, 2016 (Dkt. 128) concedes that after defaulting on their indebtedness to Gem Cap, the AIA corporations entered into a settlement to pay Gem Cap over $12 million, which is outstanding and unpaid. It cannot be doubted that the AIA corporations are hopelessly insolvent.

It inexorably follows that the plaintiffs and other shareholders of the AIA corporations lack standing to pursue a derivative action. Only the corporations' creditors, chiefly Gem Cap, have standing. Since the shareholders lack standing, the Court has no jurisdiction to hear the present case. It would be a futile exercise to proceed further with the case, which would involve litigation over merely hypothetical issues of law and fact.

DATED this 9th day of August, 2016.

ELAM & BURKE, P.A.

By:    /s/ Loren C. Ipsen
          Loren C. Ipsen, Of the Firm
          Attorneys for Defendants, Hawley Troxell
          Ennis & Hawley, LLP, Gary D. Babbitt,
          Richard A. Riley, and D. John Ashby

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of August, 2016, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons via email:

Roderick C. Bond
rod@roderickbond.com
*Attorney for Plaintiff*

Steven P. Wieland
swieland@wielandperdue.com
Shawnee S. Perdue
sperdue@wielandperdue.com
*Attorneys for Michael W. Cashman, Sr., R. John Taylor, and James Beck*

        /s/ Loren C. Ipsen
Loren C. Ipsen

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1)  - 11