Steve Wieland, ISB No. 8282
Shawnee Perdue, ISB No. 8888
WIELAND PERDUE PLLC
405 South 8th Street, Suite 295
Boise, Idaho 83702
p: 208.401.9219
f: 208.401.9218
swieland@wielandperdue.com
sperdue@wielandperdue.com

*Attorneys for Defendants Connie Taylor Henderson,
Jolee Duclos, R. John Taylor, Michael W. Cashman Sr.,
James Beck, and Crop USA Insurance Agency, Inc.*

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| **Dale Miesen**, an individual, a shareholder bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> **Connie Taylor Henderson**, an individual; **et al.**, <br><br> Defendants. | Case No. 1:10-CV-00404-CWD <br><br> **Brief in Opposition to Plaintiff's Motion to Amend and Supplement Complaint [Doc. 182]** |

Defendants Connie Taylor Henderson, Jolee Duclos, R. John Taylor, Michael W.

Cashman Sr., and James Beck (the "**Directors**"), and Crop USA Insurance Agency, Inc.

("**Crop USA**"), through their counsel of record, WIELAND PERDUE PLLC, respectfully

submit this Brief in Opposition to Plaintiff's Motion to Amend and Supplement Complaint

("**Brief**"). Collectively, this Brief refers to the Directors and Crop USA as the "**Defendants**."

## I.    INTRODUCTION

The Motion to Amend and Supplement Complaint ("**Motion**") seeks leave to file a Third Amended Complaint ("**TAC**"). The TAC would add wide-ranging allegations that Defendants improperly caused AIA Services to guarantee a loan from GemCap Lending I ("**GemCap**") to Crop USA and then improperly permitted John Taylor to settle a subsequent collection suit filed by GemCap against AIA when Crop USA defaulted. (TAC ¶¶ 135–56.) The TAC also adds other allegations that John Taylor improperly transferred real estate to AIA Services, that the Directors spent too much on attorney fees defending a state-court lawsuit brought by Plaintiff's counsel on behalf of Donna Taylor, and that John Taylor "improperly" amended the bylaws and was issued additional Series A shares. (TAC ¶¶ 157–63.)[1]

The Court should deny the Motion because: Plaintiff has failed to seek board action by submitting a proper derivative demand letter; Plaintiff's allegations are futile in significant part; and the Motion is not brought timely or in good faith. Instead, to keep this litigation moving smoothly, the Court should require Plaintiff to seek leave to file a complaint that: (i) omits all the new claims in the TAC; (ii) complies with a reasonable page limit[2]; and (iii) complies with Rule 8 pleading requirements for directness and concision.

---

[1] Nothing in this Brief is intended to suggest that Defendants took part in any illegal conduct or are liable for any of the new or preexisting claims in the TAC.

[2] Defendants suggest that 30 pages, plus a reasonable number of attachments, would be an appropriate page limit. *See Cal. Coalition for Families & Children v. San Diego Cnty. Bar Ass'n*, --- Fed App'x ---, 2016 WL 4174772, at *1–2 (9th Cir. Aug. 8, 2016) (affirming dismissal where

## II.    GOVERNING STANDARD

In deciding whether to grant leave to amend, the Court should consider five factors: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). Although the Court can consider all the factors, "[f]utility alone can be enough to deny a motion for leave to amend." *Schwartz v. Adams Cnty.*, No. CV 09-019-S-EJL-CWD, 2010 WL 2011582, at *3 (D. Idaho May 20, 2010) (citing *Nunes*, 375 F.3d at 808)).

## III.    ARGUMENT ON FUTILITY

None of the new derivative claims against Defendants are viable because Plaintiff has failed to make a proper demand, thereby failing to make even a prima facie showing of a substantive—not merely procedural—element of his requested new derivative claims. Further, Plaintiffs new claims that are unrelated to the GemCap transaction are not viable for other reasons. On these grounds alone the Court can refuse the Motion.

