UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

DALE L. MIESEN, A
SHAREHOLDER BRINGING THIS
ACTION ON BEHALF OF AND/OR
IN THE RIGHT OF AIA SERVICES
CORPORATION AND ITS WHOLLY
OWNED SUBSIDIARY AIA
INSURANCE, INC.;

        Plaintiff,

v.

CONNIE TAYLOR HENDERSON, an
individual; JOLEE DUCLOS, an
individual; HAWLEY TROXELL
ENNIS & HAWLEY LLP, an Idaho
limited liability partnership; GARY D.
BABBITT, an individual; D. JOHN
ASHBY, an individual; RICHARD A.
RILEY, an individual; MICHAEL W.
CASHMAN SR., an individual; JAMES
BECK, an individual; R. JOHN
TAYLOR, an individual; CROP USA
INSURANCE AGENCY, INC., an
Idaho corporation; AIA SERVICES
CORPORATION, an Idaho corporation;
AIA INSURANCE, INC.; an Idaho
corporation,

        Defendants,

        and

GEMCAP LENDING I, LLC,

        Limited
        Defendant-Intervenors.

Case No. 1:10-cv-00404-CWD

**MEMORANDUM DECISION AND
ORDER RE:**

**MOTION TO AMEND AND
SUPPLEMENT COMPLAINT (DKT.
182); AND**

**MOTION TO STRIKE
DECLARATION OF RICHARD T.
MCDERMOTT (DKT. 196)**

## INTRODUCTION

Pending before the Court are two motions: (1) Plaintiff's Motion to Amend and Supplement the Complaint (Dkt. 182); and (2) Defendants' Motion to Strike the Declaration of Richard T. McDermott (Dkt. 196). The Court heard oral argument from Plaintiff and the Defendants[1] on March 13, 2017. After review of the record, consideration of the parties' arguments and relevant legal authorities, and otherwise being fully advised, the Court issues the following memorandum decision and order.

## PROCEDURAL BACKGROUND

Plaintiff Dale Miesen is the representative shareholder[2] who brings this derivative action on behalf of himself and other AIA Services Corporation shareholders. On May 27, 2016, Miesen filed a motion for leave to amend. (Dkt. 130.) In the proposed second amended complaint, Miesen sought to add Connie Taylor Henderson and JoLee Duclos, two additional shareholders/officers of the AIA entities, as individual defendants. On June 20, 2016, after the Court granted leave, Miesen filed his Second Amended Complaint. (Dkt. 137.)

During the period between filing his motion for leave to amend the complaint for a second time, and filing the Second Amended Complaint, Miesen served a shareholder derivative demand letter on the AIA board of directors on June 13, 2016. (Dkt. 186-1.)

---

[1] The Court collectively refers to CropUSA Insurance Agency, Inc., John Taylor, Michael Cashman, James Beck, Connie Henderson, and JoLee Duclos as "Defendants" for the purposes of this motion unless indicated otherwise. The other set of defendants in this action (the Hawley Troxell Defendants) do not oppose the motion to amend or the motion to strike.

[2] Although Miesen was added as the sole shareholder plaintiff in this derivative action on October 31, 2016 (Dkt. 178), to avoid confusion, the Court refers to Miesen and not to the previously named plaintiffs.

The 11-page demand listed 44 claims for the board to investigate and pursue. Among others, the list included:

- Allegations that the loan and settlement agreement between GemCap Lending, the CropUSA entities, and the AIA entities (as guarantor) was unlawfully unauthorized by the AIA board of directors. Miesen sought to have the loan and settlement agreements declared illegal and to recover the funds and/or property that was transferred and paid to GemCap pursuant to those agreements. He alleged also that GemCap aided and abetted the AIA directors in committing non-specific torts against AIA. (*Id.* at ¶¶ 2-6.)

- Allegations against the Combined Defendants for torts committed against AIA (including: breaches of fiduciary duties and fraud). Miesen sought disgorgement of the Controlling AIA Defendants' compensation, consulting fees, salaries, benefits, etc., derived from AIA. (*Id.* at ¶¶ 7-8.)

- Allegations against the Controlling AIA Defendants for allowing John Taylor to operate AIA for his benefit and/or to assist AIA in funding the operation of entities owned by the Controlling Defendants. (*Id.* at ¶ 15.)

- Allegations against Combined Defendants for taking action violating AIA's amended articles of incorporation, violating AIA's bylaws, violating statutory and common law, and committing torts against AIA. Examples of these torts and "the covering up of these torts" can be found in the Second Amended Complaint. (*Id.* at ¶ 19.)

- Allegations against the Controlling AIA Defendants for all damages incurred or paid by AIA for attempting to effectuate a reverse stock split to eliminate the minority common shareholders of AIA, in violation of AIA's articles of incorporation, bylaws, and the Idaho Code. (*Id.* at ¶ 21.)

On August 23, 2016, Miesen served another demand letter on the board. (Dkt. 186-2.) This 13-page demand listed 58 claims for the board to investigate and pursue. Among others, the list included:

- Allegation that John Taylor's action of amending AIA's bylaws without approval from disinterested directors or shareholders was unlawful. (*Id.* at ¶ 2.)

- Allegation of unlawful issuance of 7,500 Series A Preferred Shares to John Taylor; according to the bylaws, before the alleged unlawful amendment, these shares could only be issued to minority shareholder Donna Taylor. (*Id.* at ¶ 3.)

- Allegations against the Controlling AIA Defendants for the property transferred to AIA from John Taylor without disinterested approval. Miesen asked the board to rescind such actions based on conflicts of interest and to pursue monetary damages for the debts assumed for such property. (*Id.* at ¶¶ 4-6.)

- Allegation that the Controlling AIA Defendants breached their fiduciary duties by accruing attorney's fees related to litigation against Donna Taylor

in an amount disproportional to and in excess of what AIA allegedly owes

to Donna Taylor. (*Id.* at ¶7-8.)

On September 12, 2016, AIA President, John Taylor,[3] responded to Miesen's two

demand letters, collectively. (Dkt. 186-3.) The response states in relevant part:

> [T]he boards of directors of AIA Services Corporation and AIA Insurance,
> Inc. (the "Boards"), have determined not to take any action in response to the
> Demand Letters.
>
> The Boards have rejected your Demand Letters because they do not provide
> a coherent description of the wrongful transactions for which you seek a
> remedy. The scope of the conduct described in the Demand Letters is so
> broad they are impossible to address in any meaningful way….

(*Id.*)

On October 24, 2016, after Miesen served the two additional demand letters on the

AIA board of directors and received the above response, Miesen's counsel indicated to

the Court during a hearing that he intended to file a third motion for leave to amend to

include new claims and to add intervenors GemCap[4] as a party defendant. The Court re-

set the deadline to file a motion for leave to amend or join parties for November 4, 2016.

(Dkt. 178.)

Miesen filed the instant motion seeking leave to file a third amended complaint on

October 31, 2016. With Miesen's reply memorandum in support of his motion, he filed

---

[3] According to Miesen, at the time he served both demand letters, John Taylor was the only remaining AIA board member.

