UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.,<br><br>           Plaintiff,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>           Defendants. | Case No. 1:10-cv-00404-CWD<br><br>**MEMORANDUM DECISION AND ORDER (DKT. 241; DKT. 220)** |

## INTRODUCTION

Pending before the Court are two related motions: Plaintiff Dale L. Miesen's Motion for Relief under Federal Rules of Civil Procedure 12(d) and 56(d) (Dkt. 241), and Defendant Gem Cap I, LLC's Motion to Dismiss Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (Dkt. 220.)

The motions are ripe for the Court's consideration. All parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 20 U.S.C. § 636(c). (Dkt. 260.) The parties filed responsive briefing, and the Court conducted a hearing on September 6, 2017, at which the parties appeared and presented their arguments. After carefully considering the parties' written memoranda, relevant case law, and the parties' arguments, for the reasons that follow, the Court will deny Plaintiff's motion for relief and will grant in part and deny in part Defendant's motion to dismiss.

## PROCEDURAL AND FACTUAL BACKGROUND

The original complaint in this matter was filed on August 11, 2010. (Dkt. 1.) Donna J. Taylor and Dale L. Miesen filed the suit on behalf of themselves and the other shareholders of AIA Services, Inc., and its wholly-owned subsidiary, AIA Insurance (together "AIA entities"). Taylor was later removed from the lawsuit because her citizenship destroyed complete diversity as required by 28 U.S.C. § 1332—enabling this Court to continue to exercise subject matter jurisdiction.

**MEMORANDUM DECISION AND ORDER – 1**

The complaint was filed against numerous managers and directors of the AIA entities (herein "AIA controlling defendants"), the AIA entities, and other individuals and entities. GemCap I, LLC (GemCap) first entered this lawsuit by filing a motion to intervene on July 18, 2016. (Dkt. 14.) The intervention was for a sole purpose—to seal a settlement agreement to which GemCap was a party that was attached as an exhibit to a declaration filed by Miesen's attorney. (Dkt. 128.)[1] GemCap was added as a party on April 24, 2017, with Miesen's filing of the Third Amended Complaint. (Dkt. 211.)

GemCap's inclusion in this long-running controversy stems from a $10 million line of credit it extended to Defendant CropUSA Insurance Agency Inc., and its wholly-owned subsidiary, Defendant CropUSA Insurance Services, LLC (together "CropUSA entities"). Security for the line of credit was provided by the AIA entities.

GemCap and the AIA entities entered into two loan guarantees related to the line of credit. The first—November 23, 2011, secured a lesser portion of the line of credit, and the second—October 1, 2012, secured the entire $10 million. In this suit, Miesen claims these two loan agreements were not authorized as required by the AIA entities' governing documents. (Dkt. 211 at 37.) According to the Third Amended Complaint, GemCap recorded its associated security interest in the AIA entities on December 20,

---

[1] Exhibit B to the Declaration of Roderick C. Bond Re: Court's Order to Meet and Confer, filed April 26, 2016.

**MEMORANDUM DECISION AND ORDER – 2**

2012, by filing a UCC financing statement with the Idaho Secretary of State.[2] Although the existence and validity of the UCC financing statement is not disputed, Miesen claims the AIA minority shareholders were not notified of this filing, and as with the two loan agreements, it was not authorized. (Dkt. 211 at 37.) In turn, GemCap alleges the filing of the financing statement was itself sufficient to put the AIA minority shareholders on notice of the guarantee agreements.

The CropUSA entities defaulted on their loan payments, and on July 30, 2013, GemCap filed a lawsuit in federal court in California to collect on the loan guarantee agreements. *GemCap Lending I, LLC v. CropUSA Ins. Agency, Inc.*, No. 2:13-cv-05504-SJO-MAN (C.D. Cal.) (herein "GemCap lawsuit"). The action was terminated when the parties, including GemCap and several other entities and persons also party to this litigation, entered into a settlement agreement (herein "Settlement Agreement") regarding the loan guarantees.

The determination of when the AIA minority shareholders knew about the loan guarantees and the Settlement Agreement between the AIA entities and GemCap is of key importance to the motions before the Court.

---

[2] The Third Amended Complaint quotes the statement, which stated the AIA entities pledged, "[a]ll of each of Debtor's right, title and interest, whether now existing or hereafter acquired, in and to all assets of such Debtor, wherever located, whether tangible or intangible, and the proceeds and products therefor." (Dkt. 211 at 37.)

