| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc., <br><br> Plaintiff, <br> vs. <br><br> HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; and GEMCAP LENDING I, LLC, a Delaware limited liability company, <br><br> Defendants, <br><br> and <br><br> CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE | Case No. 1:10-cv-00404-DCN <br><br><br> **MEMORANDUM DECISION AND ORDER** |

TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL CASHMAN SR., an individual; JAMES BECK, an individual,

    Defendants/Third-Party Plaintiffs,

vs.

REED TAYLOR, an individual,

    Third-Party Defendant.

# I. OVERVIEW

This matter comes before the Court on two Motions to Disqualify Attorney Roderick Bond. Dkts. 275, 278. At the time the Motions were filed, Bond represented both Plaintiff Dale Miesen and Third-Party Defendant Reed Taylor. After these Motions were filed, but before briefing was complete, Reed Taylor hired alternate counsel. Because of this change in circumstances, the Court permitted the parties to file supplemental briefs. After receiving these supplemental briefs, the Court held oral argument and took the Motions under advisement. As explained below, the Court finds good cause to DENY the Motions so long as Reed Taylor proceeds with alternate counsel.

# II. FACTUAL BACKGROUND

### A. *The Original Parties and Dispute*

This is a shareholder's derivative action, the Court's jurisdiction over which is based upon diversity of citizenship. Plaintiff Dale Miesen is a minority shareholder of the

Defendant AIA Services Corporation ("AIA"), the alleged wronged corporation. Donna Taylor was originally named as a plaintiff in this action. However, the Court dismissed her, in both her personal and representative capacities, because her presence destroyed diversity. *See* Dkt. 178.

There were originally two groups of defendants in this action. The first group consists of AIA Services Corporation, AIA Insurance, Inc. (collectively "AIA Entities"), CropUSA Insurance Agency, CropUSA Insurance Services (collectively "CropUSA"), and several controlling shareholders and officers of those entities, namely: R. John Taylor, James Beck, Michael Cashman, Connie Taylor Henderson, and JoLee Duclos[1] (individuals, collectively "AIA Controlling Defendants"). The second group consists of the law firm Hawley Troxell Ennis & Hawley, LLP, and several of its attorneys who represented the AIA Entities and CropUSA during the events that gave rise to this action, namely: Gary Babbitt, Richard Riles, and John Ashby (collectively "Hawley Troxell Defendants"). There is now one additional defendant, GemCap Lending I ("GemCap"). GemCap first intervened in this action in July of 2016. Later, Miesen asserted claims against GemCap in the Third Amended Complaint.

The operative complaint is the Third Amended Complaint. Dkt. 211. In it, Miesen alleges, among other things, that the AIA Controlling Defendants engaged in fraud and breached their fiduciary duties to the AIA minority shareholders. AIA was formed in 1983. It sold insurance products to members of farmers' and growers' associations and

---

[1] JoLee Duclos passed away late last year. *See* Dkt. 316.

MEMORANDUM DECISION AND ORDER – 3

worked with farmers and growers to form trusts and/or related cooperatives. In the late 1990s, the AIA Board of Directors, controlled by the AIA Controlling Defendants, decided to begin selling crop insurance through a wholly-owned subsidiary called CropUSA. Miesen alleges that the AIA Controlling Defendants unlawfully transferred CropUSA from AIA to their own possession. The AIA Controlling Defendants then proceeded to unlawfully fund, subsidize, and operate CropUSA using AIA's assets. Through their operation of CropUSA, the AIA Controlling Defendants defrauded AIA of millions of dollars. Miesen also alleges that the AIA Controlling Defendants committed a "laundry list" of other unlawful acts, self-dealing, malfeasance, and intentional torts. Miesen has highlighted specific acts Defendant John Taylor allegedly committed. John Taylor was President of both AIA Entities and CropUSA during all of these events. Miesen alleges that John Taylor unlawfully transferred real property to AIA, required AIA to pay the liabilities on the property, unlawfully amended AIA's Bylaws, and issued himself Series A Preferred Shares in AIA. Miesen claims that all of the above described acts hurt AIA's minority shareholders.

Hawley Troxell represented both AIA and CropUSA during the relevant timeframe. Accordingly, Miesen claims the Hawley Troxell Defendants aided and abetted the fraud the AIA Controlling Defendants perpetuated against AIA and its minority shareholders and committed legal malpractice.

