UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc., | Case No. 1:10-cv-00404-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |
|        Plaintiff, | |
|   vs. | |
| HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; and GEMCAP LENDING I, LLC, a Delaware limited liability company, | |
|       Defendants, | |
|    and | |
| CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; | |

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL CASHMAN SR., an individual; and JAMES BECK, an individual,

        Defendants/Third-Party Plaintiffs,

     vs.

REED TAYLOR, an individual,

        Third-Party Defendant,

   and

GEMCAP LENDING I, LLC, a Delaware limited liability company,

        Defendant/Third-Party Plaintiff,

     vs.

QUARLES & BRADY, LLP, a Wisconsin limited legal partnership; and CRUMB & MUNDING, P.S., a Washington professional service corporation,

        Third-Party Defendants.

# I. OVERVIEW

This matter comes before the Court on two Motions to Dismiss GemCap Lending

I LLC's ("GemCap") Third-Party Complaint (Dkts. 303, 322) and one Motion for

Sanctions (Dkt. 362). As explained below the Court finds good cause to GRANT the two Motions to Dismiss and DENY the Motion for Sanctions.

## II. FACTUAL BACKGROUND

### A. The Original Parties and Dispute

This is a shareholder's derivative action, the Court's jurisdiction over which is based upon diversity of citizenship. Plaintiff Dale Miesen is a minority shareholder of Defendant AIA Services Corporation ("AIA"), the alleged wronged corporation.[1]

There were originally two groups of defendants in this action. The first group consists of AIA Services Corporation, AIA Insurance, Inc. (collectively "AIA Entities"), CropUSA Insurance Agency, CropUSA Insurance Services (collectively "CropUSA"), and several controlling shareholders and officers of those entities, namely: R. John Taylor, James Beck, Michael Cashman, Connie Taylor Henderson, and JoLee Duclos[2] (individuals, collectively, "AIA Controlling Defendants"). The second group consists of the law firm Hawley Troxell Ennis & Hawley, LLP, and several of its attorneys who represented the AIA Entities and CropUSA during the events that gave rise to this action, namely: Gary Babbitt, Richard Riles, and John Ashby (collectively "Hawley Troxell Defendants"). GemCap intervened in this action as a defendant in July of 2016. Later, Miesen asserted claims against GemCap in the Third Amended Complaint.

---

[1] Donna Taylor was originally named as a plaintiff in this action. However, the Court dismissed her, in both her personal and representative capacities, because her presence destroyed diversity. *See* Dkt. 178.

[2] JoLee Duclos passed away late last year. *See* Dkt. 316.

Miesen and Donna Taylor originally filed this case on August 11, 2010. However, the operative complaint is the Third Amended Complaint, which Miesen filed on April 24, 2017. Dkt. 211. In it, Miesen alleges, among other things, that the AIA Controlling Defendants engaged in fraud and breached their fiduciary duties to the AIA minority shareholders. AIA was formed in 1983. It sold insurance products to members of farmers' and growers' associations and worked with farmers and growers to form trusts and/or related cooperatives. In the late 1990s, the AIA Board of Directors, controlled by the AIA Controlling Defendants, decided to begin selling crop insurance through a wholly-owned subsidiary called CropUSA. Miesen alleges that the AIA Controlling Defendants unlawfully transferred CropUSA from AIA to their own possession. The AIA Controlling Defendants then proceeded to unlawfully fund, subsidize, and operate CropUSA using AIA's assets. Through their operation of CropUSA, the AIA Controlling Defendants defrauded AIA of millions of dollars. Miesen also alleges that the AIA Controlling Defendants committed a "laundry list" of other unlawful acts including, self-dealing, malfeasance, and intentional torts. Miesen has highlighted specific acts Defendant John Taylor allegedly committed. John Taylor was President of both AIA Entities and CropUSA during all of these events. Miesen alleges that John Taylor unlawfully transferred real property to AIA, required AIA to pay the liabilities on the property, unlawfully amended AIA's Bylaws, and issued himself Series A Preferred Shares in AIA. Miesen claims that all of the above-described acts hurt AIA's minority shareholders.

