RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA 98004
Telephone: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Attorney for the Plaintiff Dale L. Miesen

UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>DECLARATION OF RICHARD T. McDERMOTT IN SUPPORT OF PLAINTIFF DALE L. MIESEN'S FIRST MOTION TO COMPEL DISCOVERY FROM THE DEFENDANTS GEMCAP, AIA SERVICES, AIA INSURANCE, THE HAWLEY TROXELL DEFENDANTS, CROPUSA INSURANCE SERVICES, CROPUSA INSURANCE AGENCY AND R. JOHN TAYLOR |

DECLARATION OF RICHARD T. McDERMOTT - 1

CROP USA INSURANCE AGENCY, INC., an
Idaho corporation; CONNIE TAYLOR
HENDERSON, an individual; JOLEE
DUCLOS, an individual; R. JOHN TAYLOR,
an individual; MICHAEL W. CASHMAN SR.,
an individual; JAMES BECK, an individual,

          Defendants/Third-Party
          Plaintiffs,

     **v.**

REED TAYLOR, an individual,

          Third-Party Defendant.

REED TAYLOR, an individual,

          Third-Party Defendant/
          Counterclaimant,

     **v.**

CONNIE TAYLOR HENDERSON, an
individual; R. JOHN TAYLOR, an individual;
JAMES BECK, an individual, and UNKNOWN
BONDING COMPANY, an unknown entity
that issued the unknown fidelity ERISA Bond,

          Counterdefendants.

GEMCAP LENDING I, LLC, a Delaware
limited liability company,

          Defendant/Third-Party
          Plaintiff,

     **v.**

QUARLES & BRADY, LLP, a
Wisconsin limited legal partnership;
and CRUMB & MUNDING, P.S., a
Washington professional service
corporation,

          Third-Party Defendants.

DECLARATION OF RICHARD T. McDERMOTT - 2

I, Richard T. McDermott, declare:

1.      I am over the age of eighteen and am competent to testify in court, including as to the matters set forth in this declaration. This declaration and my opinions herein are based on personal knowledge, education, training, and experience.

2.      In 1962, I received a B.A. from Marquette University. In 1966, I obtained a J.D. from Fordham University School of Law.

3.      In 1967, I was admitted to practice law in the State of New York. I am presently in good standing and licensed to practice law in the State of New York. I have been admitted to practice law in New York for over 50 years.  I am also a member of the New York State Bar Association Securities Regulation Committee.

4.      From 1966 through 1990, I was an Associate and Partner with the law firm of Alexander & Green/Walter Conston Alexander & Green (the firms combined). From 1990 through 2004, I was a Partner of Rogers & Wells/Clifford Chance LLP (the firms merged in 2000).  While at that firm, I chaired the Legal Personnel Committee, and was responsible for the training, development, evaluation and advancement of associate attorneys and counsel, as well as being involved in the partner selection process.

5.      From 2000 through the present time, I have been an Adjunct Professor at Fordham University School of Law. From 1980 through 1998, I was an Adjunct Professor at New York University School of Law.  In both positions, I taught law school classes on the Legal Aspects of Corporate Finance, and covered such subjects as debentures, indentures, preferred stock, convertible securities, dividends and stock repurchases as well as third party opinions in corporate transactions.

**6.**    I am the co-author of Chapters 1 and 2 (Introduction and Elements of Opinion Letters, respectively) and author of Chapter 3 (Legal Opinions on Corporate Matters) of the Treatise: *LEGAL OPINION LETTERS A Comprehensive Guide to Opinion Practice* (Third Edition). I have been a member of the TriBar Opinion Committee for 28 years. The TriBar Opinion Committee is a nationally recognized committee that publishes Reports on various aspects of opinion practice.

**7.**    I am the author of *Legal Aspects of Corporate Finance* (5th ed. 2013) and a 2017 Supplement thereto which is published by LexisNexis Carolina Academic Press. It is my understanding that the book has been used at approximately twenty-two law schools. I have authored other articles and materials (including a Teacher's Manual for *Legal Aspects of Corporate Finance*).

**8.**    In 1988, I was a visiting lecturer at Monash University in Melbourne, Australia and the University of Adelaide, Australia, Corporate and Business Law Centre. In 1999, I co-lectured with former Delaware Chancellor William Allen and James Fuld, author of *Legal Opinions In Business Transactions - An Attempt to Bring Some Order Out of Some Chaos*, 28 Bus. Law. 915 (1973), on the Law and Business of Investment Banking at the New York University Center for Law and Business.

**9.**    From 2009 through the present time, I have served as a Special Master for the New York State Supreme Court Appellate Division, First Department. In that regard, I read the briefs submitted to me, obtain relevant documents and filings, attend hearings from time to time, evaluate the parties' positions, and assist in mediating the cases.

