RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA 98004
Telephone: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Attorney for the Plaintiff Dale L. Miesen

UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>DECLARATION OF RODERICK C. BOND IN SUPPORT OF PLAINTIFF DALE L. MIESEN'S FIRST MOTION TO COMPEL DISCOVERY FROM THE DEFENDANTS GEMCAP, AIA SERVICES, AIA INSURANCE, THE HAWLEY TROXELL DEFENDANTS, CROPUSA INSURANCE SERVICES, CROPUSA INSURANCE AGENCY AND R. JOHN TAYLOR |

DECLARATION OF RODERICK C. BOND - 1

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

        Defendants/Third-Party Plaintiffs,

v.

REED TAYLOR, an individual,

        Third-Party Defendant.

REED TAYLOR, an individual,

        Third-Party Defendant/ Counterclaimant,

v.

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

        Counterdefendants.

GEMCAP LENDING I, LLC, a Delaware limited liability company,

        Defendant/Third-Party Plaintiff,

v.

QUARLES & BRADY, LLP, a Wisconsin limited legal partnership; and CRUMB & MUNDING, P.S., a Washington professional service corporation,

        Third-Party Defendants.

DECLARATION OF RODERICK C. BOND - 2

I, Roderick C. Bond, declare:

1.    I am an attorney for the Plaintiff Dale L. Miesen in this lawsuit. I am a citizen of the United States, over the age of eighteen, and competent to testify in court, including as to matters in this Declaration. This Declaration, including the Exhibits attached to this Declaration, is based upon my personal knowledge (other than those documents that I obtained from PACER, though I have personal knowledge of obtaining such documents).

2.    Before I address the facts and specific issues regarding the discovery disputes, I will address the complexity and damages at stake in this lawsuit. In terms of the discovery needed for this lawsuit as to the proportional needs of the case based upon the factors in Fed R. Civ. P. 26, I would point out the following: (a) this lawsuit is very important for the Plaintiff Mr. Miesen, other common shareholders who I have represented, the AIA Services' 401(k) Plan participants who will likely never receive a penny for the Series C Preferred Shares held in the 401(k) Plan unless this lawsuit is successful; (b) while we are still working on calculating damages and hope to have something soon, Plaintiff's base damages (excluding prejudgment interest and punitive damages) exceeds $10 million. With prejudgment interest since most of the claims are liquidated and if punitive damages were awarded (punitive damages can go to the jury for breaches of fiduciary duties and fraud), Plaintiff's damages could exceed $40 million; (c) the innocent shareholders stand to gain a significant sum if this lawsuit is successful and the obligation to GemCap is voided as to AIA Services and AIA Insurance; (d) the records that we are seeking for AIA Services, AIA Insurance, CropUSA, and other entities controlled or partially owned by John simply involve all corporate records and related litigation and personal information from 1999 through the present time (my client has agreed to only ask for an order to compel from the time that CropUSA was formed in 1999 through the present time); (e) as to GemCap, its relationship

with the defendants began in 2010, led to a loan in 2011, later modifications, an improper settlement in 2014/2015 and substantial litigation flowing from those transactions. My client simply wants this information; (f) based on the foregoing, the information required is held by the defendants; and (g) the discovery will benefit the Plaintiff, the AIA corporations, and AIA Services' innocent shareholders.

   3.  Prior to bringing Plaintiff's Motion to Compel, I spent hours and hours of time over the course of numerous telephone conferences to counsel for the defendants conducting discovery conferences. I also sent countless emails to opposing counsel seeking to resolve the discovery disputes to no avail. Pursuant to Fed R. Civ. P. 37(a), I certify that I met and conferred in good faith with counsel for the defendants on numerous occasions in an effort to resolve the discovery disputes to no avail. I tried without success to obtain proper answers (without improper objections) and to obtain responsive documents to the requests for production. It is frustrating when I am able to obtain more crucial documents filed in other lawsuits that I am able to obtain from the defendants in this lawsuit. They also refused or failed to properly supplement their answers and responses and withdraw their improper boilerplate objections. I also complied with this Court's requirement that I submit matters to this Court's law clerk before filing a motion to compel. Based on this Court's order that I keep the Motion to Compel at no more than ten pages, I was unable to quote to many legal authorities or thoroughly prepare my motion for which I apologize because of the complexity of the issues. While I will continue to work with opposing counsel to resolve as many disputes as possible (I just received a letter from Alyson Foster not long ago which I do not have time to review), this case has been delayed so long and time is running out for expert disclosures. Thus, I am compelled to move forward with the motion to compel because we can just not wait any longer. While some information has flowed over the last year and hundreds of

DECLARATION OF RODERICK C. BOND - 4

thousands of pages of mostly worthless information has been produced (though most all of those documents produced by the Hawley Troxell Defendants and the Controlling AIA Defendants/CropUSA had been previously produced in other lawsuits), I know that this Court will not allow another year to pass and my client does not wish for any further delays. The only way that this case will get moving in my opinion is through an order to compel. And, because there are so many disputes regarding the failure to produce responsive documents and the improper objections, a full motion to compel is the only vehicle that can rectify the situation and get this case moving.

