**Roderick Bond**

| | |
|---|---|
| **From:** | Roderick Bond |
| **Sent:** | Tuesday, June 26, 2018 12:18 PM |
| **To:** | Marty Martelle |
| **Cc:** | Vanessa Mooney |
| **Subject:** | Document Issues and List |
| **Attachments:** | Stipulation as to 2nd Subpoenas - Executed by All Parties.pdf; 17-7-30 - Letter to Weiland re Subpoenas.pdf |

Marty:

Per our discussions last Friday, I'm providing you with a list of the major items and issues. I apologize for the delay, but I had almost completed the list and then saved it, but lost virtually all of my work when I opened the email up again, so I had to almost start over.

As part of the list of items, I wanted to address your misunderstanding of what generally has, and has not been, produced in other lawsuits since you were not an attorney in those lawsuits (I acknowledge that you presenting represent AIA Services, John Taylor, Connie Henderson, James Beck and Michael Cashman in the Donna Taylor consolidated lawsuits, but you only appeared while the appeal was pending and you were not involved in discovery). I think that you need to know what has happened, which will help you understand why there are many documents that have never been produced (though I think that you should already have your arms around these issues after the many months that you have been counsel on this case). I will now clarify for you the errors in your submissions to Ms. Henderson by addressing them in the same order and category listed in your submission to show how all responsive documents and information has not been produced:

- ***Corporate Records of the AIA Entities and the CropUSA Entities***. As described below, your assertion is incorrect that all documents have been produced from 1995 through 2017. To this day, we have never been provided with a full production of documents. As explained below in *Taylor v. Bell*, the last time that I was permitted to inspect documents was when John Taylor moved 85 boxes of documents to a storage unit owned by someone

1

**Exhibit - 4**

else, despite there being an inventory list of over 260 boxes of documents. I was not permitted to inspect documents as they were stored. See attached letter to Steve Wieland for more explanation. I would note that my clients even submitted requests pursuant to Idaho Code to inspect and copy corporate records and even those requests were unlawfully denied. To say that we have been provided all corporate records it utterly false and without any basis in fact.

- **_Inspection of Corporate Records_**. As discussed above and below, I have not been permitted to inspect any corporate records as they are stored since nearly a decade ago in *Taylor v. AIA Services*. Instead, only some documents were produced in *Taylor v. Bell* and those documents were improperly moved. Based on the dispute outlined in my attached letter, Reed was forced to copy all documents so that he can verify what was received and to prove the agreement was breached. This needlessly forced Reed to incur substantial costs for no reason, as also explained in the attached letter.

- **_Reed Taylor v. AIA Services, et al_**. Hawley Troxell spearheaded discovery and document production in that lawsuit. The journal entries (1995-Sept. 2007) and workpapers (1995-2006) were produced. The emails produced in that lawsuit were limited to certain parties, i.e., John, Duclos, Freeman, and were only produced through September 2007. No other emails have been produced other than some limited ones produced in response to Reed Taylor's Third-Party subpoena to AIA Services, AIA Insurance, CropUSA and John Taylor in *Taylor v. Bell* (discussed below). In addition, a copy of John Taylor's hard drive for his personal computer is being held by an e-discovery vendor and we have never been permitted to look at this. That has not been resolved or produced and we want that to be produced. In addition, the e-discovery vendor has a mirror image of AIA/CropUSA's server hard drive. We want to get emails from that on other parties, i.e., Aimee Gordon and other accounting and related employees. We also never received John Taylor's tax returns or personal financial information in that lawsuit. Other than some limited financial statement information or documents relating to the redemption of Reed's shares produced in 1995 and 1996 and some limited financial statements and related information produced in 2008 and 2009, there was no supplements to the foregoing, including no supplements to

2

**Exhibit - 4**

emails, journal entries, etc., and, in fact, Judge Brudie stayed general discovery in early 2009 (a stay that was never vacated) at the request of certain of your clients. We were never provided with audit information or communications with the auditors in that lawsuit. Of course, no privileged or work product documents were ever produced (something Dale is requesting here).

