Jeffrey A. Thomson ISB #3380
jat@elamburke.com
Loren C. Ipsen ISB #1767
lci@elamburke.com
Joyce A. Hemmer ISB #7202
jah@elamburke.com
ELAM & BURKE, P.A.
251 East Front Street, Suite 300
P.O. Box 1539
Boise, Idaho 83701
Telephone:  (208) 343-5454
Facsimile:  (208) 384-5844

Attorneys for Defendants Hawley Troxell Ennis & Hawley LLP,
Gary D. Babbitt, D. John Ashby and Richard A. Riley

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>vs.<br><br>CONNIE TAYLOR HENDERSON, et al.<br><br>Defendants. | Case No.  1:10-cv-00404-DCN<br><br>MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO EXCLUDE TESTIMONY FROM PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT |

## I.    INTRODUCTION

The latest iteration of Richard McDermott's expert witness report, produced on November 1, 2020, is **653 pages** long, having swelled to more than three times the length of the original 181-page report dated August 5, 2019. *See* Declaration of Loren Ipsen ("Ipsen Decl."), Exh. A ("McDermott Report"). Substantively, Mr. McDermott's report is a sprawling, repetitive collection of unreliable, unhelpful, unfairly prejudicial, speculative, inappropriate and inadmissible opinions offered by a lawyer who has taken on the role of advocate and co-counsel

for Miesen and who hopes to vouch for, argue, and summarize Miesen's claims from the witness stand under the guise of purported expert opinions. The HT Defendants ask the Court to exclude Mr. McDermott's testimony at trial.

## II.      LEGAL STANDARD

Under Fed. R. Evid. 104(a): "The court must decide any preliminary question about whether a witness is qualified … or evidence is admissible." Fed. R. Evid. 104(a). It is Miesen's burden to prove by a preponderance of the evidence that Mr. McDermott's opinions are admissible. *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Courts have "broad discretion in deciding whether to admit or exclude expert testimony." *United States v. Christophe*, 833 F.2d 1296, 1300 (9th Cir. 1987).

Under Fed. R. Evid. 702, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" only if:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier
        of fact to understand the evidence or to determine a fact in issue;
    (b) the testimony is based on sufficient facts or data;
    (c) the testimony is the product of reliable principles and methods; and
    (d) the expert has reliably applied the principles and methods to the facts of the case.

In deciding the admissibility of expert testimony, the Court serves an important gatekeeping function "to ensure that the testimony is reliable and will help the trier of fact." *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997); *see also Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–49 & 158 (1999) (determining reliability "in light of the particular facts and circumstances"). "The judge is 'supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043–44 (9th Cir. 2014) (internal quotations omitted). In other words, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether

his testimony has substance such that it would be helpful to a jury." *Id.* (internal quotations omitted). The Court's gatekeeping obligation applies equally to scientific and non-scientific evidence. *See Kumho Tire*, 526 U.S. at 147-49; F.R.E. 702 advisory committee's note (a non-scientific opinion "should receive the same degree of scrutiny for reliability" as a purported scientist's opinion).

In *Daubert*, the Supreme Court listed a number of factors that a district court may consider in assessing the reliability of an expert opinion.[1] None of those factors are dispositive; some may not apply in a given context; and other factors not listed in *Daubert* may be relevant to whether an expert's testimony is sufficiently reliable and helpful. For example, the court may consider whether an expert "developed their opinions expressly for purposes of testifying," versus developing them naturally while engaged in their expertise. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995). Another proper consideration is whether the witness's opinion accounts for obvious alternative explanations or major variables. *See Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994). The court may also consider "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion." F.R.E. 702 advisory committee's note, citing *Gen. Elec. Co. v. Joiner*, 522 U.S. at 146. Similarly, if an expert claims to apply an accepted method but renders opinions that other experts in the field do not share, "the district court should be wary that the method has not been faithfully applied." *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

> [T]he trial court must scrutinize not only the principles and methods used by the expert, but also whether those principles and methods have been properly applied to the facts of

---

[1] The *Daubert* factors include: "(1) whether the expert's technique or theory can be or has been tested – that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community." F.R.E. 702 advisory committee's note.

the case [and] "any step that renders the analysis unreliable ... renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology."

F.R.E. 702 advisory committee's note.

Expert testimony that has only "scant basis in the record" or "rests on unsupported assumptions and unsound extrapolation" should be excluded. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988); *see also Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998) (stating that opinions based on "unsubstantiated and undocumented information" are not reliable and are inadmissible under *Daubert* and Rule 702). Where "unwarranted theories of law or assumptions of fact guide the expert ..., the evaluation will be set aside." *United States v. Honolulu Plantation Co.*, 182 F.2d 172, 178 (9th Cir. 1950). Further, an expert opinion is inadmissible if it "is connected to existing data only by the *ipse dixit* of the expert" or if the Court concludes "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

"The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable." F.R.E. 702 advisory committee's note. Expert testimony "may not include unsupported speculation and subjective beliefs." *Greenawalt v. Sun City W. Fire Dist.*, 23 F. App'x 650, 652 (9th Cir. 2001); *see also Diviero,* 114 F.3d at 853 (same). And a party may not introduce a speculative or conjectural assertion "simply by finding an expert who is willing to assume its correctness." *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856–57 (9th Cir. 2019) (internal citations omitted).

