Jeffrey A. Thomson ISB #3380
jat@elamburke.com
Loren C. Ipsen ISB #1767
lci@elamburke.com
Joyce A. Hemmer ISB #7202
jah@elamburke.com
ELAM & BURKE, P.A.
251 East Front Street, Suite 300
P.O. Box 1539
Boise, Idaho 83701
Telephone: (208) 343-5454
Facsimile: (208) 384-5844

Attorneys for Defendants Hawley Troxell Ennis & Hawley LLP,
Gary D. Babbitt, D. John Ashby and Richard A. Riley

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>vs.<br><br>CONNIE TAYLOR HENDERSON, et al.<br><br>Defendants. | Case No. 1:10-cv-00404-DCN<br><br>MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT RE: EXPERT CONTINGENCY FEE |

Defendants Hawley Troxell Ennis & Hawley LLP, Gary D. Babbitt, D. John Ashby, and

Richard A. Riley (collectively, "HT Defendants"), by and through their counsel of record, Elam

& Burke, P.A., submit this Memorandum in Support of their Motion in to Exclude Plaintiff's

Expert Witness Richard McDermott Re: Expert Contingency Fee as follows:

MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO
EXCLUDE PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT RE: EXPERT
CONTINGENCY FEE - 1

## I.    INTRODUCTION

It was discovered during the deposition of Miesen's expert witness, Richard McDermott, that Mr. McDermott is not actually charging Miesen or his attorney, Roderick Bond, on the hour and rate basis that Mr. McDermott disclosed in his expert witness report. Nor has Mr. McDermott sent bills to or received regular payments from Mr. Bond for his work in this case. Rather, Mr. McDermott testified that he has accrued an estimated $100,000.00 in earned but unpaid expert witness fees for his work on this matter, including his purported full-time devotion to this case from at least August 2019 until the disclosure of the latest iteration of his report on November 1, 2020. Significantly, if Mr. McDermott's fee is calculated based on the rate of $350.00 per hour that he represented in his expert witness report, his accrued fees for the same time period total more than $700,000.00. Mr. McDermott testified that, at the conclusion of this matter, he will render a bill based on his subjective estimation of the value of his work.

In the meantime, Mr. Bond (who is representing Miesen on a contingency fee basis) has indicated by his representations and actions before this Court that he cannot now pay such a significant expense, and neither can Miesen. As a result, Mr. McDermott's self-described "unofficial" and "unorthodox" fee arrangement with Mr. Bond amounts to an impermissible *de facto*, if not explicit, contingency fee agreement, and Mr. McDermott has developed and disclosed hundreds upon hundreds of pages of purported expert witness opinions and testified at his deposition while having a significant financial stake in the outcome of this case.

For these reasons, as explained in further detail below, the HT Defendants request that the Court enter an order prohibiting Mr. McDermott from testifying at trial pursuant to Fed. R. Civ. P. 26(a)(2)(B)(vi) and 37(c)(1), Dist. Idaho Loc. Civ. R. 83.5(a), Idaho Rule of Professional Conduct

3.4(b), and the Court's inherent power to manage the trial in a fair and orderly manner and to safeguard the integrity of the legal process, as well as Fed. R. Evid. 104(a) and 403.

## II. LEGAL STANDARD

Courts have "broad discretion in deciding whether to admit or exclude expert testimony." *United States v. Christophe*, 833 F.2d 1296, 1300 (9th Cir. 1987).

Federal Rules of Civil Procedure: Under Fed. R. Civ. P. 37(c)(1),[1] the Court may exclude expert witness testimony if the expert witness was not disclosed as required by Rule 26(a). In pertinent part, Fed. R. Civ. P. 26(a)(2)(B)(vi) requires an expert witness's report to contain "a statement of the compensation to be paid for the study and testimony in the case."

Local Rules: Dist. Idaho Loc. Civ. R. 83.5 confirms the Court's power to control the conduct of attorneys appearing before it to prevent, or to issue sanctions for, a violation of the ethical rules and/or Rules of Civil Procedure, including the power to exclude evidence as a

---

[1] Fed. R. Civ. P. 37(c)(1) provides:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
- (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
- (B) may inform the jury of the party's failure; and
- (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi).

