

**HAWLEY TROXELL
ENNIS & HAWLEY** LLP
ATTORNEYS AT LAW

877 Main Street, Suite 1000
P.O. Box 1617
Boise, Idaho 83701-1617
(208) 344-6000  Fax (208) 342-3829
www.hteh.com

October 27, 2006

Lancelot Investors Fund, L.P.
c/o Lancelot Investment Management, LLC
1033 Skokie Boulevard, Suite 620
Northbrook, Illinois 60062

AGM, LLC
1033 Skokie Boulevard, Suite 620
Northbrook, Illinois 60062

> Re:    *Loan and Security Agreement dated as of October 27, 2006 by and among Crop USA Insurance Agency, Inc., as Borrower; R. John Taylor and AIA Insurance, Inc., each as a Guarantor; Lancelot Investors Fund, L.P., as Lender; and AGM, LLC, as Administrative Agent (the "Loan and Security Agreement").*

Ladies and Gentlemen:

We have acted as Idaho counsel to Crop USA Insurance Agency, Inc., an Idaho corporation ("Borrower"), and AIA Insurance, Inc., an Idaho corporation ("Corporate Guarantor"), and R. John Taylor ("Taylor"; Corporate Guarantor and Taylor are herein collectively referred to as "Guarantors" and each is a "Guarantor"; Borrower and Guarantors are herein collectively referred to as "Clients" and each are a "Client") in connection with the transactions contemplated by the Loan and Security Agreement (referenced above and defined below). Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Loan and Security Agreement.

### I. DOCUMENT REVIEW

As such counsel, we have reviewed the following documents and instruments for purposes of delivery of this opinion letter:

(a)    the Loan and Security Agreement, dated as of October 27, 2006, among Borrower, Guarantors, Lancelot Investors Fund, L.P. ("Initial Lender") and AGM, LLC (the "Administrative Agent"), for the benefit of Lender Parties;



EXHIBIT
#64

Exhibit 28



EX. NO. 37
Riley, R.
DATE 07.01.19
ASSOCIATED
REPORTING & VIDEO



40823.0007.892560.7



**EXHIBIT P**

October 27, 2006
Page 2

(b)     the Promissory Note, dated as October 27, 2006, executed by Borrower in favor of Initial Lender and its permitted assigns, and the successors thereof;

(c)     the Guaranty, dated as of October 27, 2006, executed by Taylor in favor of Administrative Agent, for the benefit of Lender Parties;

(d)     the Guaranty, dated as of October 27, 2006, executed by Corporate Guarantor in favor of Administrative Agent, for the benefit of Lender Parties;

(e)     Control Agreement for Deposit Account at U.S. Bank National Association, dated as of October 27, 2006, among Borrower, U.S. Bank National Association, and the Administrative Agent, for the benefit of Lender Parties;

(f)     Blocked Account Control Agreement (with Lockbox Services), dated as of October 27, 2006, among Borrower, U.S. Bank National Association, and the Administrative Agent, for the benefit of Lender Parties;

(g)     Certificate of Deposit Control Agreement, dated as of October 27, 2006, among Taylor, James W. Beck, Michael W. Cashman, Private Bank Minnesota, and the Administrative Agent, for the benefit of Lender Parties;

(h)     Certificate of Deposit Control Agreement, dated as of October 27, 2006, among Borrower, Taylor, Randolph D. Lamberjack, Zions First National Bank, and the Administrative Agent for the benefit of the Lender Parties;

(i)     Consent and Agreement, dated as of October 27, 2006, among Borrower, Clearwater Insurance Company, and the Administrative Agent, for the benefit of Lender Parties;

(j)     Pledge Agreement, dated as of October 27, 2006, executed by Taylor in favor of AGM, LLC, in its capacity as administrative agent for the Lenders;

(k)     Pledge Agreement, dated as of October 27, 2006, executed by Taylor, Michael Cashman, James W. Beck in favor of the Administrative Agent for the Lenders;

