UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc., <br><br> Plaintiff, <br><br> v. <br><br> HAWLEY TROXELL ENNIS & HAWLEY LLP, et al., <br><br> Defendants, <br><br> and <br><br> CROP USA INSURANCE SERVICES, LLC, et al., <br><br> Defendants/Third-Party Plaintiffs, <br><br> v. <br><br> REED TAYLOR, an individual, <br><br> Third-Party Defendant. | Case No. 1:10-cv-00404-DCN <br><br> **MEMORANDUM DECISION AND ORDER REGARDING VARIOUS MOTIONS (DKTS. 907, 908, 947, 975, 976)** |

## I.   INTRODUCTION

On April 8, 2020, Defendants Hawley Troxell Ennis & Hawley LLP, Gary D. Babbitt, D. John Ashby, and Richard A. Riley ("Hawley Troxell Defendants"), moved to exclude Plaintiff Dale L. Miesen's expert Patrick Moran's (Dkt. 907) and rebuttal expert

witness Lawrence M. Hile's (Dkt. 908) testimony pursuant to Rules 26(a) and 37(c) of the Federal Rules of Civil Procedure, and Dist. Idaho Loc. Civ. R. 26.2(b). On April 29, 2020, Defendant GemCap Lending I, LLC ("GemCap") joined both motions. Dkts. 931, 932. On May 17, 2020 Miesen filed a Motion to Extend the Expert Witness Disclosure Deadlines as to Moran and Hile. Dkt. 947. Thereafter, Defendants James Beck, Michael Cashman, Connie Henderson, R. John Taylor, Crop USA Insurance Agency, Inc., and Crop USA Insurance Services, LLC ("Crop USA Defendants") also joined Hawley Troxell Defendants' two motions to exclude. Dkts. 975, 976.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons outlined below, the Court finds good cause to GRANT in PART and DENY in PART the Hawley Troxell Defendants (joined by GemCap and Crop USA Defendants) Motion to Exclude Miesen's Expert Moran (Dkt. 907), to GRANT in PART and DENY in PART the Hawley Troxell Defendants (joined by GemCap and Crop USA Defendants) Motion to Exclude Miesen's Rebuttal Expert Witness Hile (Dkt. 908), and to DENY Miesen's Motion to Extend Expert Witness Disclosure Deadlines (Dkt. 947).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(2)(A) states that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal

Rule of Evidence 702, 703, or 705." If a witness is one retained or specially employed to provide expert testimony in a case, or one whose duties as the party's employee regularly involve giving expert testimony, the disclosure must be accompanied by an in-depth written report. Fed. R. Civ. P. 26(a)(2)(B). If an expert is not one of the latter categories, the witness need not prepare the same in-depth written report, but the disclosure must convey "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(C)(i). Additionally, a "summary of the facts and opinions to which the witness is expected to testify" must be disclosed. Fed. R. Civ. P. 26(a)(2)(C)(ii).

The purpose of these disclosure requirements is to "prevent surprise testimony by ensuring that opposing parties are aware of the nature of the expert opinions prior to trial." *DR Sys., Inc. v. Eastman Kodak Co.*, No. 09cv1625-H (BLM), 2009 WL 2982821, at *3 n. 2 (S.D. Cal. Sept. 14, 2009) (cleaned up). If a party fails to provide information or identify a witness as required by the rule, the party is not allowed to use that information or witness to supply evidence at trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. Rule 37(c)(1). Rule 37(c)(1) "gives teeth to [the Rule 26(a) disclosure] requirements by forbidding the use at trial any information not properly disclosed under Rule 26(a)." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Rule 37(c)(1) is recognized as a broadening of a court's sanctioning power and is "self-executing" and "automatic." *Id.* Moreover, because of the automatic nature of this sanction, courts are not required to make a finding of willfulness or bad faith prior to excluding expert testimony at trial. *See Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d

1175, 1180 (9th Cir. 2008).

The trial court has wide latitude in using its discretion to issue sanctions under Rule 37(c)(1). *See Yeti by Molly*, 259 F.3d at 1106. The burden is on the disclosing party to show that the delay in properly disclosing an expert witness was substantially justified or harmless. *See id.* at 1106–07 (explaining that it is implicit in Rule 37(c)(1) that burden is on party facing sanctions to prove harmlessness). Despite the severity of this exclusionary sanction, it may be appropriate "even when a litigant's entire cause of action or defense has been precluded." *Id.* at 1106 (citing *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001)).

