UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.,<br><br>      Plaintiff,<br><br>  v.<br><br>HAWLEY TROXELL ENNIS & HAWLEY LLP, et al.,<br><br>      Defendants,<br><br>  and<br><br>CROP USA INSURANCE SERVICES, LLC, et al.,<br><br>      Defendants/Third-Party Plaintiffs,<br><br>  v.<br><br>REED TAYLOR, an individual,<br><br>      Third-Party Defendant. | Case No. 1:10-cv-00404-DCN<br><br>**MEMORANDUM DECISION AND ORDER REGARDING TWO MOTIONS (DKTS. 1068, 1069)** |

## I. INTRODUCTION

Pending before the Court are two Motions to Exclude Miesen's expert witness Richard McDermott. Dkts. 1068, 1069. McDermott is a lawyer and law professor. In short, the first motion advances a theory that McDermott has become an advocate instead of an

expert witness and must be excluded from testifying under Federal Rules of Evidence 403 and 702. *See generally* Dkt. 1068. The second motion involves whether McDermott is improperly providing expert testimony on a contingency fee basis and whether that would also require his exclusion as an expert witness. *See generally* Dkt. 1069. Defendants Hawley Troxell Ennis & Hawley LLP, Gary D. Babbitt, D. John Ashby, and Richard A. Riley's ("the Hawley Troxell Defendants") filed both motions.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *United States v. Alatorre*, 222 F.3d 1098, 1100 (9th Cir. 2000) ("[T]rial courts are not compelled to conduct pretrial hearings in order to discharge the gatekeeping function.").

For the following reasons, the Court finds good cause to GRANT the first Motion to Exclude (Dkt. 1068) and DENY as MOOT the second Motion to Exclude (Dkt. 1069).

## II. LEGAL STANDARD

The party who seeks to introduce expert testimony evidence must show by a preponderance of the evidence that the testimony is admissible under Federal Rule of Evidence 702. *See* Fed. R. Evid. 104(a); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 & n.10 (1993); *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987). In *Daubert*, the Supreme Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony. 509 U.S. at 597. In *Kumho Tire Co. v.*

*Carmichael*, the Supreme Court clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science. 526 U.S. 137, 158 (1999). In short, district courts act as gatekeepers to ensure that expert testimony is reliable, relevant, and otherwise admissible before allowing it to be presented at trial. *Daubert*, 509 U.S. at 597.

### III. DISCUSSION

In his responses to the two motions, Miesen raises various preliminary issues, which the Court will address one by one. After explaining why the Court disagrees with Miesen's arguments, the Court will address the substance of the two motions.

### A. Preliminary Issues

First, Miesen contends that McDermott's deposition transcripts that the Hawley Troxell Defendants rely on are inadmissible in this matter because Miesen did not have the opportunity to cross-examine McDermott. However, the Court is not bound by the evidentiary rules at this juncture. "The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a); *Daubert*, 509 U.S. at 592 (noting that, when faced with a proffer of expert testimony, the trial judge must determine whether the expert's proposed testimony is admissible pursuant to Rule 104(a)). The motions at hand relate to whether McDermott is a qualified expert witness and, in turn, whether his testimony is admissible. Some of the Hawley Troxell Defendants' references are to McDermott's deposition testimony, but the majority of the record support for the motions are from McDermott's declarations and expert report. Because the Court is not bound by exclusive evidentiary rules, the Court can and will

consider the deposition testimony, giving it the weight it deems appropriate.[1]

Miesen then asserts that the motions should be denied because the Hawley Troxell Defendants did not meet and confer with him on these matters. This point is unavailing. The parties were under no obligation to meet and confer prior to filing these motions. The authorities Miesen cites—a local rule and a case—are inapposite. The local rule is focused on fairness and civility and requires parties to work with one another in good faith to resolve disputes; however, it does not require an attempted agreement in every circumstance, and the rule says nothing about whether such an attempt is required prior to filing the types of motions involved in this matter. *See* Dist. Idaho Loc. Civ. R. 83.8(4) (requiring "good faith efforts to resolve by agreement any disputes"). The case Miesen cites is distinguishable. In that case, the court affirmatively "required the parties to meet and confer before filing motions in limine" and, because the parties did not do so, the court summarily denied the motion. *Halbert v. Cty. of S.D.*, No. 07cv1607-L(WVG), 2011 WL 13356067, at *1, 3 (S.D. Cal. June 27, 2011). No such order was imposed here.[2]

Next, Miesen argues that the Hawley Troxell Defendants' allegations are entirely unsupported and should be summarily rejected. The Court disagrees. Both sides have supported their claims and arguments with the record and provide citations to legal authority sufficient to avoid immediate rejection. Indeed, the Hawley Troxell Defendants

---

[1] Miesen's point that he was never able to cross-examine McDermott is well taken and remains in the Court's mind throughout its analysis. That said, the majority of the support for the Court's decision on this matter comes from McDermott's declarations, filed by Miesen, not his deposition testimony.

