UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporations and its wholly owned subsidiary AIA Insurance, Inc., | Case No. 1:10-cv-00404-DCN |
| | **MEMORANDUM DECISION AND ORDER** |
| Plaintiff, | |
| v. | |
| HAWLEY TROXELL ENNIS & HAWLEY LLP, et al., | |
| Defendants. | |

## I. INTRODUCTION

Pending before the court are the Hawley Troxell Defendants'[1] Motion to Dismiss (Dkt. 1067) and Plaintiff Dale Miesen's Motion to Certify (Dkt. 1148) and Amended Request for Judicial Notice[2] (Dkt. 1153). The Motion to Dismiss is joined by Defendants James Beck, Michael Cashman, Connie Henderson, and R. John Taylor (the "Individual

---

[1] The Hawley Troxell Defendants consist of Hawley Troxell Ennis & Hawley LLP, Gary D. Babbitt, D. John Ashby, and Richard A. Riley.

[2] By way of this request, Miesen asks the Court to take judicial notice of certain documents for purposes of resolving the Motion to Dismiss. The Hawley Troxell Defendants responded in opposition to this request. Dkt. 1163. Miesen replied. Dkt. 1170. There are additional requests for judicial notice throughout the briefing of the Motion to Dismiss.

Defendants" or the "Controlling Defendants"),[3] and by Crop USA Insurance Agency, Inc., and Crop USA Insurance Services, LLC (collectively, "CropUSA"). Dkt. 1090.

The Court held a hearing on these matters on March 9, 2022, and took the motions under advisement. Now, for the reasons stated below, the Court GRANTS the Motion to Dismiss, DENIES the Motion to Certify, and DENIES the Amended Request for Judicial Notice.

## II. BACKGROUND

This case began in 2010 as a shareholder derivative lawsuit on behalf of AIA Services Corp. and AIA Insurance, Inc. (the "AIA Entities"). Now, the Hawley Troxell Defendants, joined by the Individual Defendants and CropUSA, move to dismiss Miesen's shareholder derivative claims on the grounds that Miesen failed to satisfy the demand requirements.

The Motion to Dismiss centers on the demand requirements for shareholder derivative litigation. Miesen relies on a series of five demand letters that began in 2008 and concluded in 2016. Interspersed between these letters are various amended complaints. Because shareholder demands must be given 90 days before a complaint is filed, Idaho Code § 30-29-742, the Court first reviews the timeline of the five demand letters and the complaints in this action.

The first demand letter is dated July 21, 2008 (the "July 2008 Demand"). Dkt. 23-

---

[3] Throughout the filings in this case, this group of Defendants is sometimes referred to as the "Individual Defendants" and other times as the "Controlling Defendants."

9.[4] It is from Michael Bissel, an attorney, on behalf of Donna Taylor (a shareholder of the AIA Entities) and Reed Taylor (who was not a shareholder) and was addressed to the AIA Entities' board of directors.

After the July 2008 Demand, Donna Taylor and Miesen filed the original Complaint in this case on August 11, 2010. Dkt. 1. A few months later, Donna Taylor filed the First Amended Complaint on November 22, 2010. Dkt. 23. Miesen was not a plaintiff in the First Amended Complaint.

Then on April 3, 2012, attorney Rod Bond emailed the attorneys representing the AIA Entities. Dkt. 67-33. This is the second demand letter (the "April 2012 Demand"). That same year, various shareholders, including Miesen, made a demand at a shareholder meeting on July 16, 2012 (the "July 2012 Demand"). Dkt. 67-42.

On June 13, 2016, Bond sent a demand letter (the June 2016 Demand") on behalf of Miesen to the board of directors of the AIA Entities. Dkt. 148-2. A week later, on June 20, 2016, the Second Amended Complaint was filed. Dkt. 137. Miesen rejoined as a plaintiff in the Second Amended Complaint.

Two months later, on August 23, 2016, Bond sent another demand letter (the "August 2016 Demand") on behalf of Miesen to the AIA Entities' board of directors. Dkt. 186-2. Finally, the Third Amended Complaint, which is the operative complaint, was filed on April 24, 2017. Dkt. 211. Donna Taylor was dropped as a plaintiff in the Third Amended Complaint.

---

[4] The five demand letters are included across various docket entries. However, the Court uses the docket citations provided in the Third Amended Complaint.

For convenience, the following table outlines each of the demands and the various complaints in order:

|  | Description | Docket |
|---|---|---|
| **July 2008 Demand**<br>July 21, 2008 | Letter from attorney Michael Bissel on behalf of Donna Taylor and Reed Taylor addressed to the AIA Entities' board of directors. | Dkt. 23-9 |
| **Complaint**<br>August 11, 2010 | Filed by Donna Taylor and Dale Miesen | Dkt. 1 |
| **First Amended Complaint**<br>November 22, 2010 | Dale Miesen dropped as a plaintiff | Dkt. 23 |
| **April 2012 Demand**<br>April 3, 2012 | Email from attorney Rod Bond to attorneys representing the AIA Entities | Dkt. 67-33 |
| **July 2012 Demand**<br>July 16, 2012 | Demand made at shareholders' meeting | Dkt. 67-42 |
| **June 2016 Demand**<br>June 13, 2016 | Letter from attorney Rod Bond on behalf of Dale Miesen addressed to the AIA Entities' board of directors | Dkt. 148-2 |
| **Second Amended Complaint**<br>June 20, 2016 | Miesen rejoins as a plaintiff | Dkt. 137 |
| **August 2016 Demand**<br>August 23, 2016 | Letter from attorney Rod Bond on behalf of Dale Miesen addressed to the AIA Entities' board of directors | Dkt. 186-2 |
| **Third Amended Complaint**<br>April 24, 2017 | Donna Taylor dropped as a plaintiff | Dkt. 211 |

This is not the only derivative lawsuit Miesen has brought on behalf of the AIA Entities. Importantly, on June 30, 2020, the Ninth Circuit ruled in a parallel case, *Miesen v. Munding*, that the June 2016 Demand was legally insufficient. 822 Fed. App'x 546

(2020). To be clear, this is the same demand letter referenced in this action, but the Ninth Circuit was ruling on a different case—case number 2:18-cv-00270-RMP, filed in 2018 in the Eastern District of Washington. The parties dispute the effect of the Ninth Circuit's *Munding* ruling on the present case, and that dispute is, unsurprisingly, the central issue in the Motion to Dismiss.

After the Hawley Troxell Defendants filed their Motion to Dismiss, Miesen filed a Motion to Certify and an Amended Request for Judicial Notice. Both of those filings involve issues raised by the Motion to Dismiss. Because of the relationship between the three motions, the Court addresses all of them in this Order.

### III. DISCUSSION

Before the Court reviews the Motion to Dismiss, it must first review the Motion to Certify as the resolution of that matter must precede the Court's review of the broader questions at issue. *See All. for Prop. Rights & Fiscal Resp. v. City of Idaho Falls*, 742 F.3d 1100, 1108 (9th Cir. 2013) (citing *Thompson v. Paul*, 547 F.3d 1055 (9th Cir. 2008)) ("There is a presumption against certifying a question to a state supreme court after the federal district court has issued a decision."). The Court will then review the Amended Request for Judicial Notice since that request asks the Court to take judicial notice of certain facts related to the Motion to Dismiss. After the Court resolves both of those preliminary motions, the Court will address the Motion to Dismiss.

### A. Motion to Certify (Dkt. 1148)

In the Motion to Certify, Miesen asks that this Court certify five questions to the Idaho Supreme Court. Four of those questions relate to the Motion to Dismiss, and the fifth

MEMORANDUM DECISION AND ORDER - 5

question relates to a pending motion for summary judgement. Those questions are quoted below:

- May a derivative demand be excused when there is not a duly elected, fully seated, and lawfully functioning board of directors?

- Can any party other than the corporation challenge the adequacy of derivative demands?

- Is the board of director's failure to request a shareholder to clarify or provide additional information a waiver of the right to challenge the adequacy of the derivative demands?

- Is the adequacy of a derivative demand relaxed or excused when the corporate insiders are concealing virtually all matters from shareholders and refusing to engage in proper fundamental corporate governance?

- Does Idaho recognize the adverse domination doctrine or similar doctrine that holds the statutes of limitations do not run and/or are tolled because the corporation has been controlled by unlawfully acting directors and the corporation has no knowledge of what occurred under the adverse interest exception?

For the following reasons, the Court DENIES the Motion to Certify with respect to all five questions.

### 1.  Legal Standard

Idaho Appellate Rule 12.3 provides that a United States District Court may certify a question of law to the Idaho Supreme Court if two conditions are met: (1) the question certified is a controlling question of law in the pending action as to which there is no

controlling precedent in the decisions of the Idaho Supreme Court; and (2) the immediate determination of Idaho law with regard to the certified question would materially advance the orderly resolution of the litigation in the United States Court. Idaho App. R. 12.3(a); *see also White v. Valley Cnty.*, 2012 WL 13018504, at *1 (D. Idaho Aug. 10, 2012).

Certification is generally beneficial to assure that state law will be applied uniformly and in accordance with the interpretations given by each state's high court, state courts will have the benefit of having the final say on a matter of state law, and the federal courts can avoid the difficult task of attempting to divine how a state court would rule on a matter of state law. *See Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974) (noting that certification "does, of course, in the long run save time, energy, and resources and helps build a cooperative juridical federalism").

"Use of the certification procedure in any given case rests in the sound discretion of the federal court." *Micomonaco v. Washington*, 45 F.3d 316, 322 (9th Cir. 1995).

*2.   Analysis*

The Court in its discretion does not find that Miesen meets either of the requirements for certification. For clarity, the Court reviews each question separately.

a.   Question About Derivative Demand Excuse

Both parties agree that the governing statutes for demand here are Idaho Code Sections 30-1-742 and 30-29-742.[5] They also both agree that Idaho has expressly done away with the futility exception to the demand requirement. Despite that, Miesen argues

---

[5] Idaho Code § 30-1-742 was in effect when the complaint in this case was filed on August 11, 2010. The requirements for making a derivative demand were recodified as Idaho Code § 30-29-742 on July 1, 2015.

MEMORANDUM DECISION AND ORDER - 7

that the Idaho Supreme Court would excuse the demand requirement where there is not a duly elected, fully seated, and lawfully functioning board of directors.

This is not an appropriate question to certify because it is not a question of law but rather a question of the application of facts, not yet proven in this case, to well-settled law.

