RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>            Plaintiff,<br><br>**v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>            Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>PLAINTIFF DALE L. MIESEN'S MEMORANDUM OF LAW IN SUPPPORT OF HIS MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS |

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - i

CROP USA INSURANCE AGENCY, INC., an
Idaho corporation; CONNIE TAYLOR
HENDERSON, an individual; JOLEE
DUCLOS, an individual; R. JOHN TAYLOR,
an individual; MICHAEL W. CASHMAN SR.,
an individual; JAMES BECK, an individual,

       Defendants/Third-Party
       Plaintiffs,

    **v.**

REED TAYLOR, an individual,

       Third-Party Defendant.

REED TAYLOR, an individual,

       Third-Party Defendant/
       Counterclaimant,

    **v.**

CONNIE TAYLOR HENDERSON, an
individual; R. JOHN TAYLOR, an individual;
JAMES BECK, an individual, and UNKNOWN
BONDING COMPANY, an unknown entity
that issued the unknown fidelity ERISA Bond,

       Counterdefendants.

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - ii

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................ 1

II.    FACTS .............................................................................................................. 1

III.   ARGUMENT ..................................................................................................... 2

    A.    This Court Should Approve the Payment of $560,000 in Attorneys' Fees
          (40% of the Recovery) and $375,327.96 in Costs from the Funds Held by the
          Treasury. .................................................................................................... 2

         1.    Federal Procedural Law and Idaho State Law Governs the Award and
             Method of Calculation of Attorneys' Fees and the Award of Costs. ........... 2

         2.    Miesen's Attorneys Provided Services for an Agreed 40% Contingent
             Fee and They Have a Valid and Superior Charging Lien on the
             Settlement Proceeds Pursuant to I.C. § 3-205 ............................................ 3

         3.    This Court Should Approve the Payment of the Requested Fees and
             Costs Under the "Common Fund" Doctrine. ............................................... 4

         4.    Alternatively (or in Addition), this Court Should Approve the
             Payment of the Requested Fees and Costs Under I.C. § 30-29-746(1). ..... 6

         5.    The AIA Entities Received a Substantial Benefit from the Settlement
             Agreement. ................................................................................................. 7

         6.    The Amount of Fees Requested Are Reasonable and Warranted. ............... 8

             a.    The Time and Labor Required. ...................................................... 10

             b.    The Novelty and Difficulty of the Questions. ............................... 10

             c.    The Skill Requisite to Perform the Legal Service Properly and
                the Experience and Ability of the Attorney in the Particular
                Field of Law. ................................................................................. 10

             d.    The Prevailing Charges for Like Work. ........................................ 11

             e.    Whether the Fee is Fixed or Contingent. ...................................... 11

             f.    The Time Limitations Imposed by the Client or the
                Circumstances of the Case. ........................................................... 11

             g.    The Amount Involved and the Results Obtained. .......................... 11

             h.    The Undesirability of the Case. .................................................... 11

             i.    The Nature and Length of the Professional Relationship with
                the Client. ...................................................................................... 12

             j.    Awards in Similar Cases. .............................................................. 12

             k.    The Reasonable Cost of Automated Legal Research. .................... 12

             l.    Other Factors Which the Court Deems Appropriate in the
                Particular Case. ............................................................................. 12

7.      The Costs Requested Are Reasonable and Warranted................................ 13

8.      There Were No Objections by Any Creditors, Shareholders or Other Stakeholders to the Payment or Amount of the Attorneys' Fees and Costs.................................................................................................................. 14

9.      Assuming the Defendants Renew Certain Objections, They Are Wholly Without Merit.................................................................................. 14

    a.      The Defendants' Mischaracterize Other Lawsuits........................ 14

    b.      The Remaining Defendants' Indemnity Arguments Are Irrelevant and They Will Not Be Entitled to Any Indemnity. ...... 15

10.     Miesen Respectfully Requests Oral Argument........................................ 16

IV.     CONCLUSION................................................................................................................ 17

CERTIFICATE OF SERVICE ..................................................................................................... 18

Miesen and his undersigned counsel (collectively "Miesen") move the Court as follows:

## I.   INTRODUCTION

Before this Court is Miesen's motion approve the payment of fees and costs from the $1,400,000 settlement obtained from the Hawley Troxell Defendants. For the reasons explained below, this Court should find that Miesen and his counsel have a 40% contingent fee arrangement and that his counsel have a valid first-priority charging lien on the remaining settlement proceeds after the payment to Mr. Lombardi. Then, this Court should award Miesen's counsel the $560,000 in requested contingent fees (which is far less than the fee would have been based on hourly rates) and $375,327.96 in costs (which is substantially less than the costs incurred) pursuant to the common fund doctrine and/or I.C. § 30-29-746(1). The fees and costs requested are reasonable and warranted for this complex and drawn-out lawsuit against the Hawley Troxell Defendants.

