UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc, | Case No. 1:10-cv-00404-DCN **MEMORANDUM DECISION AND ORDER** |
| Plaintiff, | |
| v. | |
| HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; GEMCAP LENDING I, LLC, et al., a Delaware limited liability company, | |
| Defendants. | |

## I. INTRODUCTION

Before the Court is the parties' briefing on whether Plaintiff Dale Miesen has any

viable direct claims against certain Defendants.[1] On May 5, 2022, the Court granted Defendant Hawley Troxell Ennis & Hawley LLP's ("Hawley Troxell") Motion to Dismiss, which dismissed all derivative claims Miesen brought against Hawley Troxell, Individual Defendants, and CropUSA Defendants. Dkt. 1203. Due to the sheer procedural complexity of this case, the Court ordered each party file a status report of which claims remained after that decision. *Id.* at 50–51. After the filing of those status reports, and further litigation, Miesen contended he had direct claims that remained against Defendants.

On August 9, 2022, the Court ordered further briefing on whether Miesen has any direct claims against these Defendants. Dkt. 1238, at 4. The Defendants submitted a joint opening brief (Dkt. 1239) to which Miesen filed a Response (Dkt. 1248). Defendants then submitted a joint Reply. Dkt. 1254. Shortly thereafter, Miesen filed a Motion for Leave to File a Sur-Reply to Defendants' Reply. Dkt. 1262. In relation to this briefing, briefing was stayed on CropUSA Defendants' Motion to File and Overlength Brief (Dkt. 1064) and Motion for Summary Judgment (Dkt. 1071) because, if Miesen cannot maintain any direct claims against CropUSA, these Motions are moot.

Because oral argument would not significantly aid its decision-making process, the Court will decide these issues on the briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon consideration, and for the reasons below, Miesen's Motion for Leave to File a Sur-Reply

---

[1] The relevant Defendants to which this Order will apply are AIA Insurance, Inc. and AIA Services Corporation (collectively "AIA Defendants"), James Beck, Michael W. Cashman, Connie Taylor Henderson, and R. John Taylor (collectively "Individual Defendants"), Crop USA Insurance Agency, Inc. and Crop USA Insurance Services, LLC (collectively "CropUSA Defendants"). For ease moving forward, the Court will refer to these three groups collectively as Defendants, which will not include the other Defendants still party to this case who are not involved in this particular issue.

is DENIED. The Court finds Miesen does not have any viable direct claims against the Defendants. Accordingly, CropUSA Defendants' Motion to File an Overlength Brief and Motion for Summary Judgment are MOOT.

## II. BACKGROUND

This case began 15 years ago, in 2010, as a shareholder derivative lawsuit on behalf of the AIA Defendants. On May 5, 2022, the Court entered an order dismissing all Miesen's derivative claims against CropUSA Defendants, Individual Defendants, and Defendant Hawley Troxell for failure to fulfill derivative demand requirements. Dkt. 1203. Due to the extensive complexity of this case, the Court instructed the parties to file a status report addressing which claims and motions remained in the case after the outcome of that order. Between May 9, 2022, and May 19, 2022, each party filed their status reports. Dkts. 1204, 1207–1212.

Over the next several months, Miesen and Hawley Troxell and Miesen and GemCap Lending I LLC ("GemCap") reached settlement agreements. *See* Dkts. 1214, 1231. GemCap then filed for Bankruptcy. Dkt. 1259. The case was then stayed pending further information from the bankruptcy court, and the stay was not lifted until March 26, 2024. Dkt. 1291.

