2026 WL 2944543
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

Supreme Court of Idaho,
Boise, August 2026 Term.

ESTATE OF John W. CLARK; Clover Hollow Farms, Inc., an Idaho corporation; and the Estate of Constance Y. Clark, Plaintiffs-Counterdefendants-Respondents,
and
John W. Clark, Plaintiff,
v.
Jay P. CLARK, Defendant-Counterclaimant-Appellant,
and
C & H Properties, Counterclaim Plaintiff-Appellant.

Docket No. 52701
|
Opinion Filed: October 1, 2026

**Synopsis**
**Background:** Father, through his daughter acting as his conservator, brought a declaratory judgment action against son seeking a declaration that father was the sole shareholder of a corporation, that the corporation owned certain disputed personal property as well as real property previously transferred to it by son, and that son held no interest in the corporation or the property. Following father's death and daughter's appointment as executor of his estate, son moved to dismiss for failure to join indispensable parties. In response, daughter convened a special shareholders' meeting to nullify actions son had taken as a corporate officer and authorize joining the corporation as a co-plaintiff, and moved to amend the complaint. The Third Judicial District Court, Canyon County, Davis F. VanderVelde, J., denied son's motion to dismiss and granted leave to file an amended complaint joining the corporation and the estates of father and mother. Son asserted counterclaims seeking, among other relief, to void the corporate resolutions and to quiet title to the real property in himself. The District Court granted summary judgment in favor of the corporation and the estates on the corporate-resolution counterclaim and on the parties' competing claims concerning ownership of the real property, and entered judgment following a bench trial on ownership of the personal property. Son and his affiliated limited liability company appealed the District Court's summary judgment rulings.

**Holdings:** The Supreme Court, Brody, C.J., held that:

executor lacked authority to convene special meeting and adopt corporate resolutions;

Idaho version of Uniform Probate Code did not give executor authority to convene a special shareholders' meeting;

executor's signature as corporate secretary on the special meeting minutes did not satisfy the written consent requirements of bylaws or Business Corporation Act;

fact that executor continued litigating did not effectuate a ratification of the defective resolutions;

corporation was not effectively joined as plaintiff; and

corporation was an indispensable party that had to be joined.

Grant of summary judgment on corporate-resolution counterclaim reversed; judgment vacated; case remanded with instructions.

**Procedural Posture(s):** On Appeal; Motion for Declaratory Judgment; Motion for Summary Judgment.

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Davis F. VanderVelde, District Judge.

The judgment is vacated. The order of the district court on the sixth counterclaim is reversed, and the case is remanded with instructions.

**Attorneys and Law Firms**

Snell & Wilmer, LLP, Boise, for Appellants. Mark O. Morris argued.

David Kerrick, Caldwell, for Respondents, Estate of John W. Clark and Clover Hollow Farms, Inc.

Murphy Law Office, PLLC, Meridian, for Respondents TRESCO of Idaho, Personal Representative of the Estate of Constance Y. Clark. Jacob Bateman argued.

**Opinion**

BRODY, Chief Justice.

***1** This appeal arises from Appellant Jay P. Clark's conveyance of real property to Clover Hollow Farms, Inc. ("Clover Hollow"), a "one-man" corporation controlled by his father, John W. Clark, in which Jay Clark served as vice-president and director. Years later, after John Clark was placed under a conservatorship, Jay Clark asserted that he had transferred the property for no consideration and that John Clark had agreed to hold it in trust for him to prevent Jay Clark from losing it in an anticipated divorce.

In response to these assertions, John Clark's conservator, Judith Appleby—who later became executor of John Clark's estate during the course of this litigation—caused Clover Hollow to adopt several resolutions at a special shareholder's meeting. The resolutions purported to (1) nullify any actions Jay Clark had taken on behalf of the corporation and (2) join Clover Hollow in this declaratory judgment action seeking a decree that Jay Clark has "no interest, right, title, or claim to the ... corporate stock, real property, and tangible personal property."