### A.    The Amendment Should Not Be Permitted Because Plaintiff Has Failed to Attempt to Obtain Board Action Through a Proper Demand Letter

A derivative plaintiff in federal court must state with particularity the efforts the plaintiff made to obtain the desired actions from the board of directors. Fed. R. Civ. P. 23.1(b)(3). Although Rule 23.1 creates a federal pleading requirement, the demand is a substantive element of a derivative lawsuit. The substantive demand requirement is governed by the law of the state where the company is incorporated, which is Idaho in this case. *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014).

---

plaintiffs failed to reduce a 175-page amended complaint to 30 pages as required by the district court).

In Idaho, as a precondition to ***commencing*** a derivative suit, the plaintiff must make a written demand upon the corporation to take suitable action to redress the plaintiff's concerns. I.C. § 30-29-742. The demand requirement rests on an "important policy" of protecting the board of director's right to direct the company's affairs. *Kugler v. Nelson*, 160 Idaho 408, ---, 374 P.3d 571, 578 (2016) (applying Delaware law). "[T]he demand requirement implements 'the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 100, 111 S. Ct. 1711, 1718 (1991). In short, the demand requirement prevents shareholders from abusing the derivative-suit process. *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 542, 104 S. Ct. 831, 841 (1984).

Again, the demand letter "is not merely a technical or unimportant requirement." *Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008). To ensure the board of directors had an adequate opportunity to evaluate potential litigation, the plaintiff "must make an earnest and sincere, and not a feigned or simulated, effort to induce the directors to take remedial action." *McCann v. McCann*, 138 Idaho 228, 235, 61 P.3d 585, 592 (2002) (quotation omitted). The amendments relating to the GemCap transactions rest on two derivative demand letters dated June 13, 2016, and August 23, 2016, respectively (the "**Demand Letters**"). (TAC ¶¶ 179–80.) Neither is attached to the TAC, but Defendants provided them to the Court contemporaneously with this Brief.[3] (Taylor Decl. Exs. A, B.) The Demand Letters do not satisfy the demand requirement for three broad reasons.

---

[3] The June 2016 letter also was attached to a declaration filed by Mr. Ipsen, [Doc. 148-2], but the August 2016 letter has not found its way into the record yet.

To start, the letters taken together are not an "earnest and sincere" effort to help the AIA board remedy Plaintiff's alleged concerns. Rather than an attempt to alert the AIA board to discrete issues for investigation, the letters read as if Plaintiff's counsel viewed the task as a mere formality, listing every conceivable claim AIA might consider asserting against any conceivable person. Moreover, on September 12, 2016, the board informed Plaintiff in writing that his Demand Letters were too nebulous to enable the board to investigate the alleged claims. (Taylor Decl. Ex. C.) Rather than attempting to clarify the grounds for the Demand Letters or to describe discrete claims, Plaintiff simply filed the Motion. *See McCann*, 138 Idaho at 235, 61 P.3d at 592 (stating that the shareholder cannot merely make a "feigned or simulated . . . effort to induce the directors to take remedial action").

Second, the letters must specifically identify the alleged wrongdoers. A demand must "name the potential defendants." *McCann*, 138 Idaho at 235, 61 P.3d at 592 (quotation omitted). It cannot simply describe an open universe of wrongdoers. *See Simmons v. Credit Suisse Sec. (USA) LLC*, 638 F.3d 1072, 1092 (9th Cir. 2010) *vacated on other grounds*, 132 S. Ct. 1414 (2012) (noting that a letter barely met this requirement because it "identified a closed set of alleged wrongdoers").