[4] GemCap was permitted to intervene on October 31, 2016, for the limited purpose to seal the settlement agreement document. (Dkt. 178.) GemCap is a proposed new defendant to this action, however.

the Declaration of Richard McDermott, an attorney and professor who specializes in corporate finance law. Defendants filed a motion to strike McDermott's declaration.

## DISCUSSION

Miesen seeks leave to amend the second amended complaint to clarify facts, add new claims, and add two new defendants: GemCap and CropUSA Insurance Services, LLC.[5] Defendants oppose the motion on several grounds, including futility, undue delay, bad faith, and prejudice. The Court will address Defendants' motion to strike before addressing Miesen's motion to amend.

## MOTION TO STRIKE MCDERMOTT DECLARATION (DKT. 196)

Defendants seek to strike from the record the Declaration of Richard T. McDermott filed with Miesen's reply in support of his motion to amend. (Dkt. 196-6.) Specifically, Defendants argue McDermott's declaration is inadmissible because: (1) it contains legal conclusions; (2) it fails to state whether McDermott reviewed Idaho law or federal law regarding the issues before the Court; and (3) expert witness testimony is premature and inappropriate for the Court's consideration on the futility argument Defendants make in opposition to the proposed third amended complaint.

To better understand Defendants' motion, the Court will first set forth the relevant details of McDermott's declaration and applicable standards of law before discussing the substance of the motion to strike.

---

[5] CropUSA Insurance Agency is currently a named party defendant—CropUSA Services, LLC, is a separate entity, and has yet to be added as a party defendant. CropUSA Insurance Agency and CropUSA Insurances Services are referred to collectively in the proposed third amended complaint as "CropUSA." (Dkt. 182-2 at ¶ 11.) It follows the causes of action alleged against CropUSA (Counts II, IV, V, VII, and VIII) are alleged against both CropUSA entities.

## A. McDermott Declaration

Miesen retained attorney and law professor, Richard T. McDermott, to provide expert testimony regarding the functions and responsibilities of the corporate defendants and officers in this lawsuit. (Dkt. 194-6 at 2.)

In reaching the opinions he states in his declaration, McDermott reviewed documents produced in the various related lawsuits involving one or more of the defendants in this lawsuit. (*Id.* at 5.) He reviewed AIA's articles of incorporation and restated bylaws and the amendments thereto. He reviewed the annual reports for AIA Services and AIA Insurance and the derivative demand letters that Miesen's attorney served on the AIA entities' board of directors, dated June 13, 2016, and August 23, 2016. He reviewed also John Taylor's response letter to Miesen's counsel dated September 12, 2016.

Upon review of the documents, McDermott provided the following four opinions in his declaration:

21. In all my years of practice and experience, I have never seen such wide-spread corporate malfeasance and inappropriate conduct as was committed by the defendants in this lawsuit and/or covered up by them as demonstrated by the documents that I have reviewed. While the defendants John Taylor, Connie Taylor, James Beck, Michael Cashman, Sr., JoLee Duclos and CropUSA Insurance Agency, complain about the length of Dale Miesen's Proposed Amended Complaint in this lawsuit, I believe that the length of the complaint is necessary to cover the substantial history of facts and the claims at issue in this lawsuit.

22. In my opinion, the two Derivative Demand Letters at issue in the pending motion, Dkt. 186-1 and 186-2, more than sufficiently state the required names, facts, causes of action and relief that I would expect to see, and have seen, in derivative demand letters provided to boards of directors for claims against the parties named in the Proposed Third Amended Complaint. I am

familiar with and/or have knowledge of, the transactions and items identified in the Derivative Demand Letters. It is disingenuous for John Taylor, as the sole purported director and officer for AIA Services and AIA insurance, to state that he lacks information as to any of the detailed items in the Derivative Demand Letters as he was directly or indirectly involved with each of the items listed in the Derivative Demand Letters.

23. Because of John Taylor's conflicts of interest by way of involvement in the various items listed in the Derivative Demand Letters (including through ownership in Crop USA Insurance Agency, AIA Services, Pacific Empire Radio, and in other entities listed in the Derivative Demand Letters and/or his involvement in the items listed in the Derivative Demands), John Taylor was unable to respond on behalf of AIA Services and AIA Insurance to the Derivative Demands or make any decisions whether to pursue the claims listed in the Derivative Demands based upon his conflicts of interest and his bad faith conduct. Those same conflicts of interest, together with the acts of placing their own self-interests ahead of the best interests of AIA Services and AIA Insurance, apply to virtually all of the breach of fiduciary duty claims in this lawsuit (and possibly every one of them) thereby resulting in the business judgment rule having no application to the Individual Defendants during the applicable times that they owed fiduciary duties as officers and/or directors and/or controlling shareholders of AIA Services or AIA Insurance as alleged in the Proposed Third Amended Complaint. Moreover, the Individual AIA Defendants have not acted in good faith with respect to the transactions and the acts at issue in the Proposed Third Amended Complaint.

24. As I mentioned above, I will be prepared to render opinions as to the breaches of fiduciary duties and related conduct of each of the defendants in this lawsuit (including the Hawley Troxell Defendants), together with opinions regarding proximate causation. I am informing the Court of these facts so that the Court understands the causes of action and the damages at issue in this lawsuit are substantiated.

(*Id.* at 6.)

## B. Legal Standard

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is

to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). However, Rule 12(f) motions are "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp. 2d 1101, 1152 (C.D. Cal. 2003).

The Court has broad discretion in disposing of motions to strike. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993) *rev'd on other grounds* 510 U.S. 517 (1994). The Court construes motions to strike in the light most favorable to the nonmoving party and will deny the motion if the material sought to be stricken has "any relation to the subject matter of the controversy, could be held to in any manner defeat the plaintiff's claim, or if it fairly presents any question of fact or law." *United States v. 45.43 Acres of Land Situate in Ada County, Idaho*, 2009 WL 1605127 (D. Idaho June 4, 2009) (internal quotations omitted).

## C. Legal Conclusions Will Not Be Considered

Defendants contend McDermott's declaration is inadmissible because it contains legal conclusions regarding whether the proposed third amended complaint is too lengthy, whether the derivative demands were sufficient, and whether the CropUSA Defendants engaged in "corporate malfeasance and inappropriate conduct." Miesen concedes that McDermott's declaration should not be considered for any legal conclusions contained therein, agreeing that these are for the Court to determine.

"Testimony offered solely for the purpose of answering legal questions within the province of the Court is inadmissible." *See Stinker Stores, Inc. v. Nationwide Agribusiness Ins. & Order Co.*, No. CV 08-370-LMB, 2010 U.S. Dist. LEXIS 31643, at *13 (D. Idaho Mar. 31, 2010). Paragraph 21 and portions of Paragraphs 22 and 23 of McDermott's declaration contain legal conclusions. Accordingly, the Court will not consider them in its consideration of and determination of Miesen's motion for leave to amend.