**MEMORANDUM DECISION AND ORDER – 3**

It is clear the AIA Services minority shareholders learned about the GemCap lawsuit soon after its filing in California. At the September 6, 2017 hearing on these motions, Miesen's attorney confirmed that certain AIA minority shareholders knew about the GemCap lawsuit by August of 2013.

The minority shareholders also learned about the Settlement Agreement prior to its execution. As set forth in the Third Amended Complaint, the shareholders communicated to GemCap that the guarantees and proposed Settlement Agreement "were unauthorized [by the shareholders] and illegal and that AIA was not being properly operated." (Dkt. 211 at 39.)

The Settlement Agreement has an effective date of September 15, 2014. However, according to the Third Amended Complaint, the contents of the Settlement Agreement show it was finalized after the effective date and likely executed on or around January 9, 2015.

In the Third Amended Complaint, Miesen asserts the following primary claims against GemCap: that GemCap aided and abetted the AIA controlling Defendants in breaching their fiduciary duties (Count 2); that GemCap aided and abetted the AIA controlling Defendants to commit fraud (Count 5); and that GemCap violated the Idaho Consumer Protection Act (ICPA) by entering into the two loan guarantees and the Settlement Agreement (Count 10). Miesen asserts two derivative claims: declaratory judgment that the guarantees and Settlement Agreement were not lawful (Count 7); and

statutory relief under Title 30, Chapter 29, Section 304 of the Idaho Code (Count 8).[3] This code section allows shareholders to challenge a corporation's alleged *ultra vires* acts, and if successful, provides shareholders a right to enjoin or reverse the acts and collect damages. Idaho Code § 30-29-304(1)(a).

GemCap filed the instant motion to dismiss all of Miesen's claims, arguing Counts 2, 5, and 10 are barred by the applicable statutes of limitation, and as derivative claims, Counts 7 and 8 should be dismissed on the same bases.

## STANDARDS OF LAW

**1.  Motion to Dismiss**

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a party's claim for relief. A 12(b)(6) motion may be based on the expiration of the applicable statute of limitations period for the claims asserted in the complaint. Review of the merits of the 12(b)(6) motion is limited to the face of the complaint. A court's inquiry is whether the allegations in the pleading are sufficiently set forth. The plaintiff need only present a "short and plain statement of the claim" that shows the plaintiff is entitled to relief and that provides the defendant with fair notice of the grounds for the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2).

---

[3] Previously codified as Idaho Code § 30-1-304.

**MEMORANDUM DECISION AND ORDER – 5**

Upon review of a complaint pursuant to a Rule 12(b)(6) motion, a court must accept all non-conclusory factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). And a court must draw all reasonable inferences in favor of the plaintiff. *Mohamed v. Jeppsen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009).

2. **Materials Outside the Pleadings; Motions to Take Judicial Notice**

If either party submits materials outside the pleadings in support of or in opposition to a Rule 12(b)(6) motion to dismiss, and a court relies on those materials, the motion to dismiss must be converted to a motion for summary judgment Fed. R. Civ. P. 12(d) and 56(c)(2); *Anderson v. Angelon*, 86 F. 3d 932, 934 (9th Cir. 1996); *Ross v. Ada County*, 730 F. Supp. 2d 1237, 1244 (D. Idaho 2010).

However, a court may take judicial notice of certain documents and facts without converting the motion. Examples of taking judicial notice include noting that a document was signed by a particular person or on a particular date, or that a hearing simply took place. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); Fed. R. Evid. 201(b).

And a court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994); *See also Biondo v. Kootenai Hosp. Dist.*, No. 1:17-CV-00039-BLW, 2017 WL 2198186, at *2 (D. Idaho May 18, 2017).

**MEMORANDUM DECISION AND ORDER – 6**

Finally, a court may take judicial notice of documents that are submitted as part of the complaint, or documents that are not physically attached to the complaint but that the complaint "necessarily relies" on, so long as their authenticity is not contested. *Lazy Y. Ranch, Ltd. v. Wiggins*, No. CV 06 340 S MHW, 2007 WL 1381805, at *5 (D. Idaho Mar. 13, 2007), aff'd sub nom. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580 (9th Cir. 2008) (citing *Lee*, 250 F.3d at 688).[4]

## 3. Statutes of Limitation

When a court has subject matter jurisdiction over state law claims based on diversity jurisdiction, a court must apply state law to any substantive issue. 28 U.S.C. §1332; *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). Although statutes of limitation are ordinarily considered procedural, in diversity actions they are considered substantive when outcome-determinative. *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945).