*B. Third Party Complaint Against Reed Taylor*

In May 2017, the AIA Controlling Defendants, along with CropUSA, filed a Third Party Complaint against Reed Taylor. Dkt. 218. Except for short intervals, Reed Taylor

served as a director for AIA from its founding in 1983 until early 2001. He also served as an officer of AIA at various times until he redeemed his shares in 1995. In addition, he served on an advisory board for CropUSA from 1999 until 2007. Based on his involvement with these entities, the AIA Controlling Defendants assert that if they are found liable for their actions as officers/directors of AIA and for their actions as members of the CropUSA advisory board, Reed Taylor should be found jointly liable. The AIA Controlling Defendants also assert that Reed Taylor accepted millions of dollars in illegal stock redemption payments from AIA and caused AIA to incur millions of dollars in legal fees. Accordingly, the AIA Controlling Defendants and CropUSA have asserted claims for contribution against Reed Taylor for the fiduciary-duty claims and the fraud claims. *Id.*

Reed Taylor denies these allegations. He has also asserted his own counterclaims against the AIA Controlling Defendants and CropUSA. Dkt. 276. Most of these claims involve AIA's 401(k) Profit Sharing Plan ("the Plan"). Specifically, Reed Taylor asserts class action claims against the AIA Controlling Defendants for breach of fiduciary duties owed to the Plan participants, in violation of the Employment Retirement Income Security Act ("ERISA"). Reed Taylor also claims the AIA Controlling Defendants engaged in transactions prohibited by ERISA.

*C. Facts Relevant to the Motions to Disqualify*

Attorney Lee Rousso filed the original complaint in this action, on behalf of Miesen and Donna Taylor, on August 11, 2010. Dkt. 1. Attorney Bond first appeared on March 18, 2012, on behalf of Donna Taylor. Dkt. 58. Bond then appeared as counsel for

MEMORANDUM DECISION AND ORDER – 5

Miesen on March 23, 2016. Dkt. 122. At that time the Court removed attorney Lee Rousso from the case. On July 28, 2017, after Reed Taylor was served with the Third Party Complaint, Bond appeared on Reed Taylor's behalf. Dkt. 246. A few months later, on October 31, 2017, the Controlling AIA Defendants and CropUSA filed the first Motion to Disqualify Bond. Dkt. 275. Four days later, the Hawley Troxell Defendants followed suit with their own Motion to Disqualify. Dkt. 278.

On February 13, 2018, Reed Taylor filed a Notice of Substitution of Counsel, notifying the Court that he was voluntarily dropping Bond as an attorney and replacing him with Michael S. Bissell of Campbell & Bissell. The Movants[2] objected to this substitution. They argued the substitution does not cure the conflict in interest and the Court still must disqualify Bond from representing any party in this case.

It is important to note that Bond has been representing Reed Taylor since as early as 2007. Since then, Bond has represented Reed Taylor in a handful of disputes involving AIA, primarily state court actions. For example, Bond has brought suit, on Reed Taylor's behalf, against AIA and its directors in a dispute over a stock redemption agreement. Bond then sued, on Reed Taylor's behalf, the lawyers involved in the stock redemption agreement. Bond has also sued AIA, its officers, and other related entities on behalf of Donna Taylor, Reed Taylor's ex-wife and a former plaintiff in this lawsuit. The Movants have described these various suits in their briefs in support of the Motions to Disqualify

---

[2] For simplicity's sake, the Court refers to all of the parties who have brought motions to disqualify as "Movants." Similarly, the Court refers to all those opposing the motions to disqualify, including Miesen, Reed Taylor, and Bond himself, as "Opponents."

in detail. *See* Dkt. 275, 278-1. A comprehensive accounting of these disputes and Bond's involvement is not necessary here. However, the Court does acknowledge Bond's lengthy and intimate representation of Reed Taylor over the last decade.

### III. LEGAL STANDARD

State law governs motions to disqualify counsel. *See In re Cnty. of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000). In Idaho, courts also look to "the Idaho Rules of Professional Conduct as adopted and interpreted by the Idaho Supreme Court" in determining whether disqualification of an attorney is proper. *Andersen v. Valley Cty.*, No. 1:16-CV-00554-CWD, 2017 WL 2311668, at *3 (D. Idaho May 26, 2017); *Parkland Corp. v. Maxximum Co.*, 920 F. Supp. 1088, 1090 (D. Idaho 1996) ("[I]n deciding whether to disqualify counsel, the Court looks to the local rules regulating the conduct of the members of its bar." (citation omitted)).