Hawley Troxell represented both the AIA Entities and CropUSA during the relevant timeframe. Accordingly, Miesen claims the Hawley Troxell Defendants aided and abetted the fraud the AIA Controlling Defendants perpetuated against AIA and its minority shareholders and committed legal malpractice.

*B. Allegations Against GemCap*

In 2011, after Miesen filed this lawsuit, the AIA Controlling Defendants sought additional funding for CropUSA. They went to GemCap for this funding. On November 23, 2011, the AIA Controlling Defendants obtained a $5 million line of credit from GemCap for CropUSA. The parties subsequently increased this line of credit to $10 million. Initially, the AIA Entities guaranteed only $1,113,930 of the loan. Later, in October 2012, the AIA Controlling Defendants had the AIA Entities guarantee the entire $10 million loan (collectively, "the Guarantees"). John Taylor, as the President of the AIA Entities signed the Guarantees. On December 20, 2012, GemCap filed a UCC financing statement with the Idaho Secretary of State regarding the Guarantees.

In his Third Amended Complaint, Miesen asserts that when GemCap executed the loan documents, it knew, or should have known: (1) that this lawsuit was pending; (2) that the Guarantees violated AIA Services' amended articles of incorporation and bylaws, and numerous Idaho Code sections; and (3) that AIA and its officers were not authorized to execute the Guarantees.

CropUSA defaulted on the $10 million loan. On July 16, 2013, GemCap provided CropUSA with a notice of default. Then, on July 29, 2013, GemCap provided a notice of default and demand for payment to the AIA Entities for the $8,676,288.39 CropUSA

owed GemCap. Finally, on July 30, 2013, GemCap filed suit against CropUSA, the AIA Entities, and the AIA Controlling Defendants in the U.S. District Court for the Central District of California. *GEMCAP Lending I, LLC vs. Crop USA, et al.*, No. 13-cv-55040-SLO (C.D. Cal.).

In January 2015, GemCap entered into a Settlement Agreement with the AIA Entities. John Taylor signed the Settlement Agreement on behalf of the AIA Entities. Under the terms of the Settlement Agreement, the AIA Entities were required to transfer certain real property to GemCap. Pursuant to the Settlement Agreement, the Court also entered judgments against the AIA Entities in the amount of $12,126,584.61, which included $3,986,368.78 in interest, penalties, and costs. In addition, the Settlement Agreement provided that the AIA Entities would not file for bankruptcy protection and that John Taylor and/or certain other AIA Controlling Defendants would continue to operate the AIA Entities in the manner that they had been operated in the past. Judge S. James Otero of the Central District of California entered a Stipulated Judgment in the case on April 12, 2015. Dkt. 288-2.

Miesen asserts that the Settlement Agreement was illegal because it (1) violated AIA Services' amended articles of incorporation and bylaws; (2) violated numerous Idaho Code sections; and (3) was the product of intentional breaches of John Taylor's fiduciary duties, which he owed to the AIA Entities. Miesen also maintains that the AIA Controlling Defendants did not disclose the CropUSA loans, the Guarantees, or the Settlement Agreement to AIA's minority shareholders, as required, until 2015.

In his Third Amended Complaint, Miesen asserts that GemCap substantially assisted and acquiesced in the AIA Controlling Defendants' "breaches of their fiduciary duties, fraud, and other malfeasance" by requiring the AIA Controlling Defendants to improperly and unlawfully operate AIA, and by allowing John Taylor to "unlawfully enter into the Settlement Agreements" and Guarantees. Accordingly, Miesen asserts claims against GemCap for aiding and abetting breach of fiduciary duty, fraud, aiding and abetting fraud, and for statutory liability under Idaho Code § 30-29-304 (ultra vires).[3] Miesen bases his claims against GemCap, at least in part, on the allegation that the Guarantees and Settlement Agreement were made in violation of AIA Services' Amended Articles of Incorporation. Specifically, the Articles barred the AIA Entities from entering into these types of transactions without the approval of the Series A Shareholders of AIA Services. At the time the AIA Entities entered into the Guarantees and Settlement Agreement, Donna Taylor was the Series A Shareholder. Miesen alleges that Donna Taylor did not know about these contracts and did not consent to the AIA Entities entering into any of these contracts. GemCap asserts that it relied on, among other things, John Taylor's assurances that he had the authority to enter into these contracts on behalf of the AIA Entities.