**10.**    I have extensive experience in the area of corporate governance of privately held and publicly traded corporations (including Fortune 500 companies), providing legal advice to

Boards of Directors in matters involving significant transactions, corporate governance, derivative and class action shareholder suits, the payment of directors' expenses (including attorneys' fees), and related matters. I also have extensive experience with the preparation of: proxy statements, Reports to the Securities and Exchange Commission, reports to shareholders, disclosures to shareholders, notices of shareholder meetings, shareholder resolutions, notices of board meetings, and board resolutions. I also have extensive experience in reviewing and interpreting certificates/articles of incorporation, bylaws, shareholder agreements, notices to shareholders, shareholder resolutions, notices to board members and board resolutions; and ensuring that shareholder resolutions and board resolutions comply with a corporation's certificate/ articles of incorporation, bylaws, and applicable restrictions under statutory and common law. I have experience advising the boards of directors of corporations in transactions, including, the board of directors of Fortune 500 companies. I also have extensive experience in providing advice to officers, boards of directors, shareholders (minority and majority shareholders) for corporations, including as to matters involving anticipated or actual litigation.

11.    I have extensive experience in domestic and international corporate finance, mergers and acquisitions, tender offers, strategic alliances and bankruptcy reorganizations.

12.    My experience in corporate law also includes, purchases and redemptions by a corporation of its own shares (and formulating and evaluating proposals therefor) from both substantial shareholders and the investing public in issuer tender offers and open market transactions, strategic alliances, going private transactions, bankruptcy reorganizations, the legal and equitable theories of piercing the corporate veil and alter-ego (as well as taking appropriate corporate action to prevent such claims), and other general corporate matters.

DECLARATION OF RICHARD T. McDERMOTT - 5

**13.**     I have experience addressing attorney-client privilege and work product issues for corporations.

**14.**     I have practiced corporation and securities law for more than 35 years. I have represented domestic and international acquiring and acquired clients in mergers and acquisition transactions involving acquisition amounts from less than $1 million to more than $1 billion. Included in that work was the participation in and supervision of others with respect to pre-transaction due diligence and the rendering of reports pertaining to pre-transaction due diligence.

**15.**     I also have extensive experience in representing my firm's corporate clients in various litigation matters, including, without limitation, experience addressing conflicts of interest in litigation, all aspects of litigating cases, trying cases and appealing cases.

**16.**     I also have experience serving on the boards of directors of a privately held corporation and a charitable foundation.

**17.**     I was retained by Roderick Bond Law Office, PLLC to be an expert in this lawsuit. Specifically, I have been retained to provide expert testimony in this lawsuit regarding various matters pertaining to the defendants.

**18.**     I have previously been retained as an expert witness for Roderick Bond Law Office, PLLC in other related cases (as disclosed in Paragraph 21 below). Consequently, I am very familiar with many of the facts and legal issues in the instant stockholder's derivative suit.

**Certain Information Reviewed and Relied Upon**

**19.**     When I reference the parties below, I will use the same definitions as used by the Plaintiff in his Third Amended Complaint. Dkt. 211 at 5-10.

**20.**     I have reviewed the relevant filings in this case (most of the filings in this case), including, without limitation, the Third Amended Complaint, the defendants' Answers and

DECLARATION OF RICHARD T. McDERMOTT - 6

Affirmative Defenses to the Third Amended Complaint, the purported Settlement Agreement involving GemCap Lending I, LLC (Dkt. 128 at 21-48), and the Hawley Troxell Defendants' Motion for Summary Judgment together with all filings pertaining to that Motion (including, the Declarations of D. John Ashby and Richard A. Riley and the exhibits attached thereto).

21.    I have reviewed thousands of pages of certain filings (including complaints, answers, motions, declarations, opinions and orders, etc.) and documents produced in discovery (including deposition transcripts and exhibits) in various lawsuits that Mr. Bond has provided to me, including, without limitation, certain filings and discovery related documents pertaining to: **(a)** *Reed Taylor v. AIA Services Corp., et al.*, Nez Perce County District Court Case No. CV-07-00208; **(b)** *Donna Taylor v. AIA Services Corp., et al.*, Consolidated Nez Perce District Court Case Nos. CV-08-1150 and CV-13-1075 (I was retained by Roderick Bond Law Office, PLLC as an expert for this case); **(c)** *Donna Taylor v. AIA Services Corp.*, Nez Perce County District Court Case No. CV-09-02470; **(d)** *Reed Taylor v. Riley, et al.*, Ada County District Court Case No. CV-OC-09-18868 (I was retained by Roderick Bond Law Office, PLLC as an expert for this case); **(e)** *Reed Taylor v. Babbitt, et al.*, Nez Perce County District Court Case No. CV-08-01765; **(f)** *Donna Taylor v. AIA Services Corp.*, Nez Perce County District Court Case No.: CV-09-02470; **(g)** *AIA Services Corp. v. Durant, et al.*, Nez Perce County District Court Case No. CV-12-01483; **(h)** *Reed Taylor v. Bell, et al.*, King County Superior Court Case No. 12-2-10803-0-SEA (I was retained by Roderick Bond Law Office, PLLC as an expert for this case); **(i)** *GemCap Lending I, LLC v. CropUSA Insurance Agency, Inc., et al.*, U.S. District Court, Central District of California, Western Division, Case No. 2:13-cv-05504-SJO-MAN; **(j)** *Durant, et al. v. GemCap Lending I, LLC, et al.*, Nez Perce County District Court Case No. CV-14-01444; **(k)** *Church Crop Insurance Services, Inc. v. GCB Diversified Services, Inc. et al.*, Polk County, Iowa District Court Case No.