4.	Attached as Appendix to the Plaintiff's Motion to Compel are true and correct copies of the Plaintiff's Interrogatories and Requests for Production served upon GemCap, the Hawley Troxell Defendants, John Taylor, CropUSA Insurance Agency and CropUSA Insurance Services, together with the answers, responses and objections provided thereto (and in the case of CropUSA Insurance Services, no answers, responses or objections were received). I inserted the Appendix A and corresponding page numbers on each of those files. I received no answers or responses from CropUSA Insurance Services.

5.	In *Taylor v. AIA Services, et al*., the defendants produced copies of privileged representation agreements, joint defense agreements and related instruments to their expert witnesses and to the trial court *in camera*. Those documents were never produced to Reed Taylor, and the trial court denied Reed Taylor's motion to disqualify without producing those documents. However, Plaintiff is a shareholder suing derivatively on behalf of AIA Services and AIA Insurance (Reed Taylor filed suit as a creditor and stock pledgee). Attached as ***Exhibit 1*** is a true and correct copy of pertinent pages of the Affidavit of John Straight filed in 2008 in *Taylor v. AIA Services, et al.* (I have personal knowledge of this document and its authenticity), with pages 8 and

DECLARATION OF RODERICK C. BOND - 5

9 containing a listing of the privileged documents that he was provided. The Plaintiff and his experts need this information in this lawsuit as these documents are at issue as to claims involving the Hawley Troxell Defendants and the Controlling AIA Defendants (and CropUSA, too).

**6.**     Attached as ***Exhibit 2*** is a true and correct copy of the Joint Rule 26(f) Report and Discovery Plan filed as Docket No. 45 on November 3, 2015 in *GemCap Lending I, LLC v. Quarles & Brady, et al.*, Case No. 2:14-cv-07937-RSWL-E. Attached to the last page of Exhibit 2 is the waiver of privilege letter signed by John Taylor. Some of the documents referenced in the next paragraph was he result of Exhibit 2.

**7.**     On July 13, 2018, GemCap produced an additional 289 pdf files, which were comprised of deposition transcripts, deposition exhibits and answers to discovery requests from two other lawsuits involving GemCap (information requested by the Plaintiff). Specifically, *GemCap v. Quarles & Brady, et al.*, and *GemCap v. CropUSA, et al.* (both cases were filed in U.S. District Court in California). However, on July 16, 2018, I was advised by GemCap's counsel that the 289 files were being clawed back as inadvertently produced privileged documents pursuant to Rule 26(b)(5)(B). I was extremely troubled by GemCap's assertion of privilege and claw back under Rule 26(b)(5)(B) because, based on my review of the documents before the claw back occurred, there were no privileged documents pertaining to GemCap and the very nature of the documents—that being deposition transcripts, deposition exhibits and answers to discovery— proved that the 289 files could not be privileged. As a result, on July 23, 2018, I met and conferred with GemCap. At that conference, GemCap's counsel demanded that I not use the files for any purpose under Rule 26(b)(5)(B). GemCap's counsel also demanded that I provide a list of any of the 289 files that had been provided to my expert witness and my clients (I advised GemCap's counsel that I had already forwarded a number of the files to my expert and my clients). After

DECLARATION OF RODERICK C. BOND - 6

discussion, GemCap's counsel then asserted that some of the 289 files may not be privileged and that the privilege issues essentially pertaining to Mr. Martelle's clients. GemCap later advised me that 12 of the 289 files were not privileged (those files were answers to discovery requests in another lawsuit). Attached as ***Exhibit 3*** is a true and correct copy of a transcript for that discovery conference. To this day and despite the representations made to me, I have not received a privilege log and I have not received any further word from GemCap's counsel that any more of the remaining 277 files would be released (though I just received a letter a short time ago that I have not been able to review). Despite a promise by Mr. Martelle's office to at least provide me with a privilege log as to those 277 pdf files, I have not received anything. Many of these 289 pdf files arose from the waiver of privilege in Exhibit 2. The files include unredacted billing records from Quarles & Brady, some of which have John's handwriting on them, which demonstrates that GemCap obtained them from sources other than Quarles & Brady. The files also include emails. Ironically, GemCap's counsel advised me that all of the privileged information held by GemCap would be provided to Mr. Martelle for his review and that the fight was not GemCap's. This surprised me because Mr. Martelle represents Beck, Cashman and Connie—three more third parties. The theme has been to thwart discovery.