- ***Donna Taylor v. AIA Services, et al.*** There was never any material discovery conducted in those two lawsuits. In fact, after Judge Brudie did not resolve certain discovery disputes, i.e., my motion to compel, I suggested that we have a discovery master appointed because Donna's claims were for just over $400,000. Then, Doug Siddoway filed the motion to appoint a discovery master and Donna consented to the appointment of a discovery master (I normally would not agree to the appointment of a discovery master, but did so in these lawsuits simply because Donna only needed so much information to prove undisputable malfeasance of the over $400,000 amount owed to her). Because that was done on the eve of trial and Donna, once again, only needed so much information to show over $400,000 in damages from malfeasance, breach of fiduciary duties, and other torts, Donna did not fight the discovery issue and the discovery master did order some limited information to be produced, i.e., some check registers and copies of checks, etc. (I'm assuming you read his report). No material documents were ever produced in that lawsuit, and we were never permitted to inspect documents or records. Contrary to your assertions, there were no productions of "all emails, documents, financial statements, audits, work papers, computer runs or all federal and state tax returns. Again, to be clear, very limited of the foregoing documents were produced and certain others were not. As with Reed Taylor's case above, no tax returns, financial statements or other financial information for John Taylor was produced. No further communications between John, Connie, Beck and Cashman were produced. Again, no privileged or work product information was produced here either (something Dale is requesting here). No documents, emails (though no emails were previously produced to my recollection) or financial records were produced since the limited documents ordered produced by the discovery master in 2014.

- ***Reed Taylor v. Bell, et al.*** Unlike this case (in which your clients and the AIA entities are the defendants), Reed Taylor served third-party subpoenas to non-parties, i.e., certain of your clients and the AIA Entities. As you are aware, these documents were requested for Reed's malpractice lawsuit against the Seattle law firm and lawyers of Cairncross & Hempelmann. You are correct that the original subpoenas were quashed (a decision that I do not agree with, which was contrary to the settled case law that subpoenas should be modified rather than being quashed), but because it is a totally different standard when the documents are requested by non-parties instead of parties. As a side not, Reed never completed his appeal on the quashing of the subpoenas or otherwise address the non-compliance with the subpoenas because he later resolved his claims against Cairncross. Thus, these issues do not apply here because your clients and the AIA entities are parties to this case and this lawsuit involves derivative claims for numerous torts. Nevertheless, Reed served new significantly narrowed subpoenas. In order to facilitate to the production of the minimal documents that Reed needed for that case, Reed agreed to enter into a contract that further limited the documents that would be produced by your clients and the AIA Entities, and that agreement required Reed to pay over $30,000 to John, Ken Goods, a scanning company and the e-discovery vendor obtain the documents. Of course, your clients and the AIA Entities did not comply with the Agreement in many respects. I've attached the agreement and the letter that I sent to your predecessor Steve Wieland outlining many of the breaches of that agreement (even though it was substantially narrowed in scope even more). For example, contrary to your allegations, despite having produced an inventory sheet showing over 260 boxes of documents and the fact that we rented a U-Haul to scan and bates stamp that quantity, only 85 boxes of documents were produced to us to inspect in a someone else's storage unit when we showed up (i.e., the documents were improperly moved from where they were stored). Contrary to your assertions, we were never permitted to pick which boxes of the over 260 available; instead, we were just provided 85 boxes. Because some of those documents had also been previously produced, we still copied them to be able to establish that Reed's subpoenas were not complied with. Of the categories of documents listed in the attached stipulation (which narrowed the scope of the newer subpoenas even more), full production was never made, let alone timely made. We

were provided with an alleged copy of an electronic file that allegedly contained the electronic journal entries of the accounting software, but we were never able to access the information. As a side note, your clients remain in breach of the attached agreement (I have no knowledge of whether Reed will be taking legal action on those issues, but it would not surprise me as I would not be happy if I were him). The emails were limited to discrete issues identified in the attached agreement (though those emails were incomplete, too). Obviously, Dale Miesen will not agree to limit his discovery requests here and this lawsuit does not involve subpoenas to non-parties as they did in *Taylor v. Bell*. Thus, the same standards will not apply regarding quashing or the payment of costs (and Dale will not agree to pay your clients to produce documents). In your production in this lawsuit, you merely produced again the same documents that Reed paid for in *Taylor v. Bell*, which were limited in scope and did not even comply with the agreed limited scope (along with four additional documents later produced (tax returns and financial statements)).  As a point of clarification to your response, the paper documents were picked up in July 2017 and the limited electronic records were uploaded by your clients shortly thereafter to the e-discovery vendor. Thus, it is impossible that all 2017 information was produced (assuming that the subpoenas were not narrowed and that all responsive documents had been produced through July 2017, which was not done). In sum, the limited subpoenas in *Taylor v. Bell* were not complied with and did not include the scope of documents requested in this derivative lawsuit. Again, a sample of the lack of compliance can be seen from my attached letter to Steve Wieland.