Courts have cautioned that expert testimony can be "powerful and quite misleading." *Daubert*, 509 U.S. at 595. Therefore, a court "weighing possible prejudice against probative force under Rule 403 ... exercises more control over experts than over lay witnesses," *id.*

(internal citation omitted), and the Court is "not required to admit expert testimony every time a party is able to make the threshold *Daubert* showing." *United States v. Hicks*, 103 F.3d 837, 847 (9th Cir. 1996). Expert testimony may be excluded under Fed. R. Evid. 403, which provides that the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See also Hicks*, 103 F.3d at 847 (stating the court may exclude testimony that would "not materially assist the trier of fact, or [would] be better served through cross-examination or a comprehensive jury instruction").

## III.  ARGUMENT

### A. Mr. McDermott should be excluded as an expert witness because he has assumed the role of an advocate, and his opinions are unreliable and inadmissible.

"An expert's role is to assist the trier of fact by providing information and explanations; the expert's role is not to be an advocate." *Haldiman v. Cont'l Cas. Co.*, No. CV-13-736, 2014 WL 12670637, at *8 (D. Ariz. Aug. 26, 2014), aff'd, 666 F. App'x 612 (9th Cir. 2016).

> Attorneys are advocates, charged with selflessly serving their client's interests. Expert witnesses, on the other hand, are employed to assist the parties in their pretrial preparation, and if called to testify, to give their unbiased opinion in order to assist the trier of fact in understanding the relevant evidence.

*Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1085–86 (C.D. Cal. 2001). "When expert witnesses become partisans, objectivity is sacrificed to the need to win." *Cacciola v. Selco Balers, Inc.*, 127 F.Supp.2d 175, 184 (E.D.N.Y. 2001) (internal citation omitted).[2]

In *Lippe v. Bairnco Corp.*, 288 B.R. 678 (S.D.N.Y. 2003), the court excluded an expert witness because the role the witness played in the case crossed the line from expert to advocate.

---

[2] This is especially true when the expert witness's compensation is contingent on the success of the claims. *See* Memorandum in Support of the Hawley Troxell Defendants' Motion to Exclude Plaintiff's Expert Witness Richard McDermott Re: Expert Contingency Fee, § III.A.

The *Lippe* court noted that the expert, who (like Mr. McDermott) was a law professor, "carried

out the traditional functions of a lawyer" in the case, such as providing legal advice and helping

to anticipate, identify, evaluate and/or develop legal theories, legal arguments, facts necessary to

support claims, defenses to the claims, responses to the defenses, and witness cross-examination

topics. *Id.* at 584. The court found it would be improper to allow the witness to testify because:

> He functioned not just as an expert witness providing information, but he carried on the
> traditional functions of a lawyer-advocate.... [He] saw himself as "counsel" to plaintiffs'
> lawyers and he acted in a completely partisan manner. It would be most inappropriate to
> permit him now to testify as an expert witness about the very matters he helped develop
> as a lawyer-advocate.

*Id.* at 688.

The *Lippe* court also noted that these circumstances compounded another significant

admissibility problem with the expert's intended testimony – that "he would be giving, in

essence, a summation from the witness stand." *Id.* The court explained that:

> [The expert's] report and deposition testimony make clear [that he] was going to do his
> best to persuade the jury that the 'business purpose' of the transactions in question was an
> improper one – that defendants' "real purpose," their true motivation, in engaging in the
> transactions was to hide the assets from asbestos creditors. Plaintiffs envisioned that [the
> expert] would testify to and summarize the relevant facts (as to which he had no personal
> knowledge) and then opine—or, more accurately, argue—that defendants were intending
> to defraud asbestos claimants by engaging in fraudulent transactions. But this is what a
> lawyer does in his or her summation to the jury. This is not the function of an expert
> witness. [The expert's] views as to the credibility of defendants' witnesses and
> defendants' "real" motivations are simply not relevant.

*Id.* The *Lippe* court rejected the plaintiffs' attempt to salvage allegedly proper portions of the

expert's opinions (which were set forth in his 129-page report, as well as his deposition

testimony) because the court did not believe the expert would or could restrict his trial testimony

to permissible areas. *Id.* The court reasoned that, given the expert witness's role in the case and

the focus and substance of the opinions he disclosed, the court did not believe that the expert

could "now sanitize from any testimony his views as to defendants' motivations and the

credibility of their witnesses" or "testify with the detachment and independence that one would expect from an expert witness offering views as a professional." *Id.*

The court in *GST Telecom., Inc. v. Irwin*, 192 F.R.D. 109, 110 (S.D.N.Y. 2000), reached a similar result. That case (like the present case) involved the business judgment of a corporate board and claims of legal malpractice asserted against corporate attorneys "for failing to overrule the Board of Directors, whom the lawyers served, by failing to restrain the votes and directions of the Board." *Id.* After noting that such claims against the corporate attorneys were misguided, and that the plaintiffs' experts "furnish[ed] assumptions and conclusions disregarding the authority and supremacy of the Board in order to opine malpractice of the attorneys,"[3] the court excluded the testimony of the plaintiffs' experts for invading the province of the court and jury and failing to meet the admissibility requirements of Rule 702. The court explained:

> It is evident that the contentious advocacy of the experts – illustrated by conclusions on the credibility of explanations regarding the business judgment of the board of directors, its officers and attorneys, in clearly expressed, biased viewpoints – do little to aid the triers of fact on the underlying transactions.