Rule 37(b)(2)(A)(i)—(vi), in turn, provides that the Court may make the following orders:

- (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
- (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
- (iii) striking pleadings in whole or in part;
- (iv) staying further proceedings until the order is obeyed;
- (v) dismissing the action or proceeding in whole or in part;
- (vi) rendering a default judgment against the disobedient party; or
- (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT RE: EXPERT CONTINGENCY FEE - 3

sanction. Dist. Idaho Loc. Civ. R. 83.5(a) requires familiarity and compliance with the Idaho Rules

of Professional Conduct, as well as any judicial decisions interpreting them.

> All members of the bar of the District Court … for the District of Idaho (hereafter the "Court") and all attorneys permitted to practice in this Court must familiarize themselves with and comply with the Idaho Rules of Professional Conduct of the Idaho State Bar and decisions of any court interpreting such rules. These provisions are adopted as the standards of professional conduct for this Court but must not be interpreted to be exhaustive of the standards of professional conduct. No attorney permitted to practice before this court will engage in any conduct which degrades or impugns the integrity of the Court or in any manner interferes with the administration of justice therein.

Dist. Idaho Loc. Civ. R. 83.5(a). "In the event any attorney engages in conduct which may warrant

discipline or other sanctions, the Court may … [impose] appropriate sanctions pursuant to the

Court's inherent powers and/or the Federal Rules of [Civil Procedure]…." Dist. Idaho Loc. Civ.

R. 83.5(b)(1). District courts have "a large measure of discretion in interpreting and applying"

their local rules. *Lance, Inc. v. Dewco Servs., Inc.*, 422 F.2d 778, 784 (9th Cir. 1970).

The Court's Inherent Powers: The inherent powers of the Court are "governed not by rule

or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve

the orderly and expeditious disposition of cases." *Unigard Sec. Ins. Co. v. Lakewood Eng'g &*

*Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (internal quotes omitted) (affirming exclusion of

evidence based on the district court's exercise of its inherent powers). The Ninth Circuit has

recognized that the Court's inherent powers include "broad discretion to make discovery and

evidentiary rulings conducive to the conduct of a fair and orderly trial, and that "[w]ithin this

discretion lies the power … to exclude testimony of witnesses whose use at trial … would unfairly

prejudice an opposing party." *Id.* (internal citation omitted). The Court's inherent powers include

the power to dismiss a case if the Court finds "the presence of willfulness, bad faith, or fault by

the offending party," that lesser sanctions would be ineffective, and there is a "nexus between the

misconduct drawing the dismissal sanction and the matters in controversy in the case." *Litle & Co.*

MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT RE: EXPERT CONTINGENCY FEE - 4

*v. Mann*, 145 F.3d 1339 (9th Cir. 1998) (stating a court engaging in this analysis may consider "the prejudice to the party victim of the misconduct"). Willfulness, bad faith and/or fault need not be shown if the court exercises its inherent power to impose a sanction that excludes evidence but does not have the effect of ending the case. *See id.*

Federal Rules of Evidence: Under Fed. R. Evid. 104(a): "The court must decide any preliminary question about whether ... evidence is admissible." Fed. R. Evid. 104(a). Fed. R. Evid. 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

## III.   ARGUMENT

Mr. McDermott should be excluded from testifying at trial because he has an improper expert witness fee arrangement with Mr. Bond that amounts to a *de facto*, if not express, contingency fee arrangement that is prohibited by public policy and Idaho Rule of Professional Conduct 3.4(b), and Mr. McDermott developed and disclosed his expert witness opinions while having a significant financial interest in achieving a successful outcome of this case for Miesen. Further the realities of Mr. McDermott's fee arrangement with Mr. Bond were not timely or accurately disclosed in Mr. McDermott's expert witness report as required by the Federal Rules of Civil Procedure and the Court's scheduling order.

### A. Mr. McDermott should be excluded based on his inappropriate expert witness contingency fee arrangement with M. Bond.

The Rules of Professional Conduct in Idaho (as well as in New York, where Mr. McDermott is licensed)[2] prohibit a lawyer from offering an inducement to a witness that is

---

[2] *See* Declaration of Loren C. Ipsen in Support of the HT Defendants' Motions to Exclude Plaintiff's Expert Witness Richard McDermott (hereinafter "Ipsen Decl."), Exh. B (hereinafter "McDermott Depo"), at 6:21-22.

MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT RE: EXPERT CONTINGENCY FEE - 5

prohibited by law. *See* I.R.P.C. 3.4(b)[3]; *see also* N.Y.R.P.C. 3.4(b) (expressly prohibiting a lawyer from offering to pay or "acquiescing in the payment of compensation to a witness contingent upon … the outcome of the matter"). The comments to Idaho Rule of Professional Conduct 3.4 explain that the purpose of such a prohibition is to protect the integrity of the adversarial system of law.

> The procedure of the adversary system contemplates that the evidence in a case is to be marshaled competitively by the contending parties. Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like.

I.R.P.C. 3.4, Cmt. 1. It appears that Idaho appellate courts have not had occasion to address Rule 3.4(b) in the context of an expert witness contingency fee arrangement, but Comment 3 to Idaho's Rule 3.4(b) addresses the issue by expressly recognizing that in most jurisdictions "it is improper to pay an expert witness a contingent fee."

A number of courts that have had the occasion to decide the admissibility of expert witness testimony based on the existence of an expert witness contingency fee arrangement (be it express or *de facto*) have held that the expert's testimony must be excluded. A relatively recent example of a U.S. District Court excluding expert witness testimony based on a contingency fee is the case of *Straughter v. Raymond*, No. CV 08-2170, 2011 WL 1789987 (C.D. Cal. May 9, 2011). Applying California's equivalent of Idaho Rule of Professional Conduct 3.4(b), the Central District of California excluded expert witness testimony in circumstances quite similar to the present case and the court's reasoning is persuasive. California's ethical rule forbidding improper inducement of witnesses prohibits an attorney from "[d]irectly or indirectly pay[ing], offer[ing] to pay, or acquies[ing] in the payment of compensation to a witness contingent upon … the outcome of the case." *Straughter*, at \*2 (stating that this rule "codified California's long-standing common law

---

[3] Idaho Rule of Professional Conduct 3.4(b) provides: "A lawyer shall not … falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law."

MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT RE: EXPERT CONTINGENCY FEE - 6

prohibition of contingency fee arrangements with expert witnesses"); *see also id.* at n. 2 (quoting the Model Rule of Professional Conduct 3.4(b), which was adopted in Idaho). In *Straughter*, the plaintiff's expert was paid a retainer and compensated by the plaintiff's attorney at the expert's hourly rate for a period of time before the plaintiff's original attorney withdrew. *Id.* at *1. The plaintiff's new attorney could not afford to advance the expert's fees and entered into a contingency fee agreement with the expert witness, under which the expert would be compensated only if the plaintiff recovered a judgment. *Id.* at *2. The nature of the expert's contingency fee arrangement was not disclosed in her initial expert disclosure. *Id.* After the defendant filed a motion to exclude the expert's testimony based on violation of California's rules of professional conduct prohibiting expert witness contingency fee agreements, plaintiff cancelled the contingency fee agreement and retroactively reinstated the expert's hourly rate of compensation, but because neither the plaintiff nor his attorney could afford the hourly rate, the plaintiff gave the expert a lien on any recovery the plaintiff might obtain in the action (and other personal property). *Id.*

In its analysis, the *Straughter* court noted that courts in California and other jurisdictions had relied on the common law and "the court's authority to forestall violations of ethical principles" to conclude that "the testimony of expert witnesses whose compensation is contingent upon the outcome of the case must be excluded." *Id.* at *2. The *Straughter* court rejected the approach of some jurisdictions that had held there is no *per se* exclusion of contingency fee expert witnesses. *Id.* at *3.[4] The *Straughter* court instead found that "the better course of action is to

---

[4] The courts that have found no *per se* exclusion of contingency fee expert witnesses have generally recognized that the testimony violates the rules of ethics, but because it implicates an ethical rule instead of a rule of evidence, the issue of expert witness fees is a credibility issue for the jury. However, these decisions in effect allow an attorney to benefit from a violation of the rules of ethics so long as the violation happens in a courtroom. This is contrary to the very purpose of the ethical rule, which is to protect not just the parties to the action but the justice system. And the approach of these courts that do not *per se* exclude the testimony fails to adequately appreciate the courts' inherent power to protect legal proceedings from ethical violations and enforce their local rules. This is particularly important when dealing with expert witness testimony, which the U.S. Supreme Court has recognized can be "powerful and

MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT RE: EXPERT CONTINGENCY FEE - 7

exclude the testimony of expert witnesses in civil cases whose compensation is contingent on the outcome of the case." *Id.* "The fact that [the expert's] opinions were rendered when she had a direct financial interest in the outcome of this action, raises serious questions about the integrity of her expert testimony," which is the very same concern that the ethical rules' prohibition of expert witness contingency fees is meant to address. *Id.* The fact that the plaintiff and his expert later reverted to an hourly rate did not cure the impermissible taint of the opinions that the contingency fee arrangement created. *Id.*

As an additional basis for exclusion of the expert witness's testimony, the *Straughter* court found that, even though the plaintiff and the expert had reverted to observing an hourly rate for the expert's work, the expert still maintained "a direct financial stake in the outcome" of the litigation indicative of a contingency fee – what the court called a *de facto* contingency fee – because the plaintiff's inability to pay the expert's hourly rate and the resultant debt created by accrual of the expert witness fees meant that, "as a practical matter, [the expert] will not be paid for her work unless and until plaintiff recovers a sum of money in connection with this case." *Id.* Therefore, the *Straughter* court granted the defendant's motion to exclude the expert's testimony as improper and unethical because agreeing to pay an expert witness "a fee contingent on the success of the litigation" is against public policy and poses "too great a temptation to practice deceit and to commit the too common crime of perjury." *Id.* at *2-3.

The court in *Riley v. Liberty Ins. Corp.*, No. 3:17 CV 1595, 2019 WL 5420590, at *3 (N.D. Ohio Feb. 15, 2019), agreed with the reasoning of the *Straughter* decision and recognized the

---

quite misleading," and the financial incentive supplied by an expert witness contingency fee to exaggerate or otherwise color testimony (consciously or subconsciously) to enhance the chances of success and payment compounds the difficulty of the Court's already challenging (and vital) gatekeeping task of ensuring the reliability of expert testimony offered to the jury. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993). As the *Straughter* court determined, the better rule is exclusion of expert witnesses who have a financial stake in the outcome of the case based on a contingency fee arrangement.

MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT RE: EXPERT CONTINGENCY FEE - 8

"serious ethical issues surrounding [the plaintiff's expert witness's] contingency fee arrangement." *Id.* The plaintiff had attempted to remedy the problem by entering a new agreement with the expert to charge an hourly rate, but the court explained that "[t]his bandage ... does not repair the wound because [the expert] produced his 'expert report' and testified at his deposition *while the contingent fee was still in place.*" *Id.* (emphasis original). "As the *Straughter* Court persuasively held – timing matters." *Id.*

Other courts have reached the same or similar conclusions and have excluded the testimony of expert witnesses who have worked in whole or in part under a contingency fee agreement or *de facto* contingency fee arrangement. In *Estate of Mikeska*, 217 A.3d 329, 335 (Pa. Super. 2019), the court described Pennsylvania's prohibition of testimony by experts with contingency fee agreements based on the principle that "improper conduct or bias can be predicted easily when the compensation of the witness is directly related to the absolute amount of an award which may in turn be dependent to a great degree on the testimony of that same witness." Similarly, in *Swafford v. Harris*, 967 S.W.2d 319, 322 (Tenn. 1998), the court explained that expert witness contingency fee agreements violate public policy because they "threaten the legitimate recoveries of injured plaintiffs," "imperil defendants and the fundamental truth-seeking mission of our court system," and the expert witness's "interest in the amount of the damages furnishe[s] a powerful motive for exaggeration, suppression, and misrepresentation, a temptation to swell the damages so likely to color his testimony as to be inimical to the pure administration of justice ...." The court in *Dupree v. Malpractice Research, Inc.*, 445 N.W.2d 498, 500 (Mich. App. 1989), recognized that expert witness contingency fee agreements are "so repugnant to established Michigan public policy" that permitting compensation to an expert for testimony rendered while a party to a contingency fee agreement "would defeat or subvert those policies and threaten the integrity of the judicial system."

MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT RE: EXPERT CONTINGENCY FEE - 9

*See also Farmer v. Ramsay*, 159 F.Supp.2d 873, 883 (D.Md. 2001), aff'd on other grounds (noting the comment to Maryland's Rule of Professional Conduct 3.4 – which like Idaho's Rule 3.4 states that "[u]nder the common law in most jurisdictions … 'it is improper to pay an expert witness a contingent fee'" – and agreeing that "witness contingency fee agreements affirmatively violate the fundamental policy of Maryland and the United States"; also noting that lack of funds to retain an expert witness is an unsatisfactory excuse for entering an impermissible expert witness contingency fee agreement); *Followwill v. Merit Energy Co.*, Civil No. 03–CV–62–D, 2005 WL 5988695, at *1 (D. Wyo. Apr. 11, 2005) (excluding the plaintiffs' expert and striking his report because he was paid on an impermissible contingency basis); *In re SMTC Mfg.*, 421 B.R. 251, 264 n. 2 (W.D.Tex.Bankr. 2009) (noting the expert witness hired by the trustee had been "disqualified from testifying as an expert witness at the trial because she had been employed on a contingency basis"); *Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, 298 F.3d 291, 300 (4th Cir. 2002) (noting expert witness contingency fees violate public policy and are impermissible because "[f]inancial arrangements that provide incentives for the falsification or exaggeration of testimony threaten the very integrity of the judicial process which depends upon the truthfulness of the witnesses").

In this case, Miesen and Mr. McDermott represented in expert witness disclosures that Mr. McDermott was charging Mr. Bond $350 per hour for his pre-trial expert witness services. Mr. McDermott's report states:

> I was retained by Roderick Bond Law Office, PLLC and am compensated solely by Roderick Bond Law Office, PLLC. I charge $350 per hour for my work preparing this Report and $400 for testifying at trial, plus reimbursement of all out-of-pocket expenses and travel costs. All sums owed to me up through the time of trial are required to be paid in full prior to the time that I appear and testify at trial. I also reserve the right to require advance deposits if I am not being timely paid. I have never had to request any deposits from Roderick Bond Law Office, PLLC.[5]

---

[5] Ipsen Decl., Exh. A, at § IV.

MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT RE: EXPERT CONTINGENCY FEE - 10

However, it was revealed during the deposition examination of Mr. McDermott on November 5, 2020, that Mr. Bond and Mr. McDermott have engaged in what Mr. McDermott himself characterizes as an "unofficial, if you will, unorthodox, if you will, way of proceeding" with respect to expert witness compensation, which is not based on itemized bills reflecting Mr. McDermott's time charged at the stated hourly rate.[6] Mr. McDermott describes his relationship with Mr. Bond as "so satisfactory and of such a – of such a quality, [that] I had no need to be concerned about retainers or sending periodic bills or anything."[7] "It's as trustworthy a relationship as I could imagine having with someone."[8]

Based on Mr. McDermott's level of satisfaction and trust in his relationship with Mr. Bond, Mr. McDermott has not sent bills to Mr. Bond or received regular payments based on the application of his hourly rate to the time he has spent working on this matter. In fact, he has never tallied his time, which he keeps written in "little notebooks."[9] Rather, Mr. Bond has sporadically paid Mr. McDermott chunks of money with no objectively identifiable correlation to the amount of time Mr. McDermott has actually expended on this case.[10] Mr. McDermott explained in his deposition that, instead of sending itemized bills to Mr. Bond, he has "had occasion to request payment from Mr. Bond for this or that particular reason," such as when he wanted money to pay his grandchild's tuition.[11] Other times, Mr. Bond might notice it has been some time since he paid Mr. McDermott any money and ask Mr. McDermott to send him a bill; in response, Mr. McDermott will send Mr. Bond a request via LawPay for payment of an arbitrary, round figure

---

[6] McDermott Depo, 56:12-14.
[7] McDermott Depo, 57:24-58:2.
[8] McDermott Depo, 58:11-12.
[9] McDermott Depo, 58:23-25.
[10] McDermott Depo, 56:7-8; 57:4-16; 58:3-8; 65:20-25.
[11] McDermott Depo, 56:7-8; 58:3-8.

MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT RE: EXPERT CONTINGENCY FEE - 11

(*e.g.*, a request for $5,000 during a month in which Mr. McDermott would have accumulated about $40,000 in fees if he charged Mr. Bond his stated rate of $350 per hour).[12]

The result of this "unofficial" and "unorthodox" expert witness fee arrangement is that Mr. McDermott purportedly worked full-time (35 hours per week)[13] on this case between August 2019 and November 5, 2020, and logged enough hours to have earned more than $700,000 in expert witness fees during that fifteen-month period of time if he were to charge Mr. Bond the rate of $350 per hour stated in his report.[14] But Mr. Bond has paid Mr. McDermott only a small fraction of that amount – about $115,000 for work between his retention as an expert witness in 2017 and his November 5, 2020, deposition[15] – and Mr. McDermott roughly estimated during his November 5, 2020, deposition that his past work was "worth another $100,000" in earned but unpaid (and unbilled) expert witness fees.[16] Mr. McDermott explained that his estimate was based on his subjective assessment of the value of his work and the "quality of those hours."[17]

Mr. McDermott and Mr. Bond have essentially abandoned the rate and hour compensation structure represented in Mr. McDermott's report, as even more clearly illustrated by the following testimony:

> Q. So at $350 an hour for a 35-hour week, what does that work out to? About $10,000 a week?
> ...
> A. THE WITNESS [Mr. McDermott]: Okay. Yes, $10,000.
> Q. (BY MR. KELLER) So it would be your testimony that if you were to charge on an hourly basis, your fees would be about $10,000 a week since at least August of 2019, correct?
> A. That's a big if. ... It's a big if because I wouldn't charge [Mr. Bond] $350 an hour for every hour.[18]

---

[12] McDermott Depo, 57:4-16; 63:8-16; 65:20-25.
[13] McDermott Depo, 62:14-17.
[14] McDermott Depo, 64:5-11.
[15] McDermott Depo, 55:4-22.
[16] McDermott Depo, 67:9-20.
[17] McDermott Depo, 59:4-18.
[18] McDermott Depo, 63:17-64:4.

MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT RE: EXPERT CONTINGENCY FEE - 12

Mr. McDermott attempted to explain his significant deviation from the compensation structure he disclosed in his report by stating, "I never said I was [charging $350 an hour in this case] as a practical matter."[19] (In contrast, when asked about his hourly rate for testimony in his deposition, Mr. McDermott made sure to confirm that Defendants were going to pay him for his deposition time at $400 per hour, answering: "[My rate is] $400 per hour for testimony, which I understand you will be paying me for this?")[20] Ultimately, Mr. McDermott testified that, "at the conclusion of this matter,"[21] he will subjectively determine what his expert witness services are worth and render a bill to Mr. Bond for whatever amount he concludes his fee should be.[22] The financial engagement between Mr. McDermott and Mr. Bond bears virtually no resemblance to the rate and hour compensation structure that Mr. McDermott represented in his report.

This record shows that, in the fifteen months leading up to his deposition, Mr. McDermott purports to have accrued about $100,000 in earned but unpaid (and unbilled) expert witness fees for work that would gross more than $700,000 if Mr. McDermott charged Mr. Bond his stated rate of $350 per hour. Regardless of whether Mr. McDermott thinks he should be paid $100,000 or $700,000, he wants to be paid a six-figure sum of money for what he perceives is the value of his work at the conclusion of this matter. In the meantime, over the course of that same fifteen-month period when Mr. McDermott was purportedly working full-time on this case, Mr. Bond and Miesen submitted multiple declarations to this Court stating under penalty of perjury that Miesen is personally indigent and unable to pay even a modest $500 cost bill,[23] that Mr. Bond has bankrolled

---

[19] McDermott Depo, 65:3-8.
[20] McDermott Depo, 62:24-63:1.
[21] McDermott Depo, 65:13-16.
[22] McDermott Depo. 59:1-3; 59:22-60:2.
[23] Dkt. 941-2, ¶ 8.

MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT RE: EXPERT CONTINGENCY FEE - 13

this action by advancing more than $250,000 in costs (as of October 15, 2019),[24] and that Mr. Bond's financial backing of this lawsuit was a tremendous financial burden on him. Notably, Mr. Bond stated, "I do not have unlimited resources and this case was already becoming a financial burden on my firm prior to August 5, 2019," *which is the same time Mr. McDermott testified he started working full-time on this case.*[25]

Under what Mr. Bond has described as heavy and burdensome financial pressure from the cost of pursuing this lawsuit, he has on numerous occasions unreasonably sought to avoid paying litigation expenses and/or to shift them to Defendants. On October 18, 2019, Mr. Bond sought an order terminating the Discovery Master's services or, in the alternative, requiring Defendants to pay all of the Discovery Master's fees due to the financial burden already placed on Mr. Bond by his having to pay more than $20,000 for Plaintiff's share of the Discovery Master fees charged up to that time.[26] And Mr. Bond stated that he had been "forced to incur over $250,000 in costs for this lawsuit," which "has been a huge burden on me and my firm, especially because I stand no chance of ever recovering those funds from Mr. Miesen if this lawsuit is not successful because of his inability to pay."[27] In November 2019 and January 2020, Mr. Bond sought to avoid $6,975 in sanctions relating to the HT Defendants' motion to compel based on Mr. Bond's argument that he has already shouldered a heavy financial burden to pursue this case.[28] Mr. Bond noted at that time that he "will be stuck with no reimbursement of expenses" totaling more than $250,000 if Plaintiff is not successful in this lawsuit.[29] On January 17, 2020, Mr. Bond filed a declaration stating that the costs he incurred continued to "balloon" beyond what he had originally anticipated, and he

---

[24] Dkt. 719-1, ¶ 5.
[25] Dkt. 941-2, ¶ 2; *see also* Dkts. 941-1 at 6, 947-2 at ¶ 3, 963, 964 & 986-1 at ¶ 9; Dkt. 725-1, ¶ 2.
[26] *See* Dkt. 725-1.
[27] Dkt. 725-1, ¶ 2.
[28] *See* Dkt. 746.
[29] Dkt. 746, at 5-6; Dkt. 808, at 7-8.

MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT RE: EXPERT CONTINGENCY FEE - 14

asked the Court to absolve him of the obligation to compensate the HT Defendants' expert witnesses for their deposition time.[30] In support of that effort, Mr. Bond argued that:

> While sometimes it is possible to not depose expert witnesses for various reasons (including strategic ones), this is not one of those situations. It is important for me to question all three experts at length about their opinions and the basis for their opinions in order for me to effectively represent Mr. Miesen and prepare for trial.[[31]]

Despite Mr. Bond's representation that deposing the HT Defendants' expert witnesses was vital to Mr. Bond's ability to effectively represent Miesen in this case and prepare for trial, he waived taking those depositions after the Court ruled that he and/or Miesen were responsible for paying the witnesses' fees for deposition time.[32] And once again, just a few days ago, Mr. Bond filed a motion seeking to shift to Defendants the Discovery Master's fees that have been assessed to Miesen.[33]

The record here shows that Mr. McDermott undertook fifteen months of purportedly full-time work on this case at a time when Mr. Bond was already feeling overly burdened by the cost of pursuing the action. Mr. McDermott had no reasonable expectation that he would be compensated at his stated rate of $350 per hour unless Miesen were to succeed in this lawsuit. Even if Mr. McDermott subjectively values his work at $100,000 instead of $700,000 as he claims, the fact remains that Mr. McDermott and Mr. Bond have allowed a six-figure debt of expert witness fees to accrue with no apparent means of payment unless Miesen succeeds in this case. Under these circumstances, as in *Straughter*, there is an impermissible *de facto*, if not express, expert witness contingency fee arrangement.[34] And the record shows that Mr. McDermott

---

[30] Dkt. 812-2, ¶¶ 4 & 7.

[31] Dkt. 812-2, ¶ 3.

[32] *See* Dkt. 1001; *see also* Ipsen Decl., ¶ 9.

[33] *See* Dkt. 1053.