(l)     Pledge Agreement, dated as of October 27, 2006, executed by Randolph D. Lamberjack in favor of AGM, LLC, in its capacity as administrative agent for the Lenders;

(m)     a certified copy of the Articles of Incorporation of Borrower, as certified by the Idaho Secretary of State on September 5, 2006 (the "Borrower Articles of Incorporation");

(n)     a copy of the New Restated Bylaws of CropUSA Insurance Agency, Inc. dated as of October 5, 2006, (the "Borrower Bylaws"; Borrower Articles of Incorporation and Borrower Bylaws being herein collectively referred to as "Borrower Organizational Documents");

**Exhibit 28**                                        40823.0007.892580.7

Case 1:10-cv-00404-DCN-CWD   Document 390-28   Filed 05/31/18   Page 3 of 9

October 27, 2006
Page 3

(o)    a Certificate of Borrower with respect to (i) the Borrower Organizational Documents, (ii) the resolutions of the members of Borrower relating to the Loan and Security Agreement and other Loan Documents, and (iii) incumbency of the authorized signatories of Borrower;

(p)    a Certificate of Borrower with respect to (i) the names of every jurisdiction that requires licensing and qualification as a foreign entity where Borrower owns, operates or leases property, or conducts business; and (ii) the governmental permits, approvals, and licenses necessary to conduct its business operation;

(q)    a certified copy of the Articles of Incorporation of Corporate Guarantor, as certified by the Idaho Secretary of State on October 10, 2006 (the "Corporate Guarantor Articles of Incorporation");

(r)    a copy of the Bylaws of Corporate Guarantor dated as of January 5, 1988, (the "Corporate Guarantor Bylaws"; Corporate Guarantor Articles of Incorporation and Corporate Guarantor Bylaws being herein collectively referred to as "Corporate Guarantor Organizational Documents"); and

(s)    a Certificate of Corporate Guarantor with respect to (i) the Corporate Guarantor Organization Documents, (ii) the resolutions of members of Corporate Guarantor relating to the Loan and Security Agreement, and (iii) incumbency of the authorized signatories of Corporate Guarantor.

(t)    a Certificate of Corporate Guarantor with respect to (i) the names of every jurisdiction that requires licensing and qualification as a foreign entity where Corporate Guarantor owns, operates or leases property, or conducts business; and (ii) the governmental permits, approvals, and licenses necessary to conduct its business operation;

Those documents and instruments listed above as items (a) through (k) are herein collectively referred to as the "Loan Documents".

In addition, we have examined such other instruments and documents and examined such matters of law as we have deemed necessary as a basis for the opinions set forth below.

## II. OPINIONS

Based on the foregoing and subject to the assumptions and qualifications set forth below, we are of the opinion that:

(a)    Borrower is duly formed, validly existing and in good standing, under the laws of the State of Idaho. Borrower has the power and authority to own, lease, and operate its current properties and assets and to conduct the business in which it is currently engaged and as contemplated in the Loan Documents.

Exhibit 28

40623.0007.892560.7

Case 1:10-cv-00404-DCN-CWD   Document 390-28   Filed 05/31/18   Page 4 of 9

October 27, 2006
Page 4

(b)    Corporate Guarantor is duly formed, validly existing and in good standing, under the laws of the State of Idaho. Corporate Guarantor has the power and authority to own, lease, and operate its current properties and assets and to conduct the business in which it is currently engaged and as contemplated in the Loan Documents.

(c)    Based solely on a certificate of an officer of Borrower, Borrower is qualified and licensed as a foreign entity in every other jurisdiction in which the ownership of property or the conduct of its business requires such licensing and qualification.

(d)    Based solely on a certificate of an officer of Corporate Guarantor, Corporate Guarantor is qualified and licensed as a foreign entity in every other jurisdiction in which the ownership of property or the conduct of its business requires such licensing and qualification.