## III.   DISCUSSION

The Court first addresses the motions to exclude. Then, the Court addresses Miesen's motion to extend. Before doing so, however, the Court highlights the Seventh Circuit's recent apt description of the common outcome in a scenario such as the one here: "Parties who fall short on their disclosure obligations generally lose out on their expert evidence, as Rule 37(c) and plenty of caselaw make plain." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 419 (7th Cir. 2019) (cleaned up).

### A.  Exclusion of Expert Patrick Moran (Dkt. 907)

Miesen concedes that his disclosure of Moran as a case-in-chief expert and the accompanying expert report were late. Miesen originally identified Moran as a lay person with knowledge of this case on December 15, 2016. Dkt. 907-1, at 2. Miesen's initial expert witness disclosures were ultimately due on or before August 5, 2019. Dkt.  602. Moran was not disclosed as either a retained or "non-retained" expert witness at that time. Miesen

disclosed Moran as a "[n]on-retained expert witness," to "respond to the opinions offered by the expert witnesses for the Hawley Troxell Defendants" on February 21, 2020. Dkt. 907-1, at 2 (cleaned up). Months later, Miesen disclosed Moran's corresponding written report.

The Hawley Troxell Defendants argue that Miesen should be precluded from offering rebuttal and/or case-in-chief expert testimony by Moran because: (1) the disclosure of Moran as an expert witness is subject to the disclosure and written report requirements for retained experts under Rule 26(a)(2)(B); (2) Miesen's disclosure of Moran as an expert and the provision of Moran's report were untimely; and (3) Moran's expert testimony is improper in any event. Miesen, of course, has his counterarguments. The Court will address the parties' various contentions in turn.

### 1. Meet and Confer

As a preliminary matter, the Court addresses Miesen's argument that the motion to exclude Moran should be denied under Federal Rule of Civil Procedure 37(a)(1) because the Defendants failed to meet and confer. Miesen states that if the Defendants had requested additional disclosures or a written report prior to filing this motion, he would have willingly complied. The Hawley Troxell Defendants argue a meet and confer meeting was not necessary because they seek sanctions for Miesen's failure to comply with Rule 26(a), and not discovery. The Hawley Troxell Defendants are correct.

The Hawley Troxell Defendants moved to exclude expert witness testimony pursuant to Federal Rules of Civil Procedure 26(a) and 37(c). Under Rule 26(a), parties are required to make certain disclosures. Under Rule 37(a)—as opposed to Rule 37(c) which

is at issue here—parties may move for an order compelling disclosure required by Rule 26(a) after meeting and conferring. *See also* Dist. Idaho Loc. Civ. R. 37.1. However, there is no requirement under Rule 37(c) for parties to meet and confer prior to moving to exclude testimony due to a failure to disclose, supplement an earlier response, or admit. *See Sherwood v. BNSF Ry. Co.*, No. 1:16-cv-00008-EJL-REB, 2018 WL 3340571, at *3 (D. Idaho July 6, 2018).

Here, the Hawley Troxell Defendants move to exclude improperly disclosed expert witness testimony, and thus seek sanctions under Rule 37(c), not Rule 37(a). Miesen's argument essentially attempts to flip the script by improperly shifting the burden of warning him of his duties to comply with the Federal Rules of Civil Procedure to the Defendants. Although it may be good practice to meet and confer prior to filing such motions, the Defendants were not obligated to do so.

   *2.  Effect of Late Disclosure*

Although they contend Moran was untimely disclosed as an expert witness, the Defendants do not dispute that the disclosure of Moran as a rebuttal expert witness is timely. Instead, they argue that the Moran disclosure contains opinions outside the scope of rebuttal testimony allowed under Rule 26. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (stating that—absent a stipulation or a court order—expert witness disclosures must be made: "(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure"). To the extent Moran is acting as a case-in-chief expert, the Hawley Troxell Defendants contend that he should be prevented from so testifying. Miesen argues

that Moran's disclosure as a rebuttal witness was timely *and* that Moran should also be permitted to offer his opinions in Miesen's case-in-chief. Dkt. 941, at 6.

Because Miesen untimely disclosed Moran as a case-in-chief expert witness, the Court turns to what Miesen was required to disclose and whether failure to comply with those requirements was substantially justified or harmless.