[2] During this argument, Miesen also tangentially asserts that the Court could handle this matter at trial. While this is true, nothing precludes the Court from resolving the matter before trial.

MEMORANDUM DECISION AND ORDER - 4

have included ample support for their claims by referring to McDermott's declarations, deposition testimony, report, other evidence, and assorted legal authorities.

Lastly, Miesen suggests that the Court should not consider the matters in the Hawley Troxell Defendants' motions that refer to declarations because those references improperly circumvent the memorandum page limits. Both sides have referred to declarations and other extraneous materials, and nothing precludes them from doing so. *See* Dist. Idaho Loc. Civ. R. 7.1(a)(2), (b)(1) (restricting a party's brief to certain page limits). That said, use of references to other documents is disfavored and generally less persuasive than including the material in the brief. Here, the Hawley Troxell Defendant's citations and references to the record were proper and very helpful. Ultimately, the Court has considered both sides' entire briefs.

In short, the Court disagrees with Miesen's preliminary arguments for denying the Hawley Troxell Defendants' motions. Consequently, the Court turns to the first motion.

### B. Has McDermott Assumed the Improper Role of an Advocate?

In their first motion, the Hawley Troxell Defendants seek exclusion of McDermott as an expert witness pursuant to Federal Rules of Evidence 403 and 702. They assert that McDermott's expert testimony, declarations, and report include "inadmissible opinions offered by a lawyer who has taken on the role of advocate and co-counsel for Miesen." Dkt. 1068-1, at 1–2. They claim that this improper lens of advocacy, rather than objective expert witness testimony in this case, makes McDermott's opinions unhelpful to the jury, highly prejudicial, and lacking in probative value. The Court agrees.

"Where an expert becomes an advocate for a cause, he . . . departs from the ranks

of an objective expert witness, and any resulting testimony would be unfairly prejudicial and misleading." *Elliot v. Versa CIC, L.P.*, 349 F. Supp. 3d 1004, 1006–07 (S.D. Cal. 2018) (cleaned up). This is because "[a]n expert's role is to assist the trier of fact by providing information and explanations; the expert's role is not to be an advocate." *Haldiman v. Cont'l Cas. Co.*, No. CV-13-736, 2014 WL 12670637, at *8 (D. Ariz. Aug. 26, 2014), *aff'd*, 666 F. App'x 612 (9th Cir. 2016). Attorneys are advocates, charged with zealously serving their client's interests. Expert witnesses, on the other hand, are employed to assist the parties in their pretrial preparation, and if called to testify, to give their unbiased opinion to assist the trier of fact in understanding the relevant evidence. *Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1085–86 (C.D. Cal. 2001). "When expert witnesses become partisans, objectivity is sacrificed to the need to win." *Cacciola v. Selca Balers, Inc.*, 127 F. Supp. 2d 175, 184 (E.D.N.Y. 2001) (internal citation omitted).

An example of this principle is contained in *Lippe v. Bairnco Corp.*, 288 B.R. 678 (S.D.N.Y. 2003). There, the court excluded an expert witness because the role the witness played in the case crossed the line from expert to advocate. *Id.* at 689. The court found it would be improper to allow the witness to testify for several reasons: (1) "he would be giving, in essence, a summation from the witness stand"; (2) he was going to testify as to witness credibility; (3) he acted as counsel for the plaintiffs at one point; (4) when he was an expert witness, he "functioned not just as an expert witness providing information, but he carried out the traditional functions of a lawyer-advocate—developing arguments and theories, anticipating and preparing responses to [the] defendants' defenses, and preparing lines of cross examination"; (5) "he acted in a completely partisan manner"; (6) the court

had "no confidence that [the expert] could limit his testimony to permissible areas" or "sanitize from any testimony his [partisan] views"; and (7) the court doubted that he could "testify with detachment and independence that one would expect from an expert witness offering views as a professional." *Id.* at 688.

Here, numerous pieces of the record bear out that McDermott has assumed the improper role of an advocate masquerading as an expert in this case. Before listing the specific reasons, however, it should be noted that some of these reasons alone would not suffice to cross the line from dedicated and passionate expert to unobjective and partial advocate. In their totality, though, these points demonstrate that McDermott has indeed crossed that line.