The Idaho Supreme Court has made clear that Idaho state law does not include a futility exception to the demand requirement. *McCann v. McCann*, 61 P.3d 585, 593 (Idaho 2002) ("[T]he futility exception no longer applies to the demand requirement as set forth in the statute."); *see also Kugler v. Nelson*, 374 P.3d 571, 578 (Idaho 2016); *Mannos v. Moss*, 155 P.3d 1166, 1173 (Idaho 2007). Miesen argues that the Idaho Supreme Court "would reach a different result here" because the facts are different. Dkt. 1148-1, at 9. Such a position is pure speculation and, frankly, in opposition to clear caselaw. This is not a situation where there is no controlling precedent in the decisions of the Idaho Supreme Court. That precedent is easily found in *McCann* and other Idaho Supreme Court cases. This Court will not certify a case to the Idaho Supreme Court to see if it will distinguish *McCann* based on facts not yet proven.

Finally, the Court notes this case started over a decade ago. The Court does not find that certifying this question would materially advance the orderly resolution of the litigation. Rather, it would likely unnecessarily extend the length of litigation since this Court is well equipped to apply the applicable facts to well-settled Idaho state law. For that additional reason, the Court will not certify the first question.

b.  Question About Who Can Challenge the Adequacy of a Demand

The second question is whether only the corporation can challenge the adequacy of

a shareholder demand.[6] Unlike the prior question, this question does not rely on factual determinations but is indeed a question of law. However, certification is inappropriate here because there is Idaho Supreme Court precedent on this issue.

Miesen argues that no Idaho appellate court decisions have resolved which parties can challenge the adequacy of a shareholder demand. He contends that the Idaho Supreme Court would hold that only the underlying corporation can challenge the adequacy of a shareholder demand.

However, the Idaho Supreme Court has, in prior cases, accepted demand challenges—even when brought by parties other than the corporation. *See, e.g., McCann*, 61 P.3d at 594 (affirming dismissal of derivative action where a shareholder raised the issue of the demand requirement); *Mannos v. Moss*, 155 P.3d 1166, 1173 (Idaho 2007) (affirming dismissal of derivative action where parties other than the corporation raised the issue of the demand requirement). Furthermore, the Ninth Circuit recently affirmed the Eastern District of Washington's decision to dismiss a derivative action because Idaho's demand requirement was not met, which issue was raised by parties other than the corporation.[7] *Munding*, 822 Fed. App'x 546.

---

[6] The parties quibble about the use of the word "standing" in this context. On occasion, Miesen has phrased this question as a question about whether the Hawley Troxell Defendants and the Individual and CropUSA Defendants have standing to challenge the adequacy of a shareholder demand. The Hawley Troxell Defendants argued this is not an issue of standing, citing to *Stonebrook Construction, LLC v. Chase Home Finance, LLC*, 277 P.3d 374, 377 (Idaho 2012), which explains that "standing is a subcategory of justiciability" and "not at issue when evaluating the merits of a defense." *Id.* (cleaned up). Miesen replied by explaining that he used the term "standing" because other federal courts have used it in this context. Dkt. 1148-1, at 15 n.7. Regardless of the proper term, the Court understands that what is at issue is whether a party other than the corporation may challenge the adequacy of the demand.

[7] This is the same *Munding* case in which the Ninth Circuit held that the June 2016 Demand was inadequate.

MEMORANDUM DECISION AND ORDER - 9

Thus, the Court finds it has adequate precedent upon which to rely and certification of this subject is not warranted.

### c.  Question About Whether the Board Should Have Asked for Clarification

Miesen asserts that the board of directors failed to ask for clarification upon receipt of the demands, and he believes the Idaho Supreme Court would, upon certification, hold that such failure waives the demand requirement. Thus, he wants certified the question of whether the board of director's failure to request that a shareholder clarify or provide additional information acted as a waiver to the right to challenge the adequacy of the derivative demands.

This question does not meet the certification requirements. First, it is dependent on a factual determination that the board of directors failed to meet a duty and thus does not involve a controlling question of law. Second, Idaho Supreme Court precedent is, again, clear that there is no futility exception to the demand requirement. *McCann*, 61 P.3d at 593. Certification is not an avenue to challenge existing caselaw but rather to resolve unanswered questions.

For purposes of the Motion to Dismiss, the Court will apply the facts as plead in the Third Amended Complaint to the well-established precedent from the Idaho Supreme Court that there is no futility exception to the demand requirement. Provided with this sufficient precedent, this Court can assess how the facts as plead interplay with well-settled state law.

Finally, as is true for the other proffered questions, certification would likely unnecessarily extend the length of litigation.

MEMORANDUM DECISION AND ORDER - 10

d.  Question About Whether the Standard Should Be Relaxed

The fourth question again posits that the Idaho Supreme Court may relax or excuse the standard based on the facts of this case. To reiterate, certification is not appropriate where the Idaho Supreme Court has already addressed an issue, even if "not precisely in the context of the facts of this action." *Miller v. Four Winds Intern. Corp.*, 827 F. Supp. 2d 1175, 1188 (D. Idaho 2011). The Idaho Supreme Court has addressed the demand requirement, its statutory exceptions, and the lack of a futility exception. *McCann*, 61 P.3d at 593. The Court will not certify this question.

e.  Question About Adverse Domination Doctrine

The final question Miesen requests this Court to certify is whether Idaho law recognizes the adverse domination doctrine or some other doctrine that tolls the statute of limitations when the corporation is controlled by rogue directors. This question involves defenses raised in two motions for summary judgment. Dkts. 1071, and 1077. In this regard, this question is different since the other questions all relate to the present motion to dismiss.

"Adverse domination is an equitable doctrine which tolls statutes of limitations for claims by corporations against its officers, directors, lawyers and accountants while the corporation is controlled by those acting against its interests." *Resol. Tr. Corp. v. Grant*, 901 P.2d 807, 811 (Okl. 1995). Predicting whether a state would adopt or reject the adverse domination doctrine, the Sixth Circuit reviewed caselaw from different jurisdictions and concluded that the adverse domination doctrine is dependent upon the state's discovery rule or the lack thereof:

MEMORANDUM DECISION AND ORDER - 11

> Notably, other courts considering the question of adverse domination have focused on whether state law would apply a discovery rule to the relevant claim for purposes of the statute of limitations. *See, e.g.*, *Wilson v. Paine*, 288 S.W.3d 284, 287–88 (Ky. 2009); *FDIC v. Smith*, 320 Or. 420, 980 P.2d 141, 137 (1999); *Resolution Trust Corp. v. Scaletty*, 258 Kan. 348, 891 P.2d 1110, 1115–16 (1995). As one court explained, "adverse domination shares the same theoretical underpinnings as the discovery rule." *Wilson*, 288 S.W.3d at 287; *see also Cedar Rapids Lodge & Suites, LLC v. JFS Dev., Inc.*, 789 F.3d 821, 824–25 (8th Cir. 2015). But, as several of our sister circuits have also concluded, adverse domination may be inconsistent with a particular state's tolling doctrines and policies regarding the strict construction of its statutes of limitation. *See Wilson*, 288 S.W.3d at 288 n.2 (citing cases interpreting Ark., Ga., and Va. Law); *Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999) (interpreting Fla. Law).

*Antioch Co. Litig. Trust v. Morgan*, 644 Fed. App'x 579, 582 (6th Cir. 2016).

Similarly, the District of Oregon concluded that "the doctrine of adverse domination is a corollary of the discovery rule." *Resol. Tr. Corp. v. Smith*, 872 F. Supp. 805, 813 (D. Or. 1995). Thus, because Oregon had adopted a discovery rule, the court reasoned that Oregon would likewise probably adopt the adverse domination doctrine. *Id.* at 814. On appeal, the Ninth Circuit certified the question to the Supreme Court of Oregon, which "use[d] the discovery rule as a starting point in [its] analysis" and held that Oregon does indeed recognize the adverse domination doctrine. *FDIC v. Smith*, 980 P.2d 141, 146–147 (Or. 1999).

More recently, the Ninth Circuit affirmed, without certifying the question, a district court's decision to not apply the doctrine, concluding that Nevada would *not* adopt the adverse domination doctrine since it was inconsistent with the state's sole actor rule. *USACM Liquidating Tr. v. Deloitte & Touche*, 754 F.3d 645, 649 (9th Cir. 2014).

This Court has also declined to apply the adverse domination doctrine with respect

to the Idaho Uniform Fraudulent Conveyance Act because the Court found that the doctrine was inconsistent with the "exacting statutory language" of the statute, which "extinguishes a claim after the four-year period *unless* the one-year discovery rule applies." *Klein* v. *Capital One Financial Corp.*, 2011 WL 3270438, at *7 (D. Idaho July 29, 2011).

While there is no Idaho Supreme Court precedent precisely on the issue of the adverse domination doctrine, there is clear precedent rejecting the discovery rule for the statute of limitations governing legal malpractice claims, which is Idaho Code § 5-219(4). *Elliott v. Parsons*, 918 P.2d 592, 594 (Idaho 1966) ("In accordance with the legislature's rejection of a discovery rule, the statute begins to run when there is 'some damage,' not when the party claiming malpractice discovers the damage."); *Martin v. Clements*, 575 P.2d 885, 886–87, 889 (Idaho 1978) ("In view of the clear legislative intent of amended I.C. § 5-219(4), we expressly decline to create a new 'discovery' exception for legal malpractice actions."). "Idaho has explicitly rejected a 'discovery rule' for the tolling of statutes of limitations in malpractice cases . . . ." *Werner v. American-Edwards Laboratories, Inc.*, 745 P.2d 1055, 1058 (Idaho 1987). There are only two exceptions, which are both codified in Idaho Code § 5-219(4), and they apply only for malpractice suits where a foreign object is left in the body and where negligence is fraudulently concealed. *Id.*; Idaho Code § 5-219(4).

What's more, the Idaho Supreme Court has expressly rejected judicially constructed tolling doctrines. *Wilhelm v. Frampton*, 158 P.3d 310, 312 (Idaho 2007). "Statutes of limitations in Idaho are not tolled by judicial construction but rather by expressed language of the statute." *Id.* (quoting *Indep. Sch. of Boise City v. Callister*, 539 P.2d 987, 991 (1975)).

MEMORANDUM DECISION AND ORDER - 13

Since Miesen is asking about the application of a non-statutory tolling doctrine, the Court is satisfied that the Idaho Supreme Court has answered the question as to whether such tolling doctrines are applicable. Not only would the adverse domination doctrine be contrary to Idaho's rejection of the discovery rule, but it would also be contrary to the clear holding in *Wilhelm*.