## II.   FACTS

After nearly twelve years since this lawsuit was filed (Dkt. 1),[1] Miesen and the Hawley Troxell Defendants entered into a Settlement Agreement that resulted in a $1,400,000 payment and a release of all claims (which includes claims for unpaid fees and costs). (8/18/22 Bond Decl., Ex. A.)  The Settlement Agreement provided a "common fund" and "substantial benefit" to AIA Services Corporation and AIA Insurance, Inc. (collectively "AIA Entities"). *Id.* On August 4, 2022, this Court approved the Settlement Agreement and entered a Rule 54(b) Judgment dismissing Miesen's claims against the Hawley Troxell Defendants thereby terminating the derivative proceeding against them. (Dkts. 1235, 1236.) On August 17, 2022, this Court ordered the $1.4 million settlement payment be deposited in the treasury. (Dkt. 1241.)

---

[1] This lawsuit was delayed many years because the defendants sought and obtained a stay. (*E.g.,* Dkt. 40.) The stay was not lifted until early 2016—after the Ninth Circuit reversed. (Dkts. 88, 95, 105, 108.) The defendants' arguments that this lawsuit has been delayed by Miesen or his counsel are without merit.

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 1

This timely motion followed.

### III.   ARGUMENT

**A.  This Court Should Approve the Payment of $560,000 in Attorneys' Fees (40% of the Recovery) and $375,327.96 in Costs from the Funds Held by the Treasury.**

**1.  Federal Procedural Law and Idaho State Law Governs the Award and Method of Calculation of Attorneys' Fees and the Award of Costs.**

In diversity cases, the decision regarding attorneys' fee (including the method of calculating fees) and the award of compensatory costs are governed by state law.[2] *Klopfenstein v. Pargeter*, 597 F.2d 150, 152 (9th Cir. 1979); *Mangold v. California Public Utilities Com'n*, 67 F.3d 1470, 1478-79 (9th Cir. 1995); *Sarens USA, Inc. v. Lowery*, 525 F.Supp.3d 1257, 1268 (D. Mont. 2021). However, procedural questions such as scheduling hearings or the deadlines to file a motion for attorneys' fees are governed by federal law. *See Mangold,* 67 F.3d at 1478.

A motion for attorneys' fees must "be filed no later than 14 days after the entry of Judgment." Fed. R. Civ. P. 54(d)(2)(B)(i).

Here, Miesen has timely moved for an award of attorneys' and costs within fourteen days of this Court's Rule 54(b) judgment dismissing the Hawley Troxell Defendants. (Dkt. 1236.)  And, because Miesen's claims are based exclusively on Idaho state law and the AIA Entities are Idaho corporations, Dkt. 211, Idaho law governs the award and calculation of Attorneys' fees and costs. Having established that Miesen's motion was timely filed and that Idaho law applies, Miesen will now establish that he has a 40% contingent fee agreement with his counsel and that they have a first-priority charging lien in the remaining $1,376,540.47 settlement proceeds.

---

[2] This Court must predict how the Idaho Supreme Court would decide any unsettled issues of law. *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 2

2.   **Miesen's Attorneys Provided Services for an Agreed 40% Contingent Fee and They Have a Valid and Superior Charging Lien on the Settlement Proceeds Pursuant to I.C. § 3-205.**

This Court should find that Miesen's counsel have an agreement to be compensated through a 40% contingent fee. Next, this Court should find that Miesen's attorneys and their law firms have a valid and the first-priority charging lien over any other claimants on the remaining $1,376,540.47 in settlement proceeds (and any future proceeds) for their claimed fees and costs.

> The measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties, which is not restrained by law. From the commencement of an action, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor and the proceeds thereof in whosoever hands they may come; and can not be affected by any settlement between the parties before or after judgment.

I.C. § 3-205. Idaho recognizes both possessory and charging liens for attorney fees. *See Frazee v. Frazee*, 104 Idaho 463, 464, 660 P.2d 928, 929 (1983). The charging lien includes a lien for costs. *See, e.g., Nancy Lee Mines, Inc. v. Harrison*, 93 Idaho 652, 654 n. 4, 471 P.2d 39, 41 n. 4 (1970) (explaining that I.C. § 3-205 merely codifies the common law charging lien, which includes the right to "have fees and costs due him for services in a particular suit…"); *Isrin v. Superior Court*, 63 Cal.2d 153, 158-59, 403 P.2d 728, 732, 45 Cal.Rptr. 320, 324 (Cal. Ct. App. 1965).