Prior to the stay, the Court issued an Order addressing the parties' status reports and briefing schedules which remained at issue. Dkt. 1238. Briefing on several motions had been stayed prior to the Court's decision at docket 1203. *See* Dkt. 1089 (staying briefing on multiple motions). Additionally, as part of his status report, Miesen indicated that, even though his derivative claims had been dismissed, he still had direct claims against

CropUSA Defendants, AIA Defendants, and Individual Defendants which needed to be litigated. Defendants opposed such a notion, claiming Miesen had never asserted harms unique to himself; rather that he always maintained he was bringing a derivative suit. The Court ordered further briefing as "an extension of the underlying motion to dismiss" on whether Miesen had ever made any direct claims in this case. Dkt. 1238, at 4. The Court indicated it would first address the direct claims arguments before resuming briefing on the other remaining issues, as the outcome could moot some of those motions.[2]

The Court now decides whether Miesen has asserted any viable direct claims against CropUSA Defendants, AIA Defendants, and Individual Defendants.

### III. LEGAL STANDARDS

#### A. Leave to File Sur-Reply

"While the Federal Rules of Civil Procedure do not expressly permit the filing of a sur-reply, this Court has recognized that a reply brief may justify a sur-reply in appropriate circumstances." *Ocampo v. Corizon, LLC*, 2019 WL 1495251, at *3 (D. Idaho Apr. 4, 2019). Leave to file a sur-reply is discretionary but should be granted "where a valid reason for such additional briefing exists," such as when the movant raises new arguments in its reply brief. *Hill v. England*, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005). However,

---

[2] Separately, Miesen filed a Writ of Mandamus with the Ninth Circuit on January 27, 2025, arguing, in essence, that this case was not progressing and suggesting that it be reassigned to another judge. Dkt. 1295. The Court appreciates that Miesen would like to move this case forward as quickly as possible. Many factors have contributed to the delay in this case. Some of those include the Court's heavy docket—as of the date of this writing, the undersigned presides over close to 500 civil and criminal case with 284 pending motions. Other factors—such as stays, supplemental briefs, hearings, repeated objections and motions for reconsideration by Miesen—have also contributed to the length of this case. The Ninth Circuit will adjudicate Miesen's Writ as it deems appropriate, but the Court emphasizes here that it sees no reason to transfer this case to another Judge or otherwise change the current trajectory of the case.

sur-replies—in any context—are "highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter." *J.R. Simplot Company v. McCain Foods USA, Inc.*, 2021 WL 4899465, at *2 (D. Idaho Oct. 20, 2021) (cleaned up).

**B. Derivative v. Direct Claims**

In Idaho, derivative actions are "brought by one or more stockholders of a corporation to enforce a corporate right or remedy a wrong to the corporation in cases where the corporation, because it is controlled by the wrongdoers or for other reasons fails and refuses to take appropriate actions for its own protection[.]" *McCann v. McCann ("McCann I")*, 61 P.3d 585, 590 (Idaho 2002) (quoting 19 AM.JUR.2D *Corporations* § 2250, 151–52 (1986)). Direct actions, on the other hand, are actions a stockholder may maintain

> in his own right for an injury directly affecting him, although the corporation also may have a cause of action growing out of the same wrong, where it appears that the injury to the stockholder resulted from the violation of some special duty owed to the stockholder by the wrongdoer and having its origin in circumstances independent of the plaintiff's status as a shareholder.

*Id.*

Where both direct and derivative claims may be brought from the same wrong, the shareholder must allege harm to himself that is distinct from that suffered by other shareholders of the corporation, or a breach of a special duty owed by defendants to the shareholder. *McCann v. McCann ("McCann II")*, 275 P.3d 824, at 830–831 (Idaho 2012) (quoting *Schumacher v. Schumacher*, 469 N.W.2d 793, 798 (N.D. 1991) (cleaned up)). Ultimately, a direct claim must assert that the actions of the corporation or its directors have an effect on the pleading shareholder "above and beyond" the effect on every other

shareholder that hurts the pleading shareholder *specifically*. *See McCann II*, 275 P.3d at 832.