Jay Clark then filed counterclaims against the Estate of John Clark, the Estate of Constance Clark (his late mother), and Clover Hollow seeking to void the corporate resolutions and to regain title to the real property he had conveyed years earlier. The district court granted summary judgment in favor of the Estates and Clover Hollow. In doing so, it reasoned that the doctrine of judicial estoppel precluded Jay Clark from asserting ownership of the properties based on his failure to disclose any interest in them during his 2012 bankruptcy proceedings. Moreover, the district court ruled that Jay Clark's claims to the property under constructive trust, promissory estoppel, and unjust enrichment theories failed as a matter of law. Finally, the district court ruled that the resolutions adopted by Clover Hollow at Ms. Appleby's behest were legally sound, given her control over all its stock as the executor of the Estate of John Clark.

As reflected in the discussion that follows, we conclude that the district court erred in granting summary judgment to the Estates and Clover Hollow on Jay Clark's counterclaim challenging the adoption of the corporate resolutions. We disagree with the district court's view that requiring Ms. Appleby to comply with corporate formalities for a "one–man" corporation would be "elevating form over substance." Because Ms. Appleby disregarded the procedures set forth in Clover Hollow's bylaws and the Idaho Business Corporation Act when she purported to call a special shareholder's meeting, the resulting corporate resolutions were invalid. And because those resolutions purported to authorize Ms. Appleby to join Clover Hollow in this action, the First Amended Complaint she filed for that purpose was ineffective. Put simply, Clover Hollow was never properly before the district court (or this Court) because Ms. Appleby lacked authority to exercise corporate powers on its behalf.

Accordingly, we vacate the judgment, reverse the district court's grant of summary judgment to the Estates and Clover Hollow on Jay Clark's sixth counterclaim, and we remand with instructions that the district court allow a "reasonable time" for Clover Hollow to be properly joined as both the real party in interest to assert claims relating to the disputed property against Jay Clark and an indispensable party. I.R.C.P. 17(a)(3), 19(a)(1)(A). Because Clover Hollow's ineffective joinder is dispositive, we decline to reach the remaining issues raised in this appeal.

## I. Factual and Procedural Background

***2** Given the breadth of this case's history, we confine our discussion to the facts pertinent to resolving Jay Clark's sixth counterclaim challenging the corporate resolutions. From the 1960s to the early 1980s, John and Constance Clark acquired real property north of Middleton, Idaho, as part of their family farming operation. In November 1988, the Clarks conveyed two parcels, known respectively as Black Farm and Farm Home ("the properties"), to their son, Jay Clark. Four years later, however, Jay Clark conveyed the properties to Clover Hollow Farms, Inc. ("Clover Hollow"). Clover Hollow was formed shortly before the conveyance, with John Clark as its sole shareholder. At its inception, John Clark served as a director and president of Clover Hollow, with Jay Clark serving as a director and vice-president.

By Jay Clark's telling, John and Constance Clark encouraged him to convey the properties to Clover Hollow "[t]o safeguard [his] ownership of the [properties] as a premarital asset," and promised him that Clover Hollow "would hold the [properties] in trust for [him] to be either returned to [him] upon demand or subject to his exclusive control." Years later, Jay Clark assigned "all of his rights and interests" in Black Farm to C & H Properties LLC, an entity he formed "to help organize the finances and operations of [his] farming operations." C & H's only members are Caleb J. Clark and Hannah E. Clark, who are Jay Clark's children. In 2012, Jay Clark sought relief in bankruptcy court under Chapter 12 of the Bankruptcy Code. On his bankruptcy schedules, Jay Clark did not disclose an interest in either Black Farm or Farm Home.

This case was initiated in 2020 by John Clark, through his then-conservator, Judith Appleby, John and Constance Clark's daughter. The complaint sought a declaration that John Clark was the sole owner of Clover Hollow's stock, that Clover Hollow is the owner of the Black Farm and Farm Home properties and all personal property thereon, and that Jay Clark "has no right, title, interest, or claim to the aforesaid corporate stock, real property, or tangible property." John Clark passed away the following year. Despite being nominated in John Clark's will as co-executor of the estate along with Ms. Appleby, the magistrate court found Jay Clark unsuitable to serve in that position, and it appointed Ms. Appleby as the sole executor of the Estate of John Clark. On appeal, the district court affirmed the magistrate court's finding of unsuitability on Jay Clark's part.