Here, however, the Demand Letters give an open universe of potential defendants. They describe the term "Combined Defendants" to include the defendants of this lawsuit plus "agents of AIA," an enormous group of people numbering in the thousands. (Taylor Decl. Ex. A, at 2, Ex. B, at 2.) Many of the numbered paragraphs are directed at certain people plus "any other parties" that may have taken part in some real or imagined transaction. (*E.g.* Taylor Decl. Ex. B, ¶¶ 19, 27, 29, 47.) Other paragraphs name no potential defendant at all. (*E.g. id.* ¶¶ 42, 45.) Simply identifying these formless categories

is not enough to meet the demand requirement. *See Shlensky v. Dorsey*, 574 F.2d 131, 141 (3rd Cir. 1978) (stating that it was insufficient to request action against "responsible individuals" for "all damages").

Third, the letter must give sufficient information about the claims themselves to enable a board to determine if litigation would be successful. The letter "must state facts, not mere general charges and conclusions." *McCann*, 138 Idaho at 235, 61 P.3d at 592 (quotation omitted). Particularity is necessary since, otherwise, "to require a board to investigate claims asserted ambiguously in an equivocal communication would not be an efficient use of corporate resources, because the board would lack the information to make a good faith inquiry." *Yaw v. Talley*, Civ. A. No. 12882, 1994 WL 89019, at *8 (Del. Ch. Mar. 2, 1994).

Another federal derivative case is illustrative. In *Stoner v. Walsh*, 772 F. Supp. 790 (S.D.N.Y. 1991), plaintiff's counsel sent a letter with a list of generalized grievances, for example demanding that the board undo "the decision to reward some of the very individuals responsible for [the company's] financial decay with lavish raises, bonuses and other perks," and to punish the board for "the company's decision to squander $200 million to construct its new art bedecked headquarters." 772 F. Supp. at 793 (quotations omitted; modification added). In other words, the letter merely made conclusory accusations rather than providing facts and information upon which the board in that case could base an investigation. Accordingly, the court observed that these allegations did not describe the company's potential causes of action with sufficient particularity. *Id.* at 797.

The Demand Letters dramatically exceed the *Stoner* letter in their breadth and lack of particularity. Both the Demand Letters open their list of grievances by instructing the AIA board to "[p]ursue all possible claims and defenses" for "all possible tort claims . . .

contract claims, declaratory relief, injunctive relief and punitive damages based on all acts, omissions, concealments, and failure [sic] to disclose through the date of this letter and for the foregoing which continues past the date of this letter." (Taylor Decl. Ex. A ¶ 1, Ex. B ¶ 1.) Both letters follow this broad demand description with dozens of numbered claim paragraphs, but those numbered paragraphs are only given **by way of example**. (*Id.*) Put another way, the Demand Letters seek board action on all claims against any agent who has ever acted on behalf of AIA at any time, past, present, and future.

Even if it were possible to draw a line around any specific claims identified in the Demand Letters, the individually numbered items describe the subject matter so broadly that no board could possibly have investigated them. Although the Demand Letters overlap significantly, Plaintiff's counsel described a combined total of over 100 categories for the AIA board to investigate. (Taylor Decl. Exs. A, B.) Each of them are standalone examples of impossibly broad subject matter, such as one demanding the board "[p]ursue all possible claims against the Combined Defendants for their torts committed against AIA," or another demanding the board "[p]ursue all possible claims against the Controlling AIA Defendants and any other responsible party" for paying attorney fees to any of nine law firms that supposedly committed malpractice at some point in AIA's history. (Taylor Decl. ¶¶ 20, 29.) No board of directors could use this information to investigate a company's claims against anyone. *See Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 409 (S.D.N.Y. 2007) ("[T]he demand must inform the board with particularity of the complained of acts and the potential defendants." (quotation omitted)).