### D.  No Requirement to Provide Basis of Law

Defendants assert that, although McDermott discusses his experience at length in his declaration, he failed state whether he reviewed Idaho law or federal law regarding the issues before the Court, and, therefore, his opinions are not based upon reliable facts and data, as required by Federal Rule of Evidence 702.[6]

While this argument may be appropriate to raise regarding the foundation for and admissibility of McDermott's opinions during summary judgment proceedings or at trial, it is not relevant in the context of Miesen's instant motion to amend. The Court needs not

---

[6] Fed. R. Evid. 702 provides the following:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) The testimony is based on sufficient facts or data;

(c) The testimony is a product of reliable principles and methods; and

(d) The expert reliably applied the principles and methods to the facts of the case.

address this argument, especially given the Court's finding below that McDermott's opinions, to the extent they appear to suggest or guide whether the Court should allow leave to amend, and thus, will not be considered.

### E. Expert Witness Testimony is Premature at this Juncture

Defendants contend that, because the issue before the Court pertains to whether Miesen satisfied the pleading and procedural requirements for filing a third amended complaint, expert witness testimony is inappropriate at this stage in the litigation. In response, Miesen contends the declaration was submitted not to rebut Defendants' futility arguments, but for the purpose of rebutting Defendants' allegations of bad faith, undue delay, and prejudice.

The Court agrees, in part, with Defendants that it is inappropriate for the Court to consider McDermott's declaration as to whether the newly alleged claims are futile. The futility analysis is similar to the analysis required in a Fed. R. Civ. P. 12(b)(6) motion to dismiss, in which it is impermissible to consider documents outside the pleadings without converting the motion into a motion for summary judgment. Accordingly, the Court will not consider McDermott's declaration in determining whether the proposed amended complaint is futile. However, with regard to the Court's determination as to whether the motion to file the amended complaint was made in bad faith, the Court may consider Paragraph 24 of McDermott's declaration along with the portions of Paragraphs 22 and 23 that do not invade the province of the Court, for whatever weight the Court determines the statements should receive.

**MOTION TO AMEND AND SUPPLEMENT COMPLAINT (DKT. 182)**

Miesen seeks leave to amend his complaint for a third time pursuant to Fed. R. Civ. P. 15(a)(2) and (d). Specifically, Miesen seeks to amend his complaint to clarify factual allegations and to assert additional claims, including claims that continue to accrue or that were discovered after the Second Amended Complaint was filed. He seeks also to add two new party defendants: GemCap and CropUSA Insurance Services, LLC. Defendants object to all aspects of Miesen's motion, specifically arguing that the Court should deny the motion to amend because the new allegations are futile, the motion was made in bad faith, amendment would cause undue delay, and amendment would result in prejudice to Defendants. For the reasons that follow, the Court will grant in part, and deny in part, Miesen's motion for leave to file a third amended complaint.

## I. Standards of Law

### A. Motion to Amend—Fed. R. Civ. P. 15(a)(2)

Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, while the decision to grant leave to amend is within the Court's discretion, the Court "must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits rather than on the pleadings or technicalities." *U.S. v. Webb,* 655 F.2d 977, 979 (9th Cir.1981). This "policy of favoring amendments to pleadings should be applied with extreme liberality." *Id.* (internal quotation marks omitted).

To determine "whether justice requires granting leave to amend," courts consider "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to

cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 538 (9th Cir.1989) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). "Generally, this determination should be performed with all inferences in favor of granting the motion." *Griggs v. Pace Am. Group, Inc.,* 170 F.3d 877, 880 (9th Cir.1999) (citing *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir.1987)). Prejudice to the opposing party is the most important consideration. *Jackson v. Bank of Hawaii,* 902 F.2d 1385, 1387 (9th Cir.1990) (*citing Zenith Radio Corp. v. Hazeltine Research Inc.,* 401 U.S. 321, 330–31 (1971)).

## II. Futility of New Claims

Defendants raise several arguments in support of their contention that amendment of the newly added claims would be futile. First, Defendants contend that amendment should not be permitted because Miesen failed to obtain board action through a proper demand letter. Second, Defendants contend Miesen's breach of fiduciary duty claim against the Defendants is futile because the proposed amended complaint fails to "plead around" the presumption that the AIA directors acted within their permissible business judgment. Finally, Defendants argue that Miesen's fraud, conspiracy to commit fraud, and statutory relief claims fail to state causes of action upon which relief may be granted. The Court will address each argument in turn.

### A. Adequacy of the Demand Letters

Defendants contend the June 13, 2016 and August 23, 2016 demand letters are substantively inadequate for the following three reasons: (1) the letters, taken together,

were not an "earnest and sincere" effort to help the AIA board remedy the shareholders' concerns; (2) the letters failed to specifically identify the alleged wrongdoers; and (3) the letters failed to provide sufficient information about the claims to assist the board in determining whether litigation would have been successful. Defendants argue that, because the demand letters were not adequate, the Court should deny Miesen's motion to amend.

"A shareholder seeking to vindicate the interests of a corporation through a derivative suit must first demand action from the corporation's directors or plead with particularity the reasons why such demand would have been futile." *In re Silicon Graphics,* 183 F.3d at 989 (citing Fed. R. Civ. P. 23.1). The intent of the derivative demand ensures "the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 101 (1991).

"Rule 23.1 is only a procedural requirement empowering federal courts to determine from the pleadings whether the demand requirement has been met." *Stoner v. Walsh*, 772 F. Supp. 790, 795 (S.D.N.Y. 1991). "Because the demand requirement allocates the power of controlling corporate litigation between individual shareholders and directors, the adequacy of the demand…is a creature of state law." *Id.* (citing *Kamen,* 500 U.S. at 98-99). AIA Services Corporation, AIA Insurance Inc., and CropUSA Insurance Agency, Inc. are all Idaho corporations, thus, the Court will look to Idaho law to determine the adequacy of the June 13, 2016, and August 23, 2016 demand letters.

Idaho Code Section 30-29-742 provides that no shareholder may commence a derivative proceeding until:

> (1) A written demand has been made upon the corporation to take suitable action; and

> (2) Ninety (90) days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety (90) day period.

The Idaho statute provides no instruction on how to determine whether the content of the demand is adequate. However, the Idaho Supreme Court in *McCann v. McCann*, 61 P.3d 585, 592 (Idaho 2002), cited to 19 Am. Jur. 2d *Corporations* § 2278, 173–74 (1986) for guidance on determining the adequacy of a demand letter:

> The demand on the directors need not assume a particular form nor need it be made in any special language. However, the stockholder must make an earnest and sincere, and not a feigned or simulated, effort to induce the directors to take remedial action in the corporate name. Statements should be presented to the directors showing the wrong complained of, accompanied by sufficient responsible data which will enable the directors to determine whether litigation could be engaged in with some hope of success. The shareholder must state facts, not mere general charges and conclusions.

> The demand should give the directors a fair opportunity to initiate the action which the shareholder wants to undertake, and name the potential defendants, as well as the shareholder making the demand.

The Court will address Defendants' three arguments separately below.

## 1. Earnest and Sincere

Without providing any legal authority, Defendants contend the shareholders' demand letters were not "earnest and sincere" efforts to help the AIA board remedy the shareholders' alleged concerns. Rather than attempt to alert the board to discrete issues

for investigation, Defendants argue the demand letters read as if Miesen's counsel viewed the demand requirement as a formality, listing every conceivable claim AIA might consider asserting against any conceivable defendant. In support of this allegation, Defendants point out that, on September 12, 2016, the board informed Miesen's counsel in writing that his demand letters were "too nebulous" to enable the board to investigate the alleged claims. Defendants argue that, rather than attempt to clarify the grounds for his allegations, Miesen's counsel chose to file the motion to amend.