According to Idaho law, civil actions must be commenced within periods prescribed by the Idaho Code except when a specific statute of limitation period is established by another statute. Idaho Code § 5-201. A Court will apply Idaho's four-year "catch-all" when no statute of limitation period is specified or otherwise established. Idaho Code § 5-244.

---

[4] In this matter, the Court is not taking judicial notice of any of the documents submitted by either party in relation to GemCap's motion to dismiss. Although the Court references the UCC financing statement and its contents, such information is expressly set forth in the complaint. The Court includes this recitation of the law for clarity as the parties did submit outside materials and the issue has been directly raised by Miesen's present motion for relief.

**MEMORANDUM DECISION AND ORDER – 7**

When multiple claims are set forth in a complaint, a court must separately examine the claims to determine the statute of limitations for each claim. *Barnett v. Aetna Life Ins. Co.*, 580 P.2d 849, 852 (Idaho 1978). Therefore, for the Court to rule on GemCap's motion to dismiss, the Court must determine the applicable statute of limitations for each of the asserted claims and determine the accrual date for the applicable statutes of limitation. The Court measures the accrual date against the date the statutes of limitation tolled to determine whether the applicable period has expired.

    A.    *Determining when the Action Commenced – Tolling Date*

Miesen and GemCap dispute the date the action against GemCap "commenced" under Idaho law and effectively tolled the statute of limitation periods. Miesen argues the action commenced on October 31, 2016, when he filed his Motion for Leave to Amend the Second Amended Complaint. (Dkt. 180.) Miesen cites *Terra-West, Inc. v. Idaho Mutual Trust, LLC*, where the Idaho Supreme Court found, for purposes of Idaho's mechanic's lien statute, the action commenced when the plaintiff filed its motion for leave to amend. 247 P.3d 620 (Idaho 2010).

Conversely, GemCap argues the action commenced when Miesen filed the Third Amended Complaint. (Dkt. 211.) GemCap cites *English v. Taylor*, where the Idaho

Supreme Court interpreted Idaho Rule of Civil Procedure 3(a)[5] and held that, "in the context of amended complaints that seek to add new parties to an existing cause of action, it is the filing of the amended complaint itself that commences the proceedings against the new parties…." 378 P.3d 1036, 1044 (Idaho 2016), reh'g denied (Sept. 13, 2016).

The parties are correct that state law applies to determine when a diversity action commences for purposes of tolling the state statute of limitations. *Walter v. Armco Steel Corp.*, 446 U.S. 740, 750-53 (1980). However, contrary to Miesen's argument, the application of *Terra-West's* holding has been expressly limited to the question of when proceedings are commenced under Idaho's mechanics lien statute against existing parties to the action. *DaPron v. Verska*, No. 1:12-CV-00246-EJL, 2013 WL 959335, at *3 (D. Idaho Mar. 12, 2013); *English*, 378 P.3d 1036 at 1043.

In *English*, unlike *Terra-West*, the party added through the amended complaint was a new party being brought into the action for the first time *English*, 378 P.3d 1036 at 1044. The Idaho Supreme Court likened adding a completely new party to an existing action to filing a third party complaint. *Id*. The Idaho Supreme Court cited *Griggs v.*

---

[5] Idaho Rule of Civil Procedure 3(a) was amended May 5, 2017, effective July 1, 2017. The old rule read: "[a] civil action is commenced by the filing of a complaint petition or application with the court." The amendment changed the text of 3(a) and moved a very similar, yet different provision to 3(b). Those sections currently read: "(a) Form of Action. There is one form of action to be known as "civil action". [sic] (b) Filing of Action. A civil action must be commenced by filing a complaint, petition or application with the court." The difference between the old 3(a) and the new 3(b) is that the "is" was replaced with a "must." However, this revision does not undermine the Idaho Supreme Court's holding in *English*.

**MEMORANDUM DECISION AND ORDER – 9**

*Nash*, which held that, for purposes of third-party complaints, it is the filing of the amended complaint that commences proceedings. 775 P.2d 120 (Idaho 1989).

The Idaho Supreme Court noted that, because the amendment in *Terra-West* involved adding a new claim against a pre-existing party, the same concerns of notice were not implicated as were involved in *English* where the amendment added a new party. Despite using notice to further distinguish *Terra-West*, the rule was clearly set forth: "[I]n the context of amended complaints that seek to add new parties to an existing cause of action, it is the filing of the amended complaint itself that commences proceedings against the new parties, *not* the filing of the motion to amend" (emphasis in original). *English*, 378 P.3d 1036 at 1043.