Disqualifying counsel is an exercise of the court's inherent powers. *Anderson v. Valley Cty*, No. 1:16-CV-00554-CWD, 2017 WL 2311668, *3 (D. Idaho May 26, 2017). "The decision to grant or deny a motion to disqualify counsel is within the discretion of the trial court." *Foster v. Traul*, 175 P.3d 186, 194 (Idaho 2007) (citing *Weaver v. Millard*, 819 P.2d 110, 114 (Idaho Ct. App. 1991)). Under Idaho law, "[t]he moving party has the burden of establishing grounds for the disqualification." *Crown v. Hawkins Co.*, 910 P.2d 786, 794 (Idaho Ct. App. 1996). However, "[t]he goal of the court should be to shape a remedy which will assure fairness to the parties and the integrity of the judicial process." *Weaver*, 819 P.2d at 115. In addition, "[w]henever possible, courts should endeavor to reach a solution that is least burdensome to the client." *Id.* Finally, because

opposing counsel could potentially misuse a motion to disqualify for tactical purposes, such motions are subjected to "particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Co.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (citation omitted).

## IV. ANALYSIS

The Movants argue that disqualification is required by Rule 1.7 of the Idaho Rules of Profession Conduct. In response, Opponents first argue that the movants do not have standing to object to Reed Taylor's choice of counsel as none of them are Bond's current or former clients. Second, Opponents argue Reed Taylor's new counsel cures any conflict that might require Bond's disqualification. The Court addresses each of these arguments in turn.

### A. Rule 1.7

Idaho Rule of Professional Conduct 1.7 provides as follows:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or

> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by the personal interests of the lawyer, including family and domestic relationships.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

> (2) the representation is not prohibited by law;

> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

> (4) each affected client gives informed consent, confirmed in writing.

Movants argue Bond must be disqualified because Miesen's interests in this case are "directly adverse to" Reed Taylor's interests, in violation of Rule 1.7(a)(1) ("[A] lawyer shall not represent a client if . . . the representation of one client will be directly adverse to another client."). Miesen's claims in this derivative action seek to protect the interests of AIA's minority shareholders. Accordingly, Miesen brought suit against AIA's controlling officers and directors. Reed Taylor was at one point an officer and director of AIA, and the AIA Controlling Defendants have brought a claim for contribution against Reed Taylor. In essence, the AIA Controlling Defendants argue Miesen should have named Reed Taylor as a defendant in this lawsuit and Bond's lengthy client relationship with Reed Taylor is the only reason he was not included as a defendant. Thus, with regard to some claims, it appears that it is in Reed Taylor's best interest for the AIA Controlling Defendants to be found not liable.[3] This interest is directly adverse to Miesen's interest.

Opponents of the Motions to Disqualify argue that there is no conflict of interest because Miesen and Reed Taylor are "fully aligned." The main thrust of the argument seems to be that the third-party claims for contribution against Reed Taylor are baseless

---

[3] The Court does not discount the fact that Reed Taylor has asserted his own claims against the AIA Controlling Defendants and that, for those claims, the interests of Reed Taylor and the AIA Controlling Defendants are in direct conflict.

because Reed Taylor was never involved in the malfeasance Miesen outlines in this Third Amended Complaint. Opponents also explain that Reed Taylor previously discovered some of this malfeasance, and that he included some of these acts of malfeasance in a previous lawsuit and in his counterclaims against the AIA Controlling Defendants. Opponents also point out that, prior to 2017, the AIA Controlling Defendants never asserted any indemnification or contribution claims against Reed Taylor. Thus, they argue, the contribution claims are manufactured and, in reality, an attempt to oust Bond from this lawsuit.

Some of these arguments are compelling. However, it is too early for the Court to determine whether the contribution claims the AIA Controlling Defendants have asserted against Reed Taylor are meritorious. On the face of the pleadings, some of Miesen's claims appear to be plainly adverse to Reed Taylor's interest. Thus, Bond's representation of both Miesen and Reed Taylor violates Rule 1.7.