---

[3] Miesen asks the Court to declare that the Guarantees, Settlement Agreement, and related instruments are ultra vires, set them aside, and award the AIA Entities damages for losses it sustained from these agreements.

*C. GemCap's Third Party Complaint*

GemCap filed its Third Party Complaint against the law firm of Crumb & Munding and the law firm of Quarles & Brady on November 21, 2017, based on their involvement with the loan, the Guarantees, and the Settlement Agreement.

According to the Third Party Complaint, GemCap required CropUSA, as a condition precedent to the loan agreement, to provide a written legal opinion regarding the legality of the loan and Guarantees. CropUSA's attorneys, Quarles & Brady, provided a legal opinion letter that stated the "execution, delivery and performance by . . . each Guarantor . . . will not . . . violate any laws, statutes or regulations to which any Loan Party is subject . . . or (c) to our best knowledge, violate, conflict with, or result in a breach of or default under, any agreement or instrument to which any Loan Party [including Guarantors] is a party or by which it is, or any of its properties or assets are, or may be bound . . . ." Dkt. 288, at 5. GemCap relied on this opinion letter in executing the loan documents and Guarantees. If GemCap is found liable to the minority shareholders, it asserts Quarles & Brady should also be found liable as it advised GemCap that the Guarantees were duly authorized, and/or failed to disclose to GemCap that the Guarantees were not duly authorized.

GemCap also asserts Crumb & Munding should be held liable under such circumstances. Crumb & Munding represented John Taylor when he signed the Settlement Agreement on behalf of the AIA Entities. If it is determined that John Taylor lacked authority to sign the Settlement Agreement, GemCap asserts Crumb & Munding should be held liable because it failed to advise John Taylor that he lacked this authority

and it did not ensure that the Settlement Agreement was executed by someone with the authority to bind the AIA Entities. Accordingly, GemCap asserts claims for contribution/implied indemnity against Quarles & Brady and Crumb & Munding.

### D. Pending Motions

On December 21, 2017, Crumb & Munding filed its Motion to Dismiss. Dkt. 303. On January 29, 2018, Quarles & Brady filed its Motion to Dismiss. Dkt. 322. On April 4, 2018, Crumb & Munding also filed a Motion for Rule 11 Sanctions. Dkt. 362. After the parties fully briefed the Motions, the Court held oral argument on May 4, 2018, and took the Motions under advisement.

### III. CRUMB & MUNDING'S MOTION TO DISMISS

Crumb & Munding argues that the claims GemCap asserts against it should be dismissed for three reasons: (1) the Court lacks subject matter jurisdiction over the claims; (2) the Court lacks personal jurisdiction over it; and (3) GemCap has failed to state a claim upon which relief can be granted. The Court focuses on what it sees as the heart of this Motion: whether GemCap has stated a claim upon which relief can be granted.

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule

of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121. A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570. In considering a Rule 12(b)(6) motion, the Court must view the "complaint in the light most favorable to" the claimant and "accept[] all well-pleaded factual allegations as true, as well as any reasonable inference drawn from them." *Johnson*, 534 F.3d at 1122.

## B. Analysis

GemCap's only claim against Crumb & Munding is for contribution/implied indemnity. GemCap first argues such a claim is actionable under Idaho Code section 6-803, which provides, in relevant part:

> (5) A party shall be jointly and severally liable for the fault of another person or entity or for payment of the proportionate share of another party where they were acting in concert or when a person was acting as an agent or servant of another party. As used in this section, "acting in concert" means pursuing a common plan or design which results in the commission of an intentional or reckless tortious act.

GemCap asserts that it has alleged that it "acted in concert" with Crumb & Munding and, accordingly, it seeks contribution from Crumb & Munding for its share of the liability. The Court disagrees. Nowhere in the Third-Party Complaint does GemCap assert that it

acted in concert with Crumb & Munding. Rather, GemCap makes the following allegations about Crumb & Munding:

> 17. John Taylor signed the Settlement on behalf of the AIA Entities. John Taylor was represented at that time by the law firm Crumb & Munding.