EQCE077193; **(l)** *GemCap Lending I, LLC v. Quarles & Brady, et al.*, U.S. District Court, Central District of California, Western Division, Case No. 2:14-cv-07937-RSWL-E; **(m)** *Missouri Crop, LLC, et al. v. GCB Diversified Services, Inc., et al*. U.S. District Court, Eastern District of Missouri, Northern Division, Case No. 2:15-cv-00024; **(n)** *Zions First National Bank v. 17 State Street Partners LLC, et al.*, Nez Perce County District Court Case No. CV-15-02084; **(o)** *GemCap Lending I, LLC v. Scottsdale Indemnity Co.*, U.S. District Court, Central District of California, Case No. 2:15-cv-09942-CAS; and **(p)** *GemCap Lending I, LLC v. AIA Services Corp., et al.*, Nez Perce County District Court Case No. CV-16-02207. The common thread in the foregoing cases is that they, directly or indirectly, involve improper conduct by one or more of the Controlling AIA Defendants and certain of their attorneys (and GemCap in certain of these cases).

22.    I have reviewed the articles of incorporation and amendments thereto and the bylaws and amendments thereto of AIA Services, AIA Insurance and CropUSA. I have also reviewed relevant board resolutions, board meeting minutes, notices of shareholders 'meetings and shareholder resolutions for AIA Services, AIA Insurance and CropUSA, (albeit the documents fail to establish those corporations have been properly operated). I have also reviewed relevant financial statements of AIA Services, AIA Insurance and CropUSA.

23.    I have reviewed and am familiar with the pertinent and applicable Sections of Idaho Code, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, Idaho Rules of Evidence, the Idaho Rules of Professional Conduct, and the Idaho Bar Commission Rules. I have also reviewed and am familiar with pertinent and applicable Idaho case law, federal case law, other states' case law, treatises (e.g., Fletcher, Wright & Miller, etc.) and other authorities (including law review articles).

24.     I am familiar with the pending discovery disputes, including, without limitation, the pending disputes regarding the waiver of privilege and work product. One of the purposes of this Declaration is to provide opinions to further substantiate the Plaintiff's claims for purposes of showing good cause.

25.     I have consulted with Roderick Bond, including as to matters relative to the discovery disputes.

26.     While I was provided with a number of the 289 pdf files that GemCap allegedly inadvertently produced to Mr. Bond on July 13, 2018, I am not relying on, nor considering, those specific pdf files for this Declaration, since GemCap has asserted that those pdf files are privileged as provided in Fed. R. Civ. P. 26(b)(5)(B) (though I am not conceding that those files are in fact attorney-client privileged documents or that privilege was not previously waived as to any of them).

27.     When I refer to "aiding and abetting" or "aid and abet" below, I mean, *inter alia*, to "aid, abet, counsel, encourage the wrongdoer by words, gestures, looks, or signs; or give substantial assistance; or encouragement to the accomplishment of a legal wrong; or to knowingly and substantially assist in the covering up or obfuscation of the same."

28.     When I refer to "conspiracy" or "conspire" or "conspired" below, I mean "an agreement between two or more to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner."

29.     When I refer to fiduciary duties of "obedience" below, I am referring to the obligation to comply with articles of incorporation, bylaws and applicable law, among related issues. While it appears that Idaho has never squarely addressed whether "obedience" is a component of fiduciary duties owed by officers, directors or controlling shareholders, the issue is

a distinction without a difference because fiduciary duties of "obedience" are also considered by courts and commentators to be aspects of the fiduciary duty of "loyalty."

30. Unless I specifically state otherwise below, when I refer to "privilege" or "work product", I mean both attorney-client privilege and work product and accountant-client privilege and work product, which are both recognized under Idaho law. *See* I.C. § 9-2013(2); I.C. § 9-203A; I.R.E. 501; I.R.E. 502; I.R.E. 510; I.R.E. 511; I.R.E. 513; I.R.E. 515. In other words, I am seeking as much privileged, work product and non-privileged information as possible based on the facts and circumstances in order to, *inter alia*, understand and evaluate every decision and transaction.