**8.** GemCap has also asserted that it would provide me with certain other documents once a protective order has been entered. Although I have not heard back any further from GemCap since I forwarded my red-line version to its proposed protective order, I am less inclined to agree to their protection order terms based on my recent experience articulated in Paragraph 7 above. While GemCap recently finally produced copies of the two protective orders that it claimed prevented disclosure of certain information, its counsel also recently provided me with notice that it provided long ago to the parties regarding my client's requests for production. Yet, those parties

DECLARATION OF RODERICK C. BOND - 7

have done nothing to intervene to protect the allegedly confidential information. Based on my experience with GemCap and my review of other lawsuits, I believe that GemCap uses protective orders to prevent disclosure of evidence rather than to actually protect information. GemCap also stated that it would provide supplements to its interrogatory answers, but it has failed to do so.

**9.** GemCap, AIA Services, AIA Insurance and other defendants (Mr. Martelle's clients) have all submitted boilerplate objections asserting that Rule 408 protects all settlement communications and offers from disclosure. There are numerous reasons why this information is required. First, prior to the time that GemCap entered into the Settlement Agreement with AIA Services and AIA Insurance, I had emailed GemCap's counsel advising them that the guarantees were not authorized and that my clients would not authorize a settlement (my clients were disinterested common shareholders and Series A Preferred Shareholder in the case of Donna Taylor). My expert and I want to ascertain what information was conveyed to GemCap by its counsel, the counsel for other parties or other parties such as John Taylor. Those emails may contain concessions that the Settlement Agreement and guarantees were not authorized and may further provide admissible information relating to those issues and other issues (including where assets and money might come from to pay GemCap). Obviously, there is other information that could be learned as well. But emails regarding settlement offers/communications and privileged communications relative to the 2011/2012 loan guarantees and the 2014/2015 Settlement Agreement are important to fully and fairly address GemCap's apparent authority defenses and to address and possibly support certain of Plaintiff's claims, including aiding and abetting breaches of fiduciary duties and a conspiracy to defraud AIA Services and AIA Insurance through the Settlement Agreement filed in Docket 128 in this lawsuit. It is impossible for me to believe that emails and depositions of GemCap's agents will not reveal that GemCap was fully aware that the

DECLARATION OF RODERICK C. BOND - 8

guarantees and Settlement Agreement violated AIA Services' amended articles of incorporation and John was never authorized to execute any of them.

     **10.**    After this the last conference with this Court, I sent Mr. Martelle an email as he requested going over some of the key discovery disputes. Attached as ***Exhibit 4*** is a true and correct copy of my email to Mr. Martelle dated June 26, 2018. Despite representations to me and this Court's law clerk, I have not received any further information, no further documents have been produced and no supplements have been made. However, I did have yet another telephonic discovery conference with Mr. Martelle and Ms. Mooney last week, however, as mentioned above they did not produce a privilege log for any of the 277 pdf files as promised. At that conference, Mr. Martelle did state that he would work with me to permit me to visit AIA's storage unit to inspect documents and that possibly he could work with me on conducting some email searches using key word searches (a suggestion that I made). However, I have not received a firm commitment as to what exactly we will be permitted to inspect and, at this juncture, I am firmly convinced that Mr. Martelle does not have a handle on what has been produced and what needs to be produced. Because our last conference was cut short because Mr. Martelle had other commitments, I reached out to Mr. Martelle and Ms. Mooney once again in an effort to meet and confer again, but they did not respond. At this late stage, my client needs an order to compel to get things moving on that side. Again, the key issues reflected in Exhibit 4 provide an accurate statement of the issues and Mr. Martelle's lack of understanding of what has been produced. Mr. Martelle also stated that he would reveal certain privileged communications that his clients would be rely on for their advice of counsel defense, but that they had not determined which ones. Similarly, the Hawley Troxell Defendants' counsel advised me that they had not made the decision whether they would seek to use privileged information (though his motion for protective order

seems to indicate that they want to use privileged information). To this day, none of the defendants have produced a single privilege log that was prepared by them for this lawsuit, and they have taken the position that they do not have to produce them (notwithstanding Mr. Martelle's failure to produce the limited privilege log as to the files mentioned above), including for Rule 408. It is thus impossible for me to even assess or evaluate any of the objections regarding privilege or settlement communications because no privilege logs were provided, even after over a year now. Moreover, none of the defendants have moved for a protective order or moved to enlarge time to prepare and produce appropriate privilege logs.