- **_Email Communications_**. As explained above, many emails have never been produced. I have also never received any updates to emails since any were produced above and we still have email disputes dating back to the e-discovery vendor in *Taylor v. AIA Services*. I have not received all emails between your clients or involving your clients, let alone full production of such emails. I have not received copies of emails between your firm and any other attorneys or parties, including Hawley Troxell's attorneys, GemCap's attorneys, etc. I have not received all emails pertaining to AIA/CropUSA internal accounting and other matters. As explained above, limited emails were produced in *Taylor v. AIA Services* and an even more limited amount of

emails were produced in *Taylor v. Bell*, but no complete production has occurred. Thus, your assertion that "all responsive emails have been produced for the period of 2008-2017 is incorrect, including for the other reasons discussed above and below.

- ***Privilege***. I disagree that it has not been waived as to certain issues, including the waiver as to Quarles & Brady. Though I am a bit perplexed as to how your clients will assert or maintain advice of counsel defenses without producing the responsive documents and identify the advice, which is a separate basis for waiver. There are other reasons privilege does not apply, e.g., needed for the issues in this case, waiver based on fraud/crime exception, waiver based on breach of fiduciary duties since this is a derivative action, etc. Thus, we agree that the privilege issues needs to be resolved by the Court. In full disclosure, I will also be moving to compel answers and responses regarding your clients' advice of counsel defense and then will move to strike them if I don't get information. It is impossible for me to prepare for trial or for my experts to prepare certain opinions if I do not receive information on your defenses, including advice of counsel defenses. You have had months, and your clients have had years, to develop their defenses, yet I have received nothing.

- ***Advice of Counsel Defense Information***. As explained in the preceding paragraph, I have not received the proper information in response to Dale Miesen's interrogatories and requests for production. I understand that you might supplement information as discovery proceeds, but your clients have copies of virtually all information held by Hawley Troxell and Quarles & Brady and know what advice they received years ago from those law firms. In addition, if the advice of professional defense includes any other attorneys, law firms, accountants, etc., we need that information as well, and your clients have had years to develop it.

- ***Quarles & Brady Waiver***. I disagree with your assertion that the waiver for Quarles & Brady was a "limited" one. Again, we can have the court decide this issue, though I can't imagine how you will maintain the waiver is only limited when GemCap was provided all privileged documents and provided such documents to its testifying expert witnesses. The argument that the

waiver only applies to one lawsuit, but not this one, is unsupported by any authorities that I have found.

- **_Documents Involving Other Lawsuits_**. I understand that you don't have any documents from *GemCap v. Quarles & Brady*, though I disagree. I know that John prepared declarations for that lawsuit and presumably he communicated with GemCap, etc. We want all such documents. As to other lawsuits, we want all communications, documents produced by any party in discovery, deposition transcripts, deposition exhibits, trial exhibits, hearing transcripts (including the transcript of hearings relative the alleged settlement with GemCap) and all communications, including, without limitation, settlement communications. This would include the lawsuit in U.S. District Court in California known as *GemCap v. CropUSA, et al*. Mr. Miesen also requested documents and communications as to other lawsuits, including the Missouri litigation and Iowa litigation. Those are specifically listed in the requests for production.

- **_Privileged Documents in Prior Lawsuits_**. I have no way of knowing what documents have been provided to any expert witnesses in any case. However, I am aware of representation agreements, waivers and tolling agreements being provided to testifying experts in *Taylor v. AIA Services* and those experts actually submitted affidavit testimony based on those documents. Those documents were never produce and must be produced now. Their can be no assertion of privilege after documents have been provided to expert witnesses. As to your assertion that you will produce privileged documents provided to experts at the "appropriate time," you must promptly produce all documents provided to any expert, including privileged documents. Obviously, since this case has already been delayed for years and it appears that delay is the strategy for defense, I cannot allow further delays and will seek relief from the court. You can't continue to sandbag my client by holding back on document production.