*Id.* at 110. The court further observed that:

> A fair reading and appraisal of the animated assessments of the experts suggests it would be virtually impossible for them to put aside their expressed previous judgments and render judgment simply on the corporate and professional conduct involved and its credibility and conformity with standards described by them. Testimony from an expert, predicated on "subjective belief" and "unsupported [factual] speculation" violates the Supreme Court's directions for expert testimony in *Daubert* ....

*Id.* at 111.

Like the experts in *Lippe* and *GST Telecom.*, Mr. McDermott should not be allowed to testify as an expert at trial because he has assumed the role of an advocate, in reality functioning

---

[3] Similarly, in this case, McDermott's opinions against the HT Defendants are based on arguments that they breached their duties to AIA by failing to control or remove the directors, despite clear Idaho law stating that the attorney-client relationship "'is one of agency' in which the client is the principal and the attorney is the agent." *Taylor v. McNichols*, 149 Idaho 826, 844, 243 P.3d 642, 660 (2010) (internal citations omitted).

as Mr. Bond's co-counsel and litigation strategy consultant. Mr. McDermott has been instrumental to Miesen and Mr. Bond in identifying and developing legal arguments and theories, anticipating and preparing rebuttals to defenses, and dealing with evidentiary issues. Tellingly, Mr. McDermott directly advocated for Miesen through the declarations he has filed in this case, and his report is written as a legal advocacy memorandum embodying the entire theory, basis, and strategy of Miesen's claims, complete with legal arguments and opinions touching upon all aspects of this litigation, including interpretation of allegedly applicable law, viability of claims, damage theories and availability of remedies (some of which are not even alleged in Miesen's complaint), discovery matters, evidentiary issues, burdens of proof, rebuttal of defenses, witness credibility and legal conclusions. Mr. McDermott intends to offer an improper and unreliable narrative of subjective, partisanship-skewed assessments of witnesses and evidence and legal conclusions couched as expert opinions. Any legitimate expert witness testimony he might offer is so badly tainted by advocacy that it cannot be "sanitized" (using the *Lippe* court's term) for jury consumption. Under *Daubert/Kumho Tire* and Rules 702 and 403, Mr. McDermott should not be permitted to offer his opinions to the jury. These issues are further explained below.

### a. Mr. McDermott functions and views himself as an advocate in this litigation.

It appears that Mr. McDermott first became involved in litigation relating to issues raised in this case when Miesen's counsel Mr. Bond, who was then representing Reed Taylor, retained Mr. McDermott in August 2012 as an expert witness regarding third party opinion practice in *Reed Taylor v. Richard Riley, et al.*, Ada County Case No. CV-OC-2009-18868. *See* Ipsen Decl. ¶ 7. Since then, Mr. Bond has retained Mr. McDermott in at least three more cases, including this one, involving AIA's shareholders or creditors. *Id.* In this case, Mr. McDermott's opinions have

ballooned to cover all claims against all defendants, including directors, outside counsel, and a lender/creditor, even though he lacks experience in the relevant fields. *See, inter alia,* Ipsen Decl., Exh. B ("McDermott Depo") at 6:18-30:4; 35:16-40:17; 334:7-338:5; 360:24-361:8 (stating his "specialized knowledge" is his "knowledge as a lawyer in drawing inferences and conclusions from a set of facts," *i.e.,* his ability to draw legal conclusions that are inadmissible).[4]

What Mr. McDermott lacks in any apparent qualification to render the range of opinions he has disclosed, he seems to be making up for in eagerness to assist Mr. Bond, to whom Mr. McDermott has shown surprising professional devotion. In his deposition, Mr. McDermott testified to having unflinching trust in Mr. Bond. He said, "I have no reason to doubt any statement that comes from Rod Bond." McDermott Depo at 456:2-470:24-25; *see also* McDermott Report at n. 1965 (stating he is "certain" that Mr. Bond has given him all of the information he needs to express his opinions). Mr. McDermott explained that his relationship with Mr. Bond is "as trustworthy a relationship as I could imagine having with someone." *Id.* at 58:11-12. In fact, Mr. McDermott describes his relationship with Mr. Bond as "so satisfactory and of such a – of such a quality, [that Mr. McDermott] had no need to be concerned about retainers or sending periodic bills or anything," which has resulted in the accrual of a six-figure expert witness contingency fee generated over the course of fifteen months that has not been billed to or paid by Mr. Bond. McDermott Depo at 57:24-58:2; 62:5-10. (Mr. McDermott's self-described "unofficial" and "unorthodox" financial relationship with Mr. Bond is discussed in more detail in the HT Defendants' Motion to Exclude Plaintiff's Expert Witness Richard McDermott Re: Expert Contingency Fee.) Mr. McDermott even took an opportunity during his