[34] As the *Straughter* court recognized, the hallmark of a contingency fee is payment that is dependent in whole or in part on a successful recovery (and the corresponding risk of nonpayment), and a contingency fee need not be named as such by the parties or be based on a percentage of recovery to be properly categorized as a contingency fee. *See*

MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT RE: EXPERT CONTINGENCY FEE - 15

developed and disclosed his expert witness opinions regarding liability and damages in this case while at the same time having a large and ever-expanding financial interest in its outcome. This type of expert witness fee arrangement is against public policy, as well as the rules of ethics, because it poses unacceptable risks to the judicial system and the fair administration of justice by providing an incentive to flavor opinions with exaggeration, suppression, misrepresentation and improper advocacy, thereby unduly prejudicing the HT Defendants and harming the integrity and reliability of the testimony and the trial process. As a result of Mr. McDermott's improper financial relationship and fee arrangement with Mr. Bond, Mr. McDermott should not be permitted to testify as an expert witness at trial pursuant to Local Rule 83.5, the inherent powers of the Court, and Fed. R. Evid. 403.[35]

## B. Mr. McDermott should be excluded as a witness for failure to timely and accurately disclose the information required by the Federal Rules of Civil Procedure.

As explained above, the expert witness fee arrangement disclosed in Mr. McDermott's report is not the fee arrangement that Mr. McDermott and Mr. Bond have applied in this case. Notably, even if Mr. McDermott and Mr. Bond somehow did not realize they were engaging in a contingency fee arrangement at the time of Mr. McDermott's original report dated August 5, 2019, the abandonment of the $350 hourly rate and the true nature of the financial relationship was well-established by the time Mr. McDermott issued subsequent reports, including the last iteration of

_also Clark v. Sage_, 102 Idaho 261, 265, 629 P.2d 657, 661 (1981) (discussing the general type of a attorney contingency fee that is based on a percentage of recovery, and noting that "a contingent fee is both a contingency and a fee" involving payment contingent on success and a corresponding risk of nonrecovery and nonpayment).

[35] Please see the HT Defendants' separate Motion to Exclude Testimony of Plaintiff's Expert Witness Richard McDermott for further discussion regarding exclusion of McDermott pursuant to Fed. R. Evid. 403 and 702 based upon his improper advocacy for Miesen's case, the unreliability of his opinions, and the unduly prejudicial impact that admitting his testimony would have on the HT Defendants.

MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT RE: EXPERT CONTINGENCY FEE - 16

his report on November 1, 2020,[36] and yet that report gave no hint of the circumstances that Defendants uncovered at Mr. McDermott's deposition just four days later. Miesen failed to timely and accurately disclose the "compensation to be paid for [Mr. McDermott's] study and testimony in the case" as required by Fed. R. Civ. P. 26(a)(2)(B)(vi). Pursuant to Fed. R. Civ. P. 37(c)(1), Mr. McDermott should be excluded for the failure to timely and accurately disclose the terms of his compensation.

## IV.    CONCLUSION

For the reasons set forth above, the HT Defendants respectfully request that this Court enter an order excluding the testimony of Mr. McDermott from the trial of this case.

DATED this ___29___ day of January, 2021.

ELAM & BURKE, P.A.

By:_____

Loren C. Ipsen, Of the Firm
Joyce A. Hemmer, Of the Firm
Attorneys for Defendants Hawley Troxell
Ennis & Hawley LLP, Gary D. Babbitt,
D. John Ashby, and Richard A. Riley

---

[36] Again, the report grew from 181 pages to 653 pages while McDermott was operating under the contingency fee arrangement described above.

MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT RE: EXPERT CONTINGENCY FEE - 17

## CERTIFICATE OF SERVICE

I hereby certify that on this ___19___ day of January, 2021, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons via email:

| | |
|---|---|
| Roderick C. Bond<br>rod@roderickbond.com<br>*Attorney for Plaintiff* | Daniel L. Glynn<br>dglynn@idalaw.com<br>*Attorneys for Michael W. Cashman, Sr., R. John Taylor, James Beck, Connie Taylor Henderson, Crop USA Insurance Services, LLC and Crop USA Insurance Agency, Inc.* |
| Alyson A. Foster<br>alyson@dempseyfoster.com<br>William E. Adams<br>bill@weadamslaw.com<br>*Attorneys for Intervenor GemCap Lending I, LLC* | Michael S. Bissell<br>mbissell@campbell-bissell.com<br>Tyler S. Waite<br>twaite@campbell-bissell.com<br>*Attorneys for Reed J. Taylor* |

_____
Loren C. Ipsen

MEMORANDUM IN SUPPORT OF THE HAWLEY TROXELL DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS RICHARD MCDERMOTT RE: EXPERT CONTINGENCY FEE - 18