(e)    Each Client has the power and authority, to execute, deliver, and perform its obligations under and consummate the transactions contemplated by the Loan Documents to which it is a party. The execution, delivery, and performance as of the date hereof by Borrower and Guarantors of the Loan Documents to which Borrower and Guarantors are party have been duly authorized by all necessary action of Borrower and Guarantors. The officers of Borrower and Corporate Guarantor executing any Loan Documents on behalf of Borrower and Corporate Guarantor have been duly authorized to execute and deliver such documents.

(f)    The Loan Documents have been duly executed and delivered by each Client that is a party thereto. Were an Idaho court, or a federal court sitting in Idaho, to apply Idaho law to the Loan Documents notwithstanding the parties' choice of the law of Illinois as the governing law, the Loan Documents constitute the legal, valid, and binding obligations of each Client (to the extent such Client is a party to such Loan Documents), enforceable in accordance with their terms.

(g)    The execution, delivery, and performance as of the date hereof by each Client of the Loan Documents to which each Client is a party does not: (i) require any approval of the officers, members, or managers, as applicable of such Client which has not been obtained; and (ii) violate the Borrower Organizational Documents or the Guarantor Organizational Documents.

(h)    Assuming the provisions of the Loan and Security Agreement are sufficient to create in your favor a security interest in all right, title, and interest of Borrower in those items of Collateral in which a security interest may be created under Article 9 of the Idaho Uniform Commercial Code ("UCC") and assuming the Administrative Agent properly files the financing statement attached hereto as Exhibit A with the Secretary of State of the State of Idaho (the "Filing Office"), the interests granted under the Loan Documents will constitute perfected security interests in the Collateral, to the extent that a security interest in such Collateral can be perfected by filing under the UCC.

Exhibit 28

40823.0007.892580.7

October 27, 2006
Page 5

(i)    Neither the Administrative Agent or any Lender is required to register or to qualify to do business or to obtain any license or permit in the state of Idaho to make the Loan Documents enforceable, to allow the Administrative Agent or any Lender to foreclose on the Collateral in local courts, or for any other reason related to the transactions evidenced by the Loan Documents.

(j)    The Loan, as described and evidenced by the Loan Documents, is not usurious under current applicable Idaho law.

(k)    In a proceeding to enforce the Loan Documents, an Idaho court, or a federal court sitting in Idaho applying Idaho conflict of law rules, as the case may be, should give effect to the parties' designation of the law of the State of Illinois as the governing law; provided, however:

i.    we assume the state of Illinois bears a reasonable relationship to the parties and the transaction;

ii.    the law of a state will govern the validity, perfection, priority, enforcement and interpretation of interests in real property or of a security interest in tangible personal property located in such state;

iii.    Idaho state courts and federal courts sitting in Idaho will not enforce a forum selection clause; and

iv.    Idaho state courts and federal courts sitting in Idaho may apply the law of the State of Idaho or the law of another state with a relationship to the transaction, if the law of the state chosen pursuant to the Loan Documents is contrary to a "fundamental policy" of the State of Idaho or such other state. While not expressing an opinion, except as described herein we are not aware of any fundamental policy of the State of Idaho to which the Loan Documents are contrary.

### III. ASSUMPTIONS AND QUALIFICATIONS

The opinions expressed in Section II above are subject to the following assumptions, qualifications, and limitations:

In rendering this opinion, we have assumed that:

1.    All natural persons executing the Loan Documents have legal capacity to do so; all signatures on all documents submitted to us are genuine; documents submitted to us as originals are authentic; all documents submitted to us as copies conform to the original documents, which themselves are authentic; all certifications of public officials are accurate; and all documents were executed in the same form, except for *de minimis* changes, as the copies which were provided to us.

**Exhibit 28**

40823.0007.862560.7

October 27, 2006
Page 6

2.    Each of the parties to the Loan Documents other than Borrower and Guarantors has the requisite power and authority to execute, deliver, and perform such documents to which it is a party; has taken all necessary action to enter into the Loan Documents; and has duly executed and delivered each such document. To the extent that the Loan Documents impose any obligation upon Lender or any other party other than Borrower and Guarantors, the Loan Documents are valid and binding obligations of the Lender and such other parties and enforceable against each of such parties in accordance with their respective terms.