### 3.  *Retained vs. Non-Retained*

All parties agree that Moran qualifies and was timely disclosed as a lay witness in Miesen's initial disclosures served on December 15, 2016. Moran was identified at that time as a lay witness with factual knowledge of "AIA Services' refusal to honor his appointment to the board of directors, by and through John Taylor, Connie Taylor Henderson, James Beck and the attorneys at Hawley Troxell." Dkt. 907-1, at 2 (cleaned up). Moran is an attorney who previously acted as counsel for Reed Taylor in late 2006 and early 2007 in settlement negotiations in a related state court case. Dkt. 941, 16-17; Dkt. 907-2, at 2.

The parties dispute whether Moran is "retained" because Moran is not charging Miesen a fee. Miesen asserts that lack of payment makes Moran non-retained, whereas the Defendants maintain that payment is merely one factor in the analysis and that more determinative factors, such as the source of the witness's knowledge, mean Moran was retained. Essentially, the parties debate whether Moran falls under Federal Rule of Civil Procedure 26(a)(2)(B) or (C) because, again, under the former, a written report was necessary. Conversely, expert witnesses not covered under Rule 26(a)(2)(B) are not obligated to provide a written report but most disclose the subject matter of their testimony

and a summary of their opinions. Fed. R. Civ. P. 26(a)(2)(C). There is no evidence that Moran is regularly employed by Miesen, so the focus is on whether Moran is "retained or specially employed" under Rule 26(a)(2)(B).

The Hawley Troxell Defendants contend that "the designation as retained or non-retained depends on how the witness came to know the underlying facts and whether they developed opinions for litigation." Dkt. 964, at 2 (cleaned up). As an example of this rule, the Hawley Troxell Defendants highlight Ninth Circuit jurisprudence holding non-retained treating physicians exempt from the disclosure requirements of Rule 26(a)(2)(B) only "to the extent that [their] opinions were formed during the course of treatment." *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011). The Hawley Troxell Defendants point out that "the critical distinction between retained and non-retained experts is the nature of the testimony the expert will provide, and whether it is based only on percipient knowledge or on information reviewed in anticipation for trial." *Cantu v. United States*, No. CV 14-00219 MMM (JCGx), 2015 WL 12743881, at *5 (C.D. Cal. Apr. 6, 2015).

Miesen acknowledges that *Goodman* "permits the inference that non-retained experts should be limited to testifying to the opinions that they had prior to the litigation," but argues the plain text of Rule 26(a)(2)(B) and (C), as well as opinions in sister circuits, support his conclusion that an expert must be paid in order to be deemed "retained." Dkt

941, at 7–8.[1] Neither of Miesen's arguments is compelling.

To begin, courts are to "give the Federal Rules of Civil Procedure their plain meaning," and when the text is clear and unambiguous, the inquiry is complete. *Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 540–41 (1991) (cleaned up). Here, the plain language of Rule 26(a)(2) does not conclusively answer the question. The relevant language of Rule 26 is "if the witness is one retained or specially employed to provide expert testimony in the case," the witness must provide the required written report. Fed. R. Civ. P. 26(a)(2)(B). Most critically, this text does not explicitly state that to be a retained expert one must be paid.

Moreover, the Rule does not definitively align "retained" and "specially employed" experts, meaning that a retained expert could be in separate category from those who are specially employed. If truly separate, this would mean that "retained" and "specially employed" have distinct meanings, and that whether a witness is retained would require a clarifying definition from courts. Tellingly, numerous courts have indeed developed tests to define "retained" in this context. *See infra*.

However, even if the two terms were intended to be the same category, there is nothing that indicates "employed," in this context, means "paid" instead of its other common definitions, such as to "make use of" or to "entrust with performance of certain acts or functions." *See, e.g.*, *Employ*, Black's Law Dictionary (11th ed. 2019) (defining

---

[1] The Hawley Troxell Defendants note that Miesen has not identified which of Moran's opinions, if any, he had prior to litigation, and contend that Miesen has not addressed the problem that Moran cannot unsee what he reviewed for this litigation. The Court agrees. It is impossible for others to determine whether Moran's pre-suit opinions were influenced by the additional information he reviewed for this litigation. Compliance with Rule 26(a)(2)(B) would have prevented this problem.

"employ" as "1. To make use of. 2. To hire. 3. To use as an agent or substitute in transacting business. 4. To commission and entrust with the performance of certain acts or functions or with the management of one's affairs."). Because the text of Rule 26 does not plainly supply an answer to the question at hand—whether payment is a necessary condition of a retained expert—the Court must look beyond its language.