Many of McDermott's declarations have been, in substance, supplemental legal briefs that have included legal advocacy rather than expert testimony. Consider the following examples. In an attempt to obtain the Court's leave to file the Third Amended Complaint, McDermott made various arguments for why the Court should do so, including an opinion that the length of the pleading was appropriate and necessary. *See* Dkt. 194-6, ¶ 21. In support of a motion to continue, McDermott instructed the Court that the "attorney-client privilege is generally always waived" when a client sues an attorney and argues it would be unfair to deny access to certain attorney-client communications. *See* Dkt. 403-2, ¶ 26. In an effort to compel discovery, McDermott argued that a party could not assert privilege and work-product protections and that it would be "grossly unfair" for one party not to have to disclose certain information. *See* Dkt. 419-16, ¶ 47. McDermott also opposed the Hawley Troxell Defendants' motion to modify Discovery Master Order No. 1 regarding

categorical privilege logs, contending that such logs are inappropriate because they do not provide sufficient information to allow him to assess the privilege. *See* Dkt. 493-2, ¶ 4. While these declarations may be proper arguments for counsel to make, they obviously go beyond McDermott's role as an expert, demonstrating that he is, in substance, advocating, and show that he will be too partial to give reliable opinions or help the trier of fact in this case.

Moreover, McDermott's declarations even directly petitioned the Court for procedural concessions and discovery orders as if he were Miesen's counsel. *See, e.g.*, Dkt. 403-2, ¶ 29 (requesting a continuance of other witness's depositions so he could personally attend them); Dkt. 783-2, ¶ 77 (requesting a continuance of the deadline of his report); Dkt. 829-1, ¶ 8 (requesting another continuance).

McDermott has also expressly stated that *he* is pursuing Miesen's claims while advocating for certain documents to be turned over. Dkt. 783-2, ¶ 2 ("In order for me and Mr. Miesen to fully and fairly present his claims . . . it is imperative that we be provided with the opportunity to review *all* of the" withheld documents).

McDermott also stated his belief that evidence he had not yet obtained and had never reviewed would "likely further support," "likely confirm," "likely establish," and "likely reveal" information supporting the claims against the Hawley Troxell Defendants. Dkt. 403-2, ¶ 28. He also argued that, if the Hawley Troxell Defendants "had nothing to hide, they would have readily disclosed all of the privilege and work product information to Miesen because they would want him and this Court to know that they had nothing to hide." Dkt. 783-2, ¶ 63. This shows that he had prejudged in a very partial manner the evidence

before it was even disclosed.

McDermott also incorporated nearly all the paragraphs of the factual allegations set forth in the Third Amended Complaint "as support for [his] opinions." Dkt. 419-16, ¶ 31. Doing this is backwards (his opinions should objectively support or not support the allegations) and shows that he is seeking to prove a certain set of allegations true rather than opine on his view of the case from a professional and objective perspective.

Additionally, the Court agrees that McDermott's report "comments on virtually every legal and evidentiary issue [he thinks will] unfold before and during trial, including his opinions regarding the law the Court should apply and its interpretation, the merit and viability of claims and defenses, interpretation of evidence, legal issues such as statute of limitations tolling, the conduct of discovery in this case, legal conclusions the jury should reach, and widespread witness credibility assessments." Dkt. 1068-1, at 14–15. This goes beyond an expert report into the realm of legal briefing.

McDermott has also accrued an unpaid six-figure bill, and he has commented on various witness's credibility. *See* Dkt. 1068-1, at 18. These numerous examples are sufficient.

In short, McDermott has assumed a role of advocate rather than expert witness in this case, which leads the Court to preclude him from testifying as an expert for two reasons. First, his opinions do not meet muster under Federal Rule of Evidence 702 because they will not help the trier of fact and are the product of unreliable principles—impassioned and overly biased opinions amounting to advocacy. Second, the probative value of any relevant testimony he were to give would be substantially outweighed by a danger of unfair

prejudice and misleading the jury, thereby warranting exclusion under Federal Rule of Evidence 403. *See Daubert*, 509 U.S. at 595 (explaining that expert testimony can be "powerful and quite misleading," and "[b]ecause of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than lay witnesses" (cleaned up)).