Miesen argues, in the alternative, that this Court should certify a question about whether Idaho law recognizes the adverse interest exception. Under the adverse interest exception, as applied elsewhere, "a corporation is charged with knowledge of what its agent knows, unless the agent's relations to the subject matter are so adverse as to practically destroy the relationship." *Smith*, 980 P.2d at 429 (cleaned up). Miesen contends that the statute of limitations should not accrue until a party knows of the claim and that a corporation does not have the knowledge of its agent's actions if the agent's interests are sufficiently adverse to the corporation's. Again, this is a non-statutory tolling doctrine, which doctrine the Idaho Supreme Court rejected in *Wilhelm*. 158 P.3d at 312. Therefore, the Court will not certify a question to the Idaho Supreme Court regarding either the adverse domination doctrine or the adverse interest exception.

3. *Conclusion*

The Court will not certify any of the five questions Miesen requests to the Idaho Supreme Court. None of the questions meet the certification requirements of Idaho Appellate Rule 12.3. Accordingly, the Court DENIES the Motion to Certify.

**B. Amended Request for Judicial Notice (Dkt. 1153)**

A few days after filing the Motion to Certify, Miesen filed a motion requesting the

Court to take judicial notice of affidavit testimony. The Hawley Troxell Defendants filed a response brief objecting to the request. Dkt 1163. Miesen then filed a reply brief, and in that, he asked the Court to take judicial notice of additional materials—the Hawley Troxell Defendants' billing records. Dkt. 1170. The Hawley Troxell Defendants objected to this request as well. Dkt. 1173.

The affidavit testimony Miesen seeks to admit references a complaint filed in a different case and the July 2008 Demand, both of which were attached as exhibits to the affidavit. Miesen requests judicial notice of these exhibits to the extent that they are part of the relevant affidavit testimony. The purpose of this request is to "establish[] that the AIA Entities' purported directors were well aware of the specific transactions and legal action being requested" by the July 2008 Demand. Dkt. 1153, at 3–4.

The affidavit testimony itself is from John Taylor. Miesen requests the Court take judicial notice of the following portions from paragraphs 21, 22, and 28 of the affidavit:

> 21.      Although the original complaint filed in the Reed Taylor case was a two-count complaint seeking relief against the AIA Entities and myself personally with regard to the Stock Redemption Agreement within a year that original complaint had been amended five times to add my ex-wife Connie Taylor, Jim Beck and his wife Corrine, the CropUSA Entities and others and to assert many of the identical issues that are present in this litigation. Attached as Exhibit "O" hereto is the Fifth Amended Complaint in the Reed Taylor Case. As I confirmed to Mr. Bond during his questioning in the course of a during a four day deposition "at issue" in the Reed Taylor Case was (1) the formation and ownership of CropUSA, (2) the business relationship of the AIA entities and the CropUSA entities in terms of assets, employees, master marketing agreements and administrative agreements, (3) the 2001 exchange of Series C preferred shares of AIA Services that were converted to common shares of CropUSA, (4) 2001 purchase of a parking lot, (5) the transactions between AIA Services and Pacific Empire Radio Corporation ("PERC"), (6) assertions of conflicts of interest, (7) issues pertaining to the Trustmark Settlement, (8) CropUSA asset sale to Hudson Insurance, (9)

consulting payments received by me, (10) my compensation from AIA Services, (11) the attorney fees paid on behalf of the individual defendants in the Reed Tylor case, (12) the loans between CropUSA and AIA Services, and (13) compensation of the AIA Services' directors. Based on these allegations, in addition to the assertion of a breach of the stock redemption agreement, Reed Taylor asserted, among other, claims for fraud, director liability, breach of fiduciary duty, and conspiracy of all named Defendants.

22.    I also note that the Fifth Amended Complaint, like the present litigation, sought to challenge AIA Services' guarantee of CropUSA's loan. In this regard, in October 2006 HTEH prepared an attorney opinion letter regarding a loan transaction involving the CropUSA Entities and Lancelot Investors Fund, L.P. and to which AIA insurance was to be a guarantor to the loan transaction.

. . . .

28.    Thereafter, in a letter dated July 21, 2008, Donna Taylor in her identified capacity as a Series A Preferred Shareholder in AIA Services made demand upon AIA Services for corrective action pursuant to Idaho Code 30-1-742. Like the Complaint in Reed Taylor's case, Donna Taylor's letter asserted the existence of 27 matters to which she asserted liability existed including, but not limited to the alleged usurpation of a corporate opportunity with regard to the CropUSA Entities, illegal loan guarantees as well as assertions of fraud, misappropriation and breach of fiduciary duties. A true and correct copy of this correspondence is attached is attached as Exhibit "S." As the docket in this matter reflects, this present action purporting to be a derivative case was not commenced until August 11, 2010.

Dkt. 1153, at 4.

Ordinarily, a district court may not consider evidence outside of the pleadings when ruling on a motion to dismiss unless it converts the motion into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908. Because

MEMORANDUM DECISION AND ORDER - 16

Miesen wishes this Court to consider this evidence, which is outside of the pleadings, he requests that the Court take judicial notice of it.

A court may take judicial notice of documents that are not subject to reasonable dispute and are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. Fed. R. Evid. 201(b). "[A]djudicative facts appropriate for judicial notice are typically different from facts found in affidavits supporting litigation positions, which often present facts subject to dispute." *Henderson v. Oregon*, 203 Fed. App'x 45, 52 (9th Cir. 2006). Miesen has not demonstrated that the facts he seeks to introduce are not subject to reasonable dispute. His only argument here is that John Taylor, who is a defendant in this case (though not one of the Hawley Troxell Defendants) provided this affidavit testimony under penalty of perjury. That makes it no different than other affidavits that present facts subject to dispute.

Moreover, at the Rule 12(c) motion to dismiss stage, the Court is concerned with the allegations in the pleadings. In the operative complaint, the Third Amended Complaint (Dkt. 211), Miesen alleges that "[o]n July 21, 2008, Donna Taylor, another shareholder of AIA Services, served a written derivative demand letter on the Boards of Directors of AIA Services and AIA Insurance." Dkt. 211, at ¶ 172. Miesen also alleges that in another case, the Hawley Troxell Defendants filed a motion for stay expressly for the purpose of "conduct[ing] an inquiry into the demand made by Donna Taylor." *Id.* at ¶ 173. Miesen's present request for judicial notice is for the purpose of "establishing that the AIA Entities' purported directors were well aware of the specific transactions and legal action being requested" of Donna Taylor's demand letter. Dkt. 1153, at 4. If the directors' awareness is

necessary in evaluating the merits of the Motion to Dismiss, however, the Court need look no further than these allegations in the Third Amended Complaint that the directors were aware of the demand and the underlying issues. There is no need for additional information from Miesen.

Miesen also requests that the Court take judicial notice of the Hawley Troxell Defendants' billing records because he believes they prove "that the HT Defendants and the so-called boards of directors were fully aware of the HT Defendants' tortious conduct—the AIA Entities were paying the HT Defendants to conduct legal research regarding the HT Defendants' conduct and liability." Dkt. 1170, at 5. The Hawley Troxell Defendants object, contending that "Plaintiff's request for judicial notice inappropriately argues inferences that Plaintiff wants the Court to draw from the information and his arguments invite the Court to speculate about Defendants' subjective understanding of allegations." Dkt. 1163, at 3. The Court agrees with the Hawley Troxell Defendants' assessment. "Judicial notice under Fed. R. Evid. 201 is appropriate to take judicial notice of adjudicative facts. To the extent that [the request] presents additional argument . . . , Rule 201 does not provide authority for the Court to consider the arguments . . . ." *Golden W. Holdings, LLC v. BBT Holdings, LLC*, 2010 WL 4853301, at *11 (D. Idaho Nov. 22, 2010) (cleaned up).

For these reasons, the Court DENIES the Amended Request for Judicial Notice (Dkt. 1153).

## C. Motion to Dismiss (Dkt. 1067)

The Hawley Troxell Defendants predicate their Motion to Dismiss on the

inadequacy of the five written demands. They argue that Miesen failed to meet the demand requirements before bringing suit and that, as a result, the derivative claims should be dismissed. In response, Miesen contends that prior orders in this case preclude the Court from dismissing his claims on this ground and that he met the demand requirement.

### 1. Preliminary Matters

There are a few preliminary matters the Court must address before reaching the merits of the Motion to Dismiss.

#### a. Judicial Notice

First, because this case would not be what it is today without excessive filings and repetitive arguments, the parties fight another judicial notice battle in the briefing for the Motion to Dismiss, and that argument spilled over into their response and reply briefs regarding a motion for page extension. *See* Dkt. 1199, at 2 n.2 ("The Court notes that in his opposition to the Motion for Overlength Reply, Miesen objected to and argued against the Hawley Troxell Defendants' request for judicial notice within their overlength reply. That issue will be dealt with when the Court takes up the Motion to Dismiss.").

The parties agree that the Court should take judicial notice of the five demand letters.[8] The Court grants that request.

The Hawley Troxell Defendants also request that the Court take judicial notice of the demand letter at issue in the Eastern District of Washington case *Miesen v. Munding*,

---

[8] Miesen has both agreed and disagreed that the Court should take judicial notice of the June 2016 Demand. *Compare* Dkt. 1131, at 8, *with* Dkt. 1149, at 7. He insists that the Court should only take judicial notice of the June 2016 Demand if it includes the Second Amended Complaint. The Court does not need to take judicial notice of the Second Amended Complaint, but the Court also recognizes Miesen's position that the June 2016 Demand is best understood in the context of the Second Amended Complaint.

MEMORANDUM DECISION AND ORDER - 19

which is the same as the June 2016 Demand letter in the instant case, as well as the amended

complaint in *Munding*.[9] The Court grants this request and takes judicial notice of both

*Munding* filings, which are included in the record at Docket 1138, at 35–45 (Demand), and

Docket 1138, at 46–112 (Amended Complaint).[10] *See Reyn's Pasta Bella, LLC v. Visa

USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (explaining a court "may take judicial notice

of court filings and other matters of public record").

　　　Miesen also argues that the Court should not take judicial notice of the two *Munding*

decisions. The Hawley Troxell Defendants did not ask the Court to take judicial notice of

these decisions because the Court does not need to take judicial notice of court decisions

in order to consider them.