Here, Miesen has a written fee agreement with Mr. Bond's firm and Mr. Schwam that requires the payment of a 40% contingent fee (35% to Mr. Bond's firm and 5% to Mr. Schwam) of the gross proceeds recovered in this lawsuit and the reimbursement of all costs incurred. (8/18/22 Miesen Decl. ¶5; 8/18/22 Bond Decl. ¶26, Ex. A; 8/18/22 Schwam Decl. ¶4.) Thus, this Court should find that those representation terms have been established and that Miesen's counsel have a first-priority charging lien for attorneys' fees and costs against the remaining $1,376,540.47 in settlement funds held by this Court and that their lien is superior to all other claimants. In light

of the AIA Entities precarious financial condition (8/18/22 Bond Decl. Ex. B) and the verified allegations in the Third Amended Complaint ("TAC"), this charging lien is even more important to have confirmed.

If, for some reason, this Court does not address Miesen's fees and costs, this Court should still enter an order finding that Miesen's counsel, Roderick Bond Law Office, PLLC and Andrew Schwam, have a first-priority charging lien on the $1,376,540.47 in remaining settlement proceeds and any future proceeds deposited into the Court to secure the payment of attorneys' fees and costs. Having established the applicable terms of the contingent fee representation and that Miesen's counsel have a charging lien on the remaining settlement proceeds, Miesen will now turn to the legal basis to approve the payment of Miesen's attorneys' fees and costs.

### 3. This Court Should Approve the Payment of the Requested Fees and Costs Under the "Common Fund" Doctrine.

Because Miesen's counsel have secured a $1,400,000 settlement common fund ($1,376,540.47 after the Court's payment to Mr. Lombardi), this Court should order that Miesen's 40% contingent fee ($560,000) and the $375,327.96 in costs be awarded to his counsel under the "common fund" doctrine.

"The 'common fund doctrine' was first recognized in Idaho in 1959." *Wensman v. Farmers Ins. Co. of Idaho*, 134 Idaho 148, 151, 997 P.2d 609, 612 (2000). "The purpose of the doctrine is to afford fairness to the injured party, 'for it would be unjust to require him to incur expenses for the recovery of money for the benefit of the insurer, without being allowed to reimburse himself.'" *Kenneth F. White, Chtd. v. St. Alphonsus Reg'l Med. Ctr.*, 136 Idaho 238, 242, 31 P.3d 926, 930 (2001) (citations omitted).

However, there are no published Idaho appellate court decisions applying the "common fund" doctrine to recoveries obtained in a direct action or derivative action that obtained a

"common fund" for the benefit of a corporation. The "common fund" doctrine has been recognized for many years to award fees and costs for shareholder suits by other courts. *See, e.g., Schilling v. Belcher*, 582 F.2d 995 (5th Cir. 1978).

Most courts have found that fee-shifting statutes do not displace "common fund" awards. *Staton v. Boeing Co.*, 327 F.3d 938, 967–69, 55 Fed. R. Serv. 3d 1299 (9th Cir. 2003) (permitting common fund recovery even where statutory fees may be available); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1327 (2d Cir. 1990) ("In our view, fee-shifting statutes are generally not intended to circumscribe the operation of the equitable fund doctrine.").

Here, Miesen asserts that the Idaho Supreme Court would adopt the "common fund" doctrine to apply in instances when shareholders make recoveries on behalf of corporations, irrespective of whether those recoveries are obtained through direct or derivative claims, and that "common fund" awards are not displaced by fee-shifting statutes. *Gravquick A/S*, 323 F.3d at 1222.

Miesen, through the efforts of his counsel, has recovered a $1,376,540.47 (after deducting Mr. Lombardi's payment) "common fund" through the prosecution of his direct and derivative claims and the ultimate entry of the Settlement Agreement with the Hawley Troxell Defendants. (8/18/22 Bond Decl. ¶¶2-49, Ex. A.) The Settlement Agreement does not allocate the $1,400,000 recovery between the direct and derivative claims. *Id.* Moreover, Miesen's direct claims may not be covered by I.C. § 30-29-746(1).[3] Thus, the "common fund" doctrine appears to be the most appropriate means of compensating Miesen's counsel for their efforts and extensive costs. Moreover, it would be unjust to allow the AIA Entities to retain the benefit from the over ten years of work and over $400,000 in costs incurred in prosecuting this lawsuit.

---

[3] For example, Miesen has asserted ultra vires and related unauthorized conduct under I.C. § 30-29-305 and its predecessors. While that statute permits Miesen to enjoin the AIA Entities, set aside transactions and for the Court to award the AIA Entities damages, there is no fee provision providing for Miesen to recover fees and costs under those statutes.