## IV. DISCUSSION

### A. Leave to File Sur-Reply

The Court must first address Miesen's request to file a sur-reply as part of the briefing related to his remaining direct claims. Miesen contends Defendants raised new arguments in their reply brief, and he should have an opportunity to respond to those arguments. In particular, he avers Defendants did not address in their opening brief "the merits of Miesen's claims brought under I.C. §§ 30-1-304 and 30-29-304," "did not assert that injunctive relief was not available under I.C. § 30-29-304 for past acts," or that Defendants could not be held liable under the same section. Dkt. 1262-1, at 3.

Oddly, Miesen asserts that he "anticipated that the defendants might try to raise new arguments on reply, so he included argument and authority objecting to the defendants raising any new arguments on reply" as part of his Response. *Id.* at 3–4. It seems Miesen had hoped, at the time he submitted his Response, to preclude the Defendants from giving a meaningful rebuttal to his Response, or at the very least, to allow himself to have the final word on the matter, because Defendants' arguments on Reply all directly relate to points Miesen argued in his Response.

Miesen repeatedly argues the Court ordered Defendants to address each remaining claim he might have against them and why it should be dismissed, and that their arguments as to Idaho Code § 30-29-304 on reply is the only time they argued a specific claim. However, this ignores how Defendants chose to frame their arguments against any

remaining claims in their opening brief, and it fails to acknowledge the content of Miesen's Response.

Defendants might not have addressed each claim that could be a direct claim in the Third Amended Complaint ("TAC") in turn, but rather argued Miesen can have no direct claims because he has not shown he has suffered a personal injury unique from the injuries suffered by other shareholders and he has always maintained he was bringing this suit as a derivative action. While doing so in bulk, Defendants *did* address each remaining claim Miesen might have against them. Miesen had a fair opportunity to respond to those arguments in his Response, which he did to an extent, [3] and he does not need a sur-reply.

Additionally, Defendants fairly used their Reply to rebut Miesen's arguments made in his response. "A reply necessarily raises facts and issues, for the first time, that are germane to the opposition. If the evidence and argument included with a motion were required to anticipate the arguments a respondent might raise in opposition to the motion, the court would not permit the movant to file a reply to any opposition." *Calderon v. Experian Information Solutions, Inc.*, 290 F.R.D. 508, 515 (D. Idaho 2013) (citation omitted). The Court disagrees with Miesen's contention that any legitimate responses from Defendants to his Response made on reply were " . . . nevertheless new arguments seeking to dismiss Miesen's claims based on I.C. § 30-29-304 without giving Miesen an

---

[3] Miesen challenged the adequacy of Defendants' "no unique injury" argument in meeting Defendants' Rule 12(b)(6) burden to show Miesen failed to state a claim as part of his Response. Miesen contends the arguments are broad and "do not challenge the sufficiency of a single cause of action or a single prayer for relief." Dkt. 1248, at 18. However, Defendants do not need to argue the merits of derivative claims which have already been dismissed if it is their position those same claims cannot be direct claims in this instance. If Miesen did not adequately plead any direct claims, he failed to state any claims upon which relief can be granted at this stage in the litigation, and Defendants have met their burden.

opportunity to respond to those new arguments." Dkt. 1262-1, at 5.

In his Response, Miesen used nearly half of his brief to argue he has viable direct claims under Idaho Code § 30-29-304. Dkt. 1248, at 5–14. Miesen goes on to provide examples of ways Defendants have allegedly misbehaved in the past and states, "The above example is, but one of many, ultra vires acts, contracts, and transactions at issue and subject to I.C. § 30-29-304 . . . . ." *Id.* at 9. Defendants counter with an argument that Idaho Code § 30-29-304 does not allow for a direct claim in which injunctive relief is being sought to prevent acts which have occurred in the past. Dkt. 1254, at 2–7. This is an argument directly responsive to Miesen's assertions that the relevant section authorizes the direct relief he is seeking. This counter-position to Miesen's own statutory interpretation does not require allowing him a sur-reply.