After John Clark's death, Jay Clark moved to dismiss the action because, in the district court's summation, "[n]either John's estate nor his heirs have attempted to substitute as a party as required by Idaho Rule of Civil Procedure 25." In a June 2022 order, the district court threatened to dismiss the case should "Clover Hollow Farms, Inc. and any other proper plaintiff fail to appear within thirty days." In the district court's view, Clover Hollow is a required party in this action under both Rule 19(a) of the Idaho Rules of Civil Procedure and Idaho Code section 10-1211. A week later, counsel for John Clark "move[d] for an Order from th[e] [district] [c]ourt joining all additional parties that the [c]ourt deem[ed] necessary to this action" and "to

substitute Judith Appleby as the Representative ad litem in this litigation for John W. Clark pending final appointment of a Personal Representative in his estate action."

Once the district court's thirty-day joinder deadline had passed, Jay Clark again moved to dismiss the case, contending that counsel for John Clark "did not cause all the required plaintiffs to appear in this action by any means." In Jay Clark's view, counsel for John Clark's joinder motion placed the burden of joining necessary parties on the district court contrary to Idaho law which "makes clear that it was the [plaintiff]'s burden to join the absent indispensable parties." In August, Ms. Appleby called a special meeting of Clover Hollow's stockholders during which the corporation unanimously adopted, on her vote, two resolutions. The first resolution divested Jay Clark of his authority as an officer or director:

> ***3** RESOLVED that any actions made by Jay P. Clark as an officer or director of the corporation are hereby declared without authority and in all respects are disapproved, rejected, and nullified as of the date any such actions were taken.

The second resolution authorized Ms. Appleby to join Clover Hollow as a plaintiff in this litigation:

> RESOLVED, Judith C. Appleby as the representative of John W. Clark is hereby authorized to cause Clover Hollow Farms, Inc. to be named as an additional Plaintiff in the case of John W. Clark v. Jay P. Clark, case number CV14-20-9197.

The same day these resolutions were adopted, counsel for John Clark sought leave to file an amended complaint finally joining Clover Hollow and the other required parties as plaintiffs.

In November 2022, the district court issued an order denying Jay Clark's motion to dismiss and granting counsel for John Clark's motion to amend the complaint. As to the motion to dismiss, the district court viewed the initial joinder motion as sufficient evidence of compliance with the thirty-day joinder deadline it had set in the June 2022 order. The joinder motion may not have resulted in the actual joinder of additional parties "within the thirty-day timeline outlined" in its order, the district court reasoned, but "that [did] not render the motion untimely or inconsistent with the [c]ourt's [o]rder." The district court ruled that the joinder motion was ultimately mooted by the subsequent motion to amend the complaint to join the necessary additional plaintiffs. While acknowledging that "amendment of the Complaint is a different mechanism than joinder," the district court nevertheless ruled that the amendment is "an appropriate alternative approach in this instance." Finally, observing that the case was "still in its early stages," that a trial date had yet to be set, and that "the parties included in the proposed amended pleading all appear to be proper and necessary to the resolution of the action," the district court found no "significant grounds for denying the motion." It granted John Clark's motion for leave to amend the complaint.

Ms. Appleby filed an amended complaint shortly thereafter, joining the Estate of John W. Clark, Clover Hollow, and the Estate of Constance Y. Clark (Constance Clark had passed in 2014). In November 2022, Jay Clark filed his answer to the First Amended Complaint and asserted six counterclaims against the Estates and Clover Hollow. First, Jay Clark sought a declaration that the Estates and Clover Hollow do not own the personal property ("machinery and equipment") on Black Farm and Farm Home. Second, he sought to quiet title to the properties in his name. The third, fourth, and fifth claims raised constructive trust, promissory estoppel, and unjust enrichment theories, respectively, supporting specific performance of an alleged oral agreement Jay Clark made with John Clark and Clover Hollow that they would eventually reconvey the properties to Jay Clark. Sixth, and finally, Jay Clark sought an order "declaring the lack of validity and the defectiveness of" the corporate resolutions enacted by Ms. Appleby as executor of John Clark's estate and sole shareholder of Clover Hollow's stock.