In addition, the Court should deny the Motion **without** allowing Plaintiff leave to amend. A derivative claim failing to comply with the demand requirement must be dismissed with prejudice. In re *Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 991 (9th

Cir. 1999). The Ninth Circuit has overturned a district court decision granting dismissal without prejudice where the plaintiff failed to make an adequate demand. *Simmonds*, 638 F.3d at 1097. Both potentially operative Demand Letters are now before the Court, so Plaintiff cannot allege any additional facts that might show compliance with the demand requirement. (Taylor Decl. Exs. A and B.) Since no amendment would save Plaintiff's allegations, the Court should deny the Motion without leave to amend. *E.g. Gulbrandsen v. Stumpf*, No. 12-5968 JSC, 2013 WL 6406922, at *10 (N.D. Cal. Dec. 6, 2013) (dismissal with prejudice); *Weinstein v. Kirkman*, No. C13-0769-JCC, 2013 WL 12121125, at *5 (W.D. Wash. Sep. 16, 2013) (dismissal with prejudice). Further, refusal without leave to amend is necessary because the corporation has a substantive right to investigate potential wrongdoing before a shareholder sues, not after.[4]

**B.** **Breach-of-Fiduciary-Duty Claims Relating to Bylaw Amendments, Stock Issuances, Property Contributions, and Litigation Costs Are Futile**

Idaho applies the business judgment rule, *McCann v. McCann*, 152 Idaho 809, 815, 275 P.3d 824, 830 (2012), but appellate case law provides little guidance, see *Steelman v. Mallory*, 110 Idaho 510, 513, 716 P.2d 1282, 1285 (1986) (stating the general rule). The legislature, however, has helped fill some gaps.[5] A plaintiff asserting breach of fiduciary

---

[4] Plaintiff might be allowed leave to amend if he merely failed to *allege* making a proper derivative demand, but here the problem is not a procedural failure of pleading but a substantive failure of compliance. *See In re Polycom, Inc.*, 78 F. Supp. 3d 1006, 1021 (N.D. Cal. 2015) (granting dismissal without prejudice because the shareholder failed to plead demand futility under Delaware law).

[5] It appears the legislature enacted the statutes as an "adjunct" to the court-made business-judgment rule. I.C. § 30-1-831 (2004) Rptr. Cmt.; *cf. Jordan v. Hunter*, 124 Idaho 899, 905 n.3, 865 P.2d 990, 996 n.3 (Ct. App. 1993) (stating that the statute in effect at the time was "essentially a codification" of the business-judgment rule but had no effect on director or officer fiduciary duties). In addition to statutes, Idaho's appellate courts also look to case law from other states when applying the business-judgment rule. *E.g. Steelman*, 110 Idaho at 513, 716 P.2d at 1285 (citing Colorado, Arizona, and Oregon cases); *McCann*, 152 Idaho at 817, 275 P.3d at 832 (citing a Massachusetts case).

duty must prove that liability is not limited by the articles of incorporation and, pertinent here, the conduct was an:

    (i)      Action not in good faith; or

    (ii)     A decision:

          (A)    Which the director did not reasonably believe to be in the best interests of the corporation; or

          (B)    As to which the director was not informed to an extent the director reasonably believed appropriate in the circumstances . . . ; or

    (iii)    [A result of a] lack of objectivity due to the director's familial, financial, or business relationship with . . . another person having a material interest in the challenged conduct . . . ; or

    . . .

    (v)      Receipt of a financial benefit to which the director was not entitled . . . .

I.C. § 30-29-831(b).[6] Then, the plaintiff must prove causation, damages, and any other elements otherwise necessary to prevail on the claim for legal or equitable relief. I.C. § 30-29-831(2).

In federal court, the plaintiff cannot plead facts "that are merely consistent with a defendant's liability," but must provide sufficient factual content for the Court to infer that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Since overcoming the business-judgment rule is a substantive element of proof, Plaintiff must allege facts sufficient to rebut or "plead around" the presumption that the

---

[6] The legislature replaced an earlier corporate code with a very similar statutory regime effective July 1, 2015. 2015 Idaho Sess. Laws ch. 243. There is no significant difference between the current and old statutes cited here and their numbering schemes are the same, so for brevity the current sections will be cited. *Compare, e.g.*, I.C. § 30-1-831 (2004) *with* I.C. § 30-29-831 (2015).

directors acted within their permissible business judgment. *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 679–80 (N.D. Tex. 2011).