The Court finds the demand letters demonstrate an earnest and sincere effort to inform the AIA board of directors of the alleged wrongdoing. To argue that Miesen could have attempted to clarify his allegations is disingenuous, considering AIA itself did not ask for clarifications. Because no follow up was requested by AIA, Miesen was left with no alternative, other than to file suit.

## 2. Identification of Wrongdoers

Defendants argue that, instead of identifying individual wrongdoers, the demand letters were written to "provide an open universe of potential defendants to this lawsuit." For instance, Defendants assert the letters' references to "Combined Defendants" and "agents of AIA" consist of a group of people, numbering in the thousands. In addition, Defendants note that some of the numbered paragraphs in the demand letters refer to no potential defendant, and other paragraphs are directed at certain people plus "any other parties" that may have taken part in the alleged wrongdoings.

The Ninth Circuit considered the issue of whether a demand letter sufficiently identified alleged wrongdoers in *Simmonds v. Credit Suisse Sec.(USA) LLC*, 638 F.3d

1072, 1092-93 (9th Cir. 2011), *vacated and remanded on other grounds,* 566 U.S. 221, 221 (2012). The demand letters in *Simmonds* identified wrongdoers as "the Company's IPO underwriters, in addition to certain of its officers, directors and principal shareholders, as identified in the IPO prospectus." *Id.* The Ninth Circuit, albeit recognizing it was a close call, affirmed the district court's decision that the "demand letters sufficiently identif[ied] the alleged wrongdoers" because the letters "identified a closed set of alleged wrongdoers."[7] *Id.*

Upon close review of both demand letters and the allegations made therein, the Court finds that the majority of the allegations sufficiently identify the alleged wrongdoer(s) or a closed set of alleged wrongdoers associated with each allegation. In the beginning of each letter, Miesen identifies individuals and defines the groups of alleged wrongdoers.[8] For instance, when Miesen referred to "Controlling AIA Defendants," he

---

[7] In contrast, Defendants citied to the Court of Appeals for the Third Circuit decision, *Shlensky v. Dorsey*, 574 F.2d 131, 141 (3d Cir. 1978). There, the demand letter requested the board to take action against "responsible individuals;" the letter did not specifically identify any alleged wrongdoer by name. *Id.* The Third Circuit affirmed the direct court's finding that, the letter was "completely lacking in the specificity which would give the directors a fair opportunity to initiate the action…which it is the purpose of the demand requirement of the rule to provide. *Id.* (citing 3B Moore's Federal Practice pp. 23.1-81 to 23.1-82 (2d ed. 1977)). This Court applies Ninth Circuit authority and is under no obligation to apply the law from another circuit. Because *Simmonds* is current, on point, Ninth Circuit authority, the Court declines to consider the Third Circuit's decision in *Shlensky*.

[8] Both letters set forth the following:

> For purposes of this derivative demand, the following terms shall apply: (a) "AIA" means AIA Services Corporation and its wholly owned subsidiary AIA Insurance; (b) "CropUSA" means CropUSA Insurance Agency, Inc. and CropUSA Insurance Services, LLC; (c) "John" means R. John Taylor and his spouse as to any property transferred to such spouse, together with any entities partially or wholly owned by him (including Green Leaf RE, Reinsurance Partners, Weskan Agency, Pacific Empire Holdings, Sound Insurance and other entities); (d) "Connie" means Connie Taylor, Connie Taylor Henderson, and Connie Wright Henderson and her spouse as to any property transferred to such spouse; (e) "Beck" means James Beck and his spouse as to any property transferred to such spouse; (f) "Cashman" means Michael W. Cashman, Sr. and his spouse as to any property transferred to such spouse; (g) "Duclos" means JoLee K. Duclos and her spouse as to any property transferred to such spouse; (h) "Hawley Troxell" means Hawley Troxell Ennis & Hawley LLP and the applicable present and former attorneys at Hawley Troxell (including, without

was referring to John Taylor, Connie Henderson, James Beck, Michael Cashman and

JoLee Duclos. (Dkt. 186-2.) And, when he referred to "Combined Defendants," he was

referring to all parties named in the derivative demand except for the AIA entities. (*Id.*)

The Court finds these groups sufficiently identify closed, albeit large, sets of alleged

wrongdoers.

A few of the allegations identify an individual or set of wrongdoers, but include

also allegations against "any other responsible party."[9] While the Court agrees that the

clause "any other responsible party" opens the set of alleged wrongdoers to an infinite

possibility of wrongdoers, allegations containing that clause were asserted in only seven

of the one hundred and two total allegations asserted between the two demand letters.[10]

Defendants could have requested clarification for these seven allegations in their

response letter, but chose not to do so. In addition, Miesen's proposed third amended

---

limitation, D. John Ashby, Gary Babbitt and Richard A. Riley); (i) "Pacific Empire Radio" means Pacific Empire Radio Corporation; (j) "GemCap" means GemCap Lending I, LLC, together with all of its applicable officer(s) and agents; (k) "Combined Defendants" means all of the foregoing parties except as to AIA (but includes attorneys, law firms and agents of AIA), but "Combined Defendants may include or not include Hawley Troxell and/or Pacific Empire Radio to the extent applicable based on certain facts and circumstances and/or when such facts and circumstance occurred; and (l) "Controlling AIA Defendants" means John, Connie, Beck, Cashman and Duclos. For each of the foregoing terms which define more than one party, each such term shall also mean any one or more of the defined parties for purposes of demanding in the alternative.

(Dkt. 186-2.)

[9] For example, in the August 23, 2016 demand letter, allegation no. 29 identifies the wrongdoers as: "The Controlling AIA Defendants and *any other responsible party* for all damages relating to all payments made directly or indirectly from AIA to the attorneys and law firms of Hawley Troxell…." (Dkt. 186-2 at 8 (emphasis added).

[10] In the June 13, 2016 demand letter, Miesen refers to "any other parties" or "any other responsible parties" in three out of the 44 allegations asserted. *See* Dec. John Taylor, Ex. A., ¶¶ 14, 16, 18. (Dkt. 186-1 at 5-6.) In the August 23, 2016 demand letter, Miesen refers to "any other parties" in four out of the 58 allegations asserted. *See Id.*, at Ex. B., ¶¶ 27, 29, 31, 36. (Dkt. 186-2 at 7-8, 10.)

complaint names as defendants only those persons and entities who were specifically identified in the closed set of wrongdoers.

Upon consideration of the purpose for the demand letter requirement—to provide the board with the opportunity to make a good faith investigation into the claims of wrongdoing—the Court finds Miesen's use of "any other responsible party," in only a fraction of the demand letter allegations, had little to no impact on the AIA board of director's opportunity to investigate the allegations asserted in the demand letters.

### 3. Sufficient Information about the Claims

Defendants argue generally, without pointing to any specific demand allegation, that all the allegations are insufficient because Miesen included them "by way of example,"[11] and because the subject matters of the allegations are too broad for a board to determine what claims to investigate. The Court respectfully disagrees.