Although the concerns about notice that were present in *English* are arguably not present here because GemCap inserted itself into the controversy on July 18, 2016, by its own motion to intervene (Dkt. 141), the *English* rule does not hinge on an analysis of whether the party to be added had sufficient notice. GemCap's motion was specifically limited to intervening for the purpose of sealing the Settlement Agreement, which had been included as unsealed Exhibit B to the Declaration of Roderick C. Bond Re: Court's Order to Meet and Confer. (Dkt. 128.)

Procedurally, GemCap *was* a new defendant once Meisen filed the Third Amended Complaint. Thus, for purposes of this analysis, the statutes of limitation as to

the claims asserted against GemCap were tolled with the filing of the Third Amended Complaint on April 24, 2017.

### B. *Determining and Applying the Statutes of Limitation*

To determine whether the statutes of limitation as to each claim asserted against GemCap accrued on or before the tolling date of April 24, 2017, the Court will rely solely on facts asserted by Miesen in the Third Amended Complaint. These facts are identified in the following analysis. Although the parties did introduce outside materials to support their respective motions and arguments, the Court did not rely on the outside materials; thus, the motion to dismiss need not be converted to a motion for summary judgment.

Further, although the date the Settlement Agreement was signed is not clearly established in the Third Amended Complaint, the Court may rely on the facts as asserted by Miesen in the Third Amended Complaint that: (a) it had an effective date of September 15, 2014, and (b) was executed on or around January 9, 2015.

The date a cause of action accrues can be a question of law, a question of fact, or both. *See Hayden Lake Fire Prot. Dist. v. Alcorn*, 404, 111 P.3d 73, 89 (Idaho 2005) (overruled on other grounds by *Farber v. Idaho State Ins. Fund*, 272 P.3d 467 (Idaho 2012)). When there is a disputed issue of fact regarding when a cause of action accrues, further discovery is necessary to resolve the issue. *See id.*

**MEMORANDUM DECISION AND ORDER – 11**

i. *The Aiding and Abetting Breach of Fiduciary Duty Claim*

Breach of fiduciary duty claims, thus aiding and abetting breach of fiduciary duty claims, are subject to a four-year statute of limitations. Idaho Code § 5-224; *Adair v. Radobenko,* No. CV 2002-2952, 2004 WL 2750851, at *2 (Idaho Dist. Ct. Sept. 8, 2004). If the alleged breach of fiduciary duty is based on actions related to a contract or agreement, the statute of limitations begins to accrue when the aggrieved party knew or should have known of the breach (the "discovery rule"). *DBSI/TRI v. Bender*, 948 P.2d 151 (Idaho 1997).

If the alleged breach of fiduciary duty is based on a tort such as fraud, the statute of limitations begins to accrue upon the first tortious act. *Jones v. Runft, Leroy, Coffin & Matthews, Chtd.*, 837 P.2d 861 (Idaho 1994); *Adair v. Radobenko* at *4 (explaining the differing standards the Idaho Supreme Court has defined for contract-based and fraud-based breach of fiduciary duty claims).

Here, Miesen alleges GemCap aided and abetted the AIA controlling defendants' breaches of fiduciary duty because GemCap knew the AIA controlling defendants' acts constituted such breaches, they substantially participated in such breaches, and did not disapprove, seek to disclose or seek to prevent such breaches, and they assisted in the concealment of such breaches from the AIA minority shareholders. (Dkt. 211 at 60.)

Miesen alleges GemCap knew or should have known the AIA controlling defendants had breached their fiduciary duties when GemCap entered into the guarantees,

**MEMORANDUM DECISION AND ORDER – 12**

and Settlement Agreement. (*Id*. at 35-6.) However, Miesen alleges the AIA minority shareholders were not notified of either the loan agreements, nor the Settlement Agreement, until August of 2016—rendering them unable to bring a claim against GemCap until that date. (Dkt. 211 at 41.)

Conversely, GemCap argues the AIA minority shareholders knew or should have known of the loan guarantees as of the date each guarantee was entered into, as shareholders have a right to inspect the business records of a corporation. In the alternative, GemCap argues the AIA minority shareholders were on notice of the loan guarantees when GemCap filed the UCC financing statement with the Idaho Secretary of State on December 20, 2012.