Moreover, this dual representation appears, under the Rules, to be nonconsentable. "Paragraph (b)(3) [of Idaho Rule of Processional Conduct] describes conflicts that are nonconsentable because of the institutional interest in vigorous development of each client's position when the clients are aligned directly against each other in the same litigation or other proceeding before a tribunal." I.R.P.C. 1.7, Cmt. 17. Even though Miesen has not asserted a claim directly against Reed Taylor, Bond's representation of Miesen in effect "involve[s] the assertion of a claim by one client"—the minority shareholders—"against another client"—a corporate insider—"in the same litigation." I.R.P.C. 1.7(b)(3). By filing the Third-Party Complaint against Reed Taylor for

contribution, the AIA Controlling Defendants have, in effect, brought Reed Taylor in as another defendant/joint tortfeasor. Therefore, this is a nonconsentable conflict in substance, if not in name.

Finally, the Court notes that Bond's representation of both Miesen and Reed Taylor is in conflict with Bond's duty to maintain the confidences of his clients. *See* I.R.P.C. 1.6. It seems highly unlikely that Bond can maintain the confidences of both clients while also serving as a zealous advocate for both clients. *See* I.R.P.C. 1.7 Cmt. 30 ("A particularly important factor in determining the appropriateness of common representation is the effect on client-lawyer confidentiality and the attorney-client privilege.").

In sum, the Court finds, under Rule 1.7, that Bond cannot represent both Miesen and Reed Taylor. However, this is not the end of the inquiry.

### B. Standing to Object to Counsel

Opponents argue that the Court should deny the Motions to Disqualify because Movants do not have standing to challenge Bond's dual representation of Miesen and Reed Taylor. The Idaho Rules of Professional Conduct themselves warn that "the Rules can be subverted when they are invoked by" parties without standing "as procedural weapons." I.R.P.C. Scope. The Rules explain that "[t]he fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule." *Id.* However, the Rules do not foreclose the possibility that an "antagonist" could have standing to enforce the Rule. At

the same time, the Rules also do not prescribe the circumstances under which an "antagonist" would have standing to enforce the Rules. Thus, the Court must turn to case law for guidance.

The Idaho Court of Appeals faced a similar situation, and a motion to disqualify, in *Weaver v. Millard*. The *Weaver* court first found that the district court properly viewed the motion "with caution," as it came, "not from a client or former client of the attorney, but from an opposing party." 819 P.2d at 115. The *Weaver* court then found the district court did not abuse its discretion in denying the motion to disqualify after applying the following four-part test:

> (1) Whether the motion is being made for the purposes of harassing the defendant, (2) whether the party bringing the motion will be damaged in some way if the motion is not granted, (3) whether there are any alternative solutions, or is the proposed solution the least damaging possible under the circumstances, and (4) whether the possibility of public suspicion will outweigh any benefits that might accrue to continued representation.

*Id.* at 116. Opponents argue Movants must pass this four-part test in order to having standing to even bring their Motions to Disqualify.

It is true that none of the Movants are Bond's current or former clients and that they seek to enforce the Rules in the face of "an appearance of impropriety" rather than direct harm. Accordingly, the Court must view the Motions to Disqualify "with caution," but its not clear whether the Court must apply the four-part *Weaver* test.

Movants argue the four-part *Weaver* test is discretionary and not required to establish standing as the Idaho Supreme Court has not mandated this test. It is accurate to say that the Idaho Supreme Court has yet to require satisfaction of the *Weaver* test as a

threshold for standing. For example, in *Foster v. Traul*, the Idaho Supreme Court concluded that a district court simply "did not abuse its discretion" in applying the *Weaver* test in a similar scenario. 175 P.3d 186, 195 (2007).

This Court is bound by the decisions of the Idaho Supreme Court, but the high court has yet to speak directly to this issue. Nevertheless, "[w]hen the state's highest court has not squarely addressed an issue, [federal courts] must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises and restatements for guidance." *All. for Prop. Rights & Fiscal Responsibility v. City of Idaho Falls*, 742 F.3d 1100, 1102 (9th Cir. 2013). In light of *Weaver* and *Foster*—and the absence of any alternative tests—this Court is persuade that the Idaho Supreme Court would apply the four-part *Weaver* test in determining whether an opposing party, who is not a current or former client of the attorney in question, has standing to bring a motion to disqualify counsel. Accordingly, the Court turns now to an application of that test.