> 18. On information and belief, to the extent it is determined that John Taylor lacked authority (which Miesen alleges but which GemCap denies), Crumb & Munding did not advise John Taylor that he lacked authority to enter that agreement (to the extent he did not have such authority), and did not ensure that the settlement agreement was executed by someone with the authority to bind the AIA Entities.

> . . .

> 36. Crumb & Munding owed professional duties to the AIA Entities at the time those entities entered the Settlement Agreement. If it is found that the Settlement Agreement was not duly authorized, then Crumb & Munding failed to exercise reasonable care and skill in representing the AIA Entities and in doing so breached its professional duties to those entities.

> 37. Accordingly, if GemCap is found liable for monetary damages as a result of a finding that Taylor did not have the authority to bind the AIA Entities to the settlement agreement, such damages suffered by the Plaintiff were caused primarily or wholly by the conduct of Crumb & Munding. Accordingly, there is an implied/equitable relationship between GemCap and Crumb & Munding under Idaho law.

Dkt. 288. As shown by the above paragraphs, GemCap has changed its theory of recovery between its complaint and its brief. GemCap has not alleged that it acted in concert with Crumb & Munding; rather, its claims rests on an "implied/equitable relationship between GemCap and Crumb & Munding," which under Idaho statutory law does not support a claim for contribution/indemnity.

GemCap next points the Court to "[t]he common law right of indemnity," which "refers to those situations where a person who without fault on his part is compelled to

pay damages occasioned by the negligence of another." *May Trucking Co. v. Int'l Harvester Co.*, 543 P.2d 1159, 1161 (Idaho 1975). It is true that the Idaho Legislature's adoption of section 6-803 did not affect the "common-law right to indemnification" Idaho courts have recognized. *Adams v. Krueger*, 101–02, 856 P.2d 887, 891–92 & n.8 (Ct. App. 1991), *aff'd*, 856 P.2d 864 (Idaho 1993). However, GemCap still must allege the elements of a common law indemnity claim to survive this Motion to Dismiss. An "indemnity claim has three elements: '(1) an indemnity relationship, (2) actual liability of an indemnitee to the third party, and (3) a reasonable settlement amount.'" *Pinnacle Great Plains Operating Co., LLC v. Wynn Dewsnup Revocable Tr.*, No. 413CV00106EJLCWD, 2015 WL 5853139, at *3 (D. Idaho June 30, 2015)[4] (quoting *Chenery v. Agri–Lines Corp.*, 766 P.2d 751, 754 (Idaho 1988). Importantly, "unless liability of the claimed indemnitee to the third party is established, the right to indemnification does not arise." *Id.* (quoting *Beitzel v. Orton*, 827 P.2d 1160, 1168 (Idaho 1992)). At this stage, the last two elements of this claim have not been satisfied. The Court, nevertheless, looks at whether the first element is present in this case.

The Idaho Supreme Court has recognized equitable indemnity relationships in at least three contexts:

(1) The indemnitee may claim that his liability was based on passive neglect, while the indemnitor was guilty of recklessness.

(2) The indemnitee owed only a secondary duty to the injured party while the indemnitor was primarily responsible, as in cases where a municipal

---

[4] *Report and recommendation adopted sub nom. Pinnacle Great Plains Operating Co., LLC. v. Wynn Dewsnup Revocable Tr.*, No. 413CV00106EJLCWD, 2015 WL 5884861 (D. Idaho Oct. 7, 2015).

corporation has the primary duty to keep the streets in safe condition and the landowner has a secondary duty.

(3) The indemnitee may be only vicariously liable for the actual negligence of his employee and seek indemnity. These are the agency cases.

*May Trucking*, 543 P.2d at 1161. *See also United Air Lines, Inc. v. Wiener*, 335 F.2d 379, 399 (9th Cir. 1964) (discussing the many categories of cases in which indemnity is permitted, none of which mirror the instant case). In addition, the Idaho Supreme Court has clarified that, "where the fault of each party is equal in grade and similar in character, the doctrine of implied indemnity is not available since no one should be permitted to base a cause of action on that party's own wrong." *Beitzel*, 827 P.2d at 1168 (quoting *Borchard v. Wefco, Inc.*, 733 P.3d 776, 779 (Idaho 1987)) (internal alterations omitted).