31. Since this declaration is not being submitted for summary judgment purposes or as a formal expert witness disclosure and this Court appears to desire brevity for purposes of the motion to compel, I will not include a recitation of the facts and the legal authorities further supporting my opinions below (though my opinions are supported by facts and legal authorities and I may specifically address certain authorities below). Nevertheless, I incorporate by reference the factual allegations asserted in Paragraphs 4-184 of the Third Amended Complaint as support for my opinions and requests for information below (I note that there are some typos in the Third Amended Complaint, though they are not material, but the facts alleged are otherwise generally correct based on my review of the documents and information). Dkt. 211 at ¶¶ 4-184. As a result, I am attaching the Third Amended Complaint as Exhibit A to this Declaration.

**Opinions and Necessity of Obtaining Privileged Information**

32. While it is not my practice to testify against fellow attorneys, I have made exceptions when I agreed to testify in this lawsuit and previously in related lawsuits based on the egregious facts and circumstances. By providing the testimony and opinions set forth below, I am,

of course, not seeking to address issues of law that are to be decided by this Court; rather I am, seeking to provide this Court with information sufficient to establish that the Plaintiff's claims are "colorable" in order to establish good cause and to demonstrate that I need access to the privileged information and work product relating to that privileged information in order to enable me to develop, formulate, and articulate definitive opinions with respect to such matters.

    **33.**    Based upon my knowledge, education and experience, together with the authorities, documents and information I have reviewed, assumed and disclosed, I render the opinions and requests for information set forth in the following paragraphs in order that I am able to obtain sufficient information to fully and fairly prepare and submit detailed expert opinions to oppose or support summary judgment as well as my expert report in compliance with the December 1, 2018 deadline. In addition, rather than repeat the testimony and opinions set forth in my Declaration filed on July 2, 2018, I incorporate herein by reference my testimony and opinions here as further support for establishing the need for the privileged information and work product regarding the transactions and issues discussed in that declaration. A copy of that Declaration is attached as Exhibit B (the reference to 2016 as to the date that I signed that Declaration was a typo by Mr. Bond, and should be 2018). As I testified in Paragraphs 25 through 29 in Exhibit B, I need a substantial amount of information to fairly and fully prepare my opinions for this lawsuit and to address and rebut, to the extent necessary, any applicable affirmative defenses; as discussed in paragraph 46 below, this information includes all of the privileged and work product information pertaining to CropUSA, AIA, John Taylor and any other defendants which was provided by John to GemCap.  My opinions and requests for information set forth in Exhibit B and below are not exhaustive.

DECLARATION OF RICHARD T. McDERMOTT - 11

34.    As a preliminary matter, in my opinion, John is breaching his fiduciary duties of loyalty owed to AIA Services and AIA Insurance by attempting to assert privilege and work product protections for all of the transactions, litigation and issues alleged in Plaintiff's Third Amended Complaint.[1] If John were properly discharging his fiduciary duties of loyalty and obedience owed to AIA Services and AIA Insurance, he would consent to a waiver of privilege and work product for all transactions and litigation referred to in the Third Amended Complaint (other than the privilege and work product with respect to his present counsel, Mr. Martelle concerning the representation of the instant lawsuit). Moreover, in my opinion, John has a myriad of conflicts of interest that bar him under AIA Services' amended articles of incorporation and AIA Services and AIA Insurance's bylaws from making a decision to not waive privilege or work product. John was intimately involved in all of the transactions and litigation alleged in the Third Amended Complaint and, therefore, in my opinion his conflicts of interest prevent him from addressing privilege or work product issues on behalf of either AIA Services or AIA Insurance. This would also be true under the common law even if AIA Services or AIA Insurance's articles of incorporation or bylaws did not prevent him from making decisions on behalf of AIA Services or AIA Insurance. Finally, it is worth noting that John continues to reject Donna Taylor's appointment of a director to AIA Services' board of directors, as is her unqualified right under AIA Services' amended articles of incorporation. *See* Dkt. 153-1 at 86. Stated differently, AIA Services' board is not properly composed and thus no purported decision of that board is valid. While John appears to have improperly issued himself 15,000 AIA Series A Preferred Shares

---

[1] Although the crime/fraud exception to privilege may even apply to communications and privileged information between the Controlling AIA Defendants and their present counsel, Mr. Martelle, I am not requesting that privileged information and it is my understand that neither is Plaintiff at this time. I do reserve the right to address this issue in the future, however.