    **11.** In terms of the privilege waiver issues in the Plaintiff's motion to compel, we are not seeking to obtain attorney-client privileged information as it pertains to the defendants and their counsel as to the representation of them in this lawsuit at this time. We are seeking the privileged information and related work product in other lawsuits and transactions at issue in the Third Amended Complaint. This derivative lawsuit has the support of Donna Taylor (the holder of over $416,000, plus accrued interest worth of Series A Preferred Shares) and other common shareholders (*see* Dkt. 67-42) and participants in the 401(k) Plan with a beneficial interest in Series C Preferred Shares held by that plan and worth $920,000, plus over $1.5 million in accrued dividends. Other than the privilege which was waived by John as discussed above (some of those documents have been publicly filed) and the possibility of obtaining other of those documents in this motion to compel, virtually all of the privileged documents that we need are not available from other sources. The key documents are held by the defendants. Unfortunately, I believe that the best chance that the Plaintiff has for recovering substantial funds is from the Hawley Troxell Defendants and GemCap. It would be manifestly unfair for those parties to possess privileged information for their defense and try to selectively disclose it, when the Plaintiff has been deprived

of that information. The same holds true for the other defendants' advice of professional defenses. Professor McDermott's declaration does a good job at articulating some of the issues and our need for the privileged information and related work product. Lastly, the privileged information that we are seeking does not involve any trade secrets or related issues. Indeed, AIA Service and AIA Insurance have virtually no revenues left, their headquarters was sold and the money given to GemCap, and the corporations' major assets, in my opinion, are the claims in this lawsuit.

12. There are other examples of advantages that GemCap has obtained. Attached as ***Exhibit 5*** is a true and correct copy of an audit that GemCap was permitted to conduct at AIA's offices, which was filed as Docket No. 198-6 in *GemCap Lending I, LLC v. CropUSA Insurance Agency, et al.*, U.S. District Court for the Central District of California, Case 2:13-cv-05504-SJO-MAN. Notably, Exhibit 5 was marked confidential yet it was filed and GemCap has been provided more access to AIA's offices than me or my clients. By way of another example, attached as ***Exhibit 6*** is a true and correct copy of the Declaration of John Munding, which was filed as Docket No. 282-1 in that same lawsuit. In that Declaration, Mr. Munding admits that GemCap was once again provided full access to AIA's offices. Attached as ***Exhibit 7*** is a true and correct copy of an unredacted Quarles & Brady Invoice dated November 29, 2011 filed as Docket No. 45 on November 3, 2015 in *GemCap Lending I, LLC v. Quarles & Brady, et al.*, Case No. 2:14-cv-07937-RSWL-E. Of course, Exhibit 7 is one of the privileged documents that GemCap obtained through the waiver in Exhibit 2. However, I obtained Exhibits 5-7 from PACER. These examples illustrate why the Plaintiff is seeking documents and information (privileged and non-privileged) from the lawsuits referenced in paragraph 21 of Professor McDermott's declaration dated August 6, 2018. Again, since I have appeared as counsel in this lawsuit, I have obtained more useful information from other lawsuits than I have obtained from any of the defendants in this lawsuit.

DECLARATION OF RODERICK C. BOND - 11

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.

*August 6, 2018, Bellevue, Washington*          */s/ Roderick C. Bond*
Date and City and State Signed           Roderick C. Bond

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 6th day of August 2018, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

James D. LaRue:   jdl@elamburke.com, sd@elamburke.com

Jeffrey A. Thomson:   jat@elamburke.com, nlp@elamburke.com

Loren C. Ipsen:   lci@elamburke.com, nlp@elamburke.com

Alyson Anne Foster:   aaf@aswblaw.com, cme@aswblaw.com, kkp@aswblaw.com, lmk@aswblaw.com, mar@aswblaw.com, tie@aswblaw.com

Benjamin A. Schwartzman:   bas@aswblaw.com, cme@aswblaw.com, jsd@aswblaw.com, kcr@aswblaw.com, lmk@aswblaw.com, mah@aswblaw.com,

DECLARATION OF RODERICK C. BOND - 12

tie@aswblaw.com

Martin J. Martelle:   attorney@martellelaw.com, vanessa@martellelaw.com

Vanessa A. Mooney:   vanessa@martellelaw.com

Markus William Louvier:   mlouvier@ecl-law.com, byesland@ecl-law.com

James B King:   jking@ecl-law.com

Jack S Gjording:   jgjording@gfidaholaw.com, ktonkin@gfidaholaw.com

Stephen Lee Adams:   sadams@gfidaholaw.com

Fanxi Wang:   fwang@birdmarella.com, mhicks@birdmarella.com

Mark T. Drooks:   mdrooks@birdmarella.com, mhicks@birdmarella.com

Peter L Steinman   psteinman@mrllp.com

Tyler Scott Waite:   twaite@campbell-bissell.com

Michael Scott Bissell:   mbissell@campbell-bissell.com


AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants in the manner indicated: Via first class mail, postage prepaid addressed as follows:

AIA Services Corporation
P.O. Box 538
Lewiston, ID  83501

AIA Insurance, Inc.
P.O. Box 538
Lewiston, ID  830501

*/s/ Roderick C. Bond*
Roderick C. Bond

DECLARATION OF RODERICK C. BOND - 13