- **_Billing Records_**. You have not produced all of the billing records for all legal work performed by or for your clients. At a minimum, you must produce those records, and simply redact the limited portions that actually provide any advice or represent attorney-client privilege. Thus, even if you have a

7

**Exhibit - 4**

valid argument that all of the billing entries are privileged (which they are not) and privilege has not been waived for any of the reasons discussed above, you must produce redacted copies of the billing records, which, at a minimum, must show the name of the billing party, the time expended and the cost charged, along with sufficient information for me to submit the matter to the court as to each billing record. It is not my obligation to provide you with legal authority as to why you don't have to produce the billing records, and there is a plethora of authorities that do not support your position. Obviously, if we prevail on the privilege issues discussed above, this will allow you to not have to go through some of the billing records. These billing records include those for your individual clients which were for services paid for by the corporation in any lawsuit. As you know, one of Dale Miesen's claims is that all of the funds expended by the corporations for your individual clients must be repaid to the AIA entities. Another issue is the disgorgement of all fees and costs paid to Hawley Troxell. In addition, I need billing records to establish when Richard Riley or other Hawley Troxell attorneys were providing legal services to the CropUSA Entities and AIA Entities, including for the 2001 SEC filing and 2004 Private Placement Memorandum that Mr. Riley discussed and admitted that he drafted in his recent declaration filed in this lawsuit. I need to know when legal services were provided and by who, irrespective of whether the description of certain services is redacted. Obviously, we also need to the corporate records showing how much was paid to each law firm and when, etc., so we can support our damage claims.

- ***Emails Between John Taylor and Others (including other defendants)***. As explained above, your clients have NOT "produced all emails to date."

- ***Corporate Records Such as Board Meeting Minutes/Resolutions, etc.*** As explained above, your clients have not produced all of the corporate records for board and shareholder meetings, etc., including notices of meetings, documents provided for such meetings, etc. I don't even understand how John has continued to act as the purported director and officer of the AIA entities and we have no such documents. Please note that we understand that the last shareholder meeting held for AIA Services was in 2012 and before that it was over a decade, despite demands from my clients.

**Exhibit - 4**

Nevertheless, I am assuming that there is a board resolution signed to purportedly authorize (unlawfully) the $12 million settlement with GemCap, the retaining of your firm, etc. If no such documents exist, then you need to tell us that. We also want electronic files for such resolutions, etc., i.e., the actual Word or Excel electronic files.

- **_Common Interest Privilege_**. Thanks for confirming that there is no common interest privilege. As I mentioned above, we need all communications between your clients and you and any other party to this lawsuit, i.e., communications between you and Loren Ipsen, etc.

- **_Information on Affirmative Defenses_**. As discussed above, no such information has been provided by your clients. And as explained above, after the over 8 months that you have been on the case and the years since many of the corporate actions and malfeasance has occurred, your clients need to state their defenses with specificity and produce responsive documents (and specifically identify those documents). Thus, I am not accepting the answer that your "clients have not yet determined the specifics of those defenses and will do so after the motion phase is completed." I understand that you can supplement as discovery proceeds, but that will be for information learned in the future, not information that exists now. I would point out that your clients control all of the documents so there is no reason why I don't have complete interrogatory answers describing the defenses, identifying specific document and the responsive documents produced. You are simply delaying or sandbagging my client and his experts—or both, and I will just move to compel if I need to. I will also seek to strike defenses in the future if you don't detail them and produce responsive documents.

- **_Deposition Dates_**. You have not provided deposition dates and I have requested them more than once. Obviously, I think that you agree that we need to sort through the discovery disputes before we conduct depositions, but with all of the attorneys involved, I think that we need to schedule depositions for a couple of months or so in out in the future. I'm sure that you don't want multiple depositions because documents were not produced. That said, I can't wait long because I need to get documents and deposition

transcripts to my expert witnesses, so we need to at least tentatively schedule depositions.