---

[4] *See Kaufman v. Pfizer Pharm., Inc.*, No. 1:02-CV-22692, 2011 WL 7659333, at *9 (S.D. Fla. Aug. 4, 2011) (excluding expert's opinions as unreliable where the expert "generally takes a collection of facts, imputes [defendants'] motive and knowledge to those facts, and draws unsupported conclusions" unrelated to her experience); *Highland Capital Mgmt., L.P. v. Schneider*, 379 F.Supp.2d 461, 469 (S.D.N.Y. 2005) (expert may not testify "for the purpose of constructing a factual narrative based upon record evidence").

deposition to compliment Mr. Bond's performance in this and related cases, stating that under the circumstances he believes Mr. Bond is doing "extremely well" in his litigation efforts,[5] McDermott Depo at 529:23-532:3, and that this lawsuit would not have been necessary if the HT Defendants had been "as diligent and conscientious as Mr. Bond." McDermott Report at 629.

In addition to viewing Mr. Bond as a close and trusted colleague, Mr. McDermott has directly and significantly assisted Mr. Bond in the prosecution of this action, taking an active advocacy role in developing pleadings, discovery and arguments to the Court on procedural and discovery motions. For example, Mr. McDermott's unusually deep involvement in discovery includes traveling from his home in New York to Chicago and also to Boise in 2019 to personally attend four depositions with Mr. Bond. *See* Ipsen Decl., Exh. C; *see also* Dkt. 812-2. Mr. McDermott has also reviewed all motions and other filings in this case as the matter has progressed. *See* Dkt. 403-2 ¶ 22; Dkt. 783-2 ¶ 40; *see also* McDermott Report at § III(a) (listing information reviewed). He personally engaged in the prosecution of the case by filing a number of so-called declarations that were, in substance, actually supplemental legal briefs that contained recitations of the case's procedural history, citations to authority, legal arguments, requests for relief from the Court, and other elements appropriate only for legal advocacy and briefing, and inappropriate for expert testimony. *See* Dkts. 194-6; 403-2; 419-16; 493-2; 758-2; 783-2; 829-1; 838-3. Examples include the following:

*Example 1:* Mr. McDermott assisted Mr. Bond's effort to obtain the Court's leave to file the Third Amended Complaint ("TAC") by submitting a declaration to ensure "the Court understands that the causes of action and damages at issue in this lawsuit are substantiated." Dkt.

---

[5] McDermott vouches for Mr. Bond's ethics and ability, seemingly unconcerned that the Idaho Supreme Court concluded in 2012 that Mr. Bond pursued a lawsuit against Hawley Troxell "frivolously, unreasonably, and without foundation," filed conclusory claims with insufficient factual allegations that also demonstrated "an often-incorrect understanding of the law," "ignored well-established Idaho precedent," and pursued an appeal "spuriously and without foundation, for harassment purposes only." *Taylor*, 149 Idaho at 844 & 848, 243 P.3d at 660 & 664.

194-6 ¶ 24. To that end, Mr. McDermott argued that the letters Miesen relies upon for statutory standing satisfy Idaho Code § 30-1-742's derivative demand prerequisites to filing suit, accused John Taylor of making disingenuous arguments, inferred that John Taylor knew the basis for the claims listed in the derivative demand letters because he was involved in the alleged misconduct, stated that the Controlling AIA Defendants acted in bad faith and had conflicts of interest that rendered the business judgment defense inapplicable in this case, and opined that the length of the TAC was appropriate and necessary to cover the relevant history and claims. Dkt. 194-6 ¶¶ 21-23. As in *Lippe* and *GST Telecom.*, these declarations are inappropriate contentious advocacy and animated assessments relating to credibility and motivations of witness. These are arguments properly asserted by litigation counsel, not an expert witness.

*Example 2:* Mr. McDermott supported Mr. Bond's motion to continue the HT Defendants' motion for summary judgment. Dkt. 403-2. In his declaration, he stated he was familiar with the parties' discovery disputes regarding privilege, presumed to instruct the Court that the "attorney-client privilege is generally always waived" when a client sues an attorney, and argued it would be "unfair" to deny Miesen access to AIA's attorney-client communications. Dkt. 403-2 ¶ 26.