3.    Administrative Agent and Lender will enforce their rights under the Loan Documents in a commercially reasonable manner.

4.    The delivery to, or for the benefit of, the Borrower at the closing of the Loan of the funds to be loaned to it pursuant to the Loan Documents has occurred.

5.    There are no material oral or written modifications of or amendments to the Loan Documents and there has been no waiver of any of the provisions of the Loan Documents, by actions or conduct of the parties or otherwise.

6.    The Loan Documents comply with any test required by law of good faith or fairness, and each party will act in accordance with the terms and conditions of the Loan Documents.

We understand that all of the foregoing assumptions are acceptable to you.

In addition, our opinions expressed above are subject to the following qualifications and limitations:

(a)    Inasmuch as we are admitted to practice law only in the State of Idaho, we disclaim and do not express any opinion regarding any matters which may be governed by the law of any other state or jurisdiction. The opinions set forth herein are based solely upon the generally applicable law of the State of Idaho in force and effect on the date hereof. We disclaim any opinion as to the statutes and ordinances, the administrative decisions, and the rules and regulations of any county, town, municipality or special political subdivision and any judicial decisions to the extent that they deal with any of the foregoing. We further express no opinion as to what effect laws, regulations or rulings promulgated, or judicial decisions established, subsequent to the date hereof with a retroactive date may have on the opinions set forth herein.

(b)    Enforceability of the Loan Documents may be limited by: (i) bankruptcy, insolvency, reorganization, arrangement, moratorium, fraudulent conveyance, and other state and federal laws relating to or affecting the rights or creditors generally; and (ii) general principles of equity, the application of which may deny Lender and Administrative Agent certain of the rights and remedies granted to Lender and Administrative Agent under the Loan Documents, including rights to specific performance, injunctive relief, and the appointment of a receiver.

Exhibit 28

40623.0007.892560.7

October 27, 2006
Page 7

(c)     We express no opinion as to the priority of any security interest. Without limiting the foregoing, we express no opinion as to the priority as against any security interests or other liens as to which a UCC filing in the Filing Office is not required. Further, our opinion is subject to the limitations on perfection of security interests in proceeds resulting from the operation of Section 9-315 of the UCC; the limitations with respect to buyers in the ordinary course of business imposed by Sections 9-320, 9-323, and 9-330 of the UCC; the limitations with respect to documents, instruments, and securities imposed by Section 9-331 of the UCC; the rights of holders of security interests in goods that are or are to become fixtures under Section 9-334 of the UCC; the limitations with respect to accessions and commingling imposed by Sections 9-335 and 9-336 of the UCC; the provisions of Sections 9-204, 9-322, 9-323, and 9-324 of the UCC relating to the time of attachment and priority of a security interest in the items of the property which are not now owned and in the possession of the Borrower; Sections 544 and 552 of Title 11 of the United States Bankruptcy Code ("Bankruptcy Code") with respect to any of the property acquired by the Borrower after the commencement of a case by or against the Borrower under the Bankruptcy Code; the limitations with respect to buyers of goods other than buyers in the ordinary course of business imposed by Sections 9-320 and 9-323 of the UCC; and the rights of account debtors or obligors and any claims or defenses of such account debtors or obligors, subject to Sections 9-404, 9-405, 406 and 9-408 of the UCC, against the Borrower arising under or outside notes, agreements, or contracts and the terms of such notes, agreements, or contracts between the Borrower and the account debtors or obligors.