When the caselaw is considered, it becomes evident that payment is not determinative of whether an expert is retained. In *Goodman*, the Ninth Circuit held that doctors the plaintiff intended to provide expert testimony were retained, even though they were percipient witnesses to the medical treatment they rendered as the treating physicians. 644 F.3d at 826. The court reasoned that, because the plaintiff specifically sought that the physicians testify about matters beyond the treatment the physicians provided plaintiff, and because plaintiff had the doctors review information "that they hadn't during the course of treatment," Rule 26(a)(2)(B) required disclosure of written reports. *Id.* The court concluded, as have others, when a witness considers additional information to develop opinions for litigation, the witness is subject to the disclosure requirements. Payment is not necessary. *Id.*; *see also Cantu*, 2015 WL 12743881, at *5; *United States. v. Sierra Pacific Industries*, No. CIV S-09-2445 KJM EFB, 2011 WL 2119078, *4 (E.D. Cal. 2011) ("The distinguishing characteristic between expert opinions that require a report and those that do not is whether the opinion is based on information the expert witness acquired through percipient observations or whether, as in the case of retained experts, the opinion is based on information provided by others or in a manner other than by being a percipient witness to the events in issue.").

Moreover, the out-of-circuit cases Miesen cites do not support his position.[2]  For instance, in *Downey v. Bob's Disc. Furniture Holdings, Inc.*, the First Circuit held that an expert was not "retained or specially employed" because he did not hold himself out for hire as an expert, did not charge a fee, and his opinion testimony arose "from his ground-level involvement in the events giving rise to the litigation." 633 F.3d 1, 6 (1st Cir. 2011). Although it referenced payment, this was only a single, non-determinative factor in the First Circuit's assessment of whether an expert witness was "retained" pursuant to Rule 26(a)(2)(B). Notably, the *Downey* court observed in a footnote that "in some cases an on-the-scene expert whose views are not subject to the written report requirement of Rule 26(a)(2)(B) might also be retained or specially employed to develop *additional* opinions for purposes of trial (and would, to that extent, trigger the written report requirement)." *Id.* at 8 n.5 (emphasis in original).

The *Downey* court's approach is congruent with the *Goodman* court's approach. Both cases lead to the conclusion that non-retained experts should be limited to testifying as to the opinions that they had prior to the litigation; if their opinion was developed based on information provided to them by a party in the course of litigation, they are more aptly viewed as "retained."

The other cases Miesen cites, *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 370 (7th Cir. 2017), and *Compass Bank v. Eager Rd. Assocs.*,

---

[2] Miesen also cites the 1993 Advisory Committee Note to Rule 26(a)(2), but Rule 26(a)(2) was significantly amended in 2010 to address concerns about expert discovery. As such, the Court does not find an Advisory Committee Note to the 1993 version of the rule persuasive.

*LLC*, No. 4:12CV1059JCH, 2013 WL 5786634 (E.D. Mo. Oct. 28, 2013), do not support Miesen's position because they are factually distinguishable. They involve experts that had specialized knowledge but were not provided additional information or facts in preparation for trial. Here, as further explained below, Moran *has* reviewed numerous files and other evidence in preparation for trial. Moreover, in *Compass*, the court noted that whether a witness is paid is only one factor in determining the witness' retention status. 2013 WL 5786634, at *4 (cleaned up). In short, the non-binding cases he cites do not support Miesen's position that payment is essential for an expert to be deemed "retained" under Rule 26.

Here, Moran is not a physician or other healthcare professional. Nor does he come to the case as a stranger—he is a lay witness. However, Moran plans to offer expert opinion and testimony on matters that caused him to review extensive evidence beyond his personal knowledge of this case. For example, Moran states that he "incorporates by reference the facts and opinions contained within . . . Hile's Report dated February 7, 2020 and any subsequent versions unless this disclosure is supplemented to state otherwise. The material facts provide substantially more than a summary of the facts relied up by Mr. Moran for his opinions." Dkt. 907-4, Exhibit B, at 3. Moran also relies on a list of itemized estimated preliminary damages provided by Miesen, and notes he will review supplemental disclosures by the Hawley Troxell Defendants to Miesen "and any other necessary information" to form his opinion. *Id*. at 3–4. Additionally, Moran states he based his opinion on facts provided by counsel—Roderick Bond—and "key depositions" he anticipates reviewing. *Id*. at 4.