Nevertheless, Miesen makes several counterarguments. He first attempts to distinguish some of the cases discussed above by repeatedly saying that they do not apply here. To Miesen's credit, some of the cases that the Hawley Troxell Defendants cite do seem less persuasive due to fewer analogous facts, such as *GST Telecommunications, Inc. v. Irwin*, 192 F.R.D. 109 (S.D.N.Y. 2000). But the Court finds the other cases discussed above, their statements of law, and their holdings very persuasive—especially *Lippe*. The principles in those cases are applicable here despite some immaterial distinctions.[3]

Miesen then offers what he deems an example of McDermott's impartiality to illustrate that he is in fact not partisan. He refers to an occasion where McDermott agreed that the agreements tolling the statutory period for claims were void. But this isolated example is an outlier and does not surmount the pool of data entries listed above to the contrary. And it likely does not even prove the point Miesen suggests because McDermott had to opine the agreements were void to maintain consistency with his other opinions that the directors lacked authority to enter agreements. Thus, the opinion does not show impartiality.

---

[3] For instance, although the expert in *Lippe* had arguably more compelling reasons to be excluded, the reasons listed above for excluding McDermott as an expert witness meet the standard.

Miesen also quotes McDermott himself saying he is not partial and that he is "here to call balls and strikes. I call them as I see them." Dkt. 1097, at 16. However, McDermott's construction of his views and how he has acted in this case is not dispositive. The Court is to assess that question. Moreover, the record belies McDermott's claim of partiality as explained above.

Miesen next argues that McDermott's involvement in the three related cases actually makes him *more* reliable than he otherwise would be. Although this may demonstrate that he is more knowledgeable of the history and facts of these interrelated cases, it does not prove or disprove his objectivity in this matter.

Miesen further asserts that "most of the testimony and opinions contained in [McDermott's] declaration will not even be relevant for trial." Dkt. 1097, at 18. This concession does not remove the partisan lens from McDermott's eye. It also acknowledges implicitly that McDermott delved into matters that he did not need to in this case and diminishes the probative value of McDermott's opinions. More importantly, the assertion does not improve McDermott's objectivity.

Lastly, Miesen "does not disagree that experts should not generally testify regarding" witness credibility, but he suggests that "McDermott can testify without mentioning any of those issues and none of his opinions rely upon those matters." Dkt. 1097, at 19. Even if McDermott were to constrain himself at trial, the damage has been done. He cannot remove the irreversible taint of advocacy from his views or opinions at this point.

In conclusion, McDermott will not be permitted to testify as an expert witness in

MEMORANDUM DECISION AND ORDER - 11

this case. In some cases, there may be a very fine line between passionate expert and improper advocate. It is important to note that "many expert witnesses are biased" and "lack of bias is not required for expert testimony to be admissible." *Lippe*, 288 B.R. at 688. In this case, however, the line of propriety has been crossed. The Court finds good cause to preclude McDermott from testifying as an expert witness under Federal Rules of Evidence 403 and 702. Accordingly, the Hawley Troxell Defendants' motion (Dkt. 1068) is granted.

### C. Is McDermott Being Improperly Paid a Contingency Fee?

In their second motion, the Hawley Troxell Defendants argue that McDermott is improperly receiving compensation for his expert testimony on the basis of a contingency fee. Whether an expert can receive a contingency fee is a hotly disputed question among various jurisdictions. Courts in favor of allowing an expert to receive a contingency fee reason primarily that the nature of the fee can be brought out in cross-examination just as hourly fees are now. Courts opposing an expert receiving a contingency fee reason principally that the expert then has too much to lose to remain even close to objective. *E.g.*, *Straughter v. Raymond*, No. CV 08-2170 CAS (CWx), 2011 WL 1789987, at *2–3 (C.D. Cal. May 9, 2011) (collecting cases).

The State of Idaho has Idaho Rule of Professional Conduct 3.4, comment 4, which states "*The common law rule in most jurisdictions* is that it is improper to pay an occurrence witness any fee for testifying and that *it is improper to pay an expert witness a contingent fee*." This Court tends to agree with what appears to be the common law rule set forth by Idaho: "[I]t is improper to pay an expert witness a contingent fee." However, the Court

need not, and does not, further address or resolve this question because the previous analysis that McDermott may not testify based on his improperly becoming an advocate in this case renders the contingency fee issue moot.

## IV. ORDER

1. The Hawley Troxell Defendants' first Motion to Exclude Expert Richard McDermott (Dkt. 1068) is GRANTED. McDermott may not provide expert testimony in this case because he has improperly assumed the role of advocate, rendering his opinions unhelpful to the jury, unreliable, and unduly prejudicial.

2. The Hawley Troxell Defendants' second Motion to Exclude Expert Richard McDermott (Dkt. 1069) is DENIED as MOOT.

3. The Court's stay from its previous Order (Dkt. 1089) remains in force.

DATED: May 12, 2021

David C. Nye
Chief U.S. District Court Judge