　　　For his own part, Miesen asks that the Court also take judicial notice of (1) AIA

Services' Amended Articles of Incorporation; (2) AIA Services' Restated Bylaws; (3) the

Idaho State Bar membership records for John Taylor and Connie Henderson; (4) the AIA

Petition for Court Appointed Inquiry dated August 14, 2018; and (5) Reed Taylor's Fifth

---

[9] Miesen objects to this request because the Hawley Troxell Defendants did not attach the *Munding* filings to their Motion to Dismiss. Instead, they provided the information whereby the Court and other parties could locate the materials on PACER. They then included the filings with their reply brief after the Court had issued a ruling on a separate judicial notice question and stated, "On a closing note, in the future, any party asking the court to take judicial notice of any records—whether they are public or not—should attach those records to their briefs in the appropriate manner." Dkt. 1119, at 3 (cleaned up). The Court does not find the request improper even though the Hawley Troxell Defendants originally failed to attach the documents in the Motion to Dismiss and later attached them in their reply brief—which came after the Court directed the parties to attach records for judicial notice to their briefs. By including the filings in their reply brief, the Hawley Troxell Defendants corrected the problem identified by the Court.

[10] The case number for *Miesen v. Munding* in the Eastern District of Washington is No. 2:18-CV-270-RMP. In that case, the docket number for the demand is 8-13, and the docket number for the amended complaint is 10.

Amended Complaint filed in *Taylor v. AIA Services, et al.*[11] Dkt. 1131, at 8–9. The Court denies this request since none of these documents are pertinent to the Motion to Dismiss.

>    b.  Who May Challenge the Adequacy of the Demand

The second preliminary issue is who may challenge the adequacy of a shareholder demand. Miesen argues that only the AIA Entities may challenge the adequacy of the demand. This ties back to the second question for which Miesen sought certification: whether only the corporation can challenge the adequacy of a shareholder demand. Having denied certification, the Court now looks to the relevant precedent to answer this question.

As previously noted, the Idaho Supreme Court has, in prior cases, accepted demand challenges, even when brought by parties other than the corporation. *See, e.g., McCann*, 61 P.3d at 594 (affirming dismissal of derivative action where a shareholder raised the issue of the demand requirement); *Mannos*, 155 P.3d at 1173 (affirming dismissal of derivative action where parties other than the corporation raised the issue of the demand requirement). Furthermore, the Ninth Circuit recently affirmed the Eastern District of Washington's decision to dismiss a derivative action because Idaho's demand requirement was not met, which issue was raised by parties other than the corporation. *Munding*, 822 Fed. App'x. 546. Accordingly, the Court concludes that under Idaho state law, parties other than the corporation may challenge the adequacy of a shareholder demand.

---

[11] *Taylor v. AIA Services, et al.* is a separate case though involving some of the same parties. Many of the allegations in the present lawsuit revolve around actions relating to or occurring in the *Taylor v. AIA Services, et al.* lawsuit. Dkt. 211 at ¶¶ 94, 99, 108, 109, 111, 115, 164, 174, 176, 177, 189, 243.

MEMORANDUM DECISION AND ORDER - 21

c. Supplemental Authority

After the Motion to Dismiss was fully briefed, Miesen filed a Notice of Supplemental Authorities. Dkt. 1171. In it, he brings to the Court's attention an additional eight authorities, which he believes support his various legal theories:

- 28 U.S.C. § 636(c)

- Black's Law Dictionary entry for "dilatory"

- *Seaport Citizens Bank v. Dippel*, 735 P.2d 1047, 1050–51 (Idaho 1987)

- *Melgard v. Moscow Idaho Seed Co.*, 251 P.2d 546, 550 (Idaho 1952)

- *Steelman v. Mallory*, 716 P.2d 1282, 1285 (Idaho 1986)

- *Haberman v. Wash. Pub. Power Supply Sys.*, 744 P.2d 1032, 1060 (Wash. 1987)

- Note, Defenses in Shareholders' Derivative Suits—Who May Raise Them, 66 Harv. L. Rev. 342, 343 & 346 (1952)

- *Taylor v. AIA Servs. Corp.*, 261 P.3d 829, 841 (Idaho 2011)

- *La Voy Supply Co. v. Young*, 369 P.2d 45, 49 (Idaho 1962)

The Hawley Troxell Defendants objected to the Notice of Supplemental Authorities, arguing that the purpose of supplemental authorities is to bring to attention *new* authorities that were not available when the issue was briefed. Dkt. 1173. None of the authorities Miesen adds here are new. Moreover, Miesen cites to all but the "dilatory" definition and 28 U.S.C. § 636(c) in his Motion to Certify. Dkt. 1148-1, at 12–15.

"The purpose of a Notice of Supplemental Authority is to inform the Court of a newly decided case that is relevant to the dispute before it, not a venue for submission of

additional argument or factual evidence." *B St. Grill & Bar LLC v. Cincinnati Ins. Co.*, 525 F. Supp. 3d 1008, 1013 (D. Ariz. 2021). While Miesen does not make lengthy arguments in his Notice of Supplemental Authorities, it is not lost on the Court that the purpose of this filing is simply to bolster arguments already presented to the Court by adding caselaw, a dictionary definition, and a law review note from the 1950s—in addition to brief lines of argument, such as "the so-called directors owed Miesen fiduciary duties to deal with him fairly in response to the five derivative demands." Dkt. 1171. Because this filing does not notify the Court of new authority, or even useful authority not already provided elsewhere, the Court STRIKES Miesen's Notice of Supplemental Authority as improper.

To this point, the Court has been generous in this case allowing for filings outside of the briefing schedule set forth in Local Rule 7.1. The Court has also been generous with page extensions. However, the Court cannot ignore that this case has over 1,200 docket entries and that the instant motions have several additional filings on top of the ordinary motion, response, and reply briefs. The Court cautions the parties that it expects compliance with Local Rule 7.1. If the parties need to file something outside of what is allowed under Local Rule 7.1, the parties should request leave from the Court.

d. Compliance with Procedural Orders

Finally, Miesen argues that the Motion to Dismiss violates two procedural orders in this case, and as such, he believes the Court should strike the defenses relating to demand adequacy and award fees and costs.

The first of the two orders Miesen refers to is a footnote in an order issued by United States Magistrate Judge Candy W. Dale in 2016, which states, "The Court would have

MEMORANDUM DECISION AND ORDER - 23

expected (and expects in the future) grounds for dismissal to have been raised in response to the motion to amend instead of misleading representations that Defendants did not oppose Plaintiffs' motion to amend. The notices of non-opposition were not consistent with Rule 1." Dkt. 178, at 3. Judge Dale was addressing how Miesen proposed to amend his complaint to add additional defendants. At that time, the Hawley Troxell Defendants filed non-opposition notices, the Court allowed amendment, but then the Hawley Troxell Defendants moved for dismissal because the added defendants destroyed diversity jurisdiction. *Id.*

Miesen contends that because the Hawley Troxell Defendants did not raise the demand adequacy issue when he last amended his complaint, that doing so now is dilatory and in violation of Judge Dale's order. The Court disagrees. Judge Dale's admonition was directed at the specific behavior at that time. Much has changed since then. What's more, this was not a formal order, but a reminder that the Court strives to adhere to Rule 1's mandate in ensuring the efficient and effective resolution of any cases.

The second "order" Miesen refers to relates to the Court's preferences regarding motion practice, which states, "Chief Judge Nye expects that counsel, prior to filing a motion to dismiss based upon *Iqbal-Twombly*, will contact opposing counsel, advise them of the perceived shortcomings in the allegations of the complaint, and attempt to reach agreement for the filing of an amended complaint."[12] The Hawley Troxell Defendants apparently did not contact opposing counsel before filing the Motion to Dismiss; however,

---

[12] https://www.id.uscourts.gov/district/judges/nye/Motion_Practice.cfm

MEMORANDUM DECISION AND ORDER - 24

the Motion to Dismiss is not based upon whether of factual allegations in the complaint satisfy *Iqbal-Twombly*, rather the Motion to Dismiss is based on the adequacy of the demands. The Court's guidance regarding motions to dismiss seeks to avoid unnecessary motions where the concerns raised could be resolved if the plaintiff amended the complaint to include factual allegations needed to state a claim and satisfy *Iqbal-Twombly*. That is not at issue here. If the demands are inadequate, amending the Complaint would not remedy the cause for dismissal. While the Court expects communication and good faith between opposing counsel throughout litigation, the Court will not strike the defenses, nor award fees and expenses, merely because counsel for the Hawley Troxell Defendants did not contact Miesen's counsel in advance of filing the non-*Iqbal-Twombly* Motion to Dismiss. Again, the document Miesen relies on is not a formal "order," but rather the Court's preferences to streamline litigation.

Having resolved the preliminary issues, the Court now proceeds to evaluate the merits of the Motion to Dismiss.

### 2. Legal Standard

Rule 12(c) of the Federal Rules of Civil Procedure states, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard governing a Rule 12(c) motion for judgment on the pleadings is "functionally identical" to that governing a Rule 12(b)(6) motion. *United States ex rel. Caffaso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n. 4 (9th Cir. 2011). "For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false."

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Id.* "However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment." *Id.*

As with traditional motions to dismiss, if a court grants a motion for judgment on the pleadings, leave to amend should be granted unless "the Court is satisfied that an amendment could not cure the deficiency." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1135 (9th Cir. 2012).

### 3. Analysis

"Pursuant to Rule 23.1, a putative derivative plaintiff can initiate a derivative action only if he or she makes an adequate demand on the Board under applicable state law." *Potter v. Hughes*, 546 F.3d 1051, 1055 (9th Cir. 2008). Under Idaho Law, "a shareholder may not commence a derivative proceeding until he makes a written demand upon the corporation to take suitable action at least ninety days prior to the commencement of the action." *Mannos*, 155 P.3d at 1172–73.

Idaho Code Section 30-29-742[13] specifically provides,

No shareholder may commence a derivative proceeding until:
(a) A written demand has been made upon the corporation to take suitable action; and

---

[13] As noted, Idaho Code Section 30-1-742 was in effect when the complaint in this case was filed on August 11, 2010. *Supra* n.5. The requirements for making a derivative demand were recodified as Idaho Code Section 30-29-742 on July 1, 2015. The statutory language is the same.

MEMORANDUM DECISION AND ORDER - 26

(b) Ninety (90) days have expired from the date delivery of the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety (90) day period.

"[T]he legislative intent in enacting [this statute] was to no longer recognize 'futility' as an exception to the requirement of demand as a condition preceding the institution of a shareholder's derivative action." *Mannos*, 155 P.3d at 1173 (cleaned up). The shareholder's demand effort must be "earnest and sincere, and not a feigned or simulated, effort to induce the directors to take remedial action." *McCann*, 61 P.3d at 592 (quoting 19 Am. Jur. 2d *Corporations* § 2278, 173–74 (1986)). A demand to merely "take action" is insufficient. *Id.* As the Idaho Supreme Court has explained:

> Statements should be presented to the directors showing the wrong complained of, accompanied by sufficient responsible data which will enable the directors to determine whether litigation could be engaged in with some hope of success. The shareholder must state facts, not mere general charges and conclusions.
> The demand should give the directors a fair opportunity to initiate the action which the shareholder wants to undertake, and name the potential defendants, as well as the shareholder making the demand.