For the same reasons stated in Section A(5) below, the $1,400,000 and release of claims by the Hawley Troxell Defendants for all unpaid fees and costs provided a substantial benefit to the AIA Entities (although Idaho has not adopted the "substantial benefit" test for "common fund" awards). Indeed, by definition, a "common fund" would be a benefit.

Accordingly, this Court should hold that the Idaho Supreme Court would apply the "common fund" doctrine to recoveries in shareholder lawsuits and would award Miesen's counsel their 40% contingent fee and the requested costs from the settlement funds.

**4.    Alternatively (or in Addition), this Court Should Approve the Payment of the Requested Fees and Costs Under I.C. § 30-29-746(1).**

Because the derivative proceeding as to the Hawley Troxell Defendants has been terminated, this Court should approve the payment of Miesen's attorneys' fees and costs by the AIA Entities.

> On termination of the derivative proceeding, the court may: (a) Order the corporation to pay the plaintiff's reasonable expenses, including counsel fees, incurred in the proceeding if it finds that the proceeding has resulted in a substantial benefit to the corporation.

I.C. § 30-29-746(1). The Idaho Legislature defined "derivative proceeding" in I.C. § 30-29-746 as "a civil suit in the right of a domestic corporation..." I.C. § 30-29-740(1).

Here, Miesen "derivative proceeding" against the Hawley Troxell Defendants, which could have been filed as a separate lawsuit, has been terminated through the execution of the settlement agreement and this Court's subsequent approval order and Rule 54(b) Judgment. (Dkts. 1235, 1236.) Alternatively, if this Court approves Miesen's settlement with GemCap and its decision regarding the derivative demands stands after the pending briefing, then the entire derivative proceeding would be terminated as to all parties. Thus, this Court should order the AIA Entities to pay Miesen's attorneys' fees and costs pursuant to I.C. § 30-29-740(1). Under either scenario, Miesen should be awarded his 40% contingent fee and the requested costs out of the settlement.

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 6

For the same reasons stated in Section A(5) below, the $1,400,000 and release of claims by the Hawley Troxell Defendants for all unpaid fees and costs provided a substantial benefit to the AIA Entities.

**5.    The AIA Entities Received a Substantial Benefit from the Settlement Agreement.**

The Idaho Supreme Court has never addressed what constitutes a "substantial benefit" under I.C. § 30-29-746(1) nor has it ever adopted that requirement for "common fund" cases. The Idaho Supreme Court has stated:

> The law is apparently well settled that where a stockholder brings an action for the benefit of the corporation and the suit terminates favorably to the stockholder and thus inures to the benefit of the corporation the stockholder is entitled to reimbursement for his expenses, including attorney's fees.

*Coeur D'Alenes Lead Co. v. Kingsbury*, 59 Idaho 627, 85 P.2d 691 (1938) (citations omitted). The plain reading of I.C. § 30-29-746(1) merely states that a "substantial benefit" must be obtained. *Johnson v. Sanchez*, 140 Idaho 667, 669, 99 P.3d 620, 622 (Ct. App. 2004) ("The plain meaning of a statute will prevail unless clearly expressed legislative intent is contrary or unless plain meaning leads to absurd results."). The Idaho Supreme Court regularly relies on Black's Law Dictionary to define terms. *Taylor v. Taylor*, 163 Idaho 910, 918, 422 P.3d 1116, 1124 (2018) (defining "ultra vires" using Black's Law Dictionary). "Substantial" has been defined as "Real and not imaginary; having actual, not fictitious, existence." Black's Law Dictionary (11th ed. 2019). "Benefit" has been defined as "Profit or gain; esp., the consideration that moves to the promise." *Id.*

Here, there can be no credible argument that the $1,400,000 settlement payment (the $1,400,000 settlement payment alone is more than sufficient to establish a substantial benefit) and the release of any claims for unpaid fees and costs (among other terms in that agreement). (8/18/22 Bond Decl. Ex. A.) The plain meaning of "substantial benefit" is more than satisfied by a

$1,400,000 recovery (or the net $1,376,540.47 recovery after the payment to Mr. Lombardi). The AIA Entities have less than $1,000 in cash on hand as of December 31, 2021 (presumably less now). (8/18/22 Bond Decl. Ex. B.) The recovery of $1,400,000 is a windfall for the AIA Entities, even after deducting the fees and costs requested by Miesen. Thus, Miesen has established that the Settlement Agreement provided a "substantial benefit" to the AIA Entities.

Accordingly, as a matter of law, the $1,376,540.47 remaining settlement payment and the $1,400,000 each establish that the AIA Entities received a "substantial benefit" to trigger an award of fees under I.C. § 30-29-740(1) and the "common fund" doctrine (assuming this Court predicts that the Idaho Supreme Court would adopt such a requirement).