By extension, the same applies to Defendants argument that Miesen may only seek direct relief under Idaho Code § 30-29-304(b)(1) against AIA entities, not against Individual Defendants or the CropUSA Defendants. Miesen already had the opportunity to argue his interpretation of the code in his Response, and Defendants only responded with reasons why Miesen's interpretation was faulty. *Id.* at 7.

Finally, for the reasons set forth in footnote 6 *infra*, the Court will not be reaching the merits of Defendants arguments on whether Miesen's claims qualify for relief under § 30-29-304, so any response from Miesen on this topic would be futile and unnecessary.

Because Miesen had a fair chance to set forth his interpretation of Idaho Code § 30-29-304 in his Response, and Defendants germanely responded with their own interpretation in their Reply, Miesen's Motion for Leave to File a Sur-Reply is DENIED.

MEMORANDUM DECISION AND ORDER - 8

### B. Direct Claims

#### 1. Direct v. Derivative Claims

In their opening brief, Defendants largely argue Miesen has no direct claims against them because he has asserted no unique personal injury to himself during the entirety of this case. Miesen argues that standard does not apply to him in asserting statutory direct claims. In particular, he states, " . . . [T]he question is not whether Miesen suffered injury different from other shareholders for the purposes of a claim under I.C. § 39-29-304; but whether Count VIII requires a derivative demand be given 90 days before filing." Dkt. 1248, at 9.

Accordingly, as a threshold matter, the Court will first address whether Idaho Code § 39-29-304 provides a mechanism for asserting direct claims, and whether the standard for successfully doing so under that statute is different than the standard set forth in *McCann I*. Section 39-29-304 states "A corporation's power to act may be challenged: (1) in a proceeding by a shareholder against the corporation to enjoin the act" or (2) in a proceeding by the corporation, directly, derivatively, or through a receiver, trustee, or other legal representative, against an incumbent or former director, officer, employee or agency of the corporation . . . ." IDAHO CODE § 39-29-304(b)(1–2). When proceeding under section (b)(1), a court may enjoin or set aside an act and award damages for loss. IDAHO CODE § 39-29-304(c).

Both sides put forth competing arguments of statutory interpretation on what these sections mean and what that could mean for this case. A plain and ordinary reading of the statute indicates a shareholder can sue the corporation directly or derivatively to enjoin an

ultra vires act and obtain money damages under sections (b)(1) and (c).[4] It is less clear to the Court where Miesen finds support for his argument that bringing a statutory direct claim under these sections does not require an assertion of unique personal harm to himself. It is well-established that the very difference between direct and derivative claims hinges on what types of harms are asserted. In other words, whether the corporation and the shareholders are suffering together, or whether one specific shareholder is taking the brunt of any injury.[5]

It seems to the Court, in reading Miesen's brief, he is arguing that Idaho Code § 39-29-304(b)(1) does not reference Idaho Code § 30-29-742 (requiring a derivative demand), meaning it only allows for a direct cause of action. Therefore, any cause of action which is properly brought under Section 39-29-304(b)(1) is automatically a direct cause of action that does not require a derivative demand or a showing of unique injury. Such an argument requires quite a leap in logic. There is simply nothing to indicate Idaho Code § 39-29-304(b)(1) creates a special type of direct action that presents itself as a derivative action— when only harm to a corporation and shareholders in general have been alleged—that does

---

[4] Miesen declared in his Response, "Count VIII can be brought as a direct claim by Miesen and may *only* be brought as a direct claim according to the plain reading of I.C. § 30-29-304." *Id.* at 9–10 (emphasis added). Miesen mainly bases this assertion on the fact that, in other places in Idaho Code that authorize derivative demands in certain circumstances, the Idaho Legislature has officially referenced the statute setting out the requirements of a derivative demand (Idaho Code § 30-29-742), and they failed to do so here. Miesen argues the lack of reference to a derivative demand means section (b)(1) only applies to direct claims. The Court disagrees with such a limitation. The Idaho Legislature could have just as easily inserted language excluding derivative demands under section (b)(1), but they also did not do that. Their silence on the topic does not indicate a restriction one way or the other.