Later, the Estate of Constance Clark moved for summary judgment on the claims relating to the ownership of Black Farm and Farm Home. The Estate of John Clark and Clover Hollow also moved for summary judgment on the same claims along with Jay Clark's counterclaims relating to the corporate resolutions and ownership of the personal property. For his part, Jay Clark moved to dismiss their claims pursuant to Rule 12(b)(6) of the Idaho Rules of Civil Procedure, for judgment on the pleadings, and for partial summary judgment on the claims addressing the corporate resolutions and the personal property.

***4** The district court addressed these motions in a December 2023 order, denying each of them. With respect to the corporate resolutions, the district court first found that Ms. Appleby "had the legal ability to act as a [Clover Hollow] shareholder in her capacity as personal representative, including the right to vote John[ ] [Clark's] shares." And in exercising that right, the district

court further found that Ms. Appleby acted consistently with Article I, Section 8 and Article II, Section 14 of Clover Hollow's corporate bylaws. As the district court noted, those provisions give the Estate of John Clark, as sole shareholder of Clover Hollow, and by extension, the Estate's personal representative, "the ability to take any appropriate corporate action when 100% of the shareholders are present, so long as they note the same in the record of the meeting by written consent." The district court granted summary judgment in favor of the Estate of John Clark and Clover Hollow on Jay Clark's counterclaim challenging the corporate resolutions. It further granted summary judgment in favor of the Estates and Clover Hollow on the parties' competing claims asserting ownership of Black Farm and Farm House.

The district court held a bench trial to resolve ownership of the contested personal property on Black Farm and Farm House. Following trial, the district court issued an order declaring the ownership of the various articles of personal property. Jay Clark and C & H timely appeal only the district court's rulings on the dispositive motions.

## II. Standard of Review

This Court reviews an order granting summary judgment under the same standard the district court originally applied in ruling on the motion. *Brock v. Bd. of Directors, Indep. Sch. Dist. No. 1*, 134 Idaho 520, 522, 5 P.3d 981, 983 (2000). Rule 56 of the Idaho Rules of Civil Procedure allows for an award of summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). We freely review questions of law arising at the summary judgment stage. *Callies v. O'Neal*, 147 Idaho 841, 846, 216 P.3d 130, 135 (2009). Accordingly, we are "free to draw [our] own conclusions from the evidence presented" and are not bound by the district court's conclusions. *Id.* (quoting *Lettunich v. Key Bank Nat'l Ass'n*, 141 Idaho 362, 366, 109 P.3d 1104, 1108 (2005)).

## III. Analysis

### A. The district court erred in ruling that Ms. Appleby's status as executor entitled her to enact corporate resolutions on Clover Hollow's behalf.

The district court summarized the corporate resolutions as (1) "indicat[ing] that Jay Clark is without authority to act as an officer or director," (2) "disavow[ing] or reject[ing]" "any actions Jay Clark [had taken] as an officer [and] director" of Clover Hollow, and (3) declaring Judith Appleby to be Clover Hollow's "representative." The district court concluded that, as the executor of John Clark's estate, which held all of Clover Hollow's stock, Ms. Appleby possessed "the right to act in the same capacity as any other shareholder."

In the district court's view, because Ms. Appleby had exclusive control over Clover Hollow, she was entitled to "call the [special] meeting without the standard written notice ... and vote on the resolutions presented at the meeting" by taking informal shareholder action by consent, as provided in Article II, Section 14 of Clover Hollow's bylaws. And even though Ms. Appleby had not actually executed a "separate written consent or subsequent ratification" on behalf of the Estate of John Clark, the district court concluded that "Ms. Appleby's continued ratification of her actions as shareholder in this litigation constitute a consent and waiver of the need for a signed consent; as does her signature as Secretary placed in the minutes of the corporate records." The district court took the view that a contrary conclusion would "elevat[e] form over substance" because it would deny the reality that "Ms. Appleby is currently the only individual capable of taking action with respect to 100% of the corporate stock."