Applying this pleading standard shows that many of the new allegations in the TAC do not state a claim for breach of fiduciary duty and are therefore futile.

### 1.    *Transfer and Valuation of Real Estate by John Taylor*

The TAC alleges that John Taylor transferred real property from related entities to AIA, had AIA assume $393,863 in debts on the properties, and improperly assigned a book value to them. (TAC ¶¶ 157–58.) There are no facts suggesting that transferring the properties or assigning a given book value was done in bad faith; without a legitimate purpose; or, as a potentially conflicting-interest transaction, harmed AIA. *See* I.C. § 30-29-831(2) (requiring a showing of harm to merit damages); *see generally McGowan v. Ferro*, 859 A.2d 1012 (Del. Ch. 2004) (discussing whether a board's decision to extend a merger agreement was a breach of loyalty). For instance, there is no allegation the encumbrances exceeded the properties' value, that the book value is too low or, even if it was, that having a low book value harms the company. These allegations do not state a cause of action.

### 2.    *Issuance of Series A Shares to John Taylor*

Next, the TAC alleges John Taylor was issued 7,500 Series A Preferred Shares in AIA Services. (TAC ¶¶ 160–61.) The TAC does not suggest the company received insufficient value or that the issuance was a conflicting interest transaction that harmed the company or Plaintiff. *See Carsanaro v. Bloodhound Techs., Inc.*, 65 A.3d 618, 655 (Del. Ch. 2013) (stating that overpayment in stock can be actionable). There are no facts amounting to an improper business purpose, either, since exchanging cash for shares is certainly a proper corporate endeavor, especially when a company is cash-strapped. To

the extent such an issuance might conceivably dilute the rights of the only other Series A shareholder, Donna Taylor, her claim would be direct, not derivative, and she is not a party. *See Lipton v. News Int'l, PLC*, 514 A.2d 1075, 1079 (Del. 1986) (holding that a shareholder should bring a direct action to challenge a stock exchange agreement that supposedly violated the shareholder's voting rights) *abrogated on other grounds by Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1037–38 (Del. 2004).

### 3.    *Amendment of Bylaws*

The TAC alleges that John Taylor improperly amended the AIA bylaws to require an unsuccessful plaintiff in an intracompany lawsuit to pay attorney fees. (TAC ¶ 162.) Such provisions are valid unless adopted for an improper purpose. *ATP Tour, Inc. v. Deutscher Tennis Bund*, 91 A.3d 554, 558 (Del. 2014). Given that AIA and its constituents have been racked by unrelenting and unsuccessful litigation over the past nine years, the obvious purpose for the bylaw is a proper one: to deter meritless litigation. *See id.* at 560 (stating that even an intent to generally deter all litigation would not necessarily invalidate a fee-shifting bylaw). The TAC asserts no invalid purpose for the bylaw amendment and therefore states no claim.

### 4.    *Overspending on Donna Taylor Litigation*

Last, the TAC alleges that the Directors overspent on attorney fees defending a lawsuit Donna Taylor filed against AIA to collect redemption payments for stock she received in her divorce from Reed Taylor. (TAC ¶ 163.) Plaintiff alleges no facts suggesting that defending the litigation was not done for a legitimate business purpose or suggested the case was meritless. Like the others, this claim is futile.

C.    **The New Fraud, Concealment, and Constructive Fraud Allegations in Count V Do Not State a Cause of Action**

1.    *Plaintiff Fails to Plead His Fraud Claim with Particularity*

A party alleging fraud must state with particularity the circumstances constituting the fraud. Fed. R. Civ. P. 9(b). A fraud claim must specifically allege facts such as the times, dates, places, benefits received, and other details of the alleged fraudulent activity. *Neubronner v. Milken*, 6 F.3d. 666, 672 (9th Cir. 1993). Plaintiff's new allegations do not satisfy the heightened pleading requirement under Rule 9(b). Plaintiff fails to allege the specific content of the alleged fraudulent communications and the times and dates that such conduct occurred.  For these reasons, Plaintiff's new fraud claims in Count V are not properly pled.