The demand letter "must state facts, not mere general conclusions." *McCann*, 61 P.3d at 592 (quoting 19 Am. Jur. 2d *Corporations* § 2278, 173–74 (1986)). "In most instances, the shareholder need not specify his legal theory, every fact in support of that theory, or the precise quantum of damages." *Allison on Behalf of Gen. Motors Corp. v.*

---

[11] In both demand letters, the first allegation provides in relevant part: [The Shareholders] hereby demand that all possible claims and legal action be immediately taken in a court of law on behalf of AIA as follows:

> Pursue all possible claims and defenses, and seek the maximum possible damages, against the Combined Defendants, including, without limitation, all possible tort claims…contract claims, declaratory relief, injunctive relief, and punitive damages based on all acts, omissions, concealments, and failure to disclose. Without limiting the foregoing and so there is no confusion…*more specific examples are included below and demand is hereby made to take action against those parties and any other Combined Defendants to recover damages on any of such specific examples.*

(Dkt. 186-1 at 2; 186-2 at 2) (emphasis added). The "examples" referred to in the letters consist of the 100 allegations listed thereafter.

*Gen. Motors Corp.*, 604 F. Supp. 1106, 1117 (D. Del. 1985). "Decisions as to how and on what theory the corporation will pursue wrongdoers are the proper province of the Board of Directors."[12] *Id.*

Because the Defendants fail to point to specific allegations that lack sufficient information, and because the AIA board of directors failed to request from the shareholders clarification on any of the allegations in their response to the demand letters, the Court will not go through the one hundred and two allegations to determine the sufficiency of each one. Upon review of the demand letters, generally, the Court observes that the letters may not include every single fact necessary to support the allegations or provide a precise quantum of damages. However, the allegations (especially those made in the second demand letter) were sufficiently detailed to provide the AIA board of directors the opportunity to make a good faith investigation into the following claims: breach of fiduciary duty; aiding and abetting breaches of fiduciary duties; fraud; aiding and abetting fraud; conspiracy to commit fraud; and, breach of contract. Therefore, the Court finds the content of Miesen's demand letters constituted a sufficient demand on the AIA board of directors.

---

[12] Defendants cited *Stoner v. Walsh*, 772 F. Supp. 790, 797 (S. D. N. Y. 1991), for the proposition that the shareholders' demand letters were insufficient because the letters did not describe with particularity the company's potential causes of action. Defendants' reliance on *Stoner* is misplaced. The district court in *Stoner* observed only that the demand letters lacked "any specificity the causes of action available to the corporation or those persons potentially liable." *Id.* However, the court did not rule on the sufficiency of those claims. *Id.* Instead, the court determined certain allegations that were made in the complaint were missing from the demand letter, and thus, dismissed those claims. *Id.*

**B. Breach of Fiduciary Duty (Count I)**

Defendants allege that overcoming the business judgment rule is a substantive element of proving a director breached his fiduciary duty to the corporation. As such, Defendants argue that Miesen's breach of fiduciary duty claim is futile, as his proposed third amended complaint does not allege sufficient facts to establish breach of a fiduciary duty against the Defendants. In reply, Miesen argues the alleged conflicts of interests of AIA's sole board member, John Taylor, if taken as true, sufficiently articulate a breach of fiduciary duty claim against Defendants. For the reasons that follow, the Court finds application of the business judgment rule is inappropriate at this stage in the litigation and that Miesen's claim is sufficiently plead.

Pursuant to Idaho law, "[e]ach member of the board of directors, when discharging the duties of a director, shall act…[i]n good faith; and…[i]n a manner the director reasonably believes to be in the interests of the corporation." Idaho Code § 30-29-830. This fiduciary duty is owed by the director to both the corporation and its shareholders. *Weatherby v. Weatherby Lumber Co.,* 492 P.2d 43, 45 (Idaho 1972). To assert a breach of fiduciary duty claim against a director, a shareholder must prove that liability is not limited by the corporation's articles of incorporation, and also, that the director's conduct consisted of or was the result of:

(i)     Action not in good faith; or

(ii)    A decision:

    (A) That the director did not reasonably believe to be in the best interests of the corporation; or

      (B) As to which the director was not informed to an extent the director reasonably believed appropriate in the circumstances; or

    (iii)    [A result of a] lack of objectivity due to the director's familial, financial, or business relationship with, or a lack of independence due to the director's domination or control by, another person having a material interest in the challenged conduct…; or

        ….

    (v)    Receipt of a financial benefit to which the director was not entitled….

I.C. § 30-29-831.

Idaho case law recognizes the business judgment rule, which "immunizes the good faith acts of directors when the directors are acting within the powers of the corporation and within the exercise of their honest business judgment." *McCann v. McCann*, 275 P.3d 824, 830 (Idaho 2012). However, "rebuttal of the business judgment rule is not an element of [breach of fiduciary duty]." *F.D.I.C. v. Coleman*, No. 1:14-CV-00310-CWD, 2015 WL 476234, at *9 (D. Idaho Feb. 5, 2015).

Due to the fact dependent nature of the business judgment rule, the Court in *F.D.I.C. v. Coleman*, found the rule was not appropriate for consideration on a motion to dismiss for failure to state a claim, because the record at that stage in the litigation was insufficient to determine whether the rule applied to the corporate defendant's conduct. *Id.* at 10 (citing *McCann*, 275 P.3d at 830 ("actions may fall under the business judgment rule, but those are issues of fact.")); *see FDIC v. Willetts,* No. 11–CV–165–BO, 2014 WL 4828330, at *4 (E. D. N. C. Sept. 11, 2014) ("At [the motion to dismiss] stage, the Court could not know whether the business judgment rule shielded defendants' liability absent further factual development and declined to dismiss the case.").

Here, the parties dispute whether Defendants' conduct fell within the reasonable exercise of their honest business judgment. Miesen alleges in his proposed third amended complaint at least three instances where AIA's director, John Taylor, failed to comply with AIA's bylaws and articles of incorporations and to otherwise act in good faith: (1) John Taylor's transfer and valuation of real estate to AIA without disinterested approval; (2) John Taylor's amendment of AIA bylaws to allow issuance of Series A Preferred Shares to himself, without disinterested approval; and (3) corporate waste permitted by John Taylor for allowing excessive litigation fees disproportionate to liability at stake to accrue.

Although this case has been pending for over seven years, litigation is still in its early stages as discovery has yet to commence.[13] As a consequence, the record is insufficient for the Court to determine whether the business judgment rule applies to each instance of purported liability as alleged against the Defendants. Even so, at this juncture, in determining whether Miesen's breach of fiduciary duty claim states a cause of action, the Court must consider the non-conclusory allegations in the proposed third amended complaint as true. So construed, Miesen has stated a plausible claim for breach of fiduciary duty against Defendants. Accordingly, the Court finds Miesen's breach of fiduciary duty claim is not futile.

---

[13] During the hearing, counsel for Miesen indicated he has yet to receive any records from the Defendants. (Dkt. 208 at 43.)