GemCap argues the discovery rule should not apply in this case and that the filing of the UCC financing statement was enough to put the AIA minority shareholders on notice of the two loan guarantees. In support of its argument, GemCap cites a case where the Idaho Supreme Court found that the discovery rule did not apply to public governmental information. *Hayden Lake Fire Prot. Dist. v. Alcorn*, 404, 111 P.3d 73, 89 (Idaho 2005) (overruled on other grounds by *Farber v. Idaho State Ins. Fund*, 272 P.3d 467 (Idaho 2012)). In *Hayden*, the controversy surrounded certain real estate investments the Idaho State Insurance Fund made with the State of Idaho. *Id*. at 76. Each of the investments was approved by the Ada County District Court. *Id*. at 89. The Idaho Supreme Court found that the discovery rule for breach of contract claims did not apply

**MEMORANDUM DECISION AND ORDER – 13**

where each real estate transaction was publically approved and where there were open public records of such approvals. *Id*. at 90.

GemCap equates the reasoning in *Hayden* with another decision by the Idaho Supreme Court, *Chapin v. Stewart*, 230 P.2d 998 (Idaho 1951). In *Chapin*, the Idaho Supreme Court noted, "[t]he general rule in this jurisdiction is that the recording of an instrument affecting the title to real property constitutes constructive notice to all parties interested, of the contents, and the estate claimed thereby." *Id*. at 1000. The issue in *Chapin* concerned whether the statute of limitations had run regarding property that had been adversely possessed. The court found it did not matter that the heirs had no actual knowledge of the adverse possession, because "they had the means of acquiring that knowledge, as the deed conveying the title … was of record during all that time in the office of the county recorder of Ada county, where said lots were situated." *Id*. at 1001.

However, the year after *Chapin* was decided, the Idaho Supreme Court softened the line when it came to those protected by a fiduciary relationship. *Gerlach v. Schultz*, 244 P.2d 1095 (Idaho 1952). In such cases, "there is no reason to anticipate unfaithfulness on the part of one who stands in a fiduciary relationship and when this is so the obligation to search records is relaxed." *Id*. at 1099.

Given *Gerlach*, it is unlikely the minority shareholders had an affirmative duty to search public records, such as UCC financing statement records, to see if the company they were invested in breached its fiduciary duties. As in *Gerlach*, there "was no reason

**MEMORANDUM DECISION AND ORDER – 14**

to anticipate unfaithfulness." Thus the theory that the UCC financing statement –filed by GemCap and not AIA– could serve as constructive notice of the AIA controlling defendants' breach of fiduciary duty is unfounded.

Therefore, if the filing of the UCC financing statement is insufficient to show the AIA minority shareholders knew or should have known of the alleged breach of fiduciary duty in connection with the loan guarantees, the Court must determine if there are other facts alleged in the Third Amended Complaint that clearly demonstrate a date the minority shareholders knew or should have known such facts.

Miesen alleges that, "[a]fter certain AIA Services' shareholders learned of the GemCap lawsuit in California, GemCap was advised that AIA Guarantees and the Settlement Agreements[6] were unauthorized and illegal and that AIA was not being properly operated." (Dkt. 211 at 39.) This fact was affirmed by Miesen's counsel during the September 6, 2017 hearing on these motions.

Therefore, the statute of limitations likely started running sometime in August of 2013, when the aggrieved party, the AIA minority shareholders, knew or should have known of the breach of fiduciary duty because of their knowledge of the GemCap lawsuit. Applying the four-year period, the statute of limitations likely expired in August of 2017. Thus, any claims related to aiding and abetting breach of fiduciary duty that are

---

[6] The Third Amended Complaint suggests there may have been more than one settlement agreement. (Dkt. 211.)

**MEMORANDUM DECISION AND ORDER – 15**

connected to breach of contract or agreement did not expire prior to April 24, 2017, when the Third Amended Complaint was filed.

Finally, given the facts above, it is clear that the first allegedly tortious act occurred when GemCap entered into loan guarantee one on November 23, 2011. Therefore, the statute of limitations on any tort-based aiding and abetting breach of fiduciary duty claims expired on or around November 23, 2015.

    ii.  *The Aiding and Abetting Fraud Claim*

Fraud claims, and thus aiding and abetting fraud claims, are subject to a three-year statute of limitations. Idaho Code § 5-218(4). The period begins to accrue when the aggrieved party discovers facts constituting the fraud (the "discovery rule").