### (1) Harassment

Opponents argue Movants brought the two Motions to Disqualify only to harass Reed Taylor. As evidence of this harassment, Opponents point to the coordinating timing of the Motions, the failure to propose alternatives to disqualification, and the fact that the Hawley Troxell Defendants have not even asserted a claim against Reed Taylor—i.e. "they have no dog in the fight." Movants deny this accusation wholeheartedly. Instead, they insist Bond's dual representation is a clear violation of the Rules of Professional

Conduct that could potentially harm them and that needed to be brought to the Court's attention.

The Court sees little evidence of harassment in the record. Rather, as discussed above, Bond's dual representation is a violation of the Idaho Rules of Professional Conduct and does raise serious concerns regarding Bond's ability to adequately and fairly represent both Miesen and Reed Taylor. Thus, the Court cannot conclude that Movants brought these Motions in bad faith.

### (2) Damage to Movants

Opponents argue that Movants will suffer no harm if Bond is permitted to continue his dual representation. In contrast, Opponents point out the severe harm both Miesen and Reed Taylor will suffer if they are not permitted to proceed with their counsel of choice, particularly considering the lengthy history and complex nature of this case. Movants respond by arguing they will be damaged because Miesen and Reed Taylor will collude through Bond and, in the process, subvert the third-party claims against Reed Taylor.

The Court sees both alleged harms as potentially causing real damage to one or more parties in this case. However, for the purpose of establishing standing, only the harm to the Movants is relevant. Considering Bond's lengthy professional relationship with Reed Taylor, the Court finds there is a potential for coordination between Miesen and Reed Taylor that would ultimately harm, or at least disadvantage, Movants during the course of this litigation.

### (3) Alternative Solutions

Opponents propose severing the claims brought by and against Reed Taylor as a means of solving Bond's conflict of interest. Opponents also criticize Movants for failing to propose any alternatives besides completely barring Bond from this case. The Court agrees with Movants that severing the claims brought by and against Reed Taylor is not a just solution. To accurately determine Reed Taylor's contribution, if any, to the fiduciary duty claims and the fraud claims, he must be a party to this case. In addition, a second suit would waste the resources of both the Court and the parties and risk inconsistent judgments. The Court also understands Movants arguments as to why permitting Bond to proceed only as Miesen's counsel is an unworkable alternative. However, as discussed in the final section of this Decision, the Court is not persuaded by these arguments. Nevertheless, the Court finds Movants arguments sufficient to satisfy this prong of the standing test.

### (4) Public Suspicion vs. Benefits of Continued Representation

Finally, Opponents argue the public would be suspicious if Bond, who has participated in this case for years, was suddenly kicked off, particularly if Hawley Troxell—a party with no dog in the fight—was the impetus for Bond's disqualification. Moreover, Opponents assert Miesen would be greatly harmed if he did not have the benefit of Bond's knowledge of this complex case. In response, Movants argue the clear appearance of impropriety far outweighs any inconvenience Miesen would experience if forced to find new counsel. Movants reiterate that Bond is attempting to, in essence, represent both a plaintiff and a defendant in this case, which creates a potential for

collusion between the two parties, and will pose problems down the road during the discovery process as the two parties' positions diverge. The Court cannot say that the potential for public suspicion clearly outweighs the benefits of permitting Bond to continue his dual representation of Miesen and Reed Taylor. The Court acknowledges it will be burdensome for Miesen to find alternate counsel and for that counsel to familiarize himself or herself with this case. However, as the Court previously explained, the dual representation is a clear, nonconsentable violation of Rule 1.7, and to allow Bond to continue his representation in the face of this violation would certainly raise public suspicion and rouse distrust in the judicial system. Thus, the Court finds the potential public suspicion is sufficient to satisfy this last prong of the *Weaver* test.

Movants have sufficiently met the four parts of the *Weaver* test. Accordingly, the Court finds they have standing to bring their Motions to Disqualify and seek enforcement of the Rules in this case. However, again, the Court's inquiry does not end here. Despite a finding that the dual representation violates Rule 1.7, and despite a finding that Movants have standing to protest this violation, the Court must determine whether the recent change in circumstances moots the Motions.