GemCap vaguely asserts that it has alleged that Crumb & Munding was "primarily responsible for the damages." In doing so, GemCap appears to assert that it has an indemnity relationship with Crumbing & Munding that mirrors the second relationship listed above. In support of this assertion, GemCap argues "as the AIA Entities' counsel for the Settlement Agreement, [Crumb & Munding] owed the AIA Entities a duty of competent representation, including to ensure that those entities were not bound to an agreement by an unauthorized agent." GemCap, however, has not alleged that it owed a secondary duty to the AIA Entities. Such an indemnity relationship does not exist under Idaho law where the indemnitor and indemnitee do not share a responsibility. Moreover, GemCap has not cited any cases, binding or otherwise, that factually support finding such an indemnity relationship between GemCap and Crumb & Munding in this instance.

Accordingly, the Court finds GemCap has failed to state a claim for indemnity/contribution against Crumb & Munding either under Idaho statute or Idaho common law.

Because the Court finds GemCap has failed to state a claim for indemnity/contribution under either an Idaho statute or Idaho common law, the Court finds good cause to dismiss this claim under Rule 12(b)(6).

## IV. CRUMB & MUNDINGS' MOTION FOR SANCTIONS

Crumb & Munding asks this Court to impose sanctions against GemCap under Rule 11 of the Federal Rules of Civil Procedure for filing a frivolous third-party complaint against it.

### A. Legal Standard

"Rule 11 allows for sanctions against an attorney, law firm, or party who violates Rule 11(b) by filing a pleading or motion that is, *inter alia*, frivolous, for an improper purpose, or lacking in evidentiary support." *Meyer v. Bank of Am., N.A.*, No. 1:11-CV-00528-BLW, 2012 WL 4470903, at *12 (D. Idaho Aug. 14, 2012), *report and recommendation adopted*, 2012 WL 4458141 (D. Idaho Sept. 26, 2012) (citing Fed. R. Civ. P. 11). An action is frivolous if it is "both baseless and made without reasonable and competent inquiry," or "groundless . . . with little prospect of success . . . ." *Chevron U.S.A., Inc. v. M & M Petroleum Servs., Inc.*, 658 F.3d 948, 952 (9th Cir. 2011) (internal citations omitted). A district court has the discretion to impose sanctions under Rule 11 and under "its inherent authority to curb abusive litigation practices." *DeDios v. Int'l Realty Invs.*, 641 F.3d 1071, 1076 (9th Cir. 2011) (citations omitted). "When, as here, a

complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (internal quotation marks and citation omitted).

The Ninth Circuit has cautioned that "Rule 11 must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously." *Operating Engineers Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988) "Forceful representation often requires that an attorney attempt to read a case or an agreement in an innovative though sensible way. Our law is constantly evolving, and effective representation sometimes compels attorneys to take the lead in that evolution. Rule 11 must not be turned into a bar to legal progress." *Id.* (citation omitted). Finally, in reaching this decision, the Court keeps in mind that "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Id.* at 1345.

*B. Analysis*

Crumb & Munding primarily argues that the Court should impose Rule 11 sanctions because GemCap's indemnity claim has no basis in law. As explained in the previous section, the Court agrees that the claim against Crumb & Munding should be dismissed. However, the Court declines to impose sanctions. First, there is no indication that GemCap asserts the claim against Crumb & Munding for an improper purpose. Second, while the claim is not legally cognizable, the Court declines to classify the claim

as entirely frivolous; rather it appears GemCap's attorneys are attempting to zealously, and creatively, advocate for their client.

GemCap's two theories of liability—indemnity under state statute and under common law—miss the mark, but only slightly. With regard to statutory liability, GemCap could amend its Complaint to assert additional facts to support its claim that GemCap "acted in concert" with Crumb & Munding in aiding and abetting the AIA Controlling Defendants breaches of their fiduciary duties or in committing fraud. However, it would be difficult for GemCap to do so without admitting any fault. If GemCap made such allegations, it could have a claim for indemnity against Crumb & Munding under Idaho law. Thus, the Court will give GemCap leave to assert additional facts (if it reasonably believes it can do so in good faith) to support this theory.