DECLARATION OF RICHARD T. McDERMOTT - 12

(another violation of his duties of loyalty owed to AIA Services) in an apparent attempt to have more Series A Preferred Shares than Donna Taylor, this effort fails because the Idaho Supreme Court has reversed Judge Brudie's decision that Donna Taylor holds only 7,110 Series A Preferred Shares, thereby confirming that she holds 41,651.25 Series A Preferred Shares. *See Taylor v. Taylor*, __ P.3d __, 2018 WL 3597848 (Idaho July 27, 2018).

35.     As another preliminary matter, the Third Amended Complaint alleges numerous concealments from AIA by the defendants. *E.g.*, Dkt. 211 at ¶¶ 17, 44, 47, 49, 54-55, 61, 65, 77, 81, 84, 87, 89, 91, 106, 111, 118, 132, 148, 156, 164, 164(q), 164(r), 164(qq), 193, 204, 208-215, 217. The knowledge possessed by, or representations made by, John, Connie, Beck, Cashman, Duclos or Freeman cannot be imputed to AIA Services and AIA Insurance because those parties all had conflicts of interest by way of their ownership of, or employment by, CropUSA Insurance Agency or because of their involvement in the transactions at issue in the Third Amended Complaint or their adverse interests to AIA Services and AIA Insurance. Moreover, they acted outside of the powers set forth in the amended articles of incorporation and restated bylaws, were not properly electing directors and officers; they also refused to accept Donna Taylor's board designee as required under AIA Services' amended articles of incorporation. Therefore, to this day AIA Services and AIA Insurance have no knowledge of any of what in my opinion are their fraudulent and other otherwise unlawful activities.[2]

36.     In my opinion, since approximately 2000, the Controlling AIA Defendants have concealed material facts from AIA Services and its innocent minority shareholders regarding, *inter*

---

[2] While it appears this issue has not been addressed by Idaho appellate courts, other courts have held that knowledge is not imputed to a corporation in such circumstances. *E.g., Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 774 (4th Cir. 1995); *Ray v. Karris*, 780 F.2d 636, 641-642 (7th Cir. 1985).

DECLARATION OF RICHARD T. McDERMOTT - 13

*alia* the formation, funding, and operation of CropUSA Insurance Agency and the transactions pertaining to AIA Services or AIA Insurance and CropUSA Insurance Agency. The Controlling AIA Defendants had duties to make full disclosure as controlling shareholders, directors or officers, but instead chose to conceal facts from AIA Services and its innocent minority shareholders. Some of these concealments were done at times in which the Hawley Troxell Defendants were aware thereof, yet they took no action and continued representing AIA Services or AIA Insurance without insisting upon full disclosure. In my opinion, this constitutes some of the Hawley Troxell Defendants' breaches of their fiduciary duty of care and loyalty owed to AIA Services and AIA Insurance.

37.     It is also my opinion, that John, Connie, Beck, Cashman, and Duclos (who, were at relevant times, directors, officers, or controlling/majority shareholders of AIA Services) breached their fiduciary duties (including the duties of loyalty and obedience) by, *inter alia*, engaging in, authorizing, or approving the transactions and decisions referenced in Paragraphs 4-164 of the Third Amended Complaint (including establishing the conflicts of interest by way of ownership in various entities).

38.     In my opinion, the Hawley Troxell Defendants breached their fiduciary duties (including the duty of loyalty) by, *inter alia*, engaging in the improper joint representation of AIA Services, AIA Insurance and CropUSA Insurance Agency in light of the serious conflicts of interest (which they acknowledge existed) and the fact that disinterested shareholders of AIA Services were the only parties who could have authorized such representation owing to the conflicts of interest of Connie, John, Beck, Cashman and Duclos (and the other officers or former

directors (e.g., Freeman)) as referenced in the allegations in the Third Amended Complaint.[3]  In my opinion, that the Hawley Troxell Defendant breached their fiduciary duties (including the duty of loyalty) owed to AIA Services and AIA Insurance when they failed to insist upon substantial disclosures to the disinterested common shareholders as to various matters, including their joint representation of CropUSA Insurance Agency, AIA Services and AIA Insurance. Moreover, they should have insisted upon the appointment of a receiver for AIA Services when Donna Taylor requested the same in 2009 (a receiver would have put an end to the Controlling AIA Defendants' breaches of fiduciary duties). In addition, the Hawley Troxell Defendants' motion for summary judgment and the declarations of Messrs. Riley and Ashby interject issues into this case regarding their representation of AIA, as a result of which I need to review the relevant attorney-client privilege and work product materials in order to fully and fairly address those issues. *See* Dkts. 388-1, 388-2, 389, 390.