Thus, as explained above, you are incorrect as to what has been produced, when and in what lawsuit. Moreover, you will need to identify the specific documents from other lawsuits if you want to have them be responsive (even if I do not request that they be uploaded to me again). I don't want any issues regarding discovery request answers and responses.  As a side note, I would point out that the more your clients seek to protect Hawley Troxell will not help them and could only result in the deepest pocket being taking out of certain issues, which would not be in their benefit. I am perplexed as to why your clients seek to assist the Hawley Troxell Defendants when they are seeking to leave your clients holding the bag.

In addition to the documents discussed above and consistent with the failure to produce the documents discussed above (which I need full compliance with or we need to submit the matter to the court), I will briefly address some categories of documents requested that have not been complied with to assist you (keep in mind that since John is the person controlling the documents, we are maintaining that he must produce the documents relative to the AIA Entities, too). I'm happy to enter into a reasonable protective order for any personal tax returns, etc., but we need to get that agreed to. Please note that by addressing documents below, I am not conceding that other discrete requests for production do not need to be complied with, but, rather, I am just addressing some of the broader categories. I reserve the right to move to compel as to all requests for production and interrogatories. The following documents and information need to be provided and produced for the requested time periods (in some instances I provide more explanations):

1. Produce all corporate accounting records (including all draft and final internal and external accounting work papers, loan applications, financial statements, check registers, bank statements, loan statements, legal files (this includes non-privileged information such as court filings, etc. until the privilege issues are resolved), journal entries, tax returns, auditor work papers, audit information, etc.) for AIA Services, AIA Insurance, CropUSA Insurance Agency, CropUSA Insurance Services, Growers National, Green

Leaf, Reinsurance Partners and the other entities listed in the requests for production. Of course, we need to track where all of the money, assets and trade secrets have gone and assess any alleged loans, compensation and other distributions to your clients. These documents are at the heart of Mr. Miesen's claims.

2. Produce the all corporate minute books, board meeting notices, board meeting minutes, board meeting resolutions, shareholder meeting notices, shareholder meeting minutes, shareholder meeting resolutions and all disclosures or other documents utilized or provided for any such action for AIA Services, AIA Insurance, CropUSA Insurance Agency, CropUSA Insurance Services, Green Leaf, Reinsurance Partners, Growers National, and the other entities listed in the requests for production.

3. Produce all documents pertaining to personal tax returns, and schedules thereto, and financial statements for John Taylor. Of course, we want to know what John has, where it came from and where his compensation and money was obtained from. Tax returns tell a great deal.

4. Produce all documents that were provided to GemCap. This would include any documents provided when GemCap's auditor conducted an audit of AIA and CropUSA in 2013, before that time or since that time, as well as any documents that were provided to GemCap when it interviewed John after the alleged settlement. This would also include any documents that were provided to GemCap for any of its lawsuits, including the one against Quarles & Brady or the lawsuits filed in Missouri and Iowa.

5. Produce all documents pertaining to obligations or debts that were paid by AIA Services, AIA Insurance, CropUSA Insurance Agency or CropUSA Insurance services for John Taylor or Connie Henderson.

6. Produce all documents pertaining to any alleged conflict waivers, representation agreement, tolling agreements, engagement letters or other documents involving any litigation or representation of CropUSA Entities or AIA Entities. This would include board resolutions authorizing such representation and agreements. I'm not asking for the forgoing as it

Exhibit - 4

pertains to your firm or representation of any party in this lawsuit or the Donna Taylor consolidated lawsuits at this time.

7. Produce all documents pertaining to all settlements and the Settlement Agreement with GemCap (see Dkt. 128). This would include settlement communications and offer, transcripts of hearings, due diligence, shareholder or board resolutions purportedly authorizing the Settlement Agreement. This would include how the penalties and other components of the settlement were agreed to and allocated and all due diligence and authorizations pertaining to all settlements.

8. Produce all documents pertaining to all audits for AIA Services, AIA Insurance, CropUSA Insurance Services, and CropUSA Insurance Agency. This would include all communications, documents and opinion letters relating to such audits. For example, I have learned that Richard Riley has provided opinion letters to the auditors regarding certain matters. We need all such opinion letters as well.

9. Produce all documents that relate to any payments made to GemCap, the alleged balance of the GemCap debt and all statements and related documents pertaining to such debt.