*Example 3:* Mr. McDermott supported Mr. Bond's effort to compel discovery by filing a declaration in which he argued that John Taylor could not assert privilege and work product protections, the Controlling AIA Defendants' knowledge could not be imputed to AIA due to alleged conflicts of interest and therefore as a matter of law AIA had not discovered allegedly unlawful activities and fraud, he needed additional discovery to "rebut certain affirmative defenses asserted by the defendants," the conflict waiver and joint defense agreements (which were reviewed *in camera* and approved by Judge Brudie in the *Reed Taylor* case) "are void and

of no legal force or effect," it was "grossly unfair" for GemCap to have information while denying it to Miesen, and the Defendants committed fraud, conspired with or aided and abetted each other, breached duties, and acted unlawfully. Dkt. 419-16 ¶¶ 34-40, 44 & 47 (footnotes omitted); *see also id.* at n. 1. He also "reserve[d] the right" to raise the crime/fraud exception to privilege, opined regarding the scope of John Taylor's privilege waiver, and made a myriad of other conclusory arguments regarding his interpretation of the law and AIA's governing documents, all with the goal of persuading the Court to adopt Miesen's position on a discovery motion addressing privilege and work product protections. *Id.* Mr. McDermott's role here was clearly as an advocate and is in no manner helpful to the trier of fact.

*Example 4:* Mr. McDermott opposed the HT Defendants' motion to modify Discovery Master Order No. 1 regarding categorical privilege logs, arguing that such logs are inappropriate because they do not provide sufficient information to allow Mr. McDermott to assess "whether privilege applies or has been waived" and "whether any disputed documents should be submitted to the Discovery Master or the Court for an *in camera* review." Dkt. 493-2 ¶ 4.

*Example 5:* In a declaration supporting Miesen's motion to modify the scheduling order to extend his rebuttal expert opinion disclosure deadline, Mr. McDermott took an adversarial stance and argued the procedural history of discovery. *See* Dkt. 758-2 ¶ 4.

*Example 6:* Mr. McDermott submitted a 50-page legal brief masquerading as a declaration to support Miesen's motion to compel. It contains a procedural history of this case, citations to legal authority, and legal arguments regarding his views on the fairness of privilege application, general counsel's scope of representation, the case of *Taylor v. Bell*, 185 Wash. App. 270, 340 P.3d 951 (2014), the adverse interest exception, selective and subject matter waivers of privilege, prejudice to Miesen, etc. Dkt. 783-2 ¶¶ 44-52, 54, 61 & 72-73.

Mr. McDermott's declarations even directly petitioned the Court for procedural concessions and discovery orders as if he were plaintiff's counsel. *See* Dkt. 403-2 ¶ 29 (asking for a continuance of other witnesses' depositions so he could personally attend them); Dkt. 783-2 ¶ 77 (asking for additional time to prepare his report); Dkt. 829-1 ¶ 8 (same).

Mr. McDermott has also expressly stated his belief that his role in this case is to secure relief for Miesen. Mr. McDermott declared he needed to receive additional information in discovery "*[i]n order for me and Mr. Miesen to fully and fairly present his claims.*" Dkt. 783-2 ¶ 60 (emphasis added). Mr. McDermott saw it as his purpose to make AIA whole through successful prosecution of Miesen's claims. He declared that "[t]he successful prosecution of Miesen's claims in this Lawsuit is critical to making the AIA Corporations partially whole," and "Miesen's claims in this Lawsuit are the last hope of those former employees of ever receiving any payment for their retirement funds and the innocent common shareholders of ever receiving any dividends or distributions for their common shares." Dkt. 783-2 ¶ 56; *see also* Dkt. 783-2 ¶ 56 (similarly arguing that the Court should compel Defendants to produce documents "so that [Miesen] and I are able to fully and fairly consider the information … in an effort to make the AIA Corporations whole, especially when those corporations have been decimated"). In another declaration in support of a motion to compel, Mr. McDermott vouched that "Miesen's claims are meritorious (i.e., are colorable), not being pursued for any improper or unlawful purposes, and fully supported by the evidence and authorities." Dkt. 783-2 ¶ 55. He testified in his deposition that "[t]he opinions that I'm giving overall are quite favorable to AIA corporations, which they deserve." McDermott Depo at 296:5-7. Mr. McDermott also revealed that he sees himself as a type of legal consultant or advisor to Mr. Bond with respect to how to prosecute this action. For example, he declared that he had "consulted with Roderick Bond, including as to matters relative

to the discovery disputes," and that he was submitting the declaration "to further substantiate the Plaintiff's claims for purposes of showing good cause" for the Court to grant Miesen's motion to compel. Dkt. 419-16 ¶¶ 24-25.