(d)     The enforceability of the Loan Documents is subject to the qualification that certain remedies, waivers, and other provisions of the Loan Documents may be rendered ineffective, or limited, by applicable Idaho laws or judicial decisions governing such remedies, waivers, and provisions, but the inclusion of such remedies, waivers, and provisions does not affect the validity or enforceability of the other provisions thereof and in the event Borrower or any Guarantor does not comply with the material terms of a Loan Document to which it is a party, the Lender and Administrative Agent may exercise remedies that would normally be available under Idaho law to a secured lender provided it proceeds in accordance with Idaho law. Without limiting the generality of the preceding qualification, we advise you that:

        i.      limitations are imposed by Idaho Code Section 8-601 on the right to obtain the appointment of a receiver; and

        ii.     every stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract by the usual proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void pursuant to Idaho Code Section 29-110.

(e)     The filing of the Financing Statement in the Filing Office will not result in the perfection of a security interest in items of collateral (such as motor vehicles) which are subject to a certificate of title or registration statute that specifies a method of security interest perfection different than the filing or filings referred to in opinion paragraph (h) above or in items of

Exhibit 28

40623.0007.892560.7

October 27, 2006
Page 8

collateral which are or will be classified as farm products under Section 9-102 of the UCC, or which are timber, as-extracted collateral or fixtures.

(f)    The enforceability of waiver of rights to a jury trial, certain confession of judgment provisions, and certain rights to indemnity contained in the Loan Documents, including, without limitation, a right to indemnification for one's own negligence, may be limited by public policy considerations.

(g)    To the extent our opinion relates to the creation or perfection of a security interest in general intangibles, you should be aware that Idaho law may limit or otherwise affect the creation or perfection of a security interest in licenses, permits, or similar consents or certificates issued by an Idaho governmental authority (such as water right permits, liquor licenses, or operating licenses) to the extent that applicable statutes or regulations prohibit or limit the creation or enforcement of a security interest therein or require authorization, approval, or other action by, or notice to or filing with, any Idaho governmental authority for the creation or enforcement of such a security interest.

(h)    We wish to point out that any provision of a Loan Document which purports to require indemnification of any person in respect of the willful misconduct or gross negligence of such person may be unenforceable.

(i)    We express no opinion as to any actions that may be required to be taken periodically or upon the occurrence of future events under the UCC or other applicable law in order for the effectiveness of the Financing Statement, or the validity or perfection of any security interest, to be maintained.

(j)    Except as expressly stated otherwise herein, we express no opinion regarding the need for or existence of any general business licenses or permits.

(k)    This opinion is limited to the matters set forth herein and no opinion may be inferred or implied beyond those explicitly stated herein. We have no continuing obligation to inform you of changes in law or facts subsequent to the date hereof or facts of which we become aware after the date hereof.

(l)    This opinion is based and relies upon the current status of the law and existing facts and is subject to and may be limited by future legislation as well as by developing case law.

(m)    Wherever we have stated that we have assumed any matter, it is intended to indicate that we have assumed such matter without making any factual, legal, or other inquiry or investigation, and without expressing any opinion or conclusion of any kind concerning such matter. The qualification of any opinion or statement herein by the use of the words "knowledge," "our knowledge," "current actual knowledge," "to the best of our knowledge," or "known to us" means that during the course of our representation of the Clients, no matter has come to the attention of the attorneys directly involved in such activities or transactions which

**Exhibit 28**

40823.0007.882590.7

October 27, 2006
Page 9

give such attorneys actual knowledge of the existence of the matters so qualified. Furthermore, except as otherwise expressly set forth herein, we have not undertaken any special or general inquiry or investigation whatsoever to determine the existence of such matters, and no inference as to our knowledge thereof shall be drawn from the fact of our representation of any party or otherwise.

## IV. CONCLUSION

This letter: (i) has been furnished to you at your request, (ii) is rendered in connection with the transactions contemplated by the Loan and Security Agreement and may not be relied upon by any person other than the addressees hereof without our prior written consent, and (iii) is rendered as of the date hereof, and we undertake no, and hereby disclaim any, obligation to advise you of any changes in or any new developments which might affect any matters or opinions set forth herein.

Respectfully submitted,

HAWLEY TROXELL ENNIS & HAWLEY LLP

*Hawley Troxell Ennis & Hawley LLP*

**Exhibit 28**

40823.0007.882560.7