MEMORANDUM DECISION AND ORDER - 12

Therefore, in order to form his expert opinions (for rebuttal and for case-in-chief) Moran has drawn his opinion in part from facts supplied by others in preparation for trial. In other words, like the physicians in *Goodman* and the hypothetical witness in *Downey*, Moran has been specially employed to develop *additional* opinions for purposes of trial, thereby triggering the written report requirement under Rule 26(a)(2)(B). Moran failed to timely comply with Rule 26(a)(2)(B) by the deadline set in the scheduling order.

Although he primarily contends Moran is not a retained expert, in the alternative, Miesen suggests that Moran's declaration met the requirements of a written report. However, the declaration fell short of several requirements for a written report. The declaration does not appear to have been "prepared and signed by the witness." Fed. R. Civ. P. 26(a)(2)(B). It does not contain "a complete statement of all opinions the witness will express and the basis and reasons for them." *Id.* True, supplementing the report is proper, but it must purport to be complete in the first instance. It also does not contain any exhibits, list of publications authored by Moran, a list of cases in which he has testified, or a statement of compensation. *See id.* Therefore, the declaration does not qualify as a written report.

The Court next turns to the questions of whether the late disclosures were harmless and justified, or whether Miesen should be sanctioned for his non-compliance by excluding Moran's case-in-chief expert witness testimony.[3]

---

[3] The Hawley Troxell Defendants also contend that Moran's rebuttal expert testimony should be wholly excluded because it in fact is a "ploy to try to slip Mr. Moran in through the back door when he missed his opportunity to enter through the front as a case-in-chief expert." Dkt. 964, at 4. This issue is one that is

(Continued)

### 4.   Harmless and Justified

As noted, Rule 37(c)(1) "forbid[s] the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Hoffman*, 541 F.3d at 1179; *see also Yeti by Molly, Ltd.,* 259 F.3d at 1106. Rule 37 provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.
>
> In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1). "The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012) (citing *Torres v. City of L.A.,* 548 F.3d 1197, 1213 (9th Cir. 2008)). Factors that may assist the court in determining whether "a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of

---

better left to trial when the specific testimony is presented. Until the Defendants' case is presented, it would be premature to determine what testimony is proper rebuttal testimony.  After Defendants present their case, the Court can assess whether Moran's testimony constitutes case-in-chief opinions dressed in the disguise of rebuttal testimony, which of course would be improper. Similarly, specific objections to Moran's expert testimony should be raised when he seeks to offer it at trial. Whether the testimony is speculative, improper bolstering, cumulative, or otherwise inadmissible will depend on the specific testimony before the Court. The Court exercises its discretion to withhold a ruling on such matters.

MEMORANDUM DECISION AND ORDER - 14

that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010) (citation omitted).

Miesen contends that his over six-month late disclosure was both harmless and justified. He specifically argues that the late disclosure was justified because: (a) he lacked the money to retain a damage and accounting expert for his case-in-chief and so only found Moran (who was willing to testify unpaid) "by happenstance" *after* the Hawley Troxell Defendants named an accounting and damages expert; (b) even if the Court finds Moran to be "retained," Miesen's presumption that Moran was unretained because he was not paid justified Miesen's production of only the Moran Disclosure; (c) Miesen's many and multiple motions in this case have slowed his ability to timely and fully comply with discovery deadlines; and (d) as Moran is a rebuttal expert, Miesen is economically and logically justified in also using him as an expert witness in his case-in-chief. Dkt. 941, at 11–12.

The Court is unpersuaded by Miesen's arguments. Miesen timely disclosed Moran as a fact witness on December 15, 2016—years before Miesen's initial expert witness disclosures were due on August 5, 2019. On April 24, 2017, Miesen filed his Third Amended Complaint, in which he alleged eleven counts, including breach of fiduciary duties and contract claims. Dkt. 211. In the pleading, he alleges, among other things, that (1) "the Hawley Troxell Defendants are liable to AIA for damages in the amount to be proven at or before the time of trial" (*id.* at 66); (2) the damages were "[a]t a minimum . . . millions of dollars" (*id.* at 35); and (3) defendants should be held liable "jointly and

severally and/or individually, for all damages in an amount *to be proven for each defendant at or before trial . . . .*" (*id.* at 79) (emphasis added).