*Id.* (quoting 19 Am. Jur. 2d *Corporations* § 2278, 173–74 (1986)).

"Because the law has historically been particularly wary of allowing *shareholders* to sue on their *corporation's* behalf," shareholder derivative actions must strictly comply with the demand and pleading requirements of Federal Rule of Civil Procedure 23.1. *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995); *see also Potter*, 546 P.3d at 1058 (noting "strict compliance with Rule 23.1 and applicable substantive law is necessary before a derivative suit can wrest control of an issue from the board of directors").

A written derivative demand is mandatory, and failure to comply with pre-suit demand requirements necessitates dismissal of a derivative action. *See Mannos*, 155 P.3d at 1172–73. "Although dismissals for failure to state a claim are reviewed de novo, [a] district court's determination that [the plaintiff] did not comply with Rule 23.1 or [state] law regarding the demand . . . is reviewed for abuse of discretion." *Potter*, 546 F.3d at 1056.

As explained, the Ninth Circuit has already had occasion in a related case to apply Idaho law governing the demand requirement to one of the demand letters at issue here. *Munding*, 822 Fed. App'x 546. The Ninth Circuit upheld the Eastern District of Washington's dismissal based on the inadequacy of the demand:

> The district court correctly concluded that Mr. Miesen's letters, as excerpted in the Amended Complaint, did not make an adequate demand on the boards because it did not sufficiently describe the action he sought to have the boards take. Mr. Miesen's excerpted letters described his proposed claims in terms of "all possible claims" or similarly generic, conclusory language. The letters failed to describe with particularity the claims for relief he sought or the factual bases for those claims. Such language cannot have been expected to provide the boards with enough information to take "suitable action." Without knowing the factual bases for the claims, the boards could not determine the likelihood of the lawsuit's success and would have had difficulty weighing factors like the expenses involved in litigation or whether litigation would further the AIA Entities' general business interests. These are considerations the boards were entitled to make. *See Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 533 & n.9, 104 S. Ct. 831, 78 L.Ed.2d 645 (1984). The district court did not abuse its discretion by dismissing Mr. Miesen's Amended Complaint for failure to meet Rule 23.1's pleading requirements.

*Id.* at 548–49.

The demand the Ninth Circuit found inadequate is the June 2016 Demand in the present case. However, the Ninth Circuit's decision concerned a defendant in that case,

MEMORANDUM DECISION AND ORDER - 28

John Munding, and not any of the Defendants in the present case.

Miesen advances several arguments as to why this Court should not come to the same conclusion as the Ninth Circuit in *Munding*.

First, Miesen contends that Judge Dale has already held that the demand letters in the present case are adequate.[14] In 2017, when determining whether to allow Miesen to amend his complaint over the objection of the Individual and CropUSA Defendants, Judge Dale reviewed the demand letters and found them adequate. Dkt. 210. At the time, this case was at a wholly different procedural juncture. There, Judge Dale was determining whether to allow Miesen to amend his complaint under Federal Rule of Civil Procedure 15(a)(2).

Under Rule 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." As Judge Dale wrote in her order, "while the decision to grant leave to amend is within the Court's discretion, the Court 'must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits rather than on the pleadings or technicalities.'" Dkt. 210, at 12 (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). Among the considerations in determining whether to allow amendment is the futility of the proposed amendment. *Id.* (citing *Moore v. Kayport Package Express, Inc.*, 855 F.2d 531, 538 (9th Cir. 1989)). "Generally, this determination should be performed with all inferences in favor of grating the motion." *Id.* at 13 (quoting *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999)).

---

[14] In addition to his argument about Judge Dale's holding, Miesen also argues that a 2011 decision written by District Judge Larry M. Boyle (Dkt. 46) precludes any finding that the demands are inadequate. Judge Boyle's 2011 order did not address the demand letters at all—and it could not have mentioned any except the July 2008 Demand since the other demands all came after Judge Boyle's order. Therefore, that order does not impede the Court from concluding that the demand letters are adequate.

The Individual and CropUSA Defendants objected to allowing amendment, in part because they believed amendment was futile because the June 2016 Demand and August 2016 Demand were inadequate. Judge Dale disagreed, finding that the demands were adequate, and thus, under the liberal standard of Rule 15(a)(2), allowed amendment.

Miesen argues that the law of the case doctrine applies and that the Motion to Dismiss is an improper motion for reconsideration. The Hawley Troxell Defendants disagree and emphasize that they were not among the Individual and CropUSA Defendants who objected to amendment of the complaint. Alternatively, if the standards for reconsideration apply, the Hawley Troxell Defendants contend that reconsideration would be appropriate in light of *Munding*.

"The law of the case doctrine originated in the courts as a means of ensuring the efficient operation of court affairs." *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001). "When a court applies the law of the case doctrine to its own prior decisions (or those of a coordinate or equal court), the traditional formulations of the doctrine must be conceived as rules of thumb and not as straightjackets on the informed discretion and sound practical judgment of the judge." 18 *Moore's Federal Practice*, § 134.21[1] (3d ed. 2021). Furthermore, "[t]he doctrine simply does not impinge a district court's power to reconsider its own interlocutory order . . . ." *Santa Monica Baykeeper*, 354 F.3d at 888.

The Court is not faced with reconsidering Judge Dale's order allowing amendment of the complaint—that is, the outcome of this decision will not undo or ratify the order allowing amendment. Rather, the Hawley Troxell Defendants ask the Court to make

findings that are contrary to Judge Dale's findings upon which she relied, at least in part, in her decision allowing amendment. The Court does not undertake this exercise lightly; however, since Judge Dale's order over four years ago, the Ninth Circuit has issued its *Munding* ruling, which conflicts with Judge Dale's order. What's more, the Court is not bound by this prior order. Accordingly, the Court will review the demand letters consistent with *Munding* and reassess whether they are adequate under Idaho law.

Second, Miesen argues that this Court should reach a different conclusion than *Munding* because the Ninth Circuit's and Eastern District of Washington's opinions are "irrelevant and inadmissible hearsay." Dkt. 1131, at 10. This position is ludicrous.

Third, Miesen contends that neither the Ninth Circuit nor the Eastern District of Washington applied Idaho law in their respective *Munding* decisions. However, both cases expressly say that they are applying Idaho law. *Munding*, 822 Fed. App'x at 548;[15] *Miesen v. Munding*, 2019 WL 1410899, at *5 (E.D. Wash. Mar. 28, 2019).[16] As with his second argument, Miesen's argument on this point strains logic.

Miesen's extreme arguments seem to stem from his frustrations about the outcome of those cases. Rather than arguing that the Eastern District of Washington and the Ninth Circuit are not controlling and are unpersuasive authority, Miesen jumps to the outlandish position that the decisions themselves are hearsay and irrelevant. While the Court will not entertain Miesen's ridiculous arguments, it will review his reasonable arguments regarding

---

[15] "Applicable state law required Mr. Miesen to make a 'written demand . . . upon the corporation to take suitable action.' Idaho Code § 30-29-742."

[16] "Consequently, this Court must follow Idaho law, because the AIA Entities are incorporated under Idaho law according to the amended complaint."

MEMORANDUM DECISION AND ORDER - 31

the applicability and persuasiveness of *Munding*. After reviewing *Munding*, the Court reviews each of the demand letters.

    a. Review of *Munding*

First, the Court notes that both the Ninth Circuit's and the Eastern District of Washington's *Miesen* decisions are unpublished. However, Ninth Circuit Rule 36-3 expressly allows citation to unpublished decisions, and while unpublished cases are not precedential, they can be persuasive.[17] Here, the June 2016 Demand letter was reviewed by the Eastern District of Washington and the Ninth Circuit, and those courts concluded the demand was inadequate, at least as the letter pertained to John Munding. Because the June 2016 Demand was reviewed by these courts, the Court finds the two *Munding* decisions particularly persuasive.

Second, Miesen filed a petition for certiorari in *Munding*, and the Supreme Court denied it. 141 S. Ct. 1464 (Mem.) (2021). Miesen argues that the denial of certiorari does not support the merits of the Ninth Circuit's decision. Dkt. 1131, at 10 (citing *Brown v. Allen*, 344 U.S. 443, 456 (1953) ("We have frequently said that the denial of certiorari imports no expression of opinion upon the merits of a case." (cleaned up))). However, this argument ignores the practical effect of the denial of certiorari in *Munding*: in that case, there is no remaining question about the sufficiency of the demand. The decision is final that the June 2016 Demand is insufficient under Idaho law in that case. Miesen asks this

---

[17] Under Ninth Circuit Rule 36-3, unpublished decisions are precedential "when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion." While the demand letter in *Munding* is the same as the June 2016 Demand in this case, the Hawley Troxell Defendants do not raise any preclusion arguments.

MEMORANDUM DECISION AND ORDER - 32

Court to now find that the June 2016 Demand is sufficient under Idaho law in this case.

Third, the Ninth Circuit reviewed the Eastern District Court's decision for abuse of discretion. *Munding*, 822 Fed. App'x at 548. Miesen argues that this standard is incorrect under Idaho law and that the correct standard of review is de novo. Dkt. 1131, at 20 n.10. In *Potter v. Hughes*, the Ninth Circuit held that "the demand requirement for derivative actions are reviewed for abuse of discretion."[18] 546 F.3d 1051, 1056 (9th Cir. 2008). Miesen cites an Idaho case, in which the Idaho Supreme Court held that the "interpretation of a statute is a question of law that the Supreme Court reviews de novo." *Bright v. Maznik*, 396 P.3d 1193, 1196 (Idaho 2017) (internal quotation omitted). The statute at issue in *Bright* was Idaho Code § 25-2805(2) (2015), Idaho's dog-bite law. *Id.* The holding in *Bright* is wholly inapplicable. "[I]t is well established that rules regarding the appropriate standard of review, or even the availability of review at all, to be applied by a federal court sitting in diversity, are questions of federal law." *Freund v. Nycomed Amersham*, 347 F.3d 752, 762 (9th Cir. 2003). Indeed, the Ninth Circuit has cited to *Potter* for the same standard of review for demand requirements in cases arising under Delaware law,[19] Washington law,[20] and Nevada law.[21] To the extent Miesen argues that *Munding* is unpersuasive

---

[18] Miesen has objected to citations of *Potter* in the Hawley Troxell Defendants' briefing and in *Munding*. Because the Ninth Circuit in *Potter* was reviewing California law regarding derivative demands, Miesen contends that citations to *Potter* indicate application of California law, rather than Idaho law. This is not true. Courts may cite federal cases for federal procedural law even if the cases involve differing substantive state law.