**6.   The Amount of Fees Requested Are Reasonable and Warranted.**

Having established above that Miesen is entitled to an award of fees, Miesen respectfully requests that the Court approve the payment of a 40% contingent fee (35% to Mr. Bond's firm and 5% to Mr. Schwam) in the total amount of $560,000. Contingent fee is proper method and in the best interests of the AIA Entities and their stakeholders.

The "proper measure of attorney fees" requested for "a state law cause of action, is governed by rule of civil procedure, Rule 54(e)(3)." *Perkins v. U.S. Transformer West*, 132 Idaho 427, 974 P.2d 73, 76 (1999) (declining to adopt the federal lodestar method for calculating attorneys' fees, so the federal standards are not workable here).

> Under Idaho Rule of Civil Procedure (IRCP) 54(e)(3), the Court may award a reasonable amount of attorney fees to the prevailing party or parties. "What constitutes a reasonable fee is a discretionary determination for the trial court, to be guided by the criteria of [IRCP] 54(e)(3)." The IRCP 54(e)(3) factors are as follows:
> (A) the time and labor required;
> (B) the novelty and difficulty of the questions;
> (C) the skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law;
> (D) the prevailing charges for like work;
> (E) whether the fee is fixed or contingent;

(F) the time limitations imposed by the client or the circumstances of the case;
(G) the amount involved and the results obtained;
(H) the undesirability of the case;
(I) the nature and length of the professional relationship with the client;
(J) awards in similar cases;
(K) the reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case;
(L) any other factor which the court deems appropriate in the particular case.

"[IRCP] 54(e)(3) does not require the district court to make specific findings in the record, only to consider the stated factors in determining the amount of the fees. When considering the factors, courts need not demonstrate how they employed any of those factors in reaching an award amount." The "court need not specifically address all of the factors contained in [IRCP] 54(e)(3) in writing, so long as the record clearly indicates that the court considered them all."

However, the court must explain the relationship between its "evaluation of the [IRCP] 54(e)(3) factors and its decision regarding the amount to award for attorney[ ] fees." "It is not enough for a trial court to acknowledge the existence of the Rule 54(e)(3) factors; rather, it must appear that there is a reasoned application of those factors in the trial court's decision regarding the amount of attorney[ ] fees to be awarded."

"The burden is on the party opposing the award to demonstrate that the district court abused its discretion."

*Gerber-Siggelkow v. Allstate Prop. and Cas. Ins. Co.*, Case No. 1:18-cv-00408-CWD, 2022 WL 1416552 at *5-6 (D. Idaho Feb. 7, 2022) (citations omitted) (alterations in original).

The award need not be based upon the hourly time sheets, "as the amount of time spent is but one of the several factors to be considered in awarding attorney fees." *Hackett v. Streeter*, 109 Idaho 261, 263, 706 P.2d 1372, 1374 (Ct. App. 1985). I.R.P.C. 1.5(c) permits an attorney to represent a client on a contingent fee basis. On a contingent fee case, it is permissible for any attorney to estimate his or her time incurred in the lawsuit. *Parsons v. Mut. of Enumclaw Ins. Co.*, 143 Idaho 743, 748, 152 P.3d 614, 619 (2007); *see also* Fed. R. Civ. P. 54(d)(2)(B)(iii) ("state the amount sought or provide a fair estimate of it"). Under the "common fund" doctrine, the class or benefiting party must pay their "proportionate share" of the fees and costs. *Wensman*, 134 Idaho

*at 152, 997 P.2d at 613.*

After applying the above authorities and factors to Miesen's request for attorneys' fees, the factors overwhelmingly demonstrate that a 40% contingent fee (35% to Mr. Bond's firm and 5% to Mr. Schwam) in the total amount of $560,000 is reasonable under the circumstances. (8/18/22 Bond Decl. ¶¶1-49, 51-52; 8/18/22 Schwam Decl. ¶¶1-13; 8/18/22 Miesen Decl. ¶¶1-7.) The payment of the requested contingent fee constitutes an approximate 50% discount based on hourly rates. In sum, the I.R.C.P. 54(e) factors all weigh heavily in favor of the requested fee award. (*Id.*) Miesen will now address each factor in turn.

### a. *The Time and Labor Required.*

The time and labor required was extraordinary. (8/18/22 Bond Decl. ¶¶5-17; 8/18/22 Schwam Decl. ¶5; 8/18/22 Miesen Decl. ¶7.) Mr. Bond has been an attorney on this lawsuit since 2012, and previously made a successful trip to the Ninth Circuit to reverse the stay. There are over 1,200 dockets in this lawsuit (not including the thousands more sub-dockets).