[5] For example, in both *Steelman v. Mallory*, 716 P.2d 1282 (Idaho 1986) and *McCann II*, where the plaintiffs successfully asserted direct claims arising out of the same events that could support derivative causes of action, both plaintiffs "were the only shareholders in a close corporation to experience an injury caused by the other shareholders." *McCann II*, 275 P.3d at 832.

not require a derivative demand. Therefore, the question remains whether Miesen has asserted any unique personal injury that gives him viable direct claims against Defendants.[6]

The answer to that remaining question is no. The Court need only reference the TAC to show Miesen never raised any viable direct claims against the AIA Defendants, CropUSA Defendants, or Individual Defendants. First, in the paragraphs proceedings the sections setting forth his Counts, Miesen states all of his claims and requested relief flow from the derivative demands he had made to AIA and its Board of Directors. He states he "fairly represents the interest of AIA and their shareholders" and he is pursuing "*bona fide* claims on behalf of, for the benefit of, AIA and their innocent shareholders. Dkt. 211, at 60.

Second, the Court looks to the individual causes of action as to each Defendant. Counts I, VI, and IX apply to all Individual Defendants. Counts II, IV, V, and VII apply to both Individual Defendants and CropUSA Defendants. Count X applies specifically to Individual Defendant Taylor. Count VIII applies to AIA Defendants, Individual Defendants, and CropUSA Defendants. In *every single one* of the aforementioned Counts, Miesen speaks of duties "owed to AIA," liability to AIA, damages to AIA, and seeking balances owed for "the benefit of AIA." *Id*. at 62, 64, 66, 71, 75, 79. Not once, in any paragraph or any allegation, does Miesen assert he has been harmed directly or distinctly

---

[6] Defendants directed a large portion of their Reply to arguing why Idaho Code § 30-29-304(b)(1) could not be used to support Miesen's causes of action in the TAC. In particular, they argued a cause of action can only be brought under the section when there are circumstances justifying an injunction and the cause of action is being brought directly against the corporation. The Court finds it unnecessary to address the merits of these arguments, as it is denying the Motion for failure to assert a direct claim, so it doesn't need to address any potential deficiencies in a direct claim.

from other shareholders. There are no allegations that he has been "frozen-out."[7] There are

no allegations that the other shareholders with whom he shares status harmed him. There

are no allegations whatsoever that he has suffered any unique harm other than the same

ones suffered by all other shareholders in AIA.

Miesen does draw attention to his statement in the TAC that "The definition of

'AIA' includes AIA Services and/or AIA Insurance for the purposes of pleading in the

alternative, and includes the Plaintiff to the extent he is required to support any cause of

action and/or any of the relief requested in this Third Amended Complaint," as proof that

he was pleading direct claims along with derivative ones. Dkt. 211, at 5. Unfortunately,

even if Miesen could simply insert a definition including himself as part of AIA to make

all the references to AIA apply to himself individually as well, he still fails to plead any

harm specific and unique to himself that wasn't suffered by all of AIA as a whole. Looking

simply at the operative complaint, Miesen never made any effective assertions of direct

claims, and he cannot do so now.[8] For these reasons, Miesen has no viable direct claims

---

[7] Freeze-outs, or squeeze-outs, are "actions taken by the controlling shareholders to deprive a minority shareholder of his interest in the business or a fair return on his investment." *McCann II*, 275 P.3d at 830 (citing *Balvik v. Sylvester*, 411 N.W.2d 383, 386 (N.D. 1987). A freeze-out in a closely-held corporation can constitute a direct action. For example, in *McCann II*, the Idaho Supreme Court found a direct action could be maintained because the plaintiff was frozen out by actions such as phony transactions to one of a few shareholders to avoid a benefit to plaintiff and management decisions to divert all cash flow to two other shareholders at plaintiff's expense. *Id.* at 831. Miesen did not plead any similar facts here.