On appeal, Jay Clark contends that the district court erred in validating the corporate resolutions. As he views the matter, Ms. Appleby's role as executor of the Estate of John Clark does not entitle her to call a special meeting or cause the corporation to adopt resolutions. He attributes the district court's contrary conclusion to its misreading and misapplication of Clover Hollow's corporate bylaws and the Idaho Business Corporation Act ("the Act"). In response, and relying on the Uniform Probate Code, the Estates and Clover Hollow argue that Ms. Appleby "had the power to act on behalf of John [Clark] as the sole shareholder

of [Clover Hollow] under her appointment as Personal Representative of [his] estate." Thus, they insist that the adoption of the resolutions was entirely consistent with Ms. Appleby's rights as a shareholder, as set forth in the bylaws and the Act.

***5** We cannot agree that Ms. Appleby's actions in convening the special shareholder's meeting and adopting the corporate resolutions conformed closely enough to the bylaws and the Act to support the view that invalidating those actions would "elevate form over substance." Corporate formalities matter. Indeed, "the entire field of corporation law has largely to do with formality"; most notably, "corporations come into existence and are accorded their characteristics, including most importantly limited liability, because of formal acts." *W. Palm Beach Firefighters' Pension Fund v. Moelis & Co.*, 311 A.3d 809, 880 (Del. Ch. 2024) (citation modified) (quoting *Uni-Marts, Inc. v. Stein*, CIV. A. Nos. 14713, 1996 WL 466961, at *9 (Del. Ch. Aug. 12, 1996)). With this principle in mind, we hold that an executor may not disregard corporate formalities to effectuate corporate action simply because the corporation is subject to her exclusive control. Because that is what occurred here, we conclude that the district court erred by granting summary judgment to the Estates and Clover Hollow on Jay Clark's sixth counterclaim challenging the corporate resolutions.

The starting point in our analysis is the Idaho Business Corporation Act. Broadly speaking, directors are the foundation of the corporate form. *See* I.C. §§ 30-29-205, 30-29-801(a). They must be appointed at the time the corporation is organized. *See* I.C. § 30-29-205. And the Act tasks them with exercising, or supervising the exercise of, "all corporate powers." I.C. § 30-29-801(b). Put differently, "[t]he board of directors has the legal responsibility to manage the business of the corporation for the benefit of its stockholders." *Weinstein Enters., Inc. v. Orloff*, 870 A.2d 499, 508–09 (Del. 2005).

One of the principal responsibilities the board of directors must accomplish at the inception of the corporation is the enactment of bylaws. I.C. § 30-29-206(a). "A corporation's bylaws establish rules of internal governance." 18 C.J.S. *Corporations* § 157 (Apr. 2026 update). As such, corporate bylaws "are equivalent to contracts among" the corporate constituents. *See Twin Lakes Vill. Prop. Ass'n, Inc. v. Crowley*, 124 Idaho 132, 135, 857 P.2d 611, 614 (1993) (citations omitted); *accord Hill Int'l, Inc. v. Opportunity Partners L.P.*, 119 A.3d 30, 38 (Del. 2015) ("The bylaws of a Delaware corporation constitute part of a binding broader contract among the directors, officers and stockholders formed within the statutory framework of the Delaware General Corporation Law.").