2.    *Plaintiff Fails to State a Cause of Action for Fraud or Constructive Fraud in His New Allegations*

A party alleging fraud must make the following allegations with specificity: (1) the defendant made a statement or representation of fact; (2) it's falsity; (3) it's materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) the reliance by the hearer; (8) justifiable reliance; and (9) resultant injury. *Doe v. Boy Scouts of America*, 159 Idaho 103, 108, 356 P.3d 1049, 1055 (2015).  A party alleging constructive fraud must plead that there was a duty of trust and confidence between plaintiff and the defendant, the duty was breached, and (1) the defendant made a statement or representation of fact; (2) it's falsity; (3) it's materiality; (4) the hearer's ignorance of the falsity of the statement; (5) the reliance by the hearer; (6) justifiable reliance; and (7) resultant injury. *Id*. at 109, 356 P.3d at 1055. Last, in a claim for fraud by concealment, a plaintiff must plead at the very least that there was a nondisclosure, the plaintiff relied on the nondisclosure, plaintiff's reliance on

the nondisclosure was material to the transaction, and that plaintiff was damaged because

of the nondisclosure. *Watts v. Krebs*, 131 Idaho 616, 620, 962 P.2d 387, 391 (1998).

In the TAC, Plaintiff alleges the following:

The Controlling AIA Defendants, Crop USA, and GemCap concealed from AIA that they had AIA unlawfully and improperly enter into the Guarantees, Settlement Agreements, and related agreements and instruments, together with unlawfully transferring property and making payments under those unlawful agreements and instruments.

(TAC ¶ 214).

Plaintiff's allegations, even taken together with the existing fraud allegations, fail

to properly plead a claim for fraud or constructive fraud. Although conclusory accusations

abound, Plaintiff has failed to plead with particularity that Defendants made any

misrepresentations of fact or material nondisclosures, that anyone actually relied on those

misrepresentations or nondisclosures, that such activity caused damages, or that the

other elements of fraud or constructive fraud exist. *See Stack v. Lobo*, 903 F. Supp. 1361,

1367 (N.D. Cal. 1995) ("[M]ere conclusory allegations of fraud are insufficient."). Further,

Plaintiff has failed to allege how Crop USA or GemCap could have concealed anything

from AIA. For this reason, Plaintiff's request to add new allegations for fraud should be

denied.

**D.     The New Conspiracy to Commit Fraud Allegations in Count V Do Not State a Cause of Action**

A civil conspiracy that gives rise to legal remedies exists only if there is an

agreement between two or more to accomplish an unlawful objective or to accomplish a

lawful objective in an unlawful manner. "'Civil conspiracy is not, by itself, a claim for

relief.'" *Mannos v. Moss*, 143 Idaho 927, 935, 155 P.3d 1166, 1174 (2007) (quoting

*McPheters v. Maile*, 138 Idaho 391, 395, 64 P.3d 317, 324 (2003)). A conspiracy is only

actionable if some actionable wrong results from an agreed effort to achieve that wrong. *Id.* "An agreement is the foundation of a conspiracy charge and there must be some showing of specific evidence of a plan or agreement to defraud to demonstrate the pendency of the conspiracy at the time the alleged fraud occurred." *Id*. Where a plaintiff's conspiracy claims are based in fraud, the conspiracy claim must also be pled with particularity. *Taylor v. McNichols,* 149 Idaho 826, 844, 243 P.3d 642, 660 (2010).

As noted above, Plaintiff has failed to properly plead a claim for fraud against Defendants, which alone renders his conspiracy claim futile. Further, Plaintiff has failed to plead with particularity, or at all, that there was any plan or agreement to defraud the Company or Plaintiff. Plaintiff has failed to properly plead a claim for aiding and abetting and conspiracy of fraud. Count V of the TAC is therefore futile.