## C. Fraud, Concealment, and Constructive Fraud (Count IV)

Defendants contend Miesen's newly alleged fraud and constructive fraud allegations against them fail to satisfy the particularity requirement in Rule 9(b) of the Federal Rules of Procedure, because the allegation does not set forth specific events or communications where the AIA board of directors lied to its shareholders. In addition, Defendants allege Miesen has failed to show how both CropUSA and GemCap (the newly proposed party defendants who are also named under Miesen's fraud claim) could have concealed anything from AIA or its shareholders.

Under Idaho law, actual fraud consists of nine elements that a plaintiff must prove by clear and convincing evidence. A plaintiff must show: (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury. *Doe v. Boy Scouts of Am.*, 356 P.3d 1049, 1054 (Idaho 2015).

A party alleging constructive fraud must plead that there was a duty of trust and confidence between plaintiff and the defendant, the duty was breached, and (1) the defendant made a statement or representation of fact; (2) its falsity; (3) its materiality; (3) the hearer's ignorance of the falsity of the statement; (5) the reliance by the hearer; (6) justifiable reliance; and (7) resultant injury. *Id.* at 1055.

"Fraud claims must satisfy the heightened pleading requirements of Rule 9(b), which provides, in relevant part, that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *Klein v. Capital One*

*Fin. Corp.*, No. 4:10-CV-00629-EJL, 2011 WL 3270438, at *3 (D. Idaho July 29, 2011)

(citing Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th

Cir.2009)). In essence, Rule 9(b) requires the plaintiff to allege in his complaint "the

who, what, where, when, and how" of the alleged fraudulent conduct," *Cooper v. Pickett*,

137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or

omission complained of was false and misleading." *In re Glenfed, Inc. Sec. Litg.,* 42 F.3d

1541, 1548 (9th Cir. 1994.) "The purpose of [Rule 9(b)] is to ensure that defendants

accused of the conduct specified have adequate notice of what they are alleged to have

done, so that they may defend against the accusations." *Concha v. London,* 62 F.3d 1493,

1502 (9th Cir. 1995).

The Court will discuss Miesen's fraud claim against Defendants and the newly

proposed defendants separately below.

### 1. Fraud as alleged against Defendants

The fraud claim as to Defendants consists of a series of ongoing events where

former AIA directors, and current director John Taylor, allegedly made false

representations to AIA board members. The proposed third amended complaint alleges

that, in 1999, AIA Services, then under the control of the AIA Defendants, began selling

crop insurance through a wholly owned subsidiary, CropUSA. (Dkt. 182-2 at ¶ 46.)

Minutes from a January 10, 2001 CropUSA shareholder meeting indicate AIA Services

and CropUSA agreed that AIA Services would no longer operate CropUSA as a

subsidiary. (*Id.* at ¶ 53.) Allegedly, the minutes from the same meeting outlined John

Taylor's plan "to exploit the assets of AIA for the benefit of CropUSA." (*Id.* at ¶ 57.)

Specifically, the minutes revealed that CropUSA authorized its officers to: (1) execute a Master Marketing Agreement with AIA insurance that allowed CropUSA access to AIA customer lists and trade secrets; and (2) execute a Management Agreement with AIA wherein AIA agreed to provide management and administrative support to CropUSA without charge. (*Id.* at ¶ ¶ 58, 59.)

The proposed amended complaint alleges that the January 10, 2001 meeting minutes for CropUSA were concealed from AIA and its shareholders. (*Id.* at ¶ 54.) It alleges "[t]here was no decision, nor ha[d] there ever been a decision, on the part of AIA Services to discontinue the subsidiary status of CropUSA." (*Id.*) In addition, "[n]one of the preferred or common shareholders of AIA Services (other than those present at the January 10, 2001 [CropUSA] meeting) were given notice of or the opportunity to approve or oppose this corporate action; instead, it was concealed from them and AIA." (*Id.* at ¶ 55.)

On February 27, 2001, John Taylor sent a letter to AIA shareholder Donna Taylor indicating that "AIA is developing a new crop insurance program through a new company called CropUSA." (*Id.* at ¶ 56.) He indicated, "[t]he costs of putting the CropUSA program together have been paid. AIA now needs to launch five new territories next Month." (*Id.*) The proposed third amended complaint alleges the February 27, 2001 letter represented that "CropUSA was a subsidiary of AIA and was being operated for the benefit of AIA and implicitly also for AIA Services' innocent minority shareholders (which included Donna Taylor)." (*Id.*) Miesen alleges this representation to AIA was false, and John Taylor knew it was false. (*Id.*)

MEMORANDUM DECISION AND ORDER - 26

The proposed third amended complaint alleges further that, a few years later, to boost CropUSA's balance sheet, the Defendants devised a scheme to transfer over $1.5 million from AIA to CropUSA. (Dkt. 182-2 at ¶ 74.) Specifically, in August of 2004, AIA received a payment of $1,510,693 from Trustmark; however, instead of depositing the money into the AIA account, John Taylor deposited the payment in an account named "AIA Insurance Inc. CropUSA." (*Id.* at ¶ 75.) The address associated with that account is John Taylor's personal address. (*Id.*) Shortly after this transaction, John Taylor transferred $1,510,693 to CropUSA's account. (*Id.* at ¶ 76.) To disguise this transaction from AIA shareholders, Miesen alleges Defendants characterized the transaction as "an alleged purchase by AIA Insurance of Series C Preferred Shares in its parent corporation, AIA Services" for the purported value of $1,510,693. (*Id.*) AIA and its shareholders were allegedly never given notice of the 2004 stock transaction, nor were any proper board or shareholder meetings held to approve the transaction. (*Id.* at ¶ 82.)

The proposed third amended complaint alleges that, to create a plausible explanation for the transfer, CropUSA produced a document designated as a "Consent in Lieu of Meeting" dated August 26, 2004. Miesen alleges this document is fraudulent because it was created the following year to retroactively "deceive auditors who questioned the validity of the transaction." (*Id.* at ¶ 78.) The proposed third amended complaint alleges that "CropUSA carried these Series C Preferred Shares in AIA Services on its books with a value of $21,693, which means that CropUSA realized a gain of $1,489,000 on this purported sale." (Dkt. 182-2 at ¶ 80.)

Having considered the above in connection with the entirety of the proposed third amended complaint, the Court finds Miesen's allegations of "fraud/fraudulent concealment/constructive fraud," as alleged against the Defendants satisfies Rule 9(b)'s particularity requirement. The proposed third amended complaint contains particulars as to the nature of the alleged false misrepresentations made by the AIA directors, the approximate date of those misrepresentations, and the damage that resulted to shareholders from reliance on those misrepresentations. Moreover, these facts satisfy Rule 9(b)'s purpose to ensure Defendants have adequate notice of the specific conduct alleged against them.

### 2. Fraud as alleged against CropUSA and GemCap

Defendants allege the proposed third amended complaint does not state a cause of action for fraud against CropUSA and GemCap, because it does not contain any purported facts supporting the allegation that CropUSA or GemCap concealed anything from AIA. The Court agrees.