As outlined above, at the very latest, the minority shareholders discovered facts constituting the alleged fraudulent concealment of the loan guarantees shortly after GemCap filed its lawsuit – in August of 2013. Therefore, the statute of limitations on the aiding and abetting fraud claim expired in August of 2016.

    iii.  *The Idaho Consumer Protection Act Claim*

Idaho Consumer Protection Act (ICPA) claims are subject to a two-year statute of limitations after the cause of action accrues. Idaho Code § 48-619. The cause of action accrues when the alleged act in violation of the ICPA occurred.

Here, the alleged act in violation of the ICPA was GemCap entering into the Settlement Agreement with the AIA entities and others. (Dkt. 211 at 73.) The Settlement

Agreement has an effective date of September 15, 2014. Miesen alleges it was not signed until around January 9, 2015. However, using either date, it is clear the statute of limitations on the ICPA claim expired prior to the filing of the Third Amended Complaint on April 24, 2017.

        iv.    *The Statutory Relief Claim*

Section 29-304 of Title 30 of the Idaho Code does not specify a statute of limitations. Therefore, as with other claims without specified statutes of limitations, these claims are subject to Idaho's four-year catch all statute of limitations; or, following the rules regarding derivative claims, subject to the statute of limitations period for the type of act at the heart of the claim. In this instance, it is arguable that the heart of this claim against GemCap is either related to aiding and abetting breach of fiduciary duty—subject to a four-year statute of limitations—or to aiding and abetting fraud—subject to a three-year statute of limitations.

Under this claim, Miesen asks the Court to set aside the guarantees, the Settlement Agreement, or both as *ultra vires* acts. Therefore, the relevant dates are the dates each of these documents were effective or executed: November 24, 2011, for loan guarantee one; October 1, 2012, for loan guarantee two; and, either September 15, 2014, or January 9, 2015, for the Settlement Agreement. As to the Settlement Agreement, it is clear that the statute of limitations did not run by April 24, 2017, using either date and under either a three-year or four-year timeframe.

**MEMORANDUM DECISION AND ORDER – 17**

However, under either potential timeframe, it is also clear the statute of limitations has run for Miesen's statutory relief-based claims related to loan guarantee one and loan guarantee two.

      v.      *The Request for Declaratory Relief*

The code section authorizing and governing declaratory judgments does not specify a statute of limitations. Idaho Code § 10-1200. Therefore, as above, the statute of limitations is either the four-year catch-all or that of the act that is the heart of the request for relief. *See Guzman v. Piercy*, 318 P.3d 918, 930-32 (Idaho 2014).

Miesen seeks to have the loan guarantee agreements and Settlement Agreement declared void as unlawful. The heart of the claim is that GemCap knew or should have known the AIA controlling Defendants did not have authority to enter into the guarantees or Settlement Agreement. These requests for declaratory judgment logically flow from the aiding and abetting of breach of fiduciary duty claim and the aiding and abetting fraud claim. The statutes of limitation for declaratory relief follow those set forth above for each type of relief requested. Therefore, requests for declaratory relief regarding breach of fiduciary duty under the discovery rule have not expired; and requests for declaratory relief regarding breach of fiduciary duty related to fraud have expired and are time-barred.

# CONCLUSION

In sum, the following claims accrued prior to April 24, 2017, and are hereby dismissed as to GemCap: aiding and abetting breaches of fiduciary duty as related to torts such as fraud; aiding and abetting fraud; Idaho Consumer Protection Act claims; and Statutory relief under Idaho Code § 30-29-304 for alleged *ultra vires* acts related to loan guarantee one and loan guarantee two.

The following claims are likely not time-barred—aiding and abetting breaches of fiduciary duties as related to contract-based claims; statutory relief pursuant to Idaho Code § 30-29-304 for alleged *ultra vires* acts related to the Settlement Agreement; and declaratory judgment as to any claims not time-barred. If GemCap discovers facts that contradict the allegations in the Third Amended Complaint regarding when the minority shareholders first knew, or should have known, about the allegedly unauthorized loan guarantees between GemCap and the AIA entities in November 23, 2011, and October 1, 2012, GemCap may file the appropriate motion and supporting materials for the Court to reconsider whether the aiding and abetting breach of fiduciary duty claim is time-barred.

# ORDER

**NOW THERFORE IT IS HEREBY ORDERED:**

1) Defendant's Motion to Dismiss is **DENIED in part** and **GRANTED in part**;
2) Plaintiff's Motion for Relief is **DENIED**.

Dated: **September 26, 2017**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER – 19**