### *C. Whether Replacement Cures the Conflict*

Regardless of everything discussed above, Opponents argue the Court should not disqualify Bond because Reed Taylor has fired Bond and hired Bissell

as his replacement. Movants primarily argue that Bond's disqualification is still required under the "hot potato rule."[4]

"The so-called 'hot potato rule' provides that without a proper waiver, 'a law firm that knowingly undertakes adverse concurrent representation may not avoid disqualification by withdrawing from the representation of the less favored client before hearing." *State Comp. Ins. Fund v. Drobot*, 192 F. Supp. 3d 1080, 1114 (C.D. Cal. 2016). This rule aims to protect and reinforce the duty of loyalty an attorney has to an existing client, which is "so sacred, so inviolate that not even by withdrawing from the relationship can an attorney evade it." *Id.* (internal quotation marks and citation omitted). The parties have not cited an Idaho case that discusses or applies the "hot potato rule." However, it appears logical, applied throughout other jurisdictions, and consistent with secondary sources. *See* Restatement of the Law Governing Lawyers § 132 Cmt. c; *see also* § 121 Cmt. e(i). Nevertheless, the hot potato rule does not apply here to force Bond out of this case.

The Court finds it significant that Bond did not drop Reed Taylor like a "hot potato." Rather, Reed Taylor dropped Bond. Reed Taylor then hired his own

---

[4] Movants also argue that Bissell is not exactly independent counsel. Bond and Bissell were members of the same law firm that represented Reed Taylor in a suit against AIA (*Taylor v. AJA Services Corp.*, et al., Case No. CV-07-00208) in the District Court of the Second Judicial District of the State of Idaho, in and for Nez Perce County, and also represented Reed Taylor in a suit against Riley and Hawley Troxell (*Taylor v. Riley, et al.*, Case No. CV OC 0918868) in the District Court of the Second Judicial District of the State of Idaho. Dkt. 343 at 3. However, Movants have not explained why this prior work precludes Bond or Bissell from proceeding on this case.

counsel and has made it widely known that he does not object to Bond remaining as Miesen's counsel. In doing so, Reed Taylor has consented to Bond's participation in this case and waived any further challenge. The cases applying the hot potato rule have carved out an exception for when "a proper waiver" has been obtained. *See Drobot*, 192 F. Supp. 3d at 1114 (explaining that, "without a proper waiver" a lawyer cannot drop a client like a hot potato); *see also W. Sugar Coop. v. Archer-Daniels-Midland Co.*, 98 F. Supp. 3d 1074, 1084 (C.D. Cal. 2015) (noting client did not consent to concurrent representation and finding attorney could not avoid automatic disqualification "by *unilaterally* converting a present client into a former client" (emphasis added)). Unlike a conflict under Rule 1.7(b)(3), it appears this is a scenario in which a client's informed consent can cure a conflict of interest. Indeed, nothing in the Rules or case law indicates a client cannot consent to being dropped like a "hot potato." In addition, there is no need to protect the sacred duty of loyalty if the client fires the attorney or otherwise consents to the attorney terminating his or her representation of the client.

  Other relevant factors that the Court must consider also favor allowing Bond to continue in the case, as Miesen's counsel alone. The Court finds this remedy is the "least burdensome to" both Miesen and Reed Taylor and "will assure fairness to the parties and the integrity of the judicial process." *Weaver*, 819 P.2d at 115. As noted previously, Miesen would be severely prejudiced if Bond were disqualified from this highly complex case. It would take any replacement

counsel a great deal of time and resources to familiarize himself or herself with this case enough to be a zealous advocate for Miesen. Additionally, having Miesen and Reed Taylor proceed with separate counsel averts the appearance of impropriety and the chance of collusion. Accordingly, under both the Rules and the relevant discretionary factors, the Court finds good cause to DENY the Motions to Disqualify.

## IV. ORDER

IT IS HEREBY ORDERED:

1. The Motion to Disqualify filed by the AIA Controlling Defendants and CropUSA (Dkt. 275) is DENIED.

2. The Motion to Disqualify filed by the Hawley Troxell Defendants (Dkt. 278) is DENIED.

3. Roderick Bond may remain in this case as counsel for Dale Miesen. Roderick Bond may not represent Reed Taylor in this case.

4. The Motion to Take Judicial Notice filed by the Hawley Troxell Defendants (Dkt. 344) is GRANTED.[5]

DATED: March 16, 2018

David C. Nye
U.S. District Court Judge

---

[5] Judicial notice is proper because the documents attached to the Motion are not subject to reasonable dispute. *See* Fed. R. Evid. 201.