As to the liability under common law theory, GemCap has attempted to creatively frame the relationship between it and Crumb & Munding to fit into an indemnity relationship. GemCap is unsuccessful in doing so, but there is not a case directly on point which completely bars this theory. Absent case law barring such a theory, the Court cannot find that GemCap's claim is frivolous.

## V. QUARLES & BRADY'S MOTION TO DISMISS

In its Motion to Dismiss (Dkt. 322), Quarles & Brady argues that the claim against it should be dismissed for two reasons: (1) this Court lacks personal jurisdiction over it;

and (2) the Court lack subject matter jurisdiction over the claim. Alternatively, Quarles & Brady asks this Court to transfer the case to the Central District of California.[5]

Significantly, GemCap previously sued Quarles & Brady in the Central District of California. Quarles & Brady describes this other suit as asserting the same "theory of legal malpractice in connection with [its] Opinion Letter" on the legality of GemCap's loan to CropUSA. Dkt. 322-1, at 7. In other words, Quarles & Brady maintains the California suit "is virtually indistinguishable from [GemCap's] claim against [it] in this case." *Id.* On cross-motions for summary judgment, Judge Ronald S. W. Lew of the Central District of California ruled in favor of Quarles & Brady on September 17, 2017.[6] GemCap appealed that ruling and filed its opening brief in the Ninth Circuit on February 5, 2018. The Court has serious concerns about whether it is the proper authority to hear this claim in light of the California litigation. However, the Court need not fully address these concerns as its finds that it lacks personal jurisdiction over Quarles & Brady for the purpose of this case.

### A. Legal Standard

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (citing Fed. R. Civ. P. 4(k)(1)(A)). "In order for an Idaho court to exert jurisdiction over an out-of-state defendant, two criteria must be met; the act giving rise to the cause of action must

---

[5] Other parties in this case have opposed the Motion to Transfer.

[6] The Court takes judicial notice of this California case and the filings from that case, which the parties submitted for this Court's review. *See* Fed. R. Evid. 201.

fall within the scope of [Idaho's] long-arm statute and the constitutional standards of due process must be met." *Saint Alphonsus Reg'l Med. Ctr. v. State of Wash.*, 852 P.2d 491, 494 (Idaho 1992). "Because Idaho's long-arm statute, codified in Idaho Code § 5-514, allows a broader application of personal jurisdiction than the Due Process Clause, the Court need look only to the Due Process Clause to determine personal jurisdiction." *Cornelius v. DeLuca*, 709 F. Supp. 2d 1003, 1010 (D. Idaho 2010).

"The Due Process clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, __ U.S. __, 134 S.Ct. 1115, 1121 (2014). A nonresident defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Since the Supreme Court's "seminal decision in *International Shoe*, [its] decisions have recognized two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court*, __ U.S. __, 137 S. Ct. 1773, 1779–80 (2017). "For an individual, the paradigm forum for the exercise of *general jurisdiction* is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* "Specific jurisdiction is very different. In order for a state court to

exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum." *Id.* (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014)). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (quoting *Goodyear*, 564 U.S. at 919). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.*

"There are three requirements for a court to exercise specific jurisdiction over a nonresident defendant: (1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[ ] himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "[T]he burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Id.* at 800

(citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* Thus, the Court need only determine whether the Plaintiff's "pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.*

*B. Analysis*

Quarles & Brady is a Wisconsin law firm based in Milwaukee, Wisconsin. It also has offices in Illinois, Indiana, Arizona, Florida, and the District of Columbia. It has no property or offices in Idaho and employs no attorneys licensed in Idaho. GemCap has made no allegation that Quarles & Brady's attorneys ever visited Idaho or that Quarles & Brady ever advertised in Idaho. Quarles & Brady sent the Opinion Letter (that forms the basis of GemCap's indemnity claim) from its Chicago, Illinois, office to GemCap's office in Santa Monica California. GemCap is a Delaware corporation with its headquarters in California. In the Opinion Letter, Quarles & Brady opined on the validity and legality of GemCap's proposed $5 million loan to CropUSA and the Guarantees the AIA Entities and John Taylor issued. Quarles & Brady also "specifically disclaim[ed] any opinions with respect to Idaho law, including but not limited to any opinions related to (i) the validity, effectiveness and/or foreclosure of any real property interest located in such States and/or (ii) any provision(s) in the Loan Documents governed or affected by Idaho law." Dkt. 323-2, at 14.