      **39.**    In my opinion, GemCap, its counsel, or both, were fully aware that the guarantees (Dkt. 153-2 at 9-17, 67-86) and subsequent Settlement Agreement (Dkt. 128 at 21-48) were illegal and improper because, *inter alia*, such transactions were barred by (i) AIA Services' amended articles of incorporation, including the provisions barring guarantees other than to wholly owned subsidiaries, and conflict of interest transactions as well as barring AIA Services from incurring any indebtedness that diminished the net value of the company below the amounts owed to Donna

---

[3] At this state, I am assuming that Richard Riley did not breach a duty to AIA when he prepared a draft "offering statement under Regulation A of the Securities Act of 1993 (the 'Reg A Offering') for the sale of CropUSA commons stock" and "a private placement memorandum" in 2004. Dkt. 390 at 14, ¶ 33; *see also* Dkts. 390-19 & 390-20. However, I need to examine the privileged information and work product relating to that work to ensure that I understand what Mr. Riley did and whom he was representing, and whether he was also representing AIA Services or AIA Insurance at that time. These issues were raised in connection with the Hawley Troxell Defendants' motion for summary judgment.

DECLARATION OF RICHARD T. McDERMOTT - 15

Taylor (constituting an over $400,000 obligation to repurchase her Series A Preferred Shares, plus accrued interest since May 2008); and (ii) AIA's amended bylaws (which also contained conflict of interest provisions). GemCap was provided with copies of these documents prior to the entry into the first guarantee. As a result, in my opinion, GemCap has aided and abetted or conspired with John, Beck and Connie (the alleged directors who purportedly authorized the guarantee) with respect to the guarantees and with John with respect to the Settlement Agreement (it appears that Connie and Beck may have resigned as directors before that agreement was signed, though it does not relieve them of liability by having signed the purported resolutions authorizing the guarantees that resulted in the unlawful Settlement Agreement). Moreover, in my opinion, the Settlement Agreement with GemCap could constitute evidence of conspiracy to defraud AIA Services and AIA Insurance. However, I need all of the privileged information (including, but not limited to settlement communications), work product and other non-privileged information in order to enable me to fully develop, formulate and articulate definitive opinions with respect to such matters, as well as other matters referred to elsewhere herein and to specifically address the facts and circumstances and any defenses which have been or may be asserted by the defendants.

40.     Because as discussed in the preceding paragraph the knowledge of the Controlling AIA Defendants cannot be imputed to AIA Services or AIA Insurance, I need to obtain as much information as possible, including all privileged information, work product and non-privileged information (e.g., emails between the parties or their counsel), in order that that I may able to ascertain precisely what happened and when and thus confirm, revise or expand upon the opinions expressed herein. In addition, this information is necessary in order to enable me to fully develop, formulate and articulate definitive opinions with respect to the Controlling AIA Defendants and Hawley Troxell Defendants' breaches of fiduciary duties (among other claims) and to rebut certain

affirmative defenses asserted by the defendants such as advice of counsel or advice of accounting professionals,[4] apparent authority or imputed knowledge,[5] and alleged actions or instructions approved by AIA Services and AIA Insurance or with knowledge imputed upon them,[6] which have been asserted by the defendants.[7]

41.    As to the advice of counsel and advice of accountant defenses referenced in the preceding paragraph which have been asserted by AIA Services, AIA Insurance, CropUSA Insurance Agency, CropUSA Insurance Services, Beck, Cashman, Connie, John and Duclos, I need to obtain the privileged information, work product and non-privileged information (e.g., emails between John, Beck, Connie, Cashman and Duclos) pertaining to such defenses so that I can fully and fairly prepare my rebuttal opinions and because that information would be relevant to my opinions regarding breaches of fiduciary duties and other claims, including, aiding and abetting breaches of fiduciary duties. Indeed, the Hawley Troxell Defendants themselves claim that they need to use the privileged information in their possession for their defense, or they would be "deprived of due process."[8]

42.    As to GemCap's apparent authority and imputed knowledge defenses, I need to obtain the privileged information, work product and non-privileged information (e.g., emails between the parties or their counsel relating to the entry into the guarantees and Settlement Agreement) pertaining to such defenses in order that I can fully and fairly prepare my rebuttal

---

[4] Dkt. 193 at 215 at 27, ¶ 10; Dkt. 366 at 34, ¶ 10.

[5] Dkt. 283 at 146, ¶¶ 21-22. *See also Middlekauff v. Lake Cascade, Inc.*, 110 Idaho 909, 914, 719 P.2d 1169, 1174 (1986) ("Apparent authority is created when a principal voluntarily places an agent in such a position that a person of ordinary prudence…is justified in believing that the agent is acting pursuant to existing authority").

[6] Dkt. 193 at 61-64.

[7] For purposes of this declaration and my testimony and opinions, I will assume that the advice of counsel and related affirmative defenses are viable.

[8] Dkt. 193 at 63; *see also* Dkt. 394-1 at 6-7.

DECLARATION OF RICHARD T. McDERMOTT - 17

opinions and because that information would be relevant to my opinions regarding breaches of fiduciary duties and other claims, including, aiding and abetting breaches of fiduciary duties.