10. Produce all documents that evidence or relate to any division or allocation of expenses between AIA and any other party or entity. For example, there is a 2009 amendment to an alleged Administrative Agreement between AIA and CropUSA that has not been produced. This request includes all internal accounting records dividing or allocating expenses, which would include salaries, benefits and all other expenses.

11. Produce all documents and communications to or involving Mel Gilbert. In case you don't know, he is the loan broker who facilitated the GemCap loan and prior loans, including the ones with Gibaltra and Lancelot.

12. Produce all documents relating to all property quitclaimed to AIA Services or AIA Insurance. This includes the properties that John or other entities he controlled (PERC) held and where transferred to AIA, including the Daman

**Exhibit - 4**

house condo, the building across the street from AIA's former headquarters, and PERC's headquarters. John testified that GemCap ordered him to do this and some of the properties were later foreclosed upon, i.e., AIA got screwed once again.

13. Produce all documents relating to any loans and/or advances and/or alleged "investments" to Pacific Empire Radio by AIA Services and/or AIA Insurance, together with the amount presently owed and the repayment(s) of any such obligations, if any.

14. Produce all documents pertaining to any credit applications, financial statements and other documents submitted to any actual or prospective lenders. This would GemCap, Syringa Bank, U.S. Bank, etc. As to John personally, the foregoing would apply as well as those submitted to other lenders such as Washington Trust Bank (PERC has a loan there) and Wells Fargo.

15. Produce all documents pertaining to the transfer of any property from 17 State Street to Jordan Taylor (John's son), including the parking lot that we recently learned was transferred to Jordan for which Jordan was not entitled to receive because it was paid for by AIA Insurance. The requests include all communications with Jordan Taylor, i.e., emails, etc.

16. Produce all documents pertaining to your clients' compensation, dividends received, directors fees, distributions, benefits, advances or loans from AIA Services, AIA Insurance, CropUSA Insurance Agency, CropUSA Insurance Services, Green Leaf, Pacific Empire Radio and the other entities listed in the discovery requests. This would include 1099s and all other tax forms provided to the recipient for any such compensation and the responsive accounting records.

17. Produce all documents pertaining to payments that John Taylor received from Hudson Insurance. Please note that, as part of the sale of assets to Hudson in 2008, John got himself some $10k monthly payments. Obviously, it is Dale's position that money should have gone to AIA.

18. Produce all documents pertaining to payments by Hudson for the acquisition of all rights, and the settlement of any litigation, pertaining to the contractual rights or other rights with Grower's National. Obviously, this money should have gone to AIA since AIA founded and funded that entity. This would also include any settlement agreements with Hudson.

19. Produce all email or other documents and communications relating to Hudson Insurance or any of their attorneys. Limited communications were produced in response to the subpoenas in *Taylor v. Bell*, but not all. This would include all payments for reimbursement of expenses and other matters (see above).

20. Produce all tax returns, and schedules thereto, for Pacific Empire Radio from 1999.

21. Produce all billing records from all attorneys, whether partially redacted or not redacted. This would include, at a minimum, the billing persons' name, time expended and charge for each billing entry (assuming that all entries were privileged). This would include, but not be limited to, billing records dating back to 1995 and include such records as Mr. Riley's work on the SEC filing in 2001, Mr. Riley's work on the 2004 Private Placement Memorandum, Universe Litigation and Settlement work, pledging of assets during Taylor v. AIA Services, the legal work for the 2006 opinion letters from Hawley Troxell and Quarles & Brady to Lancelot Investors and the other work relating to those loans, the yearly opinion letters provided to auditors, the legal work provided in Taylor v. AIA Services, the legal work provided in Donna Taylor v. AIA Services (the receiver lawsuit), the legal work provided in AIA Services v. Durant, the legal work provided in the consolidated Donna Taylor lawsuits, the legal work provided in GemCap v. CropUSA (including Crumb & Munding), the legal work provided for the failed reverse stock split, the legal work provided in the Donna Taylor consolidated lawsuits (including your statements), the legal work provided for Green Leaf, the legal work Connie Taylor Henderson purportedly did (including as to the Growers Nation/Hudson dispute), the legal work for John's purported purchase of the common shares in AIA Services purportedly held by Beck, Cashman and their friends, the legal work

provided by Quarles & Brady for the GemCap loans, the legal work provided by Robert Van Idour for the GemCap Loans, and all other legal work for the requested period of time. At a minimum, we need the redacted billing records ASAP until such time as the Court rules on any privilege issues.