Mr. McDermott's role as an advocate and as *de facto* co-counsel for Miesen in this litigation is further illustrated in his expert witness report. Mr. McDermott claims to have worked full-time for 15 months (between August 2019 and November 2020) working on this case and developing his opinions, including more than two weeks spent with Mr. Bond in person to work on the report together. McDermott Depo at 61:23-62:17; Change Sheet re: 304:9. Ultimately, Mr. Bond and Mr. McDermott co-wrote the 653-page report, with Mr. Bond having typed as much as half of it. McDermott Depo at 305:11-18. Mr. Bond's heavy involvement in the report is not surprising given that the tone, style and phraseology bear a remarkable resemblance to Mr. Bond's briefing. In any event, Mr. McDermott signed the report and adopted it as his own opinions. *See* McDermott Report; McDermott Depo at 344:19-20 (stating "[t]he opinions that I express are set forth in my report"); *see also id.* at 30:5-18; 31:7-8; 71:18-19; 94:14; 258:16; 290:15-16; 312:22-24; 318:19-21; 326:1-10; 329:22-23; 339:1-4 (testifying, when asked about his opinions, that the report "speaks for itself"). In the report, Mr. McDermott fails to restrict himself to proper subjects of expert witness opinion, and instead has approached the report as an attorney-advocate by laying out a roadmap of how he believes this litigation should be conducted by the parties and the Court, followed by his subjective interpretation of the evidence and his legal conclusions that the Defendants breached their duties and are liable for Miesen's alleged damages. *See* McDermott Report. His report comments on virtually every legal and evidentiary issue likely to unfold before and during trial, including his opinions regarding the law the Court should apply and its interpretation, the merit and viability of claims and defenses, interpretation

of evidence, legal issues such as statute of limitations tolling, the conduct of discovery in this case, legal conclusions the jury should reach, and widespread witness credibility assessments (which are further discussed in the following section of this Memorandum). This report is a legal memorandum prepared by an advocate, not the report of an expert witness assisting the jury.

### b. If permitted to testify, Mr. McDermott will give an improper summation of Miesen's claims, akin to a closing argument, from the witness stand.

Mr. McDermott's partisanship has often been on prominent display through his results-oriented approach and his propensity to indulge in and rely upon speculation and his own witness credibility assessments that unfairly frame the Defendants in a poor light.

### i. Mr. McDermott has employed a partisan, results-oriented approach to the development and expression of his opinions.

The first opinion Mr. McDermott disclosed in this case more than four years ago was the hyperbolic statement that "[i]n all my years of practice and experience, I have never seen such wide-spread corporate malfeasance and inappropriate conduct as was committed by the defendants in this lawsuit and/or covered up by them ...." Dkt. 194-6 ¶ 21. Since making that statement, he has consistently demonstrated that he does not view the case objectively and, instead, seeks to support his preconceived notions of liability. For example, he stated his belief that evidence he had not obtained and had never reviewed would "likely further support," "likely confirm," "likely establish" and "likely reveal" information supporting the claims against the HT Defendants. Dkt. 403-2 ¶ 28.a.-k. Similarly, he later argued in a declaration that he needed to review privileged and work product documents "in order to further establish" how the HT Defendants had breached their duties and committed torts. Dkt. 783-2 ¶ 59. In the same breath that Mr. McDermott stated he needed access to certain information to enable him to "develop, formulate, and articulate definitive opinions" regarding Miesen's claims, he incorporated all 181 paragraphs of factual *allegations* set forth in Miesen's Third Amended Complaint "*as support*

*for [his] opinions.*" Dkt. 419-16 ¶¶ 31-32 (emphasis added). Given that this is the way Mr. McDermott chose to operate as a purported expert witness, it was not surprising when he later engaged in speculation and drew improper inferences to reach the ill-conceived opinion that because the HT Defendants asserted privilege and work product protections, it appeared to be a "foregone conclusion" that the documents are "problematic" for their defenses, and that if the HT Defendants "have nothing to hide, they would have readily disclosed all of the privilege and work product information to Miesen because they would want him and this Court to know that they had nothing to hide." Dkt. 783-2 at 62-63; *see also id.* at ¶ 61 (similarly speculating that the HT Defendants would have disclosed privileged billing records if they "truly believed that there was a limited scope of representation or that they had not served as general counsel," and their continued withholding "suggests that they are concealing relevant information that does not support the existence of an alleged limited scope of representation").[6]

### ii. Mr. McDermott's improper assumptions and assessments regarding the parties' intent, motive, knowledge, state of mind and credibility should be excluded, along with any opinions tainted by them.

"Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind." *Siring v. Or. State Bd. of Higher Educ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013).

> Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case. The jury is sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from the evidence, and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury.

*Id.* (citing additional cases); *see also United States v. Idaho Cty. Light & Power Coop. Ass'n, Inc.*, No. 3:17-CV-00391-CWD, 2020 WL 1105091, at *13 (D. Idaho Mar. 6, 2020) (citing D. Nev. case that held expert's opinion would not assist the trier of facts to determine defendants'

---

[6] Not only is this opinion improper intent testimony and an inadmissible comment on an assertion of privilege, but McDermott fails to account for the court's order defining the HT Defendants' permissible disclosures. *See* Dkt. 466.

intent); *Oracle Am., Inc. v. HP Enter. Co.*, No. 16-CV-01393-JST, 2018 WL 6511146, at *3 (N.D. Cal. Dec. 11, 2018) (an expert "may not opine about why any person in this case took or did not take a particular action or made or did not make a particular decision"); *Lippe*, 288 B.R. at 687 (stating an expert's opinions are irrelevant and inadmissible under Rule 702 if he "is offering a personal evaluation of the testimony and credibility of others or the motivations of the parties"); *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 565 (11th Cir. 1998) (excluding expert's "characterizations of documentary evidence as reflective of collusion, and his characterizations of particular bids as 'signals,'" because the jury was capable of determining whether to draw such conclusions without expert assistance).