Thus, Miesen knew for years that he would need to prove damages at trial. Yet, he only disclosed Moran as a damages and accounting expert witness on February 21, 2020. Miesen's contention that that he did not know he would need to incur the expense of retaining a damages and accounting expert until the Hawley Troxell Defendants disclosed they were retaining one ignores his duty to prove damages and is unpersuasive. Moreover, the record shows that Miesen's untimely retention of Moran was the result of Miesen's intentional and deliberate strategy to try to prove damages through lay witnesses. It was not until he second-guessed that strategy (after the Hawley Troxell Defendants timely disclosed Mr. Pinkerton) that Plaintiff considered offering any expert testimony from Moran.

Miesen suggests that this wait-and-see approach is supported by the rulings of another Judge of this District in other cases, citing *Mueller v. Auker*, No. CV-04-399-S-BLW, 2006 WL 4524340, at *2 (D. Idaho Nov. 28, 2006), and *Adams v. United States*, No. 03-0049-E-BLW, 2009 WL 1324227, at *1 (D. Idaho May 7, 2009). However, those cases are factually distinguishable. The party in *Mueller* was waiting for a ruling from the Court on a motion to amend to assert a new claim. 2006 WL 4524340, at *2. And the plaintiffs in *Adams* disclosed their expert on time, but did not know that they also needed to disclose the underlying expert whose report was attached and upon which the disclosed expert relied on. 2009 WL 1234227, at *1. Here, Miesen simply chose not to timely disclose Moran plain and simple. He was not awaiting a crucial ruling from the Court, and he was not

merely confused about whether an underlying expert needed to be disclosed.

Moreover, a bright-line rule that plaintiffs do not need to disclose an expert until defendants have done so would run directly contrary to the tenets of Federal Rule of Civil Procedure 26(a). The Court will not so hold. In short, Miesen has not meet his burden of proving that his failure to disclose the required information was substantially justified.

Miesen also maintains that his admittedly late disclosure and report are harmless. Excusing Miesen's misstep, however, would exact a significant amount of harm on the Defendants. They would be required to re-evaluate extensive amounts of their timely disclosed expert testimony, prepare supplemental reports, potentially designate new expert witnesses, and delve into discovery once more on the experts' opinions—discovery that has taken years to complete. The practical consequence of Miesen's request would be to force the parties to re-engage in expert discovery that has already closed, with all its concomitant costs and delays. This type of domino effect on discovery that has already taken so long would cause harm to the parties and continue to bog down the Court's docket.

The Ninth Circuit in *Goodman* aptly described a similar situation:

> Because the plaintiff had not yet disclosed any expert reports, the defendant made its decisions regarding defense experts under the belief that the plaintiff's non-medical experts would not be testifying in her case-in-chief. The defendant's experts developed their opinions and wrote their reports without knowing the scope of the plaintiff's experts' opinions. The defendant did not disclose an economist at all, because it thought the plaintiff would not be presenting an economist in her case-in-chief. The district court found that this was "obvious prejudice," and we agree.

644 F.3d at 827 (cleaned up). So too here, Defendants have relied on Miesen's non-disclosure in preparing their defense. Allowing Miesen to throw off this standard procedure

of expert disclosures would work an injustice to Defendants. *See id.*; *Ashby v. Mortimer*, No. 4:18-CV-00143-DCN, 2020 WL 572718, at *21 (D. Idaho Feb. 5, 2020). The untimely disclosure here is far from harmless, and the Court must not permit it.

In sum, none of the factors tip in Miesen's favor. The late disclosure has the potential to cause significant prejudice that would not be cured by simply permitting late disclosure, as explained. Accepting the late disclosure would greatly disrupt the trial schedule in an already very protracted case. Lastly, the untimely disclosure was a willful strategic choice rather than an honest mistake. Miesen weighed the costs of hiring an expert to prove damages and other elements of his prima facie case, and only disclosed Moran after Defendants disclosed their experts. Simply put, Moran has not established his tardy disclosure was either justified or harmless. *See Lanard Toys Ltd.*, 375 F. App'x at 713.

*5. Conclusion*

In conclusion, Moran cannot testify as a case-in-chief expert witness because he and his report were unjustifiably disclosed at an untimely and prejudicial juncture in this litigation. Moran's lay and rebuttal testimony will be subject to the typical objections at trial. Accordingly, the Motion to Exclude Moran's Testimony is GRANTED in PART and DENIED in PART.