[19] *Tindall v. First Solar Inc.*, 892 F.3d 1043, 1045 (9th Cir. 2018).
[20] *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1012 (9th Cir. 2010).

[21] *La. Mun. Police Emp.'s Ret. Sys. v. Wynn*, 829 F.3d 1048, 1058 (9th Cir. 2016).

because it applied the wrong standard of review, Miesen is wrong.

Fourth, Miesen contends the Ninth Circuit did not evaluate the June 2016 Demand under Idaho state law. As mentioned earlier, the Ninth Circuit expressly stated that it was applying Idaho law. *Munding*, 822 Fed. App'x at 548 ("Applicable state law required Mr. Miesen to make a 'written demand . . . upon the corporation to take suitable action.' Idaho Code § 30-29-742."). The Eastern District of Washington did as well. *Munding*, 2019 WL 1410899, at *5 ("[T]his Court must follow Idaho law, because the AIA Entities are incorporated under Idaho law according to the amended complaint."); *id.* (citing Idaho Code § 30-29-742 for the demand requirement); *id.* at *6 ("The Court agrees that Plaintiff's derivative demands, as replicated in Plaintiff's amended complaint, do not sufficiently describe the 'suitable action' to satisfy notice under Idaho Code § 30-29-742 . . . .").

Miesen argues that the two *Munding* decisions failed to apply Idaho law as evidenced by their failure to cite *McCann* and the comments under Idaho Code Section 30-1-742, and in not following "Idaho's more relaxed standard for derivative demands." Dkt. 1131, at 10. The lack of a citation to *McCann* and the comments is not fatal to either decision, nor does it indicate that the two courts did not apply Idaho law; however, for thoroughness, the Court will review both *McCann* and the comments and compare them to the holding in *Munding*.

In his response brief, Miesen includes an excerpt from *McCann*, which he argues is contrary to the holding in *Munding*:

> **The demand on the directors need not assume a particular form nor need it be made in any special language. However, the stockholder must make an earnest and sincere, and not a feigned or simulated, effort**

**to include the directors to take remedial action in the corporate name.**
Statements should be presented to the directors showing the wrong
complained of, accompanied by sufficient responsible data which will enable
the directors to determine whether litigation could be engaged in with some
hope of success. The shareholder must state facts, not mere general charges
and conclusions.

The demand should give the directors a fair opportunity to initiate the
action which the shareholder wants to undertake, and name the potential
defendants, as well as the shareholder making the demand.

The shareholder should allow sufficient time for the directors to act
upon the demand before initiating the action. The directors' response must
be obtained, if possible. The shareholder must comply with the reasonable
requests of the directors in an effort to resolve the problems before
commencing an action. Thus, a shareholder may be required to provide
additional information to the directors.

Dkt. 1131, at 19–20 (quoting *McCann*, 61 P.3d at 591–92) (emphasis in original). Miesen

argues that this excerpt makes clear that Idaho law did not require the "demand to provide

the specific causes of action or provide all of the facts to support such causes of action."

Dkt. 1331, at 20. In *Munding*, the Ninth Circuit concluded that the demand's generic and

conclusory language could not "have been expected to provide the boards with enough

information to take 'suitable action.'" *Munding*, 822 Fed. App'x at 548. The Ninth Circuit

explained, "Without knowing the factual bases for the claims, the boards could not

determine the likelihood of the lawsuit's success and would have had difficulty weighing

factors like the expenses involved in litigation or whether litigation would further the AIA

Entities' general business interests." *Id.* at 548–49. Because of the demand's inadequacies,

the Ninth Circuit affirmed the lower court's dismissal of the complaint for failure to meet

Rule 23.1's pleading requirements.[22] While the Ninth Circuit did not cite *McCann* directly,

---

[22] Miesen contends that Rule 23.1 "plays no role in determining the adequacy of [his] derivative demands
under Idaho law." Dkt. 1131, at 31; *see also id.* at 18. Indeed, "although Rule 23.1 clearly *contemplates*

it did base its holding on the same law. Notably, *McCann* also holds that "[t]he shareholder must state facts, not mere general charges and conclusions" and that the shareholder must name the potential defendants. 61 P.3d at 591–92. The purpose of stating facts and claims, even if not the precise claims, is to "give the directors a fair opportunity to initiate the action which the shareholder wants to undertake." *Id. Munding* holds the same.

Miesen also argues that *Munding* ignores the comments to Section 30-1-742. To be clear, this Idaho statute does not have comments. Rather, Miesen is referring to the ABA comments to the Model Business Corporation Act Section 742. *See* Dkt. 1331, at 20. Miesen contends that the "Idaho Supreme Court relies on the ABA Comments to interpret the Idaho Business Corporation Act." *Id.* at 20 n.9. For this proposition, Miesen cites to *Wagner v. Wagner*, 371 P.3d 807, 811 (Idaho 2016). In *Wagner*, the Idaho Supreme Court was interpreting the statutory term "fair value" in Idaho Code Section 30-29-1434(4). 371 P.3d at 811. Referring to the ABA comments, the Court explained, "While the legislature did not adopt the comments to the MBCA, the comments do provide guidance as to the meaning of 'fair value.'" *Id.* Thus, the ABA comments are *not* Idaho law, but they may provide some guidance. The comments Miesen specifically refers to state:

---

both the demand requirement and the possibility that demand may be excused, it does not *create* a demand requirement of any particular dimension. On its face, Rule 23.1 speaks only to the adequacy of the shareholder representative's pleadings." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991). In *Munding*, the court was reviewing Miesen's complaint for what it said about the demand. There, Miesen did not provide the court with the full demand but rather included excerpts to the demand in the complaint. Here, Miesen does not include the language from his demands in the Third Amended Complaint; rather, he refers to them and provides a citation to where they may be found in the record. Dkt. 211, at ¶¶ 171–84. The Ninth Circuit in *Munding* evaluated the demands, as excerpted in the complaint, under Idaho law and found them inadequate. This Court must likewise evaluate the demands under Idaho law, even if not excerpted in the complaint.

> Section 742 specifies only that the demand shall be in writing. The demand should, however, set forth the facts concerning share ownership and be sufficiently specific to apprise the corporation of the action sought to be taken and the grounds for that action so that the demand can be evaluated. **<u>Detailed pleading is not required since the corporation can contact the shareholder for clarification if there are any questions. In keeping with the spirit of this section, the specificity of the demand should not become a new source of dilatory motions</u>**.
>
> The demand is intended to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs.

Dkt. 1131, at 20 (quoting Mod. Bus. Corp. Act § 742 cmts. 1 & 4 (2002)) (emphasis in original) (cleaned up). Miesen fails to explain how this is contrary to the holding of *Munding*, and if it is indeed contrary, Miesen fails to explain how these comments, which are not state law, hold greater weight than *Munding*.

Finally, Miesen contends that *Munding* is not in harmony with the "more relaxed standard for derivative demands" in Idaho. Dkt. 1131, at 10. The standard he is referring to is the standard addressed in *McCann*, so this is not a unique argument but rather goes back to the application of *McCann*.

After reviewing Miesen's arguments challenging the persuasiveness of *Munding*, the Court finds that none of his challenges have merit. *Munding* is a Ninth Circuit case regarding the same plaintiff and one of the same demand letters, namely the June 2016 Demand, involved in this case. While *Munding* is unpublished and thus nonprecedential,[23]

---

[23] "A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like; and (ii) issued on or after January 1, 2007." Fed. R. App. P. 32.1(a).

MEMORANDUM DECISION AND ORDER - 37

the Court strains to think of a how a case could be more persuasive than this one, which comes from the court of appeals over this district, has the same plaintiff, and reviews the same evidence presently at issue.

      b.  The Five Demands

          i.  June 2016 Demand – Dkt. 148-2

For the same reasons that the Ninth Circuit found the June 2016 Demand inadequate, this Court also finds it inadequate. The June 2016 Demand was addressed to the Board of Directors of the AIA Entities. It was from Rod Bond, who at the time was legally representing Dale Miesen, Jerry Legg, and Donna Taylor. The letter specifically stated that it was a derivative demand. The letter concerned legal claims against "Combined Defendants," including the Hawley Troxell Defendants and the Individual and CropUSA Defendants. It demanded that "all possible claims and legal action be immediately taken in a court of law on behalf of AIA." Dkt. 148-2, at 2. In forty-four numbered paragraphs, it then listed, in a generic and conclusory fashion, "all possible claims" relating to various actions by the AIA Entities and various defendants. The Ninth Circuit concluded that this demand letter "failed to describe with particularity the claims for relief [Miesen] sought or the factual bases for those claims." *Munding*, 822 Fed. App'x at 548. The Court agrees.

The only way to distinguish the demand allegations here from those at issue in *Munding* is if the demands relating to the Hawley Troxell Defendants and the Individual and CropUSA Defendants are adequate in a way that the demands relating to the defendant in *Munding*, namely John Munding, were not. The Court has reviewed the June 2016 Demand's allegations relating to the various parties and finds no meaningful difference

between the allegations lobbed against the Hawley Troxell Defendants and John Munding.

A large portion of the demands are to "[p]ursue all possible claims and defenses against

the Combined Defendants." *See* Dkt. 148-2. The Combined Defendants include John

Munding, the Hawley Troxell Defendants, and the Individual and CropUSA Defendants.

Thus, with respect to individual demands relating to the Combined Defendants, the Ninth

Circuit's decision in *Munding* applies to Hawley Troxell Defendants and the Individual

and CropUSA Defendants.