### b. *The Novelty and Difficulty of the Questions.*

Miesen's claims against the Hawley Troxell Defendants involved numerous novel issues and issues of first impression regarding substantive and discovery matters. (8/18/22 Bond Decl. ¶18; 8/18/22 Schwam Decl. ¶9; 8/18/22 Miesen Decl. ¶7.)

### c. *The Skill Requisite to Perform the Legal Service Properly and the Experience and Ability of the Attorney in the Particular Field of Law.*

The skill required to prosecute Miesen's claims against the Hawley Troxell Defendants was substantial and the experience of Miesen's counsel has greatly assisted (in particular Mr. Bond's experience in dealing with many other AIA related lawsuits and the knowledge that he gained). (8/18/22 Bond Decl. ¶¶19-22; 8/18/22 Schwam Decl. ¶10; 8/18/22 Miesen Decl. ¶7.)

### d. *The Prevailing Charges for Like Work.*

Attorneys in Ada County, Idaho regularly accept legal malpractice related cases for 33% to 40% of the gross recoveries, plus the reimbursement of costs. (8/18/22 Bond Decl. ¶¶23-25; 8/18/22 Schwam Decl. ¶7; 8/18/22 Miesen Decl. ¶7.)

### e. *Whether the Fee is Fixed or Contingent.*

Miesen and his counsel have a written contingent fee agreement providing for the payment of a 40% contingent fee (35% to Mr. Bond's firm and 5% to Mr. Schwam) from all gross recoveries, plus the reimbursement of all costs and the payment of 12% interest on all sums advanced. (8/18/22 Bond Decl. ¶¶26-27; 8/18/22 Schwam Decl. ¶6; 8/18/22 Miesen Decl. ¶¶5, 7.)

### f. *The Time Limitations Imposed by the Client or the Circumstances of the Case.*

There were no time limitations for this complex and drawn-out lawsuit against the Hawley Troxell Defendants. (8/18/22 Bond Decl. ¶¶28-30; 8/18/22 Miesen Decl. ¶7.) This benefited Miesen and the AIA Entities because a 40% contingent fee is substantially less than the fees would have been had they been charged by the hour.

### g. *The Amount Involved and the Results Obtained.*

Miesen's claims against the Hawley Troxell Defendants involved various alternative damage theories (not the total claimed by the defendants). The $1,400,000 settlement was a good result and seven-figure legal malpractice settlements are rarely obtained. (8/18/22 Bond Decl. ¶¶31-37; 8/18/22 Schwam Decl. ¶11 8/18/22 Miesen Decl. ¶7.)

### h. *The Undesirability of the Case.*

This lawsuit was highly undesirable and with substantial risk in light of the substantial costs and complex work. (8/18/22 Bond Decl. ¶¶38-39; 8/18/22 Schwam Decl. ¶12; 8/18/22 Miesen Decl. ¶7.) Mr. Schwam agreed to assume the role of co-counsel to prosecute Miesen's

claims against the Hawley Troxell Defendants after this Court had excluded Miesen's legal malpractice expert.

### i. *The Nature and Length of the Professional Relationship with the Client.*

Mr. Bond had a long-standing relationship with Miesen dating back to successfully defeating a lawsuit brought by the Individual Defendants improperly through AIA Services in an effort to eliminate Miesen as a shareholder through an unlawful reverse stock split for ten cents per share (Mr. Schwam had no prior relationship with Miesen). (8/18/22 Bond Decl. ¶40; 8/18/22 Schwam Decl. ¶4; 8/18/22 Miesen Decl. ¶7.)

### j. *Awards in Similar Cases.*

Miesen's counsel has obtained 40% contingent fee recoveries in other legal malpractice related lawsuits (8/18/22 Bond Decl. ¶41; 8/18/22 Miesen Decl. ¶7.)

### k. *The Reasonable Cost of Automated Legal Research.*

Mr. Bond incurred and allocated the reasonable sum of $12,000 for Westlaw charged, which date back to 2012 (Mr. Schwam had no such charges). (8/18/22 Bond Decl. ¶42; 8/18/22 Miesen Decl. ¶7.)

### l. *Other Factors Which the Court Deems Appropriate in the Particular Case.*

There are a number of additional factors that this Court should consider, including, (a) Rather than remain neutral regarding Miesen's derivative claims or otherwise proceed independently, the AIA Entities have defended this lawsuit under the direction of the same management who defrauded the corporations and without any truly independent counsel (which has dramatically increased the work and lowered the success); (b) there are no stakeholders objecting to the fee and cost award other than John Taylor and attorneys who do not represent anyone who is a stakeholder; (c) the lawsuit has dragged on for over a decade from delays sought by the defendants; and (d) Mr. Bond is agreeing to write off over $100,000 in costs and a

substantial amount of interest; (b) (8/18/22 Bond Decl. ¶¶43-49; 8/18/22 Schwam Decl. ¶9; 8/18/22 Miesen Decl. ¶¶2-7.)