[8] The Court only considered pleadings which were relevant and properly before it in deciding the issues today. Therefore, to the extent Miesen moves to exclude certain records used in Defendants briefing, convert the motion to one for summary judgment, or take judicial notice of anything Miesen relied on in his pleadings, that request is MOOT. *See* Dkt. 1248, at 19–22. As to CropUSA's more recent Motion to Take Judicial Notice (Dkt. 1300), the Court will take judicial notice of the state court Memorandum Decision and Order for the limited purpose of recognizing CropUSA Defendants and Individual Defendants obtained a partial judgment in their favor based on facts and issues very similar to the ones before the Court today, but which involved a different Plaintiff (Donna Taylor). *See Fed. R. Evid. 201*. The Court will give that information the weight it deems appropriate.

against Individual Defendants, CropUSA Defendants, and AIA Defendants, and these claims are DISMISSED with PREJUDICE against those Defendants.

### 2. Miesen's Prior Representations and Motion for Leave to Amend

The Court will briefly address the parties' arguments about the effect Miesen's prior representations of bringing a derivative demand had on his direct claims. While Miesen has no direct claims due to shortcomings in his pleadings alleging any unique harms, the Court does not wholly disagree with his argument that his prior assertions that he was bringing a derivative demand did not necessarily indicate he was bringing a derivative action to the exclusion of a direct one. As explained in *McCann I*, direct and derivative claims can be brought simultaneously, even when arising from the same wrong.

However, as the Court has emphasized above, just because Miesen could have indicated he was bringing a derivative claim and still brought a direct claim does not mean that he did. By all accounts Miesen is trying, belatedly, to frame his claims in a way other than what he originally intended. And for good reason: to save the claims. But this latent effort fails. As explained above, Miesen did not make a direct claim, and the Court's conclusion on that point has less to do with his prior representations and more to do with what is required in bringing a direct claim and/or a derivative claim. While the Court recognizes Miesen has extensively emphasized his intent to bring derivative claims— Defendants do a thorough job in summing up Miesen's previous representations throughout this case,[9] so the Court will not do so here—those representations only bolster

---

[9] Dkt. 1239, at 5–11.

the Court's finding that Miesen failed to plead any direct claims.[10]

Miesen had a plethora of opportunities, through three amended complaints and 15 years of litigation, to clearly set forth his intent to bring direct claims. Miesen argues his "I.C. § 30-29-304 claim was an alternative claim" recognized by Magistrate Judge Candy W. Dale as a direct claim not yet ripe for the Court's adjudication when the issue came up in 2017. Dkt. 1248, at 13. However, Judge Dale's holding did not contain a specific finding that claim was a direct claim, made no indication as to whether Miesen had a viable claim under the statute (Dkt. 210), and Miesen still never provided any clarification that he was intending to assert an alternative direct claim. In fact, the very next filing in the case was Miesen's TAC, which makes no mention of any direct claims. *See* Dkt. 211.

Miesen now requests an opportunity to amend his Complaint for a fourth time, assuming the Court might make the "unlikely" finding that his TAC is deficient. Dkt. 1248, at 23. The Court will not give Miesen such an opportunity. To do so would be highly prejudicial to Defendants, requiring them to relitigate issues which have already been decided in their favor, just with the alteration of Miesen himself as the newly-substituted injured party[11]. It would also require an enormous expenditure in time, effort, and costs (for all parties) when this case is finally nearing completion. There would be a continual

---

[10] Miesen objects to the use of at least some of these representations in Defendants briefing, claiming they are not properly before the Court. The Court made its decision here based on Miesen's pleadings properly before the Court and emphasizes the prior representations were not a factor in determining Miesen ultimately did not plead any direct claims. They are simply an added observation emphasizing the Court's holdings today.