It follows that we apply the "normal rules governing the interpretation of contracts" when interpreting corporate bylaws. *See Crowley*, 124 Idaho at 135, 857 P.2d at 614 (citations omitted). Those rules instruct that the starting point in this interpretive exercise is the bylaws's plain language. *See Albee v. Judy*, 136 Idaho 226, 230, 31 P.3d 248, 252 (2001). And when the contractual language is unambiguous, "its meaning and legal effect" turn exclusively on that plain language. *Boise Mode, LLC v. Donahoe Pace & Partners Ltd.*, 154 Idaho 99, 108, 294 P.3d 1111, 1120 (2013). On the other hand, if the contractual language is ambiguous, then discerning the intent of the parties becomes the primary concern of the inquiry, a question of fact. *Opportunity, L.L.C. v. Ossewarde*, 136 Idaho 602, 605–06, 38 P.3d 1258, 1261–62 (2002).

Applying these principles to Clover Hollow's corporate bylaws, we conclude that they unambiguously vest in its board of directors the sole authority to exercise corporate powers, consistent with Idaho Code section 30-29-801(b). Furthermore, we conclude that the bylaws unambiguously vest in Clover Hollow's president the authority to convene a special meeting of the corporation's shareholders. Given that Ms. Appleby served neither as president nor as a director of Clover Hollow at the time she purported to convene a special meeting and adopt the resolutions, those corporate actions are void.

***6** We start with the bylaws' treatment of the exercise of corporate powers. Article III, Section 1 of the bylaws provides that "[t]he business and affairs of the corporation shall be managed by its Board of Directors." The corporate resolutions enacted here are at least one means by which the board of directors may discharge this broad mandate. *See* 8 Fletcher Cyc. Corp. § 4167 (Sept. 2026 update) ("[A] resolution is ordinarily special and limited in its operation, applying usually to some single specific act or affair of the corporation or to some specific person, situation or occasion."). Of course, Clover Hollow's bylaws do not prevent shareholders from enacting resolutions on behalf of the corporation. Article II, Sections 1, 2, and 14 enable, consistent

with the Act, Clover Hollows' shareholders to take a variety of corporate actions, including the enactment of resolutions, at the annual meeting, at a special meeting, or by consent. *See* I.C. §§ 30-29-701(a), 30-29-702(a)(1), 30-29-702(d), 30-29-704(a).

However, Clover Hollow's bylaws provide, again consistent with the Act, specific procedures for convening a special meeting or taking action by shareholder consent. As relevant here, Article II, Section 2 provides that only the president or a director has the authority to convene a special meeting:

> Section 2. Special Meetings. Special meetings of the shareholders for any purpose or purposes, unless otherwise prescribed by statute, may be called by the President, or may be had at any time upon the request of any Director of the corporation, certified to the Secretary of the corporation in writing. The secretary shall give notice of such special meeting upon such request therefor, and in case of the Secretary's failure to do so within three (3) days after such request is made, then such Director requesting such meeting may give notice of the meeting as in these By-Laws provided.

Moreover, while shareholders may take corporate action without a meeting by acting via "consent," they must do so in accordance with the procedures set out in Article II, Section 14:

> Section 14. Informal Action by Shareholders. Any lawful action required to be, or which might be taken at any duly constituted meeting of shareholders, may be taken without such meeting if a consent in writing, setting forth the action so taken, shall be signed by all of the shareholders entitled to vote with respect to the subject matter thereof; such consent shall be dated as of the date the same shall be signed by the first shareholders, and the right of each shareholder to vote and the number of shares represented by each such shareholder shall be determined as of such date.

In the present case, Ms. Appleby followed none of these requirements. She does not assert that she is Clover Hollow's president or a director. Instead, Ms. Appleby insists that she had the power to enact the corporate resolutions by virtue of her position as the executor of the Estate of John Clark, which controls Clover Hollow as a "one-man" corporation. But Article II, Section 2 makes plain that only Clover Hollow's president or a director may convene a special meeting. No provision of the bylaws confers that power on Clover Hollow's shareholders.