**E.      Count VIII Does Not State a Valid Cause of Action for "Statutory Relief"**

Finally, under a new Count VII, Plaintiff wants damages and equitable relief under I.C. §§ 30-1-304 (repealed) and 30-29-304. The statutes Plaintiff relies on merely describe who can raise the ultra-vires doctrine when challenging corporate transactions and what remedies are available if certain classes of challengers succeed. I.C. § 30-29-304(2). The statutes provide rules and remedies to guide that apply to causes of action such as derivative claims for breach of fiduciary duty or for direct suits against a company to enjoin acts. However, "when a statute is silent regarding private enforcement, courts may recognize a private right only when it is necessary to assure the effectiveness of the statute." *Brock v. Bd. of Directors, Indep. Sch. Dist. No. 1*, 134 Idaho 520, 523, 5 P.3d 981, 984 (2000). "In the absence of strong indicia of a contrary legislative intent, courts must conclude that the legislature provided precisely the remedies it considered appropriate."

Brief in Opposition to Plaintiff's Motion to Amend and Supplement Complaint                                                                           Page 14 of 18

*Yoakum v. Hartford Fire Ins. Co.*, 129 Idaho 171, 176, 923 P.2d 416, 421 (1996). Count VIII is futile because it alleges no private cause of action.

## IV.    ARGUMENT ON FACTORS OTHER THAN FUTILITY

If the Court determines that the Motion does not fail on the grounds of futility alone, the other factors also weigh against granting the Motion.

### A.    Bad Faith

This factor weighs against granting the Motion. The Civil Rules require "a short and plain statement of the claim" and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2) and 8(d)(1). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1102 (E.D. Cal. 2014).

The TAC is anything but simple and direct—it is a "laundry list" of most of the significant transactions any of the Defendants have taken part in since the 1990s. Unlike most pleadings, which clearly separate allegations of fact from accusations of wrongdoing, many of the new allegations are extended paragraphs mixing argumentative assertions with factual allegations. (*E.g.* TAC ¶¶ 145–56, 172, 179–81.) Perhaps most egregious is TAC ¶ 164, which comprises several pages of sweeping but conclusory allegations. *Cf. McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) (affirming dismissal of a complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant").

Instead, the object of the TAC is not to clarify the issues but to obfuscate them. Defendants and Hawley Troxell extricated AIA from a redemption agreement between

AIA and Reed Taylor in 2011. *See generally Taylor v. AIA Services Corp.*, 151 Idaho 552, 261 P.3d 829 (2011). This litigation is part of an ongoing effort against Defendants, Hawley Troxell, and other law firms on the periphery of the redemption deal through relentless litigation. Similar allegations appear in numerous other lawsuits, and this Motion is merely a continuation of the attrition strategy.[7]

Further, Plaintiff accuses the Directors of wrongfully resisting a lawsuit brought by another of Plaintiff counsel's clients, Donna Taylor, to recover redemption payments from AIA. (*See* TAC ¶ 163.). Offering this allegation is particularly inappropriate given that Plaintiff's counsel represents Donna Taylor in the suit and is a major factor driving litigation costs. Further, it is questionable whether Plaintiff's counsel can continue pursuing a lawsuit for Donna Taylor, who seeks a direct personal judgment against AIA, while also representing Plaintiff, who seeks to recover and conserve corporate resources in this derivative suit. This is especially problematic because AIA's case against Donna Taylor demonstrably has merit.[8]

## B.    Undue Delay

Plaintiff has unduly delayed in bringing claims relating to the GemCap loan guarantees. Plaintiff filed his Second Amended Complaint in June 2016. (2nd Am. Compl., June 20, 2016 [Doc. 137].) Plaintiff should have brought claims he was aware of at that

---

[7] These other lawsuits include: *Reed Taylor v. AIA Services Corp., et al.*, Nez Perce County No. CV-07-208; *Donna Taylor v. John Taylor*, Nez Perce County No. CV-08-1150; *Donna Taylor v. AIA Services Corp., et al.*, Nez Perce County No. CV-13-1075; *Taylor v. McNichols*, 149 Idaho 826, 243 P.3d 642 (2010); *Taylor v. Riley*, 157 Idaho 323, 336 P.3d 256 (2014); *Durant v. GemCap Lending I, LLC*, Nez Perce County No. CV-14-1444.