The proposed third amended complaint alleges the following in its allegation of fraud:

> The Controlling AIA Defendants, CropUSA and GemCap concealed from AIA that they had AIA unlawfully and improperly entered into the Guarantees, Settlement Agreements and related agreements and instruments, together with unlawfully transferring property and making payments under those unlawful agreements and instruments.

(¶ 214.)

This allegation against CropUSA and GemCap, even when read together with the purported facts in the proposed third amended complaint, fails to set forth the elements

for a claim of fraud or constructive fraud, let alone setting them forth with particularity.

Specifically, with regard to fraud, Miesen has failed to set forth facts indicating that

CropUSA or GemCap made material misrepresentations to AIA and its shareholders.

And, with regard to constructive fraud, the proposed third amended complaint fails to

allege facts to otherwise support that CropUSA or GemCap owed a fiduciary duty to AIA

or its shareholders,[14] or that CropUSA or GemCap breached that duty.

### D. Conspiracy to Commit Fraud (Count V)

Defendants contend Miesen failed to plead with particularity, or at all, that there

was a plan or agreement between AIA Defendants, CropUSA, and GemCap to defraud

AIA and its shareholders.[15]

The Idaho Supreme Court has provided the following regarding civil conspiracy

claims:

> A civil conspiracy that gives rise to legal remedies exists only if there is an agreement between two or more to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner. Civil conspiracy is not, by itself, a claim for relief. The essence of a cause of action for civil conspiracy is the civil wrong committed as the objective of the conspiracy, not the conspiracy itself.

*Mannos v. Moss*, 155 P.3d 1166, 1174 (Idaho 2007) (citing *McPheters v. Maile,* 64 P.3d

317, 321 (Idaho 2003). "An agreement is the foundation of a conspiracy charge and there

---

[14] If anything, by guaranteeing the loan, AIA owed a fiduciary duty to GemCap, not the other way around.

[15] Defendants argued also, to the extent the Court finds Miesen failed to properly plead a claim for fraud against them, the lack of a fraud claim renders his conspiracy claim against Defendants futile. (Dkt. 185 at 14.) Because the Court finds above that the proposed third amended complaint sufficiently states a fraud claim against Defendants, the Court need not address this argument.

must be some showing of specific evidence of a plan or agreement to defraud to demonstrate the pendency of the conspiracy at the time the alleged fraud occurred." *Id.*

The proposed third amended complaint alleges that, through various agreements and actions, the Controlling AIA Defendants, CropUSA and/or GemCap:

> (a) conspired to defraud AIA and were members of the conspiracy at relevant times; (b) provided a substantial act and/or a substantial effect in furtherance of the conspiracy against AIA in Idaho; (c) are attributable to the acts of one another; and (d) engaged in a pattern of behavior and/or agreements to accomplish unlawful objectives and/or to accomplish a lawful objective in an unlawful manner.

(¶ 219.)

It is clear Miesen is alleging that the goal of the alleged conspiracy was to defraud AIA and its shareholders. The allegations in the proposed third amended complaint (as outlined in the previous section), sufficiently plead with particularity that, at the very least, there was an ongoing agreement between the AIA Defendants and CropUSA to defraud AIA and its shareholders. However, with regard to GemCap, the Court finds the proposed third amended complaint fails to sufficiently allege a plan to defraud AIA and its shareholders.[16] As such, the conspiracy allegation against GemCap is futile.

---

[16] Count V combines civil conspiracy and aiding and abetting fraud as one claim. However, civil conspiracy to commit fraud is distinct from the allegation of civil aiding and abetting fraud. To prove civil conspiracy, there must be a plan or agreement to commit an unlawful objective. *Mannos,* 155 P.3d at 1174. On the other hand, to prove aiding and abetting, Miesen must establish the wrongdoer knowingly participated in the underlying tort—in this instance, fraud.

### E.  Cause of action for statutory relief

Defendants contend Miesen's newly alleged claim for statutory relief pursuant to Idaho Code § 30-29-304[17] fails to state a valid cause of action. Defendants contend the statute cited by Miesen does not provide a private cause of action against the Defendants. Miesen disagrees.

At this stage, the Court construes Miesen's claim under I.C. § 30-29-304 as an alternative cause of action to his breach of fiduciary duty and fraud claims. Because the ultimate fate of Miesen's breach of fiduciary duty and fraud claims is uncertain, determining whether Miesen can set forth a claim pursuant to I.C. § 30-29-304 is not yet ripe for the Court's consideration.

## III.  Bad Faith

Defendants argue Miesen's third motion to amend is brought in bad faith. In support of this argument, Defendants contend that the form, length, and allegations in the proposed amended complaint fail to comport with Fed. R. Civ. P. 8(a)(2) and

---

[17] The proposed third amended complaint cites two statutes, I.C. § 30-29-304, and its predecessor I.C. § 30-1-304 (repealed). The statutes are nearly identical; as such, the Court will refer to the new statute only, I.C. § 30-29-304, which provides in relevant part:

> (1)  Except as provided in subsection (2) of this section, the validity of corporate action may not be challenged on the ground that the corporation lacks or lacked power to act.
>
> (2)  A corporation's power to act may be challenged:
>
>   (a)  In a proceeding by a shareholder against the corporation to enjoin the act;
>
>    ****
>
> (3) In a shareholder's proceeding under subsection (2)(a) of this section to enjoin an unauthorized corporate act, the court may enjoin or set aside the act, if equitable and if all affected persons are parties to the proceeding, and may award damages for loss, other than anticipated profits, suffered by the corporation or another party because of enjoining the unauthorized act.

(d)(2)'s requirement that the complaint contain "a short and plain statement of the claim," and that "[e]ach allegation must be simple, concise, and direct." Defendants argue the proposed third amended complaint is anything but simple and direct; rather, it is a laundry list of the most significant transactions taken by the Defendants since the 1990s. In essence, Defendants argue Miesen added too much meat to what they contend is a bare bones complaint alleging fraud.

While the proposed amended complaint does assert a laundry list of alleged conduct and transactions, Miesen has provided sufficient factual allegations in support of his claims and alleged injuries (subject to the Court's ruling above). Accordingly, the Court does not find that Miesen's motion to amend his complaint was made in bad faith.

With regard to Defendants' request to limit the page-count of the complaint,[18] the Court finds such limitation would be inappropriate considering the complexity of this shareholder derivative action, in addition to the years of alleged misconduct by Defendants.[19]

---

[18] In support of its request to limit Miesen's motion to 30 pages, Defendants cited to *California Coal. for Families & Children v. San Diego Cty. Bar Ass'n*, 657 F. App'x 675, 677 (9th Cir. 2016). The circumstances in that case, however, are distinguishable from this matter. There, the Court ordered that amendment to a pro se complaint regarding a family law dispute must comply with Rule 8 and must be less than 30 pages; the pro se plaintiff did not comply with the Court's orders and the district court dismissed the complaint.

[19] This "length" issue raised by Defendants was apparently one of the reasons Miesen filed the McDermott declaration in support of his reply memorandum. McDermott's opinions on this issue do invade the Court's province, and thus, his opinions were not considered in this portion of the Court's determination regarding bad faith. However, the Court did consider the fact that McDermott has been retained and has formed opinions that purportedly support some of these claims in this action. The Court is not, however, ruling on a further commenting presently as to whether those opinions are and will be admissible.