In the face of these facts, GemCap has not argued that this Court has general jurisdiction over Quarles & Brady. Therefore, the Court only addresses the specific personal jurisdiction analysis.

GemCap argues that this Court has specific personal jurisdiction over Quarles & Brady because it represented CropUSA Insurance Agency, Inc. and CropUSA Insurance Service LLC, which are both Idaho entities, in drafting the loan documents and Opinion Letter that are at issue in this case. In addition, GemCap points out that the Opinion Letter opined about the legality of Guarantees issued by two Idaho corporations (the AIA Entities) and an Idaho resident (John Taylor), which pledged real property in Idaho.

Multiple courts have held that a law firm's representation of a forum client alone is not enough to establish the "purposeful availment" necessary for specific personal jurisdiction. The Court finds *Sher v. Johnson* particularly instructive on this front, even though the Ninth Circuit ultimately found a California court did have personal jurisdiction over an out-of-state law firm. The *Sher* court first found the California court did not have specific personal jurisdiction over the Florida law firm that had represented a California resident in a criminal action in Florida based on that representation alone. 911 F.2d 1357, 1362 (9th Cir. 1990). The California resident brought a legal malpractice claim against the Florida firm and the firm moved to dismiss for lack of personal jurisdiction. *Id.* The *Sher* court first explained, the "mere existence of a contract with a party in the forum state does not constitute sufficient minimum contacts for jurisdiction." *Id.* (citing *Burger King*, 471 U.S. at 478). The court then looked to "prior negotiations and contemplated future consequences, along with the terms of the contract and the

parties' actual course of dealing" to determine if the defendant's contacts were "substantial " and not merely "random, fortuitous, or attenuated." *Id.* The Court then found the "normal incidents of . . . representation," such as accepting payment from a California bank, making phone calls and sending letters to California, and even visiting California on three occasions, did not, by themselves, establish purposeful availment. *Id.* These acts did not deliberately create a "substantial connection" to California nor did they promote business within California. *Id.* In sum, the Court concluded, "[o]ut-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited in its home state and takes no affirmative action to promote business within the forum state." *Id.* at 1363.

As noted previously, however, the Court found it had specific personal jurisdiction over the Florida firm when it was revealed that to secure the plaintiff's payment for the legal representation, the plaintiff had "executed a deed of trust in favor of the [law firm], encumbering the [plaintiff's] California home." *Id.* The Court explained, the law firm "look[ed] to the laws of California to secure its right to payment" and "[t]he execution of the deed 'contemplated [significant] future consequences in California,'" including filing the deed in the California recorder's office, judgment in a California court applying California law, and enforcement of that judgment in California. *Id.*

Other circuits and district courts have similarly concluded that mere representation of a forum resident does not establish personal jurisdiction over an out of state law firm. *See, e.g.*, *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226–27 (8th Cir. 1987) (finding South Dakota did not have personal jurisdiction in malpractice action over New

York law firm that represented South Dakota corporation in Maryland patent suit); *Kaempe v. Myers*, No. IP 01-0424-CHK, 2001 WL 1397291, at *8 (S.D. Ind. Nov. 6, 2001) ("[A]n attorney does not submit to the jurisdiction of another state solely by agreeing to represent one of its residents."); *We're Talkin' Mardi Gras, LLC v. Davis*, 192 F. Supp. 2d 635, 639 (E.D. La. 2002) ("[T]he mere exchange of communications in the course of developing and carrying out a contract, such as an attorney-client relationship, is insufficient to constitute purposeful availment."). Including this Court. *See Wheaton Equip. Co. v. Franmar, Inc.*, No. CV08-276-S-EJL, 2009 WL 464337, at *20 (D. Idaho Feb. 24, 2009).

Significantly, the conclusions of these courts comports with the Supreme Court's recent decision in *Walden v. Fiore*. In *Walden*, the Supreme Court clarified that "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." 134 S. Ct. 1115, 1122 (2014). In other words, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* Thus, when a law firm's only contact with a forum state is the representation of a forum resident outside of the forum state, personal jurisdiction is lacking.