43.    As to the Hawley Troxell Defendants' defenses that they had allegedly obtained consents or instructions from AIA Services or AIA Insurance and that the knowledge of the Controlling AIA Defendants is imputed to AIA Services or AIA Insurance, I need to obtain the privileged information, work product and non-privileged information (e.g., emails between the Hawley Troxell Defendants and any of the Controlling AIA Defendants) pertaining to such defenses so that I can fully and fairly prepare my rebuttal opinions and because that information would be relevant to my opinions regarding breaches of fiduciary duties and other claims, including, aiding and abetting breaches of fiduciary duties.

44.    While it is my opinion that no conflict waiver would be reasonable or effective under the facts of this case to warrant entering into such a waiver or a joint defense with the parties who directly or indirectly assisted in taking AIA's money and assets, I need to review the privileged and work product information to see how the Hawley Troxell Defendants could have possibly obtained approval by any authorized constituents of AIA Services or AIA Insurance for such waivers or joint defense agreements.. This information will also help to determine and establish the extent to which the Hawley Troxell Defendants aided and abetted any one or more of the Controlling AIA Defendants' breaches of the fiduciary duties they owed to AIA as officers, directors or majority /controlling shareholders of AIA Services (or in the case of John, all three). Moreover, in my opinion, the alleged conflict waivers and joint defense agreements are void and of no legal force or effect because the Controlling AIA Defendants had conflicts of interest that prevented them from consented to, or executing, such conflict waivers or joint defense agreements with the Hawley Troxell Defendants.

DECLARATION OF RICHARD T. McDERMOTT - 18

45.    Based on the facts and circumstances of this lawsuit (including as articulated in the Third Amended Complaint), I need to examine the attorney-client and accountant-client privileged information, communications and work product involving AIA Services and AIA Insurance to fully and fairly prepare my opinions that the Controlling AIA Defendants and Hawley Troxell Defendants breached their fiduciary duties owed to AIA Services and AIA Insurance. This would include the unredacted billing records for all work done by any attorney for AIA Services or AIA Insurance as to any matter or allegation in the Third Amended Complaint.

46.    The Controlling AIA Defendants have maintained operational and financial control over AIA Services since Reed Taylor sold his shares in 1995 (John, Beck and Cashman entered into voting agreements to maintain that control). The Controlling AIA Defendants have never made full disclosure of the facts to AIA Services or AIA Insurance, let alone AIA Services' innocent minority shareholders (who would be the only persons who could have authorized the transactions and litigation decisions articulated in the Third Amended Complaint). Indeed, over the last fifteen years, I am aware of only one shareholder meeting that was conducted for AIA Services and that was in connection with the illegal reverse stock split in 2012. The material that was submitted to the shareholders of AIA Services in connection with the annual meeting and attempted reverse stock split in 2012 failed to make full disclosure or disclose any of the material conflicts of interest that John, Beck and Connie had as directors of AIA Services. Instead, in my opinion John, Connie and Beck continued to conceal material facts from AIA Services' shareholders, including, without limitation, that they had signed a board resolution authorizing the limited guarantee for CropUSA in favor of GemCap. During that same time period, I am also only aware of one other matter submitted to shareholder vote, which was the request for AIA to advance the payment of attorneys' fees and costs for certain conflicted officers and directors in 2007 for

DECLARATION OF RICHARD T. McDERMOTT - 19

*Taylor v. AIA Services, et al*. However, even with regard to that vote, no disclosure was made to the shareholders. Despite the bylaws requiring an annual shareholder meeting each year, the Controlling AIA Defendants have failed to conduct such meetings and thus to make full disclosure at such meetings.

47.    When John Taylor waived privilege as to all matters involving the law firm of Quarles & Brady (Dkt. 403-8 at 10) and AIA Services, AIA Insurance, CropUSA, and other entities so that GemCap could pursue claims against Quarles & Brady (and John Taylor sought to benefit from that arrangement as provided in the Settlement Agreement), this waiver included, *inter alia*, the issue of Quarles & Brady's representation of AIA for an opinion letter in 2006 and Quarles & Brady's *pro hac vice* representation of CropUSA though the Hawley Troxell Defendants in *Taylor v. AIA Services, et al*. As a result of this waiver and in addition to the reasons that I previously stated in Exhibit B, I need to review the privileged information and communications between Quarles & Brady and the Hawley Troxell Defendants. Moreover, in my opinion, John Taylor's waiver of privilege as to Quarles & Brady regarding its representation of CropUSA in *Taylor v. AIA Services, et al*., should include the waiver of privilege as to the Hawley Troxell Defendants because they were required to sign every pleading, motion, response, reply or other paper as counsel for CropUSA. Quarles & Brady could not do so because its attorneys were not licensed to practice law in Idaho. *See* I.R.C.P. 11(a). Since the Hawley Troxell Defendants could not sign anything without conducting their own due diligence to confirm that the pleading or paper did not violate I.R.C.P. 11, I need to review the privileged information and work product originating from the Hawley Troxell Defendants relative to *Taylor v. AIA Services et al*. Moreover, in my opinion it is grossly unfair for GemCap to have such material while it is being denied to the plaintiff herein.