22. Produce all email and other communication by and between any of your clients or any other parties relative to the subject matter of this lawsuit or other cases relating in any way to the AIA Entities. I view the categories of possible privilege here being communications with you and communications involving other attorneys in other lawsuits. As to the communications involving e attorneys representing AIA Services or AIA Insurance, I will be addressing waiver on those issues in motion(s) to compel with the court. As to communications with any of your individual clients and their individual attorneys, those communications would be subject to disclosure if there is an advice of counsel or related defense.

23. Properly respond to interrogatories, including ones requesting information on affirmative defenses or other defenses and identify and produce all responsive documents for such affirmative defenses or other defenses. I want to be very clear that, if this is not done, I will move to compel to work towards getting any affirmative defenses or other defenses stricken for failure to comply with discovery. This would include your clients' claims against Reed. Mr. Miesen needs to know everything that has happened and be provided all of the documents relative to those issues, including any emails to Reed, etc. Please note the definitions included in the discovery requests which are applicable to the interrogatories and requests for production.

24. Produce all documents pertaining to any loans for advances from Hudson Insurance, Diversified, Great American or other insurance companies (see CropUSA's financial statement notes for examples of some others). Again, this pertains to tracking down where all of the money came from and went to.

25. Produce all communications involving Quarles & Brady, including any since Quarles & Brady has ceased providing legal services. The same for Hawley Troxell and the other requested firms or attorneys. Obviously, you may assert privilege as to some items (subject to the pending disputes regarding such privilege), but that does not include non-privileged communications from being produced. For example, Steve Wieland had Doug Siddoway submit a declaration in support of his failed request for fees relative to the quashed subpoenas in Taylor v. Bell. Any communications involving that would not be privileged, assuming privilege applied anyway. By way of another example, Gatziolis testified that he has communicated with John Taylor since Quarles & Brady stopped representing any of your clients. Those communications would not be privileged. The same applies to the other attorneys and law firms listed in the discovery requests, e.g. David Risley, John Munding.

26. Produce all documents and communications pertaining to litigation. See, e.g., RFP 112-114 to AIA Insurance (there are similar ones to each of the corporate clients and John Taylor.) This would include any claims and documents submitted to Scottsdale Insurance, any documents produced or obtained in discovery in those lawsuits which have not been produced and any communications relative to those lawsuits which have not been produced.

27. Produce all documents held by Quarles & Brady. As the former client, your clients have right to seek and obtain these documents to the extent that your clients do not have them. The same for Hawley Troxell and the other requested firms or attorneys. Obviously, you may assert privilege as to some items (subject to the pending disputes regarding such privilege), but that does not prevent non-privileged documents from being produced.

28. Produce all documents pertaining to communications and legal files with Eberle Berlin. This would include any emails sent by Eberle Berlin regarding CropUSA before Hawley Troxell was engaged.

29. Produce all documents pertaining to the sale of AIA's former headquarters to Alexander Properties and the distribution of such funds. This would include any appraisals obtained prior to the sale.

30. Produce all documents regarding all transactions, loans, distributions, etc. involving AIA Services' 401(k) Profit Sharing Plan. For example, I know that John took loans from the Plan (improperly) and had the Plan pay attorneys' fees in litigation. Again, Mr. Miesen is trying to track down where the money went and came from.  This would include all payments or contributions to that Plan.

31. Produce all documents pertaining to the termination of the ESOP. Again, Mr. Miesen is asserting that was done improperly and he is seeking to restore those shares to the prior owners so that they can receive proper payment from any recoveries from this lawsuit.

32. Produce all documents pertaining to John's recent alleged amendments to the Bylaws of AIA Services and AIA Insurance. This would include the complete new bylaws and resolutions regarding such amendments. Obviously, Mr. Miesen is asserting that these amendments were improper and invalid, so we need this information.

33. Produce all documents pertaining to John's recent alleged purchase of Series A Preferred Shares in AIA Services. This includes board resolutions, copies of checks or other payment, etc.