Expert witnesses may not comment on the credibility of witnesses or offer expert opinions that are entrenched in or based upon their own assessments of witness credibility.

> [E]xpert witnesses may not offer opinions on relevant events based on their personal assessment of the credibility of another witness's testimony. The credibility of witnesses is exclusively for the determination by the jury, and witnesses may not opine as to the credibility of the testimony of other witnesses at the trial.

*United States v. Scop*, 846 F.2d 135, 142 (2d Cir.), on reh'g, 856 F.2d 5 (2d Cir. 1988); *see also United States v. Rahm*, 993 F.2d 1405, 1413 (9th Cir. 1993) (stating "expert testimony to bolster or impugn the credibility of a witness is properly excluded"). In *Scop*, the court affirmed the exclusion of an expert witness who revealed on cross-examination that his "opinions were based on his positive assessment of the trustworthiness and accuracy of the testimony of the government's witnesses." *Id.* The *Scop* court explained its decision as follows:

> Our objection to testimony on credibility is not limited, however, to the prejudicial effect such testimony may have on the jury. Rather, we believe that such testimony not only should be excluded as overly prejudicial but also renders inadmissible any secondary opinion based upon it. Our holding, therefore, is that witness A may not offer an opinion as to relevant facts based on A's assessment of the trustworthiness or accuracy of witness B where B's credibility is an issue to be determined by the trier of fact. Were we to rule otherwise, triers of fact would be called upon either to evaluate opinion testimony in

ignorance of an important foundation for that opinion or to hear testimony that is otherwise inadmissible and highly prejudicial.

*Id.* Although an expert may base their opinion on inadmissible evidence, Fed. R. Evid. 703 "in no way purports to allow witnesses to assess the trustworthiness or accuracy of testimony given in the same case or to offer opinions based on such an assessment." *Id.*

Similarly, the Ninth Circuit has held that witness credibility is an issue for the jury, and expert testimony may not "improperly buttress" or "bolster" another witness's credibility. *United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985), overruled on other grounds by *United States v. Morales*, 108 F.3d 1031, 1035 n. 1 (9th Cir.1997). The *Binder* court excluded expert testimony where "[t]he jury in effect was impermissibly being asked to accept an expert's determination that ... particular witnesses were truthful." *Id.*; *see also United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991) (excluding expert testimony regarding the reasonableness of the defendant's subjective belief because it would confuse rather than help the jury); *United States v. Antone*, 412 F. App'x 10, 11 (9th Cir. 2011) (excluding expert testimony regarding false confessions that was reliable under *Daubert*, but risked usurping the jury's determination of witness credibility).

Mr. McDermott's descriptions of the "facts" of the case and the bases and contents of his opinions are replete with his personal assessments of the parties' intent, knowledge, state of mind, motives, and credibility. Presented here are merely a few of Mr. McDermott's numerous improper opinions.[7] *Example 1:* Mr. McDermott stated "there is a serious question as to [Mr. Riley's] credibility." McDermott Report at 608. *Example 2:* Mr. McDermott stated "there is no doubt that [the HT Defendants'] primary concern was John Taylor, whose interests they were most concerned in protecting." McDermott Report at n. 1689. *Example 3:* Mr. McDermott stated the HT Defendants' "engagement letters and certain other communications were nothing more

---

[7] Please see Ipsen Decl. ¶ 8, for additional examples.

MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO EXCLUDE TESTIMONY FROM PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT - 18

than a futile and ineffective effort to limit their responsibilities after the fact and disingenuously communicating with boards." McDermott Report at 628. *Example 4:* In contrast, Mr. McDermott opines favorably about the motives and credibility of witnesses he views as friendly to Miesen's case, stating for example that "Moran is an ethical attorney." McDermott Report at 566.

As illustrated by this record, Mr. McDermott, a lawyer and law professor who presumably should know the rules of evidence applicable to his testimony, has demonstrated time and again in his reports, deposition testimony, and declarations that he is incapable of following basic and vitally important evidentiary rules. Given the prevalence of his improper intent and credibility assessments and the confidence he places in his own ability to determine the "true facts,"[8] he is seemingly unable to recognize an improper attribution of motive, intent, credibility, or similar speculation and improper basis for his opinions, versus a proper assumption for an expert. Mr. McDermott's approach has consistently been one of partisanship and contentious advocacy unsuitable for an expert, and his determinations regarding witness credibility/truthfulness and the believability of evidence go to the root and substance of his opinions, which in turn address core issues pertaining to liability and damages in this litigation. His improper assessments and speculation are so intertwined with his opinions that he would not possibly be able to set aside and ignore those foundations of his testimony when he steps onto the witness stand at trial. Under these circumstances, a ruling prohibiting Mr. McDermott from offering inadmissible testimony at trial would be wholly ineffective. It further begs the question of what, after excluding his improper interpretations of evidence and the opinions based on those improper foundations, would be left for Mr. McDermott to testify about at trial? Like the