### B.  Motion to Exclude (Dkt. 908)

The Hawley Troxell Defendants similarly move to exclude expert Hile's testimony under the same rules of procedure: Federal Rules of Civil Procedure 26(a) and 37(c), and Local Civil Rule 26.2(b). Again, GemCap and the Crop USA Defendants join this motion. Dkts. 931, 975.  Hile is a retired CPA, whom Miesen wishes to give opinions regarding the

basis for, and amounts of, the alleged damages Miesen seeks to recover from Defendants. Like the Moran disclosure, Hile and his written report were disclosed on February 7, 2020—more than six months after the deadline for case-in-chief testimony. However, Hile's disclosure was timely for rebuttal testimony.

The parties repeat many of their same arguments with respect to Moran's testimony in seeking to exclude Hile's testimony. Yet again, none of Miesen's points are persuasive. For the same reasons above, the Court will allow Hile to testify as a rebuttal witness, subject to other objections the Defendants may lodge, but Hile may not testify as a case-in-chief expert. Accordingly, the Motion to Exclude Hile's Testimony is GRANTED in PART and DENIED in PART.

### C. Motion to Extend Expert Disclosures (Dkt. 947)

In the alternative to his arguments against the motions to exclude, and "in an abundance of caution," Miesen moves the Court to extend the expert disclosures deadline. Dkt. 947-1, at 5. The Court will not do so.

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Where a motion to extend the deadline is filed after the deadline that the party is seeking to extend, as is the case here, the party must show both good cause and excusable neglect. Fed. R. Civ. P. 6(b)(1)(B); *Savage v. City of Twin Falls*, No. 1:13-cv-00179-ELJ-REB, 2015 WL 12681319, at *7 (D. Idaho Jan. 20, 2015) ("If made after the deadline, the party seeking the extension must show not just good cause, but also that the deadline was missed because of excusable neglect." (cleaned up)).

Here, Miesen argues that his late disclosure is excusable because he didn't know he

would need an expert until the defense experts were disclosed, he did not have the funds to retain an expert until his attorney reluctantly agreed, and he was unaware that Moran would testify at no cost to him. He further asserts that an extension would not impact the proceedings. He then blames Defendants for his late disclosure, as they had not disclosed their experts and had also not disclosed certain documents at the time his expert disclosure was due. For the reasons outlined above, none of Miesen's arguments are persuasive. In short, there is neither good cause nor excusable neglect to extend the expert disclosure deadline.

### 1. *Good Cause*

First, Miesen has not demonstrated good cause to extend the deadline. Good cause primarily considers the diligence of the party seeking an amendment of a scheduling order. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). As noted above, Miesen's choice not to disclose his experts was a deliberate, cost-benefit choice rather than due to inadvertence, mistake, or some other explicable cause. Deliberately choosing not to follow a deadline conclusively cuts against an argument for good cause. *Jones v. Koons Auto., Inc.*, No. 09-3362, 2013 WL 3713845, *8 (D. Md. July 15, 2013) (holding that the "economic-based tactical decision not to designate an expert witness" because the party "did not want to spend the money to hire an expert in case the parties settled" was "not without consequence" and did not constitute good cause to extend an expired disclosure deadline); *Minden Pictures, Inc. v. Pearson Educ., Inc.*, 929 F. Supp. 2d 962, 967 (N.D. Cal. 2013) (explaining that a "very late" disclosure was not substantially justified where initial non-disclosure was strategic choice); *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d

748, 759–60 (8th Cir. 2006) (holding that tactical decisions are not good cause to modify case management orders and rejecting an attempt to re-designate "rebuttal" expert as case-in-chief expert); *Bruce v. Cty. of Rensselaer*, No. 02-CV-0847, 2003 WL 22436281, *3 (N.D.N.Y. Oct. 20, 2003) ("Plaintiffs … made a knowing and voluntary strategy choice. Having made that choice, they must now live with the results."); *Wells v. Rockefeller*, 728 F.2d 209, 214 (3d Cir. 1984) (denying relief from the consequences of a tactical/strategic decision); *Downing v. Am. Airlines, Inc.*, No. 86 CV 3048, 1988 WL 49211, n. 1 (E.D.N.Y. May 9, 1988) (stating that a "litigation strategy cannot be deemed 'good cause'"); *Berger v. Rossignol Ski Co.*, 2006 WL 1095914, *5 (N.D.Cal. Apr. 25, 2006) (explaining that there was not good cause for late amendment where the initial claim omission was "a deliberate strategic course which plaintiffs now wish to change"); *Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594 (8th Cir. 2011) (holding that there was not good cause for the requested extension where the failure to meet a deadline was a tactical decision).