In addition to the Combined Defendants paragraphs, the June 2016 Demand

contains one specific paragraph for the Hawley Troxell Defendants and one specific

paragraph for John Munding:

> 11. Pursue all possible claims against Hawley Troxell requiring it to disgorge
> all compensation received or paid to Hawley Troxell directly or indirectly
> from AIA based on Hawley Troxell's conflicts of interest, breached fiduciary
> duties (including the duties of loyalty) and related malpractice, including,
> without limitation, all subsequent payments made by AIA to Hawley Troxell.
> . . .
> 22. Pursue all possible claims against John Munding and Crumb & Munding
> (or such other firm Mr. Munding is operating through) for malpractice,
> breach of fiduciary duties and to disgorge all attorneys' fees, costs and
> expenses paid to them directly or indirectly by AIA for the California
> Lawsuit as Mr. Munding intentionally violated his duties owed to AIA,
> including, without limitation, his duties of loyalty owed to AIA and by taking
> direction and action benefitting other defendants (including John's) and
> placing their interests in front of AIA and by representing CropUSA, AIA
> and other parties when there were conflicts of interest in doing so and Mr.
> Munding knew that he could not properly represent AIA's interests and when
> he had no intention of doing so. Demand is further made to pursue all
> possible claims against Mr. Munding and Crumb & Munding for improperly
> failing to assert that the guarantees and settlement agreements entered into
> by AIA were not authorized and were thus illegal or ultra-vires and by
> allowing AIA to enter into them in the first place. Mr. Munding places his
> interests in earning fees ahead of AIA's interests.

Dkt. 148-2, at 5, 7–8. Comparing these two paragraphs, the Court cannot find any instance where the allegations against the Hawley Troxell Defendants is less generic or less conclusory than the allegations against John Munding, thus warranting different treatment.

The allegations against CropUSA are likewise generic and conclusory. Beyond the paragraphs relating to the Combined Defendants, there are only two paragraphs directed towards CropUSA in the June 2016 Demand:

> 18. Pursue all possible claims against the Controlling AIA Defendants, CropUSA and any other of the Combined Defendants or responsible parties for all payments made to any and all vendors, creditors, consultants, agents, customers or other parties owed money by CropUSA, by the Controlling AIA Defendants, any entity partially or wholly owned by any one of the Controlling AIA Defendants, or paid at the direction of any one or more of the Controlling AIA Defendants, including, without limitation, the more recent hundreds of thousands of dollars in payments AIA made to certain agents and customers of CropUSA in 2013 and any previously or subsequently paid for CropUSA and any other entity.
> . . .
> 34. Pursue all possible claims that CropUSA and other entities (including Pacific Empire Radio) are the alter-ego of the Controlling AIA Defendants and thus they are individually liable for all damages.

Dkt. 148-2, at 6, 9. These demands do not sufficiently describe the "suitable action" the AIA Entities should take. Idaho Code § 30-29-742.

Turning to the Controlling Defendants, the Court notes that the June 2016 Demand does identify them more frequently. However, this fact does not change the outcome. The June 2016 Demand still does not go beyond generic and conclusory allegation and does not identify specific, suitable actions for the AIA Entities to consider pursuing. Rather, it continues to rely on the phrase "all possible claims" and does not set forth the factual bases for the claims. Thus, for the same reasons the demand failed in *Munding*, the demands

relating to the Controlling Defendants in the June 2016 Demand also fail.

What then remains are the four other demand letters. The Hawley Troxell Defendants argue that none of these letters fare better than the inadequate June 2016 Demand. They argue that the remaining letters have the same inadequacies as the June 2016 Demand and/or other inadequacies. Below is a review of each demand:

> ii.  July 2008 Demand – Dkt. 23-9

The earliest demand letter is the July 2008 Demand. The Hawley Troxell Defendants argue this letter is even more lacking than the June 2016 Demand. The Court agrees.

The June 2016 Demand letter is addressed to the AIA Entities' Board of Directors. It is written by attorney Michael Bissell on behalf of Donna Taylor and Reed Taylor. In the letter, the Taylors demanded that the Board of Directors:

> [T]ake action against the law firms of Hawley Troxell Ennis & Hawley; Clements, Brown & McNichols; Quarles & Brady; together with the responsible attorneys of said firms (and any other firms which have wrongfully represented the entities) for violating the applicable Rules of Professional Conduct, malpractice, breach of fiduciary duties, and aiding and abetting, including, without limitation, all acts related to or involving the following claims and/or causes of action: [list].

Dkt. 23-9, at 1. The list did not describe with particularity the claims for relief or the factual bases for those claims.[24] Therefore, like the June 2016 Demand, this letter "cannot have

---

[24] Here is a sampling of that list:

. . .

>    2. Taking action against the best interests of AIA Services and/or AIA Insurance;

>    . . .

>    5. Issuing inappropriate opinion letters to lenders and auditors;

>    . . .

been expected to provide the boards with enough information to take 'suitable action.'" *Munding*, 822 Fed. App'x at 548. As the Hawley Troxell Defendants point out, "[t]he letter fails to ascribe any of the 27 alleged causes of action to any particular law firm or lawyer, and fails to even identify a lawyer who was purportedly liable or describe how they were allegedly involved." Dkt. 1067-1, at 12.[25]

Miesen fails to argue that the July 2008 Demand is any clearer than the June 2016 Demand. Instead, he contends that it is sufficient under Idaho law, flatly ignoring *Munding*. He also argues that the board could have asked for clarification if any demand was lacking in information. While the board could have asked for clarification, it was not required to do so.

Because the July 2008 Demand does not go beyond general and conclusory allegations, it is inadequate under Idaho law.

   iii. April 2012 Demand – Dkt. 67-33

The April 2012 Demand is a four-paragraph email from attorney Rod Bond, on

---

7. Preventing claims from being made against present and past directors, including, without limitation, R. John Taylor, Michael Cashman, James Beck and Connie Taylor;
. . .
10. Failing to take action against interested directors and parties who took part in fraud, conspiracy and other illegal activities, including, without limitation, R. John Taylor, James Beck, Michael Cashman and Connie Taylor;
11. Breaching fiduciary duties (including the duty of loyalty owed to AIA Services and AIA Insurance;
. . .
22. Failing to comply with contractual obligations owed to Reed and Donna;
. . .
27. Accepting payment of attorneys' fees and costs which should have been allocated to other parties, including, without limitation, fees and costs that should have been paid by Crop USA, R. John Taylor, James Beck, Michael Cashman and Connie Taylor.

[25] While the demand does mention attorney Richard Riley, it describes him as "a witness." Dkt. 23-9, at 3.

MEMORANDUM DECISION AND ORDER - 42

behalf of Donna Taylor, Dale Miesen, LeeAnn Hostetler, Kay Hanchett, Jerry Legg, and Bobette Ruddell, to the "Counsel and Board of Directors of AIA Services and AIA Insurance." Dkt. 67-33. The demand itself is a single paragraph, included in its entirety:

> Demand is hereby made to the board of directors of AIA Services and AIA Insurance to; (1) cease all efforts to withdraw the $400,000 in the court registry in Taylor v. AIA Services; (2) cease paying any attorneys' fees or costs for John Taylor, Michael Cashman, and James Beck; (3) secure the mortgage of the Lewis Clark Hotel; (4) cease all compensation to the foregoing individuals; (5) hold annual shareholder meetings; (6) comply with all applicable Bylaws and Articles of Incorporation of the corporations; and (7) make full disclosure to all shareholders of all of the inappropriate and illegal transactions which have occurred over the years. Obviously, complying with the Bylaws, Articles of Incorporation and Idaho law results in the present purported board members being conflicted from taking any action whatsoever, including withdrawing the $400,000 held in the court registry or taking any other funds or assets from the corporations.

*Id.* Simply put, that demand is not a derivative demand. While it directs the Board to take certain actions, it does not direct the Board to initiate an action against any other party. *See McCann*, 61 P.3d at 592. It does not include "[s]tatements . . . presented to the directors showing the wrong complained of, accompanied by sufficient responsible data which will enable the directors to determine whether litigation could be engaged in with some hope of success." *Id.* (quoting 19 Am. Jur. 2d Corporations § 2277, 172–73 (1986)). The email presents no legal claims and makes no reference to litigation.

Furthermore, while the text of the email says it is addressed to "Counsel and Board of Directors of AIA Services and AIA Insurance," the email was not sent to the Board of Directors, only to attorneys David Risely, John Ashby, Gary Babbitt, and James LaRue. *Id.* The Idaho Supreme Court has held that demand letters are insufficient when delivered to a corporation's attorney and not sent to the directors themselves. *McCann*, 61 P.3d at

MEMORANDUM DECISION AND ORDER - 43

592.

Accordingly, the Court finds the April 2012 Demand inadequate.

   iv. July 2012 Demand – Dkt. 67-42

The July 2012 Demand encompasses demands made by various shareholders, including Miesen, at a shareholder meeting. The Hawley Troxell Defendants argue that the July 2012 Demand is insufficient for two primary reasons: (1) it fails to demand action against the Hawley Troxell Defendants, and (2) the demands are vague and factually unsupported and thus insufficient for the same reasons the June 2016 Demand was insufficient in *Munding*.

The July 2012 Demand does not name any of the Hawley Troxell Defendants. Under Idaho law, a derivative demand must "name the potential defendants" so that the directors may determine whether to litigate the claim. *McCann*, 61 P.3d at 592 (quoting 19 Am. Jur. 2d *Corporations* § 2278, 173–74 (1986)). The only hint of a claim against the Hawley Troxell Defendants comes as a reference to the present case:

> That R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, JoLee Duclos and Aimee Gordon be barred from serving as directors or officers of the Company based upon the ongoing malfeasance, conflicts of interest, failure to act in good faith, breaches of fiduciary duties (including the duties of loyalty, care and good faith) and other acts and/or omissions committed under their direction, participation and/or acquiescence, including, without limitation, those acts and/or omissions identified in the First Amended Complaint in *Donna J. Taylor v. Hawley Troxell Ennis & Hawley, R. John Taylor, Michael Cashman, James Beck, et al.*, United States District Court for the District of Idaho, Civil No. l:10-cv-00404-MLB (the "Federal Court Case"), which said First Amended Complaint is incorporated by reference herein, and that legal action be taken against them.

Dkt. 67-42, at 1. The Court does not find that this reference is sufficient to have given the

MEMORANDUM DECISION AND ORDER - 44

AIA Entities fair opportunity to review and pursue possible claims against the Hawley Troxell Defendants.