**7.    The Costs Requested Are Reasonable and Warranted.**

Having established above that Miesen should be awarded his costs under I.C. § 30-29-740(1) and the "common fund" doctrine, this Court should award him the $375,327.96 in reduced costs, which are more than reasonable under the circumstances for this complex and over twelve-year-old lawsuit.

"[C]ourts make cost determinations based upon declarations filed by the counsel seeking a fee or cost award." *Lola L. Cazier Revocable Tr. v. Cazier*, 167 Idaho 109, 119, 468 P.3d 239, 249 (2020).

Here, Miesen's counsel should be awarded the requested $375,327.96 in costs, especially when he has agreed to write off in far excess of over $100,000 in costs and interest that Miesen was obligated to pay in order to facilitate Miesen's settlement. (8/18/22 Bond Decl. ¶¶26, 49(a)-(p); 8/18/22 Schwam Decl. ¶5; 8/18/22 Miesen Decl. ¶¶5-7.) Those costs were all incurred and are all directly or indirectly related to Miesen's claims against the Hawley Troxell Defendants.

Based on the responses in opposition to Miesen's original motion for fees and costs, he expects an objection to the costs relating to McDermott's expert witness fees. While this Court excluded McDermott, as a matter of law, his status produced the $1,400,000 settlement because the material settlement terms were achieved through the Ninth Circuit mediator that was appointed for Miesen's failed attempt to appeal early. (8/18/22 Bond Decl. ¶49(b).) As the exclusion of Larry Hile for Miesen's case-in-chief, Mr. Hile was retained as a rebuttal expert and thus Miesen simply sought to also utilize his opinions for his case-in-chief. (*Id*. at ¶49(g).) Mr. Hile will still testify as to his rebuttal opinions at any trial. In sum the $375,327.96 in requested costs are reasonable and warranted for this complex lawsuit against the Hawley Troxell Defendants. This Court should

award the full $375,327.96 in costs, especially since Miesen's counsel is writing off significant other costs.

**8.   There Were No Objections by Any Creditors, Shareholders or Other Stakeholders to the Payment or Amount of the Attorneys' Fees and Costs.**

There were no objections to Miesen's fee and cost request by any shareholders, stakeholders or creditors. (8/18/22 Bond Decl. ¶4; 8/18/22 Schwam Decl. ¶3.) Nor were any objections filed. While it is true that Miesen's counsel also represents Donna Taylor in another pending action (*see, e.g., Taylor v. Taylor*, 163 Idaho 910, 422 P.3d 1116 (2018)), the argument that Miesen's counsel somehow has a conflict through the Settlement Agreement as to Donna Taylor is wholly unsupported by the record. Donna Taylor retained independent counsel, Dan Green, to approve the settlement and the request for fees and costs. (8/18/22 Bond Decl. Ex. A, at 14 ¶d, at 17.)  The only objections to fees and costs have arisen from the persons and entities who did nothing to assist in obtaining the recovery and fought Miesen from obtaining a recovery against the Hawley Troxell Defendants (the remaining defendants).

**9.   Assuming the Defendants Renew Certain Objections, They Are Wholly Without Merit.[4]**

The defendants previously asserted a number of meritless arguments. Although it is unknown whether the arguments will be renewed in responses to this motion, Miesen will briefly address some of the arguments to show the lack of merit.

   ***a.   The Defendants' Mischaracterize Other Lawsuits.***

The Defendants' arguments that the numerous lawsuits filed across the country should be considered by the Court in its analysis and they mischaracterize what has transpired. First, the only lawsuit that is relevant to the award of Miesen's attorneys' fees and costs in the results of this lawsuit. Second, the other lawsuits are irrelevant other than show additional misconduct and

---

[4] In addressing any of the arguments that the defendants previously asserted to Miesen's prior withdrawn motion (Dkts. 1219-1223), Miesen is not conceding that those responses have merit or still apply (they do not).

harm caused by John Taylor. (8/18/22 Bond Decl. ¶¶50(a)-(l); 8/18/22 Miesen Decl. ¶¶2-7.) Indeed, John Taylor has already been found by one court to have defrauded GemCap—he cannot deny that finding. (Dkt. 1082-4; 8/18/22 Bond Decl. ¶50(j).) Yet, he acts as if he has been wronged. Third, Miesen was not a party in any of the lawsuits except two (he prevailed in one and was awarded fees against AIA Services and the other was dismissed without prejudice, which led to GemCap being named as a defendant in this lawsuit. Both of those lawsuits were caused by John Taylor and others, not Miesen. A review of the lawsuits demonstrates that that most all of them were caused by John Taylor and/or other Individual Defendants. (8/18/22 Bond Decl. ¶¶50(a)-(k).)