[11] Any direct claim with Miesen as the injured party could also run afoul of the statute of limitations. For example, Idaho Code § 5-218(1) sets a statute of limitations where liability is created by a statute such as Idaho Code § 30-29-304 at three years.

heavy burden on judicial resources when ultimately, any direct claims should have been clearly presented during the beginning stages of this litigation. For these reasons, Miesen's Motion for Leave to Amend is DENIED.

### C. Moving Forward

There are several previous filings in this case which could not move forward until the Court's decision today. First, the CropUSA Defendants filed a Motion for Summary Judgment (Dkt. 1071) and related Motion to File Overlength Brief (Dkt. 1064). Because all claims against them are being dismissed today, the Motions are DISMISSED as MOOT.

Second, Defendant Reed Taylor has filed two separate motions for summary judgment. The first (Dkt. 1073) relates to Taylor's liability for contribution and indemnity to CropUSA Defendants and Individual Defendants. Because the Court has determined CropUSA Defendants and Individual Defendants have no liability, the Motion for Summary Judgment is DISMISSED as MOOT. The second (Dkt. 1076) relates to Taylor's claim against Individual Defendant R. John Taylor as plan trustee of the AIA Services' 401(k) Plan. It seems the parties agree further briefing is necessary on this Motion (Dkts. 1211, at 5; 1207, at 5). Thus, briefing will resume on that Motion for Summary Judgment (Dkt. 1076).

The remaining ripe Motions in this case, including Miesen's Motion for Attorney's Fees (Dkt. 1242) and accompanying errata (Dkt. 1243), and AIA Defendants' Motion to Strike (Dkt. 1264) will be decided in due course.

### V. CONCLUSION

Miesen has made no viable direct claims against Defendants because he has not

asserted any injury unique to himself. Rather, all his allegations assert duties owed, and injuries to, AIA and all shareholders. Thus, all his claims against Defendants are DISMISSED with PREJUDICE. Based on this decision, several motions will be dismissed as moot, and briefing will resume where relevant on other motions.

## VI. ORDER

1. Defendants AIA Insurance, Inc., AIA Services Corporation, James Beck, Michael W. Cashman, Connie Taylor Henderson, R. John Taylor, Crop USA Insurance Agency, Inc. and Crop USA Insurance Services, LLC's extended Motion to Dismiss (Dkt. 1239) is **GRANTED**.

   a. Dale Miesen's claims, both direct and derivative, against the above-named Defendants are **DISMISSED** with **PREJUDICE**.

   b. Judgment will be entered concurrently with this Order in accordance with Federal Rule of Civil Procedure 58(a).

2. Dale Miesen's Motion for Leave to File Sur-Reply (Dkt. 1262) is **DENIED**.

3. CropUSA's Motion for Summary Judgment (Dkt. 1071) is **DISMISSED** as **MOOT**.

   a. CropUSA's Motion to File Overlength Brief (Dkt. 1064) is **DISMISSED** as **MOOT**.

4. Defendant CropUSA Insurance Agency, Inc.'s Motion to Take Judicial Notice (Dkt. 1300) is **GRANTED**.

5. Defendant Reed Taylor's Motion for Summary Judgment (Dkt. 1073) is **DISMISSED** as **MOOT**.

MEMORANDUM DECISION AND ORDER - 16

6.  Briefing will resume on Defendant Reed Taylor's Motion for Summary Judgment
    (Dkt. 1076).

    a.  Defendant R. John Taylor's Response is due twenty-one (21) days from the
        filing of this Order.

    b.  Reed Taylor's Reply, if any, will be due fourteen (14) days from the filing of
        R. John Taylor's Response.


DATED: May 27, 2025

David C. Nye
Chief U.S. District Court Judge


MEMORANDUM DECISION AND ORDER - 17