The district court's contrary conclusion was error. While it understood that Ms. Appleby exercises the powers only of a Clover Hollow shareholder and that she cannot "step into John[ ] [Clark's] shoes as a corporate officer or director for [Clover Hollow]," it erred in reading the bylaws as authorizing a shareholder to convene a special meeting. As discussed, the plain language of Article II, Section 2 limits that power to the president or a director. So, while Ms. Appleby may vote during the course of a duly convened special meeting, she has no authority to convene a meeting herself. Accordingly, we conclude that the August 19, 2022, special meeting of Clover Hollow's stockholders Ms. Appleby purported to convene was invalid, as are the corporate resolutions she purported to adopt on the corporation's behalf. *Cf. Kemmer v. Newman*, 161 Idaho 463, 467, 387 P.3d 131, 135 (2016) (voiding a nonprofit corporation's board of directors' appointment of a corporate officer on the ground that it was made at an improperly convened special meeting).

***7** The Estates and Clover Hollow attempt to escape this conclusion by pointing to the Uniform Probate Code, specifically Idaho Code sections 15-3-711 and 15-3-715. These provisions give Ms. Appleby, as the executor of the Estate of John Clark "the same power over the title to property of the estate that an absolute owner would have," I.C. § 15-3-711, including the power to "[v]ote stocks or other securities in person or by general or limited proxy," I.C. § 15-3-715(12). Tellingly, however, these provisions do not give an executor authority to bypass corporate officers and directors and unilaterally act on behalf of a corporation. That conclusion remains true even of a "one-man" corporation such as Clover Hollow. *See, e.g.*, *Gettinger v. Gettinger*, 165 So.2d 757, 757 (Fla. 1964) (per curiam) ("[T]he affairs of a corporation, even though substantially owned by a decedent, cannot be administered by decedent's executor as assets of the decedent's estate."); *Bourne v. Sanford*, 327 Mich. 175, 41 N.W.2d 515, 522 (1950) (rejecting plaintiff's argument "that inasmuch as the estate of the sole stockholder was being administered in the probate court ... that court had acquired jurisdiction over the assets and control over the management of the corporation"); *Ware v. Ware (In re Est. of Ware)*, 348 So.3d 277, 291 (Miss. 2022) ("Where the business of a decedent is in a corporate form, the estate of the decedent is the owner of the corporate stock, but not of the business itself." (quoting *Harper v. Harper*, 491 So.2d 189, 195 (Miss. 1986))).

The Uniform Probate Code provides that an executor holds no greater rights than "an absolute owner." I.C. § 15-3-711. Because John Clark himself could not have disregarded corporate formalities to strip Jay Clark of his authority as a director and officer or to unilaterally cause Clover Hollow to appear as a plaintiff (at least in his capacity as a shareholder), Ms. Appleby cannot do so either. *See Bass v. Shutan*, 259 F.2d 561, 562 (9th Cir. 1958) ("The mere fact that all the corporate stock is held by one person who exercises sole control over the corporation is insufficient to justify disregarding the corporate entity." (citation modified)). Like John Clark, she must comply with Clover Hollow's bylaws and the Idaho Business Corporation Act to effectuate corporate action. Far from relaxing those obligations for an executor, the Uniform Probate Code reinforces them.

Lastly, we also find error in the district court's attempt to salvage the validity of the resolutions by construing the special meeting minutes where the resolutions are recorded as written consents that were subsequently ratified by Ms. Appleby's conduct in this litigation. No one doubts that Ms. Appleby, as executor, has the authority to vote the Estate of John Clark's shares at a duly convened special meeting or by a written shareholder consent that complies with Article II, Section 14 of the corporate bylaws and Idaho Code section 30-29-704. But that authority does not justify treating meeting minutes reflecting a shareholder's consent as the writing required to effectuate corporate action outside of a shareholder meeting. We have declined to recharacterize the records of a meeting that clearly take one form as taking another to make them fit a statutory requirement, *cf. State v. Yzaguirre*, 144 Idaho 471, 478, 163 P.3d 1183, 1190 (2007) (holding audio recording of county commission's votes did not satisfy open meeting law's requirement for a writing), and we have even less reason to do so in this context where the observation of corporate formalities is paramount.