[8] Plaintiff omits the fact that AIA has, through dispositive motion practice, successfully reduced Donna Taylor's original claim of $450,000 (plus interest) to less than a quarter of that amount. AIA has been so successful that the court vacated trial set for the summer of 2015 so Donna Taylor could appeal the rulings against her on a 54(b) certificate. Plaintiff's counsel successfully had trial vacated by arguing that going to trial would not be worth the expense if the claims were so limited.

time. *See Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) (stating that a court can deny leave to amend where the movant failed to bring known claims in the original pleading). Now, Plaintiff offers new allegations that the Directors improperly authorized AIA Services to guarantee Crop USA's loan from GemCap Lending I, LLC ("**GemCap**") in 2011–2012. (TAC ¶¶ 135–36.) GemCap filed suit against AIA, plus others, in California in July 2013. (*Id.* ¶ 146.) Yet, Plaintiff waited years before filing the Motion. *See Garcia v. Vilsack*, 628 F. Supp. 2d 1306, 1312 (D.N.M. 2009) (holding that a Court can deny leave to amend where a plaintiff knew of the facts upon which the new claim was based at the time of filing original complaint).

## C.   Previous complaints

This factor also weighs against the amendment. Plaintiff has amended the complaint twice before, including once already this year in June. Plaintiff offers no explanation why he did not attempt to obtain board action sooner to file these new derivative claims in June of this year.

## D.   Prejudice

Last, prejudice would result if the Motion is granted. For the reasons described throughout this brief, the amendment would subject Defendants to a case of sprawling and amorphous scope, including new claims not properly presented to the AIA directors, prejudicing Defendants' ability to marshal the evidence and mount a defense. Accordingly, the Court should reject the Motion. Further, the Court should require Plaintiff to seek leave to file a new complaint without the new claims that also is within a reasonable page limit and complies with Rule 8.

## V.   CONCLUSION

The Court should resist Plaintiff's attempt to broaden and complicate this already onerous lawsuit with derivative claims never properly presented to AIA's board for investigation. Instead, the Court should require Plaintiff to file a new complaint of reasonable length that also complies with the pleading rules.


Dated November 28, 2016.

WIELAND PERDUE PLLC

_____
Steve Wieland, ISB No. 8282

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2016, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected in the Notice of Electronic Filing:

| | |
|---|---|
| **Roderick Cyr Bond**<br>rod@roderickbond.com<br>*Attorney for Plaintiff Dale Miesen* | **Loren C. Ipsen**<br>lci@elamburke.com<br><br>**James D. LaRue**<br>jdl@elamburke.com |
| **Alyson Anne Foster**<br>aaf@aswblaw.com<br>*Attorney for Intervenor GemCap Lending I LLC* | <br>**Jeffrey A. Thomson**<br>jat@elamburke.com<br><br>*Attorneys for Hawley Troxell Defendants* |

I further certify that on such date I served the foregoing on the following non-CM/ECF registered participants by email as follows:

| | |
|---|---|
| **AIA Services Corporation**<br>P.O. Box 538<br>Lewiston, ID  83501<br>jtaylor@cropusainsurance.com | **AIA Insurance, Inc.**<br>P.O. Box 538<br>Lewiston, ID  830501<br>jtaylor@cropusainsurance.com |

_____
Steve Wieland
Attorney for Defendants R. John Taylor, Michael W. Cashman Sr., James Beck, Connie Taylor Henderson, JoLee Duclos, and Crop USA Insurance Agency, Inc.