## IV. Undue Delay and Previous Complaints

Defendants contend Miesen has unduly delayed bringing claims related to the loan guarantee between AIA and GemCap. Miesen's proposed third amended complaint contains new allegations that the AIA Board of Directors improperly authorized AIA to guarantee CropUSA's loan from GemCap in 2011-2012. (Dkt. 182-2 at 39.) Defendants contend Miesen and other AIA shareholders knew or should have known about the loan agreement between GemCap, AIA, and Crop USA, when suit was filed in California pertaining to the loan, and therefore could have moved to amend the complaint to include these claims sooner.

"The Ninth Circuit's test for undue delay does not appear to consider technical filing deadlines but rather inquires 'whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.' *Boskoff v. Yano*, 217 F. Supp. 2d 1077, 1093 (D. Haw. 2001) (citing *Jackson v. Bank of Hawaii,* 902 F.2d 1385, 1388 (9th Cir.1990)). However, a finding of undue delay by itself, is insufficient to permit denial of a motion to amend a pleading. *See Bowles v. Reade,* 198 F.3d 752, 758 (9th Cir.1999). "A specific finding of prejudice to the opposing party, bad faith by the moving party, or futility of the amendment is necessary." *Boskoff*, 217 F. Supp. 2d at 1093 (citing *Bowles,* 198 F.3d at 758).

During the hearing, counsel for Miesen represented that Miesen and the other AIA shareholders were aware of the GemCap settlement agreement in the California lawsuit sometime in late 2014. (Dkt. 208 at 17.) Counsel explained, during that time, this matter was stayed. The AIA shareholders attempted to file a separate action in northern Idaho in

state court to address the same issue, but that action was stayed also "because of the California intervention." (*Id.*) Counsel explained further that he would have filed a motion to amend earlier, but he chose to wait for John Taylor to provide certain financial information requested by the shareholders, expecting that the financial information might contain other grounds to amend. Counsel explained he was trying to avoid filing serial motions to amend.

This matter was stayed on November 5, 2013—the Court did not lift the stay until February 2, 2016. (Dkt. 96, 112.) Prior to the stay being lifted, it does not appear that Miesen or any of the other AIA shareholders had demanded the AIA board of directors to look into the conduct related to the GemCap settlement agreement, as the June 13, 2016 demand letter addresses that matter. Counsel could not have moved to amend the complaint until 90 days after he served the demand letter, or until AIA responded to the demand. John Taylor responded to the demand letters on behalf of AIA on September 12, 2016. During a hearing on October 24, 2016, Miesen's counsel informed the Court of his intent to file a motion for leave to amend to include GemCap as a party and allege claims against the Defendants and GemCap. Miesen filed the instant motion to amend on November 4, 2016.

While Miesen likely could have filed his demand on the AIA board of directors sooner (and probably while this action was stayed), Miesen's reason for waiting to move to amend as he awaited the receipt of AIA documents was reasonable. However, even if the delay here was undue, other factors do not support denying amendment of the complaint for a third time.

## V.    Prejudice

Defendants contend prejudice would result if the motion to amend is granted because the amendment would subject Defendants "to a case of sprawling and amorphous scope…prejudicing Defendants' ability to marshal the evidence and mount a defense." (Dkt. 185 at 17.)

Regarding prejudice to Defendants, the Court again considers the timing of Miesen's motion, the posture of the litigation, and the impact of delay that would be caused by the need for further discovery. The Court considers also whether amendment is consistent with the underlying purpose of Rule 15(a), to: "facilitate decisions on the merits, rather than on technicalities or pleadings." *In re Morris*, 363 F.3d 891, 894 (9th Cir. 2004).

This matter has been pending just shy of seven years—since August 11, 2010. Perhaps more unusual than the long-pending length of this case is the fact that discovery is in its beginning stages; the factual discovery deadline is February 1, 2018. (Dkt. 191.) The added factual allegations and clarifications in the proposed third amended complaint will not delay the litigation by necessitating additional time to conduct discovery, as the parties have plenty of time to participate in discovery before the February 2018 deadline. While the Court understands Defendants' concern regarding the scope of the litigation, the Court is confident the parties can meet and confer to develop a discovery plan tailored specific to this matter, to help narrow the scope of discovery. In addition, the proposed amended complaint's clarification of already existing claims advances Rule 15(a)'s purpose.

With regard to the newly alleged claims, the Court looks to Fed. R. Civ. P. 15(d) that allows supplementation of a complaint by adding causes of action related to events that have occurred since the original complaint was filed. *Eid v. Alaska Airlines, Inc.,* 621 F.3d 858, 874 (9th Cir. 2010). However, "[w]hile leave to permit supplemental pleading is favored, it cannot be used to introduce a separate, distinct and new cause of action." *Planned Parenthood of S. Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (internal quotations omitted). The goal of Rule 15(d) is to promote judicial efficiency. *Planned Parenthood S. Ariz. v. Neely,* 130 F.3d 400, 402 (9th Cir. 1997). This goal is not satisfied where leave to amend would result in significant delays.

Counsel for Miesen explained during the hearing that the conduct alleged in the proposed third amended complaint consists of "ongoing broad, and ongoing waste of assets to serve [Defendants] and to deplete AIA['s resources]." (Dkt. 208 at 23.) Put another way, the new allegations are just another layer to the Defendants' ongoing conduct or misconduct.

The Court agrees that the newly alleged causes of action relate to the events that have happened since the original complaint was filed, and allowing these new allegations to be added to this lawsuit promotes judicial efficiency. Accordingly, the Court finds no prejudice would result in allowing Miesen to amend his complaint to allege the new claims (subject to the Court's ruling above regarding the fraud and civil conspiracy to commit fraud claims against certain parties).

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendant's Motion to Strike the Declaration of Richard T. McDermott (Dkt. 196) is **granted in part and denied in part**;

2) Plaintiff's Motion to Amend and Supplement the Complaint (Dkt. 182) is **granted in part and denied in part**;

3) Plaintiff must file his proposed third amended complaint *no later than* **May 1, 2017**, in the same form and with the same content as proposed in Dkt. 182-2;

4) To the extent the Court has found Plaintiff's proposed fraud claim (Count IV) against CropUSA and GemCap, and the proposed conspiracy to commit fraud claim (Count V) against GemCap to be futile, these Defendants need not answer or file a responsive pleading as to such claims;

5) The parties (to include GemCap) are instructed to **meet and confer in person** to develop an operative **discovery plan** *no later than* **June 5, 2017**. The Court's discovery plan form may be found on the District Court's website, www.id.uscourts.gov, under "Forms."[20] The joint discovery plan must be filed with the Court *no later than* **June 12, 2017**; and

---

[20] The URL address to access the Court's forms may be found here: http://id.uscourts.gov/district/forms_fees_rules/Civil_Forms.cfm

6)    A **telephonic status conference** for this matter is set for **July 10, 2017** at 10:00 a.m. MST. Plaintiff to initiate the call, once all parties are on the line, connect to the Courtroom at (208) 334-9945.

Dated: April 21, 2017



Honorable Candy W. Dale
United States Magistrate Judge