This case closely mirrors the cases cited above. GemCap does not allege that Quarles & Brady solicited business in Idaho or has any other contacts to Idaho beyond its representation of CropUSA. Even though Quarles & Brady did not appear in any court on behalf of CropUSA, the Opinion Letter is clearly an "out-of-state legal representation."

As the *Sher* court held, such "[o]ut-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in [Idaho]." 911 F.2d at 1362. Thus, Quarles & Brady's "relationship with [CropUSA] a third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 134 S. Ct. at 1122.

GemCap does argue that Quarles & Brady may have represented CropUSA in other cases in Idaho. An out-of-state law firm's choice to represent a client inside the forum state can establish purposeful availment. *See Wheaton*, 2009 WL 464337, at *22. However, significantly, that representation must form the basis of the current suit in order to establish the second prong of the specific jurisdiction test: that the claim arises out of or relates to the defendant's forum-related activities. *Id.* at 23.

*Wheaton* is instructive. In *Wheaton*, the Colorado law firm of Hamilton and Faatz represented the two defendants in *Wheaton Equip. Co. v. Franmar, Inc. & Franklin Tolbert*, CV03–220–S–BLW (D. Idaho). Ultimately, Chief Judge B. Lynn Winmill awarded the plaintiff attorneys' fees and damages in the total amount of $424,835.02. 2009 WL 464337, at *2. The defendants made no payment toward satisfying the judgment, but disposed of all of their assets through a series of allegedly fraudulent transfers, including the conveyance of "a rock crusher valued at $175,000 to Hamilton & Faatz to satisfy the legal fees owed." *Id.* at 2–3. "Those transfers and the failure to pay anything" lead the plaintiff to sue the defendants again, along with several others, including the law firm of Hamilton & Faatz. *Id.* The law firm moved to dismiss for lack of personal jurisdiction. *Id.* In granting that motion, the Court explained, "even if the law firm purposefully availed itself of Idaho's benefits"—by representing the defendants in

the first law suit—the plaintiff's claims in the second law suit "do not 'arise out' of the[se prior] forum-related activities." *Id.* at 23. Similarly here, even if Quarles & Brady represented CropUSA in Idaho previously, GemCap has not explained how this case arises out of those previous Idaho contacts. Thus, even if the Court granted GemCap leave to conduct discovery on the extent of Quarles & Brady's prior representation of CropUSA, the outcome of the pending Motion to Dismiss would not change.

In sum, this Court does not have personal jurisdiction over Quarles & Brady for purposes of this suit and, therefore, it must grant Quarles & Brady's Motion to Dismiss.

## VI. LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading once "as a matter of course within . . . 21 days after serving [the pleading]" or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). After that, a party may amend the pleading only with the written consent of the opposing party or with leave of the court. Fed. R. Civ. P. 15(a)(2); *see also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987). Rule 15(a) instructs the court to grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, "[a] district court . . . may . . . deny leave to amend due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (internal quotation

marks and alteration omitted). "An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (quoting *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).

Because it is conceivable that GemCap could allege additional facts to cure the deficiencies identified above, the Court dismisses the Third-Party Complaint without prejudice. However, if GemCap wishes to file an Amended Complaint, it shall seek leave to do so within 30 days of the date of this order and shall submit a copy of the Amended Third Party Complaint with such filing. *See Arbon Valley Solar, LLC. v. Thomas & Betts Corp.*, No. 1:16-CV-0070-EJL-REB, 2017 WL 277402, at *10 (D. Idaho Jan. 19, 2017).

## VII. ORDER

THE COURT HEREBY ORDERS:

1. Crumb & Munding's Motion to Dismiss (Dkt. 303) is GRANTED.

2. Crumb & Munding's Motion for Sanctions (Dkt. 362) is DENIED.

3. Quarles & Brady's Motion to Dismiss (Dkt. 322) is GRANTED.

4. GemCap's Third Party Complaint (Dkt. 288) is DISMISSED WITHOUT PREJUDICE.

5. If GemCap wishes to file an Amended Complaint, it shall seek leave to do so within 30 days of the date of this order and shall submit a copy of the Amended Third Party Complaint with such filing.

DATED: May 31, 2018

David C. Nye
U.S. District Court Judge