DECLARATION OF RICHARD T. McDERMOTT - 20

48.     In order to formulate my opinions as to damages and assess the breaches of fiduciary duties of the Hawley Troxell Defendants and the Controlling AIA Defendants, I need to be able to review the legal files, privileged communications and unredacted billing records for all matters involving CropUSA, AIA Services or AIA Insurance since the formation of CropUSA in 1999. This would also include, but not be limited to, the billing records for *Taylor v. AIA Services, et al.*, the Donna Taylor consolidated state court cases (in which I am opining here that the Controlling AIA Defendants breached their fiduciary duties by not simply paying Donna and instead choosing to spend more money paying attorneys to fight her than just paying her), the illegal reverse stock split fiasco (in which I am opining here was also a breach of Connie, John and Beck's fiduciary duties owed to AIA Services and its shareholders). In that connection it is necessary for me to review all privileged material relating to the purported reverse stock split, including the billing records of and payments made to the firm of Randall Danskin. I also need to review the transactional billing records for *GemCap v. AIA Services, et al*. (the lawsuit in which GemCap asserted that John had fraudulently conveyed an interest in AIA Services' headquarters to John's benefit in AIA Services' 401(k) Plan). I need to be able to determine who transferred this property and for what reason.

49.     Among the additional matters for which I need to examine privileged material are all of the tolling agreements and the effects thereof which are referred to in Paragraph 107 of the Third Amended Complaint wherein it is alleged that such agreements had the effect of permitting the Controlling AIA Defendants to continue to improperly operate and harm AIA.

50.     It is also necessary that I be permitted to examine any privileged material relating or in any way pertaining to the transfer of ownership of Crop USA from AIA Services to John and the other Controlling AIA Defendants.

DECLARATION OF RICHARD T. McDERMOTT - 21

**51.** Other privileged material that should be reviewed is that pertaining to the allegations contained in paragraphs 74 through 85 of the Third Amended Complaint regarding the conversion of $ 1.5 million of AIA's money, and any privileged material relating to the purported issuance of shares AIA Series A Preferred Stock to John and his purported bylaw amendment to provide for an award of attorney's fees and costs for certain lawsuits as alleged in paragraph 162 of the Third Amended Complaint.

**52.** As I previously mentioned, the above are not exhaustive.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.

_August 6, 2018, New York, New York_          _/s/ Richard T. McDermott_
Date and City and State Signed             Richard T. McDermott

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 6th day of August 2018, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

James D. LaRue:     jdl@elamburke.com, sd@elamburke.com

Jeffrey A. Thomson:     jat@elamburke.com, nlp@elamburke.com

Loren C. Ipsen:     lci@elamburke.com, nlp@elamburke.com

Alyson Anne Foster:     aaf@aswblaw.com, cme@aswblaw.com, kkp@aswblaw.com,
lmk@aswblaw.com, mar@aswblaw.com, tie@aswblaw.com

Benjamin A. Schwartzman:     bas@aswblaw.com, cme@aswblaw.com,
jsd@aswblaw.com, kcr@aswblaw.com,
lmk@aswblaw.com, mah@aswblaw.com,
tie@aswblaw.com

Martin J. Martelle:     attorney@martellelaw.com, vanessa@martellelaw.com

Vanessa A. Mooney:  vanessa@martellelaw.com

Markus William Louvier:     mlouvier@ecl-law.com, byesland@ecl-law.com

James B King:     jking@ecl-law.com

Jack S Gjording:     jgjording@gfidaholaw.com, ktonkin@gfidaholaw.com

Stephen Lee Adams:     sadams@gfidaholaw.com

Fanxi Wang:     fwang@birdmarella.com, mhicks@birdmarella.com

Mark T. Drooks:     mdrooks@birdmarella.com, mhicks@birdmarella.com

Peter L Steinman     psteinman@mrllp.com

Tyler Scott Waite:     twaite@campbell-bissell.com

Michael Scott Bissell:     mbissell@campbell-bissell.com

AND I FURTHER CERTIFY that on such date I served the foregoing on the following

DECLARATION OF RICHARD T. McDERMOTT - 23

non-CM/ECF Registered Participants in the manner indicated:  Via first class mail, postage prepaid

addressed as follows:

>AIA Services Corporation
>P.O. Box 538
>Lewiston, ID  83501
>
>AIA Insurance, Inc.
>P.O. Box 538
>Lewiston, ID  830501

_____   _/s/ Roderick C. Bond_____
Roderick C. Bond