34. To the extent that you have retained any experts or otherwise provided documents to any lay or expert witness, you need to produce all of those documents ASAP and/or promptly after providing them to the respective person or party.

35. Produce all documents that you have received from any source that have not been produced. This would include documents that you have received from Hawley Troxell, its attorneys and/or any other defendant and his/her/its attorneys, including, without limitation, GemCap.

**Exhibit - 4**

36. Produce all document relating to any cash or property contributions that your clients have made to AIA Services or AIA Insurance. For example, as discussed above, John Taylor alleges that he transferred certain property to AIA worth hundreds of thousand of dollars and AIA assumed the debts. Of course, most of those properties were later foreclosed upon or transferred leaving AIA holding the bag and John benefiting from the alleged transfer. While it is clear that AIA could not have owed John anything under these circumstances, we need the documents, including board resolutions, determinations as to value, etc.

37. Produce all documents relating to any compensation, distributions, loans or other benefits or enumeration for your clients that were derived from Pacific Empire Radio. This would include any allocations for John's salary, etc., which may have been allocated or paid by Pacific Empire Radio, any loans made by Pacific Empire Radio to John, reimbursements, etc.

38. Produce all documents and communications involving Alan Coalson. He was AIA and CropUSA's former long-term accountant.

39. Produce all documents pertaining to John's new wife's purchase of their existing home and where the funds came from to acquire and remodel it. The requests include any pre or post marital agreements and bank accounts between or involving John and Debra Hopson Taylor. Again, we are entitled to track down where the assets have gone, where the money comes from, and we know that the new home was acquired after John sold his home at Broadview.

40. Produce all documents pertaining to all loan guarantees by AIA Services and/or AIA Insurance. This would include all communications, due diligence, loan applications, financial statements, tax returns and other documents submitted for the CropUSA loans obtained from Zion's Bank, U.S. Bank, Private Bank of Minnesota, GemCap and Lancelot Investors. As an additional matter relative to the GemCap and Lancelot loans and any other relevant loan, we also want the information and communications regarding any opinion letters, i.e., Quarles and Hawley Troxell provided

opinion letters in 2006 and Quarles and Robert Van Idour provided opinion letters in 2011 and 2013.

41. Produce all documents that support your contention that relevant transactions and actions taken for AIA Services and/or AIA Insurance were properly authorized.

42. Produce all documents pertaining to communications with Reed Taylor. Obviously, you are asserting a third-party complaint against him making allegations that he was involved. Mr. Miesen needs to know how he was allegedly involved and receive all communications.

43. Irrespective of the production of the documents listed above and requested in the requests for production, I also want to inspect all of the corporate records for AIA Services, AIA Insurance, CropUSA Insurance Agency, Inc., CropUSA Insurance Services and the other entities identified in the requests for production (e.g., Green Leaf, etc.) in the manner in which they are stored.

44. As I mentioned in the opening section of this email as to matters raised in your submission to Ms. Henderson, we need the documents referenced in those sections as well (some of which have been duplicated above).

I think that the above portions of the email generally advises you of what we need and what is missing. As discussed above, there are other discrete requests for production or interrogatories addressing the above items and this email is not intended to limit the documents requested, but to simply provide more information to you. By listing the items above, I am not limiting our discovery requests to them, but merely acknowledging that a great deal of the present dispute (other than privilege) would be resolved if all of the above described responsive documents were produced.

As a side issue, it appears to me that you are relying on or delegating too much work to Vanessa—or both—relative to the discovery issues discussed above in this email. As the lead attorney, I think that you need to personally know and understand all of the issues discussed above.

Please let me know if you have any questions. I look forward to hearing from you. Again, I apologize for the delay and you may have an extra day to produce the documents.

Rod



Roderick C. Bond
Roderick Bond Law Office, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA  98004
Tel: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Website: www.roderickbond.com

This email and any attachments may be attorney-client privileged, protected as attorney work product, and/or subject to any other applicable privileges.  The unauthorized viewing or dissemination of any email or attachment is prohibited.  If you have received this email in error or it was not intended to be delivered to you, please immediately delete this email and all attachments and contact the sender at the address indicated above.  Thank you.