---

[8] McDermott has no personal knowledge of the facts of this case (McDermott Depo at 123:4-124:9), but he has adopted the allegations of Miesen's complaint as truth and views his own report as a thorough and accurate factual authority. *See* McDermott Depo at 274:8-277:19; *see also* McDermott Report at 567 (stating Miesen's claims against the HT Defendants "do not rest [on] any 'assumption,' but are grounded on the factual predicates therefor as detailed extensively in this Report").

expert's opinions that were excluded in *Lippe* and *GST Telecom.*, Mr. McDermott's opinions cannot be sufficiently scrubbed of his improper and partisan assessments, witness credibility determinations, and subjective beliefs regarding the evidence to render his testimony helpful to the jury. Nothing short of excluding Mr. McDermott as a witness will adequately protect the trial process and the defendants in this case.

## IV.    CONCLUSION

Mr. McDermott has stepped far beyond the bounds of acceptable expert witness testimony, and his opinions are inextricably rooted in and intertwined with his role as a zealous advocate for Miesen's case. Allowing Mr. McDermott to testify would be the equivalent of putting plaintiff's counsel on the witness stand. Mr. McDermott should not be allowed to don the robe of an expert, sit in the witness chair, and advocate to the jury by arguing, summarizing, and endorsing Miesen's theories of the case. That role is reserved for counsel in closing argument, and the integrity and fairness of a jury trial hinges on confining unabashed advocacy to attorney-presented closing argument. When an expert becomes essentially no more than a mouthpiece for plaintiff's counsel, witness exclusion is warranted, if not required. In this case, it is especially important that the Court prevent Mr. McDermott's testimony from serving as a proxy for plaintiff's counsel's arguments because plaintiff's counsel here, Mr. Bond, has been the driving force behind more than a decade of litigation relating to the AIA Corporations and years ago proclaimed himself to be a "star witness" against the HT Defendants with respect to claims he is now pursuing against them in this case.[9] For the reasons stated above, the HT Defendants respectfully request that the Court exclude Mr. McDermott's testimony from trial.

---

[9] As counsel for Reed Taylor in the underling *Reed Taylor* case, Mr. Bond accused the HT Defendants (his opposing counsel at the time) of the same wrongdoing Miesen eventually alleged in this case, including conflicts of interest, ethical breaches, aiding and abetting, and failing to take action against the Controlling AIA Defendants. When Mr. Bond was threatening to file a motion to disqualify the HT Defendants as defense counsel in the *Reed Taylor* case,

MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO
EXCLUDE TESTIMONY FROM PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT - 20

DATED this _19_ day of January, 2021.

ELAM & BURKE, P.A.

By: _Loren C. Ipsen_

Loren C. Ipsen, Of the Firm
Joyce A. Hemmer, Of the Firm
Attorneys for Defendants Hawley Troxell
Ennis & Hawley LLP, Gary D. Babbitt,
D. John Ashby, and Richard A. Riley

## CERTIFICATE OF SERVICE

I hereby certify that on this _19_ day of January, 2021, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons via email:

| | |
|---|---|
| Roderick C. Bond<br>rod@roderickbond.com<br>*Attorney for Plaintiff* | Daniel L. Glynn<br>dglynn@idalaw.com<br>*Attorneys for Michael W. Cashman, Sr., R.*<br>*John Taylor, James Beck, Connie Taylor*<br>*Henderson, Crop USA Insurance Services,*<br>*LLC and Crop USA Insurance Agency, Inc.* |
| Alyson A. Foster<br>alyson@dempseyfoster.com<br>William E. Adams<br>bill@weadamslaw.com<br>*Attorneys for Intervenor GemCap Lending I,*<br>*LLC* | Michael S. Bissell<br>mbissell@campbell-bissell.com<br>Tyler S. Waite<br>twaite@campbell-bissell.com<br>*Attorneys for Reed J. Taylor* |

_Loren C. Ipsen_

Loren C. Ipsen

---

Mr. Bond proclaimed that he would be a "star witness" against the HT Defendants as to those claims. Ipsen Decl., Exh. D. After losing his motion to disqualify the HT Defendants in the *Reed Taylor* case – the judge found "no violation of the ethical rules, the attorneys and law firms having acted within those rules by fully informing their clients regarding possible conflicts of interest, having obtained written waivers of those conflicts and having preserved any and all claims that may exist between the various Defendants," Ipsen Decl., Exh. E – Mr. Bond continued his misguided crusade against the HT Defendants in *Reed Taylor v. Gary Babbitt, et al.*, Nez Perce County Case No. CV-2008-1765 (the HT Defendants won their motion to dismiss and the appeal; fees and costs were assessed against Reed Taylor), *Reed Taylor v. Richard Riley, et al.*, Ada County Case No. CV-OC-2009-18868 (the HT Defendants won summary judgment and the appeal; fees and costs were assessed against Reed Taylor), and then again when he appeared in this case as counsel for Miesen.

MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO EXCLUDE TESTIMONY FROM PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT - 21