Additionally, as noted above, Miesen knew that his prima facie case involved proving damages. So, his argument that he did not know he would need an expert to prove millions of dollars in damages is wholly uncompelling. Miesen's other arguments show a lack of diligence on his part and further buttress the point that his was a weighed economical choice, not one which carries a viable excuse. The Crop USA Defendants also persuasively point out that Miesen does not identify which documents they purportedly failed to disclose and how such failure affected his decision regarding expert disclosures. Miesen merely states that unidentified documents were not disclosed. The discovery deadline was extended several times—for almost two years, giving Miesen plenty of time

to review discovery and make his decision. Plus, blaming Defendants for not disclosing their experts is meritless because Defendants timely disclosed their experts in accordance with the Court's schedule and the typical course of civil procedure. The record simply does not support Miesen's assertion that Defendants were responsible for his failure to timely disclose his experts.

Accordingly, the Court does not find good cause to extend the expert disclosure deadline. The absence of good cause is reason enough for the Court to deny Miesen's motion.

### 2.  Excusable Neglect

Nevertheless, Miesen has also failed to show excusable neglect. "To determine whether a party's failure to meet a deadline constitutes 'excusable neglect,' courts must apply a four-factor equitable test, examining: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010). District courts have broad discretion in determining whether inaction constitutes excusable neglect due to the factual and equitable nature of the doctrine. *See id.* at 1258.

As explained above, extending the deadline would significantly prejudice Defendants. Prejudice requires greater harm than simply that relief would delay resolution of the case. *Lemoge v. United States*, 587 F.3d 1188, 1196 (9th Cir. 2009). Here, the harm would be much more than mere delay. Defendants would have to essentially re-do expert discovery, which would not only prolong this already lengthy case, but would also force

MEMORANDUM DECISION AND ORDER - 22

them to incur significant expenses. This prejudice is compounded by the reliance Defendants placed on Miesen's nondisclosure in preparing a defense. In addition, Miesen's delay was lengthy. It was not a mere few days or weeks. His disclosures were more than six months late. And, the Court has explained the impact an extension would have on these already protracted proceedings. The Court will not permit another round of expert discovery. Again, Miesen's reason for the delay was a deliberate choice. Lastly, there does not seem to be an aspect of good faith or bad faith here. Rather, the choice was made due to financial strategic reasons. Now, Miesen must bear the costs of that decision. His neglect is not excusable, which provides an independent reason to deny his motion.

### 3. Conclusion

Because Miesen has not demonstrated good cause or excusable neglect, the Court exercises its discretion to DENY Miesen's Motion to Extend.

## IV.   CONCLUSION

This situation is not one in which the Court "mindlessly" seeks to enforce an arbitrary deadline for some arbitrary reason. *See Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005). The expert witness disclosure deadline was necessary to move this protracted case along. The Court has already provided five extensions to discovery deadlines—totaling almost two years. *See* Dkt. 191 (original deadline of September 1, 2017); *see also* Dkts. 274, 398, 484, 522, 602 (subsequent orders extending the deadline). The Court also warned the parties numerous times that its case management orders and discovery deadlines had to be followed. *E.g.*, Dkts. 602, 712, 800, 843, 865, 943. Still, Miesen failed to follow the discovery deadlines. He was not justified in doing

so. His follies were not harmless. Thus, the Court will utilize its discretion to disallow expert testimony from Moran and Hile in Miesen's case-in-chief, and to deny Miesen's request to extend the expert witness disclosure deadlines. Lesser sanctions simply will not remediate the error at this juncture of the proceedings.

## V.    ORDER

1. The Hawley Troxell Defendants' Motion to Exclude Expert Patrick Moran (Dkt. 907) and its corresponding Motions to Join (Dkts. 932, 976) are GRANTED in PART and DENIED in PART. Moran may not provide case-in-chief testimony, but he may testify as a lay and rebuttal witness.

2. The Hawley Troxell Defendants' Motion to Exclude Rebuttal Expert Lawrence M. Hile (Dkt. 908) and its corresponding Motions to Join (Dkts. 931, 975) are GRANTED in PART and DENIED in PART. Hile may not provide case-in-chief testimony, but he may testify as a rebuttal expert.

3. Plaintiff's Motion to Extend the Expert Witness Disclosure Deadlines as to Patrick Moran and Lawrence M. Hile (Dkt. 947) is DENIED.

4. The Court's stay from its previous Order (Dkt. 1089) remains in force.

DATED: March 24, 2021

David C. Nye
Chief U.S. District Court Judge