Of course, the Individual and CropUSA Defendants joined this Motion to Dismiss, so this demand letter must also be reviewed as it pertains to them. Like the April 2012 Demand, the July 2012 Demand fails as a *derivative* demand. Almost all of the demands are for the AIA Entities to take some action *not* involving litigation. *See generally* Dkt. 67-43. To be sure, at the start of each shareholder's demands is a line calling it a derivative demand, but calling a document a derivative demand does not automatically make it so. There are only four unique paragraphs that mention anything about pursuing legal action:[26]

> 1. That R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, JoeLee Duclos and Aimee Gordon be barred from serving as directors or officers of the Company based upon the ongoing malfeasance, conflicts of interest, failure to act in good faith, breaches of fiduciary duties (including the duties of loyalty, care and good faith) and other acts and/or omissions committed under their direction, participation and/or acquiescence, including, without limitation, those acts and/or omission identified in the First Amended Complaint in *Donna J. Taylor v. Hawley Troxell Ennis & Hawley, R. John Taylor, Michael Cashman, James Beck, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case"), which said First Amended Complaint is incorporated by reference herein, and that legal action be taken against them.
> . . .
> 3. That Paul D. Durant be appointed as the President of AIA Services Corporation and AIA Insurance, Inc., to be duly compensated, and to operate those entities in the best interests of the corporations and their shareholders (with an emphasis on recovering damages and sums from majority shareholder R. John Taylor and Connie Taylor Henderson and others for the benefit of the corporations and their innocent shareholders) and to retain and/or terminate such employee(s) and/or officer(s) as he deems appropriate to properly operate the corporations and pursue any claims set forth in the First Amended Complaint in the Federal Court Case and similar or other

---

[26] Each of the fourteen shareholders made a separate demand, but they are largely identical.

claims against named and unnamed parties. Mr. Durant should also be authorized to appoint other parties to the Board of Directors to serve until the next annual meeting as provided under the Restated Bylaws.

4. That the Company (regardless of Mr. Durant's appointment as an officer or director of the Company), and Paul D. Durant if appointed as an director and/or officer, be authorized to pursue the claims and causes of actions identified in the First Amended Complaint filed in the Federal court Case through the date of this Demand and for all related acts after the date of this Demand, including, without limitation, requesting and praying for punitive damages against the parties named in the Federal Court Case and any other responsible parties named in this Demand. A copy of said First Amended Complaint is incorporated by reference herein and is already in the possession of the Company and its purported officers and purported directors (a copy can also be obtained from PACER (the online filing system for the United States District Court for the District of Idaho)).

. . .

18. Nothing in this Demand should be construed as a waiver or limitation of any claims, causes of action, and/or relief requested presently asserted by the undersigned in the First Amended Complaint in the Federal Court Case. This Demand is intended to supplement and assert demand for action to pursue claims, causes of action, and damages asserted in the First Amended Complaint and to include causes of actions, claims and damages accrued since the undersigned's last demand. By making this Demand, Donna Taylor is also asserting additional claims and relief to add to her claims in the Federal Court Case and to include the presently pled claims and other claims through the present time and/or as set forth above. Donna Taylor asserts that her presently pled claims have all been adequately covered by her prior derivative demand letters and this Demand is not a waiver of any claims presently pled in the Federal Court Case.

Dkt. 67-43, at 7, 10.[27] These paragraphs do not state the legal claims Miesen wanted the

AIA Entities to pursue, nor do they give any factual background to support legal claims.

To the extent that the demand is to pursue the claims already in the Federal Court Case,

i.e., the instant case, that is not a pre-suit demand. *See* Idaho Code § 30-29-742; *Mannos*,

155 P.3d at 1172–73 ("[A] shareholder may not commence a derivative proceeding until

---

[27] Paragraphs 1, 3, and 4 are identical across all of the shareholders' demands. However, only Donna Taylor's demand includes paragraph 18.

he makes a written demand upon the corporation to take suitable action at least ninety days prior to the commencement of the action."). For these reasons, the July 2012 Demand is inadequate.

v.  August 2016 Demand – Dkt. 186-2

The Hawley Troxell Defendants contend that the August 2016 Demand is substantially similar to the June 2016 Demand and is likewise insufficient. The Court agrees. The same defects in the June 2016 Demand plague the August 2016 Demand. Miesen has failed to show that there is any meaningful difference in the August 2016 Demand that makes it sufficient under Idaho law where the June 2016 Demand is not.

c.  Miesen's Arguments About the Demand Standard Being Excused or Relaxed

Notwithstanding the inadequacies of the demands, Miesen argues that the Idaho Supreme Court would excuse or relax the demand standard under the facts of this case. Miesen contends that the directors of the AIA Entities are rogue malfeasants so the demand requirement should be excused or relaxed.[28] What this argument ignores, is that under Idaho law there is no futility exception to the demand requirement. *McCann*, 61 P.3d at 593; *Mannos*, 155 P.3d at 1173. While Miesen tactfully avoids the word "futile" in his filings, what he is essentially arguing is that because the AIA Entities did not have proper corporate governance and the directors were engaged in tortious conduct, demand was futile and thus unnecessary. The semantics do not change the underlying argument.

---

[28] This argument relates to the first and fourth questions in the Motion to Certify.

Accordingly, Miesen was not excused from the demand standard set forth in Idaho Code Section 30-29-742 nor is that standard altered in this case.

At the hearing, Miesen also argued that although the Eastern District of Washington and the Ninth Circuit were right in their *Munding* conclusions,[29] the Court should come to a different conclusion here because the demands should be read in the full context of what the board of directors knew about the underlying shareholder complaints. Miesen contends that the two *Munding* courts only had the demand to review, and in that vacuum, the demand was inadequate. The current case is different according to Miesen because this Court has fuller record before it to demonstrate that the board of directors knew what specific actions and concerns the demands regarded.[30] In essence, Miesen argues the board knew what the shareholders meant even if the shareholders did not spell it out in any of the demand letters.

The Court cannot accept this argument. The demand requirement is a pre-condition to filing a derivative shareholder lawsuit. Idaho Code § 30-29-742; *see also Mannos*, 155 P.3d at 1172–73. Idaho law provides no futility exception or any other like exception. *McCann*, 61 P.3d at 593. Failure to make an adequate demand results in dismissal of the lawsuit. Miesen's argument is creative but ultimately no different than a futility argument:

---

[29] This concession was a sharp departure from the position in Miesen's brief where he argued that those decisions were hearsay, irrelevant, and inapplicable.

[30] At the motion to dismiss stage, the Court is concerned not with the whole record but with the pleadings. Of course, Miesen asked the Court to take judicial notice of some documents for the purpose of establishing that the board of directors knew what the derivative demands meant. The Court denied those requests, noting that the Third Amended Complaint included allegations that the directors were aware of the demands and the underlying issues.

Miesen should not be held to the demand requirement because the circumstances were such that the board knew what was happening and was not pursuing legal action.[31] Boards of directors commonly know of the underlying concerns and complaints at issue in derivative litigation, but that knowledge does not excuse a demand requirement under state law.

Indeed, accepting this argument would remove any effect from the requirement for a written pre-suit demand. To illustrate, a shareholder could inform the board of directors of a perceived wrong. The next day, the shareholder could send an email to the board saying, "Pursuant to our conversation yesterday, this is a derivative demand that the corporation pursue all legal claims." That "demand" in the context of the earlier conversation could satisfy the demand requirement under Miesen's theory. But how would a court review it for adequacy? The court would need to look beyond the written demand itself, removing nearly all legal significance from the demand and placing the focus instead on what the board knew or did not know about the alleged wrong. This would be an onerous burden indeed. Delving into the subjective understanding of individual board members and evaluating those thoughts against the sufficiency of any demand is a bridge too far.

At the hearing, Miesen failed to identify any caselaw to support his theory that the standard for reviewing demand adequacy should take into consideration what the board knew. Rather, he argued that this principle is implicit in Idaho caselaw regarding derivative demands. The Court disagrees. The relevant caselaw from the Idaho Supreme Court does not look beyond the demand itself when reviewing it for adequacy. *See McCann* 61 P.3d

---

[31] This is not to say that this argument would be successful if Idaho had a futility exception.

at 592 (determining whether the plaintiff met the demand requirement based on the derivative demand letter rather than the prior communications).

### 4. Summary

The derivative demand requirement is a mandatory precondition to bringing a derivative action. Miesen failed to satisfy the derivative demand under Idaho law. Although Judge Dale originally found the letters to be adequate, the Court now has the benefit of a Ninth Circuit case on this exact matter. Furthermore, Judge Dale's ruling was interlocutory. While the law of the case doctrine strives for consistency, it also allows for changed circumstances. Said differently, even had this been brought as a motion for partial reconsideration of Judge Dale's prior findings, the Court could have come to the same conclusion it did today.

Thus, after over eleven years since this case began, the Court must DISMISS Miesen's derivative claims against the Hawley Troxell Defendants, the Individual Defendants, and CropUSA. Because amending the complaint would not remedy the inadequacies of the Complaint, the Court must also DISMISS these derivative claims WITH PREJUDICE.

### D. What Remains

This case is frankly a procedural mess with over 1,200 docket entries. The Third Amended Complaint had eleven counts, some of which have already been dismissed in whole or in part. What's more, Miesen contends that some of these counts are not derivative claims but are direct claims, and the Hawley Troxell Defendants disagree, at least as to the claims brought against them. And not to be forgotten, this case also has third-party claims,

crossclaims, and counter-crossclaims. Additionally, there are ten pending motions remaining in this case, and the Court has stayed briefing on those motions. Some of those motions may now be moot.

In the interest of judicial economy, the Court instructs each party in this case, including those not involved with the present motions, to file a concise status report, no more than five pages, explaining what issues remains in this case—including the status of any pending motions. Each party should address which of their claims still exist and/or which of the claims brought against them still exist. The parties should cite to the docket to explain which claims have been dismissed. The status reports are due within fourteen days of this order. The Court will then review the status reports and determine how to proceed with the case, including whether to moot any motions, direct further briefing on issues in dispute in the status reports, and/or whether to lift the briefing stay on the remaining motions.

## IV. CONCLUSION

In summary, the Court DENIES Miesen's Motion to Certify (Dkt. 1148), DENIES the Miesen's Amended Request for Judicial Notice (Dkt. 1153), and GRANTS the Hawley Troxell's Motion to Dismiss (Dkt. 1067), which was joined by the Individual and CropUSA Defendants (Dkt. 1090). Accordingly, the derivative claims brought against the Hawley Troxell Defendants and the Individual and CropUSA Defendants are DISMISSED WITH PREJUDICE.

## V. ORDER

The Court HEREBY ORDERS:

1. Plaintiff Dale Miesen's Motion to Certify (Dkt. 1148) is DENIED.

2. Plaintiff Dale Miesen's Amended Request for Judicial Notice (Dkt. 1153) is DENIED.

3. The Hawley Troxell Defendants' Motion to Dismiss (Dkt. 1067) is GRANTED. The derivative claims brought against them and the Individual and CropUSA Defendants who joined (Dkt. 1090) are DISMISSED WITH PREJUDICE in accordance with the decision above.

4. Each party's status report is due within fourteen (14) days of this order.

DATED: May 5, 2022

David C. Nye
Chief U.S. District Court Judge