b. **_The Remaining Defendants' Indemnity Arguments Are Irrelevant and They Will Not Be Entitled to Any Indemnity._**

The Individual Defendants and CropUSA Defendants argue that they are entitled to indemnity under I.C. § 30-29-852. For that reason, they argue that Miesen should not be awarded fees and costs. They have the cart ahead of the horse. They have not prevailed on this entire proceeding, which is required to trigger any potential indemnification. Notably, the Individual Defendants and CropUSA Defendants (once again joined by the conflicted counsel[5] for the AIA Entities) submitted their additional briefing to this Court[6] wherein they never bothered to address their liability under I.C. § 30-29-305 or Idaho common law as to violations of bylaws (the cases do not hold that a shareholder must sue derivatively*). (Dkt. 1239.) *Kemmer v. Newman*, 161 Idaho 463, 466, 387 P.3d 131, 134 (2016) ("Actions taken in violation of a corporation's bylaws are void."). Notably, Judge Dale perceived Miesen's direct statutory claims as being alternative

---

[5] The AIA Entities should be joining Miesen to assert claims and they should assume the derivative claims, rather than allow them to be dismissed.

[6] They also mischaracterized Miesen's testimony regarding direct and derivative claims. Miesen has always made it clear that he is pursuing direct and derivative claims.

claims:

> At this stage, the Court construes Miesen's claim under I.C. § 30-29-304 as an alternative cause of action to his breach of fiduciary duty and fraud claims. Because the ultimate fate of Miesen's breach of fiduciary duty and fraud claims is uncertain, determining whether Miesen can set forth a claim pursuant to I.C. § 30-29-304 is not yet ripe for the Court's consideration.

(Dkt. 210 at 31.) Moreover, Judge Dale correctly determined the basis for Miesen's direct statutory claims under I.C. § 30-29-304 when she noted:

> The proposed third amended complaint cites two statutes, I.C. § 30-29-304, and its predecessor I.C. § 30-1-304 (repealed). The statutes are nearly identical; as such, the Court will refer to the new statute only, I.C. § 30-29-304, which provides in relevant part:
>
> > (1) Except as provided in subsection (2) of this section, the validity of corporate action may not be challenged on the ground that the corporation lacks or lacked power to act.
> >
> > (2) A corporation's power to act may be challenged:
> >
> > > (a) In a proceeding by a shareholder against the corporation to enjoin the act;
> > > ****
> >
> > (3) In a shareholder's proceeding under subsection (2)(a) of this section to enjoin an unauthorized corporate act, the court may enjoin or set aside the act, if equitable and if all affected persons are parties to the proceeding, and may award damages for loss, other than anticipated profits, suffered by the corporation or another party because of enjoining the unauthorized act.

(Dkt. 210 at 31 n. 17.) The Individual Defendants, AIA Entities and CropUSA Entities do not allege that they did not violate AIA Services' articles and the AIA Entities bylaws, i.e., allege that they did not commit ultra vires acts, and they did not submit any evidence to prove otherwise—because no such evidence exists. (Dkt. 1239.) Miesen will be addressing those matters and others in due course when his briefing is submitted as to the status of the remaining claims.

**10.  Miesen Respectfully Requests Oral Argument.**

Miesen respectfully requests oral argument. L. Civ. R. 7.1(d).

///

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 16

## IV.    <u>CONCLUSION</u>

For the reasons stated above, this Court should grant Miesen's motion to approve the payment of attorneys' fees and costs.

DATED:  This 18th day of August 2022.

RODERICK BOND LAW OFFICE, PLLC

By:    */s/ Roderick C. Bond*
        Roderick C. Bond
        Attorney for the Plaintiff Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:    */s/ Andrew Schwam*
        Andrew Schwam
        Attorney for the Plaintiff Dale L. Miesen

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 18th day of August 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:    jat@elamburke.com
Loren C. Ipsen:    lci@elamburke.com
Joyce A. Hemmer:    jah@elamburke.com
Bradley S. Keller:    bkeller@byrneskeller.com
Alyson A. Foster:    alyson@dempseyfoster.com
Tyler S. Waite:    twaite@campbell-bissell.com
Michael S. Bissell:    mbissell@campbell-bissell.com
Daniel L. Glynn:    dglynn@idalaw.com
Andrew Schwam:    amschwam@turbonet.com
Kim J Trout:    ktrout@trout-law.com


_____*/s/ Roderick C. Bond*_____
Roderick C. Bond

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 18