Similarly, there was no ratification here. The Act provides a comprehensive scheme for the ratification of defective corporate action. *See generally* I.C. §§ 30-29-147, 30-29-148. Yet no subsequent action was taken by Clover Hollow's directors or shareholders to ratify the defective corporate resolutions in accordance with that scheme. And Ms. Appleby's pursuit of litigation, while purporting to act on Clover Hollow's behalf, does not itself ratify the defective resolution attempting to confer that authority. The district court erred in concluding otherwise.

In sum, we hold that the executor of an estate may not disregard corporate formalities merely because the corporation is a "one-man" corporation or is controlled by the estate. Here, Ms. Appleby did not have the authority to convene the August 19, 2022, special shareholder meeting. Under the plain language of Clover Hollow's bylaws, only a director or the corporation's president may do so. As a consequence, the resolutions Ms. Appleby purported to adopt at that meeting were defective and did not divest Jay Clark of whatever authority he may have over Clover Hollow, nor did Clover Hollow ever authorize her to join it as a plaintiff in this action.

***8** Today's holding leads us to conclude that Clover Hollow was never effectively joined in this action because it did not authorize Ms. Appleby or her attorney to pursue claims concerning the real and personal property to which Clover Hollow holds title. Nor did Clover Hollow authorize them to defend against Jay Clark's counterclaims concerning the same property. Such authorization requires valid corporate action consistent with the Act and Clover Hollow's bylaws. Accordingly, to the extent the district court purported to adjudicate Clover Hollow's rights in the property at issue, those proceedings were *coram non judice*, and the resulting judgment is void. *See Ennis v. Casey*, 72 Idaho 181, 186, 238 P.2d 435, 438–39 (1951) (vacating judgment entered against corporation because it "was never served with process and at no time made any appearance in the cause").

Finally, we note that Clover Hollow is both a party with standing as the real party in interest and a required party under Rules 17(a)(1) and 19(a)(1)(A) of the Idaho Rules of Civil Procedure. Our caselaw interpreting Rule 17 teaches that a plaintiff's status as the real party in interest, while closely related to Idaho's standing doctrine, is a distinct inquiry. *See Houpt v. Wells Fargo Bank, Nat'l Ass'n*, 160 Idaho 181, 186, 370 P.3d 384, 389 (2016). Whether a plaintiff is the real party in interest does not turn on the traditional three-part standing inquiry—injury in fact, causation, and redressability. *See Reclaim Idaho v. Denney*, 169 Idaho 406, 419, 497 P.3d 160, 173 (2021) (citation omitted). Instead, Rule 17 poses the more specific question of "who can discharge the claim upon which the suit is brought and control the action brought to enforce it, and who is entitled to the benefits of the action, if successful." *Caughey v. George Jensen & Sons*, 74 Idaho 132, 134–35, 258 P.2d 357, 359 (1953). As the entity that

holds title to the real property—and at least some of the personal property—at issue in this case, only Clover Hollow is the real party in interest, with standing to prosecute the Estates' claims against Jay Clark.

Moreover, for the same reason, Clover Hollow is also an indispensable party because Jay Clark's counterclaims seek to divest it of title to the real property—and potentially some of the personal property—at issue. In Clover Hollow's absence, this Court cannot grant Jay Clark relief on those counterclaims, and Clover Hollow would be unable to defend its interests in the properties. *See* I.R.C.P. 19(a)(1)(A), (a)(1)(B)(i). Accordingly, on remand, the district court must allow a "reasonable time" for Clover Hollow to be properly joined so that it may prosecute and defend its property interests implicated by the Estates' claims and Jay Clark's counterclaims. *See* I.R.C.P. 17(a)(3).

## IV. Conclusion

Based on the foregoing reasoning and authorities, we reverse the district court's grant of summary judgment in favor of the Estate of John Clark and Clover Hollow on Jay Clark's sixth counterclaim. As a necessary consequence, we vacate the judgment. Finally, we remand to the district court with instructions to permit a reasonable time for Clover Hollow to be properly joined as both the real party in interest and a required party in this action and for further proceedings consistent with this opinion.

Justices BEVAN, MOELLER, ZAHN and MEYER concur.

**All Citations**

--- P.3d ----, 2026 WL 2944543

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.